# A746

Schiller v. City of New York, 2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006) ..................................17

State Farm Fire & Cas. Co. v. Bongiorno, 667 N.Y.S.2d 378 (2d Dept. 1997) ..........................13

Stephen v. Hanley, 2009 WL 1471180 (E.D.N.Y. May 21, 2009) ......................................6, 11, 14

U.S. v. Brown, 606 F.Supp.2d 306 (E.D.N.Y. Mar. 9, 2009) ...................................7, 9, 10, 12, 20

U.S. v. Estrada, 430 F.3d 606 (2d Cir. 2005) ..........................................................................9, 15

U.S. v. Hayes, 553 F.2d 824 (2d Cir. 1977) .................................................................................15

U.S. v. Ortiz, 553 F.2d 782 (2d Cir. 1988) .....................................................................................7

Wilson v. City of New York, No. 06 Civ. 229 (ARR)(VVP)(E.D.N.Y. Dec. 13, 2006................16

Zitka v. Village of Westmount, 2011 WL 4738249 (N.D.Ill. Oct. 7, 2011) ...........................18, 19

# A747

## PRELIMINARY STATEMENT

Plaintiff Joshua Marshall respectfully submits this motion pursuant to Rules 401, 402, 403, 404, 608, and 609 of the Federal Rules of Evidence ("FRE") to exclude evidence of, reference to or argument concerning Mr. Marshall's criminal history, including his prior and subsequent arrests and convictions, his work history, his ownership of certain vehicles, and the testimony of the Assistant District Attorney for any purpose other than to authenticate records.

## BACKGROUND

In the early morning hours of May 15, 2008 Mr. Marshall was arrested in the vicinity of Park Street and Broadway, in Brooklyn, New York, by Police Officer Salim Randall and Police Officer Michael Burnbridge ("Defendants"). Plaintiff alleges that the Defendants arrested him without cause, probable or otherwise, and falsely charged him with one (1) count of Criminal Possession of Stolen Property in the Fourth Degree, one (1) count of Criminal Possession of a Weapon in the Second Degree and one (1) Count Criminal Possession of a Weapon in the Fourth Degree. As a result of these false allegations Mr. Marshall was incarcerated for approximately one hundred thirty five (135) days in jail before he made bail. After his release from jail, Mr. Marshall made five (5) additional court appearances in connection with these charges over the course of several months. On or about May 27, 2009 all of the charges related to this arrest were dismissed and sealed. As a result of defendants' unlawful conduct Mr. Marshall suffered a loss of his liberty for the one hundred thirty five (135) days he spent incarcerated including the additional court appearances he had to make in connection with these false charges and he suffered from the emotional stress of being falsely charged and prosecuted with a crime he did not commit.

## A748

On June 8, 2010 Mr. Marshall filed this action against defendants in the Eastern District of New York. This action involves claims for False Arrest, Malicious Prosecution and Denial of Right to Trial under 42 U.S.C. § 1983 arising out of the events of May 15, 2008 through May 7, 2009.[1] In dispute is what happened during Defendants' stop and subsequent arrest of Mr. Marshall on May 15, 2008.

At trial Defendants may attempt to impeach Mr. Marshall with evidence of Mr. Marshall's prior bad acts, including his arrests and convictions. Mr. Marshall's criminal record includes two (2) felony and one (1) misdemeanor convictions that predate his May 15, 2008 arrest. On September 24, 2003 Mr. Marshall pled guilty to Criminal Possession of a Controlled Substance in the Fifth Degree, a Class D Felony, and Criminal Possession of a Controlled Substance in the Third Degree, a Class B Felony, stemming from two separate arrests on December 10, 2002 and March 26, 2003, respectively. As a result of those guilty pleas, Mr. Marshall was sentenced to one (1) to three (3) years in prison on each to run concurrently. Mr. Marshall also pled guilty to Menacing in the Third Degree, a Class B Misdemeanor, more than ten (10) years prior to the date of this trial, on April 23, 2002.

In addition, defendants may also seek to introduce evidence of Mr. Marshall's prior arrests that did not result in criminal convictions. At his deposition, Mr. Marshall testified to a charge for Assault stemming from an arrest in 1998 that occurred before he was nineteen years old. Mr. Marshall was adjudicated as a Youthful Offender in connection with that arrest and the record was sealed when he reached the age of majority. Further, Mr. Marshall's records indicate that he's had other arrests that did not result in convictions. As will be set forth below all of these arrests are inadmissible and irrelevant except for Mr. Marshall's

---

[1] On November 29, 2011, this Court denied defendants motion for summary judgment finding that "[t]his case turns on the relative credibility of plaintiff and the defendant officers." (Docket Entry 41).

# A749

arrest on March 15, 2008 which was dismissed, but served as the basis for defendants' decision to stop Mr. Marshall on May 15, 2008.[2]

Defendants may also attempt to impeach Mr. Marshall with his felony conviction stemming from an arrest that occurred after the incident that gives rise to this lawsuit. On September 7, 2010, Mr. Marshall was convicted of Criminal Possession of a Controlled Substance in the Third Degree, a Class B Felony, stemming from an arrest that occurred May 19, 2009. Since this arrest occurred after Marshall was arrested in the instant matter, it has no bearing on any of the issues in this case.

Additionally, defendants may attempt to introduce at trial or impeach Mr. Marshall with his work history and the cars he has previously owned.

Finally, defendants intend to bolster their case by calling the Assistant District Attorney in order to vouch for their credibility.

None of the aforementioned evidence tends to prove or disprove any of the factual disputes regarding Mr. Marshall's May 15, 2008 arrest and related criminal charges. That evidence should be excluded because it is (1) wholly irrelevant; (2) inadmissible character evidence under Rule 404(b) of the Federal Rules of Evidence; (3) inadmissible for any purpose; (4) unfairly prejudicial pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence and admitting it would result in jury confusion and a waste of the Court's time; and, (5) it cannot be used to impeach Mr. Marshall pursuant to Rules 608 and 609 of the Federal Rules of Evidence.

---

[2] Defendant Burnbridge testified at his deposition that he decided to stop Mr. Marshall because he recognized him as someone who had recently been arrested, referring to plaintiff's March 15, 2008 arrest he had reviewed at the police precinct.

## ARGUMENT

### I. MR. MARSHALL'S CRIMINAL HISTORY SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT, UNDULY PREJUDICIAL, AND/OR TIME BARRED.

All evidence of, reference to or argument concerning Mr. Marshall's criminal history,

including his prior arrests, convictions and probation/parole records, should be excluded.

#### A. *Mr. Marshall's Felony Convictions Are Inadmissible For Any Purpose Under FRE 404(b)*

Federal Rule of Evidence 404(b) provides in relevant part that "[e]vidence of other

crimes, wrongs, or acts is not admissible to prove the character of a person in order to show

action in conformity therewith." Applying Rule 404(b), the Second Circuit has held, for

example, that in an excessive force case regarding a prisoner's treatment by corrections

officers, the plaintiff's prison disciplinary records cannot be offered to show that the plaintiff

has an "aggressive character" and "that it was therefore more likely than not that he was the

aggressor on the occasions in question". Hynes v. Coughlin, 79 F.3d 285, 292 (2d Cir. 1996).

Here, given that the allegations are that plaintiff was falsely arrested for possessing

illegal contraband, evidence of Mr. Marshall's three felony convictions for Criminal

Possession of a Controlled Substance similarly serves no purpose other than to encourage the

jury to draw the impermissible inference that Mr. Marshall has a "bad" or "criminal"

character and a general propensity to possess illegal items. Accordingly, defendants would

only seek to introduce these convictions to use them in a manner which is explicitly

prohibited under 404(b).   See Daniels v. Loizzo, 986 F.Supp. 245, 249 (S.D.N.Y.

1997)("Instead, the proffer of such evidence amounts to nothing more than a veiled attempt

to do what Rule 404(b) prohibits – introduce bad acts evidence to show a propensity to

commit such acts.").

4

## A751

Similarly, any veiled attempt to admit this evidence under Rule 404(b) "for *other* purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" must be rejected.    Hynes, 79 F.3d at 290. Evidence concerning Mr. Marshall's felony convictions is not relevant in this case, nor is it probative of any of these enumerated purposes – which it must be – for admission under 404(b). Further, none of those "other" purposes - namely, motive, intent, knowledge, etc. – are even remotely at issue in this case, thus making any attempt to introduce them under FRE 404(b) impermissible. See Lewis v. Velez, 149 F.R.D. 474, 479 (S.D.N.Y. 1993) ("While it is true that 404(b) permits evidence of other acts to show [another purpose], [that purpose] must in fact be *at issue* in the case to justify admission of such evidence.")(emphasis added). Specifically, in the present matter, Mr. Marshall's guilty pleas to Criminal Possession of a Controlled Substance eight (8) years ago and one after this incident has no bearing on either Mr. Marshall's conduct or state of mind – or that of defendants – on the date in question.[3] Further, evidence of these convictions will not illuminate the sufficiency of the officers' probable cause in arresting or prosecuting Mr. Marshall on May 15, 2008 or whether defendants provided false information to the District Attorney and the Grand Jury, which are the *only* relevant issues in this matter.  Finally, as will be discussed infra, these convictions are also entirely irrelevant to the question of damages.

Notwithstanding, even if Mr. Marshall's felony convictions are relevant – and they are not – they are unfairly prejudicial and should be excluded. These convictions are not evidence related *in any way* to the incident in question, however, there is a real and

---

[3] In contrast, Mr. Marshall's arrest on March 15, 2008 is precisely the reason defendants alleged they stopped him on May 15, 2008 and thus should be admissible for that limited purpose. As will be more fully discussed supra, Marshall's March arrest should solely be admitted to explain defendants' state of mind and should explicitly preclude the unsubstantiated charges and details of that arrest. See 1(F)(ii).

# A752

substantial likelihood that the jury would impermissibly discount Mr. Marshall's account of that incident, because of his status as a prior felon. Accordingly, given that the only use of these convictions would be to irreparably prejudice the plaintiff in this case, it must be excluded as a matter of law.

### B.   Mr. Marshall's Felony Convictions Are Inadmissible for Impeachment Under FRE 609

Evidence of Mr. Marshall's felony conviction cannot be used to impeach him under Rule 609 because its probative value – *a virtual nullity* – is substantially outweighed by the danger of unfair prejudice. Pursuant to this Rule, courts are required to consider the probative value of a felony conviction in light of its prejudicial effect. See Daniels v. Loizzo, 986 F.Supp.245, 250 (S.D.N.Y. 1997) ("[a]s amended in 1990, Rule 609 now explicitly provides that prior convictions of all witnesses other than a criminal defendant, including witnesses in civil actions, shall be admitted subject to Rule 403.") (citing Fed. R. Evid. 609(a) (1); 4 Weinstein's Federal Evidence § 609.04[3][a], at 609-36 (1997)); see, e.g., Eng v. Scully, 146 F.R.D. 74, 78 (S.D.N.Y.1993).   Courts in this circuit have held that, when balancing probative value against prejudicial effect under Rule 609(a)(1), judges should examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue in the present litigation, and (4) the importance of the credibility of the witness. Daniels, 986 F.Supp. at 250 (citing 4 Weinstein's Federal Evidence, § 609.04[2][a]).

The *single most important factor* that is central to the aforementioned analysis is whether the prior crime is particularly probative of credibility. See Stephen v. Hanley, No. 03-CV-6226, 2009 WL 1471180 at*4 (E.D.N.Y. May 21, 2009)("[p]aramount among the factors to consider in the balancing analysis is whether the crime, by its nature, is probative

6

of the lack of veracity") (citing U.S. v.Ortiz, 553 F.2d 782, 784 (2d Cir. 1988)). Here, that dominant factor counsels strongly against admission under Rule 609(a)(1) as Mr. Marshall's convictions for Criminal Possession of a Controlled Substance hve no bearing on his veracity as a matter of law. See Lewis, 149 F.R.D. at 482 ("'[V]iolation of narcotics laws [are] 'not normally suggest[ive of] the special probative value on the issue of credibility contemplated by Fed.R.Evid. 609(a)(1)'")(citation omitted); Fletcher v. City of New York, 54 F.Supp.2d 328, 332 (S.D.N.Y. 1999)("'[c]onvictions for narcotic offenses are usually not considered to involve dishonesty or false statement'")(citing 4 Weinstein's Federal Evidence, § 609.03[2][b][iii], (2nd ed. 1998)); Daniels, 986 F.Supp. at 249 ("[d]rug crimes, however, do not automatically implicate the use of dishonesty of false statements"); See also Picciano v. McLoughlin, No. 07 Civ 0781, 2010 WL 4366999, 3 (N.D.N.Y Oct. 28, 2010); U.S. v. Brown, 606 F.Supp. 2d 306, 319 (E.D.N.Y. Mar. 9, 2009).

Additionally, it has been more than seven (7) years since Mr. Marshall's first two felony convictions which militates in favor of exclusion. Further, Mr. Marshall's last conviction post-dates this incident and bares no weight on the main issues in this matter; (1) whether defendants had probable cause to arrest plaintiff on the date in question and (2) whether defendants forwarded false evidence about plaintiff's arrest to the grand jury and the District Attorney's office. The only reason defendants would seek to admit Mr. Marshall's felony convictions would be to impermissibly encourage the jury to arbitrarily refuse to award him damages based on his criminal history, which is expressly prohibited by the Federal Rules Evidence and must be excluded in this matter.

### C.    *Mr. Marshall's Misdemeanor Conviction is Inadmissible for Any Purpose Under FRE 404(b).*

Evidence related to any of Mr. Marshall's misdemeanor conviction is inadmissible

character evidence under Rule 404(b). Mr. Marshall's misdemeanor conviction involves

Menacing – more than ten (10) years ago. Accordingly, the only possible reason for

defendants to introduce evidence of Mr. Marshall's prior misdemeanor conviction is to

encourage the jury to draw the impermissible inference that he acted "in conformity" with a

perceived bad character on the day of the incident – namely, one who has engaged in violent

behavior with a weapon in the past – which is specifically prohibited under Rule 404(b). See

Daniels, 986F.Supp. at 248; Hynes, 79 F.3d at 292.

In the instant action, the false allegations that form the basis of his claims include that

Mr. Marshall possessed a gun. As a result, his prior misdemeanor related to Menacing with a

weapon would serve no purpose other than to encourage the jury to draw the impermissible

inference that Mr. Marshall has a propensity to possess weapons, which is exactly what Rule

404(b) seeks to prevent. Daniels, 986 F.Supp. at 249.

### D.    *Mr. Marshall's Prior Misdemeanor Conviction Is Inadmissible for Impeachment Under FRE 609*

Evidence of his misdemeanor conviction may not be used to impeach Mr. Marshall

under Rule 609 because Menacing, to which Mr. Marshall pled guilty, is not punishable by

death or imprisonment for more than one year, which renders them inadmissible under

Rule609(a)(1) as a matter of law.[4]    See Daniels, 986 F.Supp. at 249 ("Plaintiff's

misdemeanor convictions…were not punishable by death or imprisonment in *excess* of one

year. Thus these convictions are not admissible for impeachment purposes under Rule

---

[4] See N.Y. PENAL LAW § 70.15(1) (McKinneys 2011)("A sentence of imprisonment for a class B misdemeanor shall be a definite sentence. When such a sentence is imposed the term shall be fixed by the court, and shall not exceed three months").

## A755

609(a)(1).")(emphasis added); <u>Nibbs v. Goulart</u>, No. 10 Civ. 3799, 2011 WL 4431167, *3 (S.D.N.Y Sept. 16, 2011)("As those convictions are outside the ambit of FRE 404(b) and evidence of those convictions is likely to cause delay and prejudice, such evidence shall be precluded.").

Moreover, Menacing is not a crime of veracity, thus it would not be admissible under Rule 609(a)(2). In fact, Congress has emphasized that Rule 609(a)(2) specifically refers to convictions that are particularly probative of credibility, excluding Mr. Marshall's misdemeanor conviction as a matter of law. See <u>U.S. v. Estrada</u>, 430 F.3d 606, 614 (2d Cir. 2005)("'crimes of force, such as armed robbery or assault, or crimes of stealth, such as burglary or petit larceny do not come within 609(a)(2)'"(citation omitted); <u>See also</u> <u>Brown,</u> 606 F.Supp. 2d at 316 ("acts of violence resulting from 'a short temper, a combative nature, extreme provocation, or other causes not tending to demonstrate premeditation 'generally have little or no bearing on honesty and veracity.'")(citation omitted). Given that Mr. Marshall's misdemeanor conviction is completely unrelated to veracity, it is therefore not admissible under 609(a)(2).

Finally, notwithstanding that Mr. Marshall's misdemeanor conviction is not probative of truthfulness; it's also more than ten (10) years old, which renders it explicitly time-barred pursuant to Rule 609(b). Federal Rule of Evidence 609(b) provides in relevant part that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction..." F.R.E. 609 (b). In the instant matter, Mr. Marshall's Menacing conviction stems from a domestic dispute that occurred more than ten (10) years ago. There is no indication that claimant remained confined on this matter beyond

9

# A756

the date of conviction. Therefore, there is no value in allowing this conviction into evidence other than to impermissibly prejudice plaintiff in the eyes of the jury.

### E.     The Similarity of Plaintiff's Misdemeanor Conviction is Irreparably Prejudicial

Finally, regardless of any arguable probative value of his prior misdemeanor conviction to this matter, the similarity of it to the underlying charges in this case weighs heavily against allowing its admission, given that plaintiff's prior misdemeanor deals with menacing with a knife, and in the instant matter, plaintiff is alleged to have been in possession of a gun. See Daniels, 986 F.Supp. at 251 ('[T]here [] is *no justification* and *considerable danger* in impeaching a defendant's credibility with a prior conviction for the *same* type of offense as the one on trial…") (emphasis added); Brown, 606 F.Supp. 2d at 316 ("similarity of past and present offenses weighs heavily against the admissibility of the prior criminal conviction because it poses a greater danger for unfair prejudice"); See also 4 Weinstein's Federal Evidence, § 609.05[3][d] at pp. 609-41 to 609-42, (2nd ed. 1998)). Accordingly, due to the inevitable prejudice that would result from nature of the conviction being disclosed to the jury – i.e. possession of a weapon – it must be excluded under FRE 609(a)(1) and 403.

### F.     Evidence of Mr. Marshall's Prior Arrests That Were Dismissed are Inadmissible for Any Purpose Under FRE 404(b).

#### i.   Prior unsubstantiated arrests are inadmissible

Defendants should be precluded from introducing any evidence of the prior arrests or charges for which Mr. Marshall was arrested or arraigned but *not convicted*, except for the March 15, 2008 arrest that served as defendants' basis for stopping Mr. Marshall in this case. Other than the March 15, 2008 arrest, Mr. Marshall's arrest record is not relevant to, or

probative of, his or the defendants' state of mind, conduct, or for any other purpose under 404(b) on the date of this incident. This is especially true because Defendants could not have known of Mr. Marshall's prior arrests because they were sealed at the time of this incident.[5] The only possible purpose for admitting this evidence is to include impermissible character evidence, when in fact Mr. Marshall's character is not at issue in this case. See Stephen, 2009 WL 1471180 at *8 ("[T]he court finds that the drugs charges are inadmissible...Defendant apparently proffer these charges solely to demonstrate [plaintiff's] bad character; however, his character is not at issue in this case."). Given that Mr. Marshall's unsubstantiated arrests have absolutely no probative value to any relevant issue in this case – namely whether or not there was probable cause to arrest and prosecute Mr. Marshall – the only purpose to admit this evidence would be to improperly encourage the jury to make the impermissible inference that *if Mr. Marshall were arrested on prior occasions there must have been probable cause for his arrest on this occasion.* As such, it is impermissible character evidence explicitly prohibited by Rule 404, and is further prohibited by Rule 403 since the danger of unfair prejudice that will inevitably result would substantially outweigh the non-existent probative value of the evidence.

### ii. *Details of Marshall's March Arrest should be excluded*

Further, to the extent Mr. Marshall's March 15, 2008 arrest is admissible, since it was the basis for defendants' initial stop of plaintiff on May 15, 2008, the underlying details of that arrest should be excluded because of the serious risk of unfair prejudice. On March 15, 2008 Mr. Marshall was arrested inside his mother's home after police executed a search warrant and allegedly found narcotics and firearms secreted in his brother's bedroom. Even

---

[5] See Moakley v. P.O. "Jane" Velarde, et al., 2002 WL 287848, *3 (S.D.N.Y. 2002)("In evaluating whether the officers had probable cause, the Court considers the facts available to them *at the time of arrest*.")(citation omitted)(emphasis added).

11

# A758

though Marshall was initially charged with possession of those narcotics and firearms in connection with that arrest, the District Attorney ultimately moved to dismiss and seal all the charges against him. The fact that the March arrest and the arrest that forms the basis for the instant case both involve charges for possession of a weapon should weigh heavily against the admissibility of any of the facts and details of the March arrest. As noted above, Courts are already reluctant to admit the details of prior *convictions* out of concern that a jury may improperly judge on a party's propensity to commit crimes rather than the particular circumstances of the case before them. See Brown, 606 F.Supp. 2d at 316 ("[e]vidence of Brown's July 1, 1999 conviction may improperly lead a jury to infer that Brown has a propensity for carrying weapons and committing violent acts and thus, convict Brown on the basis of that inference as opposed to evidence proving the elements of the charged crime"). This concern should be even more glaring with prior arrests that result in the charges being dismissed, as is the case here. Generally, arrests that do not result in convictions are inadmissible. See Daniels, 986 F.Supp. at 252 (holding that plaintiff's arrests that did not result in convictions were inadmissible under Fed. R. Evid. 608(b) because "[i]t happens to the innocent as well as the guilty."). The only reason Marshall's March arrest is remotely relevant here is because defendant Burnbridge alleged that he decided to stop Marshall on May 15, 2008 when he recognized him from an NYPD database of recently arrested individuals. Defendant Burnbridge put Marshall's March arrest at issue and arguably made it admissible for another purpose, namely to explain why he stopped plaintiff. However, simply admitting that Marshall had been arrested in March and that Burnbridge recognized him from records he reviewed at the precinct should suffice to explain defendants' actions on the date question, without having to further elaborate what Marshall's arrest in March was

12

# A759

for. Placing Marshall's March arrest at issue does not give defendant's license to delve into the details of that unsubstantiated arrest to further prejudice the plaintiff. Such evidence would amount to nothing more than impermissible character evidence explicitly prohibited by Rule 404, and would be further prohibited by Rule 403 due to the overwhelming prejudice of that evidence.

### iii. Marshall's Youthful Adjudication more than 10 years ago is inadmissible

Defendants may also seek to introduce Mr. Marshall's arrest for which he was adjudicated as a youthful offender and resulted in the charges being dismissed and sealed. New York Courts have found that youthful offender adjudications are not convictions and thus cannot be used against witnesses in subsequent proceedings. See People v. Cook 37 N.Y.2d 591, 595 (1975) ("Since a youthful offender adjudication is not a conviction for a crime, it may not be shown to affect the witness' credibility."); see also Green v. Montgomery, 746 N.E.2d 1036, 1039 (2001) ("As a rule, a juvenile delinquency adjudication cannot be used against the juvenile in any other court for any purpose"); State Farm Fire & Cas. Co. v. Bongiorno, 667 N.Y.S.2d 378, 380 (2d Dept. 1997). ("The confidentiality of information is part of the comprehensive legislative plan to relieve youthful offenders of the consequences of a criminal conviction"). The exception to that rule is when a party puts the conduct of the youthful adjudication at issue. Green 746 N.E2d 1036, 1049 ("By bringing a civil suit alleging that the police had used excessive force in apprehending him, Green placed at issue the very conduct for which he had been adjudicated a juvenile delinquent"); See also Ewing v. Roslyn High School No. 05 CV 1276, 2008 WL 630070 (Mar. 5, 2008 E.D.N.Y.). In the instant case, Marshall has not placed his youthful offender conviction at issue in this case. This case involves his arrest in May 15, 2008, not the arrest that led to Marshall's arrest

13

# A760

more than fourteen years ago before he was an adult. Therefore, like his other dismissed cases, Marshall's youthful offender arrests are not probative of any issues in this case, would be highly prejudicial and explicitly prohibited by Rules 403 and 404.

### G.   Evidence of Mr. Marshall's Prior Arrests That Were Dismissed Are Inadmissible for Impeachment As a Matter of Law.

According to the Supreme Court, it is well established that evidence of prior arrests that were dismissed have no impeachment value as a matter of law. See Michelson v. United States, 335 U.S. 469, 482 (1948) ("[a]rrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness....*Only* a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.") (emphasis added). Accordingly, arrests that have not resulted in convictions are not admissible under Rule 609 or 608(b). See Stephen 2009 WL 1471180 at *8 ("[D]efendants reliance on Rule 608...is unavailing. None of the unproven charges or prior arrests bear on [plaintiff's] character for truthfulness..."). As such, Mr. Marshall's other unsubstantiated arrests are not directly relevant to credibility and simply cannot be used to impeach him. As with his prior convictions, Mr. Marshall's arrests have no bearing on any of the issues in this case, are irrelevant, and their admission would be unduly prejudicial and would only serve to impermissibly suggest that because Mr. Marshall has been arrested prior to this incident, he must have been committing a crime on the date at issue. Accordingly, these prior arrests cannot be used to impeach Mr. Marshall as a matter of law.

In addition, the charges he faced as a youthful offender were not convictions and cannot be used to impeach him under New York law. See Cook 37 N.Y.2d 591 at 595. ("Since a youthful offender adjudication is not a conviction for a crime, it may not be shown to affect the witness' credibility."). Further his youthful offender charges stem for an arrest

# A761

for Assault which is not a crime of veracity. Therefore, Mr. Marshall's youthful offender arrest would not be admissible under 609(a)(2). See U.S. v. Estrada, 430 F.3d 606, 614 (2d Cir. 2005)("'crimes of force, such as armed robbery or *assault*, or crimes of stealth, such as burglary or petit larceny do not come within 609(a)(2)"'(citation omitted)(emphasis added); See also United States v. Hayes, 553 F.2d 824, 827 (2d Cir.1977)(same). Finally evidence of Marshall's 1998 youthful offender adjudication in is inadmissible under Rule 609(b). Federal Rule of Evidence 609(b) provides in relevant part that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." F.R.E. 609(b). Notwithstanding that Marshall's youthful adjudication is not a conviction, it has nonetheless been more than ten (10) years since Marshall was adjudicated on the matter. If this court were to consider his youthful adjudication as a conviction it would be time barred pursuant to Rule 609(b).

## II.   EVIDENCE OF MR. MARSHALL'S PRIOR ARRESTS OR CONVICTIONS ARE UNDULY PREJUDICIAL AND NOT RELEVANT TO DAMAGES

### A.   *Prior Arrests Are Not Relevant To Loss of Liberty Damages Which Are Separate and Distinct From Emotional Distress Damages*

Under the law of this Circuit it is well settled that loss of liberty is an entirely separate and distinct component of damages from emotional injury. See Kerman v. City of New York, 374 F.3d 93, 123-25 (2d Cir. 2004)(recognizing that loss of liberty and emotional injuries are independent of each other and that the torts of false arrest and malicious prosecution "'[are] complete with even a brief restraint of the plaintiff's freedom'; 'it is not necessary that any damage result f rom it other than the *confinement it self*.'")(emphasis added); Gardner v. Federated Department Stores, Inc., 907 F.2d 1348, 1353 (2d 1990)("Thus,

# A762

the damages for deprivation of liberty redress the denial of free movement and the violation done to Gardner's dignity as a result of the unlawful detention, *and not* the physical and mental injuries arising from the incident.")(emphasis added); Robinson v. Holder, 2008 WL 2875291, *9 (S.D.N.Y. 2008)("'[t]he damages recoverable for the period spent in wrongful confinement are *separable* from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering.")(emphasis added).

Further, it cannot be argued a deprivation of liberty is any less valuable for one who has never been arrested before. Any such argument would contravene the plain language of the rights enumerated in the Fourth Amendment, which are guaranteed "to the people" and not simply the people who have never been arrested before. See Nibbs v. Goulart, No. 10 Civ. 3799, 2011 WL 4431167, 4 (S.D.N.Y Sept. 16, 2011) (finding that prior arrests not admissible to rebut loss of liberty damages).

## B. *Standing Alone Prior Arrests are Irrelevant to Emotional Damages*

The plaintiff's claim for emotional damages in this case stem directly and specifically from the time he spent wrongfully incarcerated and having to defend himself during the criminal proceedings in this matter. Accordingly, despite defendant's likely arguments to the contrary – his damages for emotional distress are unique to this arrest, thereby rendering any evidence of plaintiff's prior arrests/convictions entirely irrelevant to his damages as a matter of law.

Although the Second Circuit has never ruled on whether prior arrests and detentions are relevant to damages, a scattered few District Courts have found that prior arrests are *discoverable* and *arguably* relevant to damages. See Wilson v. City of New York, No. 06 Civ. 229 (ARR) (VVP) (E.D.N.Y. Dec. 13, 2006) (requiring plaintiff to turn over an

16

# A763

authorization for his sealed arrests records in discovery); Schiller v. City of New York, No. 04 Civ. 7922 (KMK), 2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006) (same). However, in all these decisions the court specifically limited those rulings to the context of discovery, and expressly stated that there were a variety of reasons why such evidence *would not* be admitted at trial for the same purpose. See Cicero v. City of New York, 2011 WL 3099898, *3 (E.D.N.Y. 2011) ("the court refused to rule 'on how much, if anything' about the prior arrests should be disclosed to the jury").

If defendant's argument regarding these discovery rulings is accepted in the trial context it would essentially nullify damages in virtually every false arrest claim where an individual has been previously arrested. Further, this proposition makes no distinction between the distress attributed to a *valid* arrest versus a *false* arrest. Specifically, it seems highly unlikely that an individual who is arrested legitimately – i.e. is arrested for an offense for which he admitted guilt – would suffer any distress at all even though he has assumed the risk of arrest by engaging in the illegal activity in the first instance. Conversely, if an individual is arrested for a crime he did not commit, the distress would seemingly *never* be mitigated by the fact that he had been arrested on a prior occasion – whether valid or not. *A fortiori*, Mr. Marshall's prior *valid* arrests – namely, those that resulted in convictions – should have no relevance on his damages stemming from being *falsely* arrested. Accordingly, any argument that the tremendous stress he experienced as a result of this arrest could be mitigated by any of his prior arrests should not be accepted.

Further, in cases where courts have allowed prior arrests and detentions to be admitted *at trial* on the issue of damages, such evidence has only been admitted to rebut specific allegations of emotional distress such as nightmares or a resulting fear of police. See

Picciano v. McLoughlin, 2010   WL 4366999, *2 (N.D.N.Y. 2010)("[I]n the event that Plaintiff testifies at trial that he suffered a *'fear' of police officers, and/or lost his desire to become a police officer*, as a result of the incident of August 4, 2004, which is the subject of this litigation, the Court will permit Defendant to ask Plaintiff whether he has been arrested on more than one occasion since August 4, 2004.")(emphasis added); Edwards v. City of New York, N0. 08 Civ. 2199, 2011 WL 2748665, 4 (E.D.N.Y. Jul. 13, 2011) (explaining that prior arrests and detentions may be relevant to emotional distress damages, but defense counsel has burden of explaining how plaintiff's direct testimony at trial put such evidence at issue before its admission); see also Backwell v. P. Kalinowski, P.W., No. 08 C. 7257, 2011 WL 1557542, 4 (N.D.Ill. April 25, 2011) (explaining that prior arrests are relevant to damages only when they involve similar facts to the arrest at issue); Zitka v. Village of Westmount, No. 07 C 0949, 2011 WL 4738249 (N.D.Ill. Oct. 7, 2011) ([d]efendants have failed to explain convictions for misdemeanor offenses which plaintiff *acknowledged* committing *long ago* would contribute to the emotional distress she claims to have suffered from being *falsely* charged with criminal offenses")(emphasis added).

In the present case, Mr. Marshall did not testify at his deposition, nor is he claiming, that he suffered the *typical* emotional damages that are often associated with false arrests – i.e. that he now fears the police; that the incident caused him nightmares; or that he was traumatized by the handcuffing and the length of time he was in custody. If he had, then his prior arrests and incarceration might actually be relevant to rebut emotional damages stemming from this arrest because the jury would have to determine whether his prior arrests affected him in the same way. To the contrary, Mr. Marshall was affected emotionally by

# A765

*this arrest* in very *precise* ways unique to someone who has been charged with a crime he has not committed.

Specifically, Mr. Marshall was upset and frustrated that he was incarcerated for over four (4) months and he had to defend himself against charges he did not commit. Given Mr. Marshall's history it arguably makes the *false* charges that were alleged against him all the more distressing. That being said, allowing his prior arrest to be admitted would be too prejudicial.

## C.   The Probative Value of Admitting Marshall's Criminal History Is Outweighed By The Prejudice

Furthermore, courts in other jurisdictions have found that probative value of evidence of prior arrests and incarcerations to rebut damages is subs tantially outweighed by the prejudicial effect of such evidence. See Zitka, 2011 WL 4738249, 2 (explaining that prior arrests from many years ago are too prejudicial, even if found to be relevant); Christmas v. City of Chicago, 691 F.Supp.2d 811, (N.D.Ill Feb. 11, 2011) (holding that the "danger of unfair prejudice greatly outweighs the probative value" of admitting prior arrests to rebut emotional injury); see also Backwell 2011 WL 1557542 at 4 (explaining that even if prior arrests are relevant and probative, it may still be too prejudicial). The prejudicial effect of a jury learning that he has been arrested before could be insurmountable, even with a proper jury instruction. See Zitka, 2011 WL 4738249, 2 ("[e]ven with a limiting instruction, evidence that the plaintiff has been convicted three times in the past for criminal offenses (even if minor ones) could unfairly color the jury's perception her *overall credibility*")(emphasis added).

19

# A766

## III.   IF ANY EVIDENCE OF MR. MARSHALL'S CRIMINAL RECORD IS ADMITTED, IT SHOULD BE STRICTLY LIMITED AND SUBJECT TO A PROPER JURY INSTRUCTION.

Should the Court admit any elements of Mr. Marshall's criminal record, that evidence should be strictly limited to the fact and date of the conviction in question. Further, the specific offense (i.e. drug possession) should not be disclosed given that none of Mr. Marshall's convictions are crimes of dishonesty and the similarity of the offenses to the allegations in this case would be irreparably prejudicial. See Brown, 606 F.Supp. 2d at 320 ("[a]s to the statutory name of the March 7, 2001 conviction's statutory name, the court finds that the probative value of the statutory name, *i.e.* criminal possession of a controlled substance in the third degree, is substantially outweighed by the high risk for unfair prejudice if the statutory name is introduced to the jury"). The fact that Marshall has been previously convicted of crimes is sufficient to allow defendants to impeach Mr. Marshall's credibility, without further permitting defendants to unfairly prejudice plaintiff by inquiring into the name of the offense, the level of offense, or the underlying details of each incident. The undue prejudice Mr. Marshall's would suffer as a result of such inquiry would substantially outweigh any additional probative value it might provide. See Daniels, 986 F.Supp.at 251 (limiting Defendant's use of Plaintiff's conviction to fact and date of conviction); Martin v. Nat'l R.R. Passenger Corp., 1998 WL 575183, *4 (S.D.N.Y. 1998)(limiting cross-examination on the subject of a witness' prior conviction to the crime, the court, the sentence and the date of conviction). Furthermore, any incidental reference to Mr. Marshall's criminal history in otherwise admissible documents must be properly redacted.

20

# A767

## IV.   THE DISTRICT ATTORNEY'S TESTIMONY IS INADMISSIBLE FOR ANY PURPOSE OTHER THAN AUTHENTICATION

### A.   *The Assistant District Attorney's Testimony is Irrelevant and Inadmissible as a Matter of Law*

Under the law of this Circuit, the assistant district attorney's testimony has absolutely

no relevance to the Malicious Prosecution claim and must be excluded as a matter of law.

See Cameron v. City of New York, 598 F.3d 50, 65 (2d. Cir. 2010)("For all these reasons, we

hold that prosecutors' opinions as to probable cause and complaining officers' credibility are

*irrelevant in virtually all cases* involving claims of malicious prosecution.") (emphasis

added). In fact, the Second Circuit in Cameron reversed Judge Crotty for his decision to

allow the assistant district attorney to testify as to the element of probable cause in plaintiff's

malicious prosecution claim because the danger of unfair prejudice of such testimony far

outweighed the minimal probative value of such evidence, noting that:

> If all cases of malicious prosecution were taken to trial, and prosecutors were
> called to testify about why they had originally pursued certain charges,
> then…plaintiffs who have legitimate claims of both malicious prosecution and
> other torts, such as false arrest (which almost always travels in malicious
> prosecution's sidecar), effectively would be forced to forgo their malicious
> prosecution claims. Otherwise, such plaintiffs would risk exposing *all* of their
> claims to *highly prejudicial* testimony from seemingly reputable sources-
> testimony a district judge would not consider admitting in the absence of the
> malicious prosecution claim.

Id. (emphasis added). Accordingly, since the district attorney's testimony would

necessarily represent impermissible vouching for the officers' credibility and would

insurmountably prejudice *all* of the plaintiff's claims in this matter, it must be precluded as a

matter of law.

# A768

## V.    ANY REFERENCE TO PLAINTIFF'S EMPLOYMENT HISTORY MUST BE EXCLUDED AS IRRELEVANT AND UNDULY PREJUDICIAL

Any reference to plaintiff's unemployment history must be excluded as irrelevant and palpably improper. Plaintiff has testified at is deposition that he was working part time as a non-W2 employee, however, any evidence or testimony regarding that employment should be excluded as irrelevant and improper. Given that there is no claim for lost wages or lost earnings in this case – the only proper purpose for which this evidence may be admitted – it must be precluded as it will only serve to impermissibly encourage the jury to find that plaintiff is a "bad guy" and should not be awarded any compensation in this matter. See Mischalski v. Ford Motor Company, 935 F.Supp. 203, 207 (E.D.N.Y. 1996)("As Ford points out, evidence that a plaintiff was working illegally is admissible where it is relevant to the issue of lost wages and future earnings…[h]owever, plaintiff has stated that he will not seek damages for lost wages or future earnings in this case. Accordingly, evidence that plaintiff was working illegally is irrelevant to the issue of damages in the instant action."). Accordingly, any such evidence must be excluded as palpably irrelevant and unduly prejudicial.

## VI.    ANY REFERENCE TO PLAINTIFF'S PRIOR OWNERSHIP OF VEHICLES MUST BE EXCLUDED AS IRRELEVANT AND UNDULY PREJUDICIAL

At his deposition, defense counsel spent an inordinate amount of time questioning Marshall about the number of vehicles he has owned in the past. This information has no bearing on any issue in this case. Further, this line of questioning at trial would serve no purpose other than to confuse the jury and improperly permit the defendants to make prejudicial implications about Mr. Marshall's finances. There is no evidence defendants knew about how many cars plaintiff owned prior to his arrest, nor is there any cognizable

22

## A769

reason how that information would illuminate whether they had probable cause to stop and arrest plaintiff on May 15, 2008. This information is simply another veiled attempt to paint Marshall as a bad guy and is explicitly prohibited by Rule 404 as impermissible character evidence.

### CONCLUSION

Accordingly it is respectfully requested that Your Honor grant plaintiff's motion in its entirety as plaintiff will undoubtedly be unable to obtain an impartial trial if any of this evidence is disclosed to a jury. None of this evidence is probative of any issue that is necessary to resolve the factual disputes regarding Mr. Marshall's May 15, 2008 arrest and related criminal charges. It is irreparably prejudicial to the plaintiff and if it is admitted will serve only to do what defendant wish – namely conduct a referendum on plaintiff's character and criminal history, distract the jury and gain a defense verdict based on plaintiff's criminal history. The single relevant inquiry in this case is not – as defendant would suggest – whether defendant has *always* li ved a law abiding existence, but instead whether the defendant committed any of the acts alleged **on May 15, 2008**. As such, for all of the foregoing reasons, it is respectfully submitted that plaintiff's motion *in limine* be granted in its entirety and that this Court should grant such other and further relief as it deems just and proper.

Dated: New York, New York
      April 9, 2012

                                    Respectfully submitted,

                                    COHEN & FITCH LLP

By: _____
                      GERALD COHEN
                      COHEN & FITCH LLP
                      233 Broadway, Suite 1800
                      New York, N.Y. 10279
                      (212) 374-9115

gcohen@cohenfitch.com

JON L. NORINSBERG
225 Broadway, Suite 2700
New York, NY 10007
(212) 791-5396
norinsberg@aol.com
Attorneys for Plaintiff

A771

<u>PLAINTIFF'S REQUEST TO CHARGE, DATED APRIL 9, 2012</u>
(pp. A771-A801)

REPRODUCED FOLLOWING

A772

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JOSHUA MARSHALL,

                                        Plaintiff,

                                                         **PLAINTIFF'S REQUESTS TO**

                    -against-                            **CHARGE**

P.O. SALIM RANDALL, Shield No. 15331, Individually
and   in   His   Official   Capacity,   P.O.   MICHAEL
BURBRIDGE, Shield No. 15488, Individually and in His
Official Capacity,
                                                        **10 CV 2714 (JBW)(VVP)**

                                        Defendants.

--------------------------------------------------------------------X


        Plaintiff JOSHUA MARSHALL, by his attorneys, pursuant to Rule 51 of the

Federal Rules of Civil Procedure and to the Court's individual rules and practices, respectfully

requests that the Court give the following instructions to the jury.  Plaintiff further requests that

the jury be given a copy of the instructions during their deliberations.

Dated:        New York, New York
              April 9, 2012
                                        COHEN & FITCH LLP

                                        By: _____/S_____
                                             GERALD COHEN
                                             COHEN & FITCH LLP
                                             233 Broadway, Suite 1800
                                             New York, N.Y. 10279
                                             (212) 374-9115
                                             gcohen@cohenfitch.com

# A773

JON L. NORINSBERG
225 Broadway, Suite 2700
New York, NY 10007
(212) 791-5396
norinsberg@aol.com
Attorneys for Plaintiff

TO:   Michael A Cardozo, City of New York
      Assistant Corporation Counsel
      The City of New York Law Department
      100 Church Street
      New York, New York 10007

# A774

### Introductory Remarks

Members of the jury, you are about to enter your final duty, which is to decide the fact issues in this civil case. Before you do that, I will instruct you on the law. Please pay close attention to me now. I will be as clear as possible.

### Role of the Court

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room. You will receive a copy of these instructions to take with you into the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be -- or ought to be -- it would violate your sworn duty to base a verdict upon any other view of the law than the one I give you.

### Role of the Jury

Your role, as I have earlier said, is to consider and decide the fact issues in this case. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the evidence; you determine the credibility or believability of the witnesses; you resolve whatever conflicts may exist in the testimony; you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them; and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is anything I may have said during the trial or may say during these instructions [about a fact issue] to be taken instead of your own independent recollection. What I say is not evidence. It is your own independent recollection of the evidence that controls. In this connection, remember that a question put to a witness is never . evidence. Only the answer is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record.

If there is any difference or contradiction between what any lawyer has said and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence -- not the lawyers' and not mine --that controls.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether the plaintiff or the defendant has presented the more convincing evidence.

# A776

I also ask you to draw no inference from the fact that upon occasion I may have asked questions of certain witnesses. These questions were intended only for clarification or to move things along, and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other of the witnesses. **It is important that you understand that I wish to convey no opinion as to the verdict you should render in this case, and that if I did convey an opinion, you would not be obliged in any way to follow it.**

In determining the facts, you must weigh and consider the evidence without regard to sympathy, prejudice or passion for or against any party and without regard to what the reaction of the parties or the public to your verdict may be. I will later discuss with you how to pass upon the credibility of the witnesses.

## Burden of Proof

As this is a civil case, you also have to consider who has the burden of proof with regard to that claim. When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

In this case, the burden of proof depends on which claim is being considered by you. With respect to the false arrest claim, the burden of proof rests with the defendants. With respect to the malicious prosecution claim and fair trial claims, the burden of proof rests with the plaintiff. I will now explain further what I mean.

A warrantless arrest is presumptively unlawful under New York law, *see Broughton v. State, 37 N.Y.2d 451, 457-58, 373 N.Y.S.2d 87, 94-95, 335 N.E.2d 310, 315, cert.*

*denied, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975)*; the plaintiff need not prove either

malice or want of probable cause. Rather, the defendant has the burden of proving that the arrest

was authorized under *N,Y. Crim. Proc. Law § 140.10 (McKinney 1981)*, which requires

"reasonable cause", the equivalent of probable cause, *see id.* Practice Commentary at 177. Proof

of subjective good faith does not shield an officer from tort liability for an unlawful arrest,

though it may mitigate damages. Broughton v. State, 37 N.Y.2d 458-59, 373 N.Y. S.2d at 95,

335 N.E.2d 315; Smith v. County of Nassau, 34 N.Y.2d 18, 23-24, 355 N.Y..S.2d 349, 353, 311

N.E.2d 489, 492-93 (1974). Similarly, a deprivation of liberty without "reasonable cause" is a

*Section 1983* violation as to which the defendant bears the burden of proving reasonableness,

and a subjective good faith belief in the legality of the arrest is not enough -- at least at this stage

of Supreme Court decision making -- to escape *Section 1983* liability. See e.g. Harlow v.

Fitzgerald, 457 U.S. 800, 815, 73 L. Ed.2d 396, 102 S.Ct. 2727 (1982); Scheuer v. Rhodes, 416

U.S. 232, 247-48, 40 L.Fd 2d 90, 94 S. Ct 1683 (1974); Mcelveen v. County of Prince William,

725 F.2d 954, 956-57 (4th Cir.) Cert. Denied, 469 U.S. 819, 105 S. Ct. 88, 83 L. Ed. 2d 35

(1984); Raysor v. Port Auth. of N.Y. & N.J., 768 F.2d 34, 39-40 (2d Cir. 1985).

    Applying the foregoing principles to this case, plaintiff, Joshua Marshall, has the

burden of proof on all issues except the issue of probable cause to arrest. Accordingly, he must

prove every essential element of his claim by a preponderance of the evidence. The defendants,

however, must prove by a preponderance of the evidence that there was probable cause to arrest

plaintiff. If, after considering all of the testimony, you are satisfied that plaintiff has carried his

burden on each essential point as to which he has the burden of proof, then you must find for

plaintiff on his claims.

## A778

It is often said that evidence is to be weighed on scales, and if you find that the evidence on any issues of fact weighs equally in favor of plaintiff and defendants, then the party bearing the burden of proof would have failed its burden of proving the case as to that issue. If the scales tip, however slightly, toward party with burden of proof, that would constitute a preponderance of the evidence and would satisfy the legal burden of proof. If you find that the evidence on any issue of fact weighs equally in the favor of plaintiff and defendant, that is, that the scales are evenly balanced, then party with the burden of proof would have failed in his burden of proving the case as to that item and you should find for the opposing party.

Some of you no doubt have heard of "proof beyond a reasonable doubt", which is the standard of proof that is used in a criminal trial. A plaintiff in a civil case does not have to satisfy that requirement, and you should put it out of your mind.

### Evidence/What is Not Evidence

The evidence from which you are to decide what the facts are consists of:

1)    the sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2)    the documents, the videotape, the audiotape, and other exhibits which may have been received into evidence;

3)    any facts to which all the lawyers may have agreed or "stipulated"; and

4)    any fact which I may have instructed you to accept as true.

Nothing else is evidence; not what the lawyers say, not what I say, not anything you heard outside the courtroom.

### Direct and Circumstantial Evidence

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his or her own senses -- i.e. something seen, felt, touched, heard or tasted. Direct evidence may also be in the form of an exhibit where the fact to be proven is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence as follows:

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

# A780

It is for you to decide whether a fact has been proven by circumstantial evidence. In making that decision, you must consider all the evidence related to that fact in the light of reason, common sense and your experience.

## Inference

During the trial you may have heard the attorneys use the term "inference," and in their arguments they may have asked you to infer, on the basis of your reason, experience and common sense, from one or more proven facts, the existence of some other facts.

An inference is not a suspicion or a guess. It is a logical conclusion that a disputed fact exists that we reach in light of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence. In drawing inferences you should exercise your common sense.

Keep in mind that the mere existence of any inference against the defendant does not relieve the plaintiff of the burden of establishing his case by a preponderance of the evidence. In order for the plaintiff to obtain a verdict in his favor, you must still believe from the credible evidence that he has sustained the burden cast upon him of proving his claims. If he has failed, then your verdict must be for the defendant. If you should find that all of the evidence is

# A781

evenly balanced, then the plaintiff has not sustained the burden of proof and your verdict should be for the defendant.

If and only if you determine, after carefully weighing all the evidence, that the facts favor the plaintiff by the standard I have articulated, then he has met the burden of proof.

## Credibility of Witnesses

You have had the opportunity to observe (all) the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of witness testimony.

How do you determine where the truth lies? You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility that a witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.

You should consider the opportunity the witness had to see, hear, and know the things about which they testified, the accuracy of their memory, their candor or lack of candor, their intelligence, the reasonableness and probability of their testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other believable testimony. You watched the witnesses testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness appear? What was the witness' demeanor while testifying? Often it is not what people say but how they say it that moves us.

In deciding whether to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether in such a situation the witness' testimony

reflects an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

If you find that any witness has willfully testified falsely as to any material fact (that is, as to an important matter) the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness' testimony as you deem true and disregard what you feel is false. As the sole judges of the facts, you must decide which of the witnesses you will believe, what portion of their testimony you accept, and what weight you will give to it.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

### Interest in Outcome

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances the witness' own interest. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. An interested witness is not necessarily less

credible than a disinterested witness. The fact that a witness is interested in the outcome of the case does not mean that he or she has not told the truth. It is for you to decide, based upon your own perceptions and common sense, to what extent, if at all, the witness' interest has affected his or her testimony.

In this case the interested witnesses are plaintiff Joshua Marshall, and defendants Police Officer Salim Randall, and Police Officer Michael Burbridge.

### Police Officer as Party

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

The fact that one or more defendant is a police officer entitles him to no greater consideration than that accorded to any other party to a litigation. By the same token he is entitled to no less consideration. All parties stand as equals at the bar of justice.

### Introduction To Plaintiff's Claims

In this action against Police Officer Salim Randall, and Police Officer Michael Burbridge, plaintiff Joshua Marshall seeks compensatory and punitive damages pursuant to Section 1983 of Title 42 of the United States Code for violation of his constitutional rights under the Fourth, and Fifth, Amendments, based upon defendants' role in arresting plaintiff without a warrant, probable cause, or consent to do so, causing plaintiff to remain in jail for approximately one hundred thirty-five (135) days and for providing false evidence and forwarding fabricated evidence to the District Attorney's Office, causing plaintiff to be denied a fair trial and causing plaintiff to be maliciously prosecuted over the course of approximately one (1) year.

### The Statute:  42 U.S.C. § 1983

Plaintiff Joshua Marshall brings this action claiming a violation of 42 U.S.C. § 1983, alleging that police officers, Police Officer Salim Randall, and Police Officer Michael Burbridge, acting under color of state law, deprived him of one or more rights, privileges or immunities secured by the constitution, laws or treaties of the United States.

Plaintiff asserts a claim under a federal civil rights law, 42 U.S.C. § 1983. The statute provides a remedy for individuals who have been deprived of their federal constitutional rights under color of state law. Section 1983 states in part that:

Every person who, under color of [state law], subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws, shall be liable to the party injured [for damages].

Section 1983 creates a form of liability in favor of people who have been deprived of rights secured to them by the United States Constitution. It was passed by Congress to enforce the Fourteenth Amendment of the Constitution. The Fourteenth Amendment provides in relevant part that:

no state shall . . . deprive any person of life, liberty, or property, without due process of law nor deny to any person within its jurisdiction the equal protection of the laws.

Section 1983 itself does not establish or create any federally protected right. Rather, it is the statute that allows the plaintiff in this case to enforce rights guaranteed to him by the federal Constitution.  Later in these instructions I will explain to you what these federal

# A785

constitutional rights are, and what the plaintiff must show to demonstrate a violation of these rights.

(Authority:  4 Martin A. Schwartz & George C. Pratt, <u>Section 1983 Litigation Jury Instructions</u> (2000) (hereinafter "Schwartz"), Instruction 3.01.1.)

## Elements of a Section 1983 Claim

To establish a claim under Section 1983, plaintiff must demonstrate, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law;

Second, that in so acting, one or more of the individual defendants violated one or more constitutional rights of the plaintiff; and

Third, that a defendant's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff.

I shall now examine each of the three elements in greater detail.

(Authority:  4 L. Sand, J. Siffert, S. Reiss, J. Sexton, J. Thorpe, <u>Modern Federal Jury Instructions</u> (1988) (hereinafter "Sand"), Instruction 87-68.)

## First Element:  Action Under Color of State Law

The first element of plaintiff's claim is that defendants acted under color of state law.

In this case, it is not disputed that, in the incident in question, the individual defendants were acting in their official capacity as a New York City police officers and, therefore, that were acting under color of state law.  The parties agree that the defendants were acting under color of state law.

# A786

Your job will be to determine whether plaintiff has established, by a preponderance of the evidence, the remaining two elements of his Section 1983 claim: specifically, whether defendants deprived plaintiff of a constitutional right, privilege, or immunity, and if so, whether defendants' acts were the proximate cause of the injuries and consequent damages sustained by plaintiff.

## Second Element: Deprivation of a Federal Right

The second element of plaintiff's claim is that he was deprived of a federal constitutional right by one or more of the defendants. Mr. Marshall claims that his federal constitutional rights were violated in three ways. First, Mr. Marshall claims that the defendants subjected him to an unlawful arrest without probable cause in violation of his Fourth Amendment rights. Second, Mr. Marshall claims that the defendants subjected him to excessive force during and after the course of his arrest in violation of his Fourth Amendment rights. Third, Mr. Marshall claims that the defendants maliciously caused him to be criminally prosecuted without probable cause in violation of his Fourth Amendment rights.

I will instruct you in detail as to what Mr. Marshall must show to establish each of the claimed violations of his constitutional rights. If you find that Mr. Marshall meets those requirements as to any one or more of the claimed violations of his constitutional rights, you must find in Mr. Marshall's favor and award him any damages that were proximately caused by those violations.

Mr. Marshall need not show that any defendant intended to deprive him of his constitutional rights. The fact that any defendant had no specific intent or purpose to deprive Mr. Marshall of his constitutional rights will not absolve them from liability if the defendant did in fact deprive Mr. Marshall of those rights, so long as defendants' acts themselves were intentional

# A787

rather than accidental.

Source: Hudson v. City of New York, 271 F.3d 62, 68-69 (2d Cir. 2001) (holding that specific intent is not an element of a § 1983 claim).

### The First Part of the Second Element:  Commission of the Acts

You must first determine whether or not the defendants acted in the manner alleged by plaintiff -- that is, that the defendant falsely arrested, caused plaintiff to be maliciously prosecuted, and/or caused plaintiff to be denied a fair trial.

### Introduction to Plaintiff's Substantive § 1983 Claims

Plaintiff makes three substantive claims under the United States Constitution: false arrest, malicious prosecution, and denial of fair trial.  I will now address each of these claims.

### First Substantive Claim: False Arrest

Plaintiff alleges that he was falsely arrested by the defendants, because defendants did not have a warrant, nor did they have a justification recognized by law for his arrest. The defendants contend that the arrest of plaintiff was lawful because there was probable cause to arrest plaintiff under the laws of the State of New York.

Whether probable cause existed depends upon whether a reasonably prudent person would have believed that the plaintiff committed a crime, on the basis of the facts known to the defendants at the time the prosecution was initiated, or what they reasonably believed to be true. The fact that the defendants personally believed that the plaintiff was guilty is not enough if a reasonably prudent person would not have believed that to be so.  Whren v. United States, 517 U.S. 806, 813 (1996). Probable cause, often referred to as reasonable cause, exists when an officer has knowledge of facts and circumstances which are collectively of such weight and

# A788

persuasiveness as to convince a person of ordinary intelligence, judgment and experience, that it is reasonably likely that the person arrested committed a crime.

Under the laws of the State of New York an arrest conducted without an arrest warrant is presumptively unlawful. Defendants do not dispute that plaintiff was arrested without a warrant. Therefore, Mr. Marshall's arrest is presumed to be unlawful and it is the defendants' burden to show by a preponderance of the evidence that they had probable cause to believe that Mr. Marshall had committed or was about to commit a crime at the time that they arrested him. Raysor v. Port Auth. of N.Y. & N.J., 768 F.2d 34, 39-40 (2d Cir. 1985).

Since there was no arrest warrant, plaintiff's arrest in this case is presumed unlawful and plaintiff need only establish that he was falsely arrested by proving each of the following elements by a preponderance of the evidence: (1) defendants intentionally arrested plaintiff; (2) plaintiff was aware of the arrest; and (3) plaintiff did not consent to that arrest.

In this case defendants do not dispute that they intentionally arrested plaintiff, that plaintiff was aware of the arrest, and that plaintiff did not consent to that arrest. Defendants contend, however, that plaintiff's arrest was justified because it was supported by probable cause.

Probable cause exists when a police officer has knowledge of facts and circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that the person arrested committed an offense.

Since the defendants assert that the justification for the arrest was that they had probable cause, you must decide if defendants have met their burden of proving by a preponderance of the evidence that there was probable cause for plaintiff's arrest so as to rebut the presumption that

the arrest in this case was unlawful. Raysor v. Port Auth. of N.Y. & N.J., 768 F.2d 34, 39-40 (2d Cir. 1985), Amore v. City of Ithaca, 2008 U.S. Dist. LEXIS 26035 (N.D.N.Y Mar. 28, 2008).

If you find that the defendants have failed to show by a preponderance of the evidence that they had probable cause to arrest Mr. Marshall, you must find in Mr. Marshall's favor and award him any damages that were proximately caused by defendants' false arrest of Mr. Marshall.

## Second Substantive Claim: Malicious Prosecution

Mr. Marshall alleges a claim of malicious prosecution against all defendants. In order to establish a claim of malicious prosecution, plaintiff must prove by a preponderance of the evidence that: (1) the defendants commenced a criminal proceeding against the plaintiff; (2) the criminal proceeding was terminated in plaintiff's favor; (3) there was an absence of probable cause for the proceeding; and (4) the defendant's acted with actual malice in commencing the proceeding against plaintiff. Rogers v. City of Amsterdam, 303 F.3d 155, 160 (2d Cir. 2002).

With respect to the first requirement, the parties do not dispute that the defendants commenced a criminal proceeding against the plaintiff. Therefore, I instruct you as a matter of law that plaintiff has met his burden of proving that the first requirement of his malicious prosecution claim.

With respect to the second requirement – favorable termination – New York law does not require a malicious prosecution plaintiff to prove his innocence, or even that the termination of the criminal proceeding was indicative of innocence. Rather, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence. See Cantalino v. Danner, 96 N.Y.2d 391, 396, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001) ("[T]he question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the

# A790

accused."). You may draw an inference that an action has been favorably terminated when the reason for dismissal is based on the fact that the prosecutor cannot prove the case beyond a reasonable doubt and that the charges based on that incident cannot ever be brought again. See Stampf v. Long Island R.R. Authority, 2010 WL 2517700 (E.D.N.Y. 2010); Murphy v. Lynn 118 F.3d 938 (2d Cir. 1997).

With respect to the third requirement, you must determine whether, at the time the defendants completed the complaint report and/or provided information to the district attorney's office, there was probable cause to believe that Mr. Marshall had committed each and every one of the crimes or offenses with which he was charged. Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991) (holding that probable cause as to one charge does not preclude a malicious prosecution claim as to other charges).

Mr. Marshall was charged with Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree and Criminal Possession of Stolen Property in the Fourth Degree.

Criminal Possession of a Weapon in the Second Degree defined in New York State Penal Law Section 265.03(3) states in pertinent part:

> A person is guilty of criminal possession of a weapon in the second degree when: such person possesses any loaded firearm.

Criminal Possession of a Weapon in the Fourth Degree defined in New York State Penal Law Section 265.01(1) states in pertinent part:

> A person is guilty of criminal possession of a weapon in the fourth degree when: He or she possesses any firearm, ...

Criminal Possession of Stolen Property in the Fourth Degree defined in New York State

# A791

Penal Law Section 165.45(4) states in pertinent part:

> A person is guilty of criminal possession of stolen property in the
> fourth degree when he knowingly possesses stolen property, with
> intent to benefit himself or a person other than an owner thereof or
> to impede the recovery by an owner thereof, and when: The
> property consists of one or more firearms, rifles and shotguns, as
> such terms are defined in section 265.00 of this chapter.

If you find that there was an absence of probable cause for any one or more of the three

offenses with which Mr. Marshall was charged, you should deem the third requirement of

malicious prosecution to be satisfied. Id.

If you conclude that defendant did not have probable cause to believe that Mr. Marshall

had committed the crime charged, then you must next consider element (4), whether defendants

acted maliciously in initiating the prosecution. With respect to the fourth requirement, malice

does not have to be actual spite or hatred, but means only that the defendants must have

commenced the criminal proceeding due to a wrong or improper motive, something other than a

desire to see the ends of justice served. If you find that defendant did not have probable cause

for believing that the plaintiff was guilty at the time he initiated the prosecution, you may,

although you are not required to, infer from that fact alone that defendant acted maliciously.

Zellner v. Summerlin, 494 F.3d 344, 365 (2d Cir. 2007).

If you find that Mr. Marshall has proven by a preponderance of the evidence that the

defendants initiated plaintiff's prosecution for a purpose other than bringing an alleged criminal

to justice, without any reasonable ground for the belief that plaintiff committed an offense, and

with reckless disregard of plaintiff's rights, then you must find for the plaintiff on this claim.

# A792

### Third Substantive Claim:  Denial of Fair Trial

When a government officer creates false information likely to influence a jury's decision and forwards that information to prosecutors and/or the grand jury, he violates the accused's constitutional right to a fair trial.  Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 130 (2d Cir.1997).  The constitutional right to fair trial is grounded on the premise that a person should not be deprived of liberty on the basis of false evidence fabricated by a government officer.  Scotto v. Almenas, 143 F.3d 105, 113 (2d Cir.1998); Ricciuti,124 F.3d at 130.

In order to establish that plaintiff was denied a fair trial, the plaintiff must prove each of the following elements by a preponderance of the evidence: (1) defendant created false evidence; (2) the defendant forwarded that false evidence to the prosecutor and/or the grand jury; and (3) plaintiff was deprived of liberty as result of that false evidence.  Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000).

As for element (1), you must decide whether defendant created false evidence. Plaintiff contends that the evidence provided to the District Attorney's by defendants were false in the following respects:

> 1) Defendants falsely alleged that they observed Joshua Marshall remove a gun from his waist band.
>
> 2) Defendants falsely alleged they observed Joshua Marshall throw said gun.

If you find that the defendants did not falsify this evidence, your finding will be that the plaintiff was not denied a fair trial and you will find for the defendant.  If, however, you find that defendants did falsify these allegations, you must then determine whether plaintiff proved each of the remaining elements.

With respect to Elements (2) and (3), it is undisputed that the defendant provided this evidence to the prosecutor, and that the plaintiff was deprived of his liberty when he spent

one hundred thirty-five (135) days in jail and approximately one (1) year making court appearances before the case was ultimately dismissed by the District Attorney's Office. Therefore, I instruct you as a matter of law that plaintiff has met his burden of proving that defendant forwarded said evidence to the prosecutor, and plaintiff was deprived of his liberty as a result.

If you find that defendant did create false evidence, in this case, you must find that plaintiff was deprived a right to fair trial.

Unlike a malicious prosecution claim, a denial of fair trial claim does not require a finding of whether defendant had probable cause to initiate and continue the criminal proceeding. Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003). Even if you find that defendant had probable cause, as previously discussed in plaintiff's malicious prosecution claim, you may still find that plaintiff was denied his right to a fair trial, if you find that defendant forwarded fabricated/false evidence to the prosecutor and/or the grand jury, which ultimately led to plaintiff's loss of liberty.

### Party's Failure To Produce Evidence

If you find that a party could have produced certain evidence, and that the evidence was within that party's control, and that this evidence would have been relevant in deciding facts in dispute in this case, you are permitted, but not required, to infer that the evidence, if produced, would have been unfavorable to that party.

In deciding whether to draw this inference, you should consider whether the evidence that was not produced would merely have duplicated other evidence already introduced. You may also consider whether the party has offered a reason for not producing this evidence, and whether that reason was explained to your satisfaction.

# A794

(Authority: Schwartz, Instruction 2.04.1.)

## Damages – Introduction

If you find that plaintiff has proved by a preponderance of the evidence all of the elements of one or more of his claims for relief for the alleged violation of his federal or state rights, you must then decide if he suffered any damages as a result of the violation.

The fact that I am giving you instructions on damages does not mean that you must reach the issue of damages; nor does it mean that I have any opinion as to liability one way or the other. It is for you alone to decide in accordance with my instructions whether a defendant whom you are considering is liable.

You should not reach the issue of damages unless you find that plaintiff has established liability on at least one of his Section 1983 or state claims.

Should you decide that plaintiff has proved a particular claim by a preponderance of the evidence, you must consider awarding three types of damages: compensatory damages, nominal damages, and punitive damages. I will now define each type of damages.

(Authority: Schwartz, Instruction 2.05.1.)

## Compensatory Damages

If you find that defendant is liable to plaintiff, then you must determine an amount that is fair compensation for all of plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make plaintiff whole; that is, to compensate plaintiff for the damage that he has suffered. If plaintiff wins, he is entitled to compensatory damages as a matter of law for his loss of liberty and emotional distress resulting from his arrest and prosecution.   Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004) (loss of liberty is entitled to compensatory and not merely nominal damages).   This means that if you

believe that plaintiff suffered emotional distress and a loss of liberty as a result of defendants' conduct you must award compensatory damages for the amount of time that defendant was deprived of his liberty.

You must award compensatory damages only for injuries that plaintiff proves were proximately caused by a defendants' allegedly wrongful conduct. The damages that you award must be fair compensation for all of plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries that plaintiff has actually suffered, or that plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstance permit.

In assessing compensatory damages, you must include an amount attributable loss of liberty and emotional distress resulting from his arrest and prosecution that you determine to be reasonable compensation in the light of all the evidence in this case. Kerman v. City of New York, 374 F.3d 93, 123-25 (2d Cir. 2004) (loss of liberty is recognized as a recoverable compensatory damage). Consequently, the law does not try to fix, nor does the law permit, a precise formula by which loss of liberty and emotional damages as an element of compensatory damages may be measured and reduced to dollars and cents.

# A796

In this case the loss of liberty Mr. Marshall contends he suffered is in two ways. First, Mr. Marshall contends that as a result of these charges he remained in jail for one hundred thirty-five (135) days. Second, Mr. Marshall contends that the requirement to attend court hearings while these Felony charges were pending against him for approximately one (1) year, and the general requirement to put himself at the disposal of the court throughout that time amounted to a deprivation of his liberty. Defendants do not dispute that Mr. Marshall was deprived of his liberty when he spent one hundred thirty-five (135) days in jail and approximately one (1) year making court appearances before the case was ultimately dismissed by the District Attorney's Office. Further, Mr. Marshall is claiming he suffered emotional distress in having to defend himself against these false charges.

Instead of providing a formula for measuring these damages, the law leaves the determination of the amount of damages to the common sense and good judgment of you, the jurors. You should arrive at a monetary amount, in the light of your common knowledge and general experience, and without regard to sentiment, that you deem to be fair, reasonable, and adequate. In other words, without favor, without sympathy, and without any precise formula, you as jurors must arrive at a sum of money that will justly, fairly, and adequately compensate plaintiff for the loss liberty you find that Mr. Marshall endured as the direct result of any constitutional deprivation he may have suffered. The amount of damages should be neither excessive nor inadequate. It should be fair, just, and reasonable.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances.

If you find for plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date. In addition, if you find that plaintiff is

reasonably certain to suffer damages in the future from his injuries, then you should award him the amount you believe would fairly compensate him for such future damages.

(Authority: Schwartz, Instructions 18.01.1, 18.01.5, 18.01.8.)

### Punitive Damages

If you have awarded plaintiff either compensatory or nominal damages, the law permits the jury, under certain circumstances, to award plaintiff punitive damages in order to punish the wrongdoer for the violation of constitutional rights, or some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.

If you, the jury, should find, from a preponderance of the evidence, that the conduct of defendants that proximately caused injury or damage to plaintiff was maliciously, or wantonly, or oppressively done, then the jury may, if in the exercise of discretion they unanimously choose to do so, award such amount as the jury shall unanimously agree to be proper as punitive damages.

An act or a failure to act is maliciously done if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually or toward all persons in any group or category of which the injured person is a member.

An act or a failure to act is wantonly done if done in reckless disregard of, or callous disregard of, or indifference to the rights of, one or more persons, including the injured person.

An act or a failure to act is oppressively done if done in a way or manner that injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

Whether or not to make an award of punitive damages is a matter exclusively within the discretion of the jury. When awarded, the amount of such extraordinary damages must be fixed with calm discretion and sound reason, and must never be either awarded or fixed in amount because of any sympathy, or bias, or prejudice with respect to any party to the case. In fixing the amount of punitive damages, you must consider the degree of reprehensibility of the defendant's conduct and the relationship between the amount of punitive damages to any actual harm inflicted upon plaintiff.

(Authority: Schwartz, Instruction 18.07.1.)

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for yourself but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Every juror should be heard. No one juror should hold the center state in the jury room and no one juror should control or monopolize the deliberations. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion with in your good conscience appears to be in accordance with the truth.

## **Selection of Foreperson**

Your foreperson will preside over the deliberations and speak for you here in open

court. The foreperson has no greater voice or authority that any other juror.

The foreperson will send out any notes and, when the jury has reached a verdict, he or she will notify the Marshal that the jury has reached a verdict.

### Return of Verdict

I will give you a verdict sheet/form to be filled out by the jury. The purpose of the questions on the form is to help us - the Court, and counsel for Plaintiff and Defendants - to understand what your findings are. I will hand this form, which contains a set of questions, to the Clerk who will give it to you so that you may record the decision of the jury with respect to each question.

No inference is to be drawn from the way the questions are worded as to what the answer should be. The questions are not to be taken as any indication that I have any opinion as to how they should be answered. I have no such opinion, and even if I did it would not be binding on you.

Before the jury attempts to answer any question you should read the entire set of questions, and make sure that everybody understands each question. Before you answer the question, you should deliberate in the jury room and discuss the evidence that relates to the questions you must answer. When you have considered the questions thoroughly, and the evidence that relates to those questions, record the answers to the questions of the for I am giving you.

If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield you view simply because you are outnumbered. On the other hand, you should not hesitate to change or modify an earlier opinion that, after discussion with your fellow jurors, no longer persuades

## A800

you. In short, the verdict must reflect each juror's conscientious determination and it must also be unanimous.

### Closing Comment

Finally, I say this, not because I think it is necessary, but because it is the custom in this courthouse, you should treat each other with courtesy and respect during your deliberations.

After you have reached a verdict, your foreperson will fill in the Verdict Sheet that has been given to you, sign and date it and advise the Marshal outside you door that you are ready to return to the courtroom.

I will stress that you should be in agreement with the verdict which is announced in Court. Once you verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

All litigants stand equal in this courtroom. All litigants stand equal before the bar of justice. All litigants stand equal before you. Your duty is to decide between these parties fairly and impartially, to see that justice is done, all in accordance with your oath as jurors.

I thank you for your time and attentiveness.

Dated:      New York, New York
            April 9, 2012

                              Respectfully submitted,

                              Cohen & Fitch, LLP
                              233 Broadway, Suite 1800
                              New York, NY 10279

                              By:  _____/S_____
                                   Gerald Cohen

**A801**

JON L. NORINSBERG
225 Broadway, Suite 2700
New York, NY 10007
(212) 791-5396
norinsberg@aol.com

Attorneys for Plaintiff

TO:   Michael A Cardozo, City of New York
      Assistant Corporation Counsel
      The City of New York Law Department
      100 Church Street
      New York, New York 10007

A802

DEFENDANTS' MOTION IN LIMINE, DATED APRIL 12, 2012
(pp. A802-A829)

REPRODUCED FOLLOWING

# A803

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

JOSHUA MARSHALL,

                           Plaintiff,

         -against-

THE CITY OF NEW YORK, P.O. SALIM               10 Civ. 2714 (JBW)(VVP)
RANDALL, Shield No. 15331, Individually and in
His Official Capacity, P.O. MICHAEL
BURBRIDGE, Shield No. 15488, Individually and in
His Official Capacity, and P.O.s "JOHN DOE" #1-
10, Individually and in their Official Capacities, (the
name John Doe being fictitious, as the true names are
presently unknown),

                         Defendants.

----------------------------------------------------------------x

## DEFENDANTS' MOTION *IN LIMINE*

FELICIA GROSS
JOHANA CASTRO
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 788-0303
fgross@law.nyc.gov
jcastro@law.nyc.gov

Attorneys for Defendants

# A804

## PRELIMINARY STATEMENT

Plaintiff Joshua Marshall ("Marshall") brings this action against Police Officers Salim Randall and Michael Burbridge ("defendants"),[1] pursuant to 42 U.S.C. § 1983, alleging violations of his federal civil rights pursuant to 42 U.S.C. § 1983.[2] Specifically, plaintiff alleges that he was subjected to an unlawful arrest on May 15, 2008, by officers of the New York City Police Department ("NYPD").

Trial in this matter is scheduled to commence before the Honorable Jack B. Weinstein, United States District Judge, on April 23, 2012. Accordingly, defendants respectfully submit this memorandum of law in support of its motion seeking the following *in limine* relief: (1) defendants should be allowed to introduce evidence of plaintiff's prior arrest history; (2) plaintiff should be precluded from offering any evidence that he had been stopped and/or questioned by New York City Police Officers subsequent to the underlying incident; (3) plaintiff should be precluded from introducing evidence or inquiring into the Officers' disciplinary histories and the contents of their personnel files; (4) plaintiff should be permitted to inquire about plaintiff's March 15, 2008 arrest as it forms the basis of plaintiff's theory that defendants had animus toward him; (5) all evidence of fingerprint and DNA testing should be precluded; (6) plaintiff should be precluded from arguing lost wages to the jury; should plaintiff be allowed to argue lost wages, defendants should be permitted to question plaintiff about his failure to file income taxes and his invocation of the Fifth Amendment regarding his source of income; (7) plaintiff should be precluded from referencing the federal prosecution or lack thereof in this case;

---

[1] The claims against the City of New York were dismissed by Decision and Order, dated November 30, 2011 (Docket No. 41.)

[2] Defendants request that the Court amend the caption to reflect that there are only two defendants remaining in this case: Police Officers Salim Randall and Michael Burbridge.

- 2 -

# A805

(8) plaintiff should be precluded from calling any witnesses not on his witness list; (9) plaintiff should be precluded from referencing confidential settlement discussions between the parties, including any Rule 68 offers of judgment made; (10) plaintiff should be precluded from referring to and offering evidence at trial of any New York City Police Department procedure or Patrol Guide provision; (11) plaintiff should be precluded from offering any evidence that defense counsels are City attorneys and that the City may indemnify the remaining defendants; (12) plaintiff should be precluded from suggesting a specific dollar amount to the jury; and (13) defendants reserve the right to supplement these motions *in limine*.

### POINT I

### DEFENDANT SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF PLAINTIFF'S PRIOR AND SUBSEQUENT ARRESTS AND CONVICTIONS, SINCE SUCH HISTORY IS BOTH RELEVANT AND ADMISSIBLE

In this case, defendants will seek to introduce evidence and elicit testimony regarding plaintiff's prior felony convictions and regarding his prior arrests.

### A.    Plaintiff's Prior Arrest and Conviction History

Based on plaintiff's deposition testimony, and records obtained from the New York City Police Department ("NYPD") and the New York State Division of Criminal Justices Services, plaintiff's past arrests and convictions are as follows:

| No. | Arrest Date | Arrest Charges | Disposition |
|-----|-------------|----------------|-------------|
| 1. | 8/1/97 | -160.10 01 (Robbery, 2nd Degree) | Sealed – No conviction |
| 2. | 1/9/98 | -160.15 03 (Robbery, 1st Degree) | Pled Guilty to assault Sentence: 6 months; 5 years probation |
| 3. | 1/12/98 | -160.10 (Robbery, 1st Degree) | Sealed – No Conviction |

- 3 -

# A806

| | | | |
|---|---|---|---|
| 4. | 8/12/99 | -165.15 03 10 (Theft of Services) | Sealed – No Conviction |
| 5. | 6/9/99 | -221.10 02 (Marijuana Possession, 5th Degree) | Sealed – No Conviction |
| 6. | 1/15/02 | -120.14 01 (Menacing, 2nd Degree) <br> -265.01 01 (Crim. Poss. Weap. 4th Degree, 18-inch Machette) | Pled Guilty to 120.15 <br> Sentence: 6 months <br> Class B Misdemeanor |
| 7. | 12/10/02 | -220.16 01; 220.39 01; 220.31 (Criminal Possession of Controlled Substance ("CPCS") 3rd, 3rd and 5th Degrees) <br> -205.30 (Resisting Arrest) <br> -140.10 (Criminal Trespass) | Pled Guilty to 120.16 01 <br> Class B Felony <br> Sentence: 1 – 3 years <br> Time Served: 11/17/03 – 9/6/05 (Cayuga) |
| 8. | 3/26/03 | -220.03 00 (CPCS 5th Degree) | Pled Guilty to 120.06 05 <br> Class D Felony <br> Sentence: 1 – 3 years <br> Time Served: 11/17/03 – 9/6/05 (Cayuga) |
| 9. | 3/15/08 | -265.03 03  (Crim. Poss. Weap. 2nd Degree, Loaded Firearm) <br> -220.18 01; 220.50 02; 221.55 (CPCS 2nd Degree; Crim Sale of Marihuana; Crim Use of Drug Paraphernalia, 2nd Degree) | Sealed – No Conviction |
| 10. | 5/15/08 | -265.03 03 (Crim. Poss. Weap. 2nd Degree, Loaded Firearm) <br> -165.45 04 (Crim. Poss. Of Stolen Property, Firearm) | Sealed – No Conviction <br> ** Arrest in this case ** |
| 11. | 5/18/09 | -220.21 01 (CPCS 1st Degree) | Pled Guilty to 220.16 01 <br> Class B Felony <br> Sentence: 1 – 3 years <br> Time Served: 10/5/10 – 7/22/11 (Wyoming) |

## B.    Plaintiff's Convictions are Admissible Pursuant to Fed. R. Evid. Rule 609.

Generally, a plaintiff's prior felony conviction is admissible pursuant to Federal

Rule of Evidence 609(a)(1), which states in relevant part:

- 4 -

> [E]vidence that a witness other than an accused has been convicted
> of a crime shall be admitted subject to Rule 403, if the crime was
> punishable by death or imprisonment in excess of one year under
> the law under which the witness was convicted, and the court
> determines that the probative value of admitting this evidence
> outweighs its prejudicial effect to the accused....

Fed. R. Evid. 609(a)(1). "In balancing probative value against prejudicial effect under this rule,

courts examine the following factors: (1) the impeachment value of the prior crime, (2) the

remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at

issue, and (4) the importance of the credibility of the witness." Daniels v. Loizzo, 986 F. Supp.

245, 250 (S.D.N.Y. 1997) (citing United States v. Hayes, 553 F.2d 824, 828 (2d Cir. 1977)).

      The first factor of the balancing test, the impeachment value of the prior crime,

weighs in favor of admission. The convictions in question (12/02 and 3/03) are felony offenses

and Fed. R. Evid. 609(a)(1) contains a presumption that all felonies are generally probative of a

witness's propensity to testify truthfully. See U.S. v. Estrada, 430 F.3d 606, 617 (2d. Cir 2005)

(noting evidence of felony convictions should be admitted along with "inquiry into the 'essential

facts' of the conviction, including the nature or statutory name of each offense, its date, and the

sentence imposed"); Young v. Calhoun, 85 Civ 7584 (SWK), 1995 U.S. Dist. LEXIS 4555, at

*11 – 12 (S.D.N.Y. Apr. 7, 1995) (citing Gora v. Costa, 971 F.2d 1325, 1330 (7th Cir. 1992)

("The idea underlying Rule 609, whether right or wrong, is that criminals are more likely to

testify untruthfully.")).

      In terms of the second factor, plaintiff was released from custody as a result of his

2002 and 2003 convictions in September 2005. Rule 609(b) of the Federal Rules of Civil

Procedure imposes a time limitation by providing that evidence of convictions is not allowed if

more than ten years has elapsed since either the date of conviction or release of the witness from

confinement, whichever is later, unless, in the interests of justice, the probative value of the

**A808**

conviction substantially outweighs its prejudicial effect. Fed. R. Evid. 609(a)(1) and (b). In this case, plaintiff was released from custody approximately seven years ago. As such, defendants submit that plaintiff's convictions are not so remote as to render the admission of it at trial prejudicial. See Brown, 606 F. Supp. 2d 320 (finding that a conviction with an age of somewhere between five and seven years was neither so old as to decrease its probative value nor so new as to increase its probative value).

With regard to the third factor, plaintiff's prior felony convictions for possession of a controlled substance are qualitatively different than the allegations of possession of a firearm he faced in this case. Nevertheless, defendants acknowledge the similarity between these two types of crimes – namely possession of contraband items. While the two crimes share that similarity, they are otherwise distinct and separate allegations and defendants do not believe the jury will believe that because plaintiff previously pled guilty to a drug possession charge, he is more likely to have committed the firearm possession violation in this case. In any event, Defendants believe that any prejudice to plaintiff in this regard can be alleviated with a proper instruction to the jury as to the relevance of the prior felony conviction.

The final factor that must be examined by the Court in order to determine if a plaintiff's felony conviction is admissible pursuant to Federal Rule of Evidence 609 (a)(1) is the importance of the credibility of the witness. In Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, *4-5 (S.D.N.Y. Oct. 25, 2007), the Court found that prior felony convictions were admissible to impeach plaintiff's credibility in part because where "the versions of the events by the parties are radically different, witness credibility will be especially important in this case." Here, the probative value of plaintiff's convictions is substantial. As in McCarthy, plaintiff's credibility is especially important in the case at bar because the parties' versions of events are radically different. Specifically in regard to the unlawful arrest claim, the plaintiff's

- 6 -

version of events differs significantly from that of the Defendants, and, upon information and belief, plaintiff is going to be the only individual who will support his version of events. Thus, this factor too weighs in favor of admission of plaintiff's prior felony conviction. Blake v. City of New York, 05 Cv. 6652 (BSJ), 2007 U.S. Dist. LEXIS 95913 at *3 (S.D.N.Y. July 13, 2007) (Where a case is "narrowed to the credibility of two persons -- the accused and his accuser -- in those circumstances there is a greater, not less, compelling reason to explore all avenues which would shed light on which of the two witnesses is to be believed.") (quoting U.S. v. Ortiz, 553 F.2d 782, 785 (2d Cir. 1977)); Jones v. City of New York, 98 Civ. 6493 (LBS), 2002 U.S. Dist. LEXIS 2052, at *8 (S.D.N.Y. Feb. 11, 2002)(fact that plaintiff was the only witness who was going to support his version of events among factors that weighed in favor of admitting prior felony conviction).

Therefore, the probative value of admitting plaintiff's prior felonies outweighs any prejudicial effect and, as a result, defendants should be permitted to cross-examine plaintiff on his prior felony convictions.[3]

### C. Defendants Should Be Permitted To Question Plaintiff About His Prior Arrests to Mitigate Plaintiff's Claim for Damages.

Upon information and belief, plaintiff has been arrested on at least 5 prior occasions. Defendants should be permitted to cross-examine plaintiff regarding these prior arrests to mitigate or controvert his claim for damages in this case under Fed. R. Evid. 402.

---

[3]At the very least, defendants should be permitted to introduce the fact that plaintiff was previously convicted of a felony, the length of his sentence, and the timing of that conviction, but not the specific crime of which he has been convicted. See Sedney v. Blot, 00 Civ. 1302 (LTS) (HBP), 2003 U.S. Dist. LEXIS 21364, at *3 – 4 (S.D.N.Y. Dec. 1, 2003). This concession should address any possible prejudice that plaintiff may allege. see, e.g., United States v. Brown, 606 F. Supp.2d 306, 312 (E.D.N.Y. 2009) ("In the Second Circuit, it is within the discretion of the district courts to further limit the evidence of the prior conviction to exclude the nature or statutory name of the offense."); Daniels v. Loizzo, 986 F. Supp. 245, 251 (S.D.N.Y. 1997) (limiting "Defendants' use of the conviction to the fact and date of the conviction").

## A810

Plaintiff's prior and subsequent arrests and convictions are also pertinent to plaintiff's claims for

damages. Plaintiff alleges that, as a direct result of his May 15, 2008 arrest and prosecution, he

suffered emotional and mental distress. In particular, plaintiff alleged that as a result of his

unlawful arrest and lengthy incarceration, he suffered from "emotional distress, mental anguish,

shock, fright, apprehension, embarrassment, and deprivation of his constitutional rights."

Compl. ¶ 24. The fact that plaintiff has been arrested prior to and subsequent to the incident in

question, and that some of the arrests resulted in criminal convictions and lengthy incarcerations,

is directly relevant to causation, as it goes to the heart of plaintiff's allegations that any purported

emotional and mental distress was caused by the May 15, 2008 incident.

As aptly stated by Judge Matsumoto in a recent ruling on this issue, "a plaintiff

'who has had a number of prior arrests and detentions is likely to have suffered less distress than

one who has never before been detained ... .'" Banushi v. Police Officer Alvin L. Palmer Shield

No. 04009 & Equashia Allen, 08-CV-2937(KAM)(JO), 2011 U.S. Dist. LEXIS 419, *7-9

(E.D.N.Y. Jan. 4, 2011) (admitting evidence of plaintiff's prior arrests in trial involving false

arrest claim to mitigate plaintiff's claim of damages)(quoting Wilson v. City of New York, 06-

CV-229 (ARR)(VVP), 2006 U.S. Dist. LEXIS 90050, *1-2 (E.D.N.Y. Dec. 13, 2006)). Further,

the probative value of this evidence is not substantially outweighed by "the danger of unfair

prejudice, confusion of the issues, or misleading the jury." Banushi, 2011 U.S. Dist. LEXIS 419,

*7-9 (citing Fed. R. Evid. 403); see also Picciano v. McLoughlin, No. 5:07-CV-0781, 2010 U.S.

Dist. LEXIS 114704, *7 (N.D.N.Y Oct. 28, 2010) ("[Plaintiff's] subsequent arrests are probative

of plaintiff's claim for emotional damages, and the probative value of the testimony is not

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence.").

- 8 -

# A811

Defendants do not seek to admit evidence as to the nature of the crimes for which plaintiff was previously arrested. Rather, defendants will only seek to elicit evidence concerning the fact that plaintiff was arrested and the experience that plaintiff had while being processed for those arrests. See Ramos v. County of Suffolk, 707 F. Supp.2d 421, 424 (E.D.N.Y. 2010) (permitting defendant to question plaintiff about whether she had ever been arrested prior to and after the incident that was the subject of the litigation because the fact of the arrest "affected the plaintiff's claim for emotional distress damages," but precluding defendant from "go[ing] into what the reason for the arrest is."); Wilson v. City of New York, 06-CV-229 (ARR)(VVP), 2006 U.S. Dist. LEXIS 90050, at *1 (E.D.N.Y. 2006) (holding that plaintiff's prior experiences involving arrest and detention, including those which ended favorably and whose records are therefore sealed, may be relevant to the damages determination the jury will be asked to make at trial). As defendants do not seek to use these prior arrests as evidence that plaintiff acted in conformity with his prior bad acts, they submit that testimony regarding plaintiff's arrest and incarcerations is relevant, and hence admissible, under Federal Rules of Evidence 402 and 403.

As evidenced above, plaintiff is not a stranger to the criminal justice system and the circumstances of his prior arrests and detentions is relevant to an assessment of his damages in the current case. Accordingly, defendants should be permitted to elicit evidence regarding the fact that plaintiff has previously and subsequently been arrested and the experience that plaintiff had while being processed for those arrests.

## POINT II

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE THAT HE HAD BEEN STOPPED AND/OR QUESTIONED BY NEW YORK CITY POLICE OFFICERS RANDALL OR BURBRIDGE SUBSEQUENT TO THE UNDERLYING INCIDENT ON MAY 15, 2008.**

- 9 -

Plaintiff should be precluded from offering any evidence that he has been stopped and/or questioned by New York City Police Officers subsequent to the underlying incident on May 15, 2008.

Plaintiff testified during his deposition that he has been stopped and/or questioned by Officers Randall and Burbridge on numerous occasions without any justification subsequent to the underlying incident. See Pl's Dep., Gross Decl., Exhibit "A", pp. 128: 5-23; 129: 20-25; 130: 1-4; 13-25. However, because there is no separate claim against the officers for those alleged stops, and because there is no municipal liability claim against the City of New York, defendant submits that any testimony regarding these allegations is completely irrelevant, inflammatory, prejudicial and would unduly confuse the jury as well as result in a waste of time. As such, plaintiff should be precluded from testifying about subsequent police contact that did not result in his arrest pursuant to Fed. R. Evid. 402 and 403.

## POINT III

**PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF OR INQUIRING ABOUT ANY CIVILIAN COMPLAINT REVIEW BOARD COMPLAINTS AND INTERNAL AFFAIRS BUREAU INVESTIGATIONS ALLEGED AGAINST OFFICERS RANDALL OR BURBRIDGE OR ANY OFFICER THAT MAY BE CALLED AS WITNESSES**

Plaintiff should be precluded from introducing into evidence or inquiring about any prior Civilian Complaint Review Board ("CCRB") complaints and Internal Affairs Bureau ("IAB") investigations, or any other investigations, taken or alleged against defendants Randall and Burbridge and any other non-party police officer that may be called as a witness. Neither defendant Randall or Burbridge have ever been the subject of any substantiated complaint containing allegations similar to those in this matter, therefore defendants respectfully submit

- 10 -

# A813

that any documents, along with any line of questioning, concerning these matters should not be admissible pursuant to the Fed. R. Evid. 404(b) and 403.

Rule 404(b) of the Federal Rules of Evidence provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed. R. Evid. 404(b). Courts have consistently prohibited litigants from doing exactly what plaintiff may try to do in this case -- i.e., introduce evidence of a party's prior allegations of misconduct in an attempt to show the party's propensity to commit a particular act in question. As the Supreme Court held in Huddleston v. United States, 485 U.S. 681, 688 (1988), the decision to admit evidence under Rule 404(b) depends on "whether the danger of unfair prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Thus, Rule 404(b) requires a two-part analysis: first, whether the proposed evidence fits within one of the "exceptions" provided by the Rule, and second, even if it does, whether under Rule 403 the evidence's probative value is substantially outweighed by the potential for jury confusion or prejudice. Lombardo v. Stone, et al., 99 Civ. 4603 (SAS), 2002 U.S. Dist. LEXIS 1267, at *8 (Jan. 29, 2002, SDNY).

The Second Circuit has uniformly held that evidence of an officer's past bad acts are only admissible under Rule 404(b) if the alleged past bad act has a close nexus with the acts complained of by plaintiff in his complaint. Exemplary of this rule is the case of Berkovich v. Hicks, 922 F.2d. 1018 (2d. Cir. 1991) where plaintiff sought to introduce a police officer's past CCRB complaints to prove a "pattern of conduct" on the part of the officer with respect to his false arrest and excessive force claims. In upholding the trial court's exclusion of the CCRB

- 11 -

## A814

complaint, the Court held that: "[t]o merit admission under this theory, the extrinsic acts must share "unusual characteristics" with the act charged or represent a "unique scheme." Berkovich, 922 F.2d. at 1022 -1023 citing United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. 1978). Though the CCRB complaints at issue in Berkovich were unsubstantiated, the Court made it clear that even "[a]ssuming the seven prior complaints could be proved, they do not show the kind of *modus operandi* claimed in this case." Id.

Even assuming that a prior complaint filed against any police officer is somehow relevant to this case, it is nevertheless inadmissible under Rule 403. In Valenzuela v. Abate, 92 Civ. 9309, 1996 U.S. Dist. LEXIS 510 (S.D.N.Y. Jan. 22, 1996), the court found that, even if prior complaints had been relevant to some issue in the case (e.g., the existence of a pattern or a motive), the information about the incidents would still be inadmissible pursuant to Rule 403's balancing test because they occurred several months prior to the event that was the subject of the complaint. "Such temporal dislocation severely limits the probative value the incidents offer." Id. at *11. Consequently, any information regarding any prior complaints are inadmissible pursuant to Rule 403, since any assumed probative value of such information is both minimal and substantially outweighed by its significant potential to prejudice the jury. See Lombardo v. Stone, 99 Civ. 4603, 2002 U.S. Dist. LEXIS 1267 *11-12 (S.D.N.Y. Jan. 29, 2002) ("Rule 403 prohibits the introduction of similar act evidence, even when offered for a proper purpose, where its prejudicial effect, tendency to confuse the jury or to delay the trial outweighs its probative value").

Finally, the courts have made it clear that, even where the evidence concerning unsubstantiated allegations are sought to be introduced not to show that an officer committed a specific act of misconduct but rather to demonstrate that the City of New York is liable based on a deliberate indifference theory, such evidence should be excluded from evidence at trial.

- 12 -

Marcel v. City of New York, et al., 1990 U.S. Dist. LEXIS 4094, *22-*23 (S.D.N.Y. Apr. 11, 1990) (holding that "Unsubstantiated CCRB reports do not demonstrate a breach of a municipality's duty to train or supervise its police."); Law v. Cullen, et al., 613 F. Supp. 259, 262 (S.D.N.Y. July 15, 1985) ("In the absence of any substantiated charges of abuse, there is no basis for plaintiff's claim that Officer Cullen had a 'propensity' to use excessive force and, hence, no basis for its claim that the City was deliberately indifferent to such a propensity."); Sealey v. Fishkin, et al., 1998 U.S. Dist. LEXIS 20142, *9-*10 (E.D.N.Y. Dec. 2, 1998) (finding that "The officer's Civilian Complaint Review Board history report...shows that none of these claims was ever substantiated. Thus, this evidence would not suffice to prove deliberate indifference by the city to the need for any further training of this officer in particular or police officers in general."). Moreover, inquiry about any disciplinary histories, and other civil rights claims could not be used to establish any of the 404(b) exceptions because the City of New York is no longer a defendant in this action and as such, plaintiff has no claim for municipal liability. Second, the potential for confusion or prejudice substantially outweighs any probative value. Applying these factors, plaintiff should be precluded from questioning the individual defendant as well as any non-party Officers who may testify regarding their disciplinary histories and/or other civil rights claims which have been filed against them.

Accordingly, plaintiff should not be permitted to examine any witnesses concerning any prior or subsequent complaints or investigations. As indicated above, such evidence is barred by Rule 403 and 404(b) and will only serve to confuse and prejudice the jury.

### POINT IV

**DEFENDANTS SHOULD BE ALLOWED TO INQUIRE ABOUT PLAINTIFF'S MARCH 15, 2008 ARREST AS IT FORMS THE BASIS OF PLAINTIFF'S CONTENTION THAT THE OFFICERS HAD ANIMUS TOWARD HIM.**

- 13 -

# A816

Defendant should be permitted to inquire about plaintiff's March 15, 2008 arrest, as it forms the basis of plaintiff's contention that the officers involved in the May 15, 2008 arrest arrested him on May 15, 2008 because they knew about his earlier arrest on March 15.

Plaintiff testified that the officers involved in the May 15, 2008 arrest at issue in this case had animus toward him based on their knowledge of his earlier arrest on March 15, 2008. During his deposition, he stated that two of the three officers involved in his May 15 arrest had "bad blood" with him because, inter alia, they "[knew] my situation in March." See Ex. A, Dep. of Joshua Marshall at 122, ll. 13-18.[4]

Moreover, in his summary judgment papers, plaintiff contends that defendant Burbridge's knowledge of Marshall's arrest on March 15 "supports the inference that he arrested plaintiff because of his prior arrest for a gun charge." See Pl's Opp. To Def.'s Motion for Summary Judgment at 3 n.2 (Docket # 34).

## POINT V

**ALL EVIDENCE OF DNA AND FINGERPRINT TESTING SHOULD BE PRECLUDED; PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE ABOUT DEFENDANT RANDALL'S REFUSAL TO GIVE A DNA SAMPLE.**

---

[4] Plaintiff's deposition was conducted on April 26, 2011. The full exchange is as follows:

Q. Do you know the officer that searched you?
A. No.
Q. What happens after the search?
A. Like I said whose gun it is. Typical questions.
Q. Did you respond to that question?
A. I responded when I realized that the gentleman wasn't going to say nothing.
Q. Gentleman meaning Sip [Demetrius Meade]?
A. Correct. I pretty much told him that he know damn well whose gun it is.
Q. Who said that?
A. He saw what happened, but the officer, two of the officers were so in tune with me from always pulling me over, knowing my situation in March, they wasn't trying to listen to anything that I was saying or trying to get across.

Marshall Depo. 121, l. 25; 122, ll. 1-18.

## A817

### A.    All Evidence Regarding DNA Testing Should Be Precluded.

Once the gun was recovered from the scene of the incident, it was fume tested for fingerprints by an officer in the NYPD Evidence Collection Unit ("ECU").[5]  Samples of DNA were collected from the gun by the ECU using the bucchal swab method and sent out to the City Medical Examiner's Office for further testing.  Unfortunately, there was not enough DNA on the gun to form the basis of a comparison, thus no testing was possible.  See Ex. B, DNA Report. Defendants submit that any testimony regarding DNA is irrelevant, unduly prejudicial, and unnecessarily confusing to the jury.[6]

Moreover, plaintiff should be precluded from referencing the fact that defendant Randall declined to give a buccal DNA swab.  NYPD officers routinely decline to give such samples for privacy and other legal reasons having nothing to do with the facts of this particular case.  In any event, had defendant Randall given his DNA in this case, that would not change the fact that there was simply not enough material on the gun to test.  Randall's "elimination" sample" could not possibly have made any difference whatsoever to the test in light of the sample of DNA available.

Given that there was not enough DNA on the gun to meaningfully test, any testimony or other evidence regarding DNA testing should be precluded.

### B.    All Evidence Regarding Fingerprint Testing Should Be Precluded.

Finally, plaintiff should not be allowed to present evidence regarding fingerprinting or DNA testing because there has been no allegation that defendants Randall or Burbridge planted a gun.  During his grand jury testimony and deposition testimony, plaintiff

---

[5] There were insufficient fingerprints from which to make a comparison.

[6] Several commentators have suggested that juries are unduly influenced by DNA evidence, or the lack thereof.  See, e.g., Andrew P. Thomas, The CSI Effect: Fact or Fiction, 115 YALE L.J. POCKET PART 70 (2006); and Martin Finucane, Massachusetts High Court OKs Questions for Jurors about 'CSI effect,' BOSTON GLOBE, Sept. 2011.

## A818

Case 1 10-cv-02714-JBW-VVP   Document 61   Filed 04/12/12   Page 16 of 27 PageID # 983

testified that his associate [Demetrius Meade] tossed the gun. See Grand Jury Testimony at pp. 27-29; Marshall Deposition Testimony at p. 110, ll. 10-12. Moreover, the only issue to be decided by the jury is whether the officers saw plaintiff drop the gun, and, therefore, whether they had probable cause to arrest him at the scene. Any fingerprint or DNA testing, inconclusive or otherwise, was done after the arrest and therefore did not serve as the basis for the arrest. Whatever testing may have taken place with regard to the gun is irrelevant to the issue of whether the officers had probable cause to arrest. Accordingly, all evidence of DNA and fingerprint testing should be precluded.

### POINT VI

**PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING LOST WAGES TO THE JURY; SHOULD PLAINTIFF BE ALLOWED TO ARGUE LOST WAGES, DEFENDANTS SHOULD BE PERMITTED TO QUESTION PLAINTIFF REGARDING HIS FAILURE TO PAY HIS INCOME TAXES AND HIS INVOCATION OF THE FIFTH AMENDMENT WITH RESPECT TO HIS SOURCE OF INCOME.**

Plaintiff should be precluded from arguing lost wages to the jury, since he has not provided any documentary evidence in discovery demonstrating that he was gainfully employed. Without a W-2, payslip or other documentary evidence, plaintiff's only evidence of lost wages will be his testimony.

Should plaintiff be permitted to argue lost wages, Defendants should be permitted to cross-examine plaintiff about his failure to file his income taxes and about his invocation of the Fifth Amendment when asked whether drugs were a source of income between 2007 and the date of incident.

Fed. R. Evid. 611(b) provides, in pertinent part, that "cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed. R. Evid. 608(b) implements this by providing that specific instances of misconduct "may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . ."

Evidence that a witness has failed to file a tax return is a matter which affects the witness's credibility. Chnapkova v. Koh , 985 F.2d 79, 82 (2d Cir. 1993); Chamblee v. Harris & Harris, Inc., 154 F. Supp. 2d 670, 681 (S.D.N.Y. 2001); Mischalski v. Ford Motor Co., 935 F. Supp. 203, 208 (E.D.N.Y. 1996) (noting that failure to pay income taxes bears "directly on a plaintiff's propensity for truthfulness and must be admitted for impeachment purposes if plaintiff takes the stand."). In Chnapkova, the Second Circuit held that because the plaintiff's credibility was of such crucial importance, and because her failure to file tax returns bore directly on her credibility, the district court's decision to exclude testimony regarding that failure was an abuse of discretion. 985 F.2d at 82.

Since failure to file a tax return is admissible to impeach a witness's character for truthfulness, defendants should be permitted to cross-examine plaintiff regarding his failure to file income taxes. See Ex. A, Marshall Depo. at 66-67 (admissions by Joshua Marshall that he failed to file income taxes for at least two years). [7]

---

[7] Plaintiff's deposition was conducted on April 26, 2011. The exchange is as follows:

> Q: What did you earn gross total in sales say for 2006? By the way have you kept any records?
> A: No, I owed them some money for that.
> Q: I'm sorry?
> A: I owed him some money.
> Q: You owed who money? Money to the State tax?
> A: Yeah, because I didn't file for taxes that final year.

# A820

Finally, Defendants should be permitted to cross-examine plaintiff about his assertion of his Fifth Amendment Privilege when asked if he sold drugs between 2007 and May 15, 2008, and if he continues to assert this privilege at trial, the jury should be given an adverse inference instruction. See Ex. A, Marshall Depo. at 62-63 (invocation of Fifth Amendment by Joshua Marshall).[8]

The fact that plaintiff apparently may not have earned an "honest living" could be used to impeach his credibility with respect to the amount of his lost wages. Accordingly, defendants should be permitted to cross-examine plaintiff regarding his assertion of his Fifth Amendment Privilege when asked whether he was dealing drugs between 2007 and the night in question. United States v. Colasuonno, 05 Cr. 1110 (AKH), 2006 U.S. Dist. LEXIS 77587, at *10 (S.D.N.Y. Oct. 24, 2006) (holding that defendants are entitled to cross-examine witness regarding prior conduct that goes to the witness' credibility even if witness will assert the Fifth Amendment privilege, and if the witness does assert the privilege, the jury is entitled to an adverse inference instruction); see also United States v. Kaplan, 832 F.2d 676, 684 (1st Cir. 1987) (invocation of the Fifth Amendment during cross-examination is proper under Rule 608(b) and may be considered by the jury as a form of impeachment); United States v. Hartmann, 958 F.2d 774, 789 (7th Cir. 1992) (same). Moreover, the jury should be instructed that an adverse inference may be drawn by the fact that plaintiff asserted his Fifth Amendment privilege to these

---

[8] The exchange is as follows:

Q: Okay. All right. Still staying with this period did you ever make any money selling drugs?
A: From what time:?
Q: 2007 to May 15th?
   MR. HAZAN: I'm going to instruct the witness not to answer that question because he's protected by the Fifth Amendment not to self incriminate himself and it is not really relevant to this case anyway.
   Mr. STAVRIDIS: Okay, let the record show there is an instruction on the Fifth Amendment not to answer.

- 18 -

## A821

questions. Colasuonno, 2006 U.S. Dist. LEXIS 77587, at *10 (jury is entitled to adverse

inference instruction if witness asserts Fifth Amendment Privilege).

Therefore, plaintiff should be precluded from arguing lost wages to the jury. Should

plaintiff be permitted to argue lost wages, defendants should be able to cross-examine plaintiff

regarding his failure to pay income taxes and his assertion of his Fifth Amendment privilege and

the jury should be given an instruction that they may draw an adverse inference based on

plaintiff's refusal to answer this question.

### POINT VII

**PLAINTIFF SHOULD BE PRECLUDED FROM REFERENCING FEDERAL PROSECUTION OR LACK THEREOF IN THIS CASE, INCLUDING DOCUMENTS CONTAINING STATEMENTS REGARDING THE SAME.**

Plaintiff should be precluded from eliciting testimony, referencing or offering any

evidence that the United States Attorney's Office for the Eastern District of New York declined

to bring a federal case against Marshall for the events arising out of his May 15, 2008 arrest.

The City of New York produced in discovery a Complaint Follow-Up Report

(Bates No. NYC 36) which contains a notation to the effect that the NYPD presented the

Marshall arrest to Assistant United States Attorney Judy Phillips of the U.S. Attorney's Office

for the Eastern District of New York for possible federal prosecution under Operation "Trigger

Lock," but that the AUSA declined federal prosecution.

Defendant submits that any testimony or documentation regarding possible

federal prosecution is completely irrelevant, prejudicial, and would unduly confuse the jury as

well as result in a waste of time. As such, plaintiff should be precluded from eliciting testimony

## A822

or offering testimony or evidence regarding, or otherwise referencing, the lack of federal prosecution pursuant to Fed. R. Evid. 402 and 403.

Defendant further submits that the Complaint Follow-Up Report (Bates No. NYC 36) be precluded as AUSA Phillips statement is double hearsay and is precluded by Fed. R. Evid. 801(c).

### POINT VIII

**PLAINTIFF SHOULD BE PRECLUDED FROM CALLING ANY WITNESSES NOT LISTED ON PLAINTIFF'S WITNESS LIST, INCLUDING THOSE INVOLVED IN THE ANY CIVIL LAWSUITS, CCRB COMPLAINTS, OR IAB INVESTIGATIONS ALLEGED AGAINST THE OFFICERS.**

Plaintiff should be precluded from calling non-party witnesses involved in any civil lawsuits, CCRB complaints or IAB investigations against defendants Randall and Burbridge and any other non-party police officer that may be called as a witness at trial because they cannot offer any relevant evidence nor do they have any personal knowledge of the alleged incident.

Plaintiff should be precluded from producing these "witnesses" at trial because: (1) they have no direct knowledge of the underlying circumstances in this case, (2) they were not present at any time during the alleged incident, and (3) they will not assist the trier of fact in this case. In fact, if plaintiff is permitted to put forth these "witnesses," defendants submit that they will be forced to defend their allegations, as any prior similar claims as made by these individuals against defendants were unsubstantiated, and in effect would create mini-trials within the trial. Therefore, the evidence should be excluded under FRE 401, 402, and 602.

### POINT IX

**PLAINTIFF SHOULD BE PRECLUDED FROM REFERENCING AND/OR PRESENTING EVIDENCE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS BETWEEN THE PARTIES, INCLUDING EVIDENCE OF**

### ANY RULE 68 OFFER OF JUDGMENT AND AMOUNTS RELATED THERETO.

Plaintiff must be precluded from referencing and offering any evidence regarding any settlement offers, Rule 68 Offers of Judgment and statements made during settlement discussions.   Settlement offers and statements made during settlement discussions are inadmissible under Federal Rule of Civil Procedure 68 and Federal Rule of Evidence 408. However, on a prior occasion, plaintiff placed before the Court inadmissible evidence regarding the City of New York's Rule 68 Offer. Specially, defendants note that by letter dated January 11, 2012, plaintiff's counsel publicly filed information concerning said offer, in violation of Rule 68(b).[9] See Docket Entry No. 44. After defense counsel raised the issue in a letter dated January 12, 2012, access to plaintiff's publicly-filed letter was restricted. See Order of the Hon. Jack B. Weinstein dated January 17, 2012, Docket Entry No. 46.

Because parties would be reluctant to enter into settlement talks if their negotiation positions could influence the finder of fact, Federal Rule of Evidence 408 makes inadmissible offers, conduct, and statements made in connection with settlement negotiations. Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 654 (4th Cir. 1988) ("The public policy favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions"; *affirming* exclusions under Rule 408). Federal Rule of Civil Procedure 68 also makes inadmissible unaccepted offers of judgment. Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294-95 (6th Cir. 1989) (Rule 68 "contemplates that whether jury or judge tries the case, the decision maker will be unaware of the extraneous fact that an offer of judgment has been made. This ensures that the trier of fact will not be influenced in its evaluation of the case by any knowledge of a rejected offer or the consequences thereof.").

---

[9] Only if a Rule 68 offer of judgment is accepted does the rule permit the offer to be filed.

- 21 -

## A824

Permitting plaintiff to discuss settlement information, at trial, or in court filings would certainly influence the way in which the jury views the case. Accordingly, defendants submit that plaintiff must be precluded from making any mention of settlement at trial.

### POINT X

### PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO AND OFFERING THE PATROL GUIDE INTO EVIDENCE AT TRIAL.

Plaintiff should be precluded from referring to and offering the Patrol Guide into evidence at trial on the grounds that it is irrelevant to any disputed issue. Alleged violations of the Patrol Guide by the defendants Randall and Burbridge are irrelevant to the determination of whether plaintiff's constitutional rights were violated. Thus, the Patrol Guide should be precluded pursuant to Fed. R. Evid. 402 and 403.

First, the standards set forth in the Patrol Guide are merely guidelines established by the New York City Police Department, and not the standards of the United States Constitution. The Patrol Guide is voluminous and should not be used to scrutinize the finer details of wholly lawful officer conduct using minor guidelines. Galapo v. City of New York, 95 N.Y.2d 568, 574-75 (2000) (holding "the Patrol Guide is an internal manual - nearly 1,500 closely printed pages - containing thousands of rules, procedures and policies adopted by the Police Commissioner for the governance, discipline, administration and guidance of the Police Department...[i]t is not a body of law nor regulation establishing clear legal duties that should serve as a basis for civil liability of municipalities").

In light of plaintiff's claims that his constitutional rights were violated, any of these NYPD guidelines, whether or not followed to the letter, are irrelevant to the determination of whether plaintiff's constitutional rights were violated. See Salim v. Proulx, 93 F.3d 86, 92 (2d

- 22 -

## A825

Cir. 1996)(violations of police rules regarding backup and radios not relevant to excessive force); Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir. 1991) (violation of procedure in failing to call for backup or use a flashlight irrelevant to excessive force claim); see also Woods v. Jefferson Cty Fiscal Court, 2003 U.S. Dist. LEXIS 605 (W.D. Ky. January 8, 2003) (in excessive force claim "whether an officer followed or violated police department policy or guidelines is not relevant under Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed. 2d 443 (1989)"); Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983"); Romero v. County of Lake, 60 F.3d 702, 705 (10th Cir. 1995) ("violations of state law and police procedure generally do not give rise to a 1983 claim"); see also Galapo, 95 N.Y.2d at 574-75 (2000) (NYPD Patrol Guide should be excluded from evidence because it does not create legal duties). Any Patrol Guide section should therefore be precluded under Fed. R. Evid. 402, which prohibits the admission of evidence which is not relevant. Lee v. City of New York, et al., 00-CV-3181 (JG)(RLM).

Any reference to alleged "violations" of the Patrol Guide, meaning that the officers did not follow the exact guidelines, would only confuse the jury. The jury will be called upon, in this action, to determine whether defendants Randall and Burbridge violated plaintiff's constitutional rights, which is to be evaluated by the jury under essentially the same standard as is applicable to the constitutional and Section 1983 claims. If the jury is presented with the proffered portions of the Patrol Guide, it is likely to assume, wrongly, that the Patrol Guide sets out the standard by which they are to evaluate defendants Randall and Burbridge's arrest of Marshall, notwithstanding a contrary instruction from the Court. In fact, an officer could follow

- 23 -

# A826

the Patrol Guide and still violate an individual's constitutional rights or not follow the Patrol Guide and not violate an individual's rights. Therefore, any reference to alleged "violations" of the Patrol Guide are irrelevant, unfairly prejudicial, and would only confuse the issues and the jury. Accordingly, the Patrol Guide should therefore be precluded pursuant to Fed. R. Evid. 403.

## POINT XI

**PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR OFFERING ANY EVIDENCE REGARDING THE CITY OF NEW YORK'S POTENTIAL INDEMNIFICATION OF DEFENDANTS RANDALL AND BURBRIDGE**

Plaintiff should be precluded from mentioning or offering any evidence of the City of New York's potential obligation to pay a damages award by indemnifying the defendant officers Randall and Burbridge, should a jury find them liable. If the jury is permitted to assume that any verdict will be paid by the City out of its budget, the jury may not carefully assess issues of liability or determine plaintiff's alleged damages with any precision. This is precisely the concern that motivated the drafters of the Federal Rules of Evidence to include Rule 411, which prohibits the admission of evidence of a defendant's liability insurance. See Fed. R. Evid. 411 Advisory Committee's Note ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds. McCormick § 168; Annot., 4 A.L.R.2d 761.").

Indemnification has no bearing on the facts of plaintiff's claims pursuant to 42 U.S.C. § 1983 or damages. In Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997), the Second Circuit held that the existence of an indemnification agreement is relevant only where the individual defendants adduce evidence of their personal financial resources at trial. Here, the defendants Randall and Burbridge are not seeking to proffer evidence regarding their personal financial

- 24 -

resources and ability to pay punitive damages at trial. Therefore, based upon the precedent established in this Circuit there is no relevant basis for the admission of indemnification evidence at trial and accordingly such evidence should be precluded. See Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, *24-25 (S.D.N.Y. Oct. 25, 2007) (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City of New York on relevancy grounds) (citations omitted); Montalvo v. Hutchinson, 90 Civ. 0299 (VLB), 1995 U.S. Dist. LEXIS 1934, * 4, fn. 3 (S.D.N.Y. Feb. 9, 1995) (finding indemnification evidence not relevant at trial); Provost v. Newburgh, 262 F.3d 146, 164 (2d Cir. 2001)(holding that it was improper for the district court to instruct the jury to consider the individual defendant's ability to pay in determining punitive damages award where the defendant did not offer evidence of his financial resources at trial).

Furthermore, the introduction of indemnification as evidence at trial would unfairly prejudice defendants Randall and Burbridge because if the jury is permitted to assume that the City of New York will pay, the jury may not carefully assess issues of liability and/or damages. Providing evidence regarding potential indemnification by the City to the jury would unfairly prejudice defendants Randall and Burbridge because the jury could view the City as a "deep pocket" for purposes of any potential judgment. Furthermore, the issue of whether the City will indemnify an individual will not be made by the Corporation Counsel until *after* the litigation has concluded. New York State General Municipal Law Section § 50-k.

### POINT XII

#### PLAINTIFF SHOULD BE PRECLUDED FROM SUGGESTING A SPECIFIC DOLLAR AMOUNT TO THE JURY.

While the Second Circuit has not adopted a flat prohibition to suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award. Consorti v. Armstrong

# A828

World Industries, Inc., 72 F.3d 1003 (2d Cir. 1995). Such suggestions anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. Id.; See Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel . . .") The Court in Consorti went on to state:

> "A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. . . . We encourage trial judges to bar such recommendations."

As such, plaintiff should be precluded from suggesting a specific dollar amount to the jury during his opening statement and/or summation.

## POINT XIII

### DEFENDANTS RESERVE THEIR RIGHT TO FILE SUPPLEMENTAL MOTIONS *IN LIMINE.*

Defendants respectfully reserve their right to object to any *in limine* motions submitted by plaintiff and to file supplemental motions *in limine*. Defendants further respectfully reserve their right to object and file motions *in limine* with respect to any of plaintiff's witnesses or exhibits, as plaintiff has not provided defendants with his witness or exhibit as of the time of this writing.

- 26 -

## A829

### CONCLUSION

For the foregoing reasons, defendants Police Officers Salim Randall and Michael

Burbridge respectfully request that the Court grant their motions in their entirety and for such

other and further relief as the Court deems just and proper.

Dated:     New York, New York
           April 12, 2012

> MICHAEL A. CARDOZO
> Corporation Counsel of the City of New York
> Attorney for Defendants Police Officers Salim
> Randall and Michael Burbridge
> 100 Church Street
> New York, New York 10007
> (212) 788-0303

By:     _____/s/_____

> Felicia Gross
> Assistant Corporation Counsel
> Special Federal Litigation Division

By:     _____/s/_____

> Johana V. Castro
> Senior Counsel
> Special Federal Litigation Division

- 27 -

A830

EXHIBIT A - ANNEXED TO DEFENDANTS' MOTION IN LIMINE
Excerpt of Examination Before Trial Transcript
of Joshua Marshall, Dated April 26, 2011
(pp. A830-A840)

REPRODUCED FOLLOWING

Case 1:10-cv-02714-JBW-VVP   Document 61-1   Filed 04/12/12   Page 1 of 11 PageID #: 995

# EXHIBIT A

A832

COPY

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

JOSHUA MARSHALL,

                    Plaintiff,

         -against-

THE CITY OF NEW YORK, Et. Al,

                    Defendants.

------------------------------------------

      EXAMINATION BEFORE TRIAL


Of the Plaintiff, JOSHUA MARSHALL, held

on Tuesday, April 26, 2011, commencing at

10:26 a.m., at Sing Sing Correctional

Facility, 354 Hunter Road, Ossining, New

York, before Amelia Moller, a Shorthand

Reporter and a Notary Public in and for

the State of New York.

Case 1:10-cv-02714-JBW-VVP   Document 61-1   Filed 04/12/12   Page 3 of 11 PageID #: 997

JOSHUA MARSHALL 10R3164                    62

1   Q.   Any other form of income?

2   A.   No.

3   Q.   Do you ever make money selling, you

4        mentioned a flee market?

5   A.   That was from 2006 to 2007.

6   Q.   Okay.  All right.  Still staying with

7        this period did you ever make money

8        selling drugs?

9   A.   From what time?

10  Q.   2007 to May 15th?

11              MR. HAZAN:  I'm going to

12       instruct the witness not to answer that

13       question because he's protected by the

14       Fifth Amendment not to self incriminate

15       himself and it is not really relevant to

16       this case anyway.

17              MR. STAVRIDIS:  Okay.  Let the

18       record show there is an instruction on

19       the Fifth Amendment not to answer.

20              MR. HAZAN:  Is there a reason

21       why that's reasonably calculated to lead

22       to admissible evidence in this case?  The

23       question whether he ever sold drugs?

24              MR. STAVRIDIS:  Yes, I think so.

25              MR. HAZAN:  What is it?

Schmieder & Meister Inc.   (845) 452-1988

**JOSHUA MARSHALL 10R3164**              63

1                 MR. STAVRIDIS:  Well, typically

2        a lot of times that I found that when you

3        sell drugs you often need protection, you

4        often need firearms, it often gets

5        violent.  You're obviously associated

6        with people that carry guns and this is a

7        gun case, it did involve an arrest

8        carrying a gun and so I think it is

9        reasonably calculated to lead to

10       information concerning --

1                 MR. HAZAN:  Okay.  Well my

2        objection is the same, I will keep my

3        objection.

1                 MR. STAVRIDIS:  That is fine.

5        Under the Fifth you have that right.

6                 MR. HAZAN:  May I speak with my

7        client briefly?

8                 MR. STAVRIDIS:  Note the time.

9                 (Whereupon, a discussion was

10       held off the record from 11:38 a.m. until

11       11:41 a.m.)

2   Q.   Okay.  Not answering on the basis of the

3        Fifth, right.  Okay.

4        Mr. Marshall, for the year 2007 how much

5        money did you earn from your employment?

**JOSHUA MARSHALL 10R3164**                    66



    1   A.   I had a sales tax ID number.
    2   Q.   So, they would give you a sales tax ID so
    3        when you sold things --
    4   A.   I was able to purchase things and certain
    5        places required you to have that type of
    6        license.
    7   Q.   Any other type of vendor's license or
    8        anything?
    9   A.   No.
   10   Q.   That's all you need for a flee market?
   11   A.   Yes.
   12   Q.   What did you sell at the flee markets?
   13   A.   Pictures, watches.
   14   Q.   Sorry.  Pictures?
   15   A.   Yeah, like picture frames with all
   16        cartoon characters, all types of bags
   17        with Betty Boop, luggage, pocketbooks,
   18        lighters, clocks with all cartoon
   19        characters, comic books, T-shirts.
   20   Q.   What did you earn gross total in sales
   21        say for 2006?  By the way have you kept
   22        any records?
   23   A.   No, I owed them some money for that.
   24   Q.   I'm sorry?
   25   A.   I owed him some money.

## A836

JOSHUA MARSHALL 10R3164                    67

```
 1   Q.   You owed who money?  Money to the State
 2        tax?
 3   A.   Yeah, because I didn't file for taxes
 4        that final year.
 5   Q.   Because you don't file they make an
 6        assessment?
 7   A.   Yeah.  Same thing.  I can make $600 a
 8        day.  $600 a day.
 9   Q.   Is that profit you're talking about?
10   A.   $400 is profit.
11   Q.   How much?
12   A.   Approximately $400.
13   Q.   How about the years?  I want to get sense
14        of your income for 2006.
15             MR. HAZAN:  If you know.
16   A.   2000 a week, maybe, so 8,000 a month.
17             MR. HAZAN:  Is that good enough?
18             MR. STAVRIDIS:  I think.
19   A.   Yeah, about 8,000 a month between that
20        involved the profit and the spending and
21        everything.
22   Q.   Roughly 80, 90,000 for the year?
23   A.   No, because I didn't do that that long.
24        I did it five months.
25   Q.   Why did you stop?
```

Case 1:10-cv-02714-JBW-VVP   Document 61-1   Filed 04/12/12   Page 7 of 11 PageID #: 1001

JOSHUA MARSHALL 10R3164                    110

```
 1   A.   Continue about my business.

 2   Q.   You continued walking?

 3   A.   Yeah.

 4   Q.   Where was your associate at that time?

 5   A.   He started walking, too.  He was going to

 6        walk toward, he was going to walk up Park

 7        to Beaver so he could get to Bushwick and

 8        Flushing, told him make the best out of

 9        it, that's when we noticed the police was

10        going to come harass us.  At that given

11        moment he went in his coat, pulled out

12        the gun and threw it, police jumped out

13        of the car, put both of us against the

14        wall.  Once they heard the sound of the

15        gun they asked us whose gun it was, whose

16        gun it was.

17   Q.   Now, let me stop you there.  That was,

18        say your associate's name again?

19   A.   I called him Sip.

20   Q.   Sip?

21   A.   They called Sip, Dip.  I don't know.

22   Q.   Sip?

23   A.   Kids from the neighborhood.

24   Q.   Whatever spelling you're using for that

25        there came a time a police officer or
```

Schmieder & Meister Inc.   (845) 452-1988

Case 1:10-cv-02714-JBW-VVP   Document 61-1   Filed 04/12/12   Page 8 of 11 PageID #: 1002

**JOSHUA MARSHALL 10R3164**                    111

```
1        police officers came out of the car?
2   A.   Right.
3   Q.   How many?
4   A.   I saw four guns so there was four
5        officers.
6   Q.   Four officers came out of that?
7   A.   Right.
8   Q.   And they started approaching you and Sip?
9   A.   Right.
10  Q.   And?
11  A.   One went to go retrieve the gun because
12       he heard it bounce on the floor.
13  Q.   Who heard it?
14  A.   One of officers.  We all heard it.
15  Q.   Who threw it?
16  A.   The gentleman who was with me.
17  Q.   Sip?
18  A.   Correct.
19  Q.   So, you saw him throw it?
    A.   We all saw him throw it.
    Q.   All the police officers and yourself, you
         saw it?
    A.   Yes.
    Q.   What kind of gun was it?
    A.   I didn't know until later.
```

JOSHUA MARSHALL 10R3164                    112

1    Q.    What did you find it out to be later?

2    A.    38 revolver.

3    Q.    At that point you didn't know it was a 38

4          revolver?

5    A.    No.

6    Q.    What did it look like to you?

7    A.    I just saw it go in the air, it was dark

8          at night, I just heard the sound more

9          than anything.  I didn't know it was,

10         what type of gun it was or...

11   Q.    Where did he have the gun?

12   A.    I saw him go from his, went in his coat,

13         pulled it out, I don't know if it was on

14         the waist, inside pocket, outside pocket.

15   Q.    You I couldn't tell?

16   A.    No.

17   Q.    Could you see the direction he threw it

18         to?

19   A.    It was the same street, a tree right

20         above, that's where they retrieved it

21         from.

22   Q.    You're saying there was tree?

23   A.    Yeah, there was a tree.

24   Q.    But we cannot see that on the picture

25         because it would be further along?

**A840**

Case 1:10-cv-02714-JBW-VVP   Document 61-1   Filed 04/12/12   Page 10 of 11 PageID #: 1004

# EXHIBIT B

A841

<u>EXHIBIT B - ANNEXED TO DEFENDANTS' MOTION IN LIMINE</u>
Office of Chief Medical Examiner's
Laboratory Report, Dated June 10, 2008
(pp. A841-A842)

REPRODUCED FOLLOWING

A842





**OFFICE OF CHIEF MEDICAL EXAMINER**
Charles S. Hirsch, M.D., *Chief Medical Examiner*

**DEPARTMENT OF FORENSIC BIOLOGY**
Mechthild Prinz, Ph.D., *Director*
421 East 26th Street, New York, NY 10016
Tel: 212.323.1200 · Fax: 212.323.1590 · E-mail: DNALab@ocme.nyc.gov

June 10, 2008

### LABORATORY REPORT

**ENTITY:** PSNY                                **LAB NO:** FB08-03040

**COMPLAINT NO:** 2008-083-03562

#### SUMMARY OF RESULTS:

DNA extraction was performed on the following samples, but an insufficient amount of DNA was present for the DNA testing listed in this report:

- swab of "backstrap + grips"
- swab of "trigger"
- swab of "cylinder release"
- swab of "ejector rod"

A843

TRIAL TRANSCRIPT, DATED APRIL 16, 2012
(pp. A843-A886)

REPRODUCED FOLLOWING

1

1                   UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK

2

 - - - - - - - - - - - - - - X

3                             :

MARSHALL,

4                          10-CV-02714

     Plaintiff,

5

        -against-       :

6                         United States Courthouse

7                         Brooklyn, New York

THE CITY OF NEW YORK, ET AL.,

8

     Defendant.       :

9                       April 16, 2012
 - - - - - - - - - - - - - - X   Two o'clock p.m.

10

            TRANSCRIPT OF CIVIL CAUSE for MOTION

11          BEFORE THE HONORABLE JACK B. WEINSTEIN
           UNITED STATES DISTRICT JUDGE

12

APPEARANCES:

13

For the Plaintiff:      GERALD M. COHEN, ESQ.

14                  233 Broadway, Suite 1800
                  New York, NY 10279

15

                  JON L. NORINSBERG, ESQ.

16                  225 Broadway Suite 2700
                  New York, New York 10007

17

18

For the Defendant:      NEW YORK LAW DEPARTMENT

19                  Special Federal Litigation Division
                  100 Church Street

20                  New York, New York 10007
                  BY:  JOHANA CASTRO, ESQ.

21                      FELICIA GROSS, ESQ.

22

Court Reporter:        Marsha Diamond

23                  225 Cadman Plaza East
                  Brooklyn, New York

24                  TEL: (718) 613-2489
                  FAX: (718) 613-2369

25

2

1       Proceedings recorded by mechanical stenography,
        transcript produced by computer.
2

3               THE COURT:  Good afternoon. We have a number of in

4   limine motions.  I will hear the defendants' motions first and

5   then the City's.

6               THE CLERK:  Appearances.

7               MR. COHEN: Gerald Cohen.

8               MR. NORINSBERG: Jon Norinsberg,  on behalf of

9   Plaintiff Marshall.

10              MS. CASTRO: Johana Castro, for the defendants from

11  the Office of Corporation Counsel, good afternoon.

12              MS. GROSS: Felicia Gross, also for defendants from

13  the Office of Corporation Counsel.

14              Good afternoon, Your Honor.

15              THE COURT: You are representing both of them?

16              MS. CASTRO: Yes, Your Honor.

17              THE COURT:  The City is out now as defendant,

18  correct?

19              MR. COHEN:  Correct.

20              THE COURT:  By stipulation.  No claim is being made

21  against the City.  One thing that bothers me is what if both

22  of them are found liable, do you want them the jury to find

23  percentage of liability or just joint and several?

24              MR. NORINSBERG: Joint and several, Your Honor.

25              MS. CASTRO: Joint and several liability.

3

1        THE COURT: By stipulation the parties agree that

2   both defendants are liable, joint and several liability will

3   be found, so it is not necessary for the jury to decide on the

4   percentage of liability.  I think that's clear anyway under

5   the facts.

6            All right.  I will hear the plaintiff's motion.

7            MR. COHEN:  Okay, Your Honor.

8            THE COURT:  One at a time.

9            MR. COHEN:  Judge, just as a preliminary matter, if

10  I may, I'd like to just raise an issue with the Court with

11  respect to the exhibits, if I can, at this point. Eighteen of

12  the 21 defendants' trial exhibits that were turned over

13  pursuant to Your Honor's order was the first time plaintiffs

14  have seen them.  They were not turned over during the course

15  of discovery. We had no knowledge of them.  We weren't able to

16  use these photographs, these exhibits, to depose the officers

17  in this case. So as a preliminary matter, we ask that they be

18  precluded pursuant to Federal Rule 26.  We had no -- we would

19  be prejudiced.

20            THE COURT:  Let me see the exhibit, please.

21            (Mr. Cohen handing)

22            What numbers do you want precluded?

23            MR. COHEN:  Well, all the ones that hadn't been

24  exchanged prior to this morning.

25            THE COURT:  Take them up one at a time.

4

1          MR. COHEN:  Defense Exhibit A, color photograph of

2  the gun; Defense Exhibit B, color photograph of the gun.

3          THE COURT: Denied.  There's nothing here.

4          MR. COHEN: C. Pardon me?

5          THE COURT:  There's nothing unusual.  It is easier

6  to handle in the courtroom if we have a picture. Same as C.

7          MR. COHEN: D.

8          THE COURT:  D is what?

9          MR. COHEN:  A photograph of the scene.

10         THE COURT:  Is it different from where the incident

11  occurred?

12         MR. COHEN:  Your Honor, the only point plaintiff has

13  is that these photographs, this is the first time we are

14  seeing the gun. If the City was intending to use these at

15  trial, there's no reason that they couldn't have provided

16  these photographs during the course of discovery.

17         THE COURT:  I understand but they didn't and I am

18  going to try to get the case decided on the merits.  I

19  understand you should have seen them but you didn't.

20         Now, what do you want to do about D?

21         MR. COHEN:  Your Honor, if that is the case, then we

22  would withdraw our objection.

23         THE COURT:  So all of those come in, assuming they

24  are properly authenticated.

25         MR. COHEN: Of course.

5

1    THE COURT: Next.

2    MR. COHEN: Next, Your Honor, the main issue here --

3 one of the main issues here for the plaintiff is prior

4 criminal history. The City has only --

5    THE COURT: I don't want any prior criminal history.

6 What does the City have to say?

7    MS. GROSS: Your Honor, the City -- our view on the

8 prior history is that you have to -- or one would look at it

9 by either felony or misdemeanor. For the two prior felonies

10 they are admissible under 609 (a). From the City's

11 perspective they go both to credibility, and I think more

12 importantly, to damages. Here they go to damages in two

13 respects. Plaintiff is alleging that he was incarcerated for

14 approximately 135 days in part because he was unable to make

15 bail. That bail determination was made in part based on his

16 prior felonies. It was not solely related to this particular

17 arrest. So if he is saying the length of incarceration was

18 four months based on this arrest, the City would like some

19 latitude to cross-examine him with respect to his prior

20 convictions.

21    THE COURT: Well, it is too prejudicial under rule

22 403. It is out. What else?

23    MS. GROSS: The City's view, it also goes to

24 damages.

25    THE COURT: You know, we are going to get to

6

1   defendants' theory of the case that bears on some of this

2   prior material.

3             MS. GROSS: I would just like to add it goes to

4   damages in the second respect, in an unrelated respect, and

5   that is, the damages calculation for an individual who is the

6   subject of a false arrest is in part determined based on --

7             THE COURT: Is he working?

8             MS. GROSS: Not to our knowledge, no.

9             MR. COHEN: Your Honor, there are no loss wages

10  claim.

11            MS. GROSS: No loss wages, but the case law in the

12  Eastern District and the Second Circuit more generally says an

13  individual who has been incarcerated previously, the

14  incremental value of a false arrest is less, Banushi stands

15  for that proposition, Wilson against the City of New York

16  stands for that proposition. Judge Matsumoto recently said

17  that a plaintiff who has had a number of prior arrests and

18  detentions is likely to have suffered less distress than one

19  who has never been detained and in that regard the fact that

20  he has 11 prior arrests --

21            THE COURT: I understand that is the view of some

22  judges. It is not my view. Spending four months in jail is

23  not particularly ameliorated by the fact that he spent other

24  time in jail. That is excluded. What else? It is di minimus

25  anyway. He has not been working. He hasn't been able to show

7

1   any real damage. He is not going to get much anyway. So under
2   the special circumstances of this case it is excluded.
3           What else?
4           MS. GROSS: Would you note our objection, Your
5   Honor?
6           THE COURT: Yes, of course.
7           MR. COHEN: Your Honor, one of the issues that came
8   up at plaintiff's deposition was that he had owned some
9   vehicles in the past. There's an extensive amount of time
10  spent on going through all the vehicles he's owned.
11          THE COURT: Why do you need that?
12          MS. GROSS: The City -- we are not going to go into
13  that.
14          THE COURT: Okay. Excluded by consent.
15          MR. COHEN: Again, it wasn't in their papers, but
16  just to make it clear on the record, if they intend to call
17  the D.A.'s office -- any D.A --
18          MS. GROSS: We do not, Your Honor.
19          THE COURT: D.A.'s testimony is excluded.
20          MR. COHEN: Can I address the points in --
21          THE COURT: No, I want to know what you want, then
22  I'll hear from the City, and I'll find out what they want. Is
23  there anything else you want?
24          MR. COHEN: There was also a subsequent arrest that
25  postdates this incident.

8

1       THE COURT: I don't want it. Excluded. This is an

2   arrest. It wasn't even a conviction.

3       MR. COHEN: So with respect to what plaintiff wants

4   at this point, that's without addressing the points that the

5   City has made.

6       THE COURT: All right. Now, what does the City want?

7       MS. GROSS: Our second motion in limine, if you

8   don't mind, we will take this ceratium.

9       THE COURT: Anyway you like.

10      MS. GROSS: Second point is that plaintiff contends,

11  at least during his deposition testimony, that he had several

12  subsequent run-ins with the officers at issue here, including

13  --

14      THE COURT: You are not going to have that, are you?

15      MR. COHEN: There was only one subsequent run-in.

16      THE COURT: What was that?

17      MR. COHEN: That ws shortly after Joshua Marshall was

18  released from custody on this case. While the case was still

19  pending he ran into Officer Randall. He was walking down the

20  street. Officer Randall drove by, made a quick U-turn, jumped

21  out of his car, stopped and frisked him. Said what the hell

22  are you doing -- well, used more foul language than that.

23  What are you doing out of jail. It goes to a malicious

24  prosecution claim.

25      THE COURT: No, it is too prejudicial. I am not

9

1  going to get into that.

2          MR. COHEN:  We have documented proof that this

3  happened.  He filed a CCRB complaint on that issue right after

4  that happened.

5          THE COURT:  I don't want it.  Let's focus on the main

6  incident.  It is just too convoluted.

7          MR. COHEN:  If I just may try one more time to

8  convince you otherwise, Your Honor.

9          THE COURT:  Of course.

10         MR. COHEN:  The malicious prosecution claim, one

11 element is malice.  As you are, of course, well aware, in

12 order to prove the element of malice we have to get to the

13 subjective intent of the defendant.  Since this case was still

14 ongoing at the time that this subsequent incident with Officer

15 Randall was going on, it goes to his state of mind, and that's

16 one of the very few ways we will have to prove the very high

17 -- difficult element of malice in a malicious prosecution

18 claim, and it goes to his state of mind because he stopped

19 him.  He told him he had a very unpleasant interaction with

20 him and Manganiello versus City of New York the Second Circuit

21 decision from 2010 where the Court said although the statement

22 was made after the initiation of the criminal proceeding the

23 jury was entitled, especially in light of the other evidence

24 as defendant's conduct in the investigation, to view the

25 misrepresentation as indicative of the defendant's state of

10

1  mind all along.

2  THE COURT:  There is no misrepresentation alleged

3  here and I am not going to get involved in whether he was

4  right in being suspicious of this man, or frisking him, or

5  anything else. I just want to try one simple case, if it is

6  possible to do so. What else?

7  MS. GROSS:  The  City's next point is that,

8  Your Honor, prior to the May 15th arrest at issue here

9  plaintiff was arrested on March 15th.  The City believes that

10  details of that arrest are significant in this case.

11  THE COURT:  In what way?

12  MS. GROSS:  In this way.  Officer Burbridge, one of

13  the defendants, will testify that it is the fact that he saw

14  plaintiff's -- a photo of plaintiff and a report in connection

15  with that March 15 arrest which was still pending as of the

16  date of the May 15th arrest that led him -- it was one of many

17  factors that led him to stop the plaintiff that night.

18  THE COURT:  No. There's only one issue in the case:

19  Did he see the man take the gun out of his waist and throw it

20  or are they lying about that.

21  MS. GROSS:  It goes also to why they are lying.

22  Plaintiff's theory of the case is that this particular officer

23  Burbridge, or these officers, Burbridge and Randall, had

24  animus toward this particular plaintiff.

25  THE COURT:  I know. They are not going to be able to

11

1  prove it because I am not going to allow prior incidents to

2  come in. Right?

3          MR. NORINSBERG: Your Honor, if I could --

4          MR. COHEN:  Could we have one second?  Can I just

5  confer with my --

6          THE COURT:  Of course.

7          (Mr. Cohen and Mr. Norinsberg conferred)

8          These prior incidents go both ways.

9          MR. COHEN:  With respect to the March 15, 2008

10  arrest, we actually -- both Burbridge and our client testified

11  at the deposition that Officer Burbridge stopped him because

12  he had seen him in the database.

13          MS. GROSS: In part.

14          MR. COHEN:  In part.

15          THE COURT:  You don't want that in because it shows

16  a prior criminal record. It is the last thing you want.

17          MR. COHEN:  But it goes to explain his --

18          THE COURT:  You want the jury to know that this man

19  had a wanted picture of himself in the police department

20  before he was stopped?

21          MR. COHEN:  We don't want the documentation that

22  underlies the arrest.

23          THE COURT:  Do you want that in the case?  I would

24  be amazed if you did.

25          MR. NORINSBERG: The problem is, Your Honor --

```
12
```

1       THE COURT:  I tried to keep all of that material out
2       to protect your client.
3               MR. NORINSBERG:  But the problem is during the
4       cross-examination of Officer Burbridge, one of the points
5       would be as soon as he saw our client he immediately said I
6       know that guy, he had a prior gun arrest. I mean that I am --
7               THE COURT:  That is not coming in. Do you want that
8       to come, that this jury should know that this plaintiff had a
9       prior gun arrest and that he was known to the police
10      department as a dangerous person?  Just think about it for a
11      moment.
12              MR. NORINSBERG:   We don't want that to come in as a
13      general proposition.
14              THE COURT:  Well, if it comes in it is going to be
15      in.
16              MR. COHEN:  But it goes to explain the prior animus
17      that the officers --
18              THE COURT:  I understand that.
19              MR. COHEN:  And why he didn't have independent
20      probable cause to arrest him, but rather, he made a shortcut
21      judgment that this person, because he'd been arrested before,
22      should be arrested now.
23              THE COURT:  Listen to what I'm saying. It is a
24      double edged sword.  You have the burden of proof.  If the
25      jury finds out that this plaintiff was known to the police

13

1  department, whatever I may try to do to protect him is done.

2          MR. COHEN:  Could we have one minute?

3          THE COURT:  Why don't you talk about it among

4  yourselves.  You are going to open the door to everything

5  about this man's prior history.

6          MR. COHEN:  All right.  It is out.  Keep it out.  We

7  will keep it out.

8          THE COURT:  All right.  And the City will not be

9  allowed to bring it in.  I don't want anything, such as, the

10 witness on the stand, instruct the witnesses they are not to

11 say, for example, so I was so excited to see this man out on

12 the street, I said to my partner X, Y, Z.  I don't want it.

13         What is your next point?

14         MS. GROSS:  The next point, Your Honor, is the DNA

15 and fingerprint evidence.  The DNA fingerprint evidence --

16         THE COURT:  Did you take DNA?  Did you do a DNA and

17 fingerprint check?

18         MS. GROSS:  The City did.  The City did a DNA and

19 fingerprint test.

20         THE COURT:  What did they find?

21         MS. GROSS:  Both came up with not enough evidence to

22 have a positive --

23         THE COURT:  I will allow you to put an expert on.

24         MS. GROSS:  Your Honor, we are actually seeking to

25 exclude all of that evidence because in our view it would be

1   too confusing to the jury.  Too prejudicial.

2            THE COURT:  I am not going to exclude unless they

3   want it excluded, but I will permit you, if they want it in,

4   to bring in an expert to say that we do these checks but they

5   almost never give us anything because of the nature of the

6   moving, etcetera, etcetera, because all the jurors are now

7   watching TV, film, where they expect it, and in the last case

8   we tried.  The federal government lost the case because one of

9   the jurors said as to the gun case, which was clearly one that

10   the government should have won, where's the DNA evidence.  So

11   you are going to have to bring in an expert to show why there

12   is no DNA evidence.  You want that to come in?

13            MR. COHEN:  Of course, Your Honor.

14            THE COURT:  Okay. You can cross-examine and you can

15   bring in evidence that there was no DNA evidence.  Do you want

16   an expert?  You better have one because there will be jurors

17   who are going to say no D DNA, no fingerprints, you're not

18   going to find that he touched the gun.  That is the reality of

19   cases today.

20            MS. GROSS:  Your Honor, there's the additional --

21            THE COURT:  You've a very good female witness who is

22   terrific on the stand.  She wasn't asked that question in the

23   last trial.

24            MS. GROSS:  Your Honor, there's an additional

25   wrinkle with respect to the DNA evidence which I'd like to

15

1　draw your attention to, and that is, the City would like

2　evidence precluded regarding Officer Randall's refusal to give

3　a DNA sample. Officers routinely, they are advised by their

4　union and perhaps union counsel not to give because it is an

5　invasion of their privacy.

6　　　　　　THE COURT: I don't see what that has to do with the

7　case. Let's just focus on this one issue. Do you want to put

8　in an expert that will explain to the jury why the DNA and

9　fingerprint evidence on guns like this never show up?

10　　　　　　MS. GROSS: We have someone from the Evidence

11　Collection Team that they -- the NYPD who can testify to that.

12　I'm not sure I consider him an expert but he is the person who

13　collects the data routinely.

14　　　　　　THE COURT: I don't know if that is sufficient. Do

15　you have somebody that knows --

16　　　　　　MS. CASTRO: We can have somebody from the Medical

17　Examiner's Office.

18　　　　　　THE COURT: List him as a witness.

19　　　　　　MS. GROSS: Your Honor, may I have a moment? Can we

20　have a moment to confer?

21　　　　　　THE COURT: If you want to. Do you want a Daubert

22　hearing, I will give it to you.

23　　　　　　(Pause in the proceeding)

24　　　　　　MS. GROSS: Your Honor, we will have an expert.

25　　　　　　THE COURT: Designate by name. Give them a

16

1   background under 26 Federal Rules of Civil Procedure promptly,
2   if you can, please.
3            MS. GROSS:   Okay. With respect to the --
4            MR. COHEN:   Can we depose the expert this week?
5            THE COURT:   No -- well, you can if you want at your
6   expense.
7            MS. GROSS:   Well, Your Honor, it won't be an expert.
8   It will be somebody from the Medical Examiner's Office that
9   can testify that they routinely -- how the DNA tests were
10  done.
11           THE COURT:   Do you want a Daubert hearing?  It is
12  easier.
13           MR. COHEN:   Sure.
14           THE COURT:   That morning we will have a Daubert
15  hearing, the morning the expert is going to appear. Then we
16  will let them ask questions of the expert.
17           MS. GROSS:   Right.  I don't believe that we'd like
18  to submit an expert so much as someone from the Medical
19  Examiner's Office who can testify as to what --
20           THE COURT:   Is that person an expert or not? I mean
21  the fact that the person is in the Medical Examiner's Office
22  is admirable but it doesn't show the City's testimony can come
23  in.
24           Do you have somebody who knows?  Why don't you go
25  back and think about it and give them a name immediately and

17

1   have that person come in the morning he or she is to testify

2   and we will allow you to have a brief examination.

3           MS. GROSS:  Okay.  Your Honor, with respect to the

4   sub issue we really think it's important, the officer not

5   giving an elimination.

6           THE COURT:  Why do you need the officer's DNA?

7           MR. COHEN:  Well, it goes to his credibility.  We

8   don't need his DNA.  He refused to give his DNA.

9           THE COURT: Of course.

10          MR. COHEN: To eliminate himself as a potential --

11  because when he handled the gun his DNA could have gotten on

12  the gun and he refused.

13          THE COURT:  It is irrelevant under 403.  It is too

14  prejudicial.

15          MR. COHEN:  It goes to his credibility.

16          THE COURT:  I don't believe it does.  What else?

17          MS. GROSS:  Okay.  Next issue, Your Honor, is there

18  is a document in discovery that we would like -- the City

19  would like any reference to a federal prosecution or lack of

20  federal prosecution excluded.  There's a document in discovery

21  that contains double hearsay saying the Assistant United

22  States Attorney declined to pick up the case.  We don't think

23  it's relevant.

24          MR. COHEN:  We actually don't want to put that

25  sentence in.

18

1          THE COURT:  So that's denied.

2          MR. COHEN:  But within the document there is also

3    the reason why the federal government didn't pursue the case,

4    was that AO did not see defendant in possession of the

5    firearm.

6          THE COURT:  That is hearsay.

7          MR. COHEN: Was an admission, Your Honor. It is an

8    admission that --

9          THE COURT: That what?

10         MR COHEN:  That he possibly made this statement to

11   the federal prosecutor.

12         THE COURT: You can cross him and say did you say so

13   and so.

14         MR. COHEN:  But then we would like to include --

15   this is an NYPD business record.  I understand it's hearsay

16   within hearsay but there are exceptions to the hearsay rule or

17   some of the items are not hearsay at all, specifically his

18   particular admission that he did not see the firearm at all.

19   It is not hearsay, and the actual document where --

20         THE COURT:  You can use this to refresh his

21   recollection.  I don't want it in evidence. This is

22   Plaintiff's Exhibit Five?

23         MR. COHEN:  Yes, Your Honor.

24         MS. GROSS: Your Honor, just to clarify for my own

25   sake, so our references to what the Assistant U.S. Attorney

19

1   decided and what he told the United States Attorney are out?

2           THE COURT: Correct. Police document can be used to

3   cross-examine, does this refresh your recollection.

4           MS. GROSS:  As to what he told the AUSA?

5           MR. COHEN:  As to the statement, what he told the

6   AUSA is that he didn't see the gun in defendant's possession.

7           MS. GROSS:  Your Honor, that's what a paralegal for

8   the NYPD transcribed there. That's not his statement as I

9   understand it.

10          MR. NORINSBERG: He acknowledged that at his

11  deposition that he might well have made the statement, so we

12  have a good faith basis to ask him.

13          THE COURT:  Made the statement to whom?

14          MR. NORINSBERG: To the AUSA and Enhancement Unit.

15          THE COURT:  No. I don't want that.

16          MR. NORINSBERG: Can we at least cross examine him

17  about what he said about it in his deposition?

18          THE COURT:  Yes, you can ask him, but don't give

19  this, the document.

20          MS. GROSS: So, again, to be clear for my own

21  purposes, they can ask him what he told the Assistant United

22  States Attorney?

23          THE COURT:  Did you state to the United States --

24  you don't have to say United States -- to a prosecuting

25  attorney. Keep the United States out of it.

20

1              MS. GROSS:  Did you say to a prosecuting attorney
2    that --
3              MR. COHEN:  You never saw the defendant in
4    possession of a firearm.
5              THE COURT:  And he'll say no and then they'll show
6    him the document and say does this refresh and he will say it
7    won't.
8              MR. NORINSBERG:  Right, and that's it.
9              MR. COHEN:  Okay.
10             THE COURT:  Okay.  Everybody agrees that's the way
11   it will go.
12             What else?
13             MS. GROSS:  Okay.  Your Honor, could we ask that it
14   be mentioned that it is a different prosecuting authority and
15   maybe, you know, not the federal prosecutor authority but just
16   a different prosecuting authority than here?
17             THE COURT:  If you wish you can do that.  It muddies
18   the water.
19             MR. COHEN:  You can say federal if you like.
20             THE COURT:  No.
21             MS. GROSS:  Finally, I am not sure what your
22   particular individual practices are, but we would ask that
23   pursuant to the Second Circuit's advisory opinion in Consorti
24   that a plaintiff not be able to ask for a specific dollar
25   amount.

21

1          THE COURT:  Correct.  They will not be permitted to

2    do so.

3          MS. GROSS:  I turn it over to my colleague.

4          MS. CASTRO:  Your Honor, the City would also seek

5    that the plaintiff not make mention of the officers prior

6    CCRB, IAB history or mention of any lawsuits.

7          THE COURT:  Excluded. I don't want prior record of

8    the police officers.

9          MR. COHEN:  If I just may make my point, just for

10   the record, Your Honor?

11         THE COURT:  Yes.  They weren't convicted of

12   anything.

13         MR. COHEN:   No, but just across the hall Judge

14   Dearie's chambers, about two years ago Officer Burbridge was

15   found to have lied in a gun case where the Judge suppressed

16   the gun evidence, and when he was questioned about it at his

17   deposition he had no memory of it. He also -- and he was

18   subsequently not just -- he not only testified in Judge

19   Dearie's chambers, but he also had an IAB investigation that

20   arose out of that particular case and was questioned again

21   regarding that incident.

22         THE COURT:  Was he disciplined?

23         MR. COHEN:  He was not disciplined.

24         THE COURT: Keep it out.

25         MR. COHEN: The second incident was two months before

22

1  his deposition there was another IAB investigation in which he
2  was questioned again. The outcome of that is unclear. We did
3  not get any discovery, and he completely -- at the deposition
4  he had a complete case of amnesia. He didn't remember any
5  details of that investigation even though he had just been
6  deposed two months prior.

7          THE COURT: I don't want it. For the same reason
8  that I don't want your client's prior history in here, I don't
9  want the defendant's prior history. Let's focus on the
10  particular incident.

11          MS. CASTRO: And Your Honor, I just want to clarify
12  for the record there was no finding that he lied. It was an
13  allegation.

14          THE COURT: I understand. What else?

15          MS. CASTRO: The next point is that there was the
16  mention that plaintiff was or was not working at the time of
17  the incident. We have not received any proof that he was.
18  That is why we don't believe he was. However, he gave
19  deposition testimony indicating that he worked as a bouncer at
20  some point. And he didn't file income tax with respect to
21  that job, we would like the opportunity to cross-examine him
22  on that point.

23          THE COURT: You can ask him about that.

24          MR. COHEN: Your Honor, we have no lost wages claim
25  with respect to that.

23

1           THE COURT:  Well, we don't know whether he had --
2    when was he a bouncer?
3           MR. COHEN:  He worked, you know, sporadically
4    bouncing at certain clubs.  He wasn't very --
5           THE COURT:  Did he ever make more than $600 a year?
6           MR. COHEN:  I don't know the answer to that.
7           THE COURT:  We will exclude it. It is too
8    prejudicial and would require too much of an inquiry.
9           MS. CASTRO: He did testify at the deposition that as
10   a result of being incarcerated he lost his bouncing job.
11          THE COURT:  He is not going to ask for lost wages so
12   that whether he lost a job or not is not coming in to the
13   picture, correct?
14          MR. COHEN:  That is correct.  There will be no
15   questions regarding job history. To the extent that -- just
16   for clarification, he is currently working right now. Could we
17   explore that on direct just stating as a general background
18   where he is working right now?
19          THE COURT:  Where is he working?
20          MR. COHEN:  He works in construction right now.
21          THE COURT:  How long has he been doing that?
22          MR. COHEN:  He's been doing that for the last three
23   or four months.
24          THE COURT: Well, what is your view on that?
25          MR. COHEN:  If that is going to open the door, we

24

1   won't ask the question.

2          MS. CASTRO: Your Honor, we would, again, request to

3   be able to cross examine him to the extent that he testified

4   at his deposition that he did, in fact, owe the government

5   money for the job that he has as a bouncer.

6          THE COURT: Is he on the books or off the books in

7   this construction job?

8          MR. COHEN: I don't know. Again, I don't know the

9   answer.

10         THE COURT: Keep it out. There's no claim for lost

11  wages.  Keep it out the construction work.

12         MS. CASTRO: Well, we would argue that with respect

13  to the lack of filing income taxes, that goes to his

14  credibility even if there is no loss wages claim.

15         THE COURT: He might not have had enough income to

16  file.

17         MS. CASTRO: We would just like an opportunity to

18  cross examine him on that matter.

19         THE COURT: I don't want to go into income tax loss.

20  There are billionaires who won't pay any income tax so -- I

21  don't know what his personal finances are but maybe he's a

22  billionaire acting incognito.  I don't want to go into income

23  tax backgrounds. It is a very simple case.  Let's keep it

24  simple.

25         MS. CASTRO: Your Honor, there is also another issue

25

1   within this point that we have.  It goes to the plaintiff's

2   invocation of the Fifth Amendment.  When he was asked at his

3   deposition whether his income was derived from the sale of

4   drugs he invoked the Fifth Amendment.  We would look to

5   cross-examine him on that point as well.

6           THE COURT:  Well, this is a civil case and that is

7   generally commented on, but I don't want it.  Keep it out

8   under rule 403.

9           MR. COHEN:  He didn't invoke it.  The attorney

10  invoked, just to be clear.

11          MS. CASTRO:   Your Honor, we have a couple of more

12  points.

13          THE COURT:  I'm sorry.

14          MS. CASTRO: That is okay. One is that we just ask

15  that plaintiff not call any other witnesses that are not

16  listed on his witness list.

17          THE COURT: Do you have any desire to do so?

18          MR. COHEN: To the extent we have a rebuttal witness

19  but I don't believe --

20          THE COURT:  Who is that?

21          MR. COHEN:  That might defeat the purpose of

22  rebuttal. His aunt. I don't know if she's going to be called

23  but there's a potential.

24          THE COURT:  All right. On rebuttal you can call the

25  aunt. What else?

26

1    MS. CASTRO: We would ask to be provided with the
2    aunt's name and contact information.
3    THE COURT: All right. Give her the name and
4    contact information. You can bring in that witness if you need
5    on rebuttal.
6    MS. CASTRO: Can we also have an offer of proof as to
7    her testimony?
8    THE COURT: I don't believe you are entitled to
9    that.
10   MS. CASTRO: Well, then the other witnesses, Your
11   Honor, that we would ask that plaintiff be precluded from
12   calling anyone that was mentioned in any prior CCRBs or any
13   lawsuits that were filed against the officers.
14   THE COURT: No, they are not coming in. Those are
15   out, all those incidents.
16   MS. CASTRO: And with respect to any offers that have
17   been made by the City to settle, resolve the matter?
18   THE COURT: No. You made an offer in this case?
19   MS. CASTRO: We did, Your Honor.
20   MR. COHEN: There's an issue I want to bring up to
21   the Court. It's more personal in nature.
22   THE COURT: Please.
23   MR. COHEN: So my co-counsel here brought me onboard
24   because his wife is expecting. Very --
25   THE COURT: Congratulations.

27

1          MR. COHEN: She is due next week actually, so it
2   turns out my wife is expecting too, and my wife might be going
3   into early labor.
4          THE COURT: Congratulations.
5          MR. COHEN: So there's a chance that both of our
6   wives might be going into labor next week. I just want to
7   bring it to the Court's attention. If his wife goes into
8   labor, I'm in stand-in. My wife goes into labor he's the
9   stand-in. If both go by some weird cosmic fate occupied by
10  that --
11         THE COURT: Is that a first child for both of you?
12         MR. NORINSBERG: For me it is.
13         MR. COHEN: My third.
14         THE COURT: Well, we will deal with that problem if
15  it comes up.
16         MR. COHEN: I just wanted to raise it.
17         MS. CASTRO: Your Honor, there are three more
18  points. One is just that we would ask that plaintiff be
19  precluded from making reference to the NYPD Patrol Guide at
20  the trial.
21         MR. COHEN: We have no intention to.
22         THE COURT: You are not planning on it. Okay.  What
23  else?
24         MS. CASTRO: Next, thing is that because the City of
25  New York is out, that we would not be mentioned as City

28

1  attorneys.

2         THE COURT: All right. Just individual attorneys.

3  Correct. That will be done.

4         MS. CASTRO: Also, that there will be no mention of

5  indemnification of the officers.

6         THE COURT: Correct. That will be done.

7         MS. GROSS: Your Honor, if I could just raise a final

8  point, and that is, I guess, it is more in the way of

9  reconsideration. I know on the issue of the 3/15 arrest

10  Your Honor has ruled that that is out -- 3/15 arrest. I think

11  from the City's perspective it is an important piece of

12  evidence with respect to Burbridge's and the officers' state

13  of mind when they did see him that night. They recognized him

14  as someone who had been involved in a previous gun arrest and

15  that was not the sole factor but it was a factor in their

16  stopping and questioning him.

17         THE COURT: They are not contesting that they had

18  the right to stop him.

19         MS. GROSS: I believe they are. They are, Your

20  Honor.

21         MR. NORINSBERG: We absolutely are. I mean I hope to

22  be clear.

23         THE COURT: You should have made a motion.

24         MR. NORINSBERG: The officer admitted in his

25  deposition that, apart from the statement made by Burbridge,

29

1   he didn't have probable cause to stop him.

2           MS. GROSS: No, no, I don't believe that is correct.

3           MR. NORINSBERG: That is exactly what he said.

4   Before the statement Burbridge is the one that said I know

5   that guy, he has a prior gun arrest. His partner, who was the

6   arresting officer, said before that statement was made we did

7   not have probable cause to stop this guy.

8           MS. GROSS: From the City's perspective, Your Honor,

9   if some of that evidence comes in, all of the details of the

10  arrest should come in.

11          MR. COHEN: We definitely object to that,

12  Your Honor.

13          THE COURT: Well, you are facing this sword again.

14          MR. NORINSBERG: We are prepared to live with the

15  Court's ruling that the Court made before, that both sides

16  have to live with it and we can't talk about it at all.

17          THE COURT: That's the ruling.

18          MS. GROSS: We will object to that. It is a

19  significant portion of Burbridge's state of mind, and the

20  officers as they were seeing this person.

21          THE COURT: It's not as to the state of mind with

22  respect to seeing a gun tossed.

23          MS. GROSS: Right.

24          THE COURT: With the state of mind of stopping, yes.

25          MS. GROSS: Right.

30

1         THE COURT: He said, as I understand the case but I

2    may be completely wrong:  I saw the plaintiff take a gun out

3    of his waist and throw it.

4         MS. GROSS:  That's right, Your Honor but --

5         THE COURT:  So whether they had a right to stop him

6    or not has nothing to do with it.

7         MS. GROSS:   Then the City would submit that

8    plaintiff should be precluded from arguing that the initial

9    stop was improper. They didn't make a motion.

10        THE COURT:  No, they are not going to do that.  It's

11   not coming in.

12        MR. NORINSBERG: It is part of the cross-examination.

13   It's just the events leading up to it.  He had no basis

14   whatsoever to stop the guy.  There was no suspicious activity.

15   I mean --

16        MS. GROSS: We dispute that.

17        THE COURT:  As I understand it, this plaintiff's

18   picture was posted in the police department, of course.

19        MS. GROSS:  On a database.

20        MR. COHEN:   It was posted on, like, on a board.

21        MS. GROSS: On a database.

22        MR. COHEN: He apparently viewed a database.

23        MS. GROSS: Right.

24        THE COURT:  Well, that's --

25        MR. COHEN:  And said he recognized him.

31

1        MS. GROSS: Right.

2        MR. COHEN: And that's why he decided to stop him.

3        MR. NORINSBERG: Our client said that he had been

4    stopped by the same officer and that is how the officer knew

5    him, so that's really what the state of mind was.

6        THE COURT: Look, if you want to get involved in

7    this I will have to open the door, if both sides want it. I

8    think it's a mistake from both points of view because what

9    you're faced with then is a man, plaintiff, who had repeated

10   brushes with the law. He's got a criminal history.

11       MR. COHEN: We don't want all the criminal history.

12   Why if one comes in now all of it has to come in?

13       THE COURT: Not all of it, but that is enough. He is

14   known to the police. He is known to the police and they stop

15   him.

16       MS. GROSS: He is known to the police based on a

17   previous gun case.

18       THE COURT: I don't think any of it should come in.

19   I am trying to keep the case as clean as possible and I

20   understand your problem.

21       MR. NORINSBERG:  We are just -- we are not seeking

22   a separate interrogatory on whether there's a lawful basis to

23   stop him, but it goes to the credibility of what took place

24   right before the stop. There's a lot of the events that they

25   unfold that we certainly intend to probe during cross

32

1   examination.

2          THE COURT:  Why did they stop him, do you know?  Why

3   was he known to the police?

4          MR. NORINSBERG: He did say that multiple, multiple

5   stops before this event, and during the stop they looked up

6   his history.

7          MS. GROSS:  No, I don't believe that's correct.

8          THE COURT:  They looked up his history?

9          MR. NORINSBERG: What's that?

10         THE COURT: They looked up his history before the

11  stop?

12         MR. NORINSBERG:  No, they stopped him many times

13  before.  During one of those stops they looked up his history

14  and knew about it.

15         THE COURT: They knew the history of this man before

16  they stopped him and you want that to come in?

17         MR. NORINSBERG: We don't want that to come in. I am

18  just saying to the extent that they were making arguments that

19  we can't talk about the basis for the stop, I think this is

20  all part of the incident.

21         THE COURT:  It is not a stop and frisk case.  You

22  never made a motion.  There is only one issue, and I recognize

23  it is very difficult to deal with, without getting into all

24  kinds of background of the policemen and plaintiff and

25  everybody else, but it is all prejudicial stuff and it all

33

1   will require us to get into details: Did he have a gun
2   before, did he not have a gun before, was it a valid stop
3   before or wasn't it a valid stop before, were they saying they
4   saw him throw it for another reason.  I don't want the case
5   expanded that way. I recognize it is difficult without going
6   into everything but I don't think I should permit it.
7                  MR. COHEN:   Can we have a break?
8                  THE COURT: What time did this occur?
9                  MR. NORINSBERG: 12:45.
10                 THE COURT:  P.M.?
11                 MR. NORINSBERG: In the morning.
12                 THE COURT: But in the afternoon?
13                 MS. CASTRO: After midnight.
14                 THE COURT: Oh, midnight. Well lighted street?
15                 MS. GROSS:  We argue yes.
16                 Your Honor, can we have a short break for two
17  minutes?
18                 THE COURT:  Sure.
19                 (Cour recessed);  (Court resumed)
20                 THE COURT:  Yes.
21                 MR. COHEN:  After evaluating, we agree with
22  Your Honor, you know, we think all of it should stay out.  We
23  wouldn't bring in the past -- their past incidents with our
24  client and they shouldn't bring anything they knew about our
25  client prior.

34

1          MS. GROSS:   We agree, Your Honor.

2          THE COURT:   Okay. So that will be tried the way it

3   will be tried.

4          MS. GROSS:   I'm sorry, Your Honor. Just to be

5   clear, we agree that this should be a probable cause case.  It

6   should be limited to a single issue and that any challenge to

7   the initial stop should be out and if that is --

8          THE COURT:   It is out.

9          There is only one question. Did they see this man

10  who didn't have the right to possess a gun take a gun out of

11  his waist and throw it to the ground. If he did, then there's

12  no case. If they are lying about it, then there is a case.

13         MR. COHEN:   Just so we are clear about this, just

14  prior to seeing this alleged gun being thrown out of our

15  client's waist, they went down the street the wrong way, they

16  said they saw our client walking with another individual, they

17  saw him make some hand gestures.  All that stuff we can't, at

18  least, ask them about?

19         THE COURT:   Yes.

20         MR. COHEN:   Everything but the statement by

21  Burbridge saying I know this guy.

22         THE COURT:   Yes, of course.

23         MR. COHEN:   So the whole res gestae of the event

24  with the whole -- can come in?

25         THE COURT:   Yes, you can ask him what they were

```
                                                             35
 1   doing, whether the lights were clear, whether they were
 2   talking to each other, whether they were looking.
 3            MR. COHEN: It goes to the whole scenario about what
 4   they could see and perceive, whether they were mistaken or not
 5   mistaken.
 6            THE COURT:  Right.
 7            MS. GROSS: With respect to what they could see and
 8   perceive, we agree, but if there is any challenge whatsoever
 9   to the initial stop then we would ask --
10            THE COURT:  -- they are not going to do --
11            MS. GROSS:  -- challenging, meaning you're
12   challenging the legality of there wasn't enough for even a
13   stop.  If that is at issue at all we believe --
14            THE COURT: They didn't stop him before he threw the
15   gun.
16            MR. NORINSBERG:  The officer's story is he says can
17   I have a word with you please, can I have a moment of your
18   time and that is when he saw him throw the gun, so there was
19   no stop, per se.  It all happened quickly.
20            MR. COHEN:   It was just an approach.  He approached
21   him in the vehicle.
22            THE COURT: He's certainly capable of doing that.
23   It's a valid inquiry at that point in the morning to that man
24   walking down the street.  What street was it?
25            MR. COHEN:  Park Street and Broadway.
```

36

1                MS. CASTRO: Bushwick, Brooklyn.

2                THE COURT: That's a residential area.

3                MR. COHEN: It's a mixed, commercial.

4                THE COURT: Okay. I'll make up a charge and send it

5    to you. Do we have your e-mail, fax, everything? We'll get it

6    to you.

7                MR. NORINSBERG: Will the Court also be sending a

8    verdict sheet or do you want us to propose one?

9                THE COURT: No. We will send it as part of the

10   charge. We will have a conference. We can go over it later.

11               MS. CASTRO: Your Honor, there are some recent

12   Supreme Court decisions that the City just wanted to bring up.

13   There are allegations in the complaint that the officers made

14   false or gave false statements, gave false testimony at the

15   grand jury. The Supreme Court cases Rehberg versus Paulk. It

16   came out on April 2nd, 2012, and what was held was a witness

17   in the grand jury proceeding had absolute immunity with

18   respect to a 1983 claim. We would like for plaintiffs to be

19   precluded from making any mention that there were false

20   statements given by the defendant officers at the grand jury

21   in this case.

22               THE COURT: This is not a criminal case against the

23   police officer.

24               MS. CASTRO: There are allegations in the plaintiff's

25   complaint.

*MARSHA DIAMOND, C.S.R.*
*OFFICIAL COURT REPORTER*

1          THE COURT: He doesn't have immunity to lie. He can

2   be prosecuted for lying, can't he? May I see the case please.

3          MS. CASTRO: Yes.  I actually brought a copy of it as

4   well (handing to the Court and to plaintiff's counsel).

5          THE COURT: Thank you (perusing).

6          Well, I think you are entitled to the following in

7   the charge: The defendants are not being charged with lying in

8   the grand jury. That is not a basis for recovery under the

9   civil rights law. That is what it says here. However, in

10  deciding whether the defendants lied about what they saw to

11  justify the arrest, who are the continuing prosecution in the

12  state court system, the defendant may be asked if he lied

13  before the grand jury. This is evidence of credibility on

14  credibility, if you believe it is helpful, but you may not

15  base a verdict against a defendant even if you thought that he

16  lied before the grand jury because he has constitutional

17  immunity in testifying before a grand jury.

18         MR. COHEN:  If I may, Your Honor. The Rehberg

19  decision -- I don't know how to spell it -- specific to -- it

20  is a very fact specific opinion. It is specific to initiate

21  the criminal prosecution right out of the District Attorney's

22  Office. These are police officers here in this case, and they

23  -- before they went into the grand jury they prepared several

24  affidavits which Rehberg clearly states in their footnote and

25  in those affidavits we are alleging that those -- that

38

1  commenced the proceeding were lies. They spoke --

2      THE COURT: The charge only applies to what they

3  said in the grand jury room. Any affidavit or what they said

4  outside can come in.

5      MR. COHEN: Yes. We would want that just to be

6  clarified, the lies that were said to -- the alleged lies that

7  were said to the D.A.'s Office in preparing the affidavit

8  that started the prosecution, they can still be found liable

9  under 1983. I just want to make that clear.

10     THE COURT: No, I don't want it. That is not what

11 they are charged with in this case, so I don't want to bring

12 it in.

13     MR. NORINSBERG: We are accusing them as part of the

14 malicious prosecution claim of misleading the District

15 Attorney's Office. Even after Rehberg, it is still absolutely

16 viable.

17     THE COURT: Right.

18     MR. NORINSBERG: And the long-standing precedent in

19 the Second Circuit in White v. Frank, that is the officers

20 could be held liable for lying to the grand jury, so we are

21 questioning whether this 2012 decision would apply

22 retroactively to grand jury testimony that was given four

23 years ago. I mean there is certainly case law in the Second

24 Circuit that says it has to be analyzed on a case by case

25 basis. As to whether or not you do apply it retroactively, I

39

1   think there's a real question whether it should be in this
2   case.
3           THE COURT:  Well, you can brief it if you'd like and
4   I'll be happy to reconsider my decision, but as of this moment
5   that is the charge I'll give on it, and they can consider any
6   lies on credibility.
7           MR. COHEN: And just so we are clear, the charge
8   would not be applicable to the false arrest.  It merely would
9   only be applicable to the malicious prosecution or is that --
10          THE COURT: The false arrest has nothing to do with
11  what they later said in the grand jury, as a matter of
12  substantive law, it just comes in on credibility.
13          MR. COHEN:  Umm-Humm. Okay.
14          THE COURT: I'll send you the charge with this in it,
15  and you'll see what you want to do with it. Brief it.
16          MS. CASTRO: Your Honor, when would you like us to
17  submit our proposed jury charge?
18          THE COURT:  It was supposed to have been submitted
19  today.
20          MR. COHEN:  I believe we have already submitted last
21  week.
22          THE COURT:  Yes, I have it.
23          MS. CASTRO: I apologize, Your Honor. May we have
24  until Wednesday to submit it?
25          THE COURT:  I don't see very much point in

1  submitting a jury charge now because I've drafted mine and
2  you'll get a copy of it tomorrow by e-mail and what I'll get
3  from both of you are objections and suggestions for improving
4  the Court's charge.

5           MR. NORINSBERG: When would that take place?

6           THE COURT: It will take place during the course of
7  the trial. We will meet every morning at 9:30. So from 9:30
8  to ten we will take up any problems that may arise during the
9  course of the day and we will use the time for the jury
10  conference. I don't like side-bars.

11          MS. CASTRO: Your Honor, with respect to qualified
12  immunity, how will the Court handle? Is that an issue that
13  will go to the jury or will Your Honor decide that?

14          THE COURT: Well, I think that I've framed the jury
15  charge, so it's not really a separate issue. The question is
16  whether a reasonable policeman would think, having observed
17  this scene, that what he was seeing was the defendant throwing
18  the gun and that's the objective test, and the subjective part
19  of the test is did he actually see that. So there are two
20  parts to the test; one objective, which the Second Circuit
21  likes and one subjective: Did he see it.

22          MR. NORINSBERG: Your Honor, if we could be heard?
23  Our view on this is qualified immunity is not possible as a
24  defense in this case because both officers said a hundred
25  percent they saw this happen. There's a clear factual

41

1   dispute.  If our client's testimony is accepted by the jury,

2   that means they are lying, and under Second Circuit case law

3   they wouldn't be entitled to qualified immunity for lying.  So

4   it is one of those rare cases.  It is such a clear-cut bright

5   line.  There is no middle ground here.  Qualified immunity

6   would not be available as a defense.

7           THE COURT: Well, I think that occurred to me and I

8   think you may be right.  Why don't you look at what we drafted

9   and then we will deal with it, but I was thinking of just

10  giving them a very simple charge saying in effect:

11          If you believe the plaintiff is telling the truth

12  you should find for the plaintiff. If you believe both of the

13  defendants are telling the truth find for the defendants.

14  That is what the case comes down to.

15          MR. NORINSBERG: We are in agreement with that in

16  principle, Your Honor, but the only thing is with respect to

17  the false arrest claim, the defendants actually have the

18  burden of proof.  So if the jury is stuck in the middle and

19  they can't decide it, they would have to rule against the

20  defendants and that's the only problem with that formulation

21  as to who is telling the truth or not.  They have to prove

22  their case for the false arrest because it is a warrantless

23  arrest. So I would just hope that in terms of the charge the

24  jury is receiving, that that principle be made clear to them.

25          THE COURT: Yes.  The burden of the defendant.

42

1          MR. NORINSBERG:  Right, on the false arrest claim;

2   not on the mal prosecution.

3          THE COURT:  On the false arrest claim.

4          MR. NORINSBERG: Right.

5          THE COURT:  And it is the burden of the plaintiffs

6   on the malicious prosecution.

7          MR. NORINSBERG:  And the fair trial claim, we have

8   the burden of proof on those two, but they have it on the

9   false arrest.

10          THE COURT:  Do you disagree?

11          MS. CASTRO:  We don't disagree.

12          THE COURT:  All right. So that's the way we will do

13   it. We can amend the charge to that.

14          MS. CASTRO: We just wanted to clarify for the record

15   our understanding that plaintiff has to prove the absence of

16   probable cause while defendants have to prove that there was

17   probable cause for the arrest.

18          MR. NORINSBERG:  Not if it's an arrest without a

19   warrant.  It is presumed to be unlawful and they have to come

20   forward as defendants and prove it was lawful.

21          THE COURT:  Justifiable. I think they have to show

22   it was a justifiable arrest. It is false imprisonment and they

23   have to show justification.

24          MS. CASTRO:  Although this is a civil action; not a

25   criminal proceeding. The burden would be on them to show there

43

1   was the absence.

2          THE COURT:  Well, look, tomorrow you'll get a rough

3   draft of my charge.  Try to focus your attention, make your

4   suggestions as to changes and give me a brief on why it should

5   be changed; otherwise, we are not getting anyplace.

6          MS. CASTRO: And Your Honor, may we submit some

7   special interrogatories for the jury to consider the issue --

8          THE COURT:  You can submit anything you'd like.  I'd

9   be happy to see it.

10          MS. CASTRO: Thank you.

11          THE COURT: Anything further?

12          MR. NORINSBERG: No, Your Honor.

13          THE COURT: Thank you.

14          (These proceedings were adjourned as above set forth)

15                               o0o

16

17

18

19

20

21

22

23

24

25

A887

LETTER, DATED APRIL 18, 2012, FROM GERALD COHEN
AND JON L. NORINSBERG TO THE HONORABLE JACK B. WEINSTEIN
(pp. A887-A892)

REPRODUCED FOLLOWING

**A888**

## COHEN & FITCH LLP

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313

April 18, 2012

***VIA ECF and FACSIMILE (718)613-2527***
Judge Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    ***Marshall v. Randall et al.***
> ***10 CV 2714 (JBW)(VVP)***

Dear Judge Weinstein:

I represent Joshua Marshall in the above- referenced Civil Rights case scheduled for trial before Your Honor on Monday, April 23, 2012. I write now to raise some objections plaintiff has to Your Honor's proposed jury charge and to respectfully request the jury charge be amended to reflect the concerns stated herein.

### Proposed Amendment to Section II. (C.) Claims and Burden of Proof

As a preliminary matter, the jury charge in its current form mischaracterizes plaintiff's theory of the case on page three, where it states "he was arrested by the defendants after the officers observed plaintiff's companion, rather than he, threw the weapon, and the police knew it." Contrary to this statement, plaintiff is not alleging that defendants actually saw his companion throw the gun and then falsely allege it was plaintiff that threw the gun. Rather, plaintiff is arguing that defendants did not see who threw the gun, but nonetheless falsely alleged they saw plaintiff throw the gun even though they didn't know who in fact threw it. This theory of the case is supported by the facts elicited in discovery. Plaintiff has always maintained that the officers asked "whose gun is it" shortly after stopping him. Further, the time at night this incident occurred, the poor lighting conditions, and defendants distance away from plaintiff when they allegedly saw him throw this gun all suggest that their visibility was impaired. These factors all go toward supporting plaintiff's theory that defendants had no idea who threw the gun but nonetheless lied about actually seeing plaintiff throw it. Although this is a subtle distinction, it more accurately reflects plaintiff's theory of the case and as such plaintiff respectfully requests this Section of the jury charge be amended accordingly.

In addition, with respect to the last paragraph in this Section plaintiff proposes that the following sentence be added at the end: "Since there was no judicial warrant in this case, defendants have the burden to prove they had probable cause to arrest plaintiff."

### *Proposed Amendment to Section III.(C.)(1) False Arrest*

With respect to the Section on False Arrest, the jury charge has language that suggests that the officers could have observed plaintiff engaged in criminal activity other than the possession of the firearm. (See Pg. 7). However, this is not supported by the record. Throughout this case there has been no allegation that the defendants observed plaintiff commit any other crime. As such, plaintiff respectfully requests that the sentence in the third paragraph of this Section beginning "The plaintiff contends..." should not include "for that or any other crime" at the end of it, because the only crime which has ever been at issue in this case is whether plaintiff was in possession of the gun. As such, plaintiff respectfully requests that the sentence end right before that last clause.

Further, in line with plaintiff's theory and defendants' defense, the key issue in this case is whether plaintiff possessed a gun on the night of the incident. Defendants have adamantly stated at their deposition that they were certain that they saw plaintiff throw the gun. They did not waiver and they have explicitly stated that they were not and could not be mistaken. Therefore, plaintiff respectfully requests that the fourth sentence in paragraph three be changed to reflect the facts of this case. Specifically, plaintiff requests that the beginning of the sentence which states "[i]f there was an objectively reasonable ground for the officers' belief that a crime had been, or was being, committed by the plaintiff..." be changed to "[i]f the officers observed plaintiff with a gun..."

In addition, the fact that plaintiff's charges were dismissed is relevant in a jury's determination of probable cause. According to law of this Circuit evidence of a dismissal can be used to refute the existence of probable cause. See Weyant v. Okst, 101 F.3d 845, 852 (2nd Cir. 1996)("'evidence of a subsequent dismissal [is] admissible to refute ... justification.'")(citing Broughton v. State, 37 N.Y.2d 451, 458 (N.Y. 1975)("evidence of a subsequent dismissal ... [is] admissible to refute the affirmative defense of justification"). As such, plaintiff respectfully requests that the last sentence of the fourth paragraph in this Section which states "[w]hether charges were dropped .... is irrelevant on this issue" be amended to reflect Second Circuit precedent, which explicitly states that an arrest that results in dismissal is relevant to the issue of probable cause.

Finally, plaintiff requests that the last sentence on page seven of this Section be amended to apply to this arrest as follows: "The defendants have the burden of showing that probable cause existed for this arrest."

### *Proposed Amendment to Section III.(C.)(2) Malicious Prosecution*

The third paragraph of the Malicious Prosecution Section suggests that Marshall's dismissal was the result of a technicality. Specifically, the charges now state that "[t]he charges against Marshall were dismissed for failure to comply with speedy trial rules – that is to say, he

**A890**

should have been tried sooner." This dismissal could also easily be characterized as a result of the District Attorney's office not believing in this case and thus allowing it to be dismissed on speedy trial grounds. Since the District Attorney is not being called as a witness and any such reasons as to why the District Attorney's office ultimately allowed this case to be dismissed is not being offered or disputed, plaintiff respectfully requests that the charge simply state that the charges were dismissed on May 27, 2009.

In addition, with respect to the instruction on the element of malice, the Second Circuit has recognized that malice can be inferred from the lack of probable cause. See Ricciuti v. New York City Transit Auth., 124 F.3d 123, 131 (2d Cir.1997) ("a jury could find that probable cause for the charges against the plaintiff[ ] was lacking ... that finding alone would support an inference of malice"). Accordingly, plaintiff respectfully requests that an instruction informing the jury that they "may infer malice if they have found that the defendants lacked probable cause to initiate and continue with any of the charges against plaintiff."

### *Proposed Amendment to Section III.(C.)(3) Constitutional Right to Fair Trial*

In order to establish that plaintiff was denied a fair trial, the plaintiff must prove each of the following elements by a preponderance of the evidence: (1) defendant created false evidence; (2) the defendant forwarded that false evidence to the prosecutor; and (3) plaintiff was deprived of liberty as result of that false evidence. Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000). As the charges are written now, the jury must find that "the defendants knowingly presented false information to the prosecutor, which led to *an indictment* being issued against the plaintiff." (emphasis added). The Second Circuit has found that a fair trial claim can exist even in the absence of an indictment being issued, as long as plaintiff has been deprived liberty. In this case plaintiff spent approximately four and half months in jail as a result of what he alleges was false allegations made by defendants. As such, plaintiff respectfully requests that the instruction be amended to inform the jury that they must find that the false information "led to a deprivation of plaintiff's liberty" rather than "led to an indictment being issued."

### *Proposed Amendment to Section IV Compensatory and Nominal Damages*

As discussed *supra*, this is not a case where there is any allegation the officers could be mistaken. The officers have made it abundantly clear that they saw plaintiff, and no one else throw the gun. Therefore, if the jury believes that the defendants did not see that, then they must have lied. As such, nominal damages are not warranted in a case like this. In fact, if jury finds plaintiff loss his liberty as a result of defendants actions it must find compensatory damages. See Kerman v. City of New York, 374 F.3d 93, 123-25 (2d Cir. 2004) (loss of liberty is recognized as a recoverable compensatory damage). Further, Judge Sifton recognized that

> In cases where the proof of plaintiff's injury is slim or contested, however -- and especially *in cases where proof of the alleged constitutional violation hinges on the jury's determinations of witness credibility -- a nominal damages instruction affords the jury an opportunity to engage in improper compromise. In such cases, a plaintiff should be allowed to determine whether to seek*

**A891**

> *both nominal and compensatory damages, or whether to remove the option of nominal damages from the jury's consideration and instead seek an outcome in his case based on his showing of proximately caused actual injury.* To afford a defendant an equal right to a nominal damages charge in such a case would preclude a plaintiff from making this strategic choice.
>
> Vilkhu v. City of New York, No. 06 Civ 2095 (CPS), 2009 U.S. Dist. LEXIS 16616, *20-21 (E.D.N.Y. March 3, 2009) (emphasis added).

Accordingly, plaintiff is requesting that nominal damages charge not be included in the charge.

Similarly, plaintiff respectfully requests a punitive damages charge. If jury finds defendants knowingly lied, as plaintiff will be asserting, then punitive damages are absolutely warranted.

## Proposed Verdict Sheet

This case boils down to one question: DID PLAINTIFF POSSESS A GUN ON MARCH 15, 2008? If the answer to that question is no, then the jury must find defendants liable of all the claims. As discussed above, the officers claimed they were *certain* that they saw plaintiff throw the gun and could not have been mistaken. So if the jury believes that plaintiff did not have gun, the officers must be lying and thus are liable for all claims. As such, plaintiff proposes that this question be the only one put to the jury with respect to liability. Further, for the reasons stated above, plaintiff requests that the Nominal Damages question be removed and a punitive damages question be inserted in its stead.

Respectfully submitted,

COHEN & FITCH LLP

By: _____/S_____
    GERALD COHEN
    COHEN & FITCH LLP
    233 Broadway, Suite 1800
    New York, N.Y. 10279
    (212) 374-9115
    gcohen@cohenfitch.com

JON L. NORINSBERG
225 Broadway, Suite 2700

New York, NY 10007
(212) 791-5396
norinsberg@aol.com

Attorneys for Plaintiff

CC:    ***VIA ECF and FACSIMILE (212)788-9776***
       Assistant Corporation Counsel
       The City of New York Law Department
       100 Church Street
       New York, New York 10007
       Attn: Johana Castro, Esq.
       Attn: Felicia Grossman, Esq.
       Attorneys for Defendants

A893

DEFENDANTS' OBJECTIONS TO PROPOSED JURY CHARGE, FILED APRIL 20, 2012
(pp. A893-A904)

REPRODUCED FOLLOWING

Case 1:10-cv-02714-JBW-VVP   Document 66   Filed 04/20/12   Page 1 of 11 PageID #: 1024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x

JOSHUA MARSHALL,

                                        Plaintiff,

                    -against-

THE CITY OF NEW YORK, P.O. SALIM              10 Civ. 2714 (JBW)(VVP)
RANDALL, Shield No. 15331, Individually and in
His Official Capacity, P.O. MICHAEL
BURBRIDGE, Shield No. 15488, Individually and in
His Official Capacity, and P.O.s "JOHN DOE" #1-
10, Individually and in their Official Capacities, (the
name John Doe being fictitious, as the true names are
presently unknown),

                                        Defendants.
---------------------------------------------------------------x


## DEFENDANTS' OBJECTIONS TO PROPOSED JURY CHARGE

                    FELICIA GROSS
                    JOHANA CASTRO
                    MICHAEL A. CARDOZO
                    Office of the Corporation Counsel
                      of the City of New York
                    100 Church Street
                    New York, New York 10007
                    (212) 788-0303
                    fgross@law.nyc.gov
                    jcastro@law.nyc.gov

                    Attorneys for Defendants

**JACK B. WEINSTEIN, Senior United States District Judge:**

# I. INTRODUCTION[1]

Ladies and Gentlemen of the jury:

I will instruct you on the law. It is your duty to follow these instructions. My instructions will be in three parts.

First, regarding the general rules that define and govern the duties of a jury in a civil case.

Second, as to the legal elements of the claims asserted by the plaintiff, I will provide the specific elements that the plaintiff must prove with respect to each of his claims to warrant a finding of liability on the part of a defendant.

Third, giving you some guidance regarding your deliberations.

Please read these instructions along with me. You may take them into the jury room.

You will have a list of documents and objects that were admitted into evidence. Ask for any of them or for a transcript of the testimony that you wish to see.

# II. GENERAL RULES

### A.    Role of the Court and of the Jury

You are the sole judges of the facts. Decide which of the witnesses you believe, what portion of their testimony you accept, and how much weight you give to it.

I have no view regarding the liability of any defendant. Nothing that I have said or done should be used by you to infer that I have such a view.

Your verdict must be based exclusively on the evidence or lack of evidence in the case and the law as I explain it to you. Do not consider any personal feelings that you may have about the race, religion, national origin, ethnic background, gender, or age of the plaintiff or a defendant. Do not do any research of your own, by computer or otherwise.

### B.    All Parties and Witnesses Equal

No party is entitled to any sympathy or favor. All parties are equal before this court. The fact that the defendants are police officers does not entitle them to any greater or lesser consideration than the plaintiff.

### C.    Claims and Burden of Proof

Whenever I say that a party has the burden of proof on a particular issue, I mean that,

---

[1] For ease of reference, Defendants have indicated suggested deletions in brackets, and suggested additions in bold highlighting.

**A896**

considering all of the evidence in the case, the party's claim on that issue must be established as more probably true than not true. If the probabilities are equal—that is, **[in equipoise] the scales are evenly balanced**—the party has not met his burden.

The plaintiff makes three claims. First, **plaintiff claims that he was falsely arrested by the defendants even though they didn't know who threw the gun** [that he was arrested by the defendants after the officers observed plaintiff's companion throw a gun into the street, and that the arrest was illegal because his companion, rather than he, threw the weapon, and the police knew it]. Second, **plaintiff claims** that **the** criminal charges were **maliciously brought against him**, based on fabricated evidence **specifically that the officers made up that they saw him throw the gun which instigated the subsequent prosecution of plaintiff on charges of possession of a weapon** [regarding the events leading to his arrest, were maliciously brought against him]. Third, that one or both of the defendants violated his constitutional right to a fair trial by presenting false evidence to state prosecutors in order to procure an indictment.

Thus, the first issue is whether the plaintiff was falsely arrested by the defendants. The second issue is whether the plaintiff was maliciously prosecuted by the defendants. The third issue is whether the plaintiff was denied his constitutional right to a fair trial by the defendants. If and only if you decide one or more of these questions in the plaintiff's favor will you be required to consider the amount of damages to which the plaintiff is entitled.

**The plaintiff has the ultimate burden of proving each of the essential elements of his claims by a preponderance of the credible evidence [,except for the probable cause element of his false arrest claim]. The defendants bear the burden of proving that there was probable cause to arrest plaintiff. [The burden is on a defendant, when an arrest is not made pursuant to a judicial warrant, to prove that he had probable cause to arrest.]**

**D. Unanimity of Decision**

Your decision on any issue must be unanimous. All of you must agree on the answer to questions on the verdict sheet I will give you.

**E. Evaluation of the Evidence**

You will have a list of witnesses. Ask for a transcript of any part of the testimony that you wish to see. Try to be specific.

Communicate with me in writing to ask for any evidence, help on the law, or any other matter. Give a note with your question to the Marshal.

# A897

During the trial, objections were raised and rulings made.  Draw no inferences from the frequency of objections or from whether objections were sustained or overruled.  Where an objection to a question was sustained, disregard the question and draw no inferences from its wording.  Where testimony was stricken, disregard it.

On occasion, I gave limiting instructions on how evidence could be used.  Follow those instructions.

Give the evidence such weight as you think it deserves.  Analyze the evidence dispassionately, rationally, and without prejudice or emotion.

You may draw reasonable inferences from the evidence.  Testimony from the witnesses and the exhibits are evidence.  A lawyer's questions without an answer, arguments, and the opening and closing statements are not evidence.

### F.    Witnesses

### 1. General Principles

Decide which testimony to believe and which not to believe.  Consider the following:  each witness's demeanor and manner of testifying; his or her opportunity to see, hear, and know about the events he or she described; the witness's ability to recall and describe those things; the reasonableness of the testimony in light of all of the other evidence in the case; and the interest of a witness in the outcome of the trial.  Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what that witness said or did on a prior occasion, and by the testimony of other witnesses or by other evidence.

If you find that a witness has willfully testified falsely as to an important matter, you may disregard the entire testimony, or you may accept as much of the testimony as you find true and disregard what you find false.  A witness may have been mistaken or may have lied with respect to part of his or her testimony while having been accurate or truthful with respect to other parts.

**PARAGRAPH 2. SHOULD BE DELETED AS IT IS NOT APPLICABLE TO THIS CASE**

Attorneys were entitled to interview witnesses outside of court to prepare for trial.

### 2.    Testimony of Out-of-Court Declarants

You have heard evidence concerning what people outside the courtroom said about events.  You are entitled to consider these statements as evidence.  In evaluating these statements, remember that these individuals were not cross-examined before you when the statement was made.  In considering the probative force of statements of individuals who have not testified, apply the same credibility tests that you apply with respect to individuals who have testified.

### 3.    Testimony of Expert Witnesses

[Persons] **A person** described as an expert[s] **is a** [are] witness[es] who has acquired specialized knowledge by education, experience, or training.  [They are] **She is** permitted to give [their] **her** opinion[s] and to give the reasons for them.

- 4 -

In weighing **her** [their] testimony, you should consider the factors that generally bear upon the credibility of any witness, as well as the witness's education, training and experience, the soundness of the reasons given for the opinion, and all other evidence in the case. You should also consider whether the assumptions on which the witness relied were proven.

### G. Judicial Notice

The court has taken judicial notice of certain facts or events. You shall accept these facts or events as evidence and regard as proven any fact or event that has been judicially noticed.

### III. CLAIMS OF PLAINTIFF

Three claims are asserted by plaintiff under Section 1983 of Title 42 of the United States Code against police officers Salim Randall and Michael Burbridge.

Three claims are asserted by plaintiff under Section 1983 of Title 42 of the United States Code against police officers Salim Randall and Michael Burbridge.

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of state law by state or local officials. It states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To make out a claim under Section 1983, the plaintiff must prove:

**First**, that the defendant officers acted intentionally or recklessly.

**Second,** that the conduct complained of was committed by a person acting under color of state law;

**Third**, that this conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States, and

**Fourth**, that the defendants' acts were a proximate cause of damages sustained by the plaintiff.

### A.    Intentional or Reckless Conduct

An act is intentional if it is done knowingly, that is, if it is done voluntarily and deliberately, and not because of mistake, accident, negligence, or other innocent reason. An act is reckless if it is done in conscious disregard of its known probable consequences.

### B.    Color of State Law

The defendants, as New York City police officers, were acting under color of state law when they arrested plaintiff. This element is deemed proven.

### C.    Deprivation of Constitutional Right

#### 1. False Arrest

Plaintiff Marshall claims that defendants Randall and Burbridge falsely arrested him on May 15, 2008, in violation of the Fourth Amendment of the Constitution.

A person is falsely arrested when (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not privileged.

**I instruct you that defendants had a right to approach and inquire of the plaintiff. So the only issue for you to decide [**The key issue for you on this claim**] is whether the plaintiff's** arrest was privileged. **That is whether there was probable cause for plaintiff's arrest.** Defendants contend that there was probable cause to arrest the plaintiff for the illegal possession of a firearm. The plaintiff contends that there was no probable cause to arrest him for that or any other crime. If there was an objectively reasonable ground for the officers' belief that a crime had been, or was being, committed by the plaintiff, then the arrest was privileged. **I instruct you that the knowledge of one officer is presumed by all under the law.**

The existence of probable cause is measured at the moment of arrest. Whether charges were dropped or whether the plaintiff was acquitted or convicted of a crime is irrelevant on this issue.

The failure of an officer to make a further inquiry before making an arrest, when a reasonable person would have done so, may, but does not necessarily, show a lack of probable cause. An officer is not required to conduct a full investigation prior to executing an arrest. But he may not ignore relevant evidence that he is aware of, or deliberately disregard facts he is aware of that tend to rebut the existence of probable cause to arrest.

A defendant has the burden of showing that probable cause existed for the arrest.

With regard to the substantive crimes on which plaintiff's arrest was premised, a person is guilty of the criminal possession of a weapon when he "possesses any firearm," except under limited circumstances not relevant here. *See* N.Y. Penal Law §§ 265.01(1), 265.20.

#### 2.    Malicious Prosecution

Plaintiff Marshall claims that defendant Randall and defendant Burbridge maliciously prosecuted him by providing false statements to, and withholding relevant evidence each was aware of, from a state prosecuting attorney. Plaintiff was indicted by a grand jury of three counts of [the] criminal possession of a weapon. **The grand jury indictment creates a rebuttable presumption that the criminal proceeding was supported by probable cause.**

A person is maliciously prosecuted when (1) criminal proceedings are initiated or continued against him by the defendant; (2) the proceedings are terminated in his favor; (3) there was no probable cause for the commencement of the proceeding; and (4) a defendant's actions leading to the

# A900

initiation of the proceeding against plaintiff were motivated by malice of the defendant.

[There is no dispute that criminal proceedings were commenced and continued by the defendants against the plaintiff and that they ended in his favor.] **The parties do not dispute that the** [The] charges against Marshall were dismissed for **the prosecutor's** failure to comply with speedy-trial rules—that is to say, he should have been tried sooner. That is deemed a termination favorable to the accused.

The critical decisions for you are whether there was probable cause for the **initiation** [commencement] of the proceedings and whether either defendant's [assistance in the commencement] **initiation** of the proceedings was motivated by malice.

Probable cause to prosecute exists when the facts and circumstances within the person's knowledge at the time he takes steps to proceed with the prosecution are sufficient for a person of reasonable prudence to believe that a violation of law was committed. **With respect to probable cause, the plaintiff was indicted. As I indicated above, the grand jury indictment creates a rebuttable presumption of probable cause. Plaintiff can only overcome the presumption of probable cause by proving that defendants fabricated evidence.**

The question here is whether either or both of the defendant officers believed that there was probable cause to initiate or assist in the prosecution of plaintiff.

A defendant initiates or continues a prosecution maliciously if he initiates or continues it for a wrongful purpose, that is, if his goal is not to bring an alleged offender to justice. For example, if he acts out of ill will or personal hostility towards a person accused, or he acts out of a desire to punish a person without due process, then he can be said to have acted with malice.

If probable cause existed for Officers Randall and Burbridge to present the evidence they did to the state prosecuting attorney, then you must find for the defendants on this claim. If no probable cause existed, but the defendants did not act with malice, then you must find for the defendants on this claim.

### 3.    Constitutional Right to a Fair Trial

Every person has a right not to be prosecuted on the basis of information that is known by the government to be false. The government's doing so violates the Constitution.

The question for you on this claim is whether the **plaintiff has proven by a preponderance of the evidence that** defendants knowingly presented false information to the prosecutor, which led to an indictment being issued against the plaintiff. If a defendant presented accurate evidence to the prosecutor, or presented inaccurate evidence without the requisite intent, then you must find for the defendant.

### D. Proximate Cause

The third element that plaintiff must prove is that the acts of Officer Randall and Officer Burbridge were a proximate cause of injuries he sustained.

There can be more than one proximate cause. An injury or damage is proximately caused by

- 7 -

# A901

an act or failure to act whenever the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that injury was the direct or a reasonably probable consequence of the act or omission.  To recover damages, Marshall has the burden of proving that he suffered an injury and that the injury would not have occurred without the wrongful conduct of the defendant.

**Multiple Defendants: You must be careful to impose any damages that you may award the plaintiff solely upon the defendant or defendants whom you find to be liable for that injury. Although there are two individual defendants in this case, it does not follow that if one is liable, the other is liable as well.  Each defendant is entitled to fair, separate and individual consideration without regard to your decision as to the other defendant.  If you find that only one is responsible for a particular injury, then you must impose damages for that injury only upon that defendant.**

## IV.    DAMAGES

If the plaintiff has proven liability on a claim, you must then determine [the damages to which he is entitled on that claim] **whether he has proven by a preponderance of the evidence that he suffered any damages for any injury proximately caused by Officer Randall and Officer Burbridge's actions.**  Do not infer that he is entitled to recover damages merely because I am instructing you on this issue. It is exclusively your function to decide upon liability.

### Compensatory [and Nominal] Damages

If liability is proven on a claim, you must **then determine if plaintiff has proven by a preponderance of the evidence that he suffered any damages for** [award the plaintiff sufficient damages against the defendants to compensate him for] any injury proximately caused by Officer Randall and Officer Burbridge's actions that created the liability.  Damages of this type are known as compensatory damages.  Their purpose is to make a plaintiff whole.

The compensatory damages you award, if any, should be fair and reasonable, neither inadequate nor excessive. You should award damages only for injuries the plaintiff has suffered or is reasonably likely to suffer as a proximate result of the claim.

**[DELETE]** If you find both defendants are liable to the plaintiff on one or more of his claims, any amount of damages you award is to be assessed as against both defendants.

In awarding compensatory damages, you must be guided by dispassionate common sense. Use as much definiteness and accuracy as the circumstances permit.

**[DELETE]** If compensatory damages were nominal, you may award an appropriate sum, in the amount of a dollar or more.

### Nominal Damages

Now I will tell you about nominal damages.  The mere fact that a person has been deprived of a constitutional right is an injury to that person whether or not he can prove compensatory damages by a preponderance of the evidence.  You should therefore award the plaintiff nominal damages in a sum not to exceed one dollar if  you return a verdict for the

- 8 -

## A902

**plaintiff on any of his claims, but find that he failed to prove compensatory damages on that claim by a preponderance of the evidence.**

### V.   CONCLUDING REMARKS

Do not communicate with anyone outside the jury room except the court about your deliberations or about anything else regarding this case. You may send a note to me, signed by your foreperson, through the Marshal to ask for help on the law or for any other assistance.

Discuss the issues with respect for each other. Do not hesitate to change your mind after considering each matter. Each of you is individually responsible for your vote.

If you are divided, do not report how the vote stands. If you have reached a verdict, do not report what it is to anyone until you are asked in open court. Inform the court when you have reached a verdict; do not inform me what your verdict is.

Render your verdict without fear, without favor, without prejudice, and without sympathy.