# 12-2479-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

JOSHUA MARSHALL,

Plaintiff-Appellee,

-against-

P.O. SALIM RANDALL, Shield No. 15331, Individually and in His Official Capacity, P.O. MICHAEL BURBRIDGE, Shield No. 15488, Individually and in His Official Capacity,

Defendants-Appellants,

-and-

THE CITY OF NEW YORK, JOHN DOE, P.O.'s # 1-10 Individually and in Their Official Capacities (the name John Doe being fictitious, as the true names are presently unknown),

Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

### JOINT APPENDIX
### Volume V of V (pp. A1204-1485)

MICHAEL A. CARDOZO,
Corporation Counsel of the
 City of New York,
Attorney for Defendant-Appellant,
100 Church Street,
New York, New York 10007.
(212) 788-1010

COHEN & FITCH LLP,
Attorneys for Plaintiff-Appellee,
233 Broadway, Suite 1800,
New York, NY 10279.
(212) 374-9115

LAW OFFICES OF JON L. NORINSBERG
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396

Reproduced On Recycled Paper

## INDEX TO VOLUMES

**Page**

Volume I ................................................................................................................................A1-A300

Volume II ...............................................................................................................................A301-A601

Volume III .............................................................................................................................A602-A902

Volume IV ..............................................................................................................................A903-A1203

Volume V ...............................................................................................................................A1204-A1485

# TABLE OF CONTENTS

**Page**

Docket Entries ............................................................................................................. A1

Complaint, Dated June 8, 2010.................................................................................. A16

Defendants City of New York, Randall and Burbridge's
Answer, Dated October 8, 2010 ................................................................................ A28

Defendants' Notice of Motion for Summary Judgment,
Dated September 9, 2011............................................................................................ A39

Declaration of Steve Stavridis, Dated September 9, 2011,
Read in Support of Defendants' Motion for Summary
Judgment, with Annexed Exhibits............................................................................. A42

    Exhibit A -    Complaint, Dated June 8, 2010............................................... A46

    Exhibit B -    Defendants City of New York,
        Randall and Burbridge 's Answer, Dated October 8, 2010 ................... A59

    Exhibit C -    ECF Civil Docket Sheet......................................................... A71

    Exhibit D -    Order, Dated June 29, 2011 .................................................. A78

    Exhibit E -    Complaint and Arrest Reports .............................................. A83

    Exhibit F -    Property Clerk's Invoice, Dated May 15, 2008 ..................... A90

    Exhibit G -    Finest Message Switching System Printout, Dated May 15, 2008......... A93

    Exhibit H -    NYPD Police Firearm Laboratory Report, Dated May 19, 2008 .......... A97

    Exhibit I -    Stop, Search and Frisk Report for Demetrius Meade ............................ A99

    Exhibit J -    Criminal Court Complaint, Dated May 15, 2008,
        in People of the State of New York v Marshall..................................... A102

    Exhibit K -    Grand Jury Indictment, Dated May 20, 2008,
        in People of the State of New York v Marshall..................................... A105

    Exhibit L -    Decision and Order, Dated May 27, 2009
        in The People of the State of New York
        v. Marshall .......................................................................................... A110

    Exhibit M -    Document Related to the Dismissal of Charges
        against Plaintiff................................................................................... A113

ii

**Page**

Exhibit N -    Excerpt of Grand Jury Minutes, Dated May 19, 2008,
in The People of the State of New York
v. Marshall ...................................................................... A117

Exhibit O -    Excerpt of Grand Jury Minutes, Dated May 19, 2008,
in The People of the State of New York
v. Marshall ...................................................................... A156

Exhibit P -    Excerpt of Deposition Transcript of Michael
Burbridge, Dated May 26, 2011 ........................................ A195

Exhibit Q -    Order, Dated April 8, 2011, in Marshall v. City of New York ............. A247

Defendants' Statement of Undisputed Facts Pursuant
to Local Civil Rule 56.1, Dated September 9, 2011 ................................ A250

Declaration of Steve Stavridis, Dated September 14, 2011,
Read in Support of Defendants' Motion for Summary Judgment ........................ A256

Exhibit O -    Examination Before Trial Transcript
of Joshua Marshall, Dated April 26, 2011 ........................... A259

Letter, Dated September 21, 2011,
from Jon L. Norinsberg to the Honorable Jack B. Weinstein .................................. A465

Letter, Dated September 22, 2011,
from Steve Stavridis to the Honorable Jack B. Weinstein,
with Attachment................................................................................................ A468

Attachment -  Defendants' Memorandum of Law,
Dated September 22, 2011, Read in Support
of Their Motion for Summary Judgment .............................. A470

Order Granted Extension, Dated September 26, 2011 ............................................. A490

Order Granting Leave, Dated September 28, 2011 ................................................. A493

Defendants' Memorandum of Law, Dated September 22, 2011,
Read in Their Support of Motion for Summary Judgment ...................................... A495

iii

Declaration of Jon L. Norinsberg, Dated October 28, 2011,
Read in Opposition to Defendants' Motion for Summary Judgment,
with Annexed Exhibits..................................................................................A515

    Exhibit A -  Excerpt of Examination Before Trial Transcript
                 of Joshua Marshall, Dated April 26, 2011 .............................A518

    Exhibit B -  Excerpt of Deposition Transcript of Michael
                 Burbridge, Dated May 26, 2011 ...........................................A535

    Exhibit C -  Excerpt of Deposition Transcript of  Salim
                 Randall .................................................................................A561

    Exhibit D -  Excerpt of Grand Jury Transcript Testimony of
                 Michael Burbridge .................................................................A581

    Exhibit E -  Excerpt of Grand Jury Transcript Testimony of
                 Salim Randall..........................................................................A587

    Exhibit F -  NYPD Complaint Report Worksheet,
                 Dated May 15, 2008...............................................................A597

    Exhibit G -  NYPD Request of Laboratory
                 Examination Report, Dated May 15, 2008 ...........................A603

    Exhibit H -  NYPD Evidence Collection Team Report,
                 Dated May 15, 2008...............................................................A606

    Exhibit I -  Arrest Report.......................................................................A609

    Exhibit J -  NYPD Complaint Follow Up
                 Information Report, Dated May 15, 2008..............................A614

    Exhibit K -  Civilian Complaint Review Board's
                 Case Closing Form, with Additional Documents .................A617

    Exhibit L -  Complaint Room Screening Sheet.......................................A638

    Exhibit M -  Arrest and Complaint Reports ............................................A641

Plaintiff's Memorandum of Law, Dated October 28, 2011,
Read in Opposition to Defendants' Motion for Summary Judgment .......................A648

iv

**Page**

Plaintiff's Local Rule 56.1(b) Statement, Dated October 28, 2011 ........................................... A683

Plaintiff's Response to Defendants' Local Rule 56.1(b)
Statement, Dated October 28, 2011 ...................................................................................... A686

Defendants' Reply Memorandum of Law, Dated November 15, 2011,
Read in Further Support of Defendants' Motion for Summary Judgment ............................... A691

Transcript, Dated November 28, 2011 .................................................................................. A707

Memorandum Order and Judgment, Dated November 29, 2011 .............................................. A737

Plaintiff's Memorandum of Law, Dated April 9, 2012,
Read in Support of Plaintiff's Motion in Limine ................................................................... A741

Plaintiff's Request to Charge, Dated April 9, 2012 ............................................................... A771

Defendants' Motion in Limine, Dated April 12, 2012,
with Annexed Exhibits ........................................................................................................ A802

      Exhibit A -   Excerpt of Examination Before Trial Transcript
               of Joshua Marshall, Dated April 26, 2011 ........................................... A830

      Exhibit B -   Office of Chief Medical Examiner's
               Laboratory Report, Dated June 10, 2008 .............................................. A841

Trial Transcript, Dated April 16, 2012 ................................................................................. A843

Letter, Dated April 18, 2012, from Gerald Cohen and
Jon L. Norinsberg to the Honorable Jack B. Weinstein ......................................................... A887

Defendants' Objections to Proposed Jury Charge,
Filed April 20, 2012 ............................................................................................................ A893

Defendants' Motion for Reconsideration of the Court's Ruling
Regarding Defendants' Motion in Limine, Dated April 20, 2012 ............................................ A905

Trial Transcript, Dated April 23, 2012 ................................................................................. A913

Trial Transcript, Dated April 24, 2012 ................................................................................. A945

Trial Transcript, Dated April 25, 2012 ................................................................................. A1187

v

**Page**

Defendants' Brief, Dated April 25, 2012, Read in Support
of Multiple Trial Motions, with Annexed Exhibits ................................................................A1245

     Exhibit A -     Excerpt of Trial Transcript, Dated April 23, 2012..............................A1257

     Exhibit B -     Excerpt of Examination Before Trial Transcript
                     of Joshua Marshall, Dated April 26, 2011 ..........................................A1263

     Exhibit C -     Excerpt of Trial Transcript, Dated April 24, 2012..............................A1267

Defendants' Motion for a Mistrial/Memorandum of Law,
Dated April 26, 2012, with Annexed Exhibits........................................................................A1274

     Exhibit A -     Excerpt of Special Interrogatories ......................................................A1286

     Exhibit B -     Excerpt of Trial Transcript, Dated April 25, 2012..............................A1289

Trial Transcript, Dated April 26, 2012 ..................................................................................A1300

Plaintiff's Exhibits ................................................................................................................A1326

Defendants' Exhibits..............................................................................................................A1350

Court's Exhibits .....................................................................................................................A1354

Verdict Sheet..........................................................................................................................A1478

Order, Dated April 27, 2012 ..................................................................................................A1482

Notice of Appeal, Dated June 15, 2012 .................................................................................A1484

vi

**INDEX TO EXHIBITS**

**PLAINTIFF'S**                                           **REPRODUCED**

1.    Excerpt of Memobook                                   A1327

2.    NYPD Complaint Report Worksheet,                      A1330
      Dated May 15, 2008

3.    Redacted NYPD Evidence Collection Team Report,        A1335
      Dated May 15, 2008

6.    Arrest Report                                          A1337

11.   Stop, Search and Frisk Report                          A1341

16.   Complaint Report                                       A1344

17.   Statement of Charges                                   A1347

18.   Certificate of Disposition Dismissal                   A1349


**DEFENDANTS'**                                            **REPRODUCED**

E.    Photograph                                            A1351

G.    Photograph                                            A1353

vii

## INDEX TO EXHIBITS (CONTINUED)

**COURT'S**                                                    **REPRODUCED**

1.    Criminalist Report (Entered April 24, 2012)          A1355

1.    Defendants' Brief (Entered April 25, 2012)            A1358

1.    Defendants' Motion for a Mistrial                     A1383
      (Entered April 26, 2012)

2.    Jury Charge (Entered April 25, 2012)                  A1406

2.    Jury Note (Entered April 26, 2012)                    A1421

3.    Superseded Jury Charge                                A1423

4.    Proposed Jury Charge, Dated April 20, 2012            A1438

5.    Proposed Jury Charge, Dated April 17, 2012            A1453

6.    List of Witnesses                                     A1467

7.    List of Exhibits                                      A1469

8.    Jury Note                                             A1471

9.    Jury Note                                             A1473

10.   Jury Note                                             A1475

11.   Jury Note                                             A1477

CROSS - MS. LAMOUSE-SMITH   65

1 recovered with respect to this gun, would it be -- would you
2 -- would your office be able to test the DNA on the
3 cartridges?
4        THE COURT:  Don't answer.
5 Q    Could the cartridges yield DNA evidence?
6        THE COURT:  Don't answer.
7 Q    Is it possible to swab the evidence that is currently
8 present in the NYPD for the high yield testing that high
9 sensitivity testing that you just described?
10 A    I'm not sure I understand the question.
11 Q    If there are parts of this gun that were recovered that
12 were not swabbed originally, can they be swabbed today and be
13 submitted to your it office for testing?
14        MS. CASTRO:  Objection.
15        THE COURT:  I'll allow it.
16        THE WITNESS:  Yes.
17 Q    So there are parts -- I withdraw that.  Your office
18 hasn't been asked to test those items, have they?
19 A    Not to my knowledge, no.
20        MR. COHEN:  I have no further questions for the
21 witness.  Thank you.
22        THE COURT:  Any re-direct?
23        MS. CASTRO:  Just briefly, your Honor.
24 REDIRECT EXAMINATION
25 BY MS. CASTRO:

MARY AGNES DRURY, RPR - Official Court Reporter

REDIRECT - MS. LAMOUSE-SMITH   66

1 Q    You were asked on cross-examination if you received any
2 request from the prosecutor or from our office to test the
3 remaining samples, right?
4 A    Correct.
5 Q    Did you receive a request from the plaintiff, either
6 Mr. Norinsberg or Mr. Cohen, did you receive a request from
7 them to test the DNA?
8        MR. COHEN:  Objection.
9        THE COURT:  I'll allow it.
10        THE WITNESS:  Not to my knowledge, no.
11        MS. CASTRO:  Thank you.
12        THE COURT:  All right.  That will be all.
13        MR. COHEN:  Can I have one more question?
14        THE COURT:  Yes, you may ask your question.
15 RECROSS-EXAMINATION
16 BY MR. COHEN:
17 Q    As far as you know the reports that you have in front of
18 you regarding this case, you turned them over to defense
19 counsel just this week, isn't that right?
20        MS. CASTRO:  Objection.
21        THE COURT:  If you know.
22 A    Well, there are two reports in this case.  The first
23 report from 2008 was reported out in the normal course of
24 business once the file was reviewed.  And then a request for a
25 certified copy of the file was made in 2011.  And then

MARY AGNES DRURY, RPR - Official Court Reporter

RECROSS - MS. LAMOUSE-SMITH   67

1 yesterday I had to prepare another report regarding my
2 testimony that was turned over to defense counsel.
3 Q    And your report, just so the evidence is very clear here,
4 your report says there was an insufficient sample, correct?
5 A    Yes.
6 Q    It doesn't say oh, well, we have an extract which we can
7 do high sensitivity testing on, but we're not doing it?
8        THE COURT:  Don't answer that.
9        MS. CASTRO:  Objection.
10        MR. COHEN:  Thank you.  No further questions.
11        THE COURT:  Thank you very much.
12        (Witness leaves the stand.)
13        THE COURT:  Any further witnesses?
14        MS. CASTRO:  No, your Honor, not at this time.
15        THE COURT:  Any rebuttal witnesses?
16        MR. NORINSBERG:  No, your Honor.
17        MS. CASTRO:  The defense rests, your Honor.
18        THE COURT:  All right.  We've heard all the evidence
19 and now we'll hear summations.  Do you want a short break?
20        MR. NORINSBERG:  Yes, please.
21        THE COURT:  Okay.  Take a ten-minute break, please.
22        (Jury is out of the courtroom 11:27 a.m.)
23        (Continued on the next page.)
24
25

MARY AGNES DRURY, RPR - Official Court Reporter

RECROSS - MS. LAMOUSE-SMITH   68

1
2        THE COURT:  You have a motion?
3        MS. CASTRO:  Yes, your Honor.  At this point, the
4 Defendants wish to renew their Rule 50 motion with respect to
5 the false arrest claim.  Defendants submit that given all
6 their testimony, both in Plaintiff's case in chief as well as
7 in the Defendant's case in chief, there's sufficient evidence
8 to establish that there was probable cause for the arrest.
9 Specifically, Officer Randall testified that he observed
10 Plaintiff making the movements, removing an object from his
11 waistband, and throwing it.  Officer Burbridge testified that
12 he saw the Plaintiff throw the gun.  Officer Fox corroborates
13 that information.
14        He testified that he kept his eye on the Plaintiff's
15 associate the entire time.  He had his hands up.  It was
16 impossible for him to have been the one to throw the gun.
17 Based on that evidence, we submit to you that there was
18 probable cause for the arrest.  For that reason, the false
19 arrest claim should be dismissed.
20        THE COURT:  Denied.  There's an issue of
21 credibility.
22        MS. CASTRO:  With respect to the malicious
23 prosecution claim, Officer Burbridge testified that he only
24 spoke with the district attorney's office for five minutes in
25 preparation for his grand jury testimony.  The only testimony

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

---

PROCEEDINGS                                    69

1  that he gave in the criminal trial was at the grand jury.

2      Based on your Honor's charge that the Defendant

3  cannot be held liable for what he said to the grand jury as

4  well as to what he said to the prosecutor in preparation for

5  his grand jury testimony, we submit that the claim of

6  malicious prosecution should be dismissed against him.

7      THE COURT:  Denied.  It's an appropriate inference

8  that a well-advised prosecutor would have consulted with the

9  defendants during the course of this long prosecution.

10     MS. CASTRO:  I do note for the record that there is

11  no evidence of that, your Honor.

12     THE COURT:  Yes.

13     MS. CASTRO:  We also move for a qualified immunity.

14  We renew this motion because again, based on the officer's

15  testimony that they observed the Plaintiff throw the gun or

16  what appeared to be the gun, based on the charge and based on

17  your Honor's belief that the reasonableness of their belief,

18  even if it had been mistaken, is grounds for a dismissal on

19  qualified immunity.

20     THE COURT:  Denied.  There's an issue of veracity.

21     MS. CASTRO:  Thank you, your Honor.

22     MS. SANDS:  Your Honor, one point.  If the jury

23  should come back with a verdict against the officers, we ask

24  that we be allowed to submit a question or two of special

25  interrogatories that could be given to the jury before they're

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

---

PROCEEDINGS                                    70

1  disbanded.

2      THE COURT:  Denied.  Bring in the jury.  Too late.

3  We've had a long discussion of these problems.

4      (The jury entered.)

5      THE COURT:  Be seated, please.  You'll now hear the

6  summations, ladies and gentlemen.  What the attorneys say is

7  not evidence, but they're going to try to help you analyze the

8  evidence, so listen carefully.  You will not have any of what

9  they say read back.

10     Proceed, please.

11     MS. SANDS:  Thank you.

12     MR. NORINSBERG:  Thank you, your Honor.

13     Good morning, folks.  Before we start, I just want

14  to extend thanks to you on behalf of everyone here.  We

15  realize not just that you were giving us your time, but we can

16  see from the way you've been paying attention that you take

17  your job very seriously in this case.  And you understand how

18  important the case is to us.  So we want to just thank you for

19  doing that and really doing the job the best you can.

20     At this point, you've heard all of the evidence in

21  this case.  And I understand, a lot of times, it's rapid-fire

22  questioning and things don't necessarily come in in perfect

23  order, but what I would like to do right now is simply walk

24  through the evidence with you, piece it back together in a

25  logical, coherent way, and present it to you.  And then, you

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

---

PROCEEDINGS                                    71

1  decide this case.

2      Now, in deciding the case, it seems to me the whole

3  case really comes down to one central issue, and that is this:

4  Did Joshua Marshall have a gun on him on May 15th, 2008?  Now,

5  there are some cases where you have multiple different

6  scenarios and possibilities.  This isn't one of them.  There's

7  no middle ground on this case.  Either this man was carrying a

8  gun on him as he was charged with, or he wasn't.  There's no

9  middle ground.

10     And I'm going to take it a step further here.

11  Because of the fact that the parties here completely

12  contradict each other on this critical fact, there is no

13  question that one side has lied in this courtroom.  There's no

14  room for a third possibility.  Somebody's telling the truth,

15  somebody's not.  So the way I see it, as I'm framing the issue

16  before we talk about the evidence, is to put it back to you,

17  as jurors, to say your primary function here is to determine

18  who is telling the truth and who is not.  Did this man have a

19  gun, or did he not?

20     Now, to make that determination, let's take a look

21  back at some of the testimony that we've heard in this case.

22  We're going to start with Officer Randall, the arresting

23  officer in this case.  Now, you folks heard Officer Randall

24  yesterday morning.  How did Officer Randall strike you?  Did

25  he strike you as a credible witness?  Did he strike you as

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

---

PROCEEDINGS                                    72

1  somebody whose testimony was consistent with his prior

2  testimony?  Did he strike you as somebody that can be relied

3  upon?  How many times during the course of that

4  cross-examination, ladies and gentlemen, did we impeach this

5  officer with his prior testimony?  And to be clear about it,

6  the questions that are being asked are almost verbatim

7  questions that last year, he gave one answer to; a year later,

8  he gives a completely different answer.  How many times?

9      And not just that, but look at some of the things.

10  Last year, how many times did he answer under oath he can't

11  remember something.  A year later, he comes in front of a jury

12  where it's not going to look so good to come in here and say

13  you can't remember.  So all of a sudden, he comes up with a

14  new answer.  How many times at his deposition last year did he

15  say he had no explanation for something?  And then, he comes

16  before you folks, and all of a sudden, he has an explanation.

17  So that's just the general background.

18     Let's look at some of the specific things.  He told

19  us that he actually saw Mr. Marshall in possession of the

20  firearm.  Really?  It's not what you said at your deposition.

21  At your deposition, you said you didn't see him in possession

22  of a firearm.  And just so there's no doubt about it, let's

23  read the actual question and answer.  This is on Page 58,

24  Line 20.  "QUESTION:  You never saw the object in

25  Mr. Marshall's actual, physical possession, correct?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

# A1206

## PROCEEDINGS 73

1  "ANSWER: That is correct."
2  Well, what part of that is unclear? He was asked
3  point blank whether he ever saw it in his physical possession,
4  and he said no. He agreed it was correct. Now, if he never
5  saw this object in the physical possession of Mr. Marshall,
6  why did he swear under oath to a grand jury that he did see
7  it? I mean, those two stories aren't true; either you saw it,
8  or you didn't. Why did he tell the district attorney that he
9  saw this gun in the actual possession of Mr. Marshall?
10  He said those things. And then, he changes his
11  testimony during the course of these proceedings. It's
12  dishonest. The truth came out at his deposition. He never
13  actually saw the possession. How else do we know that? Think
14  about some of the statements that he made to other people.
15  Remember, folks, when I was asking him, I said, "Did you make
16  a statement to another prosecuting attorney that you never saw
17  him in possession of a gun?"
18  "What, who, what prosecuting attorney? Who are you
19  talking of?"
20  I said, "The prosecutor, Judy Phillips; did you make
21  a statement to her? Didn't you tell Ms. Phillips that you did
22  not see that gun in his possession? Didn't you tell her
23  that?"
24  "I never said that."
25  Then, I show him a document. And I said, "Sir, does

## PROCEEDINGS 74

1  that refresh your memory that you told Ms. Phillips that you
2  never saw this gun in his possession?"
3  "No, it doesn't refresh my memory. I never said
4  that."
5  Well, of course, he can't admit saying it. If he
6  admits he told prosecutor number two that he didn't see the
7  gun in Marshall's possession, then what he told prosecutor
8  number one was a lie. What he told the grand jury was a lie.
9  So he can't admit that he made that statement.
10  And then, I asked him, I said, "Sir, didn't you also
11  make a statement to the gun enhancement unit, your fellow
12  colleagues at the NYPD? Didn't you tell them you didn't see
13  this gun in his possession?"
14  "I never said that."
15  I said, "Well, that's funny. That's not what you
16  said at your deposition."
17  At your deposition, you said, "Actually, it's
18  possible I did say that. I can't really remember."
19  Now, how is it possible, if he's saying these things
20  now, he comes in here and he says that Marshall was in
21  possession of a gun, and yet, at his deposition, he said that
22  he wasn't. He tells this prosecutor, the second prosecutor,
23  he wasn't. And he tells the gun enhancement unit he wasn't.
24  Three different times, he said he wasn't. But you're supposed
25  to believe, the one time that he told the first D.A., that

## PROCEEDINGS 75

1  that's the true statement.
2  This whole case, it's about credibility. Your
3  job -- I told you this in opening statement -- it requires the
4  highest level of concentration to put together the pieces.
5  This isn't going to be easy. You have to work through this
6  evidence logically, think about these things. Why something
7  on such a critical fact, how does that change over time?
8  What's the next thing that he says? The next thing
9  he tells you, he tells you that he saw Marshall pull out the
10  gun. He saw him pull out the object from his waist. That's
11  funny. That's not what you said at your deposition, Officer.
12  At your deposition, you said you didn't see any object pulled
13  out of his waist.
14  And again, don't rely on what I'm telling you.
15  Let's look at the actual evidence. This is on Page 33 of this
16  man's deposition under oath. "QUESTION: The object that you
17  saw him pull out of his pants?
18  "ANSWER: I didn't see the object as he pulled it
19  out of his pants."
20  So if you didn't see the object as he pulled it out
21  of his pants, why did you tell the grand jury under oath that
22  you saw him pull a firearm out of his pants? That's a lie.
23  He lied. Now, you folks have the power. You can just look
24  the other way. And you can let him say it doesn't matter,
25  these things happen, or you can hold him accountable. He's in

## PROCEEDINGS 76

1  a court of law. What he told that grand jury is a lie. And
2  the truth only came out when we started this civil lawsuit
3  under oath.
4  What's the next thing he says? He says he actually
5  saw with his own eyes -- he's certain about this, too, there's
6  no mistake. He saw Marshall actually toss the gun away. Sure
7  you did, Officer, just like you saw Mr. Marshall's eyes
8  bulging from 150 feet away across the street in the dark,
9  right? Let's think about it. What actually did this man see?
10  He's sitting in the back seat of a car. He's got a driver in
11  front of him, he's got a passenger in front of him. He's up
12  to 25 feet away. And Marshall's back is towards him. How
13  exactly is he seeing this?
14  Of course, it doesn't make sense. That's why they
15  have to change the story ever so slightly. The story is
16  changed so that there's an angle and Marshall kind of twists.
17  Does that make sense? He's going to twist. Marshall's trying
18  to throw the gun away and hide it because he sees the police
19  coming. But here, Officer, look what I have, a gun. I'm
20  throwing it into the street. Does that make sense? You have
21  to use your common sense here. So much of this case is
22  thinking about the evidence and using logic and deductive
23  reasoning to work through it and figure out what's true and
24  what's not true. His whole story doesn't make sense.
25  But what's even more telling, look at the paperwork.

PROCEEDINGS 77

1 This man's the arresting officer. Now, he said at his
2 deposition he has no idea why he's the arresting officer. To
3 this day, he had no idea. But he's the arresting officer.
4 Look at his arrest paperwork. He gives a version, he fills
5 out the form. There's a section on the form that actually is
6 a box called "DETAILS." I said, "Officer, you agree that the
7 detail of pulling out the gun in the waist; that's an
8 important fact?"
9     And he agreed, "Yes, that's important."
10     "In fact, it's very important, right?"
11     "Yes, it's very important."
12     "But why isn't it anywhere in your report?"
13     Now, in his deposition, he said "no particular
14 reason," but now he came into you, because he has to explain
15 it. It's going to look foolish, right? How is he going to
16 explain this? He explains, "Actually, we don't really fill
17 out that section. You know, we just kind of pass it on to the
18 D.A."
19     Really? Then why is there a section that says
20 "DETAILS" in large, capital letters? Why is it on the police
21 report if you don't fill it out? These are the most important
22 details of the entire case, that you saw him pull out the gun
23 and toss it. And you didn't put that on your report?
24     I'll tell you why he didn't put it on the report,
25 because at that point in time, he didn't have the details.

PROCEEDINGS 78

1 They hadn't quite come up with exactly how they were going to
2 present this story. He didn't have those details. So that
3 section of the report's blank. I asked him also, "What about
4 the complaint report? You didn't mention anything on the
5 complaint report, did you?"
6     "Hey, don't blame me. That's not my complaint
7 report. You know, we all worked on that together. I didn't
8 write it."
9     Actually, you did write it. That's what you said in
10 your deposition. I said, "Who prepared this report?"
11     "I did." He prepared the complaint report. Then,
12 he starts telling me, "Well, you see, it's so busy. We have
13 all these documents we have to fill out and all these reports.
14 We all have to help each other out."
15     Really? What other documents? We've seen these
16 documents generated; an arrest report, complaint report and
17 memo book entry. It's not like they didn't have enough time.
18 The man got six hours of overtime. He filled out a report.
19 He just doesn't want to own it because it makes him look bad
20 because there's no explanation for why he didn't have those
21 details in.
22     But my personal favorite, the best one, was the last
23 one in the memo book entry. Does anyone here remember what
24 this man said at his deposition? He said he didn't know what
25 a memo book entry was for. This is an officer who's been on

PROCEEDINGS 79

1 the force for eight years. Eight years, testifying under oath
2 in a deposition that he doesn't know what he's supposed to do
3 with a memo book. Come on, are you folks buying this? Are
4 you going to buy this? There's no way this man is telling the
5 truth in this case. It's one false, phony, dishonest claim
6 after another.
7     You can just look the other way and let it go if you
8 want, or you can hold him accountable. In our system, when
9 you testify under oath, it's serious business. This isn't
10 just playing fast and loose with the facts, change the story
11 if you don't like your answer last year at the deposition.
12 Just come in here. The jury won't know. They weren't there.
13 Come on, you folks know this. This is not right what he did.
14     And you go beyond and you look at the other witness
15 that we heard from, Officer Burbridge. Do you realize that
16 this man told two completely different stories? When he
17 appeared before the grand jury, one story. When he appeared
18 in the civil lawsuit, another story.
19     Let's look at story number one. This is what he was
20 telling to the grand jury. He testified under oath in front
21 of that grand jury that what happened was he had this
22 conversation with Marshall he said. "Sir, can I talk to
23 you for a minute?" And then, what he did was he stepped out
24 of his car in front of Marshall, and that's when Marshall
25 threw the gun.

PROCEEDINGS 80

1     So what he was selling to that grand jury, he was
2 trying to make it sound like, man, I had this guy in my line
3 of vision. He's standing there right in front of me. I saw
4 the whole thing. Then, all of a sudden, actually, come to
5 think of it, I wasn't standing in front of him on the
6 sidewalk. That never happened. Actually, come to think of
7 it, I was inside of a car 10 feet away still inside the car
8 when he threw the gun.
9     Well, which is it? First, this isn't a game you can
10 play with somebody's liberty and make up stories. How could a
11 story change so dramatically? This man's not taking this at
12 all seriously, understanding that when he testified in front
13 of the grand jury, he's under oath to tell the truth.
14     And his paperwork is also an illustration of how the
15 false and dishonest claims come in. Remember his form he
16 filled out, his stop-and-frisk form? That form, he said, "I
17 observed furtive movements before we made the stop."
18 Actually, that's not what you said in your deposition. At
19 your deposition, you said you didn't observe anything
20 suspicious.
21     And here's what he said, Page 66: "QUESTION: Did
22 you observe any furtive movements by Joshua Marshall before
23 you decided to stop him?"
24     "ANSWER: No."
25     So if the answer to that is no, why did you lie in

## A1208

PROCEEDINGS                    81

1   your report so you could make it seem like you saw something
2   suspicious? Why?
3        Now, ladies and gentlemen, the other thing is it's
4   not just that these officers have conflicted their own
5   testimony, not just that they change their stories from last
6   year, but there are two stories. Each time they tell it,
7   there's conflicts between the two of them that make no sense.
8   For example, they supposedly saw Marshall trying to make
9   movements in relation to where Meade was standing. One
10  version, he's going forward. He's trying to go forward.
11  Meade stops, but he continues walking. Version number two,
12  actually, he's going backwards. Well, which is it? Why is
13  Officer Randall telling you one thing and Officer Burbridge
14  telling you another? I'll tell you why, because it never
15  happened.
16       The truth is easy to remember. The truth is easy to
17  remember. If you see something happening, why is it that they
18  can't remember? More importantly, the most basic details --
19  these officers are trained to make observations. That's what
20  they told you, right? Why can't they tell the most basic
21  thing? If you saw Marshall actually remove the gun, which was
22  it? Was it his right hand? Did he pull it out with his right
23  hand and throw it like that, or was it his left hand? Sorry,
24  Counselor, can't really help you with that one. Was it the
25  right side of his waist, the middle, or the left? Sorry, I

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    82

1   don't remember that. They don't remember it because they
2   never saw it. The whole thing, the only thing they saw is
3   something ahead of them, 25 feet. They never saw what they
4   claim they saw.
5        Now, you heard this morning about the forensic
6   evidence. We'll talk about that in one second or shortly.
7   One thing I want to point out, you might have missed it during
8   the trial, but there is a moment in this trial where this
9   officer, the arresting officer, the critical question: Did
10  he, himself, ask for any type of prints to be recovered? At
11  his deposition, he said yes, "Yes, I did." Actually, no, you
12  didn't. If you look at the complaint report that he prepared,
13  there's a special box that says "prints requested," yes or no.
14  He checked that box off "no" two times. Now, when he comes to
15  court, he admits for the first time ever that he actually
16  never requested fingerprints.
17       Now, again, using your logic as jurors, using your
18  intellect, what possible explanation would there be for why
19  the arresting officer would not request fingerprint analysis?
20  Why? Why wouldn't you do that? This is like the most routine
21  police procedure. He told you his supervisor had instructed
22  him that it should be done on every case. Why, on this
23  particular case, did he decide not to? Because the last thing
24  he wanted was to actually get the fingerprint analysis. It's
25  the last thing he wanted. Because there's a very good chance

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    83

1   he knows it wasn't going to be Marshall's prints on there.
2        You heard about this on the forensic evidence this
3   morning. Here's what I get out of it. When they actually
4   tested this gun, first with the New York City Police
5   Department, the entire barrel, they never bothered taking a
6   swab. Now, here's a gun toss case. Somebody's taking a gun
7   and throwing it. You don't take a swab of this part of the
8   gun? There's six bullets inside there. You don't test any of
9   those bullets.
10       And then, the kicker of all, they actually have a
11  sample right now. All along, they were claiming there wasn't
12  a sample big enough to be tested. Actually, they have a
13  sample. It's been sitting there all along, the entire four
14  years of this lawsuit. If they really believed Marshall had
15  this gun, why didn't they test it? Just prove it. That would
16  blow this case out of the water, wouldn't it? If Marshall's
17  DNA is on that gun, the case is over.
18       But instead, what do they do? They wait until the
19  week before trial when they first call in these witnesses to
20  try to get their defense together here. Why didn't they call
21  these DNA people a few years ago, and say, listen, we have
22  this case going on. We want to show this man was in
23  possession of the gun. Why didn't they do that? They told
24  you this morning that the higher-sensitivity test can be done.
25  The sample's still sitting there as we speak. Why wasn't it

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    84

1   done?
2        Now, up to this point what I've covered, I've
3   covered with you the changing stories of these different
4   officers. I've covered with you the things that are missing
5   in the police reports. I've covered with you the forensic
6   evidence or lack thereof. They can come up with all the
7   excuses they want. The bottom line is there is absolutely no
8   physical evidence connecting this man to this crime. That's
9   what we've covered so far.
10       But there's one other area I just want to cover with
11  you, an area of just plain, common sense reasoning about their
12  story. I want you to think about it for a minute. Think if
13  this sounds logical. We have a police car pulling up to
14  Mr. Marshall. And the police said, "Can we have a moment of
15  your time?" Marshall, at that moment in time while the
16  officer is standing there, that's when he chooses to take the
17  gun out. But wait a minute. Marshall told you on the stand
18  here that Meade was walking there. He said the cops are
19  coming. Marshall acknowledged that he was aware of the police
20  car coming down the street. Why on earth would he wait until
21  the police car is right there and say okay, now's a good time?
22  The police car comes up to him, "Can I have a moment
23  of your time?" Sure, Officer, just one minute please. Let me
24  just take this gun out and throw it. Okay, yeah. What would
25  you like, Officer? Does that sound right? Does that make

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

# A1209

PROCEEDINGS                                    85

1  logical sense? He's going to wait until the cop car is right
2  there. If he knew the cop car was coming, wouldn't he have
3  been just tossing it away before they came?
4          The other thing that doesn't make sense, which we
5  touched on a little bit on earlier, why on earth would he be
6  turning around to face the officers? First of all, if you're
7  trying to conceal that you have a gun, why are you turning at
8  all? You're trying to do it in this direction. But more
9  importantly, if you were turning around and take out a gun,
10 you know that's pretty dangerous. You'll be shot on sight by
11 a police officer if that happened, if an officer sees somebody
12 coming out, turning with a gun.
13         I'm only pointing out to you, as I've tried to
14 throughout the trial, logic and common sense. It doesn't make
15 sense. Their story doesn't make sense. Why doesn't it make
16 sense? It's a fabrication. They didn't really think it
17 through clearly. They just came up with their story, and
18 they're stuck with it. That's why it doesn't make sense.
19 It's illogical. It could not have happened that way.
20         And so when you put it all together -- and this is
21 what I am asking you to do. I'm not asking you to make any
22 quick decisions. I want you to think through carefully, but
23 put together the changing statements. Put together the
24 omissions in the reports. Put together the complete lack of
25 forensic evidence. And then, use your common sense and see

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                    86

1  Put it all together.
2          And then, you start to understand why this case got
3  dismissed in May of 2009. Think about it, ladies and
4  gentlemen. This should've been an open-and-shut case. You
5  have two police officers swearing under oath that they saw
6  this man move a gun. What else is there to decide? And yet,
7  this case is thrown out. Why? Because they have massive
8  credibility problems; because the arresting officer keeps
9  changing his story over and over again; because his partner
10 keeps changing his story over and over again; because they
11 know there's no way this case could be presented to a jury at
12 trial. This case just fell apart at the seams because of all
13 these credibility issues.
14         Now, what really happened here? What really
15 happened? I'll tell you what happened. It's exactly as you
16 heard it from Mr. Marshall. Meade saw the cop car coming
17 first. Meade's the one that panicked. He's the one that said
18 he's got to just get near his buddy and ditch the gun so the
19 cops wouldn't know. And you know what, folks? It worked
20 perfectly. He got off the hook and Marshall did his time.
21 Marshall did four and a half months in a jail for a crime he
22 didn't commit. It was Meade's gun.
23         Now, if you folks were to say well, we understand
24 maybe the officers were mistaken, that's not a possibility in
25 this case. They've repeatedly sworn under oath that they saw

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                    87

1  Marshall with a gun. If they just owned it at the beginning
2  and just admitted the truth, that the truth is they did not
3  see what happened. They got there split seconds too late,
4  three or four seconds too late. All they heard was the gun.
5  That's why both men were thrown against the wall; that's why
6  both men were handcuffed; that's why they had to have their
7  little meeting to decide what to do.
8          And this nonsense that otherwise, they would just
9  take two people in and interrogate them, what a bunch of
10 nonsense. If they took both of those people in, what would
11 happen is they would have to admit they didn't actually see
12 who threw the gun, case over. So they just made a spot
13 decision, 50/50, odds are it's one of them. Anyway, what are
14 they doing out here? They just made a judgment. They were
15 judge and jury right on the scene, and took this man's liberty
16 away.
17         If they just owned it, if they were honest and just
18 told the truth, this wouldn't have happened. The truth would
19 be going to the prosecutors and saying we heard the gun. We
20 got there split seconds later. We believe it's this guy, but
21 we're not sure. We need to do further evaluation. That
22 would've been the honest thing to do. Instead, they took this
23 man's liberty away and threw him in jail. And he rotted there
24 for four and a half months in the summer of 2008 for nothing,
25 because he didn't do this crime.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                    88

1          This man's innocent. He didn't do this crime. It's
2  Meade's gun. And all we're asking you to do is hold these
3  officers accountable. They knew what they were doing, but
4  they didn't lose any sleep over it. You know why? They
5  figured the ends justified the means. You know what? We got
6  the gun off the street, great. The problem with that argument
7  is you got the wrong person. The person who actually had the
8  gun is going home that night. And Lord knows, he probably has
9  another gun and will be out on the street the next day. The
10 guy who was actually innocent is the one that does the time
11 for it. It's wrong. The whole thing's wrong.
12         The last thing I want to cover with you and -- two
13 last items I want to cover with you, and I'll conclude. The
14 defense in this case; what have we learned about the defense
15 here? We have learned here that approximately four years
16 after this incident, just last week, the defense attorneys in
17 this case decided actually, you know what, we're going to
18 trial. We better reach out to some witnesses and help bolster
19 the claims here. You know why? They did that because they
20 knew they have big problems in this case. They knew that if
21 they just rely on Randall and Burbridge, they're going down.
22         So what do they do? First, they call Officer Fox,
23 the star witness for the defense, the guy who's going to clean
24 up the whole mess and just make it all good again, right?
25 What is this man who they never even called this guy for four

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    89

1    years? No one ever talked to him. This man was so
2    unimportant that the D.A.'s office never interviewed him, let
3    alone him testifying in front of a grand jury. And this guy,
4    he comes in here. What's the one thing, the one undisputed
5    fact we get out of him? He didn't see who threw the gun. He
6    did not see who threw the gun. That's the number one fact,
7    and with good reason.
8           The man's driving the wrong way down a one-way
9    street at night in an area where you have several stores that
10   are open 24 hours, and of course he's paying attention to
11   what's ahead of him. He's not looking. What did he actually
12   remember? This man said he did thousands of arrests, over a
13   thousand in his career. And yet, four years later, he's
14   contacted for the first time. And wouldn't you know it, he
15   just remembers in great detail this particular case. Of
16   course, it comes out that his memory was somewhat refreshed
17   when he was able to meet with the lawyers from the Defendant
18   in this case.
19          And we're seeing what happens here. We saw an
20   example with Officer Burbridge. Remember, I questioned him
21   yesterday about this. During his deposition, Officer
22   Burbridge couldn't think of the right answer. We had a break
23   and all of a sudden, the answers came flowing. We saw how
24   Officer Randall was only too happy to adopt the term, his
25   "associate." He started using that in his direct after hearing

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    90

1    it from the lawyer. My point is this: How real is that
2    testimony? It's four years after the fact meeting with their
3    lawyers. And at the end of the day, it really doesn't change
4    any of the dynamics in this case at all.
5           The one part, I don't know if you believe it, I
6    don't think this guy actually saw anything. Even if you
7    believed his story they saw Meade's hands, that just would
8    make perfect sense to this whole story of what happened.
9    Meade is going along. He's the one that tosses the gun. He's
10   the one worried about the cops. Officers, look, I got nothing
11   here. What normal person would walk down the street, and when
12   police are coming, would go like this? That doesn't make
13   sense. He's doing it because he's got the guilty conscience.
14   He knows he just tossed that gun. He wants to make sure the
15   officers think it's not him. And guess what? It worked. It
16   worked.
17          The bottom line is this, ladies and gentlemen. Your
18   questions are going to come down to what they call a verdict
19   sheet. I'm just going to walk through this very briefly with
20   you. You'll get it again. You're going to have copies of it.
21   You'll have a chance to go through this extensively.
22   Essentially, there are three main questions: Was Mr. Marshall
23   falsely arrested by these two Defendants; was he maliciously
24   prosecuted; was he denied a right to a fair trial by the false
25   evidence?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    91

1           Now, I suggest to you all of those questions turn on
2    the very first thing that we talked about when I started my
3    closing argument today: Did Marshall have a gun on him? If
4    Marshall did not have gun on him, if the answer to that
5    question is no, he did not have a gun, then the answer to all
6    of the questions on the verdict sheet is yes. Now, if
7    Marshall actually had the gun, if you still believe that after
8    everything you've heard, then of course, he's not entitled to
9    anything. You throw him out. That's your job as jurors.
10          But if you actually think through this and believe
11   that these officers gave false information to the prosecutors,
12   they duped the prosecutors because the prosecutors weren't out
13   on the street. They duped it and put it over on the grand
14   jury with these false stories. If you believe that's what
15   happened, then the Marshall to not having a gun, the answer to
16   all the answers on the verdict sheet is yes. It's yes.
17          And then, you'll see there's a question. When
18   they're talking about maliciously prosecuting, just so you
19   understand, our view is simply this: They're feeding false
20   information. They may not be the prosecutors, per se, but
21   they're feeding that information. Now, one thing on the first
22   two questions on false arrest. Let's say some of you -- and I
23   know there's room for a healthy discussion about all this case
24   and the facts. It's not like the attorneys --
25          MS. CASTRO:  Objection.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    92

1           THE COURT:  You may continue your argument.
2           MR. NORINSBERG:  -- defense counsel got up in your
3    opening and said this is just an open-and-shut case. We
4    actually want you to think about it. When you think about it,
5    let's say some of you still are not sure. You don't know
6    where you are. The first questions, the first two questions
7    on false arrest, the Defendants actually have the burden of
8    proof on those questions. You'll hear that from the judge.
9    They have the burden to prove that they had grounds to arrest
10   Marshall, not us. We have the burden on the other two claims.
11   But on those first two questions, for some of you, if you're
12   not comfortable with that, they have the burden. If they fail
13   to meet their burden, they lose on that claim.
14          Now, you'll see the sections on compensatory
15   damages, I don't even want to touch that with you. I want
16   this case -- I don't want to taint this about this case being
17   a money case. This is about holding these officers
18   accountable. Whatever value you put on it is fine. It's
19   about showing that you were not fooled like these other
20   people. You weren't mislead like the grand jury. You see the
21   light here. You understand what happened.
22          But there's one section, the last section on
23   punitive damages, that I do want you to take very seriously.
24   Punitive damages gives you an opportunity to speak your voice
25   and actually be heard as a juror. You can send a message to

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## A1211

PROCEEDINGS                 93

1  these two Defendants.
2      MS. CASTRO:  Objection.
3      MR. NORINSBERG:  You can send a message.
4      THE COURT:  You may continue your argument.
5      MR. NORINSBERG:  You can send a message through your
6  verdict, not just to these two Defendants, but to any other
7  police officer out there that thinks it's okay to lie in front
8  of a grand jury and lie. You can send a message to any
9  other police officer out there that thinks it's okay.
10      THE COURT:  Strike that reference to before the
11  grand jury.
12      MR. NORINSBERG:  You can send a message to another
13  police officer that thinks it's okay to tell a prosecutor
14  something that's completely false, and say, you know what, you
15  can't do that. You actually cannot do that in our system.
16  You will be accountable. And that's what we're going to ask
17  you to do at the end of the day is listen to all of the
18  evidence, work through it carefully. But if you do that and
19  you honor the pledges you made in your jury selection, you're
20  going to get the right result, and that's to hold these two
21  Defendants responsible for putting this man in jail for four
22  and a half months. Thank you.
23      THE COURT:  Thank you. Lunch will be up at 12:30.
24  Do you want to take a break now, and then get back here at
25  about quarter after one, take a break now? We'll continue at

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                 94

1  a quarter after one. Don't discuss the case.
2      (The jury exited.)
3      THE COURT:  You have the jury charge with all the
4  corrections. And we've run off copies for the jury later.
5  Enjoy your lunch. I'll see you at 1:15.
6      (A lunch recess was taken.)
7      (Continued on the next page.)

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                 95

1  (Honorable Jack B. Weinstein takes the bench.)
2      (Jury is in the courtroom at 1:20 p.m.)
3      THE COURT:  Be seated, please. Proceed.
4  CLOSING STATEMENT BY THE DEFENSE
5      MS. CASTRO:  Good afternoon, ladies and gentlemen.
6      JURORS:  Good afternoon.
7      MS. CASTRO:  I want to start off by thanking you for
8  your careful attention that you paid throughout the course of
9  this trial. On behalf of my client, Police Officers Michael
10  Burbridge and Salim Randall, as well as my co-counsel, we
11  would like to thank you for the careful attention that you
12  will also give to your deliberations in deciding this case.
13      Now, I do have some remarks that I want to go
14  through and discuss our case, but I want to start off by
15  addressing some of the points that were made by plaintiff's
16  counsel in his summation a little while ago.
17      Now, first off, with respect to Officer Randall,
18  plaintiff's counsel started off by trying to attack his
19  credibility. He wanted you to believe that he's not a
20  credible witness and he gave you a few reasons for that. One
21  of the first reasons he gave you is because he says that there
22  are inconsistencies in his testimony.
23      Now, as plaintiff's counsel went through and told
24  you repeatedly, this happened four years ago. Four years ago

MARY AGNES DRURY, RPR - Official Court Reporter

96

1  is a long time to remember every single detail of what
2  occurred. However, the evidence has shown that Officer
3  Randall is consistent in the important facts of this case. He
4  knows what he saw and he knows what he heard. He knows that
5  he saw the plaintiff pull an object out of his waistband, make
6  a pitching motion, and he tossed it. He knows that he heard
7  the sound of the metal cling on the ground. He said that that
8  is the most unmistakable sound that he knows for a fact that
9  that's the sound of a gun hitting the ground. He's been
10  consistent throughout his testimony in saying that.
11      Now, the second reason he wants to attack Officer
12  Randall's credibility is because of his paperwork, his arrest
13  paperwork, to be specific. And he spent a lot of time harping
14  on the detail section of the arrest report. He wants you to
15  believe that that section was left blank, that was his word,
16  that was counsel's word, that he left that section blank, that
17  he didn't put any information about what happened.
18      Now, he didn't show you that paperwork during
19  summation, but it was admitted into evidence and you're going
20  to have a chance to review it. Now, that arrest report is
21  Plaintiff's Exhibit 6. And the detail section, if you look at
22  it, says at TPO, which is time, place of occurrence, above
23  defendant named Joshua Marshall was found in the possession of
24  a loaded firearm, and it even specifies a serial number.
25  That's not blank. That's a play on his words. And it's a

MARY AGNES DRURY, RPR - Official Court Reporter

97

1  play of words that's happened throughout the course of this
2  testimony.
3      You were here when you heard the testimony of
4  Officer Randall, when he was questioned by plaintiff's
5  counsel. Mr. Norinsberg stood right there and he asked him
6  multiple questions and he tried to impeach him using his prior
7  testimony. And a specific example of that attempt to impeach
8  is when he asked him whether it was dark when it was dark that
9  night and Officer Randall answered that it was.
10     Now, the testimony that he gave was consistent.
11 However, counsel skipped some of the questions in his
12 deposition to make it seem as if he was being inconsistent.
13 And the specific questions that were asked. Question: Was it
14 dark out at that time? Answer, yes. The next question that
15 he skipped and had to be corrected to include: Was there were
16 any lights on, on the street? Answer: Yes. Question: Where
17 was the closest lights from where Mr. Marshall was standing?
18 Answer: I can't recall. And then he skipped the question:
19 Were there any lights on the street where the answer was "yes"
20 to make it seem as if it was dark and that he couldn't recall
21 that there were any streetlights close to where the plaintiff
22 was standing.
23     That's just another tactic, another play on his
24 words.
25     Another play on his word goes to the memo. Now, he

98

1  talked about how Officer Randall said at his deposition that
2  he doesn't know what a memo book entry was for. Now, the memo
3  book is in evidence; and again, you have a chance it look at
4  it. But just to point out to you there is an entry for this
5  incident and this is in evidence as Plaintiff's Exhibit
6  Number 1. That memo book entry reads: 0045, which is 12:45
7  a.m. Marshall, Joshua placed under arrest for CPW, means
8  criminal possession of a weapon in the second degree.
9      He knows what a memo book entry is for. He's got
10 the information right here. This is another play on his
11 words.
12     Now, he talked a lot about the fingerprint request
13 and how that request was not made on the complaint report
14 filled out by Officer Randall. Now, we've heard testimony
15 first in the opening, beginning with plaintiff's opening that
16 there was fingerprint testing done. So what's the big deal?
17 The big deal is that it is a play of his words. He wants you
18 to think that Officer Randall didn't do his job, that Officer
19 Randall didn't fill out the paperwork, he wants you to think
20 that Officer Randall was hiding something, but the fact is
21 this morning you heard from Police Officer Sena from the
22 evidence collection team. He told you he got a request to do
23 the fingerprint check and he did do that check. Another play
24 of words from the plaintiff.
25     There's another document in evidence that's of

99

1  significance, because plaintiff's counsel has harped on the
2  fact that nowhere in the paperwork did the officers note that
3  this man had a gun and that he tossed it. That isn't -- that
4  is in the paperwork. And again, it's a document that you can
5  look at, it's in evidence, Plaintiff's Exhibit 11. It's the
6  UF-250 report. He showed you this document but he didn't
7  point out this important fact. What did he point out? He
8  pointed out that Officer Burbridge checked off that they
9  referred to movement. What he didn't point out to you is in
10 the handwriting, and it says is that the plaintiff was
11 observed throwing a firearm to the ground. That's an
12 important detail that he skipped.
13     Now, plaintiff's counsel also wants you to think
14 that inconsistencies in the testimony means that officers are
15 lying. Again, it happened four years ago and the defendants
16 have maintained their testimony is consistent.
17     (There was a brief interruption - a juror was
18 coughing)
19     MS. CASTRO:  Now, counsel spent a good amount of
20 time talking about the fact that he thinks the defendants'
21 story doesn't make sense. I'm going to tell you whose story
22 makes no sense, the person whose story makes no sense is the
23 person in this room who is lying, is the plaintiff. His story
24 makes absolutely no sense. And there's many different parts
25 of the story that we can break down and look at how it makes

100

1  no sense.
2      First off, let's start off by talking about the
3  associate. He's walking down the street with the associate,
4  and they told you that he parted ways. He also told you that
5  for no reason at all the associate comes back and tells him,
6  warns him police are coming. Well, the associate was the one
7  carrying the gun. Why would he come back to where the police
8  are coming? Why would he put himself in a position to get
9  caught if he was carrying a gun? That makes no sense, but
10 that's his story.
11     What's the other part of the story that makes no
12 sense? Well, he wants you to think that when the officers,
13 you know, came upon the scene they ran out of the car and
14 said, "whose gun is it? Whose gun is it?" First of all,
15 there is no evidence that that question was asked. He's the
16 only one that's telling you that the officers were saying
17 whose gun is it. But if the officers don't know whose gun it
18 was, Officer Burbridge told you what would happen in that
19 situation; both of them would have been arrested. They would
20 have been taken back to the station house and they would have
21 been questioned.
22     Now, plaintiff's counsel said well, that's nonsense.
23 But guess what, he's got no evidence to refute that. Nobody
24 came here and said that's not how it works. That is how it
25 works, that's the evidence. His story makes no sense.

**101**

1   Now, there are three things in this case and it is a
2   simple case, as my co-counsel told you in the opening
3   statement yesterday, it is a simple case. The story is about
4   three officer from the Brooklyn North Anticrime Unit, they
5   were on patrol and they see two men walking down the street.
6   One of these men is observed pulling a gun from the waistband
7   and tossing it. That's the whole case. That's it. He was
8   arrested because of that. That's the only reason why.
9      Plaintiff's first claim is the false arrest claim.
10  Now, for this claim the only relevant question you have to
11  answer is whether there was probable cause for this arrest.
12  Probable cause, Judge Weinstein will instruct you, means that
13  there was a reasonable belief the officers believed that the
14  plaintiff had or was committing a crime. You're going to
15  receive a verdict sheet at the end of the summations and
16  you're going to use this verdict sheet to inform us of your
17  decision. For the first two questions of the verdict sheet
18  1-A and 1-B pertain to whether the officers falsely arrested
19  the plaintiff on May 15, 2008. And we submit to you the
20  evidence shows that the answer to these two questions should
21  be "no."
22     Now, by now you've heard that the standard of proof
23  in this case is different from a criminal case. In a criminal
24  case the standard of proof is beyond a reasonable doubt to
25  determine whether somebody's guilty or not guilty. You're not

**102**

1   here to do that. The standard of proof in this case is by a
2   preponderance of the evidence. And what that means is that if
3   you've got the scales of justice weighing the evidence that
4   was presented by plaintiff and the defendant, that if the
5   scale tips slightly in the favor of the defendant, then on
6   this claim you must find for the defendant.
7      So with that in mind, let's talk about how the
8   officers had probable cause. You heard testimony from the
9   three officers who were out on parole on May 15, 2008. You
10  heard that yesterday. What they told you is they observed the
11  plaintiff remove an object from his waistband. Officer
12  Burbridge told you that he specifically saw the plaintiff
13  remove the gun. He tossed it. Officer Randall will tell you
14  that he saw that movement from his vantage point, he saw the
15  movement. He saw the pitch and then he heard the sound. The
16  third officer, Officer Fox told you that he had his eye on the
17  associate the whole time and the associate had his hands up
18  before the sound of the gun hit on the ground. There's no
19  doubt in the officers' minds that that's what they saw and
20  that's what they heard, no doubt.
21     Now, the plaintiff wants to question whether the
22  officers actually saw him throw this gun. We submit to you
23  that the evidence is perfectly clear that they saw him with
24  that gun, saw him throw that gun. They're not mistaken about
25  that. It wasn't the associate's gun, it was his.

**103**

1   Now, according to the plaintiff and only the
2   plaintiff, the associate threw the gun and the officers said,
3   whose gun is it? We saw no other evidence than his testimony.
4   And it's your job to weigh the testimony and decide who's
5   credible and who's not credible.
6      Officer Randall told you that what he heard and what he
7   saw. Officer Burbridge told you what he saw and what he
8   heard. Officer Fox told what you he saw and what he heard.
9   There was no doubt in their mind that they saw that man with
10  the gun.
11     Now, following this arrest the plaintiff was taken
12  to the 83rd precinct. And you heard from the plaintiff that
13  on the ride back the officers even told him that they saw him
14  with that gun. Once back at the preeinct the paperwork was
15  completed and the request for the fingerprints were made. And
16  we know that because Officer Sena told us that when he got in
17  or when his partner got in at 6 a.m. there was a message
18  request that fingerprints were needed and they went to the
19  precinct and they collected that gun and they fumed it for
20  prints.
21     Ladies and gentlemen, we submit to you that because
22  of the officers' observations and because of what they heard,
23  there was probable cause for that arrest. For that reason, we
24  ask you to check "no" on the two questions as to whether
25  Officer Burbridge and Officer Randall falsely arrested the

**104**

1   plaintiff.
2      Now, plaintiff's second claim. And actually, before
3   I get to that. There was one part in the plaintiff's
4   summation that he left out entirely, and that crucial part
5   that he left out is what's the motive? What's their reason
6   for wanting to pin this gun on this man if they know that
7   somebody else threw it? What's the reason for that? They
8   can't give you a reason because there is no reason. None.
9   There is no evidence of that. The only reason is because
10  that's what they saw.
11     Let's talk about plaintiff's second claim, and
12  that's the malicious prosecution claim. The first part that
13  you need to decide to determine whether or not the officers
14  maliciously prosecuted him is whether there was probable
15  cause. And as I already explained to you, there was. There's
16  no doubt they saw him take the gun from his waistband and
17  throw it. And there's a second part to the malicious
18  prosecution claim, and that goes to the timing of when the
19  officers speak to the District Attorney's office. So the
20  Judge is going to give you instructions about how to come up
21  with your decision about this claim. But one of the
22  instructions that he will tell you is that --
23     MR. NORINSBERG: Objection. We'd ask that all
24  instructions be from the Court not from counsel.
25     THE COURT: You may continue.

105

1    MS. CASTRO:  One of the instructions that the Judge
2  will give you is that the defendant cannot be held liable for
3  what he says to the grand jury.  He cannot be held liable to
4  what he says to the prosecutor if it's not his preparation for
5  a statement to the grand jury.
6    Now, yesterday when you heard from Officer
7  Burbridge, he told you he spoke to the prosecutor for five
8  minutes in preparation of his grand jury testimony, and then
9  he went in and gave his testimony for the grand jury and had
10 no further involvement in the prosecution.  That hasn't been
11 refuted.  There's no evidence to say that didn't happen.  For
12 that reason we ask you with respect to the plaintiff's
13 malicious prosecution, which are going to be questions 2-A and
14 2-B on your verdict sheet, 2-B pertains to Officer Burbridge,
15 we ask that you check off "no".
16   Let's talk about Officer Randall.  Now, he did speak
17 to the prosecutor right after the arrest and he told the
18 District Attorney's office the same thing that he told the
19 grand jury and that he said at his deposition, and the same
20 thing that he told you here.  And what he said was that he
21 observed the plaintiff remove the object from his waistband,
22 toss it, and he heard the sound of the gun.  There's no
23 evidence to refute that that's what he said to the District
24 Attorney.  They didn't put on a witness from the District
25 Attorney's office that says that that's not true.  It's

106

1  unrefuted.
2    And there's one more component to the malicious
3  prosecution claim, and that component is malice.  The
4  plaintiff has the burden of showing that the officers acted
5  with ill will with personal hostility to the plaintiff.  As I
6  told you before, there is no motive.  There's no evidence that
7  they had any ill will towards the plaintiff.  There's no
8  evidence that they disliked him.  There's no evidence in this
9  trial that they even knew him.  There's no malice.  For that
10 reason we ask you to find that they did not maliciously
11 prosecute him.
12   Now, you've heard from plaintiff as well yesterday
13 that he told you that he voluntarily testified at the grand
14 jury, and even after the grand jury heard his story, they
15 still decided to indict him.  They indicted him on three
16 counts of criminal possession of a weapon.
17   Now, yesterday the Judge told you that just because
18 the grand jury indicted him doesn't mean that he's guilty.
19 And likewise, just because the criminal charges were dismissed
20 in this case, that doesn't mean that the officers didn't see
21 him toss that gun.  That doesn't mean that the officers didn't
22 have probable cause to arrest him.  So again, for these
23 reasons, we ask you to find the officers not liable for
24 malicious prosecution.
25   Now, as to plaintiff's third claim, he's claiming

107

1  that he was denied a fair right to a trial.  Now, the Judge is
2  going to tell you that the plaintiff must prove that the
3  defendant knowingly created false evidence and presented that
4  to the prosecutor, and that that evidence was a depravation of
5  his liberty.
6    However, if you believe that the defendants
7  presented accurate information to the prosecutor or presented
8  inaccurate evidence without the requisite intent, then you
9  must find for the defendants on this claim.
10   Now, again, ladies and gentlemen, the plaintiff has
11 not and cannot show you that either of these officers made any
12 false evidence that led to the depravation of his liberty.
13 They can't do that.  There's no proof of that.
14   So now let's talk about the forensic evidence in
15 this case.  You heard from two individuals this morning that
16 talked about fingerprints and DNA.  Now, plaintiff's counsel
17 would like you to believe because there was no DNA or
18 fingerprint, that that must mean that the gun was not the
19 plaintiff's or that he didn't handle the gun.  That's
20 incorrect.  First of all, this isn't CSI, this isn't Law and
21 Order, that is real life.  And in real life, as you heard
22 today, you don't always get forensic evidence and there are
23 different reasons why.  Starting with Officer Sena, he told
24 you that he almost never gets fingerprint on a gun.  And the
25 reason for that is because the surfaces of the gun.  Here, the

108

1  handle of the gun was brutish, very difficult to get a
2  fingerprint.  Not just plaintiff's fingerprint, there weren't
3  fingerprints of the officers.  No prints.  That doesn't mean
4  he didn't handle that gun.
5    You also heard from a criminalist from the medical
6  examiner's office.  Now, she told you that the swabs of the
7  DNA were tested -- well.  They couldn't test them, because
8  there was an insufficient sample.  That didn't mean what
9  plaintiff wants you to believe.  And again, that's a play of
10 his words.  What that means is because there was not enough
11 evidence, not enough DNA for them to test, not enough DNA to
12 match him; but again, that doesn't mean he didn't handle that
13 gun, it doesn't mean that the officers didn't see him toss
14 that gun.
15   One of the things that plaintiffs had in summation
16 was that the defense or the prosecutors, they didn't test the
17 sample that you heard is still in the lab.  Well, guess what,
18 they could have asked for that test and they didn't either.
19 So it's a play of his word.
20   Now, ladies and gentlemen, when you retire to your
21 deliberations, keep in mind there's only one person here who
22 has motive, motive to lie.  That's that man right there.
23 What's his motive?  He wants money.  He wants you to give him
24 money.  Think about that when you are deliberating.
25   Now, this is going to be my last opportunity to

109

1  speak with you. After I sit down you'll hear from the
2  plaintiff's counsel and he'll get to tell you his last word,
3  he'll try to refute what I told you, but I want you to
4  carefully consider the evidence and come to your own
5  conclusion. Who do you believe?
6         Thank you again for your time and attention. We
7  hope that you find in favor of the defendants, Police Officers
8  Salim Randall and Michael Burbridge. Thank you very much.
9         THE JURORS:   Thank you.
10        THE COURT:   Thank you.
11 CLOSING REBUTTAL STATEMENT BY THE PLAINTIFF
12        MR. NORINSBERG:  Folks, you're almost done. You're
13 almost there.  I have a few brief remarks, just a few points I
14 want to hit on and then we'll turn it to the Judge to give you
15 instructions of law.
16        A few things here.  This notion that it happened
17 four years ago and that's why Officer Randall can't remember?
18 Come on, folks, he testified just last year, the
19 inconsistencies are what he testified to a year ago and today,
20 so I think that's not a reasonable argument at all.  We're not
21 talking about what he couldn't remember four years ago, it's
22 changing what he said last year to this year.
23        The reports, the key issue on the reports is simply
24 this:  The important fact of seeing the gun move and throwing
25 the critical words are nowhere in the arresting officer's

110

1  report.  So there is a bit of a subterfuge to sort of -- if
2  you can talk about other things, that's what the issue is in
3  this case.  If he actually saw these things, they weren't in
4  the report.
5         This notion about motive and reason, let me just
6  address this.  First, the Judge is going to instruct you that
7  in terms of malice, the mere fact, if you find as jurors that
8  the officers lack probable cause, you can infer malice.  You
9  don't have to think that they were out to get this guy.  Just
10 the fact that they lacked probable cause is sufficient to
11 conclude malice.
12        And what happened in terms of what happened here?
13 These officers had an indifference, it didn't matter about
14 what happened here, it's not that they're out to get one of
15 these guys or the other, it's much more the fact that you have
16 two men on the street, one of them must have this gun, and
17 we'll get one of them and the other one is probably up to no
18 good anyway.  The fact that Mr. Marshall is staying at his
19 aunt's house on that street, they're not aware of that, they
20 don't care about that, it's indifferent.  The malice can infer
21 from the lack of probable cause, the Judge will tell you that.
22        Now, this idea that the plaintiffs could have tested
23 the DNA.  You heard this and it came at a subtle point, but an
24 important point that the report was just written this past
25 week.  The report never mentioned the fact that there was

111

1  still an extract.  The first time that any of us hear that
2  today is from this witness.  That's the first time we learned
3  they actually had an extract.  All along they claimed that
4  there was an insufficient amount.  In fact, the first time we
5  hear about it is today.
6         If they truly believed this man was in possession of
7  that gun, why on earth didn't they have that extract tested?
8  They have the ability.  It's just -- all the witness said was
9  that it's not with our standard protocols, it's not enough,
10 but they have higher sensitivity testing.  They had four years
11 to do this, folks, why wouldn't they do it?  Why wasn't it
12 done?
13        Now, you also were told about the meet -- whether or
14 not there was discussions with the District Attorney.  Here's
15 a very important piece of evidence you have in there, there's
16 a complaint, an actual criminal complaint.  And if you
17 remember Officer Randall on the stand, I actually showed him
18 that complaint and I said, did you make the statement in this
19 complaint, did you tell the District Attorney this?  And he
20 said yes.  And that's why it's in evidence, so you can take a
21 look at that and see.
22        Now, with respect to the grand jury.  Yes, we know
23 the grand jury has indicted, that was something we talked
24 about in opening statement.  The real question is why did they
25 indict?  They indicted because they were told something that

112

1  turned out to be completely different.  They were told by
2  Officer Burbridge that he was actually standing in front and
3  seeing this man throw a gun.  Of course they are going to
4  believe that.  Understand the fact that when you heard it from
5  Mr. Marshall, he's not allowed to ask him questions, the only
6  person questioning in that room is the prosecutor.  But when
7  the truth came out; you, as jurors, heard much more than they
8  ever heard, and you know much more, and I think you're in a
9  better position to make a decision on this case.
10        You also heard some reference to what Officer Sena
11 did in the testing, the fingerprint testing.  But again, we
12 learned for the first time today, now, that this is the first
13 time in the four years that he said that he didn't actually
14 test the bullets, and why did he not test the bullets, what
15 did he say?  He told us, well, this was a possession case, so
16 we only test the gun.  But who put the bullets in the gun?
17 Logically, wouldn't that be the thing that you do?  Some human
18 being did that.  Whoever put the bullet in the gun had
19 possession of the gun.
20        The thing I want to talk about, ladies and
21 gentlemen, this incident happened four years ago.  Four years
22 have gone by.  To this date these officers have never once
23 been held accountable for what happened that night.  Four
24 years have gone by.  They have never been held accountable for
25 what they told the prosecutor for the statements they made,

**A1216**

---

113

1  for the fact that that man spent four and a half months in
2  jail. To this day the only panel that will ever have a chance
3  to make that decision is you.
4        And I understand that you have to listen to
5  everything and consider all of the evidence, not just from one
6  side or the other, but all the evidence. But, ladies and
7  gentlemen, what happened here, what happened to this family 7s
8  it was not ripe. This was not his gun. This was not his gun
9  and he wound up doing time for it. And if they had just been
10  honest about what happened, this never would have taken place
11  and he never would have done that time in jail. And I ask you
12  please, when you are evaluating all the evidence, use your
13  common sense, listen to the instructions that the Judge gives
14  you, listen to the fact that they are the ones that have to
15  prove that they have legitimate grounds to arrest this man.
16        And I will tell you, ladies and gentlemen, if you do
17  that at long last, you will hold these officers accountable.
18  You are the final say. This is the last show. No one else
19  will look at this. You are the ones that will make this
20  decision. And I ask you to do the right thing here. Give
21  this man justice. Do the right thing.
22        THE COURT: Okay. Thank you. Why don't you take
23  five minutes and we'll just read you the charge.
24        (Jury is out of the courtroom at 1:53 p.m.)
25        (Continued on the next page.)

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

---

PROCEEDINGS          114

1        (The jury entered.)
2        THE COURT: All right. Be seated, please.
3        You have those instructions. Read them along with
4  me. Don't go to the end. I'm going to tell you what the law
5  is, and you follow those instructions that I now give you.
6  You will be able to take the instructions into the room where
7  you're deliberating, and you will be able to have all the
8  documents and blowups that were introduced in evidence and so
9  much of the transcripts as you wish. They've ordered
10  transcripts. So in some cases, we may actually send the
11  transcript in, should you ask for portions of it. But try to
12  be specific. We don't want to send in the whole trial, of
13  course.
14        You're the judges of the facts. Neither the
15  attorneys nor I can help you very much more than we've already
16  tried to assist you. I have no view myself as to how the case
17  will have to be decided, and nothing I've said or done should
18  indicate to you that I have such a view.
19        Your verdict have to be based on the evidence that
20  you heard here and saw. Put aside any personal feelings you
21  may have about the parties, race, religion, national origin,
22  ethnic background, gender, occupation, anything like that.
23        Don't do any research of your own and decide on what
24  you've heard and seen in the court.
25        Everybody here is equal. That means that you

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

---

PROCEEDINGS          115

1  shouldn't, when you come into court, have any view about how
2  the case should be decided. Later on, after you consider the
3  evidence, of course you'll have a view. The police officers
4  are equal here to the plaintiff because everybody in the
5  federal court is equal. Nobody's entitled to greater or less
6  consideration.
7        Now, I'll say that somebody has the burden of proof
8  or something has to be proven by somebody as to particular
9  issues. I mean that considering all of the evidence in the
10  case, no matter who put it in, the party's claim on that issue
11  must be established as more probably true than not true. If
12  the probabilities are equal, then the scales are equally
13  balanced, and the party that has the burden has not met his
14  burden of proof.
15        Is that clear?
16        (Jury nodding.)
17        THE COURT: The first of the three claims the
18  plaintiff makes is that the arrest was illegal because of what
19  happened at the scene and that the statements made at various
20  times by the defendants were false, which the defendants deny
21  that. Second, the criminal charges were based upon
22  fabricated, that is, made-up evidence regarding the events
23  that occurred that night and the prosecution was maliciously
24  brought against the plaintiff at the instigation, essentially,
25  of the defendants. And that, third, the defendants violated

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

---

PROCEEDINGS          116

1  the plaintiff's constitutional right to a fair trial by
2  presenting false evidence to state prosecutors in the case.
3        So the first issue is whether the plaintiff was
4  falsely arrested. The second issue is whether the plaintiff
5  was maliciously prosecuted. Third, whether the plaintiff was
6  denied the constitutional right to a fair trial. And only if
7  you find one or more of these questions or issues in favor of
8  the plaintiff will you be required to consider the amount of
9  damages.
10        You understand that? Unless the defendant or one of
11  them is liable, you don't have to go to damages. Is that
12  clear?
13        (Jury nodding.)
14        THE COURT: The plaintiff has the burden of proving
15  each element of the claims, except for the probable cause
16  element of his false arrest claim. The burden is on a
17  defendant to prove that he had probable cause to arrest the
18  plaintiff.
19        Now, you have to decide the case unanimously. All
20  of you have to agree on the answer to the questions on the
21  verdict sheet that I'll read to you in a moment.
22        You'll have a list of the witnesses. You'll have a
23  list of the documents, and those will be sent in to you. If
24  you want the documents, either individually or all together,
25  we'll send them in.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS 117

1 You'll send a note in. You'll communicate with me
2 through a note to the marshal from your foreperson.
3 There were objections made and rulings I made during
4 the course of the trial. Draw no inferences from them. If I
5 had something stricken, put it out of your mind. If a
6 question wasn't answered, don't rely on the question. It's
7 the question and answer both together that count.
8 Give the evidence the weight you think it deserves,
9 analyze it dispassionately, rationally and without prejudice
10 or emotion and draw whatever almost inferences you think
11 follow as a rational view of what happened here in your
12 attempt to decide what happened that night.
13 The opening and closings are not evidence.
14 Now, critically in this case is the question of
15 who's telling the truth. That is veracity. You can consider
16 each witness's demeanor, that is, what they appeared to be,
17 from their facial and other actions on the witness stand, the
18 way they testified, the opportunity they had to see and hear
19 and know about the events that night, the ability of the
20 witness to describe and recall and the reasonableness of the
21 testimony in light of all of the evidence in the case. You
22 can consider whether the testimony was contradicted by other
23 people's testimony or by what the witness said on an earlier
24 occasion.
25 If you find a witness has falsely testified as to

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS 118

1 anything, you may find other elements of what he said or she
2 said was true. But if you find that a person deliberately
3 lied to you, you can ignore all of that witness's testimony.
4 A witness may be mistaken without deliberately lying.
5 There was testimony about some of what was said
6 outside of court. You were indeed there to hear that
7 cross-examined immediately. But you consider the veracity of
8 what was said at that time outside of court in the same way as
9 you try to determine the veracity of a witness before you.
10 There were a few witnesses here with expert
11 backgrounds. If you believe they were experts, you may give
12 their opinions such weight as you think they deserve, applying
13 also all of the other elements of veracity considerations
14 because they are witnesses as well as people with special
15 backgrounds.
16 I made some findings. I'll indicate one of them, at
17 least, in the course of these discussions; and when I tell you
18 you must find something, then you will follow that
19 instruction.
20 The claims by the plaintiff are made under
21 Section 1983 of Title 42 of the United States Code, so-called
22 civil rights law, against the officers, Salim Randall and
23 Michael Burbridge. And essentially the law provides for a
24 claim in a civil court -- and this court is now sitting as a
25 civil court -- against individuals who have deprived people of

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS 119

1 their constitutional rights if they are state or local
2 officials acting under state color of law. The statute says
3 every person who under color of any statute, ordinance,
4 regulation, custom or usage of any state or territory of the
5 District of Columbia -- here it's the State of New York --
6 subjects or causes to be subject any citizen of the United
7 States -- that is here, the plaintiff -- or other person
8 within the jurisdiction to the deprivation of any rights,
9 privilege -- privileges or immunity secured by the
10 constitution or law shall be liable in damages to the injured
11 party.
12 Four things have to be made out to establish a claim
13 under that statute. First, that the defendant acted
14 intentionally or recklessly. Second, that the conduct
15 complained of was committed by a person acting under color of
16 state law. Third, that the conduct deprived the plaintiff of
17 a right, privilege or immunity secured by the constitution of
18 the United States or the laws. Here it's the constitution.
19 Fourth, that the defendant's acts were a proximate cause of
20 damages he sustained.
21 An act is intentional if it's done knowingly, that
22 is, if it's done voluntarily and deliberately and not because
23 of a mistake, accident, negligence or any other innocent
24 reason.
25 An act is reckless if it is done in conscious

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS 120

1 disregard of its known probable consequences.
2 The defendants, as New York State police officers,
3 were acting under color of state law when they arrested the
4 plaintiff. So this element is considered and should be
5 considered by you to have been satisfied or proven.
6 Now, then the deprivation of a constitutional right
7 has to be shown. The first claim of a deprivation is that the
8 plaintiff was falsely arrested. He claims that the defendants
9 falsely arrested him on May 15th, 2008 in violation of the
10 Fourth Amendment to the Constitution. A person is falsely
11 arrested when the defendant intended to confine the plaintiff,
12 and here that was shown by the handcuffing and taking the
13 plaintiff to the station house. Second, the plaintiff was
14 conscious of the confinement. And here obviously he was.
15 Third, that the plaintiff did not consent to the confinement.
16 And here, he did not. And fourth, the confinement was not
17 privileged. And that's the issue here, was the confinement
18 privileged for these two defendants on that night.
19 The initial stop was lawful. You can assume that.
20 That's not the violation that's claimed here. The evidence
21 relating to observation and acts surrounding the stop may be
22 considered in deciding credibility. So you can consider all
23 of the evidence from the time they first observed, according
24 to their evidence, the defendant up to the time when he was
25 placed under arrest.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                121

1   Now, you have to decide whether the arrest was
2   privileged, that is to say whether there was probable cause
3   for the arrest at the time he was taken into custody. The
4   defendants contend there was probable cause to arrest the
5   plaintiff for the illegal possession of a firearm. There's no
6   question that that was a firearm that was picked up. Nobody
7   denies that. The plaintiff contends that there was no
8   probable cause to arrest him for that crime. Because it
9   would've been a crime for him to have possessed that firearm,
10  that gun.
11  If there was an objectively reasonable ground for an
12  officer's belief that a crime was being committed by the
13  possession of that gun by the plaintiff, then the arrest was
14  privileged. If one defendant, one police officer among the
15  three had probable cause to arrest, then both these defendants
16  are deemed to have had probable cause. An officer may rely on
17  information supplied to him by another officer who made
18  observations at the scene.
19  The existence of probable cause is measured at the
20  moment of arrest. You may, however, consider as one piece of
21  evidence, together with all of the evidence in the case, the
22  fact that the charges against the plaintiff were later
23  dismissed in determining whether the probable cause to arrest
24  existed.
25  The failure of an officer to make a further inquiry

PROCEEDINGS                122

1   before making an arrest when a reasonable person would have
2   done so may but does necessarily show a lack of probable
3   cause. An officer is not required to conduct a full
4   investigation prior to executing an arrest, but he may not
5   ignore relevant evidence that he is aware of at the time or
6   deliberately disregard facts that he is aware of at the time
7   if the evidence or facts tends to rebut the existence of
8   probable cause to arrest. And the defendant has the burden of
9   showing that the burden cause to arrest existed in this case.
10  With regard to the substantive crime to which -- on
11  which plaintiff's arrest was premised, a person is guilty of
12  the criminal possession of a weapon when he possesses any
13  firearm except under limited circumstances not relevant here.
14  So if he possessed a firearm, he was guilty of that possession
15  under the New York penal law.
16  Second, malicious prosecution is claimed by the
17  plaintiff, and it's claimed that it occurred through the
18  defendants providing false statements to and withholding
19  relevant evidence that each was aware of from a state
20  prosecuting attorney. The plaintiff was indicted on -- for
21  the criminal possession of a weapon.
22  A defendant cannot be held liable for what he said
23  to the grand jury. He may beheld liable for what he said to
24  the prosecutor if his statement was not in preparation for his
25  grand jury testimony.

PROCEEDINGS                123

1   A person is maliciously prosecuted when, first,
2   criminal proceedings are initiated or continued against him by
3   the defendant. Two, the proceedings are terminated in his
4   favor. Three, there was no probable cause for the
5   commencement of the proceeding. And four, the defendant's
6   actions leading to the initiation of proceeding against the
7   plaintiff were motivated by malice of a defendant.
8   There's no dispute that criminal proceedings were
9   commenced and continued and that they ended in plaintiff's
10  favor. The critical decision for you is whether there was
11  probable cause for the initiation of the proceedings and
12  whether a defendant's assistance in the initiation of the
13  proceedings was motivated by malice.
14  Probable cause to prosecute exists when the facts
15  and circumstances within the person's knowledge at the time it
16  takes steps to proceed with the prosecution are sufficient for
17  a person of reasonable prudence to believe that a violation of
18  law was committed.
19  A grand jury's indictment creates a presumption that
20  probable cause for prosecution existed. You may find the
21  presumption rebutted, that is, overcome, and that no probable
22  cause for prosecution existed based on all of the evidence.
23  The critical question here is whether either or both
24  of the defendant officers believed that there was probable
25  cause to initiate or assist in the prosecution of plaintiff.

PROCEEDINGS                124

1   A defendant initiates or continues a prosecution
2   maliciously if he initiates or continues it for a wrongful
3   purpose, that is, if his goal is not to bring an alleged
4   defendant to justice. For example, if he acts out of ill will
5   or personal hostility towards a persona accused or he acts out
6   of a desire to punish a person without due process of law,
7   then he can be said to have acted with malice.
8   You are permitted but not required to infer that
9   malice existed if you find that a defendant lacked probable
10  cause to initiate and continue with the charges against the
11  plaintiff.
12  If probable cause existed for these officers to
13  present the evidence they did to the state prosecuting
14  attorney, then you must find for the defendants on this claim.
15  If no probable cause existed but the defendant did not act
16  with malice, then you must find for the defendants on this
17  claim.
18  The third constitutional claim plaintiff makes is
19  with a constitutional right to a fair trial. Every person has
20  a right not to be prosecuted on the basis of information that
21  is known by the government to be false. The government's
22  doing so violates the constitution.
23  The question for you on this claim is whether the
24  plaintiff has proven that the defendants, or either one of
25  them, knowingly created false evidence and presented it to the

PROCEEDINGS   125

1  prosecutor, leading to a deprivation of the plaintiff's
2  liberty. If a defendant presented accurate evidence to the
3  prosecutor or presented false evidence thinking it was true,
4  then you must find for the defendant. And I've already told
5  you a few moments ago that what was told to the prosecutor in
6  the grand jury room or in preparation is not what we're
7  talking about here. It's at other times.
8      Do you understand that?
9      (Jury nodding.)
10     THE COURT:   The third element that plaintiff must
11 prove is that the acts of Officer Randall and officer
12 Burbridge were a proximate cause of injuries he sustained.
13 There can be more than one cause that's proximate.
14     An injury or damage is proximately caused by an act
15 or failure to act whenever the act or omission played a
16 substantial part in bringing about or actually causing the
17 injury or damage and that the injury was the direct or
18 reasonably probable consequence of the act or omission.
19     To recover damages, Marshall has the burden, that
20 is, the plaintiff, of proving that he suffered an injury and
21 that the injury would not have occurred without the wrongful
22 conduct of a defendant.
23     If you find the plaintiff has proven one of his
24 three claims, you are going to have to determine damages, if
25 any, that he sustained and proved. Don't infer that he had

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS   126

1  damages merely because I am instructing you. It's exclusively
2  your function to determine liability and damages.
3      He's seeking first compensatory damages. If
4  liability is proven on one of the claims, you will award the
5  plaintiff sufficient damages to compensate him for any injury
6  proximally caused by one of the defendants' actions in
7  creating the liability. Damages of this type is known as
8  compensatory damages. Their purpose is to make the plaintiff
9  whole, that is, to give back, to the extent that money can,
10 the problem or injury that he -- for the injury that he
11 suffered. Those damages should be fair and reasonable,
12 neither inadequate nor excessive, and they should be only for
13 injuries the plaintiff suffered or is reasonably likely to
14 suffer as a proximate result of an injury claimed and proved.
15     The plaintiff claims as the injury that he spent
16 four and a half months in jail. He is not seeking recovery
17 for any emotional or psychological injuries. He is not
18 seeking recovery for loss of earnings. That is, for any
19 emotional or psychological injuries that continued after the
20 jail. He is seeking damages for the time he spent in jail.
21     In awarding compensatory damages, be guided by
22 dispassionate common sense. Use such definitiveness and
23 accuracy as the circumstances permit.
24     Each defendant is entitled to fair, separate and
25 individual consideration both as to liability and as to

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS   127

1  damages. It's as if you were trying two separate trials at
2  the same time.
3      Is that clear to you?
4      (Jury nodding.)
5      THE COURT:   If you find that only one is responsible
6  for a particular injury, then you must impose damages, if any,
7  for that injury only upon that defendant. If you find no
8  injuries by any of the defendants, then you'll rule
9  accordingly.
10     The plaintiff is also asking for punitive damages.
11 Should you award compensatory damages, you may award
12 additional punitive damages if you find that a defendant
13 engaged in extraordinary misconduct. You may do so to express
14 your disapproval and to serve as an example or warning to
15 others who might otherwise engage in similar conduct.
16     If you find in favor of plaintiff and against the
17 defendant and if you finds that the defendant acted so
18 maliciously, wantonly or oppressively as to warrant an award
19 of punitive damages, you may make such an award.
20     To justify an award of punitive damages, a
21 defendant's misconduct must be based upon a reckless or
22 callous disregard of the rights of the plaintiff or a gross
23 indifference treasure them. You may also award punitive
24 damages if a defendant acted to punish the plaintiff out of
25 ill will or spite.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS   128

1      You may assess punitive damages or any damages
2  against either or both of the defendants, or in the case of
3  punitive damages, you may refuse to assess them at all.
4      If punitive damages are assessed against more than
5  one defendant, the amount may be the same or may be different.
6      When you begin your deliberations, don't communicate
7  with anybody outside the jury room except in writing through
8  the marshal, who will give me the note, and then I'll
9  communicate back or call you back into court.
10     You can ask for help on the law or anything else.
11     Be respectful to each other when you're having your
12 discussions. Don't hesitate to change your mind after
13 considering what other people say, but each of you is entitled
14 to your individual vote and must exercise your individual
15 judgment. And when the verdict comes in, you will each be
16 asked if that is your verdict.
17     Don't tell me how the vote stands until you come
18 into court. If you've reached a verdict, don't report to me
19 what it is. You will be asked then in open court. Inform the
20 Court in writing when you've reached a verdict without
21 indicating what that verdict is.
22     You'll render your verdict without fear or without
23 favor, without prejudice and without sympathy.
24     Now, these are the questions you'll have to answer.
25 First, did Randall falsely arrest the plaintiff?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                129

1   Yes or no.
2        Did Officer Burbridge falsely arrest the plaintiff?
3   Yes or no.
4        Did Officer Randall maliciously prosecute the
5   plaintiff? Yes or no.
6        Did Officer Burbridge maliciously prosecute the
7   plaintiff? Yes or no.
8        Did Officer Randall violate the plaintiff's
9   constitutional right to a fair trial by knowingly presenting
10  false evidence to the prosecutor? I'm sorry, in preparation
11  for the grand jury.
12       Did officer Burbridge violate plaintiff's
13  constitutional right to a fair trial by knowingly presenting
14  false evidence to the prosecutor under similar circumstances?
15       If your answers to all those questions is no, you
16  don't have to answer any of the following questions because
17  there won't be any damages to assess. If you find that a
18  defendant is or has violated a right, then you'll determine
19  compensatory damages first attributable to Officer Burbridge,
20  second, attributable to Officer Randall. Then, if you find
21  punitive damages, how much against Officer Burbridge --
22  Officer Randall, rather, and then against Officer Burbridge.
23       Do any attorneys wish to see me at the side bar?
24       MR. NORINSBERG:  No, your Honor.
25       MS. CASTRO:  No, your Honor.
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                130

1        MS. SANDS:  Your Honor --
2        THE COURT:  Do you wish to see me at the side bar?
3        MS. SANDS:  I do.
4        THE COURT:  Come to the side bar.
5        (At the bench.)
6        MS. SANDS:  Your Honor, I think you misread the
7   question 3A.
8        THE COURT:  You're turning to page?
9        MS. SANDS:  Page 13, question 3A.
10       (In open court.)
11       THE COURT:  3A on Page 13 reads: Did Officer
12  Randall violate plaintiff's constitutional right to a fair
13  trial by knowingly presenting false evidence to the prosecutor
14  under the circumstances I described? Yes or no.
15       MS. SANDS:  Okay.
16       THE COURT:  No other objections are made.
17  Swear the marshal, please.
18       THE CLERK:  Do you swear or affirm that you will
19  keep the jurors sworn in this cause together in some private
20  and convenient place, that you shall suffer no one to speak to
21  them nor shall you speak to them unless it be at the direction
22  of the court to ask if they have agreed upon a verdict?
23       THE MARSHAL:  I do.
24       THE COURT:  Thank you.
25       Continue your deliberations until I tell you to
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                131

1   stop. Now, if you want to go beyond 4:30 p.m., send in a
2   note.
3        (The jury exited.)
4        THE COURT:  The instructions I read from, which we
5   just distributed, is Court Exhibit 2, I think, of today's
6   date. The brief is marked 1, and this jury charge I gave is
7   marked Exhibit 2.
8        (Court Exhibit 1 was received in evidence, as of
9   this date.)
10       (Court Exhibit 2 was received in evidence, as of
11  this date.)
12       THE COURT:  And we have prior drafts. There is an
13  April 24th draft, which is marked Exhibit 3.
14       (Court Exhibit 3 was received in evidence, as of
15  this date.)
16       THE COURT:  There's an April 20th draft which is
17  marked 4.
18       (Court Exhibit 4 was received in evidence, as of
19  this date.)
20       THE COURT:  And there's an April 17th draft, which
21  is marked 5.
22       (Court Exhibit 5 in evidence, was received as of
23  this date.)
24       THE COURT:  Do you have a list of the witnesses,
25  please? Do you have a list of the exhibits, please? Make up
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                132

1   the list, please. Gather all of the exhibits. Nothing is to
2   go in until I go through it.
3        MR. COHEN:  You have all the exhibits that we put
4   in.
5        THE COURT:  Make up your list and put it all
6   together.
7        I should say I appreciate the cooperation and fine
8   professional lawyering of both sides.
9        MS. GROSS:  Thank you, your Honor.
10       MR. COHEN:  Thank you, your Honor.
11       If I can make one request. Once the jury does have
12  a verdict, we would like to speak to them.
13       THE COURT:  You're free to do so. It's up to them
14  whether they want to talk to you.
15       MR. COHEN:  Can you just ask them if they want to
16  stick around, to let them know that the attorneys would like
17  to --
18       THE COURT:  I will tell them. Yes, I will do that.
19       MS. GROSS:  Defendants join in that request.
20       THE COURT:  I will do that.
21       (Recess.)
22       THE COURT:  Yes, what can I do to help you?
23       MS. CASTRO:  We've gathered all of the exhibits and
24  created a witness list.
25       THE COURT:  May I see the witness list, please.
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

# A1221

## PROCEEDINGS 133

1 MS. CASTRO: Yes, your Honor.
2 THE COURT: Is this satisfactory?
3 MR. COHEN: I didn't look at the witness list, but
4 I'm sure it's fine.
5 THE COURT: Look at it.
6 Mark that as Court Exhibit 6.
7 (Court Exhibit 6 was received in evidence, as of
8 this date.)
9 THE COURT: Where is the list of exhibits?
10 MR. COHEN: I reviewed that, that's fine.
11 THE COURT: You have reviewed it?
12 MR. COHEN: Yes.
13 Your Honor, there's one little minor issue. I don't
14 think it should be an issue. There are large blowups of the
15 exhibits we did get admitted. Does it matter that -- they are
16 all exhibits that were admitted.
17 THE COURT: Send in all the blowups that the jury
18 saw.
19 Mark this list of exhibits as Exhibit 7.
20 (Court Exhibit 7 was received in evidence, as of
21 this date.)
22 THE COURT: Plaintiff's Exhibit 1, Plaintiff's
23 Exhibit 2, Plaintiff's Exhibit 3, Plaintiff's Exhibit 6,
24 Plaintiff's Exhibit 11, Plaintiff's Exhibit 16, Plaintiff's
25 Exhibit 17, Plaintiff's Exhibit 18.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 134

1 Defendant's Exhibit 8, where is it?
2 MS. CASTRO: Our exhibits are lettered, your Honor.
3 THE COURT: Defendant's Exhibit F1.
4 MS. SANDS: It's a blowup.
5 THE COURT: Defendant's Exhibit D1.
6 MS. SANDS: Right here.
7 THE COURT: Defendant's Exhibit C1.
8 MS. SANDS: The gun.
9 THE COURT: Defendant's Exhibit G, Defendant's
10 Exhibit E.
11 MS. SANDS: Your Honor, there were two smaller
12 version E, and the blowup was E1.
13 THE COURT: Okay. Let me have E, please, and E1.
14 Are those all the exhibits now that you have?
15 MS. SANDS: That's all the exhibits.
16 THE COURT: Now let me see the plaintiff's blowups.
17 MR. COHEN: This is, I believe -- this is the
18 complete report. I don't know what number -- it says right
19 there, complete report. It's Exhibit 16.
20 THE COURT: 16, plus I'll mark it 16 blowup.
21 What's the next one?
22 MR. COHEN: The next one was the handwritten
23 complaint report.
24 THE COURT: Which is Exhibit?
25 MR. COHEN: I believe it's --

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 135

1 THE COURT: Exhibit 2?
2 MR. COHEN: Yeah. And then there was the memo book
3 which is Exhibit 1. Randall's memo book. Yeah. And then the
4 last one is the criminal complaint, which is -- which is
5 Exhibit 17.
6 THE COURT: Plus the blowup.
7 Ask the marshal to come in and take all of this.
8 (Marshal enters.)
9 THE COURT: Take these in there, please.
10 (Marshal takes lists to the jury.)
11 Mark this as a Court exhibit.
12 They're asking for all of the exhibits.
13 (Court Exhibit 8 was received in evidence, as of
14 this date.)
15 (Recess.)
16 (Court Exhibit 9 was recieved in evidence, as of this date.)
17 THE COURT: We have a note from the jury, Court
18 Exhibit 9, "Can we give punitive award without giving
19 compensatory?" The Court said it couldn't without objection
20 from any party. However, research that we've just done
21 indicates I was wrong. Second Circuit is clear on the point,
22 Robinson v. Cattaraugus, C-A-T-T-A-R-A-U-G-U-S, County 147
23 F.3d 153, Second Circuit, 1998.
24 We note that the original instruction as well as the
25 verdict formed erred, E-R-R-E-D, in indicating that

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 136

1 compensatory damages were a prerequisite to punitive damages.
2 We have long recognized, in Section 1983 cases, that punitive
3 damages may be awarded even in the absence of compensatory
4 awards. See E.G., King and Stolberg.
5 Bring in the jury. I'm going to properly instruct
6 them.
7 MR. COHEN: Could we just address this point for one
8 second before the jury comes in?
9 THE COURT: Yes.
10 MR. COHEN: Your Honor, there's a decision in
11 Kerman v. City of New York which finds that when there is a
12 finding of a constitutional right violation, compensatory
13 damages are obligatory. They're mandatory if they find that
14 our client was deprived of a constitutional right.
15 THE COURT: I wanted to put in nominal. You agreed
16 to take it out.
17 MR. COHEN: I understand. The point is that
18 deprivation of liberty is not -- actually, that case
19 specifically deals with the fact when a right is found to be
20 violated and there is time in jail, that there has to be
21 compensation for that time. The loss of liberty claim, in and
22 of itself, is more than just nominal if there's actually a
23 finding of the right being violated. The case is Kerman,
24 K-E-R-M-A-N.
25 THE COURT: Where is it from?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS 137

1 MR. COHEN: I believe it's the Second Circuit.
2 MR. NORINSBERG: Second Circuit.
3 MR. COHEN: I have the case cite in my bag.
4 MR. NORINSBERG: It's definitely Second Circuit.
5 MR. COHEN: I'm sure it was referenced in my motion
6 in limine papers, your Honor.
7 THE COURT: Why didn't you object to the charge?
8 MR. NORINSBERG: We did. That's why we opposed the
9 nominal damages. If there's a deprivation of liberty in any
10 magnitude, Kerman says there has to be an award of some
11 monetary compensation.
12 THE COURT: You disagree?
13 MS. SANDS: We disagree, your Honor.
14 THE COURT: Have you got a case?
15 MS. SANDS: We don't have a case handy, but we
16 certainly disagree that -- I know the case you just read, but
17 we feel there has to be liability before they can --
18 THE COURT: Well, of course there has to be
19 liability. That's not what we're talking about.
20 MR. NORINSBERG: Your Honor, the jury might be
21 asking that question: If they don't find liability, can they
22 still award punitive damages?
23 THE COURT: There has to be liability. What is the
24 citation?
25 MR. COHEN: I'm looking for my motion papers, your
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS 138

1 Honor. If I could just have one minute. Kerman is 374 F.3d
2 93. It's a Second Circuit decision from 2004. And if you
3 look at Pages 123 to 125, the quote is -- well, what I've
4 quoted for is "recognizing that loss of liberty and emotional
5 injuries are independent of each other and" --
6 THE COURT: Start again.
7 MR. COHEN: -- "the tort of false arrest and
8 malicious prosecution are complete with even a brief restraint
9 of the Plaintiff's freedom, it is not necessary that any
10 damages result from it other than the confinement, itself."
11 That's just for the portion that states that the
12 loss of freedom is a compensatory damage. But I believe,
13 later on in the case, it talks about how there must be
14 compensatory damages if a loss of liberty is found.
15 THE COURT: Bring in the jury.
16 MS. SANDS: Your Honor, I believe that case focused
17 on nominal damages, basically nominal damages if the jury
18 found that there was a breach of constitutional rights.
19 THE COURT: There has to be some damages.
20 MS. SANDS: They couldn't be nominal. They would
21 have to be --
22 THE COURT: But everybody agreed to strike the
23 nominal. I thought that the nominal was appropriate, but I'll
24 bring in the jury and tell them they have to find some
25 damages.
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS 139

1 Bring in the jury.
2 (The jury entered.)
3 THE COURT: I want to correct what I think is in an
4 error in the charge. As suggested in your note, Court
5 Exhibit 9, "Can we give punitive award without giving
6 compensatory"?
7 First, if he was deprived of a constitutional
8 right -- that is, there is liability -- that's the first
9 question. In order to give damages, there has to be
10 liability. Do you all understand that?
11 (Jury nodding.)
12 THE COURT: Anybody have any question about that?
13 If there's no liability, there's no damages. Do you
14 understand that? Everybody understand that?
15 (Jury nodding.)
16 THE COURT: Assuming you find liability -- and I'm
17 not saying you should or shouldn't, do you understand? If you
18 find liability, and flowing from that liability as a proximate
19 cause was deprival of the Plaintiff's liberty, either while he
20 was arrested in violation of his rights -- if you find that --
21 or for another reason in violation of his rights, he was
22 incarcerated for a substantial length of time, then he is
23 entitled to compensatory damages. Do you understand that?
24 (Jury nodding.)
25 THE COURT: How much is for you to decide. So that
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS 140

1 question, "Can we give punitive awards without giving
2 compensatory," theoretically, you can. You can give punitive
3 without compensatory if you found liability. Do you
4 understand?
5 (Jury nodding.)
6 THE COURT: But it's hard for me to see how if you
7 find liability and you find that he was deprived of his
8 liberty, you cannot give him some compensatory damages. I'm
9 not telling you what to do, but it does seem to me that once
10 you find liability which caused a deprivation of his
11 liberty -- either for four and a half months or for a lesser
12 time while he was arrested, et cetera -- that's all
13 deprivation.
14 You've got to find some violation first, some
15 liability. Then, after you find liability as -- if you do, as
16 I suggested, the next thing is compensatory damages. Now, if
17 you do find liability, it's, again, hard for me to see how you
18 cannot find some compensatory damages and he would be entitled
19 to compensatory damages for a deprivation. Do you understand
20 that?
21 (Jury nodding.)
22 THE COURT: If the deprivation was caused by the
23 denial. Do you understand?
24 (Jury nodding.)
25 THE COURT: Therefore, the question of whether we
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                 141

1  can give punitive without giving compensatory is more a
2  theoretical question than a real question because if you're
3  going to give him compensatory under that hypothesis that you
4  found liability and deprivation, you would then go to decide
5  the punitive. So you wouldn't have a situation, can we give
6  punitive -- a punitive award without giving compensatory.
7  Does that answer your question?
8          THE JUROR: Your Honor, may I speak?
9          THE COURT: I'd rather you go back, consider the
10  question you want to ask so that all the jurors agree on
11  that's the way it should be phrased, if possible. And then,
12  come in, send that in again. I don't want you to begin
13  deliberations now because I want to consult with the attorneys
14  and then call you in. But if you have a note, send it in. Do
15  you all agree to that?
16          (Jury nodding.)
17          THE COURT: Any objection?
18          MS. GROSS: No objection, your Honor.
19          MS. SANDS: No objection.
20          MR. COHEN: No objection.
21          THE COURT: All right. Go in and see what you want
22  to do about another question.
23          (The jury exited.)
24          THE COURT: My discussion was based on the case
25  cited on punitive as well as on the Kerman case, K-E-R-M-A-N.

PROCEEDINGS                 142

1  It's 374 F.3d 93. And it's at 124, the beginning discussion.
2          What is the Plaintiff's position with respect to
3  what I just told the jury?
4          MR. NORINSBERG: We have no objection. We feel it's
5  a proper statement of the law based on what you just read to
6  us in that case law.
7          THE COURT: What's the Defendant's position?
8          MS. SANDS: At this point, your Honor, Defendant's
9  position is that the jury doesn't understand what the -- they
10  don't understand the instruction. I don't know what their
11  question is going to be subsequently. We have to see. But
12  there's clearly an inconsistency here.
13          THE COURT: Do you object to what I just told them?
14  Do you want to consult with the other attorneys for a few
15  minutes?
16          MS. SANDS: Yeah, sure. Can we have a few minutes
17  outside the courtroom?
18          THE COURT: Yes. Try to be prompt because the jury
19  is talking about the same problem.
20          MS. SANDS: Yes.
21          (Whereupon, a discussion was held off the record.)
22          MS. GROSS: We're ready, your Honor.
23          THE COURT: I'll hear from the Defendant.
24          MS. GROSS: Your Honor, the defense does object to
25  the instruction as given. As we understand these cases -- and

PROCEEDINGS                 143

1  we have not briefed them at any length, and we're just seeing
2  Robinson now today -- my understanding of the case law is that
3  punitive damages are awardable in the absence of compensatory
4  damages so long as there has been a nominal damage award.
5          In Robinson, there was a two-dollar nominal damage
6  award, no compensatory given, punitive damages were given, and
7  the court affirmed it. Robinson predates Kerman. Kerman now
8  says no nominal damages where there's been a deprivation of
9  liberty. So you have to give a compensatory damage award if
10  there has been a deprivation. So the cases don't fit directly
11  together. So I think that to cite Robinson for the
12  proposition that one can award punitive damages in the absence
13  of compensatory damages is a misstatement of the law. There
14  has to have been an anchoring or nominal damage award to award
15  punitive damages in the absence of compensatory damages.
16          THE COURT: Well, my original approach to the case
17  without objection from any of the parties -- and I don't
18  criticize your work, of course, because it's been excellent --
19  was that without some damage award, whether it's called
20  "nominal" or "compensatory," I couldn't see punitive because
21  it just seemed contrary to basic jurisprudence, American
22  jurisprudence. The Supreme Court has been wrestling with this
23  punitive matter as a constitutional issue.
24          We have a note from the jury, punitive damages
25  follow-up. "Your Honor, we had reviewed the Packet 1 an

PROCEEDINGS                 144

1  additional time, and had found the wording in Section 4, Part
2  B to be confusing. We wanted to ask first before making our
3  ruling. You have since clarified the confusion."
4          I don't know whether they mean I've made it more
5  confusing, or less. In any event, that's what we have. So
6  apparently, they're satisfied with the instructions. How
7  would you like me to modify it for the Defendant?
8          MS. GROSS: We object to the instruction as it now
9  stands. We believe that there was a misstatement of the
10  law --
11          THE COURT: What would you like me to tell the jury
12  in answer to their two notes, Court Exhibit 9 and 10?
13          (Court Exhibit 10 was received into evidence, as of
14  this date.)
15          MS. GROSS: Well, I think we're in uncharted waters
16  here, your Honor.
17          THE COURT: We may be uncharted, but I must --
18          MS. GROSS: Yes, I agree.
19          THE COURT: -- make a decision based upon your
20  recommendations and my research. What shall I tell the jury?
21          MS. GROSS: We would submit that the instruction as
22  it originally stood, that punitive damages cannot be awarded
23  in the absence of compensatory damages, was the correct
24  statement of the law as a result of Robinson and Kerman read
25  together. We're in uncharted waters with respect to the

# A1224

PROCEEDINGS                                    145

1  nominal damages in the 1983 cases. I think the original
2  instruction as it stands is valid.
3       THE COURT:  Thank you. And the Plaintiff wants to
4  have stand what I just told them?
5       MR. COHEN:  Yeah.
6       THE COURT:  Bring in the jury.
7       Tomorrow, we can't start before 11. So if they want
8  to continue tomorrow, we'll start at 11. I will get to the
9  courthouse between 10:30 and 11. I have an important medical
10 appointment. I'm not sure exactly when the doctor will let me
11 go. So I won't be here possibly between 11 and 11:30, but I
12 can answer notes over the phone or otherwise. Any objection
13 to that?
14      MS. GROSS:  No, your Honor.
15      MR. NORINSBERG:  No objection.
16      (The jury entered.)
17      THE COURT:  Well, you're an excellent jury. And
18 what I now say should not be taken as criticizing you or
19 denigrating what you do at all because you've done just the
20 right thing. But you end by saying you have since clarified
21 the confusion. Does that mean that you're no longer confused
22 or that I've made it even more confusing?
23      THE JUROR:  All I was saying was that portion of the
24 testimony --
25      THE COURT:  Have I removed the confusion?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                    146

1       (Jury affirms.)
2       THE COURT:  Now, the second thing is, we can't start
3  tomorrow until 11. Do you want to continue tonight, or do you
4  want to come back at 11 tomorrow? Send in a note. Discuss it
5  among yourselves, and send in a note. I'll either let you go
6  home, or keep you a little longer if you're about to reach a
7  verdict, or you'll come in at 11 tomorrow.
8       (The jury exited.)
9       THE COURT:  Stand by.
10      (Court Exhibit 10 was received in evidence, as of
11 this date.)
12      (Recess.)
13      (Continued on the next page.)

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                    147

1  (Honorable Jack B. Weinstein takes the bench.)
2       THE COURT:  Sit down, please.
3       (The jury is in the courtroom at 4:40 p.m.)
4       THE COURT:  Be seated, please. Now, be here at
5  11:00 tomorrow.
6       I don't want you to discuss this case with anyone,
7  is that clear? I don't want you to do any research. Don't
8  read the news tonight or tomorrow morning, okay, and keep an
9  open mind. Until all of you are in the jury room, there will
10 be no deliberations.
11      Good night and have a pleasant evening.
12      JUROR:  Quick question. We leave all our stuff in
13 there, the paperwork?
14      THE COURT:  You can leave the paperwork, yes.
15      (Jury is out of the courtroom at 4: 41 p.m.)
16      (Proceedings adjourned until tomorrow, 4/26/12 at
17 11:00 a.m.)
18
19
20
21
22
23
24
25

MARY AGNES DRURY, RPR - Official Court Reporter

PROCEEDINGS                                    148

INDEX

| WITNESS | PAGE |
|---|---|
| Officer Sena | |
| Direct/Redirect | 21 |
| Cross | 28 |
| | |
| Mrs. Lamouse-Smith | |
| Direct/Redirect | 51/65 |
| Cross/Recross | 58/66 |

COURT EXHIBITS

| EXHIBIT NO. | PAGE |
|---|---|
| Exhibit 1 | |
| Exhibit 2 | |
| Exhibit 3 | |
| Exhibit 4 | |
| Exhibit 5 | |
| Exhibit 6 | |
| Exhibit 7 | |
| Exhibit 8 | |
| Exhibit 9 | |
| Exhibit 10 | |

MARY AGNES DRURY, RPR - Official Court Reporter

A1225

**-**

—————————x [2] 1/2 1/6

**.**

.38 [1] 23/13

**0**

0045 [1] 98/6
02714 [1] 1/4
0839 [1] 38/17

**1**

1,500 [1] 22/8
1-A [1] 101/18
1-B [1] 101/18
10 [7] 6/24 19/13 57/9 144/12 144/13 146/10 148/23
10 feet [1] 80/7
10 inches [1] 24/9
10-CV-02714 [1] 1/4
10-CV-2714 [1] 3/7
10-inches [1] 46/23
100 [1] 1/23
10007 [1] 1/23
10279 [1] 1/16
10:30 [1] 145/9
11 [9] 99/5 133/24 145/7 145/8 145/9 145/11 146/3 146/4 146/7
11:00 [2] 147/5 147/17
11:27 [1] 67/22
11:30 [1] 145/11
12 [2] 12/16 147/16
123 [1] 138/3
124 [1] 142/1
125 [1] 138/3
12:30 [1] 93/23
12:45 [1] 98/6
13 [2] 130/9 130/11
13 years [2] 32/5 43/23
14 [3] 7/3 17/23 37/12
147 [1] 135/22
15 [5] 30/11 36/23 50/25 101/19 102/9
15 minutes [1] 33/6
150 feet [1] 76/8
153 [1] 135/23
15th [3] 22/22 71/4 120/9
16 [4] 133/24 134/19 134/20 134/20
17 [2] 133/25 135/5
17th [1] 131/20
18 [1] 133/25
1800 [1] 1/16
19 [1] 45/9
1983 [7] 11/19 12/5 12/17 12/22 118/21 136/2 145/1
1998 [1] 135/23
1:15 [1] 94/5
1:20 [1] 95/3
1:53 [1] 113/24

**2**

2-A [1] 105/13
2-B [2] 105/14 105/14
2-foot-high [1] 25/8
20 [4] 62/2 62/11 62/11 72/24
2004 [2] 14/14 138/2
2006 [1] 61/3
2008 [13] 22/22 30/11 36/23 50/25 55/21 57/9 61/2 66/23 71/4 87/24 101/19 102/9 120/9
2009 [1] 86/3
2011 [1] 66/25
2012 [1] 1/7
20th [1] 131/16

21 [1] 148/5
233 [1] 1/16
24 [4] 8/25 26/15 26/15 89/10
240 [2] 21/23 22/3
2480 [1] 2/2
24th [1] 131/13
25 [1] 1/7
25 feet [2] 76/12 82/3
250 [3] 21/23 22/3 99/6
2582 [1] 2/2
2714 [1] 3/7
275 [1] 14/14
28 [1] 148/6
282 [1] 14/14
2:35 [1] 37/13

**3**

33 [1] 75/15
373 [1] 14/13
374 [2] 138/1 142/1
38 [2] 26/7 55/23
3A [3] 130/7 130/9 130/11

**4**

4/26/12 [1] 147/16
41 [1] 147/15
42 [1] 118/21
4:30 [1] 131/1
4:40 [1] 147/3
4A [1] 7/8
4B [1] 7/8

**5**

50 [4] 52/13 55/12 68/4 87/13
50/50 [1] 87/13
51/65 [1] 148/9
58 [1] 72/23
58/66 [1] 148/10
5A [1] 7/9
5B [1] 7/11

**6**

6 a.m [3] 37/5 38/6 103/17
613-2480 [1] 2/2
613-2582 [1] 2/2
65 [1] 148/9
66 [2] 80/21 148/10

**7**

718 [2] 2/2 2/2
77 [9] 23/1 23/2 23/3 25/2 33/9 33/13 34/17 34/24 39/1
7th [1] 40/15

**8**

83rd [1] 103/12
84th [2] 21/15 22/18
8:30 [1] 33/13
8:30 a.m [1] 34/25
8:39 [1] 38/20

**9**

93 [2] 138/2 142/1
9:30 [1] 1/8

**A**

a.m [8] 1/8 34/25 37/5 38/6 67/22 98/7 103/17 147/17
ability [2] 111/8 117/19
able [7] 3/21 14/2 17/12 65/2 89/17 114/6 114/7
about [79] 15/17 15/22 17/11 17/12 22/1 26/16 30/3 40/19 41/15 59/11 61/14 62/5 62/6 62/22 63/2 71/16 72/5 72/22 73/14 75/2

75/6 76/5 76/9 78/3 82/5 82/6 83/2 84/11 84/12 86/3 88/14 89/21 90/10 91/2 91/18 91/23 92/4 92/4 92/16 92/17 92/19 93/25 96/17 98/1 98/12 99/20 100/2 101/3 102/7 102/24 104/11 104/20 104/21 105/16 107/14 107/16 108/24 109/21 110/2 110/5 110/13 110/20 111/5 111/13 111/24 112/20 113/10 114/21 115/1 117/19 118/5 125/7 125/16
137/19 138/13 139/12 141/22 142/19 146/6
above [4] 6/19 7/4 24/3 96/22
absence [5] 136/3 143/3 143/12 143/15 144/23
absolute [3] 12/17 13/8 13/12
absolutely [4] 12/25 14/7 84/7 99/24
Academy [1] 53/22
accepted [1] 55/8
accident [1] 119/23
according [3] 37/18 103/1 120/23
accordingly [1] 127/9
accountable [8] 75/25 79/8 88/3 92/18 93/16 112/23 112/24 113/17
accredited [1] 53/25
accuracy [1] 126/23
accurate [4] 6/21 13/15 107/7 125/2
accused [2] 16/5 124/5
Acevedo [2] 37/10 37/10
acknowledged [1] 84/19
across [1] 76/8
act [7] 119/21 119/25 124/15 125/14 125/15 125/15 125/18
acted [5] 106/4 119/13 124/7 127/17 127/24
acting [3] 119/2 119/15 120/3
action [4] 14/24 28/22 28/24 59/4
actionable [1] 12/5
actions [4] 12/25 117/17 123/6 126/6
activity [2] 13/5 13/11
acts [6] 10/23 119/19 120/21 124/4 124/5 125/11
actual [5] 72/23 72/25 73/9 75/15 111/16
actually [54] 11/2 14/2 31/3 32/12 33/2 33/5 46/9 59/14 60/2 61/2 61/3 72/19 73/13 74/17 76/4 76/6 76/9 77/5 77/16 78/9 80/4 80/6 80/18 81/12 81/21 82/11 82/15 82/24 83/3 83/10 83/12 87/11 88/7 88/10 88/17 89/11 90/6 91/7 91/10 92/4 92/7 92/25 93/15 102/22 104/2 110/3 111/3 111/17 112/2 112/13 114/10 125/16 136/18 136/22
add [3] 6/25 7/9 10/13
added [3] 13/18 15/5 15/22
addition [8] 10/20 12/18 13/17 52/5 52/7 52/18 53/10 55/15
additional [4] 10/5 11/16 127/12 144/1
address [3] 10/4 110/6 136/7
addressing [1] 95/16
adheres [1] 25/13
adjourned [1] 147/16
admit [4] 49/14 74/5 74/9 87/11
admits [2] 74/6 82/15
admitted [4] 87/2 96/19 133/15 133/16
admonish [1] 16/16
adopt [1] 89/24
adopted [1] 35/19
advance [2] 60/7 61/8
advised [1] 69/8
affirm [1] 130/18
affirmative [2] 7/5 20/18
affirmed [1] 143/7
affirms [1] 146/1
after [19] 6/17 17/23 27/23 33/6 33/14 79/6 88/16 89/25 90/2 91/7 93/25 94/1 105/17 106/14 109/1 115/2 126/19 128/12 140/15
afternoon [2] 95/6 95/7
again [27] 15/4 15/8 38/1 41/15 42/5 42/9

**A**

again... |21| 43/1 43/17 69/14 75/14 82/17
86/9 86/10 88/24 90/20 98/3 99/4 99/15
106/22 107/10 108/9 108/12 109/6 112/11
138/6 140/17 141/12
against |20| 3/7 6/4 13/4 15/15 58/9 69/6
69/23 87/5 115/24 118/22 118/25 121/22
123/2 123/6 124/10 127/16 128/2 128/4
129/21 129/22
agency |1| 54/6
ago |14| 30/7 31/20 41/17 63/3 83/21 95/17
95/25 95/25 99/15 109/17 109/19 109/21
112/21 125/5
agree |7| 43/9 43/10 77/6 116/20 141/10
141/15 144/18
agreed |5| 73/4 77/9 130/22 136/15 138/22
agrees |1| 13/22
ahead |3| 61/22 82/3 89/11
aided |1| 2/5
all |98| 3/2 5/15 6/6 6/16 6/17 7/3 9/19 14/3
14/22 16/7 17/24 18/8 36/12 36/15 45/13
45/19 47/9 49/1 52/17 55/14 58/25 60/25
66/12 66/12 67/18 67/18 68/5 70/20 72/13
72/16 78/7 78/13 78/13 78/14 80/4 80/12
83/10 83/11 83/13 84/6 85/6 85/8 85/20 86/1
86/12 87/4 88/2 88/24 89/23 90/4 91/1 91/5
91/16 91/23 93/17 94/3 100/5 100/14 104/23
107/20 109/20 111/3 111/8 113/5 113/6
113/12 114/2 114/7 115/9 116/19 116/24
117/21 118/3 118/13 120/22 121/21 123/22
128/3 129/15 132/1 132/3 132/5 132/23
133/16 133/17 134/14 134/15 135/7 135/12
139/10 140/12 141/10 141/15 141/21 145/19
145/23 147/9 147/12
alleged |2| 60/11 124/3
allow |5| 25/25 43/16 49/18 65/15 66/9
allowed |2| 69/24 112/5
alma |1| 53/20
almost |5| 72/6 107/24 109/12 109/13
117/10
alone |1| 89/3
along |5| 83/11 83/13 90/9 111/3 114/3
alongside |1| 8/1
already |8| 4/21 38/22 38/22 42/2 62/14
104/15 114/15 125/4
also |30| 10/14 19/21 31/8 39/8 39/13 39/18
40/14 41/13 48/10 49/11 50/3 50/23 53/18
56/22 59/16 59/25 64/16 69/13 74/10 78/3
80/14 95/13 99/13 100/4 108/5 111/13
112/10 118/13 127/10 127/23
alternative |2| 4/8 8/10
although |1| 6/10
always |1| 107/22
am |5| 21/9 52/2 61/17 85/21 126/1
ambiguous |1| 12/9
amenable |1| 27/7
amend |1| 14/18
Amendment |1| 120/10
American |2| 53/22 143/21
among |2| 121/14 146/5
amount |12| 7/10 28/2 56/15 56/17 56/24
63/13 63/14 63/17 99/19 111/4 116/8 128/5
amounts |2| 18/22 60/20
analyses |1| 22/7
analysis |15| 21/25 27/25 52/6 54/15 54/18
54/19 54/22 55/1 55/4 55/6 55/9 55/19 55/22
82/19 82/24
analyst |3| 52/25 53/11 54/20
analysts |1| 18/21
analyze |3| 37/7 70/7 117/9
analyzed |1| 27/24
anchoring |1| 143/14

angle |1| 76/16
annex |9| 23/1 23/3 25/2 33/9 33/13 34/17
34/24 39/1 40/15
another |1| 5/13 38/8 44/7 53/1 54/6 67/1
73/16 79/6 79/18 81/14 88/9 97/23 97/23
97/25 98/10 98/23 98/25 121/17 139/21
141/22
answer |44| 5/6 7/3 17/24 30/16 32/19 33/1
42/4 47/3 47/3 49/23 50/19 61/23 64/7 64/9
65/4 65/6 67/8 72/7 72/8 72/10 72/14 72/23
73/1 75/18 79/11 80/24 80/25 89/22 91/4
91/5 91/15 97/14 97/16 97/18 97/19 101/11
101/20 116/20 117/7 128/24 129/16 141/7
144/12 145/12
answered |3| 42/2 97/9 117/6
answering |8| 34/3 34/5 37/14 37/17 37/21
37/23 37/25 38/1
answers |3| 89/23 91/16 129/15
anti |1| 23/4
anti-crime |1| 23/4
Anticrime |1| 101/4
any |72| 7/1 9/23 10/9 12/17 12/21 16/1
17/17 18/23 19/18 30/10 36/13 47/19 51/1
51/3 51/5 53/21 54/15 54/21 56/20 62/5 62/6
65/22 66/1 67/13 67/15 70/8 75/12 80/22
82/10 83/8 85/21 88/4 90/4 93/6 93/8 93/12
96/17 97/16 97/19 97/21 106/7 107/11 111/1
114/20 114/23 115/1 119/3 119/4 119/6
119/8 119/23 122/12 125/25 126/5 126/17
126/18 127/6 127/8 128/1 129/16 129/17
129/23 135/20 137/9 138/9 139/12 141/17
143/1 143/17 144/5 145/12 147/7
anybody |3| 64/1 128/7 139/12
anyone |3| 17/18 78/23 147/6
anything |15| 9/7 11/20 15/20 16/10 17/10
33/10 33/16 62/22 78/4 80/19 90/6 91/9
114/22 118/1 128/10
anyway |2| 87/13 110/18
anywhere |1| 77/12
apart |1| 86/12
apparently |1| 144/6
Appeals |2| 12/19 14/9
appearance |1| 56/12
appeared |5| 52/11 69/16 79/17 79/17
117/16
appearing |1| 52/8
applicable |1| 14/3
applying |1| 118/12
appointment |1| 145/10
appreciate |1| 132/7
approach |10| 4/6 5/9 7/20 7/24 7/25 8/5 8/7
23/17 36/25 143/16
approaching |1| 8/14
appropriate |5| 5/16 15/19 17/3 69/7 138/23
approve |1| 62/20
approximate |1| 33/8
approximately |15| 21/22 21/24 22/6 24/8
26/14 33/5 33/13 34/24 46/22 46/24 52/13
52/22 55/5 55/12 88/15
approximation |1| 22/2
April |5| 1/7 8/25 131/13 131/16 131/20
April 17th |1| 131/20
April 20th |1| 131/16
April 24th |1| 131/13
are |101| 6/11 8/1 8/2 11/7 12/3 12/4 15/17
21/11 21/16 24/24 26/3 27/7 28/16 30/21
30/25 31/4 32/20 33/17 33/19 33/21 34/4
34/10 38/22 40/10 43/19 47/15 49/1 51/18
51/20 52/8 53/21 54/3 54/7 57/22 59/4 60/13
60/20 62/7 65/11 65/17 66/22 71/5 72/6 72/6
73/18 77/21 79/3 79/3 81/6 81/19 84/4 84/18
85/7 87/13 87/13 89/10 90/12 90/18 90/22
92/5 92/6 95/23 99/14 100/6 100/8 101/1

105/13 107/22 108/24 109/19 109/25 112/3
113/12 113/14 113/18 113/19 115/4 115/12
115/12 117/13 118/14 118/20 119/1 121/16
123/2 123/3 123/16 124/8 125/24 128/4
128/24 130/16 133/14 133/15 134/2 134/14
136/13 138/5 138/8 143/3 147/9
area |4| 46/8 84/10 84/11 89/9
areas |5| 27/15 27/17 27/18 27/20 44/13
aren't |2| 43/21 73/7
argue |5| 15/1 15/19 16/7 17/12 17/14
argument |8| 3/25 16/19 16/25 88/6 91/3
92/1 93/4 109/20
around |8| 21/23 22/8 24/9 33/13 61/8 85/6
85/9 132/16
arrest |46| 4/12 7/23 9/13 9/23 28/8 33/6
68/5 68/8 68/18 68/19 77/4 78/16 91/22 92/7
92/9 96/12 96/14 96/20 98/7 101/9 101/11
103/11 103/23 105/17 106/22 113/15 115/18
116/16 116/17 120/25 121/1 121/3 121/4
121/8 121/13 121/15 121/20 121/23 122/1
122/4 122/8 122/9 122/11 128/25 129/2
138/7
arrested |12| 90/23 100/19 101/8 101/18
103/25 116/4 120/3 120/8 120/9 120/11
139/20 140/12
arresting |9| 42/12 71/22 77/1 77/2 77/3
82/9 82/19 86/8 109/25
arrests |1| 89/12
arrive |1| 43/4
arrived |6| 25/2 34/24 38/11 38/21 39/5
39/9
as |141| 3/17 4/2 4/9 4/16 4/18 4/23 5/8 5/17
7/7 8/12 9/16 10/17 10/17 12/2 12/18 13/6
13/14 14/4 14/7 14/21 17/22 20/24 21/18
21/20 27/10 31/17 32/11 33/11 34/22 35/8
35/23 37/25 42/2 45/6 45/23 49/2 51/10 52/7
52/8 52/24 53/1 53/19 53/19 55/8 55/18 58/1
62/1 62/7 63/2 63/2 63/6 63/22 64/19 66/17
66/17 68/6 68/6 69/3 69/4 71/8 71/15 71/17
71/25 71/25 72/2 75/18 75/20 82/17 83/25
85/13 86/15 91/9 92/25 95/11 95/11 95/24
97/12 97/20 98/5 101/2 103/24 104/15 106/5
106/12 106/25 107/21 110/7 112/7 114/9
114/16 115/8 115/11 117/11 117/25 118/8
118/12 118/14 118/14 118/24 120/2 121/20
126/7 126/14 126/15 126/23 126/25 126/25
127/1 127/14 127/18 131/8 131/10 131/14
131/18 131/22 133/6 133/7 133/19 133/20
135/11 135/13 135/16 135/24 135/24 139/4
139/18 140/15 140/15 141/25 141/25 142/25
142/25 143/4 143/23 144/8 144/13 144/21
144/24 145/2 145/18 146/10
aside |1| 114/20
ask |31| 8/1 9/15 14/18 16/18 17/5 35/22
37/21 61/19 61/23 62/12 62/22 66/14 69/23
82/10 93/16 103/24 104/23 105/12 105/15
106/10 106/23 112/5 113/11 113/20 114/11
128/10 130/22 132/15 135/7 141/10 144/2
asked |17| 4/1 4/13 8/4 42/1 65/18 66/1 72/6
73/2 74/10 78/3 97/5 97/8 97/13 100/15
108/18 128/16 129/8
asking |8| 8/17 73/15 85/21 85/21 88/2
127/10 135/12 137/21
asks |1| 38/3
assaults |2| 52/16 57/3
assess |3| 128/1 128/3 129/17
assessed |1| 128/4
assigned |2| 21/11 21/12
assist |2| 114/16 123/25
assistance |1| 123/12
Assistant |1| 53/15
associate |10| 53/22 68/15 89/25 100/3
100/3 100/5 100/6 102/17 102/17 103/2

**A**

associate's [1] 102/25
associations [1] 53/21
assume [1] 120/19
assuming [2] 37/15 139/16
attach [1] 25/10
attack [3] 12/24 95/19 96/11
attempt [3] 44/10 97/7 117/12
attempts [1] 17/17
attention [10] 11/2 22/21 39/12 55/21 59/6 70/16 89/10 95/9 95/12 109/6
attorney [9] 1/22 73/8 73/16 73/18 105/24 111/14 111/19 122/20 124/14
attorney's [6] 53/16 53/19 68/24 104/19 105/18 105/25
attorneys [9] 1/15 70/6 88/16 91/24 114/15 129/23 132/16 141/13 142/14
attributable [2] 129/19 129/20
audit [1] 54/7
aunt's [1] 110/19
available [2] 42/24 43/3
award [19] 126/4 127/11 127/11 127/18 127/19 127/20 127/23 135/18 137/10 137/22 139/5 141/6 143/4 143/6 143/9 143/12 143/14 143/14 143/19
awardable [1] 143/3
awarded [3] 7/10 136/3 144/22
awarding [1] 126/21
awards [2] 136/4 140/1
aware [9] 28/24 29/2 32/23 59/20 84/19 110/19 122/5 122/6 122/19
away [9] 64/4 76/6 76/8 76/12 76/18 80/7 85/3 87/16 87/23

**B**

B-U-C-K-L-E-Y [1] 13/1
Bachelor's [1] 53/4
back [24] 27/19 46/7 46/11 46/21 54/25 64/19 69/23 70/9 70/24 71/16 71/21 76/10 76/12 93/24 100/5 100/7 100/20 103/13 103/14 126/9 128/9 128/9 141/9 146/4
background [2] 72/17 114/22
backgrounds [2] 118/11 118/15
backwards [1] 81/12
bad [1] 78/19
bag [1] 137/3
balanced [1] 115/13
Baltimore [3] 52/19 53/1 55/16
bar [3] 129/23 130/2 130/4
barrel [4] 44/15 44/16 44/17 83/5
base [1] 24/24
based [18] 6/16 12/17 21/14 23/5 25/25 26/2 68/17 69/2 69/14 69/16 69/16 114/19 115/21 123/22 127/21 141/24 142/5 144/19
basic [3] 81/18 81/20 143/21
basically [2] 53/9 138/17
basing [1] 18/24
basis [4] 8/13 18/23 24/18 124/20
Bates [1] 45/11
be [153]
because [61] 9/21 13/24 16/8 30/10 30/25 32/8 32/24 37/16 37/19 39/5 41/8 42/25 69/14 71/11 76/18 77/14 77/25 78/19 78/20 81/14 82/1 82/23 82/25 86/7 86/8 86/9 86/10 86/12 87/25 88/19 90/13 91/12 95/22 96/12 99/1 101/8 103/16 103/21 103/22 104/8 104/9 106/17 106/19 107/17 107/25 108/7 108/10 111/25 115/4 115/18 118/14 119/22 121/8 126/1 129/16 141/2 141/13 142/18 143/18 143/20 145/19
become [1] 53/7
been [50] 4/22 9/21 10/16 15/8 15/9 15/12

20/23 24/25 29/3 35/8 41/3 51/9 52/22 54/4 55/2 55/8 56/20 57/25 58/8 58/20 60/23 61/8
63/24 63/25 64/1 65/18 68/16 69/18 70/16 78/25 83/13 85/3 86/4 87/22 96/9 100/19 100/20 100/21 105/10 112/23 112/24 113/9 120/5 121/9 143/4 143/8 143/10 143/14 143/18 143/22
before [27] 1/10 5/23 6/8 9/1 19/8 33/16 52/25 59/8 69/25 70/13 71/16 72/16 79/17 80/17 80/22 83/19 85/3 93/10 102/18 104/2 106/6 118/9 122/1 136/8 137/17 144/2 145/7
began [2] 52/24 56/8
begin [2] 128/6 141/12
beginning [5] 6/25 8/21 87/1 98/15 142/1
behalf [2] 70/14 95/10
beheld [1] 12/23
being [16] 9/21 16/5 17/12 25/13 51/12 58/9 58/9 59/24 64/19 64/22 72/6 92/16 97/12 112/18 121/12 136/23
belief [4] 69/17 69/17 101/13 121/12
believe [34] 6/9 6/10 8/21 8/25 9/20 12/7 14/23 28/20 28/23 31/4 31/12 44/1 44/23 74/25 87/20 90/5 91/7 91/10 91/14 95/20 96/15 107/6 107/17 108/9 109/5 112/4 118/11 123/17 134/17 134/25 137/1 138/12 138/16 144/9
believed [5] 83/14 90/7 101/13 111/6 123/24
believes [1] 8/12
bench [4] 3/5 95/2 130/5 147/1
best [2] 70/19 78/22
better [2] 88/18 112/9
between [5] 26/14 58/10 81/7 145/9 145/11
beyond [3] 79/14 101/24 131/1
big [4] 83/12 88/20 98/16 98/17
biochemistry [1] 53/12
biology [3] 51/24 53/4 53/12
bit [2] 85/5 110/1
black [1] 24/7
blame [1] 78/6
blank [5] 73/3 78/3 96/15 96/16 96/25
blow [1] 83/16
blowup [4] 134/4 134/12 134/20 135/6
blowups [4] 114/8 133/14 133/17 134/16
boasts [1] 61/14
Bode [1] 52/24
bolster [1] 88/18
book [11] 45/18 78/17 78/23 78/25 79/3 98/2 98/3 98/6 98/9 135/2 135/3
boroughs [2] 52/17 55/15
both [14] 13/25 52/17 53/16 68/6 87/5 87/6 87/10 100/19 117/7 121/15 123/23 126/25 128/2 132/8
bother [2] 49/11 49/24
bothered [1] 83/5
bottom [8] 6/24 13/18 25/11 35/17 35/18 50/25 84/7 90/17
box [9] 36/25 38/3 38/8 38/16 39/8 39/11 77/6 82/13 82/14
boxes [4] 36/20 36/22 39/13 39/20
breach [1] 138/18
break [6] 67/19 67/21 89/22 93/24 93/25 99/25
brief [10] 3/10 3/18 3/19 5/20 7/17 7/18 99/17 109/13 131/6 138/8
briefed [1] 143/1
briefly [5] 3/23 7/14 16/13 65/23 90/19
bring [8] 60/10 70/2 124/3 136/5 138/15 138/24 139/1 145/6
bringing [1] 125/16
Broadway [1] 1/16
Bronx [1] 53/19
Brooklyn [5] 1/6 21/12 21/15 43/21 101/4
brought [1] 115/24

BRT [1] 52/25
brutish [1] 108/1
Buckley [1] 13/1
buddy [1] 86/18
build [2] 46/25 47/1
building [2] 1/15 23/5
bulging [1] 76/8
bullet [1] 112/18
bullets [17] 24/4 26/23 46/20 48/17 48/21 49/12 49/15 49/25 50/4 50/9 50/15 50/18 83/8 83/9 112/14 112/14 112/16
bump [1] 26/9
bumpy [1] 26/5
bunch [1] 87/9
Burbridge [36] 3/9 6/5 6/7 28/9 29/4 32/24 40/22 41/13 41/24 42/3 48/20 68/11 68/23 79/15 81/13 88/21 89/20 89/22 95/11 99/8 100/18 102/12 103/7 103/25 105/7 105/14 109/8 112/2 118/23 125/12 129/2 129/6 129/12 129/19 129/21 129/22
burden [14] 92/7 92/9 92/10 92/12 92/13 106/4 115/7 115/13 115/14 116/14 116/16 122/8 122/9 125/19
burglaries [2] 21/18 31/5
business [3] 35/6 66/24 79/9
busy [1] 78/12
but [1] 79/4
buying [1] 79/3

**C**

C-A-T-T-A-R-A-U-G-U-S [1] 135/22
C1 [2] 23/20 134/7
caliber [1] 55/23
call [10] 20/19 20/20 22/24 34/4 83/19 83/20 88/22 90/18 128/9 141/14
called [26] 12/23 30/22 30/25 31/1 31/4 33/3 33/5 34/19 44/21 49/2 49/2 51/1 51/9 56/22 58/20 59/3 59/6 59/24 62/23 63/24 63/25 64/1 77/6 88/25 118/21 143/19
Calling [1] 3/6
callous [1] 127/22
came [10] 73/12 76/2 77/14 85/3 85/17 89/23 100/13 100/24 110/23 112/7
camera [2] 24/16 24/17
can [84] 3/24 6/17 8/15 12/2 14/18 14/21 15/1 15/19 16/7 19/2 19/8 19/13 20/9 22/2 30/16 32/11 37/1 37/8 38/8 38/18 40/24 42/4 46/2 46/5 46/9 47/3 53/3 53/24 60/13 61/15 65/12 66/13 67/6 70/15 70/19 72/2 75/23 75/24 75/25 79/7 79/8 79/22 80/9 83/24 84/6 84/14 84/22 92/25 93/3 93/5 93/8 93/12 99/4 99/25 110/2 110/8 110/20 111/20 114/15 117/15 117/22 118/3 120/19 120/22 124/7 125/13 126/9 128/10 132/11 132/15 132/22 135/18 137/17 137/21 139/5 140/1 140/2 140/2 141/1 141/5 142/16 143/12 145/12 147/14
can't [19] 13/25 14/1 14/12 59/20 72/10 72/13 74/5 74/9 74/18 81/18 81/20 81/24 93/15 97/18 104/8 107/13 109/17 145/7 146/2
cannot [10] 16/18 69/3 93/15 105/2 105/3 107/11 122/22 140/8 140/18 144/22
capacity [3] 5/25 52/8 52/12
capital [1] 77/20
car [12] 76/10 79/24 80/7 80/7 84/13 84/20 84/21 84/22 85/1 85/2 86/16 100/13
care [1] 110/20
career [3] 47/8 52/24 89/13
careful [3] 47/20 95/9 95/12
carefully [4] 70/8 85/22 93/18 109/4
Carriere [1] 14/13
carrying [3] 71/7 100/7 100/9

## C

cartridges [13] 24/3 24/4 26/22 26/25 27/6
27/7 46/16 50/21 50/23 64/22 64/25 65/3
65/5
case [124] 4/20 8/2 8/9 12/1 14/22 15/9
15/15 18/13 18/17 19/4 22/22 25/11 26/8
27/3 28/1 30/3 31/14 32/16 32/20 33/2 34/22
35/15 38/22 38/24 40/7 40/19 46/20 52/6
56/9 57/14 57/15 57/20 58/21 58/25 59/7
59/12 59/14 59/20 60/19 61/9 62/25 64/1
64/4 66/18 66/22 68/6 68/7 70/17 70/18
70/21 71/1 71/2 71/3 71/7 71/21 71/23 75/2
76/21 77/22 79/5 82/22 82/23 83/6 83/16
83/17 83/22 86/2 86/4 86/7 86/11 86/12
86/25 87/12 88/14 88/17 88/20 89/15 89/18
90/4 91/23 92/3 92/16 92/16 92/17 94/1
95/13 95/15 96/3 101/1 101/2 101/3 101/7
101/23 101/23 101/24 102/1 106/20 107/15
110/3 112/9 112/15 114/16 115/2 115/10
116/2 116/19 117/14 117/21 121/21 122/9
128/2 136/18 136/23 137/3 137/14 137/15
137/16 138/13 138/16 141/25 142/6 143/2
143/16 147/6
cases [22] 6/10 6/11 13/3 16/24 21/22 21/23
52/14 52/15 52/16 54/9 54/13 54/16 57/2
59/19 60/23 71/5 114/10 136/2 141/24
142/25 143/10 145/1
casings [1] 46/16
CASTRO [3] 1/25 51/17 65/25
Cattaraugus [1] 135/22
caught [1] 100/9
cause [49] 5/1 6/14 6/16 6/19 9/12 9/18 9/22
9/24 13/19 14/17 14/20 59/3 68/8 68/18
101/11 101/12 102/8 103/23 104/15 106/22
110/8 110/10 110/21 116/15 116/17 119/19
121/2 121/4 121/8 121/15 121/16 121/19
121/23 122/3 122/8 122/9 123/4 123/11
123/14 123/20 123/22 123/25 124/10 124/12
124/15 125/12 125/13 130/19 139/19
caused [4] 125/14 126/6 140/10 140/22
causes [1] 119/6
causing [1] 125/16
cell [1] 27/16
central [1] 71/3
certain [2] 38/23 76/5
certainly [2] 12/9 137/16
certified [1] 66/25
cetera [1] 140/12
challenge [1] 14/2
challenged [2] 8/16 8/20
challenging [1] 5/14
chance [5] 82/25 90/21 96/20 98/3 113/2
change [13] 5/2 5/21 7/11 10/5 17/9 26/16
75/7 76/15 79/10 80/11 81/5 90/3 128/12
changed [1] 76/16
changes [4] 3/24 6/18 10/2 73/10
changing [5] 84/3 85/23 86/9 86/10 109/22
charge [17] 4/18 5/21 9/16 10/14 13/14 16/8
17/8 17/12 18/9 18/12 69/2 69/16 94/3
113/23 131/6 137/7 139/4
charged [1] 71/8
charges [5] 16/3 106/19 115/21 121/22
124/10
check [4] 98/23 98/23 103/24 105/15
checked [3] 40/2 82/14 99/8
checks [1] 37/14
Chicago [1] 53/6
chief [9] 18/21 18/25 51/23 51/25 52/9 52/20
53/24 68/6 68/7
chooses [1] 84/16
chosen [1] 15/13
Church [1] 1/23

circled [2] 48/1 48/2
Circuit [10] 6/10 6/11 14/8 14/14 135/21
135/23 137/1 137/2 137/4 138/2
circumstances [9] 9/19 13/14 42/22 43/5
122/13 123/15 126/23 129/14 130/14
circumvented [1] 12/19
citation [1] 137/24
cite [2] 137/3 143/11
cited [1] 141/25
Citing [1] 13/1
citizen [1] 119/6
city [12] 1/5 1/22 3/7 16/24 17/2 21/9 52/18
52/19 55/15 55/16 83/4 136/11
civil [9] 3/6 12/24 28/21 28/24 76/2 79/18
118/22 118/24 118/25
claim [34] 12/17 12/22 12/24 13/3 16/11
68/5 68/19 68/23 69/5 79/5 82/4 92/13 101/9
101/9 101/10 102/6 104/2 104/11 104/12
104/18 104/21 106/3 106/25 107/9 115/10
116/16 118/24 119/12 120/7 124/14 124/17
124/18 124/23 136/21
claimed [5] 111/3 120/20 122/16 122/17
126/14
claiming [4] 12/19 32/24 83/11 106/25
claims [13] 5/4 6/25 44/8 80/15 88/19 92/10
115/17 116/15 118/20 120/8 125/24 126/4
126/15
clarification [1] 7/11
clarified [2] 144/3 145/20
clasp [1] 25/10
clause [2] 11/9 11/16
clean [1] 88/23
clear [10] 4/18 16/11 67/3 72/5 102/23
115/15 116/12 127/3 135/21 147/7
clearly [3] 12/2 85/17 142/12
client [4] 15/24 16/16 95/10 136/14
cling [1] 96/7
close [2] 19/4 97/21
closest [1] 97/17
closing [8] 4/20 5/10 5/14 16/25 17/17 91/3
95/5 109/11
closings [1] 117/13
CLR [1] 2/1
co [4] 3/13 3/17 95/11 101/2
co-counsel [4] 3/13 3/17 95/11 101/2
Code [1] 118/21
COHEN [5] 1/14 1/18 58/17 66/6 66/16
coherent [1] 70/25
cold [1] 58/2
colleagues [1] 74/12
collect [11] 21/20 25/2 25/3 31/1 31/9 31/14
34/14 40/6 42/25 43/6 47/17
collected [14] 27/13 27/14 27/22 34/8 39/14
39/20 40/22 41/2 41/19 41/21 41/21 42/6
42/11 103/19
collection [22] 21/12 21/14 21/17 22/9 22/10
22/12 22/17 26/13 30/22 33/17 33/19 33/21
33/23 34/13 35/12 35/14 41/8 41/16 42/9
42/13 44/2 98/22
College [2] 53/4 53/20
color [4] 119/2 119/3 119/15 120/3
Columbia [1] 119/5
combined [1] 4/25
come [30] 22/23 23/14 24/15 34/14 37/7
44/2 54/6 69/23 70/22 72/12 78/1 79/3 79/12
79/13 80/4 80/6 80/15 84/6 90/18 100/7
104/20 109/4 109/18 115/1 128/17 130/4
135/7 141/12 146/4 146/7
comes [15] 16/5 37/14 46/15 71/3 72/11
72/13 72/15 74/20 82/14 84/22 89/4 89/16
100/5 128/15 136/8
comfortable [1] 92/12
coming [9] 76/19 84/19 84/20 85/2 85/12

86/16 90/12 100/6 100/8
commenced [1] 123/9
commencement [1] 123/5
commit [3] 16/4 16/5 86/22
committed [4] 9/21 119/15 121/12 123/18
committing [1] 101/14
common [6] 76/21 84/11 85/14 85/25 113/13
126/22
communicate [3] 117/1 128/6 128/9
company [1] 55/2
compelled [1] 14/10
compensate [1] 126/5
compensation [2] 136/21 137/11
compensatory [32] 7/7 15/21 92/14 126/3
126/8 126/21 127/11 129/19 135/19 136/1
136/3 136/12 138/12 138/14 139/6 139/23
140/2 140/3 140/8 140/16 140/18 140/19
141/1 141/3 141/6 143/3 143/6 143/9 143/13
143/15 143/20 144/23
complained [1] 119/15
complaint [13] 78/4 78/5 78/6 78/11 78/16
82/12 98/13 111/16 111/16 111/18 111/19
134/23 135/4
complete [4] 85/24 134/18 134/19 138/8
completed [1] 103/15
completely [6] 64/4 71/1 72/8 79/16 93/14
112/1
component [2] 106/2 106/3
Computer [1] 2/5
Computer-aided [1] 2/5
computerized [1] 2/5
conceal [1] 85/7
concentration [1] 75/4
concerning [1] 12/22
conclude [2] 88/13 110/11
conclusion [2] 50/12 109/5
conclusions [1] 3/23
conducive [3] 26/6 26/10 27/10
conduct [9] 54/21 55/22 55/25 56/1 119/14
119/16 122/3 125/22 127/15
conducted [3] 22/13 22/14 56/4
conducting [1] 13/5
conferred [3] 40/15 40/17 40/21
confine [1] 120/11
confinement [5] 120/14 120/15 120/16
120/17 138/10
conflicted [1] 81/4
conflicts [1] 81/7
confuse [1] 14/4
confused [1] 145/21
confusing [6] 5/19 6/1 6/11 144/2 144/5
145/22
confusion [3] 144/3 145/21 145/25
connecting [1] 84/8
connection [2] 45/2 59/24
conscience [1] 90/13
conscious [2] 119/25 120/14
consent [1] 120/15
consequence [1] 125/18
consequences [1] 120/1
consider [11] 10/17 109/4 113/5 115/2 116/8
117/15 117/22 118/7 120/22 121/20 141/9
consideration [2] 115/6 126/25
considerations [1] 118/13
considered [4] 10/23 120/4 120/5 120/22
considering [2] 115/9 128/13
consist [1] 56/6
consistent [5] 72/1 96/3 96/10 97/10 99/16
conspired [1] 12/20
constitution [5] 119/10 119/17 119/18
120/10 124/22
constitutional [14] 116/1 116/6 119/1 120/6
124/18 124/19 129/9 129/13 130/12 136/12

**C**

constitutional... [4] 136/14 138/18 139/7 143/23
consult [2] 141/13 142/14
consulted [1] 69/8
contact [1] 44/10
contacted [1] 89/14
contains [1] 36/1
contaminate [1] 31/17
contaminates [1] 34/13
contend [1] 121/4
contends [1] 121/7
context [1] 17/4
continue [11] 12/12 17/24 49/9 92/1 93/4 93/25 104/25 124/10 130/25 145/8 146/3
continued [9] 1/10 29/6 67/23 94/7 113/25 123/2 123/9 126/19 146/13
continues [3] 81/11 124/1 124/2
contradict [1] 71/12
contradicted [1] 117/22
contradicts [1] 19/1
contrary [1] 143/21
contravention [2] 4/7 4/9
contribute [1] 57/22
control [1] 18/19
convenient [1] 130/20
conversation [2] 41/15 79/22
conversing [1] 44/6
cooperation [1] 132/7
cop [3] 85/1 85/2 86/16
copies [2] 90/20 94/4
cops [3] 84/18 86/19 90/10
copy [5] 45/14 45/15 60/9 60/10 66/25
corner [1] 38/11
correct [72] 5/10 5/11 14/5 28/19 28/22 29/4 29/5 30/5 30/6 30/11 30/23 31/6 31/7 31/10 32/9 32/13 32/18 33/7 34/8 34/17 34/22 35/3 36/20 36/23 38/4 39/6 39/18 40/4 41/8 41/11 43/14 44/11 44/13 45/3 47/9 47/21 48/13 49/12 49/13 49/25 50/16 50/17 51/2 58/21 58/22 59/4 59/12 59/13 59/25 60/1 60/12 60/21 61/4 61/5 61/16 62/7 62/25 63/3 63/16 63/19 63/23 64/2 64/14 64/22 64/23 66/4 67/4 72/25 73/1 73/4 139/3 144/23
corrected [1] 97/15
corrections [1] 94/4
correctly [2] 7/21 14/24
corroborates [1] 68/12
cotton [1] 27/21
coughing [1] 99/18
could [27] 9/4 10/6 12/24 21/8 33/10 43/3 43/6 45/11 56/20 57/22 57/24 57/25 61/9 61/12 64/4 64/8 64/13 65/5 69/25 80/10 81/1 85/19 86/11 108/18 110/22 136/7 138/1
couldn't [7] 89/22 97/20 108/7 109/21 135/19 138/20 143/20
counsel [25] 3/13 3/17 10/6 16/6 16/36/7 45/11 59/24 62/23 66/19 67/2 92/2 95/11 95/17 95/19 95/24 97/5 97/11 99/1 99/13 99/19 100/22 101/2 104/24 107/16 109/2
counsel's [1] 96/16
Counselor [1] 81/24
counsels [1] 63/25
count [1] 117/7
counts [1] 106/16
County [2] 53/19 135/22
course [24] 8/3 12/3 22/6 22/13 35/5 37/15 66/23 69/9 72/3 73/11 74/5 76/14 89/10 89/16 91/8 95/9 97/1 112/3 114/13 115/3 117/4 118/17 137/18 143/18
coursework [1] 53/11
court [62] 1/1 2/1 2/1 3/1 3/3 10/13 10/15

12/18 14/9 14/9 14/14 14/18 16/15 16/18 17/6 21/1 22/2 51/13 52/11 52/17 52/18 52/19 55/15 55/16 76/1 82/15 104/24 114/24 115/1 115/5 118/6 118/8 118/24 118/24 118/25 128/9 128/18 128/19 128/20 130/10 130/22 131/5 131/8 131/10 131/14 131/18 131/22 133/6 133/7 133/20 135/11 135/13 135/16 135/17 135/19 139/3 143/22 144/12 144/13 146/10 148/12
Court's [3] 4/7 4/10 5/5
courthouse [2] 1/5 145/9
courtroom [6] 67/22 71/13 95/3 113/24 142/17 147/3
courts [2] 55/13 55/14
cover [3] 84/10 88/12 88/13
covered [6] 82/4 84/3 84/4 84/5 84/9
CPW [1] 98/7
created [4] 14/1 107/3 124/25 132/4
creates [4] 6/13 13/19 14/15 123/19
creating [1] 126/7
credibility [11] 5/12 10/11 10/18 10/24 68/21 75/2 86/8 86/13 95/20 96/12 120/22
credible [4] 71/25 95/21 103/5 103/5
crime [20] 9/20 16/5 22/13 22/14 23/4 31/5 32/12 32/15 34/3 43/8 43/11 84/8 86/21 87/25 88/1 101/14 121/8 121/9 121/12 122/10
crimes [2] 34/2 52/16
criminal [25] 4/2 4/20 12/23 14/11 14/16 21/18 27/3 31/6 52/15 52/19 55/16 58/25 69/1 98/8 101/23 101/23 106/16 106/19 111/16 115/21 122/12 122/21 123/2 123/8 135/4
criminalist [4] 52/2 52/3 53/7 108/5
criminalists [1] 52/5
critical [6] 71/12 75/7 82/9 109/25 123/10 123/23
critically [1] 117/14
criticize [1] 143/18
criticizing [1] 145/18
cross [15] 4/1 4/16 7/4 8/4 10/10 15/24 19/2 28/12 58/15 58/16 66/1 72/4 118/7 148/6 148/10
cross-examination [7] 10/10 15/24 19/2 28/12 58/16 66/1 72/4
cross-examinations [1] 8/4
cross-examine [2] 4/1 4/16
cross-examined [1] 118/7
Cross/Recross [1] 148/10
CRR [1] 2/1
crucial [1] 104/4
CSI [1] 107/20
culmination [1] 54/19
curative [3] 4/8 4/23 8/9
current [1] 21/8
currently [3] 21/9 51/20 65/7
custody [1] 121/3
custom [1] 119/4
CV [2] 1/4 3/7
cylinder [6] 27/20 44/23 46/12 46/14 46/15 64/20

**D**

D-E-Y-K-E-S [1] 13/2
D.A [2] 74/25 77/18
D.A.'s [1] 89/2
D1 [1] 134/5
damage [8] 125/14 125/17 138/12 143/4 143/5 143/9 143/14 143/19
damages [71] 4/17 7/7 7/9 7/10 15/22 16/25 17/4 92/15 92/23 92/24 116/9 116/11 119/10 119/20 125/19 125/24 126/1 126/2 126/3 126/5 126/7 126/8 126/11 126/20 126/21

127/1 127/6 127/10 127/11 127/12 127/19 127/20 127/24 128/1 128/1 128/3 128/4 129/17 129/19 129/21 136/1 136/1 136/3 136/13 137/9 137/22 138/10 138/14 138/17 138/17 138/19 138/25 139/9 139/13 139/23 140/8 140/16 140/18 140/19 143/3 143/4 143/6 143/8 143/12 143/13 143/15 143/15 143/24 144/22 144/23 145/1
dampness [1] 58/2
dangerous [1] 85/10
dark [5] 76/8 97/8 97/8 97/14 97/20
date [19] 24/11 24/13 24/15 24/16 57/6 57/9 112/12 131/6 131/9 131/11 131/15 131/19 131/23 133/8 133/21 135/14 135/16 144/14 146/11
dates [1] 54/25
Daubert [3] 18/13 18/16 19/4
day [7] 22/13 42/24 77/3 88/9 90/3 93/17 113/2
deal [3] 5/1 98/16 98/17
deals [1] 136/19
dealt [2] 4/21 5/6
decide [12] 71/1 82/23 86/6 87/7 103/4 104/13 114/23 116/19 117/12 121/1 139/25 141/4
decided [5] 80/23 88/17 106/15 114/17 115/2
deciding [4] 10/23 71/2 95/13 120/22
decision [12] 5/5 13/23 87/13 101/17 104/21 112/9 113/3 113/20 123/10 136/10 138/2 144/19
decisions [2] 14/8 85/22
decline [1] 13/7
deductive [1] 76/22
deemed [1] 121/16
defendant [40] 1/5 1/22 6/20 6/23 12/23 69/2 96/23 102/4 102/5 102/6 105/2 107/3 116/10 116/17 119/13 120/11 120/24 121/14 122/8 122/22 123/3 123/7 123/24 124/1 124/4 124/9 124/15 125/2 125/4 125/22 126/24 127/7 127/12 127/17 127/17 127/24 128/5 129/18 142/23 144/7
defendant's [14] 23/20 68/7 119/19 123/5 123/12 127/21 134/1 134/3 134/5 134/7 134/9 134/9 142/7 142/8
defendants [50] 1/21 4/1 4/7 4/11 4/13 4/15 4/19 4/23 5/3 7/12 7/15 7/22 7/25 10/14 10/18 12/6 14/24 15/6 15/10 20/20 51/9 68/4 68/5 69/9 89/17 90/23 92/7 93/1 93/6 93/21 99/15 107/6 107/9 109/7 115/20 115/20 115/25 115/25 120/2 120/8 120/18 121/4 121/15 122/18 124/14 124/16 124/24 127/8 128/2 132/19
defendants' [7] 3/10 3/20 7/19 8/8 15/24 99/20 126/6
defense [17] 16/36/7 59/24 62/23 63/25 66/18 67/2 67/17 83/20 88/14 88/14 88/16 88/23 92/2 95/5 108/16 142/24
definitely [1] 137/4
definitiveness [1] 126/22
degraded [1] 18/4
degree [1] 98/8
deliberately [4] 118/2 118/4 119/22 122/6
deliberating [2] 108/24 114/7
deliberations [6] 95/13 108/21 128/6 130/25 141/13 147/10
demeanor [1] 117/16
denial [1] 140/23
denied [9] 4/4 4/13 68/20 69/7 69/20 70/2 90/24 107/1 116/6
denies [1] 121/7
denigrating [1] 145/19
deny [2] 9/25 115/20

# A1230

**D**

department [4] 1/22 21/10 51/24 83/5
deposed [1] 19/16
deposited [4] 57/24 57/25 58/8 58/11
deposition [26] 20/8 28/21 59/3 72/14 72/20
72/21 73/12 74/16 74/17 74/21 75/11 75/12
75/16 77/2 77/13 78/10 78/24 79/2 79/11
80/18 80/19 82/11 89/21 97/12 98/1 105/19
depravation [2] 107/4 107/12
deprival [1] 139/19
deprivation [13] 119/8 120/6 120/7 125/1
136/18 137/9 140/10 140/13 140/19 140/22
141/4 143/8 143/10
deprived [5] 118/25 119/16 136/14 139/7
140/7
describe [2] 26/7 117/20
described [2] 65/9 130/14
deserve [1] 118/12
deserves [1] 117/8
desire [1] 124/6
destroyed [1] 58/1
detail [6] 77/7 89/15 96/1 96/14 96/21 99/12
details [7] 77/6 77/20 77/22 77/25 78/2
78/21 81/18
detectives [1] 22/14
determination [1] 71/20
determine [7] 71/17 101/25 104/13 118/9
125/24 126/2 129/18
determining [1] 121/23
deterrence [1] 17/19
Deykes [1] 13/1
did [119] 16/1 16/5 16/6 22/16 22/22 22/25
23/3 23/6 23/14 23/16 24/15 24/18 24/21
24/22 25/3 25/6 25/7 26/25 28/20 28/23 30/2
30/11 32/2 34/23 40/6 40/20 40/22 41/13
41/24 42/11 42/16 44/6 48/21 48/23 52/23
54/24 55/21 55/25 56/1 56/3 56/6 57/12
58/24 59/2 59/16 60/10 62/17 62/19 62/20
63/5 64/13 66/5 66/6 71/4 71/18 71/19 71/24
71/24 71/25 72/2 72/4 72/10 72/14 73/6 73/6
73/8 73/15 73/20 73/21 74/18 75/21 76/7
76/9 78/5 78/9 78/11 79/13 79/23 80/21
80/25 81/22 82/9 82/11 82/23 86/20 86/21
87/2 88/19 89/6 89/11 89/12 91/3 91/4 91/5
98/23 99/2 99/7 105/16 106/10 111/18
111/19 111/24 112/11 112/14 112/15 112/18
120/15 120/16 124/13 124/15 128/25 129/2
129/4 129/6 129/8 129/12 130/11 133/15
137/8
didn't [78] 15/11 16/4 28/18 28/21 32/6
32/17 32/17 32/25 34/22 42/7 42/8 42/15
44/17 46/20 48/20 49/11 49/24 50/23 51/1
51/3 58/23 58/25 59/14 61/21 72/21 73/8
73/21 73/22 74/6 74/10 74/12 74/12 75/12
75/18 75/20 77/23 77/24 77/25 78/2 78/4
78/7 78/17 78/20 78/24 80/19 82/12 83/15
83/20 83/23 85/16 86/22 87/11 87/25 88/1
88/4 89/5 96/17 96/18 98/18 98/19 99/6 99/9
105/11 105/24 106/20 106/21 107/19 108/4
108/8 108/12 108/13 108/16 108/18 110/13
111/7 112/13 133/3 137/7
different [11] 36/19 71/5 72/8 74/24 79/16
84/3 99/24 101/23 107/23 112/1 128/5
difficult [3] 50/15 61/15 108/1
difficulty [1] 14/12
direct [17] 8/4 11/1 21/4 31/3 31/8 39/11
50/3 51/5 51/16 55/21 61/6 63/11 65/22
89/25 125/17 148/5 148/9
Direct/Redirect [2] 148/5 148/9
direction [2] 85/8 130/21
directly [1] 143/10
directs [1] 18/5

disagree [3] 137/12 137/13 137/16
disapproval [1] 127/14
disbanded [1] 70/1
discuss [5] 6/17 94/1 95/15 146/4 147/6
discussed [3] 4/22 11/1 11/16
discussion [7] 13/6 20/11 70/3 91/23 141/24
142/1 142/21
discussions [3] 111/14 118/17 128/12
dishonest [3] 73/12 79/5 80/15
disliked [1] 106/8
dismiss [1] 5/3
dismissal [1] 69/18
dismissed [6] 4/20 68/19 69/6 86/3 106/19
121/23
dispassionate [1] 126/22
dispassionately [1] 117/9
dispute [2] 32/16 123/8
disregard [3] 120/1 122/6 127/22
disregarded [1] 14/15
distributed [1] 131/5
distribution [1] 18/9
district [188] 1/1 1/1 1/11 3/3 3/3 14/14 53/16
53/19 55/16 68/24 73/8 104/19 105/18
105/23 105/24 111/14 111/19 119/5
ditch [1] 86/18
DNA [78] 18/22 21/20 22/9 22/10 22/12
27/12 27/14 27/16 27/25 28/2 30/18 31/25
40/7 44/11 46/25 47/12 47/17 47/17 47/18
47/19 47/20 52/5 52/6 52/24 53/11 53/17
54/4 54/15 54/18 54/19 54/19 54/22 55/1
55/3 55/5 55/9 55/18 55/22 56/1 56/15
56/18 56/19 56/23 56/25 57/15 57/24 57/25
58/5 58/10 60/12 60/20 60/24 60/25 61/4
61/9 61/11 61/11 61/15 61/16 63/6 63/13
63/14 63/17 64/5 64/8 64/10 64/14 65/2 65/5
66/7 83/17 83/21 107/16 107/17 108/7
108/11 108/11 110/23
do [122] 5/23 8/19 8/20 10/8 10/25 14/4
14/25 15/2 16/21 17/24 19/2 20/16 21/22
22/16 24/10 24/16 26/2 26/14 30/13 30/15
30/19 31/4 34/7 34/16 34/19 34/22 35/9
35/11 36/9 37/2 37/23 37/23 39/6 39/14
45/21 45/23 45/23 46/21 47/4 47/24 49/1
49/9 50/19 54/9 54/13 59/14 59/19 60/9
62/17 64/24 67/7 67/19 69/10 70/23 73/13
79/2 79/15 82/20 83/18 83/18 83/23 85/8
85/21 87/7 87/21 87/22 87/25 88/1 88/2
88/22 88/22 92/23 93/15 93/15 93/17 93/18
93/24 95/14 98/18 98/22 98/23 102/1 107/13
109/5 111/11 111/11 112/17 113/16 113/20
113/21 114/23 125/8 127/13 129/23 130/2
130/3 130/18 130/23 131/24 131/25 132/13
132/18 132/20 132/22 139/10 139/13 139/17
139/23 140/3 140/9 140/15 140/17 140/19
140/23 141/14 141/22 142/13 142/14 145/19
146/3 146/3 147/7
Docket [1] 3/7
doctor [1] 145/10
document [10] 35/9 35/20 35/23 36/19 38/8
45/21 73/25 98/25 99/4 99/6
documents [6] 81/3 78/15 78/16 114/8
116/23 116/24
does [26] 24/6 24/12 25/18 37/21 37/25 38/7
52/3 54/2 56/16 56/16 57/20 73/25 75/7
76/17 76/20 78/23 84/25 84/25 88/10 122/2
132/11 133/15 140/9 141/7 142/24 145/21
doesn't [29] 20/9 20/10 32/2 37/21 41/2
62/14 67/6 74/3 75/24 76/14 76/24 78/19
79/2 85/4 85/15 85/15 85/18 90/3
90/12 98/2 99/21 106/18 106/20 106/21
108/3 108/12 108/13 142/9
doing [13] 8/2 10/10 22/20 43/1 61/3 67/7
70/19 70/19 87/14 88/3 90/13 113/9 124/22

dollar [1] 143/5
don't [99] 4/3 6/1 6/5 12/7 14/25 15/16
16/20 17/4 17/7 18/7 19/17 20/6 30/10 31/12
31/23 31/25 32/19 33/1 33/8 33/16 37/15
38/1 38/1 38/23 40/20 41/15 41/16 42/23
43/1 43/20 44/1 44/24 45/14 45/15 45/17
47/16 47/16 47/20 48/6 48/16 48/19 48/22
49/23 50/6 50/18 57/19 62/5 62/6 62/22 64/7
64/9 65/4 65/6 67/8 70/22 75/12 77/16 77/21
78/6 79/11 82/1 82/1 83/7 83/8 90/5 90/6
92/5 92/15 92/16 94/1 100/17 107/22 110/9
110/20 113/22 114/4 114/12 114/23 116/11
117/6 125/25 128/6 128/12 128/17 128/18
129/16 133/13 134/18 137/15 137/21 141/12
142/10 142/10 143/10 143/17 144/4 147/6
147/7 147/7
done [19] 18/15 27/21 30/14 32/11 38/24
82/22 83/24 84/1 98/16 109/12 111/12
113/11 114/17 119/21 119/22 119/25 122/2
135/20 145/19
door [3] 4/3 4/4 7/20
doubt [6] 72/22 101/24 102/19 102/20 103/9
104/16
down [14] 38/24 46/15 57/4 71/3 84/20
88/21 89/8 90/11 90/18 99/25 100/3 101/5
109/1 147/2
downtown [1] 21/15
draft [4] 8/25 131/13 131/16 131/20
drafts [1] 131/12
dramatically [1] 80/11
draw [2] 117/4 117/10
drawing [1] 50/12
drawn [1] 59/7
driver [1] 76/10
driving [1] 89/8
drops [1] 13/10
due [3] 52/8 58/1 124/6
duly [2] 20/23 51/10
duped [2] 91/12 91/13
during [14] 8/3 16/19 16/24 17/17 22/6
26/12 44/6 69/9 72/3 73/11 82/7 89/21 96/18
117/3
dusting [1] 26/14
duties [1] 19/18
dynamics [1] 90/4

**E**

E-mail [1] 2/3
E-R-R-E-D [1] 135/25
E.G [1] 136/4
E1 [2] 134/12 134/13
each [14] 35/13 53/8 55/2 71/12 78/14 81/6
116/15 117/16 122/19 126/24 128/11 128/13
128/15 138/5
earlier [3] 26/22 85/5 117/23
early [3] 3/21 3/22 43/2
earnings [2] 7/2 126/18
earth [3] 84/20 85/5 111/7
easily [1] 13/8
EASTERN [3] 1/1 3/3 53/16
easy [3] 75/5 81/16 81/16
ECT [4] 37/7 37/11 39/5 42/12
education [1] 53/3
effect [3] 9/18 43/5 47/12
eight [2] 79/1 79/1
either [17] 15/7 15/10 25/22 42/8 59/8 66/5
71/7 73/7 107/11 108/18 116/24 123/23
124/24 128/2 139/19 140/11 146/5
ejector [6] 44/21 44/24 46/14 46/17 46/18
64/21
element [14] 14/15 116/16 120/4 125/10
elements [2] 118/1 118/13
else [13] 9/7 10/25 13/16 15/3 15/20 16/10

**E**

else... [7] 17/10 58/9 73/13 86/6 104/7 113/18 128/10
else's [1] 37/13
emotion [1] 117/10
emotional [9] 4/16 7/1 15/23 16/1 16/3 16/4 126/17 126/19 138/4
empirical [1] 18/18
employed [1] 51/20
employee [1] 52/8
employment [1] 22/16
encountered [2] 28/8 57/15
end [10] 6/19 9/17 11/13 28/4 36/23 90/3 93/17 101/15 114/4 145/20
ended [1] 123/9
endorse [1] 13/8
ends [2] 37/12 88/5
energy [1] 57/1
enforcement [1] 16/17
engage [2] 13/5 127/15
engaged [1] 127/13
enhancement [2] 74/11 74/23
Enjoy [1] 94/5
enlarged [1] 23/22
enlargement [1] 24/19
enough [13] 25/22 56/18 61/11 61/18 61/19 61/23 63/19 78/17 83/12 108/10 108/11 108/11 111/9
entailed [1] 56/10
entered [4] 70/4 114/1 139/2 145/16
enters [1] 135/8
entire [5] 54/19 68/15 77/22 83/5 83/13
entirely [3] 17/3 61/17 104/4
entitled [9] 19/5 20/1 20/10 91/8 115/5 126/24 128/13 139/23 140/18
entry [7] 78/17 78/23 78/25 98/2 98/4 98/6 98/9
environmental [1] 58/1
equal [14] 114/25 115/4 115/5 115/12
equally [1] 115/12
erred [1] 135/25
error [2] 18/19 139/4
especially [3] 13/23 14/5 41/10
ESQ [5] 1/18 1/18 1/24 1/25 1/25
essentially [3] 90/22 115/24 118/23
establish [2] 68/8 119/12
established [1] 115/11
et [1] 140/12
ethnic [1] 114/22
evaluating [1] 113/12
evaluation [1] 87/21
even [18] 10/9 14/3 28/25 29/2 42/24 59/11 69/18 76/25 88/25 90/6 92/15 96/24 103/13 106/9 106/14 136/3 138/8 145/22
evening [1] 147/11
event [1] 144/5
events [2] 115/22 117/19
ever [11] 28/7 49/4 54/15 55/8 57/14 73/3 76/15 82/15 89/1 112/8 113/2
every [8] 22/1 26/14 26/15 49/4 82/22 96/1 119/3 124/19
everybody [5] 37/13 114/25 115/4 138/22 139/14
everyday [1] 22/15
everyone [2] 20/14 70/14
everything [2] 91/8 113/5
evidence [143] 6/16 6/21 6/22 10/22 12/21 14/22 15/1 16/9 18/17 21/12 21/14 21/16 21/20 22/17 26/13 27/12 27/14 30/22 31/1 31/9 31/15 31/17 33/17 33/19 33/21 33/23 34/7 34/10 34/12 34/13 34/14 34/14 35/12 35/14 35/22 35/23 36/15 36/16 39/14 39/20

40/6 40/7 40/8 40/10 41/11 41/14 42/13 43/6 44/2 56/2 56/7 65/5 65/7 67/3 67/18 68/7 68/17 69/11 70/7 70/8 70/20 70/24 71/16 75/6 75/15 76/22 82/6 83/2 84/6 84/8 85/25 90/25 93/18 96/2 96/19 98/3 98/5 98/22 98/25 99/5 100/15 100/23 100/25 101/20 102/2 102/3 102/23 103/3 104/9 105/11 105/23 106/6 106/8 106/8 107/3 107/4 107/8 107/12 107/14 107/22 108/11 109/4 111/15 111/20 113/5 113/6 113/12 114/8 114/19 115/3 115/9 115/22 116/2 117/8 117/13 117/21 120/20 120/23 120/24 121/21 121/21 122/5 122/7 122/19 123/22 124/13 124/25 125/2 125/3 129/10 129/14 130/13 131/8 131/10 131/14 131/18 131/22 133/7 133/20 135/13 135/16 144/13 146/10
exact [1] 50/6
exactly [5] 60/15 76/13 78/1 86/15 145/10
examination [18] 9/18 10/10 15/24 19/2 21/4 28/12 51/16 55/25 56/1 56/4 56/6 56/14 58/16 61/6 65/24 66/1 66/15 72/4
examinations [1] 8/4
examine [2] 4/1 4/16
examined [3] 20/23 51/10 118/7
examiner [6] 51/23 52/1 52/9 52/21 53/2 53/25
examiner's [1] 18/21 19/1 108/6
examining [1] 56/8
example [6] 52/15 81/8 89/20 97/7 124/4 127/14
excellent [2] 143/18 145/17
except [3] 116/15 122/13 128/7
excessive [1] 126/12
exchanged [1] 58/10
exclusively [1] 126/1
Excuse [4] 12/12 30/15 45/19 61/18
excuses [1] 84/7
executing [1] 122/4
exercise [1] 128/14
exhibit [60] 23/20 35/9 35/23 36/16 45/17 62/2 62/11 96/21 98/5 99/5 131/5 131/7 131/8 131/10 131/13 131/14 131/18 131/22 133/6 133/7 133/19 133/20 133/22 133/23 133/23 133/24 133/24 133/24 133/25 133/25 134/1 134/3 134/5 134/7 134/9 134/10 134/19 134/24 135/1 135/3 135/5 135/11 135/13 135/16 135/18 139/5 144/12 144/13 146/10 148/13 148/14 148/15 148/16 148/17 148/18 148/19 148/20 148/21 148/22 148/23
Exhibit 1 [1] 135/3
Exhibit 11 [1] 99/5
Exhibit 20 [2] 62/2 62/11
Exhibit 3 [3] 35/9 35/23 36/16
Exhibit 6 [1] 96/21
Exhibit 9 [3] 135/18 139/5 144/12
exhibits [13] 131/25 132/1 132/3 132/23 133/9 133/15 133/16 133/19 134/2 134/14 134/15 135/12 148/12
existed [10] 6/14 6/16 28/25 121/24 122/9 123/20 123/22 124/9 124/12 124/15
existence [4] 9/12 9/22 121/19 122/7
exists [3] 9/18 13/20 123/14
exited [4] 94/2 131/3 141/23 146/8
expect [1] 58/4
experience [14] 16/24 17/2 18/20 19/5 25/21 26/1 26/2 26/10 26/13 27/7 47/11 50/3 57/18 60/22
expert [5] 18/17 18/24 55/8 55/18 118/10
experts [1] 118/11
explain [7] 4/18 23/25 25/5 27/12 37/8 77/14 77/16
explained [2] 4/9 104/15
explains [1] 77/16

explanation [6] 9/15 9/23 72/15 72/16 78/20 82/18
explanations [1] 9/16
explicated [1] 10/1
explore [1] 18/24
express [1] 127/13
expressed [1] 18/20
extend [1] 70/14
extensively [2] 8/11 90/21
extent [2] 10/16 126/9
extract [8] 27/16 41/10 63/21 64/2 67/6 111/1 111/3 111/7
extraordinary [1] 127/13
extreme [1] 58/2
eye [2] 68/14 102/16
eyes [2] 76/5 76/7

**F**

F.3d [4] 14/14 135/23 138/1 142/1
F1 [1] 134/3
fabricated [1] 115/22
fabrication [1] 85/16
face [2] 16/3 85/6
facial [1] 117/17
Facsimile [1] 2/2
fact [34] 11/20 18/25 31/8 39/8 54/7 59/6 59/14 61/13 63/21 71/11 71/12 75/7 77/8 77/10 89/5 89/6 90/2 96/8 98/20 99/2 99/7 99/20 109/24 110/7 110/10 110/15 110/18 110/25 111/4 112/4 113/1 113/14 121/22 136/19
factors [2] 57/22 58/1
facts [11] 9/19 15/9 15/15 32/20 79/10 91/24 96/3 114/14 122/6 122/7 123/14
fail [1] 92/2
failed [1] 41/19
failure [2] 121/25 125/15
fair [11] 5/4 90/24 107/1 116/1 116/6 124/19 126/11 126/24 129/9 129/13 130/12
false [29] 6/22 12/20 14/23 14/23 68/5 68/18 79/5 80/15 90/24 91/11 91/14 91/19 91/22 92/7 92/14 101/9 107/3 107/12 115/20 116/2 116/16 122/18 124/21 124/25 125/3 129/10 129/14 130/13 138/7
falsely [11] 12/4 90/23 101/18 103/25 116/4 117/25 120/8 120/9 120/10 128/25 129/2
familiar [4] 32/20 59/17 61/17 62/16
family [1] 113/7
far [2] 66/17 84/9
fast [1] 79/10
fatal [1] 21/19
favor [7] 102/5 109/7 116/7 123/4 123/10 127/16 128/23
favorite [1] 78/22
FBI [1] 54/4
fear [1] 128/22
feasible [5] 34/16 39/7 42/22 43/17 44/1
federal [3] 52/18 55/15 115/5
feeding [2] 91/19 91/21
feel [5] 14/10 17/3 47/3 137/17 142/4
feelings [1] 114/20
feet [4] 76/8 76/12 80/7 82/3
FELICIA [1] 1/24
fell [1] 86/12
fellow [1] 74/11
few [11] 19/8 54/17 83/21 95/21 109/13 109/13 109/16 118/10 125/5 142/14 142/16
field [3] 53/14 55/8 55/18
figure [1] 76/23
figured [1] 88/5
file [5] 57/7 62/24 64/24 66/24 66/25
files [1] 52/6
fill [5] 35/12 77/16 77/21 78/13 98/19

## A1232

**F**

filled [7] 35/14 35/16 38/23 39/4 78/18
80/16 98/14
fills [1] 77/4
final [2] 6/8 113/18
Finally [2] 15/21 28/7
find [46] 6/14 6/22 27/4 32/12 42/11 42/15
51/1 51/3 58/4 61/9 102/6 106/10 106/23
107/9 109/7 110/7 116/7 117/25 118/1 118/2
118/18 123/20 124/9 124/14 124/16 125/4
125/23 127/5 127/7 127/12 127/16 129/17
129/20 136/13 137/21 138/24 139/16 139/18
139/20 140/7 140/7 140/10 140/14 140/15
140/17 140/18
finding [2] 136/12 136/23
findings [3] 56/14 57/4 118/16
finds [2] 127/17 136/11
fine [6] 42/17 51/19 92/18 132/7 133/4
133/10
fingerprint [23] 21/25 22/11 25/6 25/7
26/21 27/10 48/24 49/1 49/4 49/5 49/9 49/12
50/16 82/19 82/24 98/12 98/16 98/23 107/18
107/24 108/2 108/2 112/11
fingerprints [18] 21/21 25/14 25/19 26/3
26/6 26/11 26/20 31/23 49/24 50/4 50/9 51/2
51/3 82/16 103/15 103/18 107/16 108/3
finish [3] 6/17 30/16 34/11
fire [1] 70/21
firearm [29] 22/24 23/1 23/7 23/8 24/2
25/11 26/21 33/9 37/7 39/1 40/8 41/2 41/16
42/10 46/1 46/12 46/13 51/1 55/23 72/20
72/22 75/22 96/24 99/11 121/5 121/6 121/9
122/13 122/14
firearms [6] 18/22 26/2 26/12 60/12 60/20
61/9
fires [1] 46/16
first [54] 4/11 5/21 5/24 7/22 8/24 9/1 11/12
14/11 20/23 51/9 58/20 66/22 74/25 80/9
82/15 83/4 83/19 85/6 86/17 88/22 89/14
91/2 91/21 92/6 92/6 92/11 95/18 95/22
98/15 100/2 100/14 101/9 101/17 104/12
107/20 110/6 111/1 111/2 111/4 112/12
112/12 115/17 116/3 119/13 120/7 120/23
123/1 126/3 128/25 129/19 139/7 139/8
140/14 144/2
first-year [1] 14/11
fit [1] 143/10
FITCH [1] 1/14
five [7] 4/24 19/12 33/5 52/17 68/24 105/7
113/23
floor [2] 41/25 42/8
flowing [2] 89/23 139/18
focused [3] 7/21 8/10 138/16
folks [12] 70/13 71/23 72/16 73/15 75/23
79/3 79/13 86/19 86/23 109/12 109/18
111/11
follow [5] 54/5 114/5 117/11 118/18 143/25
follow-up [1] 143/25
following [6] 14/12 17/25 54/3 54/7 103/11
129/16
follows [2] 10/21 20/24
fooled [1] 92/19
foolish [1] 77/15
foot [1] 25/8
footnote [8] 11/20 11/22 11/24 11/25 12/2
12/7 13/10 13/10
force [1] 79/1
forensic [12] 41/10 41/14 51/24 53/1 53/5
53/23 82/5 83/2 84/5 85/25 107/14 107/22
foreperson [1] 117/2
form [7] 39/4 39/18 77/5 77/5 80/15 80/16
80/16

formal [1] 53/3
formed [1] 135/25
forth [1] 54/4
forward [3] 56/18 81/10 81/10
found [12] 18/25 26/23 49/20 60/12 63/6
96/23 136/19 138/14 138/18 140/3 141/4
144/1
four [32] 22/13 24/25 29/3 30/2 52/2 52/3
59/11 63/24 83/13 86/21 87/4 87/24 88/15
88/25 89/13 90/2 93/21 95/25 95/25 99/15
109/17 109/21 111/10 112/13 112/21 112/21
112/23 113/1 119/12 123/5 126/16 140/11
four-day [1] 22/13
fourth [4] 4/19 119/19 120/10 120/16
Fox [5] 28/9 68/12 88/22 102/16 103/8
framing [1] 71/15
FRANCES [1] 1/25
frankly [1] 29/2
free [1] 132/13
freedom [2] 138/9 138/12
frequently [2] 27/15 47/23
frisk [1] 80/16
front [13] 60/9 66/17 72/11 76/11 76/11
79/20 79/24 80/3 80/5 80/12 89/3 93/7 112/2
frustrated [1] 13/9
full [4] 9/11 9/11 15/18 122/3
fume [2] 25/5 25/12
fumed [2] 30/19 103/19
fumes [2] 25/12 25/12
fuming [5] 25/7 26/14 30/12 30/18 30/20
function [3] 24/17 71/17 126/2
funny [2] 74/15 75/11
further [13] 3/25 7/12 28/11 58/13 60/24
60/25 65/20 67/10 67/13 71/10 87/21 105/10
121/25
furtive [3] 8/6 80/17 80/22

**G**

game [1] 80/9
Gather [1] 132/1
gathered [1] 132/23
gave [18] 24/9 28/21 48/10 48/12 48/15
48/17 69/1 72/7 91/11 95/21 95/22 97/10
105/9 131/6
gender [1] 114/22
general [2] 16/4 72/17
generally [1] 31/4
generated [1] 78/16
genetic [1] 53/12
gentlemen [12] 70/6 72/4 81/3 86/4 90/17
95/6 103/21 107/10 108/20 112/21 113/7
113/16
GERALD [1] 1/18
get [37] 3/13 3/16 5/23 21/20 22/25 31/9
31/14 32/6 34/19 43/13 47/20 49/15 50/4
50/9 50/16 61/15 64/8 64/14 82/24 83/3
83/20 86/18 89/5 90/20 93/7 93/20 93/24
100/8 104/3 107/22 108/1 109/2 110/9
110/14 110/17 133/15 145/8
gets [1] 107/24
getting [2] 3/21 27/9
give [25] 14/10 22/2 55/20 95/13 104/8
104/20 105/2 108/23 109/14 113/20 114/5
117/8 118/11 126/9 128/8 135/18 139/5
139/9 140/1 140/2 140/8 141/1 141/3 141/5
143/9
given [15] 9/3 14/10 14/24 27/8 37/6 37/7
48/4 53/14 53/15 53/18 68/5 69/25 142/25
143/6 143/6
gives [4] 72/8 77/4 92/24 113/13
giving [8] 6/17 15/13 70/15 135/18 139/5
140/1 141/1 141/6
gloves [4] 25/4 31/20 42/7 48/15

glue [2] 25/12 25/12
go [30] 8/15 15/13 15/18 22/1 22/25 23/3
23/6 27/15 38/25 39/6 42/24 43/6 56/18
61/22 79/7 79/14 81/10 90/12 90/21 95/14
114/4 116/11 131/1 132/2 132/2 141/4 141/9
141/21 145/11 146/5
goal [1] 124/3
goes [3] 15/15 97/25 104/18
going [60] 5/7 5/8 8/1 10/21 11/5 11/13 14/4
14/25 15/2 16/8 17/9 18/8 19/3 35/8 36/25
42/23 52/25 54/5 59/18 70/7 71/10 71/22
72/12 75/5 76/17 77/15 77/15 78/1 79/4
81/10 81/12 83/1 83/22 85/1 87/19 88/8
88/17 88/21 88/23 90/9 90/18 90/19 90/20
93/16 93/20 96/19 99/21 101/14 101/16
104/20 105/13 107/2 108/25 110/6 112/3
114/4 125/24 136/5 141/3 142/11
gone [3] 3/19 112/22 112/24
good [22] 20/14 20/15 21/6 21/7 28/14 28/15
28/17 51/18 51/19 58/18 58/19 70/13 72/12
82/25 84/21 88/24 89/7 95/6 95/7 99/19
110/18 147/11
got [25] 32/8 33/12 37/15 49/5 76/10 76/11
78/18 86/2 86/18 86/20 87/3 87/20 88/5 88/7
90/10 90/13 92/2 98/9 98/22 100/23 102/3
103/16 103/17 137/14 140/14
government [1] 124/21
government's [1] 124/9
grains [1] 26/9
grainy [1] 26/5
grand [52] 4/24 6/13 11/17 11/19 11/21
12/15 12/16 12/20 13/4 13/12 13/18 13/25
14/3 14/15 14/21 28/18 52/17 55/14 58/23
68/25 69/1 69/3 69/5 73/6 74/8 75/21 76/1
79/17 79/20 79/21 80/1 80/13 89/3 91/13
92/20 93/8 93/11 105/3 105/5 105/8 105/9
105/19 106/13 106/14 106/18 111/22 111/23
122/23 122/25 123/19 125/6 129/11
grant [1] 13/12
great [4] 19/5 61/14 88/6 89/15
greater [1] 115/5
grips [4] 27/19 46/7 46/11 64/20
gross [2] 1/24 127/22
ground [7] 71/7 71/9 96/7 96/9 99/11
102/18 121/11
grounds [4] 35/25 69/18 92/9 113/15
Group [1] 52/24
guard [2] 27/18 44/1
guess [5] 12/16 37/14 90/15 100/23 108/17
guided [1] 126/21
guidelines [3] 54/3 54/5 54/8
guilty [6] 90/13 101/25 101/25 106/18
122/11 122/14
gun [162]
guns [3] 47/9 47/16 49/1
guy [8] 80/2 87/20 88/10 88/23 88/25 89/3
90/6 110/9
guys [1] 110/15

**H**

had [54] 4/11 7/25 15/11 16/15 16/16 22/11
22/13 26/18 30/5 36/17 42/2 48/4 49/21
57/14 62/24 62/24 63/19 67/1 68/15 69/18
70/3 72/15 77/3 79/21 80/2 82/21 83/14 87/6
88/7 89/22 91/7 92/9 97/15 99/3 101/14
102/8 102/16 102/17 105/9 106/7 108/15
110/13 111/13 112/18 113/9 116/17
117/5 117/18 121/15 121/16 125/25 143/25
144/1
hadn't [1] 78/1
half [11] 22/10 33/13 52/22 52/25 53/1
86/21 87/24 93/22 113/1 126/16 140/11
hallway [1] 30/7

# A1233

**H**

hammer [2]  27/20 44/24
hand [5]  38/11 41/25 81/22 81/23 81/23
handcuffed [1]  87/6
handcuffing [1]  120/12
handle [15]  10/6 21/22 24/6 24/7 26/9 27/19
 44/15 46/8 46/8 47/12 54/9 107/19 108/1
 108/4 108/12
handled [2]  47/22 49/21
hands [3]  68/15 90/7 102/17
handwriting [1]  99/10
handwritten [1]  134/22
handy [1]  137/15
happen [8]  32/3 34/2 44/7 57/21 75/25
 87/11 100/18 105/11
happened [32]  20/8 32/12 33/6 79/21 80/6
 81/15 85/11 85/19 86/14 86/15 86/15 87/3
 87/18 90/8 91/15 92/21 95/25 96/17 97/1
 99/15 109/16 110/12 110/12 110/14 112/21
 112/23 113/7 113/7 113/10 115/19 117/11
 117/12
happening [2]  57/23 81/17
happens [5]  34/4 42/19 42/20 43/2 89/19
happy [1]  89/24
hard [2]  140/6 140/17
harped [1]  99/1
harping [1]  96/13
has [58]  4/2 4/5 9/2 9/21 10/16 12/17 14/19
 15/22 18/17 18/18 18/19 24/11 26/9 27/19
 29/3 36/5 36/19 37/12 49/15 57/17 57/19
 57/25 58/8 71/13 72/16 77/2 77/14 88/8 96/2
 99/1 106/4 107/10 108/22 111/23 115/7
 115/8 115/13 115/13 116/14 117/25 120/7
 122/8 124/19 124/24 125/19 125/23 129/18
 136/20 137/10 137/17 137/18 137/23 138/19
 139/9 143/4 143/10 143/14 143/22
hasn't [2]  65/18 105/10
have [224]
haven't [5]  19/16 30/3 63/24 63/25 64/1
having [8]  10/9 16/3 16/24 20/23 41/15 51/9
 91/15 128/11
he [342]
he'll [2]  109/2 109/3
he's [44]  3/14 3/15 4/3 4/17 20/1 20/10
 37/11 74/19 75/25 76/5 76/10 76/10 76/11
 76/11 76/17 77/2 77/3 79/2 80/3 80/13 81/10
 81/10 81/12 85/17 86/18 89/10 89/11
 89/13 90/9 90/9 90/13 90/13 91/8 95/20 96/9
 98/9 100/3 100/15 100/23 106/18 106/25
 112/5 126/3
head [1]  47/7
healthy [1]  91/23
hear [10]  20/17 67/19 70/5 92/8 109/1 111/1
 111/5 117/18 118/6 142/23
heard [44]  7/14 9/4 67/18 70/20 71/21 71/23
 79/15 82/5 83/2 86/16 87/4 87/19 91/8 92/25
 96/4 96/6 97/3 98/14 98/21 101/22 102/8
 102/10 102/15 102/20 103/6 103/8 103/8
 103/12 103/22 105/6 105/22 106/12 106/14
 107/15 107/21 108/5 108/17 110/23 112/4
 112/7 112/8 112/10 114/20 114/24
hearing [4]  18/13 19/4 20/16 89/25
heat [2]  25/11 58/2
held [10]  11/14 12/19 25/13 69/3 105/2
 105/3 112/23 112/24 122/22 142/21
help [7]  70/7 78/14 81/24 88/18 114/15
 128/10 132/22
helpful [3]  3/21 5/19 17/8
her [4]  19/9 55/20 73/21 73/22
here [67]  3/14 3/15 11/23 36/1 39/8 46/13
 46/14 46/16 46/19 52/8 59/4 67/3 70/14
 71/10 71/11 71/17 72/12 74/20 76/19 76/21

78/23 79/12 83/20 84/18 86/14 87/14 88/15
 88/15 88/19 89/4 89/19 90/11 92/21 93/24
 97/3 98/10 100/24 102/1 105/20 107/25
 108/21 109/16 110/12 110/14 113/7 113/20
 114/20 114/25 115/4 117/11 118/10 119/5
 119/7 119/18 120/12 120/14 120/16 120/17
 120/20 122/13 123/23 125/7 134/6 142/12
 144/16 145/11 147/4
here's [5]  14/13 80/21 83/3 83/6 111/14
hesitate [1]  128/12
Hey [1]  78/6
hide [1]  76/18
hiding [1]  98/20
high [8]  25/8 56/22 61/3 63/17 63/20 65/8
 65/8 67/7
higher [2]  83/24 111/10
higher-sensitivity [1]  83/24
highest [1]  75/4
him [74]  20/10 37/18 40/17 40/19 40/21
 68/16 69/6 71/4 71/8 72/21 73/15 73/17
 73/25 74/10 75/10 75/17 75/22 75/24 75/25
 76/11 76/11 76/12 77/22 78/3 78/19 79/8
 80/5 80/23 82/22 84/22 87/23 89/1 89/2 89/3
 89/5 89/11 89/20 90/15 91/3 91/4 91/9 97/5
 97/6 97/8 100/5 100/6 102/22 102/23 102/24
 103/13 103/13 104/14 104/16 106/8 106/9
 106/11 106/15 106/15 106/18 106/21 106/22
 108/12 108/13 108/23 111/17 112/5 120/9
 121/8 121/9 121/17 123/2 126/5 140/8 141/3
himself [2]  82/10 100/8
his [113]  4/2 4/16 11/17 11/17 13/7 37/10
 37/19 41/25 47/7 56/8 58/4 68/10 68/14
 68/15 68/25 69/5 72/1 72/5 72/14 73/3 73/10
 73/12 73/22 74/2 74/13 74/21 75/10 75/13
 75/17 75/19 75/21 75/22 76/5 76/24 77/1
 77/4 77/13 78/24 79/24 80/14 80/15 80/16
 81/22 81/22 81/23 81/25 82/11 82/21 86/9
 86/9 86/10 86/18 86/20 89/13 89/16 89/21
 89/24 89/25 90/7 95/17 95/19 95/23 96/5
 96/10 96/12 96/12 96/15 96/25 97/6 97/11
 97/23 97/25 98/1 98/10 98/17 98/18 99/23
 100/10 100/25 102/11 102/14 102/16 102/17
 102/25 103/3 103/17 104/16 105/4 105/8
 105/9 105/19 105/21 106/14 107/5 107/12
 108/10 108/19 108/23 109/2 110/18 113/8
 113/8 115/13 116/16 122/24 122/24 123/3
 124/3 125/23 139/20 139/21 140/7 140/10
history [1]  41/2
hit [2]  102/18 109/14
hitting [1]  96/9
hold [7]  26/10 39/15 75/25 79/8 88/2 93/20
 113/17
holding [1]  26/10 92/17
home [2]  88/8 146/6
homicides [2]  52/16 57/2
HON [1]  1/10
honest [3]  87/17 87/22 113/10
honor [85]  3/12 3/16 7/14 7/21 9/2 9/5 9/8
 10/8 10/20 11/1 11/12 12/2 12/6 12/10 13/17
 13/22 14/4 14/19 14/22 15/4 15/5 15/22
 15/22 16/22 17/16 17/22 18/10 18/13 19/7
 19/15 19/21 20/7 20/15 23/17 23/19 31/11
 35/24 36/4 36/11 36/14 42/1 45/8 45/12
 45/14 47/2 48/8 49/17 50/1 51/6 55/17 57/7
 65/23 67/14 67/16 67/17 68/3 69/11 69/21
 69/22 70/12 93/19 129/24 129/25 130/1
 130/6 132/9 132/10 133/1 133/13 134/2
 134/11 136/10 137/6 137/13 137/20 138/1
 138/16 141/8 141/18 142/8 142/22 142/24
 143/25 144/16 145/14
Honor's [5]  7/16 7/24 36/2 69/2 69/17
Honorable [4]  3/4 3/5 95/2 147/1
hook [1]  86/20

hope [1]  109/7
hopefully [1]  25/14
hostility [2]  106/5 124/5
hour [1]  33/13
hours [5]  33/6 43/4 43/4 78/18 89/10
house [3]  100/20 110/19 120/13
how [62]  21/22 21/24 22/6 22/19 22/22 24/4
 24/8 24/15 24/16 25/2 26/7 26/12 26/18
 28/16 31/9 31/14 37/15 41/21 42/6 46/25
 50/18 51/18 52/11 52/20 54/5 54/9 54/13
 55/1 55/5 55/11 70/17 71/24 72/3 72/8 72/10
 72/14 73/13 74/19 75/7 76/12 77/15 78/1
 80/10 80/14 89/23 90/1 98/1 98/13 99/25
 100/24 100/24 102/7 104/20 114/16 115/1
 128/17 129/21 138/13 139/25 140/6 140/17
 144/6
however [6]  10/16 96/2 97/11 107/6 121/20
 135/20
human [1]  112/17
hundred [1]  26/16
hundreds [3]  26/16 30/14 54/12
hypothesis [1]  141/3

**I**

I'd [6]  22/21 26/16 44/25 55/17 62/1 141/9
I'll [26]  3/23 4/17 4/18 5/1 6/12 9/25 17/14
 17/15 25/25 43/16 49/18 65/15 66/9 77/24
 81/14 86/15 88/13 94/5 115/7 116/21 118/16
 128/8 134/20 138/23 142/23 146/5
I'm [49]  3/24 5/6 9/6 9/11 12/15 14/10 14/25
 15/1 16/8 17/5 17/8 17/11 17/12 18/8 19/3
 19/15 21/12 23/19 35/8 36/25 37/15 39/15
 40/20 40/21 42/22 47/14 52/4 53/22 60/14
 61/21 62/1 65/10 71/10 71/15 75/14 76/19
 85/13 85/21 90/19 99/21 114/4 129/10 133/4
 136/5 137/5 137/25 139/16 140/8 145/10
I've [22]  3/19 4/21 9/25 10/2 12/14 14/10
 18/15 52/22 53/8 53/8 54/25 55/2 84/2 84/2
 84/4 84/5 85/13 114/17 125/4 138/3 144/4
 145/22
idea [4]  47/6 77/2 77/3 110/22
identification [8]  25/20 28/3 45/9 45/20 62/2
 62/8 62/9 62/12
identifies [1]  7/21
ignore [2]  118/3 122/5
II [1]  1/9
ill [4]  106/5 106/7 124/4 127/25
illegal [2]  115/18 121/5
Illinois [1]  53/6
illogical [1]  85/19
illustration [1]  80/14
imagine [1]  58/7
immediately [2]  19/20 118/7
immune [2]  12/25 13/25
immunity [7]  12/17 13/8 13/13 69/13 69/19
 119/9 119/17
impeach [3]  72/4 97/6 97/7
impeachment [1]  10/11
impede [1]  19/17
import [1]  4/24
important [20]  15/1 41/3 41/6 41/8 41/17
 41/22 43/13 70/18 77/8 77/9 77/10 77/11
 77/21 96/3 99/7 99/12 109/24 110/24 111/15
 145/9
importantly [2]  81/18 85/9
impose [1]  127/6
impossible [1]  68/16
improperly [3]  4/5 7/19 7/20
impugn [1]  5/9
impugning [1]  8/5
inaccurate [1]  107/8
inadequate [1]  126/12
incarcerated [1]  139/22

# A1234

**I**

inches [2] 24/9 46/23
incident [3] 88/16 98/5 112/21
inclined [1] 10/13
include [1] 97/15
included [2] 35/19 40/14
includes [2] 7/23 53/12
including [1] 8/6
inconsistencies [3] 95/23 99/14 109/19
inconsistency [1] 142/12
inconsistent [1] 97/12
incorrect [1] 107/20
indeed [1] 118/6
independent [2] 30/10 138/5
INDEX [1] 148/2
indicate [3] 36/22 114/18 118/16
indicates [2] 5/16 135/21
indicating [2] 128/21 135/25
indict [2] 106/15 111/25
indicted [5] 106/15 106/18 111/23 111/25 122/20
indictment [6] 4/24 6/13 13/19 14/15 14/21 123/19
indifference [2] 110/13 127/23
indifferent [1] 110/20
individual [5] 5/25 44/7 126/25 128/14 128/14
individually [1] 116/24
individuals [2] 107/15 118/25
infects [1] 8/8
infer [4] 110/8 110/20 124/8 125/25
inference [1] 69/7
inferences [2] 117/4 117/10
inform [2] 101/16 128/19
information [19] 18/25 35/19 37/6 37/15 37/16 37/18 41/3 41/6 41/18 63/5 68/13 91/11 91/20 91/21 96/17 98/10 107/7 121/17 124/20
initial [11] 4/6 5/9 7/20 7/23 7/24 8/5 10/22 47/24 48/5 48/7 120/19
initially [2] 8/7 8/14
initiate [2] 123/25 124/10
initiated [1] 123/2
initiates [2] 124/1 124/2
initiation [4] 12/22 123/6 123/11 123/12
injured [1] 119/10
injuries [9] 4/17 7/1 16/3 125/12 126/13 126/17 126/19 127/8 138/5
injury [15] 15/23 16/1 16/4 125/14 125/17 125/17 125/20 125/21 126/5 126/10 126/10 126/14 126/15 127/6 127/7
innocent [3] 88/1 88/10 119/23
innovations [1] 61/14
inquire [1] 31/13
inquiry [1] 121/25
inside [6] 25/9 48/17 49/15 80/7 80/7 83/8
insignificant [1] 28/2
instead [3] 12/25 83/18 87/22
instigation [1] 115/24
instruct [4] 17/9 101/12 110/6 136/5
instructed [2] 47/8 82/21
instructing [1] 126/1
instruction [17] 4/8 4/23 4/25 5/17 5/18 8/9 9/2 10/9 14/11 18/4 118/19 135/24 142/10 142/25 144/8 144/21 145/2
instructions [12] 5/2 104/20 104/22 104/24 105/1 109/15 113/13 114/3 114/5 114/6 131/4 144/6
insufficient [13] 18/22 56/15 56/17 57/15 57/20 60/20 60/23 63/11 63/13 63/14 67/4 108/8 111/4
intellect [1] 82/18

intended [2] 13/7 120/11
intent [1] 107/8
intentional [1] 119/21
intentionally [1] 119/14
interpreting [1] 54/20
interrogate [1] 87/9
interrogatories [1] 69/25
interrupt [3] 17/7 30/15 61/21
interrupted [1] 17/5
interruption [1] 99/17
interviewed [1] 89/2
introduced [1] 114/8
investigation [2] 13/5 122/4
involved [2] 22/23 28/8
involvement [4] 22/21 28/4 35/3 105/10
involves [1] 57/1
involving [1] 13/3
is [427]
isn't [27] 9/23 17/19 24/13 39/8 43/13 49/16 49/21 50/21 50/23 59/7 59/25 61/9 61/16 63/12 63/18 64/5 64/14 64/16 66/19 71/6 75/5 77/12 79/9 80/9 99/3 107/20 107/20
issue [19] 4/5 7/25 8/2 8/12 8/22 8/25 68/20 69/20 71/3 71/15 109/23 110/2 115/10 116/3 116/4 120/17 133/13 133/14 143/23
issues [5] 11/4 16/13 86/13 115/9 116/7
it [337]
it's [119] 3/24 4/22 4/24 5/13 6/4 8/25 10/21 11/18 14/3 15/19 17/3 17/8 18/23 20/6 26/5 27/5 27/19 34/15 34/16 36/10 36/15 38/6 38/22 38/24 42/21 42/21 43/13 43/13 43/17 45/20 47/18 47/22 48/7 50/15 50/20 56/25 57/1 57/20 58/6 58/6 58/7 58/10 59/23 60/19 60/19 62/11 64/15 69/7 70/21 72/12 72/20 73/11 74/17 75/2 77/10 77/11 77/15 78/12 78/17 79/5 79/9 81/3 82/24 83/13 85/16 85/19 86/15 87/13 87/20 88/1 88/11 90/2 90/15 91/16 91/24 92/18 93/7 93/9 93/13 96/25 99/4 99/5 99/5 103/4 105/4 105/25 108/19 109/21 110/14 110/15 110/20 111/8 111/9 111/9 111/10 117/6 119/5 119/18 119/21 119/22 122/17 125/7 126/1 127/1 132/13 133/4 134/4 134/19 134/25 137/1 137/4 138/2 140/6 140/17 142/1 142/1 142/4 143/18 143/19
item [10] 25/10 25/13 25/13 25/14 47/19 57/24 57/25 58/5 58/7 58/8
items [10] 56/7 56/8 56/8 58/10 61/15 64/16 64/17 64/19 65/18 88/13
its [1] 120/1
itself [2] 136/22 138/10

**J**

J-O-S-E-P-H [1] 21/3
JACK [5] 1/10 3/4 3/5 95/2 147/1
jail [9] 86/21 87/23 93/21 113/2 113/11 126/16 126/20 126/20 136/20
JBW [1] 1/4
job [9] 22/1 22/15 35/13 70/17 70/19 75/3 91/9 98/18 103/4
jobs [1] 43/1
Joe [1] 56/5
JOHANA [1] 1/25
John's [1] 53/20
Johnson [2] 2/1 2/3
join [1] 132/19
JON [1] 1/18
Joseph [3] 20/20 20/23 21/2
JOSHUA [11] 1/2 3/7 32/23 44/8 44/8 49/20 51/2 71/4 80/22 96/23 98/7
judge [12] 1/11 87/15 92/8 101/12 104/20 105/1 106/17 107/1 109/14 110/6 110/21 113/13

judges [1] 114/14
judgment [2] 87/14 128/15
Judi [2] 2/1 2/3
Judy [1] 73/20
Julio [1] 37/10
June [1] 57/9
June 10 [1] 57/9
juries [1] 55/14
jurisdiction [1] 119/8
jurisprudence [2] 143/21 143/22
juror [2] 92/25 99/17
jurors [7] 71/17 82/17 91/9 110/7 112/7 130/19 141/10
jury [117] 5/21 8/11 11/17 11/19 11/21 12/15 12/16 12/20 13/4 13/12 13/18 13/25 14/3 14/5 14/10 14/21 16/8 17/13 18/5 18/9 21/8 23/25 25/5 27/12 28/18 38/18 46/6 52/17 58/23 67/22 68/25 69/1 69/3 69/5 69/22 69/25 70/2 70/4 72/11 73/6 74/8 75/21 76/1 79/12 79/17 79/20 79/21 80/1 80/13 86/11 87/15 89/3 91/14 92/20 93/8 93/11 93/19 94/2 94/3 94/4 95/3 105/3 105/5 105/8 105/9 105/19 106/14 106/14 106/18 111/22 111/21 113/24 114/1 115/16 116/13 122/23 122/25 125/6 125/9 127/4 128/7 129/11 131/3 131/6 132/11 133/17 135/10 135/17 136/5 136/8 137/20 138/15 138/17 138/24 139/1 139/2 139/11 139/15 139/24 140/5 140/21 140/24 141/16 141/23 142/3 142/9 142/18 143/24 144/11 144/20 145/6 145/16 145/17 146/1 146/8 147/3 147/9
jury's [4] 4/24 6/13 14/15 123/19
just [117] 3/12 5/25 6/1 6/8 6/19 7/11 8/18 9/2 9/6 9/8 10/4 11/3 11/18 12/10 12/12 13/18 14/18 15/14 16/4 16/12 16/17 16/23 17/5 17/12 19/15 22/1 22/14 26/5 27/14 30/21 31/3 31/8 34/11 38/24 41/17 41/24 45/20 46/2 47/16 47/17 48/23 59/23 63/2 65/9 65/23 66/19 67/3 70/13 70/15 70/18 72/9 72/17 72/22 75/23 76/7 77/17 78/19 79/7 79/10 79/12 81/4 81/5 83/15 84/10 84/11 84/23 84/24 85/3 85/17 86/12 86/18 87/1 87/2 87/8 87/12 87/17 87/17 88/16 88/21 88/24 89/15 90/7 90/14 90/19 91/18 92/3 93/6 93/23 98/4 106/17 106/19 108/2 109/13 109/18 110/5 110/9 110/24 111/8 113/5 113/9 113/23 131/5 132/15 135/20 136/7 136/22 137/16 138/1 138/11 142/3 142/5 142/13 143/1 143/21 145/4 145/19
justice [3] 102/3 113/21 124/4
justified [1] 88/5
justify [1] 127/20

**K**

K-E-R-M-A-N [2] 136/24 141/25
keep [5] 38/8 108/21 130/19 146/6 147/8
keeps [2] 86/8 86/10
kept [3] 24/23 24/24 68/14
Kerman [8] 136/11 136/23 137/10 138/1 141/25 143/7 143/7 144/24
key [1] 109/23
kicker [1] 83/10
kind [3] 27/14 76/16 77/17
King [1] 136/4
knew [5] 85/2 88/3 88/20 88/20 106/9
know [67] 9/16 11/12 17/2 22/15 24/16 26/9 26/15 26/16 27/25 33/8 33/8 33/16 37/15 37/23 38/2 41/16 42/23 43/4 43/5 43/17 43/20 43/22 44/24 46/16 47/5 47/14 50/18 57/19 62/14 62/17 62/19 64/25 66/17 66/21 73/13 77/17 78/7 78/24 79/2 79/12 79/13 85/10 86/11 86/19 86/19 88/4 88/5 88/17

# A1235

**K**

know... [19] 88/19 89/14 90/5 91/23 92/5 93/14 98/2 100/13 100/17 103/16 104/6 111/22 112/8 117/19 132/16 134/18 137/16 142/10 144/4
knowingly [6] 107/3 119/21 124/25 129/9 129/13 130/13
knowledge [4] 64/3 65/19 66/10 123/15
known [5] 9/19 23/10 120/1 124/21 126/7
knows [9] 83/1 88/8 90/14 96/4 96/4 96/4 96/6 96/8 98/9

**L**

L-A-M-O-U-S-E-S-M-I-T-H [1] 51/15
lab [3] 22/14 27/24 108/17
Laboratories [1] 52/25
laboratory [9] 52/4 53/8 53/10 53/17 53/25 54/6 56/22 59/19 60/23
lack [5] 84/6 85/24 110/8 110/21 122/2
lacked [2] 110/10 124/9
ladies [12] 70/6 72/4 81/3 86/3 90/17 95/6 103/21 107/10 108/20 112/20 113/6 113/16
LAMOUSE [7] 51/9 51/14 51/18 55/18 58/3 58/18 148/8
LAMOUSE-SMITH [4] 51/9 51/14 55/18 148/8
language [9] 10/5 10/19 10/20 11/4 14/19 14/20 15/5 17/1 17/2
large [3] 60/22 77/20 133/14
last [32] 6/20 21/3 24/25 29/1 29/2 29/4 30/2 59/7 59/8 59/9 59/11 60/17 63/24 72/7 72/10 72/14 78/22 79/11 81/5 82/23 82/25 88/12 88/13 88/16 92/22 108/25 109/2 109/18 109/22 113/17 113/18 135/4
late [4] 43/2 70/2 87/3 87/4
later [8] 72/7 72/11 87/20 89/13 94/4 115/2 121/22 138/13
latex [1] 25/4
law [22] 1/22 16/17 76/1 107/20 109/15 114/4 118/22 118/23 119/2 119/10 119/16 120/3 122/15 123/18 124/6 128/10 142/5 142/6 143/2 143/13 144/10 144/24
lawful [2] 10/22 120/19
lawfulness [1] 10/9
laws [1] 119/18
lawsuit [3] 76/2 79/18 83/14
lawyer [1] 90/1
lawyering [1] 132/8
lawyers [2] 89/17 90/3
leading [2] 123/6 125/1
learned [5] 28/2 88/14 88/15 111/2 112/12
least [5] 14/19 19/7 26/17 36/23 118/17
leave [7] 7/7 37/22 42/22 43/17 43/18 147/12 147/14
leaves [1] 67/12
lecture [1] 53/18
lectures [3] 53/14 53/15 53/19
led [2] 8/7 107/12
left [9] 39/16 42/21 43/3 81/23 81/25 96/15 96/16 104/4 104/5
legal [4] 4/6 5/9 7/25 8/13
legitimate [1] 113/15
length [2] 139/22 143/1
less [4] 47/22 56/24 115/5 144/5
lesser [1] 140/11
let [14] 12/12 34/11 36/12 64/16 75/24 79/7 84/23 89/2 110/5 132/16 134/13 134/16 145/10 146/5
let's [15] 11/22 25/5 71/20 72/18 72/22 75/15 76/9 79/19 91/22 92/5 100/2 102/7 104/11 105/16 107/14
lettered [1] 134/2

letters [1] 77/20
level [3] 52/2 52/3 75/4
liability [21] 126/2 126/4 126/7 126/25 137/17 137/19 137/21 137/23 139/8 139/10 139/13 139/16 139/18 139/18 140/3 140/7 140/10 140/15 140/15 140/17 141/4
liable [10] 11/5 11/14 69/3 105/2 105/3 106/23 116/11 119/10 122/22 122/23
liberty [15] 80/10 87/15 87/23 107/5 107/12 125/2 136/18 136/21 137/9 138/4 138/14 139/19 140/8 140/11 143/9
lie [7] 74/8 74/8 75/22 76/1 80/25 93/8 108/22
lied [3] 71/13 75/23 118/3
life [2] 107/21 107/21
light [5] 5/4 13/23 14/13 92/21 117/21
lights [3] 97/16 97/17 97/19
like [32] 7/15 16/12 18/23 22/21 25/8 25/8 25/8 32/16 50/15 55/17 57/2 62/1 70/23 76/7 78/17 79/11 80/2 81/1 81/23 82/20 84/25 90/12 91/24 92/19 92/20 95/12 107/17 114/22 132/12 132/16 144/7 144/11
likely [1] 126/13
likewise [1] 106/19
limine [2] 36/2 137/6
limited [2] 4/10 122/13
limiting [2] 5/17 5/18
limits [1] 13/11
line [6] 15/22 50/25 72/24 80/2 84/7 90/17
Line 20 [1] 72/24
list [11] 116/22 116/23 131/24 131/25 132/1 132/5 132/24 132/25 133/3 133/9 133/19
listed [1] 64/19
listen [6] 70/8 83/21 93/17 113/4 113/13 113/14
lists [1] 135/10
little [7] 46/19 57/1 85/5 87/7 95/17 133/13 146/6
LLP [1] 1/14
loaded [2] 27/5 96/24
local [1] 119/1
logic [3] 76/22 82/17 85/14
logical [3] 70/25 84/13 85/1
logically [2] 75/6 112/17
long [12] 19/4 22/19 24/8 46/23 46/25 52/20 69/9 70/3 96/3 113/17 136/2 143/4
longer [5] 13/24 14/3 58/11 145/21 146/6
look [26] 60/14 71/20 72/9 72/12 72/18 75/15 75/23 76/19 76/25 77/4 77/15 78/19 79/7 79/14 79/19 82/12 90/10 96/21 98/3 99/5 99/25 111/21 113/19 133/3 133/5 138/3
looking [7] 24/1 30/8 39/15 44/25 60/13 89/11 137/25
loose [1] 79/10
Lord [1] 88/8
lose [2] 88/4 92/13
loss [6] 7/2 126/18 136/21 138/4 138/12 138/14
lot [5] 42/25 43/5 70/21 96/13 98/12
lunch [3] 93/23 94/5 94/6
lying [4] 15/18 99/15 99/23 118/4

**M**

machine [8] 34/3 34/5 37/14 37/17 37/21 37/23 37/25 38/1
made [30] 4/5 5/12 12/3 12/4 12/14 28/24 37/22 66/25 73/14 74/9 80/17 87/12 87/14 93/19 95/16 98/13 103/15 107/11 112/25 115/19 115/22 117/3 117/3 118/16 118/20 119/12 121/17 130/16 144/4 145/22
made-up [1] 115/22
magnitude [1] 137/10
mail [1] 2/3

main [1] 90/22
maintained [1] 99/16
maintains [2] 61/13 63/21
maintenance [1] 12/22
majority [1] 13/3
make [56] 4/18 5/21 11/3 16/17 16/18 16/18 17/6 19/16 25/19 28/3 31/19 32/2 32/12 34/10 34/12 54/7 71/20 73/15 73/20 74/11 76/14 76/17 76/20 76/24 80/2 80/10 81/1 81/7 81/8 81/19 84/25 85/4 85/14 85/15 85/15 85/18 85/21 88/24 90/8 90/12 90/14 96/5 97/12 97/20 99/21 111/18 112/9 113/3 113/19 121/25 126/8 127/19 131/25 132/5 132/11 144/19
makes [10] 78/19 99/22 99/22 99/24 99/25 100/9 100/11 100/25 115/18 124/18
making [6] 3/24 17/5 18/16 68/10 122/1 144/2
malice [11] 106/3 106/9 110/7 110/8 110/11 110/20 123/7 123/13 124/7 124/9 124/16
malicious [11] 5/3 11/9 68/22 69/6 104/12 104/17 105/13 106/2 106/24 122/16 138/8
maliciously [11] 90/23 91/18 104/14 106/10 115/23 116/5 123/1 124/2 127/18 129/4 129/6
man [24] 71/7 71/18 76/9 78/18 78/24 79/4 79/16 80/2 83/22 84/8 86/6 88/25 89/1 89/12 93/21 99/3 103/9 104/6 108/22 111/6 112/3 113/1 113/15 113/21
man's [7] 75/16 77/1 80/11 87/15 87/23 88/1 89/8
mandatory [1] 136/13
many [19] 15/11 21/22 21/24 22/6 22/10 24/4 26/12 26/18 52/11 54/9 54/13 55/5 55/11 59/23 72/3 72/8 72/10 72/14 99/24
mark [4] 133/6 133/19 134/20 135/11
marked [7] 35/8 45/8 131/6 131/7 131/13 131/17 131/21
markers [1] 39/5
marking [1] 62/7
marshal [6] 117/2 128/8 130/17 135/7 135/8 135/10
MARSHALL [42] 1/2 3/7 3/9 29/3 32/23 44/8 44/8 71/4 72/19 73/5 73/9 74/20 75/9 76/6 76/16 79/22 79/24 79/24 80/2 81/8 81/21 83/14 84/14 84/15 84/17 84/19 86/16 86/20 86/21 87/1 90/22 91/3 91/4 91/7 91/15 92/10 96/23 97/17 98/7 110/18 112/5 125/19 Marshall's [9] 49/20 51/2 72/25 74/7 76/7 76/12 76/17 83/1 83/16
massive [1] 86/7
Master's [2] 53/5 54/25
match [1] 108/12
material [2] 25/22 47/1
matter [14] 18/16 28/18 35/3 53/20 58/9 58/23 59/1 59/18 62/23 75/24 110/13 115/10 133/15 143/23
matter that [1] 133/24
matters [1] 13/24
may [58] 3/12 6/14 10/17 10/23 11/5 11/14 12/19 15/12 19/7 20/3 20/5 22/22 23/17 30/11 31/13 36/3 36/23 42/4 50/25 55/20 55/21 57/7 57/8 62/12 66/14 71/4 86/3 91/20 92/1 93/4 101/19 102/9 104/25 114/10 114/21 118/4 118/11 120/9 120/21 121/16 121/20 122/2 122/4 122/23 123/20 127/11 127/13 127/19 127/23 128/1 128/3 128/5 128/5 132/25 136/3 141/8 144/17
May 15 [3] 30/11 36/23 50/25
May 15th [3] 22/22 71/4 120/9
maybe [3] 25/8 29/1 86/24
me [36] 12/12 12/12 17/12 20/4 20/16 20/17 30/15 34/11 36/12 45/19 54/10 60/10 60/13

**M**

me... [23] 61/18 64/16 71/2 78/6 78/12 80/3 84/23 110/5 114/4 117/1 128/8 128/17 128/18 129/23 130/2 134/13 134/16 140/6 140/9 140/17 144/7 144/11 145/10
Meade [5] 81/9 81/11 84/18 86/16 90/9
Meade's [4] 86/17 86/22 88/2 90/7
mean [22] 10/8 25/18 30/12 43/9 52/3 54/2 56/16 56/16 59/20 61/21 73/7 106/18 106/20 106/21 107/18 108/3 108/8 108/12 108/13 115/9 144/4 145/21
means [10] 38/19 54/3 56/18 88/5 98/7 99/14 101/12 102/2 108/10 114/25
measured [3] 9/12 9/22 121/19
medical [10] 16/6 18/21 18/25 51/23 51/25 52/9 52/21 53/24 108/5 145/9
meet [3] 89/17 92/13 111/13
meeting [4] 20/3 20/5 87/7 90/2
member [2] 53/21 53/22
members [4] 33/19 33/21 38/18 46/5
memo [11] 78/17 78/23 78/25 79/3 97/25 98/2 98/2 98/6 98/9 135/2 135/3
memory [4] 30/8 74/1 74/3 89/16
men [5] 87/5 87/6 101/5 101/6 110/16
mention [4] 4/19 44/7 64/22 78/4
mentioned [4] 31/8 31/20 41/17 110/25
mere [1] 110/7
merely [1] 126/1
merits [1] 4/14
mess [1] 88/24
message [9] 17/1 17/18 34/5 92/25 93/3 93/5 93/8 93/12 103/17
met [1] 115/13
metal [1] 96/7
Michael [5] 6/5 6/6 95/10 109/8 118/23
middle [4] 39/12 71/7 71/9 81/25
midnight [3] 33/23 33/25 43/2
might [5] 7/14 8/18 82/7 127/15 137/20
mind [7] 15/5 102/7 103/9 108/21 117/5 128/12 147/9
minds [1] 102/19
minor [1] 133/13
minute [8] 31/20 41/17 67/21 79/23 84/12 84/17 84/23 138/1
minutes [10] 19/8 19/12 19/13 19/14 33/6 68/24 105/8 113/23 142/15 142/16
misconduct [2] 127/13 127/21
misguided [1] 6/11
mislead [1] 92/20
misread [1] 130/6
missed [1] 82/7
missing [1] 84/4
misstatement [2] 143/13 144/9
mistake [2] 76/6 119/23
mistaken [7] 15/12 15/13 15/14 69/18 86/24 102/24 118/4
mistrial [3] 4/8 4/13 8/10
mixed [1] 47/20
modify [2] 4/17 144/7
molecular [1] 53/12
moment [12] 4/18 5/1 8/18 9/13 9/22 46/2 82/8 84/14 84/15 84/22 116/21 121/20
moments [2] 30/7 125/5
monetary [1] 137/11
money [4] 92/17 108/23 108/24 126/9
month [2] 26/15 59/9
months [6] 86/21 87/24 93/22 113/1 126/16 140/11
more [26] 5/19 9/8 17/22 18/10 18/25 24/21 39/11 56/25 57/1 66/13 76/25 81/18 85/8 106/2 110/15 112/7 112/8 114/15 115/11 116/7 125/13 128/4 136/22 141/1 144/4

145/22
morning [26] 3/22 20/14 20/15 21/6 21/7 28/14 28/15 33/12 37/12 37/18 37/19 37/20 38/20 43/3 51/18 51/19 58/18 58/19 70/13 71/24 82/5 83/3 83/24 98/21 107/15 147/8
most [5] 77/21 81/18 81/20 82/20 96/8
motion [7] 36/2 68/2 68/4 69/14 96/6 137/5 137/25
motions [2] 3/11 3/20
motivated [2] 123/7 123/13
motive [6] 104/5 106/6 108/22 108/22 108/23 110/5
move [5] 5/3 19/3 69/13 86/6 109/24
moved [1] 35/23
movement [3] 99/9 102/14 102/15
movements [5] 8/6 68/10 80/17 80/22 81/9
MR [2] 58/17 66/16
Mr. [16] 29/3 56/6 66/6 66/6 72/19 72/25 73/5 73/9 76/7 84/14 86/16 90/22 97/5 97/17 110/18 112/5
Mr. Cohen [1] 66/6
Mr. Marshall [10] 29/3 72/19 73/5 73/9 84/14 86/16 90/22 97/17 110/18 112/5
Mr. Marshall's [2] 72/25 76/7
Mr. Norinsberg [2] 66/6 97/5
Mr. Ross' [1] 56/6
Mrs [1] 148/8
MS [3] 51/17 55/18 65/25
Ms. [5] 51/18 58/3 58/18 73/21 74/1
Ms. Lamouse-Smith [3] 51/18 58/3 58/18
Ms. Phillips [2] 72/17 73/8
much [13] 3/20 5/20 51/7 67/11 76/21 109/8 110/15 112/7 112/8 114/9 114/15 129/21 139/25
multiple [5] 3/10 3/20 47/12 71/5 97/6
must [17] 6/22 102/6 107/2 107/9 107/18 110/16 115/11 118/18 124/14 124/16 125/4 125/10 127/6 127/21 128/14 138/13 144/17
my [54] 3/13 3/16 5/1 11/4 15/24 16/2 16/16 16/23 16/25 18/9 18/18 20/13 23/4 24/24 24/24 26/2 26/10 33/12 33/14 35/16 35/18 37/10 41/1 41/19 44/25 44/25 52/24 53/20 54/25 57/7 58/6 60/22 64/3 64/13 65/19 66/10 67/1 74/3 78/6 78/22 80/2 90/1 91/2 95/10 95/11 101/2 108/25 137/3 137/5 137/25 141/24 143/2 143/16 144/20
myself [1] 114/16
mystery [1] 64/4

**N**

N-A-N-A [1] 51/14
name [4] 21/1 21/2 21/3 51/13
named [2] 56/5 96/23
names [1] 6/1
NANA [2] 51/9 51/14
national [1] 114/21
near [1] 86/18
necessarily [2] 70/22 122/2
necessary [3] 3/24 20/6 138/9
need [4] 6/5 18/7 87/21 104/13
needed [2] 52/7 103/18
negative [3] 7/4 7/4 25/17
negligence [1] 119/23
neither [2] 114/14 126/12
never [26] 15/9 26/20 26/21 49/5 72/24 73/4 73/12 73/16 73/24 74/2 74/3 74/14 80/6 81/14 82/2 82/3 82/16 83/5 88/25 89/2 107/24 110/25 112/22 112/24 113/10 113/11 new [21] 1/1 1/5 1/6 1/16 1/16 1/22 1/23 1/23 3/3 3/8 4/8 21/9 52/18 53/16 55/15 72/14 83/4 119/5 120/2 122/15 136/11
news [1] 147/8
next [16] 29/6 51/7 61/19 61/24 67/23 75/8

75/8 76/4 88/9 94/7 97/14 113/25 134/21 134/22 140/16 146/13
night [11] 33/22 34/2 88/8 89/9 97/9 112/23 115/23 117/12 117/19 120/18 147/11
nighttime [1] 43/21
no [163]
Nobody [2] 100/23 121/6
Nobody's [1] 115/5
nod [1] 20/18
nodding [11] 115/16 116/13 125/9 127/4 139/11 139/15 139/24 140/5 140/21 140/24 141/16
nominal [14] 136/15 136/22 137/9 138/17 138/17 138/20 138/23 138/23 143/4 143/5 143/8 143/14 143/20 145/1
non [1] 21/19
non-fatal [1] 21/19
none [3] 26/19 51/6 104/8
nonsense [3] 87/8 87/10 100/22
NORINSBERG [3] 1/18 66/6 97/5
normal [3] 56/25 66/23 90/11
normally [1] 34/19
North [2] 21/12 101/4
not [181]
note [18] 7/15 17/16 17/21 19/21 24/10 69/10 99/2 117/1 117/2 128/8 131/2 135/17 135/24 139/4 141/14 143/24 146/4 146/5
noted [1] 38/16
notes [5] 30/8 56/10 56/11 144/12 145/12
nothing [5] 58/13 87/24 90/10 114/17 132/1
notion [2] 109/16 110/5
now [113] 3/3 3/4 4/2 5/8 5/20 6/8 7/12 8/11 14/1 16/18 17/17 20/17 30/21 36/19 40/14 44/10 46/5 46/22 47/24 48/23 49/14 58/9 59/24 60/11 61/15 62/1 64/25 67/19 70/5 70/23 71/2 71/4 71/20 71/23 73/4 74/19 74/20 75/23 77/1 77/13 77/14 81/3 82/5 82/14 82/17 83/6 83/11 84/2 86/14 86/23 91/1 91/6 91/21 92/14 93/24 93/25 95/14 95/18 95/24 96/11 96/18 96/20 97/10 97/25 98/2 98/12 98/14 99/13 99/19 100/22 101/1 101/10 101/22 101/22 102/21 103/1 103/11 104/2 105/6 105/16 106/12 106/17 106/25 107/1 107/10 107/14 107/16 108/6 108/20 108/25 110/22 111/13 111/22 112/12 114/5 115/7 116/19 117/14 118/24 120/6 121/1 128/24 131/1 134/14 134/16 140/16 141/13 143/2 143/7 144/8 145/18 146/2 147/4
now's [1] 84/21
nowhere [2] 99/2 109/25
number [11] 6/5 45/11 60/22 74/6 74/8 79/19 81/11 89/6 96/24 98/6 134/18
Number 1 [1] 98/6
nyed.uscourts.gov [1] 2/3
NYPD [7] 30/22 32/11 34/6 42/18 55/22 65/8 74/12

**O**

oath [11] 72/10 73/6 75/16 75/21 76/3 79/1 79/9 79/20 80/13 86/5 86/25
object [20] 72/24 73/5 75/10 75/12 75/16 75/18 75/20 96/5 102/11 105/21 137/7 142/13 142/24 144/8
objected [1] 15/24
objection [36] 7/16 16/2 17/16 17/21 25/24 31/11 31/11 35/24 36/5 36/5 36/13 42/1 43/15 43/24 44/4 47/2 48/8 49/17 50/1 64/6 65/14 66/8 66/20 67/9 91/25 93/2 104/23 135/19 141/17 141/18 141/19 141/20 142/4 143/17 145/12 145/15
objections [3] 7/13 117/3 130/16
objectively [1] 121/11

# O

objects [2] 17/3 50/15
obligation [1] 16/16
obligatory [1] 136/13
observation [1] 120/21
observations [4] 10/22 81/19 103/22 121/18
observe [2] 80/19 80/22
observed [11] 4/11 7/22 58/3 68/9 69/15 80/17 99/11 101/6 102/10 105/21 120/23
observer [1] 19/5
obtain [1] 44/10
obviously [2] 12/4 120/14
occasion [1] 117/24
occupation [1] 114/22
occurred [6] 57/17 57/19 96/2 115/23 122/17 125/21
occurrence [1] 96/22
odds [1] 87/13
off [21] 18/6 27/10 41/25 42/8 50/4 50/9 50/16 58/7 82/14 86/20 88/6 94/4 95/8 95/15 95/18 95/19 99/8 100/2 100/25 115/25 142/21
offer [1] 55/18
office [24] 18/21 37/17 37/24 51/23 51/25 52/9 52/20 53/24 55/22 61/2 61/13 62/24 63/21 64/17 65/2 65/13 65/17 66/2 68/24 89/2 104/19 105/18 105/25 108/6
officer [139] 7/9 9/19 9/20 20/20 21/2 21/6 21/9 23/9 23/10 23/14 23/22 23/25 24/10 25/3 28/7 28/8 28/9 28/9 28/14 29/3 29/4 30/21 31/20 32/5 32/21 32/24 36/17 36/19 37/10 39/12 40/14 40/15 41/4 41/24 42/3 43/9 43/14 43/23 44/3 44/6 44/11 45/21 47/11 48/4 48/10 48/12 48/20 48/23 49/14 49/22 50/10 50/25 68/9 68/11 68/12 68/23 71/22 71/23 71/23 71/24 72/5 75/11 76/7 76/19 77/1 77/2 77/3 77/6 78/25 79/15 81/13 81/13 82/9 82/9 82/19 84/16 84/23 84/25 85/11 85/11 86/8 88/22 89/20 89/21 89/24 93/7 93/9 93/13 95/18 96/2 96/11 97/4 97/9 98/1 98/14 98/18 98/18 98/20 98/21 99/8 100/18 101/4 102/11 102/13 102/16 102/16 103/6 103/7 103/8 103/16 103/25 103/25 105/6 105/14 105/16 107/23 109/17 111/17 112/2 112/10 121/14 121/16 121/17 121/25 122/3 125/11 125/11 129/2 129/4 129/6 129/8 129/12 129/19 129/20 129/21 129/22 129/22 130/11 148/4
Officer Fox [1] 68/12
officer's [3] 69/14 109/25 121/12
officers [55] 5/24 8/4 8/6 8/7 8/13 15/7 16/17 28/8 37/22 42/12 44/1 69/23 81/4 81/19 84/4 85/6 86/5 86/24 88/3 90/10 90/15 91/11 92/17 95/10 99/2 99/14 100/12 100/16 100/17 101/13 101/18 102/8 102/9 102/22 103/2 103/13 104/13 104/19 106/4 106/20 106/21 106/23 107/11 108/3 108/13 109/7 110/8 110/13 112/22 113/17 115/3 118/22 120/2 123/24 124/12
officers' [3] 4/6 102/19 103/22
official [2] 2/1 5/25
officials [1] 119/2
often [6] 15/16 18/21 32/15 34/20 60/12 60/19
oh [4] 15/14 46/18 48/11 67/6
okay [22] 6/1 24/23 30/17 38/8 39/17 40/8 40/13 46/2 50/14 59/9 59/22 60/16 67/21 84/21 84/24 93/7 93/9 93/13 113/22 130/15 134/13 147/8
omission [2] 125/15 125/18
omissions [1] 85/24
on-the-job [1] 22/15
once [7] 25/2 37/22 66/24 103/14 112/22

132/11 140/9
one [96] 5/13 9/8 10/4 11/25 17/22 18/10 24/21 27/18 32/16 32/17 34/11 34/12 39/11 39/13 43/13 52/5 58/8 59/23 60/11 63/2 63/19 66/13 68/16 69/22 71/3 71/6 71/13 72/7 74/8 74/25 78/22 78/23 79/5 79/17 79/19 81/9 81/13 81/24 82/6 82/7 84/10 84/23 86/17 86/17 87/13 88/10 89/1 89/4 89/4 89/6 89/8 90/5 90/9 90/10 91/21 92/22 93/25 94/1 95/21 100/6 100/16 101/6 104/3 104/21 105/1 106/2 108/15 108/21 110/14 110/16 110/17 110/17 113/5 113/18 116/7 116/10 118/16 121/14 121/14 121/20 124/24 125/13 125/23 126/4 126/6 127/5 128/5 130/20 132/11 133/13 134/21 134/22 135/4 136/7 138/1 143/12
one-way [1] 89/8
ones [2] 113/14 113/19
only [23] 5/11 11/25 33/17 37/11 68/23 68/25 76/2 82/2 85/13 89/24 100/16 101/8 101/10 103/1 104/9 108/21 112/5 112/16 113/2 116/6 126/12 127/5 127/7
open [7] 3/1 86/4 89/10 92/3 128/19 130/10 147/9
open-and-shut [2] 86/4 92/3
opened [3] 4/3 4/3 7/19
opening [7] 75/3 92/3 98/15 98/15 101/2 111/24 117/13
opinion [7] 12/16 18/16 18/20 18/23 18/24 55/20 58/6
opinions [1] 118/12
opportunity [5] 15/11 36/17 92/24 108/25 117/18
opposed [1] 137/8
opposite [1] 11/20
oppressively [1] 127/18
order [7] 4/7 4/10 49/14 54/21 70/23 107/21 139/9
ordered [1] 114/9
ordinance [1] 119/3
origin [1] 114/21
original [3] 135/24 143/16 145/1
originally [3] 58/11 65/12 144/22
other [39] 12/10 12/22 33/19 56/20 64/16 71/12 73/14 75/24 78/14 78/15 79/7 79/14 81/3 84/10 85/4 92/10 92/19 93/6 93/9 93/12 100/11 103/3 110/2 110/15 110/17 113/6 117/17 117/17 117/22 118/1 118/13 119/7 119/23 125/7 128/11 128/13 130/16 138/5 138/10 142/14
other police [1] 93/9
others [1] 127/15
otherwise [5] 12/23 47/4 87/8 127/15 145/12
our [21] 7/15 17/16 17/21 19/22 27/5 37/13 53/17 56/19 56/22 56/24 61/17 66/2 79/8 91/19 93/15 95/15 111/9 134/2 136/14 144/2 147/12
ourselves [3] 42/25 43/1 43/6
out [82] 3/16 6/6 7/4 15/14 23/5 27/4 27/23 32/12 35/13 35/14 35/16 38/23 39/4 43/6 46/15 48/21 56/7 66/23 67/22 73/12 75/9 75/10 75/13 77/5 77/19 75/20 75/22 76/2 76/23 77/5 77/7 77/17 77/21 77/22 78/13 78/14 78/18 79/23 80/16 81/22 82/7 83/3 83/16 84/17 84/24 85/9 85/12 85/13 86/7 87/14 88/9 88/18 89/5 89/16 91/9 91/12 93/7 93/9 96/5 97/19 98/4 98/14 98/19 99/7 99/7 99/8 99/9 100/13 102/9 104/4 104/5 110/9 110/14 112/7 112/14 117/5 119/12 124/4 124/5 127/24 136/16
outside [9] 3/12 13/11 19/11 30/7 54/6 118/6 118/8 128/7 142/17
over [16] 3/19 15/8 27/15 66/18 67/2 75/7

83/17 86/9 86/9 86/10 86/10 87/12 88/4 89/12 91/13 145/12
overcome [2] 6/15 123/21
overrule [1] 17/15
Overruled [1] 20/2
overtime [1] 78/18
own [7] 31/23 31/25 76/5 78/19 81/4 109/4 114/23
owned [2] 87/1 87/17

# P

p.m [5] 95/3 113/24 131/1 147/3 147/15
packaged [1] 27/23
packages [1] 27/24
packaging [1] 56/10
Packet [1] 143/25
page [35] 5/22 5/24 6/8 6/19 6/20 6/24 7/3 8/21 8/24 9/10 9/10 11/2 11/8 12/16 13/18 14/14 15/5 15/7 17/23 29/6 60/13 60/14 60/17 67/23 72/23 75/15 80/21 94/7 113/25 130/8 130/9 130/11 146/13 148/3 148/13
Page 9 [1] 15/5
Pages [1] 138/3
paid [1] 95/9
painstakingly [1] 15/12
panel [1] 113/2
panicked [1] 86/17
pants [5] 58/4 75/17 75/19 75/21 75/22
papers [2] 137/6 137/25
paperwork [17] 24/24 40/21 40/24 41/20 45/1 76/25 77/4 80/14 96/12 96/13 96/18 98/19 99/2 99/4 103/14 147/13 147/14
paragraph [13] 6/9 6/9 8/22 8/23 8/24 9/1 9/2 9/11 9/11 11/2 11/8 15/7 60/17
paragraphs [1] 6/24
Pardon [1] 20/4
parole [1] 102/9
part [13] 30/21 32/8 46/6 73/2 83/7 90/5 100/11 104/3 104/4 104/12 104/17 125/16 144/1
parted [1] 100/4
particular [8] 33/2 57/14 58/21 77/13 82/23 89/15 115/8 127/6
parties [3] 71/11 114/21 143/17
partner [4] 35/16 37/10 86/9 103/17
parts [3] 61/15 65/17 99/24
party [3] 115/13 119/11 135/20
party's [1] 115/10
pass [1] 77/17
passenger [1] 76/11
past [2] 17/2 110/24
path [1] 15/13
patrol [3] 32/5 43/23 101/5
patrolman [1] 22/18
pause [1] 3/18
paying [2] 70/16 89/10
penal [1] 122/15
people [11] 15/16 47/12 54/5 73/14 83/21 87/9 87/10 92/20 118/14 118/25 128/13
people's [1] 117/23
per [5] 21/22 21/23 22/4 22/5 91/20
perfect [2] 70/22 90/8
perfectly [3] 42/17 86/20 102/23
perform [2] 52/5 56/22
performed [8] 21/24 22/7 25/16 54/15 55/1 55/5 56/21 56/24
period [1] 4/11
permit [2] 17/14 126/23
permitted [4] 4/1 4/15 4/19 124/8
person [21] 33/17 37/11 56/4 88/7 88/7 90/11 99/22 99/23 108/21 112/6 118/2 119/3 119/7 119/15 120/10 122/1 122/11 123/1 123/17 124/6 124/19

**A1238**

## P

person's [1] 123/15
persona [1] 124/5
personal [4] 78/22 106/5 114/20 124/5
personally [3] 23/10 54/10 56/1
perspective [1] 8/8
pertain [1] 101/18
pertains [1] 105/14
Phillips [3] 73/20 73/21 74/1
phone [1] 145/12
phony [1] 79/5
photo [2] 24/18 24/21
photograph [3] 23/15 23/23 24/10
photographs [2] 21/21 23/15
photos [2] 24/23 24/24
phrased [2] 15/25 141/11
physical [4] 72/25 73/3 73/5 84/8
pick [2] 42/7 44/2
picked [2] 41/24 121/6
picture [1] 23/22
piece [3] 70/24 111/15 121/20
pieces [1] 75/4
pin [1] 104/6
pitch [1] 102/15
pitching [1] 96/6
place [4] 7/5 96/22 113/10 130/20
placed [2] 98/7 120/25
plain [1] 84/11
plaintiff [93] 1/3 1/13 1/15 4/2 4/5 4/12 4/16
 5/8 6/25 7/22 8/1 8/8 11/3 12/24 13/22 14/5
 15/23 32/23 36/5 66/5 68/10 68/12 69/15
 96/5 97/21 98/24 99/10 99/23 101/14 101/19
 102/4 102/11 102/12 102/21 103/1 103/2
 103/11 103/12 104/1 105/21 106/4 106/5
 106/7 106/12 107/2 107/10 108/9 109/11
 115/4 115/18 115/24 116/3 116/4 116/5
 116/8 116/14 116/18 118/20 119/7 119/16
 120/4 120/8 120/11 120/13 120/13 120/15
 121/5 121/7 121/13 121/22 122/17 122/20
 123/7 123/25 124/11 124/18 124/24 125/10
 125/20 125/23 126/5 126/8 126/13 126/15
 127/10 127/16 127/22 127/24 128/25 129/2
 129/5 129/7 145/3
plaintiff's [52] 10/2 17/17 19/22 19/24 35/9
 35/23 36/16 45/9 62/1 62/11 68/6 68/14
 95/16 95/19 95/24 96/21 97/4 98/5 98/15
 99/1 99/5 99/13 100/22 101/9 104/2 104/3
 104/11 105/12 106/25 107/16 107/19 108/2
 109/2 116/1 122/11 123/9 125/1 129/8
 129/12 130/12 133/22 133/22 133/23 133/23
 133/24 133/24 133/24 133/25 134/16 138/9
 139/19 142/2
plaintiffs [5] 7/19 8/3 14/2 108/15 110/22
plan [2] 16/20 16/24
play [10] 80/10 96/25 97/1 97/23 97/25
 98/10 98/17 98/23 108/9 108/19
played [1] 125/15
playing [1] 79/10
pleasant [1] 147/11
please [32] 20/19 20/25 21/8 23/25 25/5
 27/12 30/16 36/3 36/12 37/9 46/10 46/22
 51/8 51/12 53/3 67/20 67/21 70/5 70/10
 84/23 95/4 113/12 114/2 130/17 131/25
 131/25 132/1 132/25 134/13 135/9 147/2
 147/4
pledges [1] 93/19
plus [2] 134/20 135/6
PO [2] 6/4 6/6
point [26] 7/18 10/1 12/9 17/13 32/15 46/9
 47/8 68/3 69/22 70/20 73/3 77/25 82/7 84/2
 90/1 98/4 99/7 99/7 99/9 102/14 110/23
 110/24 135/21 136/7 136/17 142/8

pointed [1] 99/8
pointing [1] 85/13
points [3] 7/16 95/16 109/13
police [32] 9/19 20/20 21/2 21/9 21/10 23/9
 27/24 37/10 76/18 77/20 82/21 83/4 84/5
 84/13 84/14 84/19 84/21 84/22 85/11 86/5
 90/12 93/7 93/9 93/13 95/10 98/21 100/6
 100/7 109/7 115/3 120/2 121/14
policies [1] 53/9
portion [2] 138/11 145/23
portions [1] 114/11
position [7] 7/19 51/25 100/8 112/9 142/2
 142/7 142/9
positive [5] 15/17 25/19 26/18 27/9 28/3
possessed [3] 27/4 121/9 122/14
possesses [1] 122/12
possession [29] 21/19 27/3 43/8 56/8 72/19
 72/21 72/25 73/3 73/5 73/9 73/13 73/17
 73/22 74/2 74/7 74/13 74/21 83/23 96/23
 98/8 106/16 111/6 112/15 112/19 121/5
 121/13 122/12 122/14 122/21
possessions [1] 31/6
possibilities [1] 71/6
possibility [2] 71/14 86/24
possible [11] 34/15 48/7 58/6 58/10 64/15
 64/16 65/7 74/18 74/19 82/18 141/11
possibly [1] 145/11
potentially [2] 61/11 64/13
power [1] 75/23
practice [2] 27/5 50/20
precedence [1] 14/13
precinct [9] 21/15 22/18 23/2 34/17 39/9
 40/15 103/12 103/14 103/19
predates [2] 61/9 143/7
predetermined [1] 39/4
prefab [1] 39/13
preferred [4] 42/20 42/21 43/18 47/22
prejudice [2] 117/9 128/23
preliminary [1] 13/6
premised [1] 122/11
preparation [9] 11/17 12/25 68/25 69/4
 105/4 105/8 122/24 125/6 129/10
preparatory [1] 13/5
prepare [2] 62/18 67/1
prepared [7] 35/2 35/5 45/2 60/5 78/10
 78/11 82/12
preponderance [1] 102/2
prerequisite [1] 136/1
present [9] 12/20 20/3 20/5 20/7 61/11 65/8
 70/25 78/2 124/13
presented [12] 6/21 6/21 11/21 14/22 86/11
 102/4 107/3 107/7 107/7 124/25 125/2 125/3
presenting [4] 116/2 129/9 129/13 130/13
presiding [1] 3/4
presumed [1] 14/21
presumption [9] 4/25 6/13 6/15 13/19 13/24
 14/1 14/16 123/19 123/21
pretrial [1] 7/24
pretty [1] 85/10
prewritten [1] 39/18
primary [1] 71/17
print [1] 25/22
prints [7] 25/22 49/20 82/10 82/13 83/1
 103/20 108/3
prior [11] 4/7 4/10 22/16 52/23 57/12 57/14
 72/1 72/5 97/6 122/4 131/12
private [2] 20/11 130/19
privilege [2] 119/9 119/17
privileged [4] 120/17 120/18 121/2 121/14
privileges [1] 119/9
probabilities [1] 115/12
probable [43] 5/1 6/14 6/15 9/12 9/18 9/22
 9/24 13/19 14/17 14/20 68/8 68/18 101/11

101/12 102/8 103/23 104/14 106/22 110/8
 110/10 110/21 116/15 116/17 120/1 121/2
 121/4 121/8 121/15 121/16 121/19 121/23
 122/2 122/8 123/4 123/11 123/14 123/20
 123/21 123/24 124/9 124/12 124/15 125/18
 probably [6] 22/10 27/10 54/14 88/8 110/17
 115/11
problem [3] 88/6 126/10 142/19
problems [3] 70/3 86/8 88/20
procedure [2] 14/11 82/21
procedures [2] 53/9 55/3
proceed [4] 45/19 70/10 95/4 123/16
proceeding [3] 14/16 123/5 123/6
proceedings [9] 2/5 3/6 73/11 123/2 123/3
 123/8 123/11 123/13 147/16
process [11] 22/24 23/7 25/7 25/8 33/9 38/25
 41/8 49/2 51/1 54/20 124/6
processed [1] 24/2
produce [1] 26/2
produced [1] 2/5
professional [2] 53/21 132/8
profile [4] 61/11 64/8 64/10 64/14
program [1] 55/1
prompt [1] 142/18
proof [7] 92/8 101/22 101/24 102/1 107/13
 115/7 115/14
proper [1] 142/5
properly [2] 4/10 136/5
property [5] 45/2 45/5 45/25 46/2 52/16
propose [2] 5/21 6/9
proposed [6] 5/2 5/21 9/2 10/3 10/3 14/19
proposition [1] 143/12
prosecute [4] 106/11 123/14 129/4 129/6
prosecuted [5] 90/24 104/14 116/5 123/1
 124/20
prosecuting [5] 73/16 73/18 91/18 122/20
 124/13
prosecution [23] 5/4 6/14 6/16 11/9 12/3
 12/23 68/23 69/6 69/9 104/12 104/18 105/10
 105/13 106/3 106/24 115/23 122/16 123/16
 123/20 123/22 123/25 124/1 138/8
prosecutor [28] 6/21 11/14 11/15 11/21 13/4
 66/2 69/4 69/8 73/20 74/6 74/7 74/22 74/2
 93/13 105/4 105/7 105/17 107/4 107/7 112/6
 112/25 122/24 125/1 125/3 125/5 129/10
 129/14 130/13
prosecutors [9] 11/6 63/25 87/19 91/11
 91/12 91/12 91/20 108/16 116/2
protocols [4] 34/6 42/18 55/3 111/9
prove [6] 83/15 92/9 107/2 113/15 116/17
 125/11
proved [2] 125/25 126/14
proven [5] 115/8 120/5 124/24 125/23 126/4
provide [1] 45/11
provided [1] 45/16
provides [1] 118/23
providing [1] 122/18
proving [2] 116/14 125/20
proximally [2] 125/14 126/6
proximate [6] 6/19 119/19 125/12 125/13
 126/14 139/18
prudence [1] 123/17
psychological [7] 4/16 7/1 15/23 16/1 16/2
 126/17 126/19
psychology [1] 15/18
pull [8] 8/1 75/9 75/10 75/17 75/22 77/22
 81/22 96/5
pulled [3] 75/12 75/18 75/20
pulling [4] 58/3 77/7 84/13 101/6
punish [2] 124/6 127/24
punitive [35] 7/9 7/10 16/25 17/4 92/23
 92/24 127/10 127/12 127/19 127/20 127/23
 128/1 128/3 128/4 129/21 135/18 136/1

**P**

punitive... |18| 136/2 137/22 139/5 140/1
140/2 141/1 141/5 141/6 141/6 141/25 143/3
143/6 143/12 143/15 143/20 143/23 143/24
144/22
purpose [3] 23/6 124/3 126/8
push [1] 46/15
put [32] 5/23 6/1 6/9 6/12 7/6 11/5 14/20
31/20 31/23 31/25 71/16 75/4 77/23 77/24
85/20 85/23 85/23 85/24 86/1 91/13 92/18
96/17 100/8 105/24 112/16 112/18 114/20
115/10 117/5 132/3 132/5 136/15
putting [2] 9/6 93/21

**Q**

qualified [2] 69/13 69/19
quarter [2] 93/25 94/1
question [48] 15/25 17/23 17/25 34/11 61/19
61/24 64/13 65/10 66/13 66/14 69/24 71/13
72/23 72/24 75/16 80/21 82/9 91/5 91/17
97/13 97/14 97/16 97/18 100/15 101/10
102/21 111/24 117/6 117/6 117/7 117/14
121/6 123/23 124/23 130/7 130/9 137/21
139/9 139/12 140/1 140/25 141/2 141/2
141/7 141/10 141/22 142/11 147/12
questioned [3] 89/20 97/4 100/21
questioning [2] 70/22 112/6
questions [33] 7/4 8/5 17/24 28/11 38/23
62/5 62/6 65/20 67/10 72/6 72/7 90/18 90/22
91/1 91/6 91/22 92/6 92/6 92/8 92/11 97/6
97/1 97/13 101/17 101/20 103/24 105/13
112/5 116/7 116/20 128/24 129/15 129/16
quick [2] 85/22 147/12
quite [2] 29/2 78/1
quote [1] 138/3
quoted [1] 138/4
quoting [2] 12/15 60/14

**R**

R-E-H-B-E-R-G [1] 5/6
race [1] 114/21
raise [1] 16/12
ran [1] 100/13
Randall [48] 3/9 6/4 6/6 7/10 23/9 23/10
25/3 28/9 29/3 31/20 32/24 40/15 44/6 48/5
48/10 48/12 68/9 71/22 71/23 71/24 81/13
88/21 89/24 95/11 95/18 96/3 97/4 97/9 98/1
98/14 98/18 98/19 98/20 102/13 103/6
103/25 105/16 109/8 109/17 111/17 118/22
125/11 128/25 129/4 129/8 129/20 129/22
130/12
Randall's [2] 96/12 135/3
rapid [1] 70/21
rapid-fire [1] 70/21
rate [1] 18/19
rather [3] 14/23 129/22 141/9
rational [1] 117/11
rationally [1] 117/9
re [2] 51/5 65/22
re-direct [2] 51/5 65/22
reach [3] 18/5 88/18 146/6
reached [2] 128/18 128/20
read [15] 3/21 6/20 10/21 12/12 18/9 70/9
72/23 113/23 114/3 116/21 131/4 137/16
142/5 144/24 147/8
reads [3] 8/25 98/6 130/11
ready [2] 19/19 142/22
real [5] 90/1 107/21 107/21 111/24 141/2
realize [2] 70/15 79/15
really [15] 4/25 47/14 70/19 71/3 72/20
74/18 77/16 77/19 78/15 81/24 83/14 85/16
86/14 86/14 90/3

reason [21] 4/21 30/5 59/1 68/18 77/14 89/7
96/11 100/5 101/8 103/23 104/5 104/7 104/8
104/8 104/9 105/12 106/10 107/25 110/5
119/24 139/21
reasonable [8] 9/20 101/13 101/24 109/20
121/11 122/1 123/17 126/11
reasonableness [2] 69/17 117/20
reasonably [3] 8/12 125/18 126/13
reasoning [2] 76/23 84/11
reasons [4] 95/21 95/22 106/23 107/23
rebut [2] 14/21 122/7
rebuttal [2] 67/15 109/11
rebutted [2] 6/15 123/21
recall [6] 41/15 48/6 48/22 97/18 97/20
117/20
receive [5] 54/24 55/22 66/5 66/6 101/15
received [22] 22/24 36/16 37/16 37/18 53/7
53/8 54/21 54/25 56/11 64/17 64/19 66/1
131/8 131/10 131/14 131/18 131/22 133/7
133/20 135/13 144/13 146/10
recent [2] 5/5 61/2
recently [1] 63/2
recess [5] 20/12 94/6 132/21 135/15 146/12
recieved [1] 135/16
reckless [2] 119/25 127/21
recklessly [1] 119/14
recognize [5] 35/9 35/11 45/21 45/23 45/23
recognized [1] 136/2
recognizes [1] 62/12
recognizing [1] 138/4
recollection [9] 30/11 30/12 33/11 41/1 42/5
42/9 44/25 45/6 63/6
recommendations [1] 144/20
reconsider [1] 5/7
record [3] 7/15 69/10 142/21
recorded [1] 2/5
recover [1] 125/19
recovered [7] 22/22 24/4 26/20 26/21 65/1
65/11 82/10
recovery [3] 7/1 126/16 126/18
RECROSS [2] 66/15 148/10
RECROSS-EXAMINATION [1] 66/15
redact [3] 36/5 36/9 36/10
redacted [1] 2/24
redaction [2] 36/8 36/13
REDIRECT [3] 65/24 148/5 148/9
refer [1] 57/7
reference [2] 93/10 112/10
referenced [2] 7/20 137/5
references [1] 5/12
referred [2] 50/11 99/9
referring [3] 11/7 40/8 40/10
reframe [1] 12/24
refresh [7] 33/10 41/1 44/25 45/5 63/5 74/1
74/3
refreshed [1] 89/16
refreshing [1] 30/8
refuse [1] 128/3
refute [3] 100/23 105/23 109/3
refuted [1] 105/11
regard [1] 122/10
regarding [7] 38/11 53/17 54/3 55/3 66/18
67/1 115/22
regular [2] 35/5 63/14
regulation [1] 119/4
Rehberg [4] 5/5 11/4 11/18 12/9
relates [2] 10/17 13/6
relating [4] 10/5 10/16 10/22 120/21
relation [1] 81/9
release [3] 27/20 44/23 46/13
releases [2] 46/13 46/15
relevant [4] 101/10 122/5 122/13 122/19
relied [2] 8/13 72/2

religion [1] 114/21
reluctance [1] 13/12
rely [5] 18/17 75/14 88/21 117/6 121/16
remaining [1] 66/3
remarks [2] 95/14 109/13
remember [25] 30/12 30/13 30/18 30/19
30/20 40/20 48/16 48/19 72/11 72/13 73/15
74/18 78/23 80/15 81/16 81/17 81/18 82/1
82/1 89/12 89/20 96/1 109/17 109/21 111/17
remembers [1] 89/15
remove [4] 81/21 102/11 102/13 105/21
removed [1] 145/25
removing [1] 68/10
render [1] 128/22
renew [3] 36/7 68/4 69/14
reopen [1] 4/22
repeatedly [6] 4/22 8/3 16/15 17/2 86/25
95/25
report [48] 18/20 35/2 35/12 35/14 40/14
44/22 57/4 57/6 57/9 57/10 57/11 57/12
59/16 59/25 60/2 60/9 60/11 60/15 66/23
67/1 67/3 67/4 77/12 77/21 77/23 77/24 78/4
78/5 78/7 78/10 78/11 78/16 78/16 78/18
81/1 82/12 96/14 96/20 98/13 99/6 110/1
110/4 110/24 110/25 128/18 134/18 134/19
134/23
report's [1] 78/3
reported [1] 66/23
reporter [4] 2/1 2/1 21/1 51/13
reports [9] 38/22 52/7 66/17 66/22 78/13
84/5 85/24 109/23 109/23
request [22] 4/7 4/23 5/17 7/12 10/15 19/22
19/24 37/6 37/22 55/22 66/2 66/5 66/6 66/24
82/19 98/12 98/13 98/22 103/15 103/18
132/11 132/19
requested [7] 10/14 18/13 37/1 37/20 38/4
82/13 82/16
required [5] 6/10 53/11 116/8 122/3 124/8
requires [3] 8/9 18/16 75/3
requisite [1] 107/8
research [5] 18/15 114/23 135/20 144/20
147/7
reserve [1] 41/14
reserved [1] 57/2
respect [28] 5/12 7/16 7/18 11/2 12/6 13/17
15/4 15/5 15/25 16/3 16/13 18/12 22/9 34/6
35/2 35/15 36/4 36/25 59/18 63/6 65/1 68/4
68/22 95/18 105/12 111/22 142/2 144/25
respectful [1] 128/11
respond [2] 21/18 35/13
responded [1] 33/9
response [2] 37/1 38/3
responsibilities [1] 21/16
responsible [2] 93/21 127/5
rest [1] 10/6
restraint [1] 138/8
rests [1] 67/17
result [7] 14/8 27/9 49/5 93/20 126/14
138/10 144/24
results [8] 25/15 25/17 26/18 27/25 47/13
54/20 63/8 63/11
retire [1] 108/20
review [6] 36/17 46/2 52/6 57/12 57/14
96/20
reviewed [7] 46/5 62/24 63/2 66/24 133/10
133/11 143/25
reviewing [1] 6/5
revolver [3] 23/13 26/8 27/19
ride [1] 103/13
right [124] 5/15 8/1 9/1 9/17 9/23 11/23
14/7 16/7 17/7 17/8 18/8 24/3 30/8 30/14
31/1 31/21 31/24 32/1 32/6 32/10 32/20
32/25 33/3 34/18 35/6 36/13 36/15 36/24

**R**

right... [96] 37/21 38/5 38/5 38/9 38/11 38/12 38/14 39/2 39/3 39/21 40/1 40/16 41/3 41/6 41/18 41/21 41/22 42/8 43/9 43/13 43/23 45/13 45/19 46/11 46/12 46/13 46/14 46/16 46/19 46/19 49/16 49/22 50/4 50/21 50/23 50/24 59/7 59/15 59/18 61/10 61/13 63/12 63/15 63/18 63/22 64/5 66/3 66/12 66/19 67/18 70/23 76/9 77/10 77/15 79/13 80/3 81/20 81/22 81/22 81/25 83/11 84/21 84/25 85/1 87/15 88/24 89/22 90/24 93/20 97/5 98/10 105/17 107/1 108/22 113/20 113/21 114/2 116/1 116/6 119/17 120/6 124/19 124/20 129/9 129/13 129/18 130/12 134/6 134/18 136/12 136/14 136/19 136/23 139/8 141/21 145/20

right-hand [1] 38/11

rights [7] 118/22 119/1 119/8 127/22 138/18 139/20 139/21

rigorous [1] 56/25

ripe [1] 113/8

rise [2] 3/2 25/12

robberies [2] 21/19 31/5

Robinson [6] 135/22 143/2 143/5 143/7 143/11 144/24

rod [4] 46/14 46/17 46/18 64/21

rods [2] 44/21 44/24

room [9] 13/12 71/14 91/23 99/23 112/6 114/6 125/6 128/7 147/9

Ross [1] 56/5

Ross' [1] 56/6

Rothstein [1] 14/13

rotted [1] 87/23

roughly [2] 22/8 43/2

routine [1] 82/20

RPR [1] 2/1

rubbed [1] 58/9

rubber [1] 24/7

rule [5] 12/19 13/8 14/15 68/4 127/8

rules [1] 4/21

ruling [4] 7/24 16/18 17/6 144/3

rulings [2] 7/16 117/3

run [1] 94/4

**S**

S-E-N-A [1] 21/3

safeguard [2] 34/10 34/12

safeguarded [1] 34/15

said [75] 5/13 11/5 11/14 11/18 11/19 11/20 13/24 14/2 14/22 31/5 42/3 62/14 62/16 69/3 69/4 72/20 72/21 73/4 73/10 73/15 73/20 73/24 73/25 74/3 74/10 74/14 74/15 74/16 74/17 74/21 74/24 75/11 75/12 77/1 77/6 77/13 78/9 78/10 78/24 78/24 79/22 80/16 80/18 80/19 80/21 82/11 84/14 84/18 86/17 89/12 92/3 96/7 98/1 100/14 100/22 100/24 103/2 105/19 105/20 105/23 109/22 111/8 111/18 111/20 112/13 114/17 117/23 118/1 118/2 118/5 118/8 122/22 122/23 124/7 135/19

Salim [5] 6/4 6/6 95/11 109/8 118/22

same [10] 7/11 9/10 10/15 53/18 105/18 105/19 118/8 127/2 128/5 142/19

sample [10] 63/22 64/5 64/8 64/10 67/4 83/11 83/12 83/13 108/8 108/17

sample's [1] 83/25

samples [4] 27/21 56/24 63/19 66/3

sampling [1] 56/12

SANDS [1] 1/25

satellite [1] 23/1

satisfactory [1] 133/2

satisfied [2] 120/5 144/6

saw [62] 8/6 8/7 15/7 15/8 15/10 30/7 40/20 45/5 68/12 72/19 72/24 73/3 73/5 73/7 73/9 73/13 73/16 74/2 75/9 75/10 75/17 75/22 76/5 76/6 76/7 77/22 80/3 81/1 81/8 81/21 82/2 82/2 82/3 82/4 86/5 86/16 86/25 89/19 89/23 90/6 90/7 96/4 96/5 102/12 102/14 102/14 102/15 102/19 102/22 102/23 102/24 103/3 103/7 103/7 103/8 103/9 103/13 104/10 104/16 110/3 114/20 133/18

say [33] 7/5 8/15 9/21 10/15 21/23 22/7 22/8 24/9 26/16 57/19 59/20 67/6 70/6 70/9 71/17 72/12 72/15 74/18 75/24 83/21 84/21 86/23 91/22 92/5 93/14 105/11 112/15 113/18 115/7 121/2 128/13 132/7 145/18

saying [12] 14/5 15/7 32/16 32/17 74/19 87/19 96/10 100/16 139/17 145/20 145/23

says [34] 7/3 9/12 11/13 11/18 11/20 12/7 19/1 37/1 37/5 37/20 38/14 39/9 39/13 39/13 39/20 39/23 61/17 67/4 74/20 75/8 76/4 76/4 77/19 82/13 95/22 96/22 99/10 105/3 105/4 105/25 119/2 134/18 137/10 143/8

scale [1] 102/5

scales [2] 102/3 115/12

scenarios [1] 71/6

scene [29] 22/14 22/14 24/2 31/10 32/13 33/3 34/8 34/16 34/19 34/20 38/12 38/21 38/24 38/25 39/1 39/5 39/6 40/23 42/10 42/12 42/23 42/23 42/25 43/17 43/18 87/15 100/13 115/19 121/18

scenes [7] 21/18 21/20 31/1 31/4 31/5 31/6 32/15

science [4] 32/11 53/5 53/5 61/14

Sciences [1] 53/23

scientific [3] 18/17 18/19 19/5

se [1] 91/20

seams [1] 86/12

seat [1] 76/10

seated [7] 20/13 20/25 51/12 70/5 95/4 114/2 147/4

second [35] 4/5 6/10 6/11 9/10 11/8 11/9 11/13 14/8 14/14 15/6 16/23 17/23 60/14 60/17 74/22 82/6 96/11 98/8 104/2 104/11 104/17 115/21 116/4 119/14 120/13 122/16 129/20 135/21 135/23 136/8 137/1 137/2 137/4 138/2 146/2

second clause [1] 11/9

seconds [3] 87/3 87/4 87/20

section [15] 12/17 16/25 77/5 77/17 77/19 78/3 92/22 92/22 96/14 96/15 96/16 96/21 118/21 136/2 144/1

Section 1983 [1] 118/21

sections [1] 92/4

secured [2] 119/9 119/17

see [51] 4/21 11/22 12/2 15/11 32/18 32/25 36/3 36/12 37/2 39/14 40/24 47/24 47/24 64/24 70/16 71/15 72/21 73/6 73/22 74/6 74/12 75/12 75/18 75/20 76/9 78/12 81/17 85/25 87/3 87/11 89/5 89/6 91/17 92/14 92/20 94/5 101/5 106/20 108/13 111/21 117/18 129/23 130/2 132/25 134/16 136/4 140/6 140/17 141/21 142/11 143/20

seeing [5] 76/13 89/19 109/24 112/3 143/1

seek [2] 16/1 16/6

seeking [9] 4/17 6/25 7/2 15/23 16/2 126/3 126/16 126/18 126/20

seem [4] 81/1 97/12 97/20 140/9

seemed [1] 143/21

seems [1] 71/2

seen [3] 15/17 78/15 114/24

sees [2] 76/18 85/11

selection [1] 93/19

selling [1] 80/1

Sena [33] 20/21 20/23 21/2 21/3 21/6 23/14 23/22 23/25 24/10 28/7 28/14 30/21 32/21 36/19 39/12 40/14 41/4 43/9 43/14 44/3 44/11 45/21 47/11 48/23 49/14 49/22 50/10 50/25 98/21 103/16 107/23 112/10 148/4

send [17] 17/1 27/23 92/25 93/3 93/5 93/8 93/12 114/10 114/12 116/25 117/1 131/1 133/17 141/12 141/14 146/4 146/5

sending [1] 17/17

sense [27] 76/14 76/17 76/20 76/21 76/24 81/7 84/11 85/1 85/4 85/14 85/15 85/15 85/16 85/18 85/25 90/8 90/13 99/21 99/22 99/22 99/24 100/1 100/9 100/12 100/25 113/13 126/22

sensitive [1] 61/3

sensitivity [7] 56/23 63/18 63/20 65/9 67/7 83/24 111/10

sent [1] 116/23

sentence [7] 6/20 9/17 10/15 11/12 11/13 17/25 18/3

separate [2] 126/24 127/1

serial [1] 96/24

serious [4] 43/8 43/11 57/2 79/9

seriously [3] 70/17 80/12 92/23

serve [1] 127/14

session [1] 3/4

set [2] 15/5 54/4

seven [2] 22/7 52/22

several [4] 36/19 43/19 44/13 89/9

sexual [1] 52/16

shakes [1] 47/7

shall [4] 119/10 130/20 130/21 144/20

she [9] 15/25 19/8 55/20 62/12 62/14 62/14 62/16 108/6 118/1

she's [3] 18/24 19/11 62/16

sheet [10] 12/16 17/23 90/19 91/6 91/16 101/15 101/16 101/17 105/14 116/21

shell [1] 46/16

shield [1] 6/5

shift [1] 43/2

shootings [1] 21/19

short [1] 67/19

shortly [1] 82/6

shot [1] 85/10

should [23] 4/15 4/19 6/20 17/1 18/4 45/8 68/19 69/6 69/23 82/22 101/20 114/11 114/17 115/2 120/4 126/11 126/12 127/11 132/7 133/14 139/17 141/11 145/18

should've [1] 86/4

shouldn't [4] 17/25 18/3 115/1 139/17

show [8] 25/14 35/8 73/25 83/22 96/18 107/11 113/18 122/2

showed [2] 99/6 111/17

showing [5] 23/19 62/1 92/19 106/4 122/9

shown [3] 96/2 120/7 120/12

shows [3] 13/12 16/9 101/20

shut [2] 86/4 92/3

side [8] 32/16 32/17 71/13 81/25 113/6 129/23 130/2 130/4

sides [1] 132/8

sidewalk [1] 80/6

sight [1] 85/10

sign [2] 18/6 59/16

signature [2] 35/17 35/18

signed [2] 56/7 57/11

significance [1] 99/1

signing [1] 57/12

similar [3] 58/7 127/15 129/14

simple [2] 101/2 101/3

simplify [1] 14/12

simply [5] 12/24 59/15 70/23 91/19 109/23

since [3] 57/25 144/3 145/20

single [2] 49/4 96/1

# A1241

**S**

sir [7] 30/16 34/11 35/9 51/7 73/25 74/10 79/22
sit [2] 109/1 147/2
sitting [4] 76/10 83/13 83/25 118/24
situation [2] 100/19 141/5
six [6] 4/25 24/5 26/16 26/22 78/18 83/8
size [2] 27/8 27/9
skin [1] 27/16
skipped [4] 97/11 97/15 97/18 99/12
sleep [1] 88/4
slightly [2] 76/15 102/5
slip [1] 12/16
small [2] 27/9 50/15
smaller [1] 134/11
smallness [1] 50/11
Smith [10] 23/13 26/7 51/9 51/14 51/18 55/18 55/23 58/3 58/18 148/8
so [108] 5/20 6/4 8/8 13/8 13/25 14/18 15/13 15/16 17/5 26/20 27/5 27/9 27/20 29/2 31/17 32/11 33/13 33/14 33/16 34/2 34/17 35/19 37/13 37/18 38/1 39/1 40/8 40/10 40/21 41/13 41/16 42/23 43/2 43/3 43/4 47/20 52/4 52/15 54/2 54/4 56/10 57/1 58/9 58/10 59/9 59/19 60/19 62/23 63/24 65/17 67/3 70/8 70/18 71/15 72/12 72/13 72/17 72/22 74/9 75/20 76/15 76/16 76/21 78/2 78/12 80/1 80/11 80/25 81/1 84/9 85/20 86/18 87/12 88/22 89/1 91/18 98/16 102/7 104/19 106/22 107/14 108/19 109/20 110/1 111/20 112/15 114/8 114/10 116/3 118/21 120/4 120/22 122/2 122/14 124/22 127/13 127/17 132/13 139/25 141/5 141/10 143/4 143/9 143/10 143/11 144/5 145/7 145/11
so-called [1] 118/21
some [39] 8/12 13/11 16/12 18/4 18/15 18/18 18/19 20/16 25/11 27/16 36/22 47/8 57/22 71/5 71/21 72/9 72/18 73/14 88/18 91/22 92/5 92/11 95/14 95/16 97/11 112/10 112/17 114/10 118/5 118/16 130/19 137/10 138/19 138/24 140/8 140/14 140/14 140/18 143/19
somebody [7] 32/18 72/1 72/2 85/11 104/7 115/7 115/8
somebody's [5] 71/14 71/15 80/10 83/6 101/25
someone [2] 49/15 58/3
something [19] 9/17 15/10 15/17 31/19 57/17 58/9 72/11 72/15 75/6 81/1 81/17 82/3 93/14 98/20 111/23 111/25 115/8 117/5 118/18
sometimes [1] 57/21
somewhat [1] 89/16
somewhere [2] 21/23 24/9
sorry [10] 8/24 9/11 19/15 34/11 41/1 48/11 61/21 81/23 81/25 129/10
sort [5] 18/19 22/11 56/25 58/6 110/1
sound [8] 80/2 84/25 96/7 96/8 96/9 102/15 102/18 105/22
sounds [1] 84/13
Southern [2] 53/16 55/16
speak [14] 19/7 19/9 19/22 19/24 20/1 83/25 92/24 104/19 105/16 109/1 130/20 130/21 132/12 141/8
special [5] 31/9 34/6 69/24 82/13 118/14
specialized [1] 32/8
specific [11] 30/10 30/12 30/19 30/20 38/3 55/1 72/18 96/13 97/7 97/13 114/12
specifically [7] 16/6 38/23 59/20 61/14 68/9 102/1 136/19
specifies [1] 96/24
Speedy [1] 4/20
spell [2] 20/25 51/12

spent [5] 96/13 99/19 113/1 126/15 126/20
spite [1] 127/25
split [2] 87/3 87/20
spoke [3] 40/19 68/24 105/7
spot [1] 87/12
St. [1] 53/20
St. John's [1] 53/20
stamp [2] 24/11 37/25
stand [8] 19/8 46/9 67/12 84/17 111/17 117/17 145/4 146/9
standard [6] 56/19 56/24 101/22 101/24 102/1 111/9
standing [7] 80/3 80/5 81/9 84/16 97/17 97/22 112/2
stands [4] 12/8 128/17 144/9 145/2
star [1] 88/23
start [11] 37/12 70/13 71/22 86/2 95/8 95/15 100/2 138/6 145/7 145/8 146/2
started [8] 33/14 37/19 61/3 61/3 76/2 89/25 91/2 95/19
starting [2] 61/2 107/23
starts [5] 8/22 33/12 37/11 37/13 78/12
state [14] 20/25 41/2 51/12 54/4 116/2 119/1 119/2 119/4 119/5 119/16 120/2 120/3 122/19 124/13
stated [1] 14/4
statement [18] 11/17 36/1 36/6 73/16 73/21 74/9 74/11 75/1 75/3 95/5 101/3 105/5 109/11 111/18 111/24 122/24 142/5 144/24
statements [8] 12/3 16/17 42/2 73/14 85/23 112/25 115/19 122/18
states [13] 1/1 1/5 1/11 3/2 5/5 12/3 14/9 53/15 61/15 118/21 119/7 119/18 138/11
station [2] 100/20 120/13
statistics [1] 53/13
statute [3] 119/2 119/3 119/13
staying [1] 110/18
stem [1] 46/19
stenography [1] 2/5
step [3] 3/12 3/16 71/10
stepped [1] 79/23
steps [2] 41/13 123/16
stick [1] 132/16
still [11] 12/4 12/4 63/21 80/7 83/25 91/7 92/5 106/15 108/17 111/1 137/22
Stolberg [1] 136/4
stood [2] 97/5 144/22
stop [14] 5/14 8/16 8/20 10/5 10/9 10/17 10/22 10/23 80/16 80/17 80/23 120/19 120/21 131/1
stop-and-frisk [1] 80/16
stops [1] 81/11
storage [1] 56/7
stores [1] 89/9
stories [7] 73/7 79/16 80/10 81/5 81/6 84/3 91/14
story [26] 76/15 76/15 76/24 78/2 79/10 79/17 79/18 79/19 80/11 84/12 85/15 85/17 86/9 86/10 90/7 90/8 99/21 99/22 99/22 99/23 99/25 100/10 100/11 100/25 101/3 106/14
strap [4] 27/19 46/7 46/11 64/20
street [15] 1/23 76/8 76/20 84/20 88/6 88/9 89/9 90/11 91/13 97/16 97/19 100/3 101/5 110/16 110/19
streetlights [1] 97/21
stricken [1] 117/5
strictly [1] 10/11
strike [7] 19/3 71/24 71/25 71/25 72/2 93/10 138/22
structure [2] 25/9 25/10
stuck [1] 85/18
student [1] 14/11

stuff [1] 147/12
subject [4] 11/19 36/2 53/18 119/6
subjects [1] 119/6
submit [8] 68/5 68/17 69/5 69/24 101/19 102/22 103/21 144/21
submitted [4] 59/25 60/2 60/23 65/13
subsequently [1] 142/11
substance [1] 13/7
substantial [2] 125/16 139/22
substantive [1] 122/10
subterfuge [1] 110/1
subtle [1] 110/23
such [11] 4/3 10/17 13/6 21/18 21/20 58/1 75/7 114/18 118/12 126/22 127/19
sudden [4] 72/13 72/16 80/4 89/23
suffer [2] 126/14 130/20
suffered [3] 125/20 126/11 126/13
sufficient [6] 5/15 63/17 68/7 110/10 123/16 126/5
sufficiently [1] 10/1
suggest [3] 9/1 49/21 91/1
suggested [4] 11/3 11/12 139/4 140/16
suggests [1] 13/11
suing [3] 5/24 29/3 32/23
Suite [1] 1/16
summarize [1] 3/23
summation [6] 16/13 16/19 95/17 96/19 104/4 108/15
summations [3] 67/19 70/6 101/15
summer [1] 87/24
super [2] 25/11 25/12
supervise [2] 52/4 54/13
supervised [1] 56/4
supervisor [4] 52/4 59/15 59/16 82/21
supplied [1] 121/17
support [3] 3/10 3/19 12/21
supported [1] 14/16
supports [1] 12/24
supposed [6] 34/7 34/10 39/6 47/19 74/24 79/2
supposedly [1] 81/8
Supreme [5] 5/5 14/9 52/17 55/14 143/22
sure [20] 11/3 31/19 32/2 34/10 34/12 40/20 40/21 46/11 47/14 54/7 65/10 76/6 84/23 87/21 90/14 92/5 133/4 137/5 142/16 145/10
surface [1] 27/8
surfaces [1] 107/25
surprise [1] 57/20
surrounding [2] 10/23 120/21
suspicious [2] 80/20 81/2
sustained [8] 43/25 44/5 44/9 48/9 50/2 119/20 125/12 125/25
swab [11] 27/21 38/25 44/17 46/20 47/16 50/23 64/19 64/20 64/20 64/21 65/7 83/6 83/7
swabbed [17] 27/23 44/10 44/13 44/15 44/15 44/19 44/21 44/23 44/24 45/6 46/6 46/7 46/9 64/18 64/23 65/12 65/12
swabbing [3] 18/22 30/13 30/18
swabs [9] 27/14 40/7 45/25 47/9 56/9 56/11 56/11 56/13 108/6
swear [4] 20/22 73/6 130/17 130/18
swearing [1] 86/5
sweat [1] 46/25
sworn [4] 20/23 51/10 86/25 130/19
sympathy [1] 128/23
system [2] 79/8 93/15

**T**

tactic [1] 97/23
taint [1] 92/16
take [30] 6/6 19/12 21/21 24/18 24/21 31/19 43/5 46/2 46/25 47/9 49/24 67/21 70/16

**T**

take... [17] 71/10 71/20 83/7 84/16 84/24
85/9 87/9 92/23 93/24 93/25 104/16 111/20
113/22 114/6 135/7 135/9 136/16
taken [7] 53/11 94/6 100/20 103/11 113/10
121/3 145/18
takes [6] 3/5 19/8 95/2 123/16 135/10 147/1
taking [7] 56/10 56/11 56/12 80/11 83/5
83/6 120/12
talk [11] 20/10 71/16 79/22 82/6 102/7
104/11 105/16 107/14 110/2 112/20 132/14
talked [6] 89/1 91/2 98/1 98/12 107/16
111/23
talking [10] 17/11 17/12 73/19 91/18 99/20
100/2 109/21 125/7 137/19 142/19
talks [1] 138/13
team [16] 21/13 21/14 21/17 22/17 23/5
26/13 30/22 32/9 33/17 33/19 33/21 33/24
34/14 35/12 42/13 98/22
technique [1] 18/18
techniques [1] 53/10
technology [2] 52/24 61/8
Telephone [1] 2/2
tell [41] 20/9 21/8 38/18 40/22 41/13 41/24
42/7 42/8 46/5 48/20 53/3 53/24 60/13 73/8
73/21 73/22 74/12 75/21 77/24 80/13 81/6
81/14 81/20 86/15 93/13 99/21 102/13
104/22 107/2 109/2 110/21 111/19 113/16
114/4 118/17 128/17 130/25 132/18 138/24
144/11 144/20
telling [12] 71/14 71/18 75/14 76/25 78/12
79/4 79/20 81/13 81/14 100/16 117/15 140/9
tells [5] 74/22 74/23 75/9 75/9 100/5
ten [2] 19/14 67/21
ten-minute [1] 67/21
tends [1] 122/7
tent [1] 25/8
tent-like [1] 25/8
term [1] 89/24
terminated [1] 123/3
terms [3] 63/8 110/7 110/12
territory [1] 119/4
test [33] 25/5 25/15 25/23 26/25 27/5 27/21
30/2 34/20 47/16 47/16 47/18 47/19 49/9
49/12 50/18 50/20 55/2 64/1 64/13 65/2
65/18 66/2 66/7 83/8 83/15 83/24 108/7
108/11 108/16 108/18 112/14 112/14 112/16
tested [13] 26/12 27/17 34/17 49/4 64/5 64/8
64/11 64/12 83/4 83/12 108/7 110/22 111/7
testified [29] 20/24 26/22 30/21 31/3 48/10
48/12 48/23 49/7 49/11 50/3 50/8 50/9 50/20
51/10 52/15 52/18 61/6 63/11 68/9 68/11
68/14 68/23 79/20 80/12 106/13 109/18
109/19 117/18 117/25
testify [9] 15/11 19/19 28/18 28/21 52/7
58/20 58/23 58/25 79/9
testifying [2] 79/1 89/3
testimony [50] 4/3 4/10 8/9 8/11 10/16 10/17
11/18 12/18 12/20 12/21 13/7 14/23 14/24
31/12 50/7 60/19 67/2 68/6 68/25 68/25 69/5
69/15 71/21 72/1 72/2 72/5 73/11 81/5 90/2
95/23 96/10 97/2 97/3 97/7 97/10 98/14
99/14 99/16 102/8 103/3 103/4 105/8 105/9
117/21 117/22 117/23 118/3 118/5 122/25
145/24
testing [37] 18/18 22/11 25/6 25/7 27/7 28/4
48/24 49/1 50/16 53/17 54/4 54/15 54/20
56/13 56/19 56/23 56/23 56/25 57/1 59/14
59/17 59/19 60/24 60/25 61/4 63/7 63/14
63/18 63/20 65/8 65/9 65/13 67/7 98/16
111/10 112/11 112/11
tests [3] 25/21 52/6 56/20

text [1] 12/14
texture [2] 26/5 26/7
than [12] 5/19 24/21 56/24 103/3 112/7
114/15 115/11 125/13 128/4 136/22 138/10
141/2
thank [28] 3/20 28/11 30/17 40/12 41/1 51/4
51/7 58/13 65/21 66/11 67/10 67/11 69/21
70/11 70/12 70/18 93/22 93/23 95/12 109/6
109/8 109/9 109/10 113/22 130/24 132/9
132/10 145/3
thanking [1] 95/8
thanks [2] 51/19 70/14
that [881]
that's [118] 4/24 5/11 5/15 5/25 6/5 7/8 8/17
11/18 12/7 12/7 14/20 15/1 16/2 16/8 17/19
20/8 22/4 23/4 24/13 24/17 24/25 29/5 30/6
31/3 31/7 31/24 34/18 37/19 37/20 38/14
38/21 39/5 39/18 40/10 41/21 42/17 43/11
46/18 49/7 49/13 50/24 58/22 59/1 61/8
61/18 61/18 61/23 72/17 74/15 74/15 75/1
75/10 75/11 75/22 76/14 77/7 77/9 78/6 78/9
79/24 80/18 81/19 84/8 84/16 85/10 85/18
86/24 87/5 87/5 87/6 89/6 91/9 91/14 93/14
93/16 93/20 96/9 96/25 96/25 97/1 97/23
98/25 99/11 100/10 100/16 100/22 100/24
100/25 101/7 101/7 101/8 102/19 102/20
104/10 104/12 105/23 105/25 107/19 108/9
108/22 109/17 109/20 110/2 111/2 111/20
120/17 120/20 120/20 125/13 133/10 134/15
137/8 137/19 138/11 139/8 140/12 141/11
144/5
their [32] 5/25 6/1 8/4 8/11 16/19 27/8 53/9
55/3 56/12 58/4 68/4 68/4 81/4 81/5
83/20 84/11 85/15 85/17 87/6 90/2 92/13
99/16 103/9 104/5 117/17 118/12 119/1
120/24 126/8 142/10 144/12
them [41] 8/7 10/6 15/14 27/23 44/21 47/16
49/16 61/16 66/7 66/18 71/6 74/12 81/7 82/3
87/9 87/13 100/19 108/7 108/11 110/16
110/17 114/3 116/11 116/25 117/4 118/16
124/25 127/23 128/3 130/21 130/21 132/12
132/13 132/15 132/16 132/18 136/6 138/24
142/13 143/1 145/4
themselves [2] 13/1 56/12
then [66] 3/24 5/13 6/22 7/3 7/5 7/7 7/11
10/6 11/12 13/10 14/1 18/4 18/8 19/3 19/19
49/11 55/2 56/12 66/24 66/25 70/25 72/15
73/10 73/25 74/7 74/10 77/19 78/11 79/23
80/4 83/10 85/25 86/2 91/5 91/8 91/15 91/17
93/24 97/18 102/5 102/15 105/8 107/8
109/14 115/12 118/18 120/6 121/13 121/15
124/7 124/14 124/16 125/4 127/6 127/8
128/8 129/18 129/20 129/22 135/2 135/3
139/22 140/15 141/4 141/11 141/14
theoretical [1] 141/2
theoretically [1] 140/2
theory [1] 18/18
there [162]
there's [57] 9/16 11/25 15/9 18/10 32/15
34/3 39/20 47/24 64/22 68/7 68/20 69/20
71/6 71/8 71/13 72/22 76/5 76/16 77/5 78/20
79/4 81/7 82/13 82/25 83/8 84/10 86/11
91/17 91/23 92/22 98/25 99/24 102/18
104/15 104/17 105/11 105/22 106/2 106/6
106/7 106/8 106/9 107/13 108/21 111/15
121/5 123/8 131/16 131/20 133/13 136/10
136/22 137/9 137/13 139/13 139/13 142/12 143/8
Therefore [1] 140/25
thereof [1] 84/6
these [50] 5/24 22/7 30/14 36/22 38/22 39/4
39/13 54/16 57/4 70/3 73/11 74/19 75/6
75/25 77/21 78/13 78/13 78/15 81/4 81/19
83/19 83/21 84/3 86/13 88/2 90/23 91/11

91/14 92/17 92/19 92/19 93/1 93/6 93/20 101/6
101/20 106/22 107/11 110/3 110/13 110/15
112/22 113/17 116/7 118/17 120/18 121/15
124/12 128/24 135/9 142/25
they [187]
they'll [1] 34/4
they're [17] 12/4 23/25 27/9 34/7 69/25 70/7
85/18 88/21 91/18 91/19 91/21 102/24
110/14 110/19 135/12 136/13 144/6
they've [5] 15/11 15/17 24/25 86/25 114/9
thing [33] 5/13 9/8 12/10 16/23 17/22 18/10
75/8 75/8 76/4 80/4 81/3 81/13 81/21 82/2
82/2 82/7 82/23 82/25 85/4 87/22 88/12 89/4
91/2 91/21 105/18 105/20 112/17 112/20
113/20 113/21 140/16 145/20 146/2
thing's [1] 88/11
things [15] 60/11 70/22 72/9 72/18 73/10
74/19 75/6 75/25 84/4 101/1 108/15 109/16
110/2 110/3 119/12
think [55] 4/3 5/15 5/18 5/25 8/11 9/21 9/25
12/14 13/14 14/25 15/1 15/16 15/16 15/18
17/8 17/8 18/7 20/6 50/6 50/11 59/8 73/13
75/6 76/9 80/5 80/6 84/12 84/12 85/16 85/22
86/3 89/22 90/6 90/15 91/10 92/4 92/4 98/18
98/19 99/13 100/12 108/24 109/20 110/9
112/8 117/8 117/10 118/12 130/6 131/5
133/14 139/3 143/11 144/15 145/1
thinking [5] 6/22 15/6 15/10 76/22 125/3
thinks [4] 93/7 93/9 93/13 99/20
third [12] 4/15 9/11 60/17 71/14 102/16
106/25 115/25 116/5 119/16 120/15 124/18
125/10
Thirteen [1] 22/20
this [341]
those [20] 6/10 26/25 27/20 54/5 65/18 73/7
73/10 78/2 78/20 83/9 87/10 91/1 92/8 92/11
114/3 114/5 116/23 126/11 129/15 134/14
though [1] 33/2
thought [5] 15/8 30/3 42/17 59/11 138/23
thousand [1] 89/13
thousands [4] 54/14 55/7 59/19 89/12
three [14] 6/24 27/18 52/5 74/24 87/4 90/22
101/1 101/4 102/9 106/15 115/17 121/15
123/4 125/24
threw [11] 32/16 32/25 44/8 79/25 80/8
87/12 87/23 89/5 89/6 103/2 104/7
through [19] 10/10 52/5 70/24 75/5 76/22
76/23 85/17 85/22 90/19 90/21 91/10 93/5
93/18 95/15 95/24 117/2 122/17 128/7 132/2
throughout [6] 9/16 58/25 85/14 95/9 96/10
97/1
throw [13] 32/17 32/18 68/12 68/16 69/15
76/18 81/23 84/24 91/9 102/22 102/24
104/17 112/3
throwing [5] 68/11 76/20 83/7 99/11 109/24
thrown [2] 86/7 87/5
time [76] 4/12 5/18 5/18 7/22 7/23 7/23 18/5
19/3 23/14 24/17 33/8 37/1 37/4 37/6 37/22
37/25 38/3 38/11 38/18 38/19 38/21 39/5
39/9 42/24 42/24 49/4 55/17 56/5 57/1 58/14
58/20 59/17 67/14 68/15 70/15 74/25 75/7
77/25 78/17 81/6 82/15 84/15 84/15 84/21
84/23 86/20 88/10 89/14 96/1 96/13 96/22
97/14 99/20 102/17 109/6 111/1 111/2 111/4
112/12 112/13 113/9 113/11 118/8 120/23
120/24 121/3 122/5 122/6 123/15 126/20
127/2 136/20 136/21 139/22 140/12 144/1
times [23] 15/11 21/24 22/6 22/8 22/10
26/15 26/15 52/11 52/13 55/5 55/7 55/11
55/12 60/12 70/21 72/3 72/8 72/10 72/14
74/24 82/14 115/20 125/7
timing [1] 104/18
tips [1] 102/5

# T

title [2]  21/8 118/21
today [11]  59/4 59/25 63/22 65/12 91/3
107/22 109/19 111/2 111/5 112/12 143/2
today's [1]  131/5
together [16]  70/24 75/4 78/7 83/20 85/20
85/23 85/23 85/24 86/1 116/24 117/7 121/21
130/19 132/6 143/11 144/25
told [49]  42/2 72/18 74/1 74/6 74/7 74/8
74/25 75/3 76/1 79/16 81/20 82/21 83/23
84/17 87/18 95/24 98/22 100/4 100/4 100/18
101/2 102/10 102/12 102/16 103/6 103/7
103/8 103/13 103/16 105/7 105/17 105/18
105/20 106/6 106/13 106/17 107/23 108/6
109/3 111/3 111/25 112/1 112/15 112/25
125/4 125/5 142/3 142/13 145/4
tomorrow [8]  145/7 145/8 146/3 146/4 146/7
147/5 147/8 147/16
tonight [2]  146/3 147/8
too [5]  70/2 76/5 87/3 87/4 89/24
took [9]  23/14 23/23 24/10 41/13 48/20 56/7
87/10 87/15 87/22
top [5]  25/9 25/12 38/11 39/12 39/12
tort [1]  138/7
toss [6]  76/6 77/23 83/6 105/22 106/21
108/13
tossed [4]  90/14 96/6 99/3 102/13
tosses [1]  90/9
tossing [2]  85/3 101/7
touch [2]  49/15 92/15
touched [2]  27/15 85/5
tour [9]  33/12 33/14 33/23 33/25 37/11
37/12 37/13 37/13 37/19
Toward [1]  39/16
towards [3]  76/12 106/7 124/5
TPO [1]  96/22
trained [2]  55/3 81/19
training [13]  22/11 22/15 22/15 31/9 31/14
32/2 32/6 47/11 53/7 53/8 54/21 54/24 54/25
transcript [4]  1/10 2/5 5/16 114/11
Transcription [1]  2/5
transcripts [2]  114/9 114/10
transpired [1]  36/22
treasure [1]  127/23
treatment [2]  16/2 16/6
trial [26]  1/10 3/6 3/11 3/20 4/20 5/4 60/7
69/1 82/8 82/8 83/19 85/14 86/12 88/18
90/24 95/10 106/9 107/1 114/12 116/1 116/6
117/4 124/19 129/9 129/13 130/13
trials [1]  127/1
tried [3]  85/13 97/6 114/16
trigger [5]  27/18 27/18 44/19 46/12 64/20
trouble [1]  20/16
true [11]  6/22 15/6 73/7 75/1 76/23 76/24
105/25 115/11 115/11 118/2 125/3
truly [1]  111/6
truth [14]  71/14 71/18 73/12 76/2 79/5
80/13 81/16 81/16 87/2 87/2 87/18 87/18
112/7 117/15
try [7]  5/9 70/7 83/20 109/3 114/11 118/9
142/18
trying [10]  27/4 41/10 76/17 80/2 81/8 81/10
85/7 85/8 95/19 127/1
turn [6]  5/20 6/8 22/21 25/5 91/1 109/14
turned [4]  12/24 66/18 67/2 112/1
turning [5]  85/6 85/7 85/9 85/12 130/8
twist [1]  76/17
twists [1]  76/16
two [37]  26/14 39/20 53/1 58/10 63/3 66/22
69/24 73/7 74/6 79/16 81/6 81/7 81/11 82/14
86/5 87/9 88/12 90/23 91/22 92/6 92/10
92/11 93/1 93/6 93/20 101/5 101/17 101/20
103/24 107/15 110/16 120/18 123/3 127/1
134/11 143/5 144/12
two weeks [1]  63/3
two-dollar [1]  143/5
type [5]  23/12 24/6 56/23 82/10 126/7
typed [1]  18/8
types [2]  52/14 56/20
typically [2]  57/17 57/19

# U

UF [1]  99/6
UF-250 [1]  99/6
unanimously [1]  116/19
uncharted [3]  144/15 144/17 144/25
unclear [1]  73/2
under [30]  7/7 7/9 11/8 12/5 13/14 42/22
72/10 73/6 75/16 75/21 76/3 79/1 79/9 79/20
80/13 86/5 86/25 98/7 118/20 119/2 119/3
119/13 119/15 120/3 120/25 122/13 122/15
129/14 130/14 141/3
underlying [1]  59/1
understand [24]  5/8 65/10 70/17 70/21 86/2
86/23 91/19 92/21 112/4 113/4 116/10 125/8
136/17 139/10 139/14 139/14 139/17 139/23
140/4 140/19 140/23 142/9 142/10 142/25
understanding [5]  11/4 23/4 47/18 80/12
143/2
undisputed [1]  89/4
unimportant [1]  89/2
unit [7]  21/11 30/22 30/25 37/11 74/11
74/23 101/4
UNITED [10]  1/1 1/5 1/11 3/2 5/4 14/9
53/15 118/21 119/6 119/18
units [1]  43/19
University [1]  53/5
unless [2]  116/10 130/21
unlikely [3]  26/3 50/4 50/8
unmistakable [1]  96/8
unrefuted [1]  106/1
until [14]  7/22 29/4 33/5 43/4 59/7 83/18
84/20 85/1 128/17 130/25 132/2 146/3 147/9
147/16
unusual [3]  25/21 42/11 42/15
up [33]  6/24 18/8 25/11 34/4 41/24 44/2
46/9 46/25 47/1 68/15 72/13 76/11 78/1
80/10 84/2 84/6 84/13 84/22 85/17 88/24
92/2 93/23 102/17 104/20 110/17 113/9
115/22 120/24 121/6 131/25 132/5 132/13
143/25
upon [8]  8/13 72/3 100/13 115/21 127/7
127/21 130/22 144/19
us [17]  38/25 39/1 42/2 45/16 53/3 53/24
54/7 56/18 70/15 70/18 72/19 92/10 101/16
103/16 111/1 112/15 142/6
usage [1]  119/4
use [13]  16/25 25/9 25/10 27/15 32/11 37/23
38/1 53/10 76/21 85/25 101/16 113/12
126/22
used [3]  25/4 42/7 61/15
using [7]  10/10 12/21 76/22 82/17 82/17
89/25 97/6
usually [4]  30/25 34/4 54/6 57/2

# V

valid [1]  145/2
validity [5]  4/6 5/9 8/5 8/13 8/19
value [1]  92/18
vantage [1]  102/14
various [1]  115/19
Vassar [1]  53/4
vast [1]  13/3
veracity [5]  69/20 117/15 118/7 118/9
118/13
verbatim [1]  72/6
verdict [26]  17/1 17/23 18/1 18/4 18/5 69/23
90/18 91/6 91/16 93/6 101/15 101/16 101/17
105/14 114/19 116/21 128/15 128/16 128/18
128/20 128/21 128/22 130/22 132/12 135/25
146/7
version [4]  77/4 81/10 81/11 134/12
versus [1]  1/4
very [25]  3/20 8/21 14/19 15/17 16/13 43/8
47/19 50/4 50/8 50/15 51/7 57/2 67/3 67/11
70/17 77/10 77/11 82/25 90/19 91/2 92/23
108/1 109/8 111/15 114/15
view [7]  10/2 91/19 114/16 114/18 115/1
115/3 117/11
violate [3]  129/8 129/12 130/12
violated [4]  115/25 129/18 136/20 136/23
violates [1]  124/22
violation [7]  120/9 120/20 123/17 136/12
139/20 139/21 140/14
violent [1]  31/5
vision [1]  80/3
voice [1]  92/24
VOLUME [1]  1/9
voluntarily [2]  106/13 119/22
vote [2]  128/14 128/17
voucher [4]  45/2 45/5 45/25 46/3
vouchering [1]  45/25

# W

waist [4]  75/10 75/13 77/7 81/25
waistband [7]  58/4 68/11 96/5 101/6 102/11
104/16 105/21
wait [5]  44/2 83/18 84/17 84/20 85/1
waiting [1]  34/13
walk [3]  70/23 90/11 90/19
walked [1]  37/17
walking [4]  81/11 84/18 100/3 101/5
wall [1]  87/5
want [62]  5/23 8/19 8/20 9/7 10/25 11/1
17/4 19/14 19/15 19/17 20/10 31/19 31/23
31/25 36/9 36/10 39/11 46/21 55/21 62/5
62/6 67/19 70/13 70/18 78/19 79/8 82/7
83/22 84/7 84/10 84/12 85/22 88/12 88/13
92/4 92/15 92/15 92/16 92/23 93/24 95/8
95/14 95/15 109/3 109/14 112/20 114/12
116/24 131/1 132/14 132/15 139/3 141/10
141/12 141/13 141/21 142/14 145/7 146/3
146/4 147/6 147/7
wanted [7]  10/4 17/5 82/24 82/25 95/20
136/15 144/2
wanting [1]  104/6
wantonly [1]  127/18
wants [12]  90/14 96/11 96/14 98/17 98/19
99/13 100/12 102/21 108/9 108/23 108/23
145/3
warning [1]  127/14
warns [1]  100/6
warrant [1]  127/18
was [263]
wasn't [14]  37/16 59/6 71/8 74/22 74/23
74/23 74/24 80/5 83/1 83/11 83/25 102/25
111/11 117/6
waste [1]  19/3
water [1]  83/16
waters [2]  144/15 144/25
wavering [1]  15/9
way [21]  12/11 15/25 16/8 19/18 24/17
32/12 38/24 58/6 70/16 70/25 71/15 75/24
79/4 79/7 85/19 86/11 89/8 89/8 117/18
118/8 141/11
ways [2]  13/25 100/4
we [160]
we'd [2]  8/17 104/23

## W

we'll [9] 6/6 67/19 82/6 93/25 109/14 110/17
113/23 116/25 145/8
we're [19] 5/13 27/4 42/24 43/1 54/5 67/7
71/22 87/21 88/2 88/17 89/19 93/16 109/20
125/6 137/19 142/22 143/1 144/15 144/25
we've [11] 15/8 67/18 70/3 71/21 78/15 84/9
94/4 98/14 114/15 132/23 135/20
weapon [11] 27/3 27/4 27/5 31/6 43/8 58/8
58/11 98/8 106/16 122/12 122/21
weapons [3] 21/19 52/16 60/22
wearing [1] 48/15
website [10] 19/1 61/13 61/17 62/3 62/13
62/15 62/17 62/18 62/20 62/22
week [11] 29/1 29/4 59/7 59/8 59/8 60/3 60/5
66/19 83/19 88/16 110/25
weeks [1] 63/3
weigh [1] 103/4
weighing [1] 102/3
weight [3] 19/6 117/8 118/12
WEINSTEIN [6] 1/10 3/4 3/5 95/2 101/12
147/1
well [46] 3/17 15/14 17/11 17/19 22/13 25/7
26/9 27/11 33/10 33/12 34/15 34/22 37/13
40/22 53/19 54/12 56/16 61/3 66/22 67/6
68/6 69/4 69/8 73/2 74/5 74/15 78/12 80/9
81/12 86/23 95/11 100/6 100/12 100/22
106/12 108/7 108/17 112/15 118/14 135/24
137/18 138/3 141/25 143/16 144/15 145/17
well-advised [1] 69/8
went [4] 23/7 95/24 103/18 105/9
were [85] 10/10 12/23 15/13 15/14 24/4
24/23 25/15 26/22 27/17 27/25 28/24 29/2
30/8 32/5 43/23 47/8 48/4 48/17 51/1 56/9
56/11 56/14 56/20 57/4 59/3 59/6 59/15
59/17 62/23 63/11 64/17 64/18 64/19 64/25
64/25 65/11 65/12 66/1 70/15 78/1 83/11
85/9 86/23 86/24 87/5 87/6 87/14 87/17 88/3
92/19 95/16 97/3 97/13 97/15 97/19 97/21
100/16 101/5 102/9 103/15 103/18 106/19
108/7 110/9 111/13 111/25 112/1 114/8
115/20 115/21 117/3 118/6 118/10 118/11
119/19 120/3 121/22 123/7 123/8 125/12
127/1 133/16 134/11 136/1 143/6
weren't [8] 33/2 33/5 40/8 79/12 91/12
92/20 108/2 110/3
Wesson [3] 23/13 26/8 55/23
what [235]
what the [1] 142/9
what's [24] 11/19 35/8 38/16 42/20 42/21
42/23 56/22 62/14 62/17 75/8 76/4 76/23
76/24 76/25 89/4 89/11 98/16 100/11 104/5
104/5 104/7 108/23 134/21 142/7
whatever [2] 92/18 117/10
whatsoever [1] 41/14
when [81] 9/18 9/21 11/11 15/24 17/5 17/23
18/9 18/16 18/22 21/20 23/14 28/24 28/24
30/2 31/19 31/20 32/5 33/8 34/2 34/7 34/19
37/17 37/19 37/25 41/10 47/18 48/4 48/4
48/10 48/15 48/17 50/25 62/23 73/15 76/2
79/8 79/16 79/17 79/24 80/8 80/12 82/14
83/3 83/19 84/16 85/20 89/17 90/11 91/2
91/17 92/4 97/3 97/4 97/8 97/8 100/12
103/16 103/17 104/18 105/6 108/20 108/24
112/4 112/6 113/12 115/1 118/17 120/3
120/11 120/24 121/2 122/12 123/1 123/14
128/6 128/11 128/15 128/20 136/11 136/19
145/10
whenever [1] 125/15
where [39] 8/1 8/15 8/19 8/20 9/11 11/13
19/10 21/14 22/25 23/4 24/23 24/25 25/13
37/1 38/25 39/13 39/20 43/13 46/9 46/14

52/13 54/20 57/15 71/5 72/12 81/9 82/8 89/9
92/6 97/16 97/17 97/19 97/21 100/7 114/6
133/9 134/1 136/25 143/8
Whereupon [1] 142/21
whether [26] 8/6 73/3 97/8 101/11 101/18
101/25 102/21 103/24 104/13 104/14 111/13
116/3 116/4 116/5 117/22 121/1 121/2
121/23 123/10 123/12 123/23 124/23 132/14
140/25 143/19 144/4
which [41] 4/11 4/13 6/9 7/22 8/13 8/23
11/24 13/6 19/11 21/11 23/17 27/17 46/7 46/13
46/14 53/8 53/12 56/8 56/11 56/24 67/6 80/9
81/12 81/21 85/4 96/22 98/6 105/13 115/20
122/10 122/11 131/4 131/13 131/16 131/20
134/24 135/3 135/4 135/4 136/11 140/10
while [4] 84/15 95/17 139/19 140/12
who [31] 23/8 27/4 32/25 41/2 41/19 41/21
44/8 56/3 57/10 71/18 71/18 73/18 73/18
78/10 87/12 88/7 88/10 88/25 89/5 89/6
99/23 102/9 108/21 109/5 112/16 115/10
118/25 119/3 121/17 127/15 128/8
who's [5] 78/25 88/23 103/4 103/5 117/15
Whoever [1] 112/18
whole [15] 11/25 13/23 32/15 71/2 75/2
76/24 80/4 82/2 88/11 88/24 90/8 101/7
102/17 114/12 126/9
whom [1] 51/22
whose [8] 72/1 99/21 99/22 100/14 100/14
100/17 100/17 103/3
why [57] 6/1 23/3 23/3 26/4 27/2 37/20 73/6
73/8 75/6 75/21 76/14 77/2 77/12 77/19
77/20 77/24 78/20 80/25 81/2 81/12 81/14
81/17 81/20 82/18 82/20 82/20 82/22 83/15
83/20 83/23 83/25 84/20 85/5 85/7 85/15
85/18 86/2 86/7 87/5 87/5 87/6 88/4 88/19
100/7 100/8 101/8 107/23 109/17 111/7
111/11 111/11 111/20 111/24 112/14 113/22
137/7 137/8
will [46] 3/16 5/12 10/6 17/16 19/21 26/10
34/4 39/1 54/6 66/12 70/8 88/9 93/16 93/23
95/13 101/12 102/13 104/22 105/2 106/5
106/7 110/21 113/2 113/16 113/17 113/19
113/19 114/6 114/7 114/17 116/8 116/23
118/18 124/4 126/4 127/25 128/8 128/15
128/19 130/18 132/18 132/18 132/20 145/8
145/10 147/9
wiped [1] 64/4
wiping [1] 58/7
wish [4] 68/4 114/9 129/23 130/2
withdraw [2] 64/17 65/17
Withdrawn [1] 48/11
withholding [1] 122/18
within [6] 42/17 52/17 53/10 59/9 119/8
123/15
without [22] 15/17 18/23 50/12 107/8 117/9
118/4 124/6 125/21 128/20 128/22 128/22
128/23 128/23 135/18 135/19 139/5 140/1
140/3 141/1 141/6 143/17 143/19
witness [45] 12/15 12/17 12/20 13/4 13/4
13/6 13/11 19/8 19/10 19/16 19/19 19/22
19/25 20/1 20/9 20/19 20/22 23/17 23/19
30/16 35/8 37/1 42/2 47/7 51/7 62/12 65/21
67/12 71/25 79/14 88/23 95/21 105/24 111/2
111/8 117/17 117/20 117/23 117/25 118/4
118/9 132/24 132/25 133/3 148/3
witness's [4] 12/18 12/21 117/16 118/3
witnesses [8] 67/13 67/15 83/19 88/18
116/22 118/10 118/14 131/24
won't [5] 15/18 43/3 79/12 129/17 145/11
Woolworth [1] 1/15
word [5] 96/15 96/16 97/25 108/19 109/2
wording [1] 144/1
words [8] 96/25 97/1 97/24 98/11 98/17

98/24 108/10 109/25
work [9] 24/16 33/22 51/23 52/23 52/23
75/5 76/23 93/18 143/18
worked [8] 28/7 52/20 53/9 55/2 78/7 86/19
90/15 90/16
working [1] 43/19
works [2] 100/24 100/25
worried [1] 90/10
would [80] 5/19 7/15 8/15 9/1 9/4 9/15 10/14
10/19 14/12 16/12 16/17 17/21 18/23 20/7
20/8 21/23 22/7 22/8 24/9 26/7 27/10 33/15
36/7 41/3 41/5 41/6 41/17 43/10 43/18 45/5
46/25 47/12 47/19 54/8 58/7 63/19 65/1 65/1 65/2
54/19 57/19 58/4 58/7 63/19 65/1 65/1 65/2
69/8 70/23 82/18 82/19 83/15 84/20 84/24
85/5 87/8 87/10 87/11 87/18 90/7 90/11
90/12 95/12 100/7 100/8 100/18 100/19
100/19 100/20 107/17 113/10 113/11 122/1
125/21 132/12 132/16 138/20 140/18 141/4
144/7 144/11 144/21
would've [2] 87/22 121/9
wouldn't [12] 43/22 47/5 47/14 82/20 83/16
85/2 86/19 87/18 89/14 111/11 112/17 141/5
wound [1] 113/9
wrestling [1] 143/22
write [5] 38/24 41/19 52/7 78/8 78/9
writing [2] 128/7 128/20
written [3] 12/15 57/4 110/24
wrong [7] 24/13 24/15 88/7 88/11 88/11
89/8 135/21
wrongful [2] 124/2 125/21
wrote [1] 57/10

## Y

yeah [15] 34/9 36/18 40/20 40/25 41/7 41/23
42/5 46/4 60/14 61/20 84/24 135/2 135/3
142/16 145/5
year [19] 14/11 21/22 21/23 22/4 22/5 26/15
52/25 54/9 72/7 72/7 72/10 72/11 72/14
79/11 81/6 109/18 109/19 109/22 109/22
years [30] 22/7 22/20 24/25 29/3 30/2 32/5
43/23 52/22 53/1 59/11 61/2 63/24 79/1 79/1
83/14 83/21 88/15 89/1 89/13 90/2 95/25
95/25 99/15 109/17 109/21 111/10 112/13
112/21 112/21 112/24
yes [155]
yesterday [13] 4/9 11/3 11/11 11/16 16/15
67/1 71/24 89/21 101/3 102/10 105/6 106/12
106/17
yet [3] 74/21 86/6 89/13
yield [4] 18/21 25/22 65/5 65/8
yielded [2] 60/20 61/12
yo [1] 73/15
YORK [20] 1/1 1/5 1/6 1/16 1/16 1/22 1/23
1/23 3/3 3/8 14/8 21/9 52/18 53/16 55/15
83/4 119/5 120/2 122/15 136/11
you [791]
you'd [1] 43/9
you'll [20] 5/20 19/19 70/5 85/10 90/20
90/21 91/17 92/8 92/14 109/1 115/3 116/22
116/22 117/1 117/1 127/8 128/22 128/24
129/18 146/7
you're [28] 5/24 14/7 32/8 32/23 41/10
47/19 74/24 85/6 85/8 90/20 92/11 93/19
96/19 101/14 101/16 101/25 109/12 109/12
112/8 114/7 114/14 128/11 130/8 132/13
141/2 145/17 145/21 146/6
you've [17] 26/20 30/14 36/17 46/5 49/5
58/20 70/16 70/20 91/8 101/22 102/3 106/12
114/24 128/18 128/20 140/14 145/19
your [217]
yourselves [1] 146/5

A1245

DEFENDANTS' BRIEF, DATED APRIL 25, 2012,
READ IN SUPPORT OF MULTIPLE TRIAL MOTIONS
(pp. A1245-A1256)

REPRODUCED FOLLOWING

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

JOSHUA MARSHALL,

                           Plaintiff,

            -against-

P.O. SALIM RANDALL, Shield No. 15331,             10 Civ. 2714 (JBW)(VVP)
Individually and in His Official Capacity, P.O.
MICHAEL BURBRIDGE, Shield No. 15488,
Individually and in His Official Capacity,

                           Defendants.

--------------------------------------------------------------x

# DEFENDANTS' BRIEF IN SUPPORT OF MULTIPLE TRIAL MOTIONS

FELICIA GROSS
JOHANA CASTRO
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 788-0303
fgross@law.nyc.gov
jcastro@law.nyc.gov

Attorneys for Defendants

## PRELIMINARY STATEMENT

Trial commenced in this matter on April 23, 2012 before the Honorable Jack B. Weinstein, United States District Judge. Defendants have made several motions during the course of trial, which the Court has either denied or reserved ruling on pending briefing by defendants.

Defendants respectfully submit this memorandum of law in support of their several motions seeking the following relief: (1) defendants should be permitted to cross-examine plaintiff as to his criminal history now that plaintiff has opened the door to such testimony; (2) plaintiff has improperly made an issue of the legal validity of the officers' initial approach in contravention of the court's prior order; defendants request a curative instruction, and, in the alternative, a mistrial; (3) defendants should be permitted to cross-examine plaintiff as to his emotional and psychological injuries stemming from his incarceration; (4) defendants should be permitted to mention in closing that the criminal case against plaintiff was dismissed on speedy trial grounds; (5) defendants request a curative instruction as to the import of the grand jury's indictment; (6) defendants request a jury instruction that the grand jury indictment creates a presumption of probable cause; and (7) defendants move to dismiss the malicious prosecution and fair trial claims in light of the U.S. Supreme Court's recent decision in *Rehberg*.

### POINT I

#### PLAINTIFF HAS OPENED THE DOOR TO HIS CRIMINAL HISTORY; DEFENDANTS SHOULD BE PERMITTED TO CROSS-EXAMINE HIM AS TO THAT HISTORY.

Defendants previously moved *in limine* to be permitted to cross examine plaintiff as to his extensive criminal history, which includes two prior felony convictions. Those felonies are

## A1248

Case 1:10-cv-02714-DBW-VVP   Document 69   Filed 04/25/12   Page 3 of 11 PageID #: 1046

admissible under Fed. R. Evid. 609. The Court denied defendants' motion on the ground that such testimony was too prejudicial.[1]

During his direct examination on April 24, 2012, plaintiff opened the door to cross examination regarding his criminal history. He gave testimony which falsely implied he had never been incarcerated before – testimony which is patently false.

His testimony was as follows:

Q: How did that make you feel, Mr. Marshall?
A: What, speaking in front of a grand jury?
Q: Yeah.
A: Well, I've never been in a position like that before, so
   I was very nervous. Never been bombarded with questions, so I
   didn't really know how to handle the situation. *I was thrown
   off by the whole arrest situation, me being incarcerated.* So
   it was just so much coming at me at one time. But I still
   gave it a shot, man. You know, I was looking for a good
   outcome.

Ex. A, Trial Transcript, Marshall Testimony at 24, ll. 22-25; at 25, ll. 1-6 (emphasis added).

That testimony was false, misleading, and prejudicial to the defendants. Moreover, by falsely testifying to the effect that he had not been incarcerated before, he opened the door to examination regarding his prior felony convictions and incarcerations.

Moreover, if the does not allow any of his prior convictions or the fact that he was previously incarcerated to come in and the jury awards damages, they will have no basis to

---

[1] Defendants again move that the court reconsider its ruling prohibiting defendants from cross-examining plaintiff as to his criminal history. It is well-established law that such history is admissible and relevant, as it goes to credibility. See Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, *4-5 (S.D.N.Y. Oct. 25, 2007) (prior felony convictions were admissible to impeach plaintiff's credibility in part because where "the versions of the events by the parties are radically different, witness credibility will be especially important in this case.") Moreover, it goes to damages. See Banushi v. Palmer, 08-CV-2937(KAM)(JO), 2011 U.S. Dist. LEXIS 419, *7-9 (E.D.N.Y. Jan. 4, 2011) (admitting evidence of plaintiff's prior arrests in trial involving false arrest claim to mitigate plaintiff's claim of damages and noting, "a plaintiff 'who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained ... .'" ) During trial, plaintiff Marshall testified on direct as to his emotional injury from being incarcerated. Accordingly, the number of his prior incarcerations is both admissible and highly relevant.

- 3 -

determine damages; it would be based on pure speculation. At the very least, they will have the false impression that he has never spent time in jail.

### POINT II

**PLAINTIFF HAS IMPROPERLY RAISED THE ISSUE OF DEFENDANTS' INITIAL DECISION TO APPROACH PLAINTIFF; BY SO DOING, HE HAS OPENED THE DOOR TO BURBRIDGE'S TESTIMONY REGARDING HIS RECOGNITION OF PLAINTIFF; AT THE VERY LEAST, DEFENDANTS REQUEST A CURATIVE INSTRUCTION; DEFENDANTS REQUEST A MISTRIAL IF THE COURT DECLINES TO GIVE THE JURY A CURATIVE INSTRUCTION AS WELL AS A RULING THAT PLAINTIFF IS PRECLUDED FROM IMPUGNING THE LEGAL VALIDITY OF THE INITIAL APPROACH IN CLOSING.**

Defendants previously moved *in limine* to be permitted to elicit testimony from Officer Burbridge that one factor in his decision to approach plaintiff on May 15, 2008 was that he recognized plaintiff from a police database. The Court denied that motion for two reasons: (1) it noted that the "initial stop" (or initial approach) was not at issue in this case; and (2) the admission of such testimony would constitute reversible error under the Second Circuit's recent decision in *United States v. Scott*, No. 10-3972-cr (2d Cir. Apr. 6, 2012).

First, the legal validity of the initial approach is simply not at issue in this case. The Court so ruled on April 16, 2012. Since the court's initial ruling, plaintiff's counsel has argued *repeatedly* that defendants acted improperly in their initial approach of plaintiff. (Trial Transcript Unavailable, 4/24). For example, Officer Burbridge was repeatedly questioned as to the reasons for his initial approach:

    Q:    Prior to the time that you decided to stop Mr. Marshall,
          had you observed suspicious movements?
    A:    Yes.

- 4 -

Q:      Referring to your deposition on Page 66, Line 23,
"QUESTION: Did you observe any furtive movements by Joshua
Marshall before you decided to stop him?
"ANSWER: No."

MS. CASTRO: Objection. I also note there's an
objection at the deposition to that question also.
THE COURT: Overruled.

BY MR. NORINSBERG
Q:      Do you recall being asked that question and giving that
        answer?
A:      Yes.
Q:      You remember that?
A:      Yes.
Q:      So according to your deposition testimony, you did not
        observe any suspicious movements by Mr. Marshall before you
        decided to stop him; true or not true?

MS. CASTRO: Objection.
THE COURT: Overruled.
MS. CASTRO: Your Honor, this pertains to your
Honor's in limine rulings.
THE COURT: The reference is to the night from the
time of first observation to the time of arrest; is that
correct?
MR. NORINSBERG: Yes.
MS. CASTRO: Your Honor, may we be heard at sidebar?
THE COURT: You may not.
MS. CASTRO: Your Honor, I just note my objection
that counsel's question --
THE COURT: Your objection is always noted. We have
a full-time reporter. Proceed with the questioning.

Ex. C, Trial Transcript, Testimony of Michael Burbridge, April 24, 2012 at 124, ll. 6-25; at 125,
ll. 1-14.

As a result of plaintiff's improperly making an issue of the initial approach,

defendants request that the Court give the jury the following curative instruction: "Ladies and

Gentlemen, there is no issue in this case as to whether the officers were permitted to approach

and question plaintiff as he walked down the street on May 15, 2008. The only issue you have to

decide is whether they had a lawful basis to arrest him for possession of a weapon."

Case 1:08-cv-00714-BMC-VVP   Document 88   Filed 05-25-12   Page 6 of 11 PageID #: 1049

Next, defendants renew their request that Officer Burbridge be permitted to testify that one factor in his decision to approach plaintiff was the fact that he recognized plaintiff from a police database. By its ruling, the Court is preventing him from testifying truthfully. Moreover, plaintiff has opened the door to this line of testimony by repeatedly questioning Officer Burbridge as to the reasons for his initial approach. Finally, the Second Circuit's ruling in *Scott* is simply not analogous here. In the *Scott* case, the Second Circuit ruled in the context of a criminal case that testimony by an officer regarding recognition from a prior encounter was too prejudicial. That case is distinguishable on two grounds: (1) it was a criminal case where the liberty of defendant was at stake, and thus the probative/prejudicial balancing test is different; and (2) the initial approach and/or stop was, in fact, at issue in that case. It is not here. This is a civil action for monetary damages. Defendants submit that the Court is allowing plaintiff to use its *in limine* ruling as both a sword and a shield.

Finally, defendants should be precluded from impugning or otherwise questioning the legal validity of the initial approach during their closing. The Court ruled that it is not at issue in the case, and plaintiff's have completely failed to abide by that ruling.

### POINT III

### DEFENDANTS SHOULD BE PERMITTED TO CROSS EXAMINE PLAINTIFF AS TO HIS CLAIM OF EMOTIONAL DAMAGES STEMMING FROM HIS INCARCERATION.

During plaintiff's direct examination, he testified that his stay on Rikers Island was unpleasant, depressing, and that he encountered unsavory individuals, at least one of whom had tuberculosis. He testified as follows:

> Q:    Can you just describe a little bit for the jury what the
>        conditions were like when you were in jail.
> A:    I mean, you're surrounded about everything. You know,
>        you have people with tuberculosis. You got people who just

Case 1:10-cv-02714-JBW-VVP   Document 59   Filed 04/26/12   Page 7 of 11 PageID #: 1050

don't shower.

Ex. A, Trial Transcript, Testimony of Joshua Marshall, April 24, 2012 at 27, ll. 9-18.

However, plaintiff has abandoned his claim for emotional damages in this case. Specifically, during his deposition, plaintiff gave the following testimony:

> Q: Are you seeking to recover for any emotional or psychological injuries?
> A: *No, no.*

Ex. B, Marshall Deposition at 173, ll. 9-11 (emphasis added).

Defendants attempted to cross-examine plaintiff regarding his abandonment of that claim, but the objection to such cross-examination was sustained. Defendants request that they be allowed to cross-examine plaintiff as to his abandonment of the emotional damages claim. Allowing plaintiff to testify as to emotional damages, while precluding defendants from cross-examining as to his abandonment of that claim is highly prejudicial. Moreover, plaintiff's testimony about the conditions on Rikers Island creates the impression that he has never been there before, which is clearly not the case given his numerous other arrests and incarcerations. Thus, it goes to his credibility.

## POINT IV

### DEFENDANTS SHOULD BE PERMITTED TO MENTION IN CLOSING THE FACT THAT PLAINTIFF'S CASE WAS DISMISSED ON SPEEDY TRIAL GROUNDS.

Defendants should be permitted to mention in closing that plaintiff's criminal case was dismissed on speedy trial grounds. Defendants do not dispute that dismissal on speedy trial grounds is a "favorable determination" for purposes of a malicious prosecution claim. That is not at issue. However, defendants should be able to inform the jury of the reason for the dismissal – the simple fact that it was dismissed on speedy trial grounds. This is one of the facts of this case

Case 1:11-cv-02714-JBW-VVP    Document 69    Filed 04/25/12    Page 8 of 11 PageID #: 1051

and the jury should be allowed to know the basis for the dismissal. Defendants do not intend to

characterize a speedy trial dismissal as a "technicality." They simply intend to inform the jury

that the case was dismissed. It did not go to trial. It was not "thrown out" by a judge. The

factual statement – that the case was dismissed on speedy trial grounds – is not prejudicial to the

plaintiff. However, the bald statement that the case was "dismissed," without more, is

prejudicial to the defendants.

The case cited by plaintiff in support of his contention that the jury should not be so

informed, *Cantalino v. Danner*, 754 N.E.2d 164, 168 (N.Y. 2001), simply does not speak to the

issue. It merely holds that for purposes of malicious prosecution, a speedy trial dismissal is

considered a "favorable determination." This is not in dispute. Nor does the case preclude

defendants from informing the jury of the factual reason for the dismissal of the case.

### POINT V

### DEFENDANTS REQUEST A CURATIVE INSTRUCTION REGARDING THE IMPORT OF THE GRAND JURY INDICTMENT.

During plaintiff's cross-examination, the Court instructed the jury that "Just because the

grand jury indicted does not mean that the plaintiff was guilty." The obverse is also true.

Defendants request an instruction that "Just because the case was dismissed does not mean that

the plaintiff didn't have the gun." As it stands, the Court's instruction is not even-handed. In its

partial form, it is incorrect and highly prejudicial to the defendants.

### POINT VI

### DEFENDANTS REQUEST A JURY INSTRUCTION THAT THE GRAND JURY'S INDICTMENT CREATES A PRESUMPTION OF PROBABLE CAUSE.

Case 1:15-cv-02754-JBW-VVP   Document 69   Filed 04/25/12   Page 9 of 11 PageID #: 1052

Defendants renew their request for a jury instruction that the grand jury's indictment creates a presumption of probable cause. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (indictment by a grand jury creates a presumption of probable cause). To overcome that presumption plaintiff must produce evidence "that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Alvarado v. City of New York*, 2011 U.S. App. LEXIS 25110 (2d Cir. N.Y. Dec. 19, 2011).

The Court previously rejected defendants' request because the Court reasoned, plaintiff's theory of the case is that the indictment was procured by fraud. Defendants agree that is plaintiff's theory of the case. But that doesn't change the law as to presumptions. The presumption has two parts: a presumption, and criteria by which the presumption may be rebutted. Here, the Court has, in effect, skipped to the second step.

Defendants submit that the failure to give the requested instruction is reversible error. *See Rothstein v. Carriere*, 373 F.3d 275, 285 (2d Cir. 2004) ("[i]n sum, the district court's erroneous disregard of the presumption that probable cause supported the prosecution of [plaintiff] requires a reversal of the judgment in his favor.")

### POINT VI

### DEFENDANTS MOVE TO DISMISS BOTH THE MALICIOUS PROSECUTION CLAIM AND THE FAIR TRIAL CLAIM IN LIGHT OF THE U.S. SUPREME COURT'S DECISION IN *REHBERG*.

Defendants move to dismiss plaintiff's malicious prosecution and fair trial claims in light of the Supreme Court's recent decision in *Rehberg v. Paulk*, 2012 U.S. LEXIS 2711 (Apr. 2, 2012), barring any §1983 action wherein plaintiff's civil rights claims are premised on allegations stemming from grand jury testimony. In that case, the Supreme Court held that jury witnesses are entitled to absolute immunity from "*any* § 1983 claim based on the witness'

testimony." *Rehberg v. Paulk*, 2012 U.S. LEXIS 2711 at *23-24 (emphasis added). The Supreme Court went on to underscore the importance of this holding cautioning that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* at *24. The reasoning behind granting absolute immunity for grand jury witnesses is the same logic previously used to grant absolute immunity for trial witnesses. *Id.* at *20-21. The main concern is that the grand jury may be deprived of critical evidence and the truth-seeking function of the tribunal weakened, as a result of a witness' fear of retaliatory litigation. *Id.* Additionally, the potential of civil liability is not necessary to prevent false testimony, as there are other sanctions in place, such as prosecution for perjury, which provides a sufficient deterrent. *Id.* at *21.

In addition to granting a witness absolute immunity for grand jury testimony, importantly, *Rehberg* also states that a law enforcement officer does not initiate a prosecution, a necessary factor of the malicious prosecution standard, by testifying before a grand jury. *Rehberg*, 2012 U.S. LEXIS 2711 at *27 - *28. The Supreme Court stated "[b]y testifying before a grand jury, a law enforcement officer does not perform the function of applying for an arrest warrant; nor does such an officer make the critical decision to initiate a prosecution ... such a witness, unlike a complaining witness at common law, does not make the decision to press criminal charges." *Id.* at *27. Indeed, the Court recognized the inherent unfairness in allowing a testifying officer to be civilly liable for a malicious prosecution action, yet insulate a prosecutor who in fact initiates and actively prosecutes a matter. *Id.* at *28 ("it is almost always a prosecutor who is responsible for the decision to present a case to a grand jury ... [i]t would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by

absolute immunity, who is actually responsible for the decision to prosecute."). The Court went on to hold that this rule cannot be circumvented by claiming that a grand jury witness conspired to present false testimony. *Id.* at *24.

Accordingly, any purported claims against the defendant officers must be dismissed because they did not initiate the underlying prosecution.

Moreover, in light of *Rehberg*, to the extent plaintiff's denial of fair trial claim is based upon the alleged false testimony of the defendant officers before the grand jury, any such claim must now be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants Police Officers Salim Randall and Michael Burbridge respectfully request that the Court grant their motions in their entirety and for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            April 25, 2012

                          MICHAEL A. CARDOZO
                          Corporation Counsel of the City of New York
                          Attorney for Defendants Police Officers Salim
                          Randall and Michael Burbridge
                          100 Church Street
                          New York, New York 10007
                          (212) 788-0303

                  By:     _____/s/_____
                          Felicia Gross
                          Assistant Corporation Counsel
                          Special Federal Litigation Division


                  By:     _____/s/_____
                          Johana V. Castro
                          Senior Counsel
                          Special Federal Litigation Division

A1257

EXHIBIT A - ANNEXED TO THE DEFENDANTS' BRIEF, DATED APRIL 25, 2012
Excerpt of Trial Transcript, Dated April 23, 2012
(pp. A1257-A1262)

REPRODUCED FOLLOWING

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 1 of 14 PageID #: 1055

# EXHIBIT A

1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ----------------------------x
     JOSHUA MARSHALL,
3          Plaintiff,

4      versus        10-CV-02714

5    THE CITY OF NEW YORK,
           Defendant.     United States Courthouse
6                         Brooklyn, New York
     ----------------------------x
7
                              April 23, 2012
8                             9:30 A.M.

9           EXCERPT OF TRANSCRIPT OF TRIAL
              TESTIMONY OF JOSHUA MARSHALL
10          Before:  HON. JACK B. WEINSTEIN,
               UNITED STATES DISTRICT JUDGE
11
                 A P P E A R A N C E S.
12   FOR THE PLAINTIFF:

13
                         COHEN & FITCH, LLP
14                       Attorneys for the Plaintiff
                         Woolworth Building
15                       233 Broadway - Suite 1800
                         New York, New York 10279
16

17                       BY: GERALD M. COHEN, ESQ.
                            JON NORINSBERG, ESQ.
18

19

20   For the Defendants:

21                       NEW YORK CITY LAW DEPARTMENT
                         Attorney for the Defendant
22                       100 Church Street
                         New York, New York 10007
23
                         BY: FELICIA GROSS, ESQ.
24         JOHANA CASTRO, ESQ.
                            FRANCES SANDS, ESQ.
25

                  JUDI JOHNSON, RPR, CRR, CLR
                     Official Court Reporter

24

**DIRECT - J. MARSHALL**

1    would be a situation where I would be able to present my case

2    to -- among peers.  And it was an opportunity, and I should go

3    for it.

4    Q    Now, was your attorney present when you testified in the

5    grand jury?

6    A    Yes.

7    Q    And was your attorney allowed to ask you any questions

8    while this case was presented to the grand jury?

9                MS. GROSS:  Objection.

10               THE COURT:  Overruled.

11               THE WITNESS:  No.

12   BY MR. COHEN

13   Q    Who was the only person questioning you in the grand

14   jury?

15   A    The district attorney.

16   Q    Now, Mr. Marshall, had you ever testified in a grand jury

17   before this incident?

18   A    No.

19               MS. GROSS:  Objection, your Honor.  Objection.

20               THE COURT:  Overruled.

21   BY MR. COHEN

22   Q    How did that make you feel, Mr. Marshall?

23   A    What, speaking in front of a grand jury?

24   Q    Yeah.

25   A    Well, I've never been in a position like that before, so

```
                                                                     25
                        DIRECT - J. MARSHALL

 1    I was very nervous.  Never been bombarded with questions, so I

 2    didn't really know how to handle the situation.  I was thrown

 3    off by the whole arrest situation, me being incarcerated.  So

 4    it was just so much coming at me at one time.  But I still

 5    gave it a shot, man.  You know, I was looking for a good

 6    outcome.

 7   Q    Did you get a good outcome?

 8   A    No.

 9   Q    What happened, Mr. Marshall?

10   A    I was indicted.

11   Q    What happened after you were indicted?  Where did you go?

12   A    Right back to Rikers Island.

13   Q    At that point, what was your understanding of where your

14   criminal case was going?

15   A    Trial.

16   Q    Why did you know the case was going to trial?

17   A    Because I was not giving a guilty plea.

18   Q    Can you tell the members of the jury why you weren't

19   going to plead guilty in this case.

20   A    Because I was going to plead my innocence to the end.

21   Q    Now, without telling the jury, again, what was said, did

22   you have discussions with your attorney about the risks of

23   taking a case like this to trial?

24   A    Yes.

25   Q    What was your understanding of the risks of fighting a
```

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 5 of 14 PageID #: 1059

27

### DIRECT - J. MARSHALL

1   Q   Did there come a time when you were actually finally

2   released from jail with respect to these charges?

3   A   Yes.

4   Q   When were you released from jail?

5   A   The end of September.  I don't know the exact date.

6   Q   So approximately how long were you in jail in connection

7   with these charges?

8   A   Four and a half months.

9   Q   Can you just describe a little bit for the jury what the

10  conditions were like when you were in jail.

11  A   I mean, you're surrounded about everything.  You know,

12  you have people with tuberculosis.  You got people who just

13  don't shower.  You know --

14              MS. GROSS:  Objection, your Honor.

15              THE WITNESS:  -- the eating situation is horrible.

16              THE COURT:  I'll allow it briefly.

17              THE WITNESS:  It was just depressing.  It was very

18  depressing, very overwhelming.  Yeah, very disturbing.

19  BY MR. COHEN

20  Q   Now, after you were released from jail, were you still

21  required to come back to court with respect to these charges?

22  A   Yes.

23  Q   How many times did you have to come back to court?

24  A   Approximately eight times.

25  Q   How long was this case pending after you were released

A1263

EXHIBIT B - ANNEXED TO THE DEFENDANTS' BRIEF, DATED APRIL 25, 2012
Excerpt of Examination Before Trial Transcript
of Joshua Marshall, Dated April 26, 2011
(pp. A1263-A1266)

REPRODUCED FOLLOWING

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 6 of 14 PageID #: 1060

# EXHIBIT B

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 7 of 14 PageID #: 1061

**COPY**

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA MARSHALL,

                    Plaintiff,

        -against-

THE CITY OF NEW YORK, Et. Al,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    EXAMINATION BEFORE TRIAL

Of the Plaintiff, JOSHUA MARSHALL, held
on Tuesday, April 26, 2011, commencing at
10:26 a.m., at Sing Sing Correctional
Facility, 354 Hunter Road, Ossining, New
York, before Amelia Moller, a Shorthand
Reporter and a Notary Public in and for
the State of New York.

Case: 12-cv-00-JSW-JVP   Document: 73   Filed 06/05/12   Page 4 of 14 PageID #: 1062

**JOSHUA MARSHALL 10R3164**                         173

```
 1   Q.   That was legal aide?
 2   A.   At that moment, yes.
 3   Q.   So basically the money for the bail and
 4        the lost wages, correct?
 5   A.   Yes.
 6   Q.   Are you seeking to recover for any
 7        physical injuries?
 8   A.   No.
 9   Q.   Are you seeking to recover for any
10        emotional or psychological injuries?
11   A.   No, no.
12   Q.   Are you seeking to recover for any damage
13        to your reputation that might have
14        resulted from this arrest?
15   A.   No.
16   Q.   So, it would be for the economic damage
17        and the loss of your liberty the fact
18        that you were incarcerated, correct?
19   A.   Correct.
20   Q.   Okay.  Have you ever been incarcerated on
21        other occasions other than as a result of
22        this incident here and the second
23        incident that happened in May of 2009?
24   A.   Have I ever been incarcerated before
25        other than these two incidents?
```

A1267

EXHIBIT C - ANNEXED TO THE DEFENDANTS' BRIEF, DATED APRIL 25, 2012
Excerpt of Trial Transcript, Dated April 24, 2012
(pp. A1267-A1273)

REPRODUCED FOLLOWING

Case 1:10-cv-02711-JSW-VVP   Document 72   Filed 01/27/12   Page 1 of 14 PageID #: 1663

# EXHIBIT C

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 10 of 14 PageID #: 1064

1

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
    JOSHUA MARSHALL,
3            Plaintiff,

4        versus                        10-CV-02714 (JBW)

5   THE CITY OF NEW YORK,
             Defendant.       United States Courthouse
6                          Brooklyn, New York
    ------------------------------x
7
                                     April 23, 2012
8                                    9:30 A.M.

9                    TRANSCRIPT OF TRIAL
              Before: HON. JACK B. WEINSTEIN,
10               UNITED STATES DISTRICT JUDGE

11
                     A P P E A R A N C E S:
12   FOR THE PLAINTIFF:

13
                         COHEN & FITCH, LLP
14                       Attorneys for the Plaintiff
                         Woolworth Building
15                       233 Broadway - Suite 1800
                         New York, New York 10279
16

17                       BY: GERALD M. COHEN, ESQ.
                              JON NORINSBERG, ESQ.
18

19

20   For the Defendants:

21                       NEW YORK CITY LAW DEPARTMENT
                         Attorney for the Defendant
22                       100 Church Street
                         New York, New York 10007
23
                         BY: FELICIA GROSS, ESQ.
24                            JOHANA CASTRO, ESQ.
                              FRANCES SANDS, ESQ.
25

          JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

Case 1:10-cr-00777-JBW-VVP  Document 70  Filed 04/25/12  Page 11 of 13 PageID #: 1065

```
                                                                 123
                    DIRECT - OFFICER BURBRIDGE

 1   right?

 2   A    Yes, I did.

 3   Q    And then shortly after you saw Mr. Marshall, you made a

 4   decision to stop these two; is that correct?

 5   A    Yes.

 6   Q    And would you agree, Officer Burbridge, that it was only

 7   a matter of seconds from the time you first saw Mr. Marshall

 8   until the time you stopped him?

 9   A    Yes.

10   Q    Now, you're familiar about what's known as furtive

11   movements, right?

12   A    That's correct.

13   Q    Furtive movements would be something of a suspicious

14   movement, right?

15   A    That's correct.

16   Q    Furtive movements would be an evasive movement, right?

17   A    That's correct.

18   Q    Can you please tell the members of this jury, did you

19   observe any furtive movements by Mr. Marshall before you

20   decided to stop him?

21          MS. CASTRO:  Objection.  Your Honor, the stop is not

22   in question.  Further, counsel is diving into questions that

23   are inappropriate.

24          THE COURT:  You may continue.  Overruled.

25          THE WITNESS:  I'm sorry, could you restate that.
```

LISA SCHMID, CCR, RMR  UNITED STATES DISTRICT COURT  EASTERN
DISTRICT OF NEW YORK

Case 1:10-cv-02714-JBW-VVP  Document 40  Filed 04/25/12  Page 12 of 14 PageID #: 1066

```
                                                            124
                    DIRECT - OFFICER BURBRIDGE

 1   BY MR. NORINSBERG

 2   Q    Prior to the time that you saw Mr. Marshall, did you

 3   observe any furtive movements before you decided to stop him?

 4   A    Can you rephrase it.

 5             MR. NORINSBERG:  Strike it.

 6   BY MR. NORINSBERG

 7   Q    Prior to the time that you decided to stop Mr. Marshall,

 8   had you observed suspicious movements?

 9   A    Yes.

10   Q    Referring to your deposition on Page 66, Line 23,

11   "QUESTION:  Did you observe any furtive movements by Joshua

12   Marshall before you decided to stop him?

13             "ANSWER:  No."

14             MS. CASTRO:  Objection.  I also note there's an

15   objection at the deposition to that question also.

16             THE COURT:  Overruled.

17   BY MR. NORINSBERG

18   Q    Do you recall being asked that question and giving that

19   answer?

20   A    Yes.

21   Q    You remember that?

22   A    Yes.

23   Q    So according to your deposition testimony, you did not

24   observe any suspicious movements by Mr. Marshall before you

25   decided to stop him; true or not true?
```

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 13 of 13 PageID #: 1067

```
                          DIRECT - OFFICER BURBRIDGE              125

 1              MS. CASTRO:  Objection.

 2              THE COURT:  Overruled.

 3              MS. CASTRO:  Your Honor, this pertains to your

 4     Honor's in limine rulings.

 5              THE COURT:  The reference is to the night from the

 6     time of first observation to the time of arrest; is that

 7     correct?

 8              MR. NORINSBERG:  Yes.

 9              MS. CASTRO:  Your Honor, may we be heard at sidebar?

10              THE COURT:  You may not.

11              MS. CASTRO:  Your Honor, I just note my objection

12     that counsel's question --

13              THE COURT:  Your objection is always noted.  We have

14     a full-time reporter.  Proceed with the questioning.

15     BY MR. NORINSBERG

16     Q    Now, before you decided to stop Mr. Marshall, you hadn't

17     activated your sirens at that point, correct?

18     A    That's correct.

19     Q    You hadn't activated your flashing lights, correct?

20     A    That's correct.

21     Q    You hadn't yelled out, "Stop, police," or words to that

22     effect; is that right?

23     A    That's correct.

24     Q    You hadn't made any effort to stop these two individuals;

25     is that correct?
```

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 14 of 14 PageID #: 1068

126
DIRECT - OFFICER BURBRIDGE

1    A    That's correct.

2    Q    Did you see Mr. Marshall's eyes bulging as he was walking

3    down the street?

4    A    I don't remember them bulging.

5    Q    Did you see him suddenly stop in his tracks and look

6    scared when he saw your police car?

7    A    Yes.

8    Q    You saw that, right?

9    A    Yes, I did.

10   Q    Even though you said in your deposition you didn't

11   observe anything suspicious, right?

12        MS. CASTRO:   Objection.

13   BY MR. NORINSBERG

14   Q    Now, after you saw Mr. Marshall, the police vehicle made

15   a right onto Park Street, isn't that true?

16   A    That's true.

17   Q    So you were here just a few moments before when Officer

18   Randall was giving his testimony, correct?

19   A    That's correct.

20   Q    And you saw Officer Randall explain to the jury where

21   things were on that photograph, correct?

22   A    That's correct.

23   Q    And you saw Officer Randall say that the police vehicle

24   actually was coming from the other side of Broadway and made a

25   left onto Park Street, true?

A1274

DEFENDANTS' MOTION FOR A MISTRIAL/ MEMORANDUM OF LAW ,
<u>DATED APRIL 26, 2012</u>
(pp. A1274-A1285)

REPRODUCED FOLLOWING

Case 1:10-cv-02714-JBW-VVP   Document 71   Filed 04/20/12   Page 1 of 11 PageID #: 1069

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

JOSHUA MARSHALL,

                                        Plaintiff,

                  -against-

P.O. SALIM RANDALL, and P.O. MICHAEL          10 Civ. 2714 (JBW)(VVP)
BURBRIDGE,

                                        Defendants.
------------------------------------------------------------------x


## DEFENDANTS' MOTION FOR A MISTRIAL AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

FELICIA GROSS
JOHANA CASTRO
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 788-0303
fgross@law.nyc.gov
jcastro@law.nyc.gov

Attorneys for Defendants

Case 1:10-cv-02714-JBW-VVP   Document 71   Filed 04/26/12   Page 2 of 11 PageID #: 1970

## PRELIMINARY STATEMENT

Trial commenced in this matter on April 23, 2012 before the Honorable Jack B. Weinstein, United States District Judge. After the close of evidence, the Court instructed the jury by reading a jury charge.

Defendants respectfully submit that the jury charge, and subsequent "clarification," (supplemental charge) was erroneous in several respects, namely: (1) the Court misstated the law with respect to whether the jury may award punitive damages in the absence of compensatory damages; (2) the Court misstated the law with respect to plaintiff's psychological or emotional damages; (3) plaintiff was improperly permitted to ask the jury to "send a message" not just to these defendants but to all putative malfeasors; and (4) because defendants were precluded from introducing evidence of plaintiff's prior incarcerations, any damage award is speculative; (5) plaintiff improperly argued during closing that defendants made misleading statements to the grand jury, which is not a proper basis for liability under *Rehberg*; (6) the Court misread the jury charge with respect to defendants' potential liability for testimony before the grand jury in contravention of *Rehberg*; and (7) defendants request the attached special interrogatories.

Now come the defendants respectfully submitting that the error in the various jury charges is so prejudicial as to render the jury unable to reach a fair verdict. Accordingly, defendants move for a mistrial.

## POINT I

### THE COURT ERRED IN INSTRUCTING THE JURY THAT IT MAY AWARD PUNITIVE DAMAGES IN THE ABSENCE OF COMPENSATORY DAMAGES.

During its charge conference, the Court properly instructed the jury that: "If you award compensatory damages, you may award additional punitive damages if you find that a defendant engaged in extraordinary misconduct." Jury Instructions, Section IV, Part B (April 24, 2012, 4:51 PM Version).    After giving such instruction, the jury submitted a note containing the following question, in sum or in substance: "Can we award punitive damages without first awarding compensatory damages? Section IV.B." The Court correctly informed them the answer was no. However, after conducting further research, the Court assembled the jury and gave them the following supplemental jury charge:

> THE COURT: Assuming you find liability -- and I'm not saying you should or shouldn't, do you understand? If you find liability, and flowing from that liability as a proximate cause was deprival of the Plaintiff's liberty, either while he was arrested in violation of his rights -- if you find that -- or for another reason in violation of his rights, he was incarcerated for a substantial length of time, then he is entitled to compensatory damages. Do you understand that?

> (Jury nodding.)

> THE COURT: How much is for you to decide. So the question, "Can we give punitive awards without giving compensatory," theoretically, you can. *You can give punitive without compensatory if you found liability.* Do you understand?

> (Jury nodding.)

Ex. B, Trial Transcript, April 25, 2012 at 139, ll. 16-25; at 140, ll. 1-4 (emphasis added).

The Court's supplemental instruction was a misstatement of the law.

Prior to 2004, it was black letter law that a jury could award punitive damages in the absence of compensatory damages *so long as* it first found liability and awarded nominal damages. *See, e.g., Robinson v. Cattaraugus County*, 147 F.3d 153, 161 (2d Cir. N.Y. 1998). In that case, the jury made the same inquiry, in sum or in substance, of the district court as it did

- 3 -

Case 1:10-cv-0714-JBW-VVP   Document 71   Filed 04/26/12   Page 4 of 11 PageID #: 1072

here (*i.e.*, can punitive damages be awarded in the absence of compensatory damages?). The

Second Circuit held that the district court properly gave the following instruction in response to

the jury's question:

> [t]he Supreme Court has expressed the law that there are circumstances where a jury can
> find that there has been violation of a person's constitutional right, but then under the
> circumstances they find that there is no compensatory damage, that is, there is no pain
> and suffering, there is no lost wages, there are no other elements of any compensatory
> damage. In that case the Supreme Court says that it is proper to make an award of
> nominal damage, usually in the amount of one dollar. *And if there is a finding of liability,
> if there is a finding that there should be an award of nominal damage, even if there are
> no additional compensatory damages found, then the jury may go to consider whether or
> not punitive damages should be awarded under the circumstances.*

*Robinson*, 147 F.3d at 161 (emphasis added).

However, in 2004, a bedrock principle – that jurors could award nominal damages in

constitutional rights deprivation cases – was altered by the Second Circuit in its decision in

*Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. N.Y. 2004). In the *Kerman* case, the

court held that "where [a] plaintiff was indisputably deprived of his liberty, and the conduct of

the defendant responsible for the deprivation was found to be unlawful, we have held that the

plaintiff is entitled to compensatory, not merely nominal, damages." Because the jury awarded

nominal damages, the Second Circuit reversed and remanded for a new trial. Under Kerman,

nominal damages are no longer available for loss of liberty claims.

*Robinson* and *Kerman* address different issues, and are in tension with one another.

*Kerman*'s effect on the question of whether punitive damages may be awarded in the absence of

compensatory damages, if any, is unclear.

In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003), the Supreme

Court again addressed the interrelationship between compensatory and punitive damages. In that

case, it held that punitive damages must have a proportionate ratio to compensatory damages in

order to comport with due process.[1] It further held that the $145 million punitive damage award

in that case did not satisfy due process, and reversed and remanded for a remittitur or new trial.

In so holding, the Supreme Court reasoned as follows:

> [T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, supra, at 575. We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. 517 U.S., at 576-577. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. *It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. Id.*, at 575.

*State Farm*, 538 U.S. at 419 (emphasis added).

As a result of *State Farm*, the landscape with respect to the relationship between

compensatory and punitive damages has shifted. Nevertheless, defendants submit that, as

articulated by the U.S. Supreme Court in *State Farm*, punitive damages are *not* recoverable in the

absence of compensatory damages. *State Farm* effectively overruled *Robinson*.

Therefore, the Court erred when it gave a supplemental instruction to the jury to the

effect that that punitive damages may, in fact, be awarded in the absence of compensatory

damages. Moreover, given the language of the supplemental jury instruction, the jury is now

---

[1] The Court's reasoning was as follows: "Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, [footnote omitted] few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. In *Haslip*, in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. 499 U.S., at 23-24. We cited that 4-to-1 ratio again in *Gore*. 517 U.S., at 581." *State Farm*, 538 U.S. at 425 (2003).

Case 2:09-cv-03714-JBW-VVP   Document 71   Filed 04/26/12   Page 6 of 11 PageID #: 1074

compelled to award both compensatory and punitive damages. Defendants do not believe a curative instruction is possible in light of the fact that the jury has already been given two charges on the issue. Accordingly, defendants have no choice but to request a mistrial.

**POINT II**

**THE COURT MISSTATED THE LAW WITH RESPECT TO PLAINTIFF'S SEEKING MENTAL AND EMOTIONAL DAMAGES.**

Prior to instructing the jury, the Court heard argument on defendants' objections to the charge. After such argument, the Court inserted the following instruction into the jury charge: "Plaintiff claims as the injury that he spent four and a half months in jail. *He is not seeking recovery for any emotional or psychological injuries.* He is not seeking recovery for loss of earnings." Jury Charge, April 25, 2012, Section IV (Damages), Part A (Compensatory Damages) at p. 11 (emphasis added).

However, during the charge, the Court added new language which fundamentally altered the import. The Court stated:

> THE COURT:
>
> The plaintiff claims as the injury that he spent four and a half months in jail. He is not seeking recovery for any emotional or psychological injuries. He is not seeking recovery for loss of earnings. *That is, for any emotional or psychological injuries that continued after the jail. He is seeking damages for the time he spent in jail.*

Ex. B, Trial Transcript, April 25, 2012 at 126, ll. 15-20 (emphasis added).

This is an incorrect statement of the case. He is not seeking to recover for emotional or psychological injuries at all. He is seeking damages for loss of liberty.

## POINT III

## THE COURT PERMITTED PLAINTIFF TO ASK THE JURY TO "SEND A MESSAGE" NOT JUST TO THESE DEFENDANTS BUT TO ALL PUTATIVE MALFEASORS.

During plaintiff's closing argument, he stated as follows:

MR. NORINSBERG:

> But there's one section, the last section on
> punitive damages, that I do want you to take very seriously.
> Punitive damages gives you an opportunity to speak your voice
> and actually be heard as a juror. *You can send a message to*
> *these two Defendants.*
> MS. CASTRO: Objection.
> MR. NORINSBERG: *You can send a message.*
> THE COURT: You may continue your argument.
> MR. NORINSBERG: *You can send a message through your*
> *verdict, not just to these two Defendants, but to any other*
> *police officer out there* that thinks it's okay to get in front
> of a grand jury and lie. *You can send a message to any*
> *other police officer out there that thinks it's okay.*
> THE COURT: Strike that reference to before the
> grand jury.
> MR. NORINSBERG: Y*ou can send a message to any other*
> *police officer* that thinks it's okay to tell a prosecutor
> something that's completely false, and say, you know what, you
> can't do that. You actually cannot do that in our system.
> You will be accountable. And that's what we're going to ask
> you to do at the end of the day is listen to all of the
> evidence, work through it carefully. But if you do that and
> you honor the pledges you made in your jury selection, you're
> going to get the right result, and that's to hold these two
> Defendants responsible for putting this man in jail for four
> and a half months. Thank you.
> THE COURT: Thank you.

Ex. B, Trial Transcript, April 25, 2012 at 92, ll. 22-25; at 93, ll. 1-23 (emphases added).

Defendants submit that this line of argument is inflammatory, highly prejudicial, and should have been excluded. *See, e.g., Morales v. City of New York*, 2000 U.S. Dist. LEXIS 18711 (S.D.N.Y. 2000) (allowing plaintiff's motion for remittitur or new trial where punitive damage award was excessive; concluding, *inter alia*, that "[t]he plaintiff's summation asked the

jury to 'send a message' to the police by their verdict. While this plea was made in connection

with the argument on punitive damages, the jury may not have appreciated that such an argument

was only relevant to a determination of punitive damages.').

### POINT IV

**BECAUSE DEFENDANTS WERE PRECLUDED FROM INTRODUCING EVIDENCE OF PLAINTIFF'S PRIOR INCARCERATIONS, ANY DAMAGE AWARD IS SPECULATIVE.**

Assuming the jury returns a damages award for loss of liberty, the defense was precluded

from eliciting testimony concerning plaintiff's prior criminal convictions and incarcerations so

there is nothing in the record from which the jury can base a damage award.  Any such award

would be purely speculative.

Defendants have repeatedly moved that the court permit defendants to elicit testimony or

cross-examining plaintiff as to his criminal history.  It is well-established law that such history

goes directly to damages. *See Banushi v. Palmer*, 08-CV-2937(KAM)(JO), 2011 U.S. Dist.

LEXIS 419, *7-9 (E.D.N.Y. Jan. 4, 2011) (admitting evidence of plaintiff's prior arrests in trial

involving false arrest claim to mitigate plaintiff's claim of damages and noting, "a plaintiff 'who

has had a number of prior arrests and detentions is likely to have suffered less distress than one

who has never before been detained … .'" ).  During trial, plaintiff Marshall testified on direct

as to his emotional injury from being incarcerated.  Accordingly, the number of his prior

incarcerations is both admissible and highly relevant to damages.

### POINT V

**PLAINTIFF IMPROPERLY ARGUED DURING CLOSING THAT DEFENDANTS MADE MISLEADING STATEMENTS TO THE GRAND JURY, WHICH IS NOT A**

- 8 -

### PROPER BASIS FOR LIABILITY UNDER *REHBERG.*

Finally, in his closing, plaintiff's counsel improperly argued that the defendants mislead

the "grand jury." He argued:

MR. NORINSBERG:

> Now, you'll see the sections on compensatory
> damages, I don't even want to touch that with you. I want
> this case -- I don't want to taint this about this case being
> a money case. This is about holding these officers
> accountable. Whatever value you put on it is fine. It's
> about showing that you were not fooled like these other
> people. *You weren't mislead like the grand jury.* You see the
> light here. You understand what happened.

Ex. B, Trial Transcript, April 25, 2012 at 92, ll. 14-21 (emphasis added).

Plaintiff's counsel made additional references to defendants' having mislead the grand

jury several other times during his closing. *See, e.g.*, p. 74, line 8 ("What he told the *grand jury*

was a lie."); p. 76, line 1 ("What he told that *grand jury* is a lie."); p. 79, line 17 and 20-21

When he  appeared before the *grand jury*, one story. When he appeared in the civil lawsuit,

another story. \*\* He testified under oath in front of that *grand jury* that what happened was he

had this conversation with Marshall that he said, "Sir, can I talk to you for a minute?"); and p.

93, lines 10-11 ("You can send a message through your verdict, not just to these two Defendants,

but to any other police officer out there that thinks it's okay to get in front of a *grand jury* and

lie.") (emphases added).

His argument is misleading and confusing. It may give the jury reason to believe that

misstatements to the grand jury is a basis for liability, which it is not under the U.S. Supreme

Court's recent decision in *Rehberg v. Paulk*, 2012 U.S. LEXIS 2711, \*23-24 (Apr. 2, 2012). *See*

- 9 -

*id.* (holding that grand jury witnesses are entitled to absolute immunity from "*any* § 1983 claim based on the witness' testimony").

### POINT VI

#### THE COURT MISREAD THE JURY CHARGE WITH RESPECT TO DEFENDANTS' POTENTIAL LIABILITY FOR TESTIMONY BEFORE THE GRAND JURY IN CONTRAVENTION OF *REHBER*G.

During the jury charge, the Court misread a crucial instruction. The Court stated:

> THE COURT
>
> Did Officer Randall violate the plaintiff's constitutional right to a fair trial by knowingly presenting *false evidence to the prosecutor? I'm sorry, in preparation for the grand jury.*

Ex. B, Trial Transcript, April 25, 2012 at 129, ll. 8-12 (emphasis added).

Even though the Court corrected the mistake, the confusion created on a crucial point is highly prejudicial.

### POINT VII

#### DEFENDANTS REQUEST THE ATTACHED SPECIAL INTERROGATORIES.

Finally, defendants request that the attached special interrogatories be given to the jury after it has reached its verdict. *See* Exhibit A.

### CONCLUSION

For the foregoing reasons, defendants Police Officers Salim Randall and Michael Burbridge respectfully request that the Court grant their motions in their entirety and for such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          April 26, 2012

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendants Police Officers Salim
Randall and Michael Burbridge
100 Church Street
New York, New York 10007
(212) 788-0303

By:        /s/
          Felicia Gross
          Assistant Corporation Counsel
          Special Federal Litigation Division


By:        /s/
          Johana V. Castro
          Senior Counsel
          Special Federal Litigation Division

A1286

EXHIBIT A - ANNEXED TO DEFENDANTS' MOTION
<u>FOR A MISTRIAL/MEMORANDUM OF LAW</u>
Excerpt of Special Interrogatories
(pp. A1286-A1288)

REPRODUCED FOLLOWING

Case 1 10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 1 of 12 PageID #: 1080

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JOSHUA MARSHALL,
Plaintiff,
-against-
POLICE OFFICER SALIM RANDALL and POLICE
OFFICER MICHAEL BURBRIDGE,
Defendants.
------------------------------------------------------------------x

10 Civ. 2714 (JBW)(VVP)

**Special Interrogatories**

1) Was it reasonable for Officer Randall to believe that plaintiff had a gun.

Yes____                              No_____

2) Was it reasonable for Officer Burbridge to believe that plaintiff had a gun.

Yes_____                            No_____

3) Did Officer Randall knowingly mislead the prosecutor to procure an indictment.

Yes_____                            No_____

4) Did Officer Burbridge knowingly mislead the prosecutor to procure an indictment.

Yes_____                            No_____

5) Did Officer Randall knowingly present false information to the prosecutor.

Yes_____                            No_____

6) Did Officer Burbridge knowing present false information to the prosecutor.

Yes_____                            No_____

Case: 12-2479   Document: 40-1   Page: 95   09/27/2012   731928   126

A1289

EXHIBIT B - ANNEXED TO DEFENDANTS' MOTION
FOR A MISTRIAL/MEMORANDUM OF LAW
Excerpt of Trial Transcript Dated April 25, 2012
(pp. A1289-A1299)

REPRODUCED FOLLOWING

Case: 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 3 of 12 PageID #: 1082

# EXHIBIT B

Case 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 4 of 12 PageID #: 1083

---

**Page 1**

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2
     JOSHUA MARSHALL,
 3        Plaintiff,
 4         versus              10-CV-02714 (JBW)
 5   THE CITY OF NEW YORK,
          Defendant.   United States Courthouse
 6                      Brooklyn, New York
 7   ------------------------x
 8                      April 25, 2012
                        9:30 A.M.
 9            ***VOLUME II**
10     CONTINUED TRANSCRIPT OF TRIAL
       Before: HON. JACK B. WEINSTEIN,
11       UNITED STATES DISTRICT JUDGE
12
13   FOR THE PLAINTIFF:
14
15        COHEN & FITCH, LLP
          Attorneys for the Plaintiff
16        Woolworth Building
          233 Broadway - Suite 1800
17        New York, New York 10279
18        BY: GERALD M. COHEN, ESQ.
             JON NORINSBERG, ESQ.
19
20
21   For the Defendants:
22        NEW YORK CITY LAW DEPARTMENT
          Attorney for the Defendant
23        100 Church Street
          New York, New York 10007
24
          BY: FELICIA GROSS, ESQ.
25            JOHANA CASTRO, ESQ.
              FRANCES SANDS, ESQ.
     JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter
```

**Page 2**

```
 1   Court Reporter: Judi Johnson, RPR, CRR, CLR
     Official Court Reporter
 2   Telephone: (718) 613-2582
     Facsimile: (718) 613-2480
 3   E-mail: Judi_Johnson@nyed.uscourts.gov
 4
 5   Proceedings recorded by computerized stenography. Transcript
     produced by Computer-aided Transcription.
 6
...
25   JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter
```

**Page 3**

```
 1   (In open court.)
 2        COURTROOM DEPUTY:  All rise.  The United States
 3   District Court for the Eastern District of New York is now in
 4   session.  The Honorable JACK B. WEINSTEIN is now presiding.
 5        (Honorable JACK B. WEINSTEIN takes the bench.)
 6        COURTROOM DEPUTY:  Calling civil trial proceeding
 7   in Docket no. 10-CV-2714, Joshua Marshall against The City of
 8   New York.
 9        THE COURT:  Marshall v. Randall and Burbridge.
10   I have the defendants' brief in support of multiple
11   trial motions.
12        MR. COHEN:  Your Honor, may I step outside just to
13   get my co-counsel?
14        THE COURT:  If he's here.
15        MR. COHEN:  He's here.
16        MS. CASTRO:  Your Honor, I will step out and get my
17   co-counsel as well.
18        (A brief pause.)
19        THE COURT:  I've gone over this brief in support of
20   the defendants' multiple trial motions.  Thank you very much
21   for getting this in early.  It was helpful to be able to read
22   it early this morning.
23        I'll briefly summarize the conclusions I have and
24   changes I'm making, and then if it's necessary, we can have
25   further argument.
     JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter
```

**Page 4**

```
 1        Defendants asked to be permitted to cross-examine
 2   the plaintiff as to his criminal history now that he has
 3   opened the door to such testimony.  I don't think he's opened
 4   the door.  That is denied.
 5        Second, plaintiff has improperly made an issue of
 6   the legal validity of the officers' initial approach in
 7   contravention of the Court's prior order.  Defendants request
 8   a curative instruction and, in the alternative, a mistrial.
 9   As I explained yesterday, there was no contravention of the
10   Court's prior order.  The testimony was properly limited to
11   the period from which the defendants had first observed the
12   plaintiff to the time of arrest.
13        Defendants asked for a mistrial, which is denied on
14   the merits.
15        Third, defendants should be permitted to
16   cross-examine plaintiff as to his emotional and psychological
17   injuries.  He's not seeking damages.  And I'll modify the
18   charge, as I'll explain in a moment, to make that clear.
19        Fourth, defendants should be permitted to mention in
20   closing that the criminal case was dismissed on Speedy Trial
21   rules.  I've already dealt with that, and I see no reason to
22   reopen that.  It's been discussed repeatedly.
23        Defendants request a curative instruction as to the
24   import of the grand jury's indictment.  That's five, and it's
25   combined really with six.  Instruction of a presumption of
     JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter
```

## A1292

PROCEEDINGS                    137

1    MR. COHEN: I believe it's the Second Circuit.
2    MR. NORINSBERG: Second Circuit.
3    MR. COHEN: I have the case cite in my bag.
4    MR. NORINSBERG: It's definitely Second Circuit.
5    MR. COHEN: I'm sure it was referenced in my motion
6  in limine papers, your Honor.
7    THE COURT: Why didn't you object to the charge?
8    MR. NORINSBERG: We did. That's why we opposed
9  nominal damages. If there's a deprivation of liberty in any
10 magnitude, Kerman says there has to be an award of some
11 monetary compensation.
12   THE COURT: You disagree?
13   MS. SANDS: We disagree, your Honor.
14   THE COURT: Have you got a case?
15   MS. SANDS: We don't have a case handy, but we
16 certainly disagree that -- I know the case you just read, but
17 we feel there has to be liability before they can --
18   THE COURT: Well, of course there has to be
19 liability. That's not what we're talking about.
20   MR. NORINSBERG: Your Honor, the jury might be
21 asking that question: If they don't find liability, can they
22 still award punitive damages?
23   THE COURT: There has to be liability. What is that
24 citation?
25   MR. COHEN: I'm looking for my motion papers, your

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    138

1  Honor. If I could just have one minute. Kerman is 374 F.3d
2  93. It's a Second Circuit decision from 2004. And if you
3  look at Pages 123 to 125, the quote is -- well, what I've
4  quoted for is "recognizing that loss of liberty and emotional
5  injuries are independent of each other and" --
6    THE COURT: Start again.
7    MR. COHEN: -- "the tort of false arrest and
8  malicious prosecution are complete with even a brief restraint
9  of the Plaintiff's freedom, it is not necessary that any
10 damages result from it other than the confinement, itself."
11   That's just for the portion that states that the
12 loss of freedom is a compensatory damage. But I believe,
13 later on in the case, it talks about how there must be
14 compensatory damages if a loss of liberty is found.
15   THE COURT: Bring in the jury.
16   MS. SANDS: Your Honor, I believe that case focused
17 on nominal damages, basically nominal damages if the jury
18 found that there was a breach of constitutional rights.
19   THE COURT: There has to be some damages.
20   MS. SANDS: They couldn't be nominal. They would
21 have to be --
22   THE COURT: But everybody agreed to strike the
23 nominal. I thought that the nominal was appropriate, but I'll
24 bring in the jury and tell them they have to find some
25 damages.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    139

1    Bring in the jury.
2    (The jury entered.)
3    THE COURT: I want to correct what I think is an
4  error in the charge. As suggested in your note, Court
5  Exhibit 9, "Can we give punitive award without giving
6  compensatory"?
7    First, if he was deprived of a constitutional
8  right -- that is, there is liability -- that's the first
9  question. In order to give damages, there has to be
10 liability. Do you all understand that?
11   (Jury nodding.)
12   THE COURT: Anybody have any question about
13 If there's no liability, there's no damages. Do you
14 understand that? Everybody understand that?
15   (Jury nodding.)
16   THE COURT: Assuming you find liability -- and I'm
17 not saying you should or shouldn't, do you understand? If you
18 find liability, and flowing from that liability as a proximate
19 cause was deprival of the Plaintiff's liberty, either while he
20 was arrested in violation of his rights -- if you find that --
21 or for another reason in violation of his rights, he was
22 incarcerated for a substantial length of time, then he is
23 entitled to compensatory damages. Do you understand that?
24   (Jury nodding.)
25   THE COURT: How much is for you to decide. So the

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                    140

1  question, "Can we give punitive awards without giving
2  compensatory," theoretically, you can. You can give punitive
3  without compensatory if you found liability. Do you
4  understand?
5    (Jury nodding.)
6    THE COURT: But it's hard for me to see how if you
7  find liability and you find that he was deprived of his
8  liberty, you cannot give him some compensatory damages. I'm
9  not telling you what to do, but it does seem to me that once
10 you find liability which caused a deprivation of his
11 liberty -- either for four and a half months or for a lesser
12 time while he was arrested, et cetera -- that's all
13 deprivation.
14   You've got to find some violation first, some
15 liability. Then, after you find liability as -- if you do, as
16 I suggested, the next thing is compensatory damages. Now, if
17 you do find liability, it's, again, hard for me to see how you
18 cannot find some compensatory damages and he would be entitled
19 to compensatory damages for a deprivation. Do you understand
20 that?
21   (Jury nodding.)
22   THE COURT: If the deprivation was caused by the
23 denial. Do you understand?
24   (Jury nodding.)
25   THE COURT: Therefore, the question of whether we

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 125

1  prosecutor, leading to a deprivation of the plaintiff's
2  liberty. If a defendant presented accurate evidence to the
3  prosecutor or presented false evidence thinking it was true,
4  then you must find for the defendant. And I've already told
5  you a few moments ago that what was told to the prosecutor in
6  the grand jury room or in preparation is not what we're
7  talking about here. It's at other times.
8      Do you understand that?
9      (Jury nodding.)
10     THE COURT:  The third element that plaintiff must
11 prove is that the acts of Officer Randall and officer
12 Burbridge were a proximate cause of injuries he sustained.
13 There can be more than one cause that's proximate.
14     An injury or damage is proximately caused by an act
15 or failure to act whenever the act or omission played a
16 substantial part in bringing about or actually causing the
17 injury or damage and that the injury was the direct or
18 reasonably probable consequence of the act or omission.
19     To recover damages, Marshall has the burden, that
20 is, the plaintiff, of proving that he suffered an injury and
21 that the injury would not have occurred without the wrongful
22 conduct of a defendant.
23     If you find the plaintiff has proven one of his
24 three claims, you are going to have to determine damages, if
25 any, that he sustained and proved. Don't infer that he had

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 126

1  damages merely because I am instructing you.  It's exclusively
2  your function to determine liability and damages.
3      He's seeking first compensatory damages.  If
4  liability is proven on one of the claims, you will award the
5  plaintiff sufficient damages to compensate him for any injury
6  proximally caused by one of the defendants' actions in
7  creating the liability.  Damages of this type is known as
8  compensatory damages.  Their purpose is to make the plaintiff
9  whole, that is, to give back, to the extent that money can,
10 the problem or injury that he -- for the injury that he
11 suffered.  Those damages should be fair and reasonable,
12 neither inadequate nor excessive, and they should be only for
13 injuries the plaintiff suffered or is reasonably likely to
14 suffer as a proximate result of an injury claimed and proved.
15     The plaintiff claims as the injury that he spent
16 four and a half months in jail.  He is not seeking recovery
17 for any emotional or psychological injuries.  He is not
18 seeking recovery for loss of earnings.  That is, for any
19 emotional or psychological injuries that continued after the
20 jail.  He is seeking damages for the time he spent in jail.
21     In awarding compensatory damages, be guided by
22 dispassionate common sense.  Use such definitiveness and
23 accuracy as the circumstances permit.
24     Each defendant is entitled to fair, separate and
25 individual consideration both as to liability and as to

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 127

1  damages. It's as if you were trying two separate trials at
2  the same time.
3      Is that clear to you?
4      (Jury nodding.)
5      THE COURT:  If you find that only one is responsible
6  for a particular injury, then you must impose damages, if any,
7  for that injury only upon that defendant. If you find no
8  injuries by any of the defendants, then you'll rule
9  accordingly.
10     The plaintiff is also asking for punitive damages.
11 Should you award compensatory damages, you may award
12 additional punitive damages if you find that a defendant
13 engaged in extraordinary misconduct.  You may do so to express
14 your disapproval and to serve as an example or warning to
15 others who might otherwise engage in similar conduct.
16     If you find in favor of plaintiff and against the
17 defendant and if you finds that the defendant acted so
18 maliciously, wantonly or oppressively as to warrant an award
19 of punitive damages, you may make such an award.
20     To justify an award of punitive damages, a
21 defendant's misconduct must be based upon a reckless or
22 callous disregard of the rights of the plaintiff or a gross
23 indifference treasure them.  You may also award punitive
24 damages if a defendant acted to punish the plaintiff out of
25 ill will or spite.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 128

1      You may assess punitive damages or any damages
2  against either or both of the defendants, or in the case of
3  punitive damages, you may refuse to assess them at all.
4      If punitive damages are assessed against more than
5  one defendant, the amount may be the same or may be different.
6      When you begin your deliberations, don't communicate
7  with anybody outside the jury room except in writing through
8  the marshal, who will give me the note, and then I'll
9  communicate back or call you back into court.
10     You can ask for help on the law or anything else.
11     Be respectful to each other when you're having your
12 discussions. Don't hesitate to change your mind after
13 considering what other people say, but each of you is entitled
14 to your individual vote and must exercise your individual
15 judgment. And when the verdict comes in, you will each be
16 asked if that is your verdict.
17     Don't tell me how the vote stands until you come
18 into court. If you've reached a verdict, don't report to me
19 what it is. You will be asked that in open court. Inform the
20 Court in writing when you've reached your verdict without
21 indicating what that verdict is.
22     You'll render your verdict without fear or without
23 favor, without prejudice and without sympathy.
24     Now, these are the questions you'll have to answer.
25 First, did Randall falsely arrest the plaintiff?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

Case : 10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 7 of 12 PageID #: 1086

| PROCEEDINGS | 89 |
|---|---|

1  years? No one ever talked to him. This man was so
2  unimportant that the D.A.'s office never interviewed him, let
3  alone him testifying in front of a grand jury. This guy,
4  he comes in here. What's the one thing, the one undisputed
5  fact we get out of him? He didn't see who threw the gun. He
6  did not see who threw the gun. That's the number one fact,
7  and with good reason.
8      The man's driving the wrong way down a one-way
9  street at night in an area where you have several stores that
10  are open 24 hours, and of course he's paying attention to
11  what's ahead of him. He's not looking. What did he actually
12  remember? This man said he did thousands of arrests, over a
13  thousand in his career. And yet, four years later, he's
14  contacted for the first time. And wouldn't you know it, he
15  just remembers in great detail this particular case. Of
16  course, it comes out that his memory was somewhat refreshed
17  when he was able to meet with the lawyers from the Defendant
18  in this case.
19      And we're seeing what happens here. We saw an
20  example with Officer Burbridge. Remember, I questioned him
21  yesterday about this. During his deposition, Officer
22  Burbridge couldn't think of the right answer. We had a break
23  and all of a sudden, the answers came flowing. We saw how
24  Officer Randall was only too happy to adopt the term, his
25  "associate." He started using that in his direct after hearing

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS | 90 |
|---|---|

1  it from the lawyer. My point is this: How real is that
2  testimony? It's four years after the fact meeting with their
3  lawyers. And at the end of the day, it really doesn't change
4  any of the dynamics in this case at all.
5      The one part, I don't know if you believe it, I
6  don't think this guy actually saw anything. Even if you
7  believed his story they saw Meade's hands, that just would
8  make perfect sense to this whole story of what happened.
9  Meade is going along. He's the one that tosses the gun. He's
10  the one worried about the cops. Officers, look, I got nothing
11  here. What normal person would walk down the street, and when
12  police are coming, would go like this? That doesn't make
13  sense. He's doing it because he's got the guilty conscience.
14  He knows he just tossed that gun. He wants to make sure the
15  officers think it's not him. And guess what? It worked. It
16  worked.
17      The bottom line is this, ladies and gentlemen. Your
18  questions are going to come down to what they call a verdict
19  sheet. I'm just going to walk through this very briefly with
20  you. You'll get it again. You're going to have copies of it.
21  You'll have a chance to go through this extensively.
22  Essentially, there are three main questions: Was Mr. Marshall
23  falsely arrested by these two Defendants; was he maliciously
24  prosecuted; was he denied a right to a fair trial by the false
25  evidence?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS | 91 |
|---|---|

1      Now, I suggest to you all of those questions turn on
2  the very first thing that we talked about when I started my
3  closing argument today: Did Marshall have a gun on him? If
4  Marshall did not have gun on him, if the answer to that
5  question is no, he did not have a gun, then the answer to all
6  of the questions on the verdict sheet is yes. Now, if
7  Marshall actually had the gun, if you still believe that after
8  everything you've heard, then of course, he's not entitled to
9  anything. You throw him out. That's your job as jurors.
10      But if you actually think through this and believe
11  that these officers gave false information to the prosecutors,
12  they duped the prosecutors because the prosecutors weren't out
13  on the street. They duped it and put it over on the grand
14  jury with these false stories. If you believe that's what
15  happened, then the Marshall to not having a gun, the answer to
16  all the answers on the verdict sheet is yes. It's yes.
17      And then, you'll see there's a question. When
18  they're talking about maliciously prosecuting, just so you
19  understand, our view is simply this: They're feeding false
20  information. They may not be the prosecutors, per se, but
21  they're feeding that information. Now, one thing on the first
22  two questions on false arrest. Let's say some of you -- and I
23  know there's room for a healthy discussion about all this case
24  and the facts. It's not like the attorneys --
25      MS. CASTRO:  Objection.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS | 92 |
|---|---|

1      THE COURT:  You may continue your argument.
2      MR. NORINSBERG:  -- defense counsel got up in your
3  opening and said this is just an open-and-shut case. We
4  actually want you to think about it. When you think about it,
5  let's say some of you still are not sure. You don't know
6  where you are. The first questions, the first two questions
7  on false arrest, the Defendants actually have the burden of
8  proof on those questions. You'll hear that from the judge.
9  They have the burden to prove that they had grounds to arrest
10  Marshall, not us. We have the burden on the other two claims.
11  But on those first two questions, for some of you, if you're
12  not comfortable with that, they have the burden. If they fail
13  to meet their burden, they lose on that claim.
14      Now, you'll see the sections on compensatory
15  damages, I don't even want to touch that with you. I want
16  this case -- I don't want to taint this about this case being
17  a money case. This is about holding these officers
18  accountable. Whatever value you put on it is fine. It's
19  about showing that you were not fooled like these other
20  people. You weren't mislead like the grand jury. You see the
21  light here. You understand what happened.
22      But there's one section, the last section on
23  punitive damages, that I do want you to take very seriously.
24  Punitive damages gives you an opportunity to speak your voice
25  and actually be heard as a juror. You can send a message to

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

**A1295**

Case 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 8 of 12 PageID #: 1087

| | PROCEEDINGS 93 |
|---|---|
| 1 | these two Defendants. |
| 2 | MS. CASTRO:  Objection. |
| 3 | MR. NORINSBERG:  You can send a message. |
| 4 | THE COURT:  You may continue your argument. |
| 5 | MR. NORINSBERG:  You can send a message through your |
| 6 | verdict, not just to these two Defendants, but to any other |
| 7 | police officer out there that thinks it's okay to get in front |
| 8 | of a grand jury and lie.  You can send a message to any |
| 9 | other police officer out there that thinks it's okay. |
| 10 | THE COURT:  Strike that reference to before the |
| 11 | grand jury. |
| 12 | MR. NORINSBERG:  You can send a message to another |
| 13 | police officer that thinks it's okay to tell a prosecutor |
| 14 | something that's completely false, and say, you know what, you |
| 15 | can't do that.  You actually cannot do that in our system. |
| 16 | You will be accountable.  And that's what we're going to ask |
| 17 | you to do at the end of the day is listen to all of the |
| 18 | evidence, work through it carefully.  But if you do that and |
| 19 | you honor the pledges you made in your jury selection, you're |
| 20 | going to get the right result, and that's to hold these two |
| 21 | Defendants responsible for putting this man in jail for four |
| 22 | and a half months.  Thank you. |
| 23 | THE COURT:  Thank you.  Lunch will be up at 12:30. |
| 24 | Do you want to take a break now, and then get back here at |
| 25 | about quarter after one, take a break now?  We'll continue at |

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| | PROCEEDINGS 94 |
|---|---|
| 1 | a quarter after one.  Don't discuss the case. |
| 2 | (The jury exited.) |
| 3 | THE COURT:  You have the jury charge with all the |
| 4 | corrections.  And we've run off copies for the jury later. |
| 5 | Enjoy your lunch.  I'll see you at 1:15. |
| 6 | (A lunch recess was taken.) |
| 7 | (Continued on the next page.) |

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| | PROCEEDINGS 95 |
|---|---|
| 1 | |
| 2 | (Honorable Jack B. Weinstein takes the bench.) |
| 3 | (Jury is in the courtroom at 1:20 p.m.) |
| 4 | THE COURT:  Be seated, please.  Proceed. |
| 5 | CLOSING STATEMENT BY THE DEFENSE |
| 6 | MS. CASTRO:  Good afternoon, ladies and gentlemen. |
| 7 | JURORS:  Good afternoon. |
| 8 | MS. CASTRO:  I want to start off by thanking you for |
| 9 | your careful attention that you paid throughout the course of |
| 10 | this trial.  On behalf of my client, Police Officers Michael |
| 11 | Burbridge and Salim Randall, as well as my co-counsel, we |
| 12 | would like to thank you for the careful attention that you |
| 13 | will also give to your deliberations in deciding this case. |
| 14 | Now, I do have some remarks that I want to go |
| 15 | through and discuss our case, but I want to start off by |
| 16 | addressing some of the points that were made by plaintiff's |
| 17 | counsel in his summation a little while ago. |
| 18 | Now, first off, with respect to Officer Randall, |
| 19 | plaintiff's counsel started off by trying to attack his |
| 20 | credibility.  He wanted you to believe that he's not a |
| 21 | credible witness and he gave you a few reasons for that.  One |
| 22 | of the first reasons he gave you is because he says that there |
| 23 | are inconsistencies in his testimony. |
| 24 | Now, as plaintiff's counsel went through and told |
| 25 | you repeatedly, this happened four years ago.  Four years ago |

MARY AGNES DRURY, RPR - Official Court Reporter

| | 96 |
|---|---|
| 1 | is a long time to remember every single detail of what |
| 2 | occurred.  However, the evidence has shown that Officer |
| 3 | Randall is consistent in the important facts of this case.  He |
| 4 | knows what he saw and he knows what he heard.  He knows that |
| 5 | he saw the plaintiff pull an object out of his waistband, make |
| 6 | a pitching motion, and he tossed it.  He knows that he heard |
| 7 | the sound of the metal cling on the ground.  He said that that |
| 8 | is the most unmistakable sound that he knows for a fact that |
| 9 | that's the sound of a gun hitting the ground.  He's been |
| 10 | consistent throughout his testimony in saying that. |
| 11 | Now, the second reason he wants to attack Officer |
| 12 | Randall's credibility is because of his paperwork, his arrest |
| 13 | paperwork, to be specific.  And he spent a lot of time harping |
| 14 | on the detail section of the arrest report.  He wants you to |
| 15 | believe that that section was left blank, that was his word, |
| 16 | that was counsel's word, that he left that section blank, that |
| 17 | he didn't put any information about what happened. |
| 18 | Now, he didn't show you that paperwork during |
| 19 | summation, but it was admitted into evidence and you're going |
| 20 | to have a chance to review it.  Now, that arrest report is |
| 21 | Plaintiff's Exhibit 6.  And the detail section, if you look at |
| 22 | it, says at TPO, which is time, place of occurrence, above |
| 23 | defendant named Joshua Marshall was found in the possession of |
| 24 | a loaded firearm, and it even specifies a serial number. |
| 25 | That's not blank.  That's a play on his words.  And it's a |

MARY AGNES DRURY, RPR - Official Court Reporter

### PROCEEDINGS 73

1    "ANSWER: That is correct."
2    Well, what part of that is unclear? He was asked
3    point blank whether he ever saw it in his physical possession,
4    and he said no. He agreed it was correct. Now, if he never
5    saw this object in the physical possession of Mr. Marshall,
6    why did he swear under oath to a grand jury that he did see
7    it? I mean, those two stories aren't true; either you saw it,
8    or you didn't. And why did he tell the district attorney that he
9    saw this gun in the actual possession of Mr. Marshall?
10    He said those things. And then, he changes his
11    testimony during the course of these proceedings. It's
12    dishonest. The truth came out at his deposition. He never
13    actually saw the possession. How else do we know that? Think
14    about some of the statements that he made to other people.
15    Remember, folks, when I was asking him, I said, "Did you make
16    a statement to another prosecuting attorney that you never show
17    him in possession of a gun?"
18    "What, who, what prosecuting attorney? Who are you
19    talking of?"
20    I said, "The prosecutor, Judy Phillips; did you make
21    a statement to her? Didn't you tell Ms. Phillips that you did
22    not see that gun in his possession? Didn't you tell her
23    that?"
24    "I never said that."
25    Then, I show him a document. And I said, "Sir, does

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

### PROCEEDINGS 74

1    that refresh your memory that you told Ms. Phillips that you
2    never saw this gun in his possession?"
3    "No, it doesn't refresh my memory. I never said
4    that."
5    Well, of course, he can't admit saying it. If he
6    admits he told prosecutor number two that he didn't see the
7    gun in Marshall's possession, then what he told prosecutor
8    number one was a lie. What he told the grand jury was a lie.
9    So he can't admit that he made that statement.
10    And then, I asked him, I said, "Sir, didn't you also
11    make a statement to the gun enhancement unit, your fellow
12    colleagues at the NYPD? Didn't you tell them you didn't see
13    this gun in his possession?"
14    "I never said that."
15    I said, "Well, that's funny. That's not what you
16    said at your deposition."
17    At your deposition, you said, "Actually, it's
18    possible I did say that. I can't really remember."
19    Now, how is it possible, if he's saying these things
20    now, he comes in here and he says that Marshall was in
21    possession of a gun, and yet, at his deposition, he said that
22    he wasn't. He tells this prosecutor, the second prosecutor,
23    he wasn't. And he tells the gun enhancement unit he wasn't.
24    Three different times, he said he wasn't. But you're supposed
25    to believe, the one time that he told the first D.A., that

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

### PROCEEDINGS 75

1    that's the true statement.
2    This whole case, it's about credibility. Your
3    job -- I told you this in opening statement -- it requires the
4    highest level of concentration to put together the pieces.
5    This isn't going to be easy. You have to work through this
6    evidence logically, think about these things. Why something
7    on such a critical fact, how does that change over time?
8    What's the next thing that he says? The next thing
9    he tells you, he tells you that he saw Marshall pull out the
10    gun. He saw him pull out the object from his waist. That's
11    funny. That's not what you said at your deposition, Officer.
12    At your deposition, you said you didn't see any object pulled
13    out of his waist.
14    And again, don't rely on what I'm telling you.
15    Let's look at the actual evidence. This is on Page 33 of this
16    man's deposition under oath. "QUESTION: The object that you
17    saw him pull out of his pants?
18    "ANSWER: I didn't see the object as he pulled it
19    out of his pants."
20    So if you didn't see the object as he pulled it out
21    of his pants, why did you tell the grand jury under oath that
22    you saw him pull a firearm out of his pants? That's a lie.
23    He lied. Now, you folks have the power. You can just look
24    the other way. And you can let him say it doesn't matter,
25    these things happen, or you can hold him accountable. He's in

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

### PROCEEDINGS 76

1    a court of law. What he told that grand jury is a lie. And
2    the truth only came out when we started this civil lawsuit
3    under oath.
4    What's the next thing he says? He says he actually
5    saw with his own eyes -- he's certain about this, too, there's
6    no mistake. He saw Marshall actually toss the gun away. Sure
7    you did, Officer, just like you saw Mr. Marshall's eyes
8    bulging from 150 feet away across the street in the dark,
9    right? Let's think about it. What actually did this man see?
10    He's sitting in the back seat of a car. He's got a driver in
11    front of him, he's got a passenger in front of him. He's up
12    to 25 feet away. And Marshall's back is towards him. How
13    exactly is he seeing this?
14    Of course, it doesn't make sense. That's why they
15    have to change the story ever so slightly. The story is
16    changed so that there's an angle and Marshall kind of twists.
17    Does that make sense? He's going to twist. Marshall's trying
18    to throw the gun away and hide it because he sees the police
19    coming. But here, Officer, look what I have, a gun. I'm
20    throwing it into the street. Does that make sense? You have
21    to use your common sense here. So much of this case is
22    thinking through the evidence and using logic and deductive
23    reasoning to work through it and figure out what's true and
24    what's not true. His whole story doesn't make sense.
25    But what's even more telling, look at the paperwork.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

Case 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 10 of 12 PageID #: 1089

## PROCEEDINGS 77

1 This man's the arresting officer. Now, he said at his
2 deposition he has no idea why he's the arresting officer. To
3 this day, he had no idea. But he's the arresting officer.
4 Look at his arrest paperwork. He gives a version, he fills
5 out the form. There's a section on the form that actually is
6 a box called "DETAILS." I said, "Officer, you agree that the
7 detail of pulling out the gun in the waist; that's an
8 important fact?"
9     And he agreed, "Yes, that's important."
10    "In fact, it's very important, right?"
11    "Yes, it's very important."
12    "But why isn't it anywhere in your report?"
13    Now, in his deposition, he said "no particular
14 reason," but now he came into you, because he has to explain
15 it. It's going to look foolish, right? How is he going to
16 explain this? He explains, "Actually, we don't really fill
17 out that section. You know, we just kind of pass it on to the
18 D.A."
19    Really? Then why is there a section that says
20 "DETAILS" in large, capital letters? Why is it on the police
21 report if you don't fill it out? These are the most important
22 details of the entire case, that you saw him pull out the gun
23 and toss it. And you didn't put that on your report?
24    I'll tell you why he didn't put it on the report,
25 because at that point in time, he didn't have the details.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 78

1 They hadn't quite come up with exactly how they were going to
2 present this story. He didn't have those details. So that
3 section of the report's blank. I asked him also, "What about
4 the complaint report? You didn't mention anything on the
5 complaint report, did you?"
6     "Hey, don't blame me. That's not my complaint
7 report. You know, we all worked on that together. I didn't
8 write it."
9     Actually, you did write it. That's what you said in
10 your deposition. I said, "Who prepared this report?"
11    "I did." He prepared the complaint report. Then,
12 he starts telling me, "Well, you see, it's so busy. We have
13 all these documents we have to fill out and all these reports.
14 We all have to help each other out."
15    Really? What other documents? We've seen these
16 documents generated; an arrest report, complaint report and
17 memo book entry. It's not like they didn't have enough time.
18 The man got six hours of overtime. He filled out a report.
19 He just doesn't want to own it because it makes him look bad
20 because there's no explanation for why he didn't have those
21 details in.
22    But my personal favorite, the best one, was the last
23 one in the memo book entry. Does anyone here remember what
24 this man said at his deposition? He said he didn't know what
25 a memo book entry was for. This is an officer who's been on

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 79

1 the force for eight years. Eight years, testifying under oath
2 in a deposition that he doesn't know what he's supposed to do
3 with a memo book. Come on, are you folks buying this? Are
4 you going to buy this? There's no way this man is telling the
5 truth in this case. It's one false, phony, dishonest claim
6 after another.
7     You can just look the other way and let it go if you
8 want, or you can hold him accountable. In our system, when
9 you testify under oath, it's serious business. This isn't
10 just playing fast and loose with the facts, change the story
11 if you don't like your answer last year at the deposition.
12 Just come in here. The jury won't know. They weren't there.
13 Come on, you folks know this. This is not right what he did.
14    And you go beyond and you look at the other witness
15 that we heard from, Officer Burbridge. Do you realize that
16 this man told two completely different stories? When he
17 appeared before the grand jury, one story. When he appeared
18 in the civil lawsuit, another story.
19    Let's look at story number one. This is what he was
20 telling to the grand jury. He testified under oath in front
21 of that grand jury that what happened was he had this
22 conversation with Marshall that he said, "Sir, can I talk to
23 you for a minute?" And then, what he did was he stepped out
24 of his car in front of Marshall, and that's when Marshall
25 threw the gun.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 80

1     So what he was selling to that grand jury, he was
2 trying to make it sound like, man, I had this guy in my line
3 of vision. He's standing there right in front of me. I saw
4 the whole thing. Then, all of a sudden, actually, come to
5 think of it, I wasn't standing in front of him on the
6 sidewalk. That never happened. Actually, come to think of
7 it, I was inside of a car 10 feet away still inside the car
8 when he threw the gun.
9     Well, which is it? First, this isn't a game you can
10 play with somebody's liberty and make up stories. How could a
11 story change so dramatically? This man's not taking this at
12 all seriously, understanding that when he testified in front
13 of the grand jury, he's under oath to tell the truth.
14    And his paperwork is also an illustration of how the
15 false and dishonest claims come in. Remember his form he
16 filled out, his stop-and-frisk form? That form, he said, "I
17 observed furtive movements before we made the stop."
18 Actually, that's not what you said in your deposition. At
19 your deposition, you said you didn't observe anything
20 suspicious.
21    And here's what he said, Page 66: "QUESTION: Did
22 you observe any furtive movements by Joshua Marshall before
23 you decided to stop him?
24    "ANSWER: No."
25    So if the answer to that is no, why did you lie in

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

**A1298**

| | PROCEEDINGS 93 | | PROCEEDINGS 94 |
|---|---|---|---|
| 1 | these two Defendants. | 1 | a quarter after one. Don't discuss the case. |
| 2 | MS. CASTRO: Objection. | 2 | (The jury exited.) |
| 3 | MR. NORINSBERG: You can send a message. | 3 | THE COURT: You have the jury charge with all the |
| 4 | THE COURT: You may continue your argument. | 4 | corrections. And we've run off copies for the jury later. |
| 5 | MR. NORINSBERG: You can send a message through your | 5 | Enjoy your lunch. I'll see you at 1:15. |
| 6 | verdict, not just to these two Defendants, but to any other | 6 | (A lunch recess was taken.) |
| 7 | police officer out there that thinks it's okay to get in front | 7 | (Continued on the next page.) |
| 8 | of a grand jury and lie. You can send a message to any | 8 | |
| 9 | other police officer out there that thinks it's okay. | 9 | |
| 10 | THE COURT: Strike that reference to before the | 10 | |
| 11 | grand jury. | 11 | |
| 12 | MR. NORINSBERG: You can send a message to another | 12 | |
| 13 | police officer that thinks it's okay to tell a prosecutor | 13 | |
| 14 | something that's completely false, and say, you know what, you | 14 | |
| 15 | can't do that. You actually cannot do that in our system. | 15 | |
| 16 | You will be accountable. And that's what we're going to ask | 16 | |
| 17 | you to do at the end of the day is listen to all of the | 17 | |
| 18 | evidence, work through it carefully. But if you do that and | 18 | |
| 19 | you honor the pledges you made in your jury selection, you're | 19 | |
| 20 | going to get the right result, and that's to hold these two | 20 | |
| 21 | Defendants responsible for putting this man in jail for four | 21 | |
| 22 | and a half months. Thank you. | 22 | |
| 23 | THE COURT: Thank you. Lunch will be up at 12:30. | 23 | |
| 24 | Do you want to take a break now, and then get back here at | 24 | |
| 25 | about quarter after one, take a break now? We'll continue at | 25 | |

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| | PROCEEDINGS 95 | | 96 |
|---|---|---|---|
| 1 | | 1 | is a long time to remember every single detail of what |
| 2 | (Honorable Jack B. Weinstein takes the bench.) | 2 | occurred. However, the evidence has shown that Officer |
| 3 | (Jury is in the courtroom at 1:20 p.m.) | 3 | Randall is consistent in the important facts of this case. He |
| 4 | THE COURT: Be seated, please. Proceed. | 4 | knows what he saw and he knows what he heard. He knows that |
| 5 | CLOSING STATEMENT BY THE DEFENSE | 5 | he saw the plaintiff pull an object out of his waistband, make |
| 6 | MS. CASTRO: Good afternoon, ladies and gentlemen. | 6 | a pitching motion, and he tossed it. He knows that he heard |
| 7 | JURORS: Good afternoon. | 7 | the sound of the metal cling on the ground. He said that that |
| 8 | MS. CASTRO: I want to start off by thanking you for | 8 | is the most unmistakable sound that he knows for a fact that |
| 9 | your careful attention that you paid throughout the course of | 9 | that's the sound of a gun hitting the ground. He's been |
| 10 | this trial. On behalf of my client, Police Officers Michael | 10 | consistent throughout his testimony in saying that. |
| 11 | Burbridge and Salim Randall, as well as my co-counsel, we | 11 | Now, the second reason he wants to attack Officer |
| 12 | would like to thank you for the careful attention that you | 12 | Randall's credibility is because of his paperwork, his arrest |
| 13 | will also give to your deliberations in deciding this case. | 13 | paperwork, to be specific. And he spent a lot of time harping |
| 14 | Now, I do have some remarks that I want to go | 14 | on the detail section of the arrest report. He wants you to |
| 15 | through and discuss our case, but I want to start off by | 15 | believe that that section was left blank, that was his word, |
| 16 | addressing some of the points that were made by plaintiff's | 16 | that was counsel's word, that he left that section blank, that |
| 17 | counsel in his summation a little while ago. | 17 | he didn't put any information about what happened. |
| 18 | Now, first off, with respect to Officer Randall, | 18 | Now, he didn't show you that paperwork during |
| 19 | plaintiff's counsel started off by trying to attack his | 19 | summation, but it was admitted into evidence and you're going |
| 20 | credibility. He wanted you to believe that he's not a | 20 | to have a chance to review it. Now, that arrest report is |
| 21 | credible witness and he gave you a few reasons for that. One | 21 | Plaintiff's Exhibit 6. And the detail section, if you look at |
| 22 | of the first reasons he gave you is because he says that there | 22 | it, says at TPO, which is time, place of occurrence, above |
| 23 | are inconsistencies in his testimony. | 23 | defendant named Joshua Marshall was found in the possession of |
| 24 | Now, as plaintiff's counsel went through and told | 24 | a loaded firearm, and it even specifies a serial number. |
| 25 | you repeatedly, this happened four years ago. Four years ago | 25 | That's not blank. That's a play on his words. And it's a |

MARY AGNES DRURY, RPR - Official Court Reporter

MARY AGNES DRURY, RPR - Official Court Reporter

**A1299**

Case 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 12 of 12 PageID #: 1091

| PROCEEDINGS | 129 |
|---|---|

1  Yes or no.
2          Did Officer Burbridge falsely arrest the plaintiff?
3  Yes or no.
4          Did Officer Randall maliciously prosecute the
5  plaintiff? Yes or no.
6          Did Officer Burbridge maliciously prosecute the
7  plaintiff? Yes or no.
8          Did Officer Randall violate the plaintiff's
9  constitutional right to a fair trial by knowingly presenting
10  false evidence to the prosecutor? I'm sorry, in preparation
11  for the grand jury.
12          Did officer Burbridge violate plaintiff's
13  constitutional right to a fair trial by knowingly presenting
14  false evidence to the prosecutor under similar circumstances?
15          If your answers to all those questions is no, you
16  don't have to answer any of the following questions because
17  there won't be any damages to assess. If you find that a
18  defendant is or has violated a right, then you'll determine
19  compensatory damages first attributable to Officer Burbridge
20  second, attributable to Officer Randall. Then, if you find
21  punitive damages, how much against Officer Burbridge --
22  Officer Randall, rather, and then against Officer Burbridge.
23          Do any attorneys wish to see me at the side bar?
24          MR. NORINSBERG:  No, your Honor.
25          MS. CASTRO:  No, your Honor.
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS | 130 |
|---|---|

1          MS. SANDS:  Your Honor --
2          THE COURT:  Do you wish to see me at the side bar?
3          MS. SANDS:  I do.
4          THE COURT:  Come to the side bar.
5          (At the bench.)
6          MS. SANDS:  Your Honor, I think you misread the
7  question 3A.
8          THE COURT:  You're turning to page?
9          MS. SANDS:  Page 13, question 3A.
10          (In open court.)
11          THE COURT:  3A on Page 13 reads:  Did Officer
12  Randall violate plaintiff's constitutional right to a fair
13  trial by knowingly presenting false evidence to the prosecutor
14  under the circumstances I described?  Yes or no.
15          MS. SANDS:  Okay.
16          THE COURT:  No other objections are made.
17          Swear the marshal, please.
18          THE CLERK:  Do you swear or affirm that you will
19  keep the jurors sworn in this cause together in some private
20  and convenient place, that you shall suffer no one to speak to
21  them nor shall you speak to them unless it be at the direction
22  of the court to ask if they have agreed upon a verdict?
23          THE MARSHAL:  I do.
24          THE COURT:  Thank you.
25          Continue your deliberations until I tell you to
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS | 131 |
|---|---|

1  stop. Now, if you want to go beyond 4:30 p.m., send in a
2  note.
3          (The jury exited.)
4          THE COURT:  The instructions I read from, which we
5  just distributed, is Court Exhibit 2, I think, of today's
6  date. The brief is marked 1, and this jury charge I gave is
7  marked Exhibit 2.
8          (Court Exhibit 1 was received in evidence, as of
9  this date.)
10          (Court Exhibit 2 was received in evidence, as of
11  this date.)
12          THE COURT:  And we have prior drafts. There is an
13  April 24th draft, which is marked Exhibit 3.
14          (Court Exhibit 3 was received in evidence, as of
15  this date.)
16          THE COURT:  There's an April 20th draft which is
17  marked 4.
18          (Court Exhibit 4 was received in evidence, as of
19  this date.)
20          THE COURT:  And there's an April 17th draft, which
21  is marked 5.
22          (Court Exhibit 5 in evidence, was received as of
23  this date.)
24          THE COURT:  Do you have a list of the witnesses,
25  please? Do you have a list of the exhibits, please? Make up
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS | 132 |
|---|---|

1  the list, please. Gather all of the exhibits. Nothing is to
2  go in until I go through it.
3          MR. COHEN:  You have all the exhibits that we put
4  in.
5          THE COURT:  Make up your list and put it all
6  together.
7          I should say I appreciate the cooperation and fine
8  professional lawyering of both sides.
9          MS. GROSS:  Thank you, your Honor.
10          MR. COHEN:  Thank you, your Honor.
11          If I can make one request. Once the jury does have
12  a verdict, we would like to speak to them.
13          THE COURT:  You're free to do so. It's up to them
14  whether they want to talk to you.
15          MR. COHEN:  Can you just ask them if they want to
16  stick around, to let them know that the attorneys would like
17  to --
18          THE COURT:  I will tell them. Yes, I will do that.
19          MS. GROSS:  Defendants join in that request.
20          THE COURT:  I will do that.
21          (Recess.)
22          THE COURT:  Yes, what can I do to help you?
23          MS. CASTRO:  We've gathered all of the exhibits and
24  created a witness list.
25          THE COURT:  May I see the witness list, please.
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

A1300

TRIAL TRANSCRIPT, DATED APRIL 26, 2012
(pp. A1300-A1325)

REPRODUCED FOLLOWING

390

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
    JOSHUA MARSHALL,
3             Plaintiff,

4         versus                        10-CV-02714 (JBW)

5   THE CITY OF NEW YORK,
              Defendant.                United States Courthouse
6                                       Brooklyn, New York
    ------------------------------x
7
                                        April 26, 2012
8                                       11:30 A.M.

9                       ***VOLUME III**

10              CONTINUED TRANSCRIPT OF TRIAL
            Before:  HON. JACK B. WEINSTEIN,
11             UNITED STATES DISTRICT JUDGE

12
                    A P P E A R A N C E S:
13  FOR THE PLAINTIFF:

14
                        COHEN & FITCH, LLP
15                      Attorneys for the Plaintiff
                        Woolworth Building
16                      233 Broadway - Suite 1800
                        New York, New York 10279
17

18                      BY: GERALD M. COHEN, ESQ.
                            JON NORINSBERG, ESQ.
19

20

21  For the Defendants:

22                      NEW YORK CITY LAW DEPARTMENT
                        Attorney for the Defendant
23                      100 Church Street
                        New York, New York 10007
24
                        BY: FELICIA GROSS, ESQ.
25                          JOHANA CASTRO, ESQ.
                            FRANCES SANDS, ESQ.

391

## PROCEEDINGS

1   Court Reporter:  Judi Johnson, RPR, CRR, CLR
    Official Court Reporter
2   Telephone: (718) 613-2582
    Facsimile: (718) 613-2480
3   E-mail: Judi_Johnson@nyed.uscourts.gov

4

5   Proceedings recorded by computerized stenography.  Transcript
    produced by Computer-aided Transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

392

**PROCEEDINGS**

1  (In open court.)

2              COURTROOM DEPUTY:    All rise.  The United States

3  District Court for the Eastern District of New York is now in

4  session. The Honorable JACK B. WEINSTEIN is now presiding.

5              (Honorable JACK B. WEINSTEIN takes the bench.)

6              COURTROOM DEPUTY:    Calling civil trial proceedings

7  in Docket no. 10-CV-2714, Joshua Marshall against The City of

8  New York.

9              THE COURT:   The jury is here?

10              THE CLERK:   Yes, Judge.

11              THE COURT:   Tell them to deliberate.

12              We have a motion from the defendants.  I'll be happy

13  to hear you.

14              File the memorandum with Exhibits A and B that was

15  furnished this morning to the Court and I assume to opposing

16  counsel.

17              MR. NORINSBERG:  Yes, your Honor.

18              MS. GROSS:  Good morning, your Honor.

19              The defendants for light of what we believe to be

20  the extensive and pervasive nature of the prejudice on several

21  grounds.

22              First, we believe that the jury now has an incorrect

23  instruction with respect to the relationship between

24  compensatory and punitive damages.  We believe that under the

25  Kurman Robinson and State Farm cases, it's an incorrect

393

**PROCEEDINGS**

1  statement of law to say that they may award punitive damages

2  in the absence of first awarding compensatory damages.

3        Moreover, because the Court has now given two

4  instructions with respect to the relationship between

5  compensatory and punitive damages, it's the defendants'

6  position that no curative instruction may reasonably be given.

7        Second, it's the defendants' position that the Court

8  misstated the law with respect to plaintiff's psychological or

9  emotional damages. He's not seeking psychological or

10 emotional damages. He testified as such at defendants'

11 deposition. During the pre-charge conference, the jury charge

12 read that the Court would instruct the jury that plaintiff

13 claims as the injury he spent four and a half months in jail,

14 he's not seeking any recovery for any emotional or

15 psychological injuries, he's not seeking recovery for loss of

16 earnings, but then during the charge the Court read he's not

17 seeking recovery for any emotional or psychological injuries,

18 that is, for any emotional or psychological injuries that

19 continued after the jail. He's seeking damages from the time

20 he spent in jail.

21        He is seeking damages for loss of liberty. It's our

22 position that he has abandoned his claim of emotional or

23 psychological injuries both with respect to time after his

24 time of incarceration and with respect to his actual time of

25 incarceration. A loss of liberty is a separate and

394
**PROCEEDINGS**

1  independent ground upon which the Court -- the jury may award
2  damages.

3  Third, plaintiff was improperly permitted to ask the
4  jury to send a message, not just to these defendants but to
5  all putative malfeasors. Under the law, we believe that's
6  impermissible.

7  Fourth, because the defendants were precluded from
8  introducing evidence of plaintiff's prior incarcerations, any
9  the damage award would be speculative under the Benucci case
10  decided by the Eastern District.

11  Fifth, plaintiff repeatedly and properly argued
12  during his closing argument that defendants made misleading
13  statements to the grand jury. Such statements would not be a
14  proper basis of liability under the Rehberg case.

15  Sixth, the Court misread the jury charge with
16  respect to defendants' potential liability for testimony
17  before the grand jury in contravention of Rehberg. It made a
18  clarifying statement, but we believe the confusion is
19  irrepairable.

20  And finally, your Honor, defendants have not had a
21  chance to review the transcript in great detail, but we do
22  object insofar as we believe plaintiff's counsel referenced
23  city lawyers in his closing argument or leading up thereto.
24  We have not located it in the transcript.

25  THE COURT: Do you want me to instruct the jury on

```
                                                              395
                          PROCEEDINGS
```

1   that matter?  I don't think it made any impression on anybody.

2   But if I now bring it to their attention or if I brought it to

3   their attention at the time, it would emphasize what nobody

4   considered of any importance in the courtroom.

5            What do you wish me to do?

6            MS. GROSS:  We do not wish a curative instruction on

7   that point.  We agree that it would draw unnecessary attention

8   to it.  We do note that we do object to the fact they said it,

9   and we believe that prejudice resulted.

10           Finally, defense would request that the special

11  interrogatory sheet that was submitted be given to the jury

12  after it reaches its verdict.

13           THE COURT:  Thank you very much.

14           What is the position of the plaintiffs?

15           MR. NORINSBERG:  Your Honor, we believe that the

16  Court directly addressed the question that was raised by the

17  jury and really extensively explained it and made it clear to

18  the jury what the proper standard would be and that they would

19  indeed need to find liability first before they could award

20  any type of punitive damages.

21           I'm really not at all sure what else the Court could

22  have possibly said that would have clarified it any further.

23  In fact, we received a second note from the jury where they

24  explained that the Court's -- the Court's discussion of the

25  issue had removed the confusion that had been there

396
**PROCEEDINGS**

1   beforehand.  So we just don't see any issue with that at all.

2          MR. COHEN:  I'll add just a little bit to that

3   point.

4          Your Honor did explain to the jury -- and I think

5   this is where the confusion stemmed from.  Because your Honor

6   stated there was no lost wages and there were no psychological

7   or emotional damages, the jury was a little lost at what the

8   compensatory damages could be.  And the court properly stated

9   that loss of liberty was what was -- that the injury that the

10  plaintiff was seeking for those compensatory damages, without

11  telling the jury that they should be finding loss of liberty

12  damages, you just explained to the jury what the type of

13  injury -- that would justify a compensatory damage award.

14         MR. NORINSBERG:  With respect to the send a message

15  portion of my summation, which I had addressed before I did

16  the summation, it's limited strictly to punitive damages.  The

17  nature of punitive damages is exactly that.  It's to deter

18  this conduct from occurring again in the future.  It is not

19  limited to the actual tortfeasors.  The whole concept behind

20  punitive damages is that it extends to others similarly

21  situated to make sure that they don't engage in the same

22  improper behavior.  So I feel that that argument is really not

23  a sound argument under the law.

24         To be clear, the statements that I made with regard

25  to false and misleading statements to the grand jury, it's

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

397
**PROCEEDINGS**

1  very clear under the law, as it stands right now, regardless

2  of Rehberg, that there's still a presumption that is created

3  through the indictment. I believe that was expressly

4  mentioned in the charge at the request of the defendants.

5  There's a presumption that needs to be overcome. One of the

6  ways of overcoming that presumption is to indicate that, in

7  fact, the officers made false and misleading statements to the

8  grand jury and that -- in that context, that's what those

9  remarks were for. They also were used to establish

10 credibility, which is the key issue in this entire case. So

11 to the extent that there are references to false testimony

12 that was given to the grand jury, it is for those two

13 purposes, to overcome the presumption, one, and two, to

14 address the general issues of credibility.

15          THE COURT: A limiting instruction was not requested

16 by defendants at that time, was it? Is that correct?

17          MS. GROSS: I'm not sure what the record is with

18 respect to that part, your Honor.

19          THE COURT: My recollection is there was no request

20 for a limiting instruction.

21          MR. NORINSBERG: That's my recollection as well.

22          THE COURT: However, the record will speak for

23 itself.

24          MR. NORINSBERG: Not only that, the Court's

25 charge itself --

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

**PROCEEDINGS**

398

1        THE COURT:  Excuse me.  I believe a limiting

2   instruction at this late date would not be desirable.

3        MR. NORINSBERG:  And the Court's instruction itself

4   expressly states that it's not a basis for liability to say

5   that they lied to the grand jury.  It's in the charge itself.

6   So I really don't see how there's any possibility of the jury

7   misunderstanding that.

8        I just want to state on that issue for a long time

9   police officers have enjoyed complete absolute immunity for

10  trial testimony under Briscoe versus Lahue, which is a Supreme

11  Court case; and for many years, in the same sense, we've been

12  able to use us false testimony at trial for general

13  credibility purposes even though it's not an independent basis

14  of liability under 1983.  And I don't think Rehberg changes

15  that at all.  It's the same use of testimony which otherwise

16  would not be a basis for liability independently under 1983

17  but nonetheless could still be identified for credibility

18  purposes.

19        THE COURT:  I should add that had a request been

20  made for a limitation, I would have so advised the jury to use

21  that on credibility only.

22        MR. NORINSBERG:  Lastly, with respect to the request

23  for special interrogatories, it's absolutely inappropriate in

24  this case.  As I said during our initial charge conference on

25  April 16th, when we first met to deal with the motions in

**PROCEEDINGS**

1   limine, there's no basis here for finding qualified immunity.

2   There's a sharp factual dispute.  The issue is whether he had

3   a gun or he didn't.  The officers repeatedly stated under oath

4   at their depositions and again at trial that they were

5   positive they saw him with a gun.  So if the jury were to find

6   that they didn't see him with a gun, that would mean that

7   they're not entitled to qualified immunity.  It would mean

8   that they willfully and deliberately lied, in which case there

9   would be no purpose for having these further interrogatories.

10          So while there are circumstances in certain types of

11   cases where additional interrogatories are warranted, that

12   would not be the case in this particular civil action.

13          Thank you, your Honor.

14          THE COURT:  Bring in the jury, please.

15          MS. GROSS:  Your Honor, may I be heard?

16          THE COURT:  Yes, of course.

17          MS. GROSS:  May I be heard briefly?

18          THE COURT:  Yes.

19          MS. GROSS:  I just wanted to emphasize the point

20   that we believe very strongly that the jury now has an

21   incorrect statement of law with respect to the relationship

22   between compensatory and punitive damages.  It's our position

23   that the jury cannot award punitive damages in the absence of

24   compensatory damages under State Farm.

25          THE COURT:  I understand.

400
**PROCEEDINGS**

1       MS. GROSS:   Please note our objection to the Court's

2    rulings.

3            THE COURT:   To the what?

4            MS. GROSS:   To the Court's rulings with respect to

5    the motion.

6            MS. SANDS:   Your Honor, I would also like to note

7    for the record our objection to the special interrogatories.

8    I believe under the case of Zelna v. Summerland, Second

9    Circuit case, we are entitled to that.

10           MR. NORINSBERG:   I just want to note for the record

11   the Court --

12           THE COURT:   Special interrogatories in these kinds

13   of cases are not desirable.   They're confusing to the jury.

14   It's a simple case.   I'm not going to, at this late stage,

15   after the matter has been fully discussed in connection with

16   the charge, introduce special interrogatories and disturb the

17   deliberations.

18           MR. NORINSBERG:   Your Honor --

19           THE COURT:   Thank you.   Bring in the jury.

20           MR. NORINSBERG:   May I just be heard?

21           THE COURT:   Yes.

22           MR. NORINSBERG:   I just want to say the Court

23   yesterday asked counsel -- they repeatedly state they have

24   objections.   The Court asked counsel what they would propose,

25   what additional language should be charged.   They failed to

**PROCEEDINGS**

1    advise the Court of any special additional requests yesterday,

2    and today they haven't come in here with any type of

3    supplemental charge that they believe is appropriate to give

4    to the jury.  So the Court gave them an opportunity; they

5    failed to avail themselves of that.  I just wanted that on the

6    record.

7              THE COURT:  Thank you.  Bring in the jury.

8              MS. GROSS:  Your Honor, I believe that's an

9    incorrect statement of what our position was yesterday.  We

10   expressly said that the initial jury charge was the proper

11   one.

12             THE COURT:  Thank you.

13             (The jury entered.)

14             THE COURT:  Be seated everyone, please.

15             I've arranged for lunch for 12:45 p.m.  You can

16   deliberate right through lunch if you'd like.  It won't upset

17   your digestion if you don't.  You don't have to talk about it.

18             In going through the transcript this morning, I

19   noticed that it was suggested that you send a message.  I

20   don't want you to send any messages.  I just want you to

21   decide the case in accordance with my instructions?

22             Do you understand?

23             THE JURY:  Yes.

24             THE COURT:  That's enough.  No messages.  Just

25   decide the case.

402
**PROCEEDINGS**

1    All right, thank you.  Continue deliberations,
2    please.
3        (The jury exited.)
4        MR. NORINSBERG:  Your Honor, I just want to place
5    our objection on the record.
6        This issue had been raised this morning by defense
7    counsel, and the Court did not indicate that it was going to
8    give a supplemental charge with respect to this issue.  We had
9    no opportunity to be heard or to propose language.
10       THE COURT:  I would be delighted to hear your
11   objection and proposed language.
12       MR. NORINSBERG:  But it's too late now.
13       THE COURT:  Sit down.
14       MR. NORINSBERG:  It's too late.  I mean, you just
15   gave them a supplemental charge on it.
16       THE COURT:  Do you wish to put something on the
17   record to show what you would have asked for?  If you do, I'm
18   giving you the opportunity to do so.
19       MR. NORINSBERG:  We would've asked -- if the Court
20   was inclined to give a supplemental instruction on this
21   particular issue, which we would've objected to had we known
22   the Court was going to do it, we would've asked the Court to
23   explain that, in fact, under the law with respect to punitive
24   damages and only with respect to punitive damages, it is
25   appropriate that their verdict would be used for the purpose

403
**PROCEEDINGS**

1   of sending a message because that's the purpose of punitive

2   damages, is to deter future similar conduct.  However, that

3   language would not apply to compensatory damages.  That's what

4   we would have asked the Court to clarify.

5           So we feel what was just told to the jury is

6   actually not correct under the law.

7           THE COURT:  The charge reads at Page 11, and I think

8   it's accurate:  If you award compensatory damages, you may

9   award additional punitive damages if you find that a defendant

10  engaged in extraordinary misconduct.  I elaborated and

11  corrected, if it needed corrected, the first sentence.

12          Second sentence:  You may do so to express your

13  disapproval and "to serve as an example or warning to others

14  who might otherwise engage in similar conduct."

15          That sufficiently states the proposition without

16  having the jury think about messages.

17          Anything further?  Let Ms. Lowe know where you can

18  be reached.

19          (Whereupon, a break was taken.)

20          THE COURT:  Mark the brief as Court Exhibit 1 of

21  today.

22          (A Brief with attachment was marked as Court Exhibit

23  1 was received in evidence, as of this date.)

24

25          (Court Exhibit 2 was received in evidence, as of

**PROCEEDINGS**

404

1   this date.)

2          THE COURT:  Court Exhibit 2.

3          We have reached a verdict.

4          Sit down everybody, please.

5          Madam clerk, take the verdict, please.

6          (The jury entered.)

7          THE CLERK:  Will the foreperson please rise.

8          Did Officer Randall falsely arrest the plaintiff on

9   May 15th, 2008?  Yes or no.

10         THE FOREPERSON:  Yes.

11         THE CLERK:  Did Officer Burbridge falsely arrest the

12  plaintiff on May 15th, 2008.  Yes or no.

13         THE FOREPERSON:  Yes.

14         THE CLERK:  Did Officer Randall maliciously

15  prosecute the plaintiff?  Yes or no?

16         THE FOREPERSON:  Yes.

17         THE CLERK:  Did Officer Burbridge maliciously

18  prosecute the plaintiff?  Yes or no?

19         THE FOREPERSON:  Yes.

20         THE CLERK:  Did Officer Randall violate plaintiff's

21  constitutional rights to a fair trial by knowingly presenting

22  false evidence to the prosecutor?  Yes or no.

23         THE FOREPERSON:  Yes.

24         THE CLERK:  Did Officer Burbridge violate

25  plaintiff's constitutional rights to a fair trial by knowingly

PROCEEDINGS

1    presenting false evidence to the prosecutor?  Yes or no.

2              THE FOREPERSON:  Yes.

3              THE CLERK:   What amount of money is necessary to

4    compensate the plaintiff for his injuries proximally caused by

5    a violation of one or more of his rights by Officer Randall,

6    compensatory damages?

7              THE FOREPERSON:  $70,000.

8              THE CLERK:   What amount of money, if any, is

9    necessary to compensate the plaintiff for his injuries

10   proximally caused by violation of one or more of his rights by

11   Officer Burbridge, compensatory damages?

12             THE FOREPERSON:  70,000.

13             THE CLERK:   If damages are awarded pursuant to

14   question 4A and the plaintiff is entitled to punitive damages

15   from Officer Randall, what amount of punitive damages for

16   breach of plaintiff's constitutional rights is awarded from

17   Officer Randall, punitive damages?

18             THE FOREPERSON:  $25,000.

19             THE CLERK:   If damages are awarded pursuant to

20   question 4B and the plaintiff is entitled to punitive damages

21   from Officer Burbridge, what amount of punitive damages for

22   breach of plaintiff's constitutional rights is awarded from

23   Officer Burbridge?

24             THE FOREPERSON:  $25,000.

25             THE COURT:   Poll the jury.

406
**PROCEEDINGS**

1          Thank you.  You may sit down.

2          Poll the jury, please.

3          THE CLERK:  Did Officer Randall falsely arrest the

4    plaintiff on May 15th, 2008?  Yes.

5          Did Officer Burbridge falsely arrest the plaintiff

6    on May 15th, 2008?  Yes.

7          Did Officer Randall maliciously prosecute the

8    plaintiff?  Yes.

9          Did Officer Burbridge maliciously prosecute the

10   plaintiff?  Yes.

11         Did Officer Randall violate plaintiff's

12   constitutional right to a fair trial by knowingly presenting

13   false evidence to the prosecutor?  Yes.

14         Did Officer Burbridge violate plaintiff's

15   constitutional right to a fair trial by knowingly presenting

16   false evidence to the prosecutor?  Yes.

17         What amount of money, if any, is necessary to

18   compensate the plaintiff for his injuries proximally caused by

19   violation of one or more of his rights by Officer Randall?

20   Compensatory damages, $70,000.

21         What amount of money, if any, is necessary to

22   compensate the plaintiff for his injuries proximally caused by

23   a violation of one or more of his rights by Officer Burbridge?

24   Compensatory damages, $70,000.

25         If damages are awarded pursuant to question 4A and

                                                                    407
                              **PROCEEDINGS**

1   the plaintiff is entitled to punitive damages from Officer

2   Randall, what amount of punitive damages for breach of

3   plaintiff's constitutional rights is awarded from Officer

4   Randall?  Punitive damages, $25,000.

5           If damages are awarded pursuant to question 4B and

6   the plaintiff is entitled to punitive damages from Officer

7   Burbridge, what amount of punitive damages for breach of

8   plaintiff's constitutional rights is awarded from Officer

9   Burbridge?  Punitive damages, $25,000.

10          Juror Number 1, is that your verdict?

11          THE JUROR:  Yes.

12          THE CLERK:  Juror Number 2, is that your verdict?

13          THE JUROR:  Yes.

14          THE CLERK:  Juror Number 3, is that your verdict?

15          THE JUROR:  Yes.

16          THE CLERK:  Juror Number 4, is that your verdict?

17          THE JUROR:  Yes.

18          THE CLERK:  Juror Number 5, is that your verdict?

19          THE JUROR:  Yes.

20          THE CLERK:  Juror Number 6, is that your verdict?

21          THE JUROR:  Yes.

22          THE CLERK:  Juror Number 7, is that your verdict?

23          THE JUROR:  Yes.

24          THE CLERK:  Juror Number 8, is that your verdict?

25          THE JUROR:  Yes.

                                                                    408
                            PROCEEDINGS

 1              THE CLERK:  Juror Number 9, is that your verdict?

 2              THE JUROR:  Yes.

 3              THE CLERK:  Juror Number 10, is that your verdict?

 4              THE JUROR:  Yes.

 5              THE CLERK:  Juror Number 11, is that your verdict?

 6              THE JUROR:  Yes.

 7              THE CLERK:  Juror Number 12, is that your verdict?

 8              THE JUROR:  Yes.

 9              THE CLERK:  Jury has been polled, your Honor.

10              THE COURT:  Is there any reason why the jury should

11      not now be discharged?

12              MR. NORINSBERG:  No, your Honor.

13              MS. GROSS:  No, your Honor.

14              THE COURT:  Thank you very much.  You're discharged.

15              You may talk to the attorneys or not, as you wish,

16      or anybody else, but don't indicate what anybody else said on

17      the jury.  Is that clear?  Each of you is entitled to your

18      privacy.  If you want to talk, you can, but not about other

19      jurors' views.

20              Thank you very much for your help.  Good night.

21              (The jury exited.)

22              THE COURT:  Any motions?

23              MS. SANDS:  Your Honor, defendants reserve the right

24      to make all the post-trial motions that they think are

25      appropriate in this case.

409
**PROCEEDINGS**

1          THE COURT:   Yes.

2              Nothing else then?   Thank you very much.

3

4                    CERTIFICATE OF REPORTER.

5    I certify that the foregoing is a correct transcript of the

6    record of proceedings in the above-entitled matter.

7

8    _____

9    Judi Johnson, RPR, CRR, CLR
     Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25