# A1321

**$**
$25,000 [4] 405/18 405/24 407/4 407/9
$70,000 [3] 405/7 406/20 406/24

**-**
-------------------x [2] 390/2 390/6

**0**
02714 [1] 390/4

**1**
10 [1] 408/3
10-CV-02714 [1] 390/4
10-CV-2714 [1] 392/7
100 [1] 390/23
10007 [1] 390/23
10279 [1] 390/16
11 [2] 403/7 408/5
11:30 [1] 390/8
12 [1] 408/7
12:45 p.m [1] 401/15
15th [4] 404/9 404/12 406/4 406/6
16th [1] 398/25
1800 [1] 390/16
1983 [2] 398/14 398/16

**2**
2008 [4] 404/9 404/12 406/4 406/6
2012 [1] 390/7
233 [1] 390/16
2480 [1] 391/2
2582 [1] 391/2
26 [1] 390/7
2714 [1] 392/7

**4**
4A [2] 405/14 406/25
4B [2] 405/20 407/5

**6**
613-2480 [1] 391/2
613-2582 [1] 391/2

**7**
70,000 [1] 405/12
718 [2] 391/2 391/2

**A**
A.M [1] 390/8
abandoned [1] 393/22
able [1] 398/12
about [3] 401/17 403/16 408/18
above [1] 409/6
above-entitled [1] 409/6
absence [2] 393/2 399/23
absolute [1] 398/9
absolutely [1] 398/23
accordance [1] 401/21
accurate [1] 403/8
action [1] 399/12
actual [2] 393/24 396/19
actually [1] 403/6
add [2] 396/2 398/19
additional [4] 399/11 400/25 401/1 403/9
address [1] 397/14
addressed [2] 395/16 396/15
advise [1] 400/1
advised [1] 398/20
after [4] 393/19 393/23 395/12 400/15
again [2] 396/18 399/4
against [1] 392/7
agree [1] 395/7
aided [1] 391/5

all [7] 392/2 394/5 395/21 396/1 398/15
  402/1 408/24
also [2] 397/9 400/6
amount [8] 405/3 405/8 405/15 405/21
  406/17 406/21 407/2 407/7
any [19] 393/14 393/14 393/17 393/18 394/8
  395/1 395/4 395/20 395/22 396/1 398/6
  401/1 401/2 401/20 405/8 406/17 406/21
  408/10 408/22
anybody [3] 395/1 408/16 408/16
Anything [1] 403/17
apply [1] 403/3
appropriate [3] 401/3 402/25 408/25
April [2] 397/9 398/25
April 16th [1] 398/25
are [10] 397/11 399/10 399/11 400/9 400/13
  405/13 405/19 406/25 407/5 408/24
argued [1] 394/11
argument [4] 394/12 394/23 396/22 396/23
arranged [1] 401/15
arrest [4] 404/8 404/11 406/3 406/5
as [12] 393/10 393/13 394/22 397/1 397/21
  398/24 403/13 403/20 403/22 403/23 403/25
  408/15
ask [1] 394/3
asked [6] 400/23 400/24 402/17 402/19
  402/22 403/4
assume [1] 392/15
attachment [1] 403/22
attention [3] 395/2 395/3 395/7
Attorney [1] 390/16
attorneys [2] 390/15 408/15
avail [1] 401/5
award [8] 393/1 394/1 394/9 395/19 396/13
  399/23 403/8 403/9
awarded [8] 405/13 405/16 405/19 405/22
  406/25 407/3 407/5 407/8
awarding [1] 393/2

**B**
basis [5] 394/14 398/4 398/13 398/16 399/1
be [26]
because [4] 393/3 394/7 396/5 403/1
been [6] 395/25 398/11 398/19 400/15 402/6
  408/9
before [4] 390/10 394/17 395/19 396/15
beforehand [1] 396/1
behavior [1] 396/22
behind [1] 396/19
believe [14] 392/19 392/22 392/24 394/5
  394/18 394/22 395/9 395/15 397/3 398/1
  399/20 400/8 401/3 401/8
bench [1] 392/5
Benucci [1] 394/9
between [5] 392/23 393/4 399/22
bit [1] 396/2
both [1] 393/23
breach [4] 405/16 405/22 407/2 407/7
break [1] 403/19
brief [2] 403/20 403/22
briefly [1] 399/17
bring [4] 395/2 399/14 400/19 401/7
Briscoe [1] 398/10
Broadway [1] 390/16
Brooklyn [1] 390/6
brought [1] 395/2
Building [1] 390/15
Burbidge [12] 404/11 404/17 404/24
  405/11 405/21 405/23 406/5 406/9 406/14
  406/23 407/7 407/9

**C**
Calling [1] 392/6

can [3] 401/15 403/17 408/18
cannot [1] 399/23
case [13] 394/9 394/14 397/10 398/11
  398/24 399/8 399/12 400/8 400/9 400/14
  401/21 401/25 408/25
cases [3] 392/25 399/11 400/13
CASTRO [1] 390/25
caused [4] 405/4 405/10 406/18 406/22
certain [1] 399/10
CERTIFICATE [1] 409/4
certify [1] 409/5
chance [1] 394/21
changes [1] 398/14
charge [14] 393/11 393/11 393/16 394/15
  397/4 397/25 398/5 398/24 400/16 401/3
  401/10 402/8 402/15 403/7
charge itself [1] 397/25
charged [1] 400/25
Church [1] 390/23
Circuit [1] 400/9
circumstances [1] 399/10
city [4] 390/5 390/22 392/7 394/23
civil [2] 392/6 399/12
claim [1] 393/22
claims [1] 393/13
clarified [1] 395/22
clarify [1] 403/4
clarifying [1] 394/18
clear [4] 395/17 396/24 397/1 408/17
clerk [1] 404/5
closing [2] 394/12 394/23
CLR [2] 391/1 409/9
COHEN [2] 390/14 390/18
come [1] 401/2
compensate [4] 405/4 405/9 406/18 406/22
compensatory [14] 392/24 393/2 393/5
  396/8 396/10 396/13 399/22 399/24 403/3
  403/8 405/6 405/11 406/20 406/24
complete [1] 398/9
Computer [1] 391/5
Computer-aided [1] 391/5
computerized [1] 391/5
concept [1] 396/19
conduct [3] 396/18 403/2 403/14
conference [2] 393/11 398/24
confusing [1] 400/13
confusion [3] 394/18 395/25 396/5
connection [1] 400/15
considered [1] 395/4
constitutional [8] 404/21 404/25 405/16
  405/22 406/12 406/15 407/3 407/8
context [1] 397/8
Continue [1] 402/1
continued [2] 390/10 393/19
contravention [1] 394/17
correct [3] 397/16 403/6 409/5
corrected [2] 403/11 403/11
could [4] 395/19 395/21 396/8 398/17
counsel [5] 392/16 394/22 400/23 400/24
  402/7
course [1] 399/16
court [31]
Court's [6] 395/24 395/24 397/24 398/3
  400/1 400/4
Courthouse [1] 390/5
courtroom [1] 395/4
created [1] 397/2
credibility [5] 397/10 397/14 398/13 398/17
  398/21
CRR [2] 391/1 409/9
curative [2] 393/6 395/6
CV [2] 390/4 392/7

**D**

damages [45]
date [3] 398/2 403/23 404/1
deal [1] 398/25
decide [2] 401/21 401/25
decided [1] 394/10
defendant [3] 390/5 390/22 403/9
defendants [10] 390/21 392/12 392/19
  394/4 394/7 394/12 394/20 397/4 397/16
  408/23
defendants' [4] 393/5 393/7 393/10 394/16
defense [2] 395/10 402/6
deliberate [2] 392/11 401/16
deliberately [1] 398/8
deliberations [2] 400/17 402/1
delighted [1] 402/10
DEPARTMENT [1] 390/22
deposition [1] 393/11
depositions [1] 399/4
desirable [2] 398/2 400/13
detail [1] 394/21
deter [2] 396/17 403/2
did [15] 396/4 396/15 402/7 404/8 404/11
  404/14 404/17 404/20 404/24 406/3 406/5
  406/7 406/9 406/11 406/14
didn't [2] 399/3 399/6
digestion [1] 401/17
directly [1] 395/16
disapproval [1] 403/13
discharged [2] 408/11 408/14
discussed [1] 400/15
discussion [1] 395/24
dispute [1] 399/2
DISTRICT [6] 390/1 390/1 390/11 392/3
  392/3 394/10
disturb [1] 400/16
do [13] 394/21 394/25 395/5 395/5 395/6
  395/8 395/8 401/22 402/16 402/17 402/18
  402/22 403/12
Docket [1] 392/7
don't [9] 395/1 396/1 396/21 398/6 398/14
  401/17 401/17 401/20 408/16
down [3] 402/13 404/4 406/1
draw [1] 395/7
during [4] 393/11 393/16 394/12 398/24

**E**

E-mail [1] 391/3
Each [1] 408/17
earnings [1] 393/16
EASTERN [3] 390/1 392/3 394/10
elaborated [1] 403/10
else [4] 395/21 408/16 408/16 409/2
emotional [7] 393/9 393/10 393/14 393/17
  393/18 393/22 396/7
emphasize [2] 395/3 399/19
engage [2] 396/21 403/14
engaged [1] 403/10
enjoyed [1] 398/9
enough [1] 401/24
entered [2] 401/13 404/6
entire [1] 391/10
entitled [8] 399/7 400/9 405/14 405/20
  407/1 407/6 408/17 409/6
ESQ [5] 390/18 390/18 390/24 390/25
  390/25
establish [1] 397/9
even [1] 398/13
everybody [1] 404/4
everyone [1] 401/14
evidence [7] 394/8 403/23 403/25 404/22
  405/1 406/13 406/16

exactly [1] 396/17
example [1] 403/13
Excuse [1] 398/1
Exhibit [4] 403/20 403/22 403/25 404/2
Exhibits [1] 392/14
exited [2] 402/3 408/21
explain [2] 396/4 402/23
explained [3] 395/17 395/24 396/12
express [1] 403/12
expressly [3] 397/3 398/4 401/10
extends [1] 396/20
extensive [1] 392/20
extensively [1] 395/17
extent [1] 397/11
extraordinary [1] 403/10

**F**

Facsimile [1] 391/2
fact [4] 395/8 395/23 397/7 402/23
factual [1] 399/2
failed [2] 400/25 401/5
fair [4] 404/21 404/25 406/12 406/15
false [8] 396/25 397/7 397/11 398/12 404/22
  405/1 406/13 406/16
falsely [4] 404/8 404/11 406/3 406/5
Farm [2] 392/25 399/24
feel [2] 396/22 403/5
FELICIA [1] 390/24
Fifth [1] 394/11
File [1] 392/14
finally [2] 394/20 395/10
find [3] 395/19 399/5 403/9
finding [2] 396/11 399/1
first [5] 392/22 393/2 395/19 398/25 403/11
FITCH [1] 390/14
foregoing [1] 409/5
foreperson [1] 404/7
four [1] 393/13
Fourth [1] 394/7
FRANCES [1] 390/25
fully [1] 400/15
furnished [1] 392/15
further [3] 395/22 399/9 403/17
future [2] 396/18 403/2

**G**

gave [2] 401/4 402/15
general [2] 397/14 398/12
GERALD [1] 390/18
give [3] 401/3 402/8 402/20
given [4] 393/3 393/6 395/11 397/12
giving [1] 402/18
going [4] 400/14 401/18 402/7 402/22
Good [2] 392/18 408/20
grand [6] 394/13 394/17 396/25 397/8
  397/12 398/5
great [1] 394/1
GROSS [1] 390/24
ground [1] 394/1
grounds [1] 392/21
gun [3] 399/3 399/5 399/6

**H**

had [9] 394/20 395/25 395/25 396/15
  398/19 399/2 402/6 402/8 402/21
half [1] 393/13
happy [1] 392/12
has [6] 392/22 393/3 393/22 399/20 400/15
  408/9
have [12] 392/12 394/20 394/24 395/22
  395/22 398/9 398/20 400/23 401/17 402/17
  403/4 404/3
haven't [1] 401/2

having [2] 399/9 403/16
he [7] 393/10 393/13 393/20 393/21 393/22
  399/2 399/3
he's [5] 393/9 393/14 393/15 393/16 393/19
hear [2] 392/13 402/10
heard [4] 399/15 399/17 400/20 402/9
help [1] 408/20
here [3] 392/9 399/7 399/6
him [2] 399/5 399/6
his [13] 393/22 393/23 393/24 394/12
  394/23 405/4 405/5 405/9 405/10 406/18
  406/19 406/22 406/23
HON [1] 390/10
Honor [17] 392/17 392/18 394/20 395/15
  396/4 396/5 397/18 399/13 399/15 400/6
  400/18 401/8 402/4 408/9 408/12 408/13
  408/23
Honorable [2] 392/4 392/5
how [1] 398/6
However [2] 397/22 403/2

**I**

I'll [2] 392/12 396/2
I'm [4] 395/21 397/17 400/14 402/17
I've [1] 401/15
identified [1] 398/17
III [1] 399/9
immunity [3] 398/9 399/1 399/7
impermissible [2] 394/1 394/6
importance [1] 395/4
impression [1] 395/1
improper [1] 396/22
improperly [1] 394/3
inappropriate [1] 398/23
incarceration [2] 393/24 393/25
incarcerations [1] 394/8
inclined [1] 402/20
incorrect [4] 392/22 392/25 399/21 401/9
indeed [1] 395/19
independent [2] 394/1 398/13
independently [1] 398/16
indicate [3] 397/6 402/7 408/16
indictment [1] 397/3
initial [2] 398/24 401/10
injuries [8] 393/15 393/17 393/18 393/23
  405/4 405/9 406/18 406/22
injury [3] 393/13 396/9 396/13
insofar [1] 394/22
instruct [2] 393/12 394/25
instruction [8] 392/23 393/6 395/6 397/15
  397/20 398/2 398/3 402/20
instructions [2] 393/4 401/21
interrogatories [6] 398/23 399/9 399/11
  400/7 400/12 400/16
interrogatory [1] 395/11
introduce [1] 400/16
introducing [1] 394/8
irrepairable [1] 394/19
is [55]
issue [8] 395/25 396/1 397/10 398/8 399/2
  402/6 402/8 402/21
issues [1] 397/14
it [27]
it's [17] 392/25 393/5 393/7 393/21 396/16
  396/17 396/25 398/4 398/5 398/13 398/15
  398/23 399/22 400/14 402/12 402/14 403/8
its [1] 395/12
itself [4] 397/23 397/25 398/3 398/5

**J**

JACK [3] 390/10 392/4 392/5
jail [3] 393/13 393/19 393/20
JBW [1] 390/4

# A1323

## J

JOHANA [1] 390/25
Johnson [3] 391/1 391/3 409/9
JON [1] 390/18
JOSHUA [2] 390/2 392/7
JUDGE [2] 390/11 392/10
Judi [3] 391/1 391/3 409/9
Juror [12] 407/10 407/12 407/14 407/16
 407/18 407/20 407/22 407/24 408/1 408/3
 408/5 408/7
jurors' [1] 408/19
jury [44]
just [15] 394/4 396/1 396/2 396/12 398/8
 399/19 400/10 400/20 400/22 401/5 401/20
 401/24 402/4 402/14 403/5
justify [1] 396/13

## K

key [1] 397/10
kinds [1] 400/12
know [1] 403/17
knowingly [4] 404/21 404/25 406/12 406/15
known [1] 402/21
Kurman [1] 392/25

## L

Lahuc [1] 398/10
language [4] 400/25 402/9 402/11 403/3
Lastly [1] 398/22
late [4] 398/2 400/14 402/12 402/14
law [9] 390/22 393/1 393/8 394/5 396/23
 397/1 399/21 402/23 403/6
lawyers [1] 394/23
leading [1] 394/23
Let [1] 403/17
liability [6] 394/14 394/16 395/19 398/4
 398/14 398/16
liberty [4] 393/21 393/25 396/9 396/11
lied [2] 398/5 399/8
light [1] 392/19
like [2] 400/6 401/16
limine [1] 399/1
limitation [1] 398/20
limited [2] 396/16 396/19
limiting [3] 397/15 397/20 398/1
little [2] 396/2 396/7
LLP [1] 390/14
located [1] 394/24
long [1] 398/8
loss [5] 393/15 393/21 393/25 396/9 396/11
lost [2] 396/6 396/7
Lowe [1] 403/17
lunch [2] 401/15 401/16

## M

Madam [1] 404/5
made [7] 394/12 394/17 395/1 395/17
 396/24 397/7 398/20
mail [1] 391/3
make [2] 396/21 408/24
malfeasors [1] 394/5
maliciously [4] 404/14 404/17 406/7 406/9
many [1] 398/11
Mark [1] 403/20
marked [1] 403/22
MARSHALL [2] 390/2 392/7
matter [3] 395/1 400/15 409/6
may [14] 393/1 393/6 394/3 394/12 399/17
 400/20 403/8 403/12 404/9 404/12 406/1
 406/4 406/6 408/15
May 15th [3] 404/9 404/12 406/6
me [3] 394/25 395/5 398/1
mean [3] 399/6 399/7 402/14

memorandum [1] 392/14
mentioned [1] 397/4
message [4] 394/4 396/14 401/19 403/1
messages [3] 401/20 401/24 403/16
net [1] 398/25
might [1] 403/14
misconduct [1] 403/10
misleading [3] 394/12 396/25 397/7
misread [1] 394/15
misstated [1] 393/8
misunderstanding [1] 398/7
money [4] 405/3 405/8 406/17 406/21
months [1] 393/13
more [4] 405/5 405/10 406/19 406/23
Moreover [1] 393/3
morning [4] 392/15 392/18 401/18 402/6
motion [2] 392/12 400/5
motions [3] 398/25 408/22 408/24
Ms. [1] 403/17
Ms. Lowe [1] 403/17
much [4] 395/13 408/14 408/20 409/2
my [3] 396/15 397/19 397/21 401/21

## N

nature [2] 392/20 396/17
necessary [4] 405/3 405/9 406/17 406/21
need [1] 395/19
needed [1] 403/11
needs [1] 397/5
NEW [10] 390/1 390/5 390/6 390/16 390/16
 390/22 390/23 390/23 392/3 392/8
night [1] 408/20
no [17] 392/7 393/6 396/6 396/6 397/19
 399/1 399/9 401/24 402/9 404/9 404/12
 404/15 404/18 404/22 405/1 408/12 408/13
nobody [1] 395/3
nonetheless [1] 398/17
NORINSBERG [1] 390/18
not [29]
note [5] 395/8 395/23 400/1 400/6 400/10
Nothing [1] 409/2
noticed [1] 401/19
now [9] 392/3 392/4 392/22 393/3 395/2
 397/1 399/20 402/12 408/11
Number [12] 407/10 407/12 407/14 407/16
 407/18 407/20 407/22 407/24 408/1 408/3
 408/5 408/7
nved.uscourts.gov [1] 391/3

## O

oath [1] 399/3
object [2] 394/22 395/8
objected [1] 402/21
objection [4] 400/1 400/7 402/5 402/11
objections [1] 400/24
occurring [1] 396/18
Officer [24]
officers [3] 397/7 398/9 399/3
Official [2] 391/1 409/9
one [7] 397/5 397/13 401/11 405/5 405/10
 406/19 406/23
only [3] 397/24 398/21 402/24
open [1] 392/1
opportunity [3] 401/4 402/9 402/18
opposing [1] 392/15
other [1] 408/18
others [2] 396/20 403/13
otherwise [2] 398/15 403/14
our [7] 393/21 398/24 399/22 400/1 400/7
 401/9 402/5
overcome [2] 397/5 397/13
overcoming [1] 397/6

## P

p.m [1] 401/15
Page [1] 403/7
part [1] 397/18
particular [2] 399/12 402/21
permitted [1] 394/3
pervasive [1] 392/20
place [1] 402/4
plaintiff [23]
plaintiff's [11] 393/8 394/8 394/22 404/20
 404/25 405/16 405/22 406/11 406/14 407/3
 407/8
plaintiffs [1] 395/14
please [8] 399/14 400/1 401/14 402/2 404/4
 404/5 404/7 406/2
point [3] 395/7 396/3 399/19
police [1] 398/9
Poll [2] 405/25 406/2
polled [1] 408/9
portion [1] 396/15
position [6] 393/6 393/7 393/22 395/14
 399/22 401/9
positive [1] 399/5
possibility [1] 398/6
possibly [1] 395/22
post [1] 408/24
post-trial [1] 408/24
potential [1] 394/16
pre [1] 393/11
pre-charge [1] 393/11
precluded [1] 394/7
prejudice [2] 392/20 395/9
presenting [4] 404/21 405/1 406/12 406/15
presiding [1] 392/4
presumption [4] 397/2 397/5 397/6 397/13
prior [1] 394/8
privacy [1] 408/18
proceedings [3] 391/5 392/6 409/6
produced [1] 391/5
proper [3] 394/14 395/18 401/10
properly [2] 394/11 396/8
propose [2] 400/24 402/9
proposed [1] 402/11
proposition [1] 403/15
prosecute [4] 404/15 404/18 406/7 406/9
prosecutor [4] 404/22 405/1 406/13 406/16
proximally [4] 405/4 405/10 406/18 406/22
psychological [7] 393/8 393/9 393/15 393/17
 393/18 393/23 396/6
punitive [24]
purpose [3] 399/9 402/25 403/1
purposes [3] 397/13 398/13 398/18
pursuant [4] 405/13 405/19 406/25 407/5
put [1] 402/16
putative [1] 394/5

## Q

qualified [2] 399/1 399/7
question [5] 395/16 405/14 405/20 406/25
 407/5

## R

raised [2] 395/16 402/6
Randall [12] 404/8 404/14 404/20 405/5
 405/15 405/17 406/3 406/7 406/11 406/19
 407/2 407/4
reached [2] 403/18 404/3
reaches [1] 395/12
read [2] 393/12 393/16
reads [1] 403/7
really [4] 395/17 395/21 396/22 398/6
reason [1] 408/10

## A1324

**R**

reasonably |1| 393/6
received |3| 395/23 403/23 403/25
recollection |2| 397/19 397/21
record |8| 397/17 397/22 400/7 400/10
  401/6 402/5 402/17 409/6
recorded |1| 391/5
recovery |3| 393/14 393/15 393/17
referenced |1| 394/22
references |1| 397/11
regard |1| 396/24
regardless |1| 397/1
Rehberg |4| 394/14 394/17 397/2 398/14
relationship |3| 392/23 393/4 399/21
remarks |1| 397/9
removed |1| 395/25
repeatedly |3| 394/11 399/3 400/23
Reporter |4| 391/1 391/1 409/4 409/9
request |5| 395/10 397/4 397/19 398/19
  398/22
requested |1| 397/15
requests |1| 401/1
reserve |1| 408/23
respect |14| 392/23 393/4 393/8 393/23
  393/24 394/16 396/14 397/18 398/22 399/21
  400/4 402/8 402/23 402/24
resulted |1| 395/9
review |1| 394/21
right |6| 397/1 401/16 402/1 406/12 406/15
  408/23
rights |10| 404/21 404/25 405/5 405/10
  405/16 405/22 406/19 406/23 407/3 407/8
rise |2| 392/2 404/7
Robinson |1| 392/25
RPR |2| 391/1 409/9
rulings |2| 400/2 400/4

**S**

said |5| 395/8 395/22 398/24 401/10 408/16
same |3| 396/21 398/11 398/15
SANDS |1| 390/25
saw |1| 399/5
say |3| 393/1 398/4 400/22
seated |1| 401/14
second |4| 393/7 395/23 400/8 403/12
see |3| 396/1 398/6 399/6
seeking |7| 393/9 393/14 393/15 393/17
  393/19 393/21 396/10
send |4| 394/4 396/14 401/19 401/20
sending |1| 403/1
sense |1| 398/11
sentence |2| 403/11 403/12
separate |1| 393/25
serve |1| 403/13
session |1| 392/4
several |1| 392/20
sharp |1| 399/2
sheet |1| 395/11
should |4| 396/11 398/19 400/25 408/10
show |1| 402/17
similar |2| 403/2 403/14
similarly |1| 396/20
simple |1| 400/14
sit |3| 402/13 404/4 406/1
situated |1| 396/21
Sixth |1| 394/15
so |11| 396/1 396/22 397/10 398/6 398/20
  399/5 399/10 401/4 402/18 403/5 403/12
something |1| 402/16
sound |1| 396/23
speak |1| 397/22
special |6| 395/10 398/23 400/7 400/12

400/16 401/1
speculative |1| 394/9
spent |2| 393/13 393/20
stage |1| 400/14
standard |1| 395/18
stands |1| 397/1
state |4| 392/25 398/8 399/24 400/23
stated |3| 396/6 396/8 399/3
statement |4| 393/1 394/18 399/21 401/9
statements |5| 394/13 394/13 396/24 396/25
  397/7
states |6| 390/1 390/5 390/11 392/2 398/4
  403/15
stemmed |1| 396/5
stenography |1| 391/5
still |2| 397/2 398/17
Street |1| 390/23
strictly |1| 396/16
strongly |1| 399/20
submitted |1| 395/11
such |2| 393/10 394/13
sufficiently |1| 403/15
suggested |1| 401/19
Suite |1| 390/16
summation |2| 396/15 396/16
Summerland |1| 400/8
supplemental |4| 401/3 402/8 402/15 402/20
Supreme |1| 398/10
sure |3| 395/21 396/21 397/17

**T**

take |1| 404/5
taken |1| 403/19
takes |1| 392/5
talk |3| 401/17 408/15 408/18
Telephone |1| 391/2
Tell |1| 392/11
telling |1| 396/11
testified |1| 393/10
testimony |5| 394/16 397/11 398/10 398/12
  398/15
thank |10| 395/13 399/13 400/19 401/7
  401/12 402/1 406/1 408/14 408/20 409/2
that |96|
that's |7| 394/5 397/8 397/21 401/8 401/24
  403/1 403/3
their |4| 395/2 395/3 399/4 402/25
them |3| 392/11 401/4 402/15
themselves |1| 401/5
then |2| 393/16 409/2
there |8| 395/25 396/6 396/6 397/11 397/19
  399/8 399/10 408/10
there's |5| 397/2 397/5 398/6 399/1 399/2
thereto |1| 394/23
these |3| 394/4 399/9 400/12
they |21|
they're |2| 399/7 400/13
think |6| 395/1 396/4 398/14 403/7 403/16
  408/24
Third |1| 394/3
this |16| 392/15 396/5 396/18 397/10 398/2
  398/24 399/12 400/14 401/18 402/6 402/6
  402/8 402/20 403/23 404/1 408/25
those |3| 396/10 397/8 397/12
though |1| 398/13
through |3| 397/3 401/16 401/18
time |7| 393/19 393/23 393/24 393/24 395/3
  397/16 398/8
today |2| 401/2 403/21
told |1| 403/5
too |2| 402/12 402/14
tortfeasors |1| 396/19
transcript |6| 390/10 391/5 394/21 394/24

401/18 409/5
Transcription |1| 391/5
trial |10| 390/10 392/6 398/10 398/12 399/4
  404/21 404/25 406/12 406/15 408/24
two |3| 393/3 397/12 397/13
type |3| 390/20 396/12 401/2
types |1| 399/10

**U**

under |14| 392/24 394/5 394/9 394/14
  396/23 397/1 398/10 398/14 398/16 399/3
  400/8 402/23 403/6
understand |2| 399/25 401/22
UNITED |4| 390/1 390/5 390/11 392/2
unnecessary |1| 395/7
up |1| 394/23
upon |1| 394/1
upset |2| 401/16
us |1| 398/12
use |3| 398/12 398/15 398/20
used |2| 397/9 402/25

**V**

verdict |16| 395/12 402/25 404/3 404/5
  407/10 407/12 407/14 407/16 407/18 407/20
  407/22 407/24 408/1 408/3 408/5 408/7
versus |2| 390/4 398/10
very |6| 395/13 397/1 399/20 408/14 408/20
  409/2
views |1| 408/19
violate |4| 404/20 404/24 406/11 406/14
violation |4| 405/5 405/10 406/19 406/23
VOLUME |1| 390/9

**W**

wages |1| 396/6
want |8| 394/25 398/8 400/10 400/22
  401/20 401/20 402/4 408/18
wanted |2| 399/19 401/5
warning |1| 403/13
warranted |1| 399/11
was |25|
ways |1| 397/6
we |29|
we've |1| 398/11
WEINSTEIN |3| 390/10 392/4 392/5
well |1| 397/21
were |6| 394/7 396/6 397/9 397/9 399/4
  399/5
what |27|
when |1| 398/25
where |4| 395/23 396/5 399/11 403/17
Whereupon |1| 403/19
whether |1| 399/2
which |7| 394/1 396/15 397/10 398/10
  398/15 399/8 402/21
while |1| 399/10
who |1| 403/14
whole |1| 396/19
why |1| 408/10
will |2| 397/22 404/7
willfully |1| 399/8
wish |4| 395/5 395/6 402/16 408/15
without |2| 396/10 403/15
won't |1| 401/16
Woolworth |1| 390/15
would |24|
would've |3| 402/19 402/21 402/22

**Y**

years |1| 398/11
Yes |37|
yesterday |3| 400/23 401/1 401/9
YORK |10| 390/1 390/5 390/6 390/16

**Y**

YORK... [6]  390/16 390/22 390/23 390/23
392/3 392/8
you [37]
you'd [1]  401/16
You're [1]  408/14
your [34]

**Z**

Zelna [1]  400/8

A1326

PLAINTIFF'S EXHIBIT 1-IN EVIDENCE
Excerpt of Memobook
(pp. A1326-A1328)

REPRODUCED FOLLOWING

**A1327**



Wednesday 05/14/69 Tour:
1730 x 0205 Assignment : ANAC
1730 present for dvj x tRWAc:'





PLAINTIFF'S
EXHIBIT
PERX/AD 800-631-6989
6-2-11 KR

**NYC 7**

PLAINTIFF'S
EXHIBIT
1

A1328



1930 10-98 in RMP# 8815
w/ P.O. Burbridge + P.O. Fox;
2250 ...
2320 ...
0045 Marshall, Joshua
placed under arrest for CPW 2°,
0638 ready time,
0805 end of tour, P.O. Randall
tax # 933231.

**NYC 8**

A1329

PLAINTIFF'S EXHIBIT 2-IN EVIDENCE
NYPD Complaint Report Worksheet, Dated May 15, 2008
(pp. A1329-A1333)

REPRODUCED FOLLOWING

# A1330

**COMPLAINT REPORT WORKSHEET**
PD 313-152A (Rev. 00-01)

| | |
|---|---|
| Int/Prt (Item)/Report | Jurisdiction Of Complaint: ☒ NYPD (Unless One Of The Following): |
| C63 | |

☐ NYPD Transit Bureau
☐ NYPD Housing Bureau
☐ Port Authority Police
☐ Triborough Bridge And Tunnel Police
☐ N.Y. State Park Police

☐ Amtrak Police
☐ Conrail Police
☐ Staten Island Rapid Transit Police
☐ N.Y. State Police
☐ Long Island Railroad M.T.A.

☐ U.S. Park Police
☐ Health & Hospitals Corp. Police
☐ Metro North M.T.A.
☐ Other

| Location Of Occurrence | Address | County | Zip Code | Apt/Rooms |
|---|---|---|---|---|
| ☐ Inside ☐ In Front Of ☐ Rear Of ☐ Opposite Of | | KINGS. | | |

| Cross Streets | | OR | Intersection Of PAIK ST | & BROADWAY | Corner ☐N-W ☐N-E ☐Case ☐S-W ☐S-W |
|---|---|---|---|---|---|

| Military Time And Date Of This Report | Time 0123 | Date 07/15/06 | Occurrence On Or From | Time 0042 | Date 07/15/06 | Day Of Week Thru | Occurrence Through | Time | Date | Day Of Week |

| Pct Of Occ C63 | Complaint # 35602 | U.C.R # | Aided # | Accident # | Case Status ☐ Open ☒ Closed | Unit Referred To/Log/Case # Arrest | If to # |
|---|---|---|---|---|---|---|---|

| Report Classification (If Offense, List Most Serious First): CPW | ☐ Attempted ☐ Completed |
|---|---|

| Was The Victim's Personal Information Taken Or Possessed? ☐ Yes ☒ No | Was The Victim's Personal Information Used To Commit A Crime? ☐ Yes ☒ No |
|---|---|

| Comp Heard ☐ Radio ☐ Walk In ☐ Phone ☐ Written ☒ Pick-Up | Victim By Patrol ☐ Yes ☐ No | Pct Series Of Occ | Beat Of Occ | Post Of Occ | Victim Hispanic ☐ Yes ☒ No |
|---|---|---|---|---|---|

| Possibly ☐ Yes Gang Related ☐No | If Yes Gang Total | Name Of Gang | If Arson: ☐ Building ☐ Motor Vehicle ☐ Other Property | ☐ Occupied ☐ Unoccupied | Damage Caused By | ☐ Explosion ☐ Fire ☐ Unit | Domestic Incident Report Required ☐Yes ☐No | Child Abuse Suspected ☐Yes ☒No |
|---|---|---|---|---|---|---|---|---|

**Premises Type (Must Choose One)**

| Residential | Name Of Worship: | School: | Public Transportation: | |
|---|---|---|---|---|
| ☐ Residence - Private House | ☐ Church | ☐Public (K/12 Grds Of Ed) | ☐ Airport Terminal ☐ Bus Terminal | ☐ Sanctuary ( Unmarried) |
| ☐ Residence - Apt. Building | ☐ Synagogue | ☐Private/Parochial | ☐ Bus (NYC Transit) ☐ Ferry/Ferry Terminal | ☐ Tramway |
| ☐ Residence - Public Housing | ☐ Mosque | ☐College/University | ☐ Bus (Other) ☐ Taxi (Yellow Licensed) | ☐ Transit - NYC Subway |
| | ☐ Other | ☐Other | ☐ Bus Stop ☐ Taxi (Livery Licensed) | ☐ Transit Facility (Other) |

| Commercial | ☐ Candy Store | ☐ Docks/Dental | ☐ Grocery/Bodega | ☐ Loan Company | ☐ Storage Facility |
|---|---|---|---|---|---|
| ☐ ATM | ☐ Chain Store | ☐ Drug Store | ☐ Gym/Fitness Facility | ☐ Photo/Copy Store | ☐ Store (unclassified) |
| ☐ Bank | ☐ Check Cashing Business | ☐ Dry Cleaner/Laundry | ☐ Hospital | ☐ Restaurant/Diner | ☐ Supermarket |
| ☐ Bar/Night Club | ☐ Clothing/Boutique | ☐ Factory/Warehouse | ☐ Hotel/Motel | ☐ Shoe Store | ☐ Telephone Store |
| ☐ Beauty & Nail Salon | ☐ Commercial Building | ☐ Fast Food | ☐ Jewelry Store | ☐ Small Merchant | ☐ Variety Store |
| ☐ Bank/Cred Store | ☐ Department Store | ☐ Gas Station | ☐ Liquor Store | ☐ Social Club/Policy Location | ☐ Video Store |

Indicate Name Of Business _____

| Other: | ☐ Cemetery | ☐ Marina/Pier | ☐ Parking Lot/Garage | ☐ Public Building | ☐ Other |
|---|---|---|---|---|---|
| ☐ Abandoned Building | ☐ Construction Site | ☐ Open Lot/Area | ☐ Private | ☒ Street | |
| ☐ Bridge | ☐ Highway/Parkway | ☐ Park/Playground | ☐ Public | ☐ Tunnel | |

Indicate Name If Known: _____

**Exact Location Within Premise Type, If Known (Choose One):**

| ☐ Apartment | ☐ Elevator Equipment Room | ☐ Maintenance/Storage Area | ☐ Rest Room | ☐ Motor Vehicle |
|---|---|---|---|---|
| ☐ Basement | ☐ Freight Elevator | ☐ Management Office | ☐ Roof | ☐ Car |
| ☐ Commercial Establishment | ☐ Garage | Other Offices | ☐ Roof Top Landing | ☐ Motorcycle |
| ☐ Community Center | ☐ Hallway | ☐ Parking Lot | ☐ Stairway | ☐ Truck |
| ☐ Driveway | ☐ Laundry Room | ☐ Play/Park Area | ☐ Terrace | |
| ☐ Elevator | ☐ Lobby/Door/Vestibule | ☐ Public Sidewalk | ☐ Walkways | ☐ Other |

| If Burglary: Forcible Entry? ☐ Yes ☒ No ☐ Air Forcible Entry ☐ Unknown | If Burglary, Describe: ☐ Vehicle ☐ Bldg. Commercial ☐ Wdg. Residential ☐ Garage | ☐ Truck ☐ Trailer ☐ Building Other | Location at Entry: ☐ Front ☐ Rear ☐ Side ☐ Roof ☐ Watercraft ☐ Unknown ☐ Other |
|---|---|---|---|

If Yes, Explain In Detail: _____

| Type of Entry ☐ Window | Alarm Bypassed Alarm | Alarm Company Name And Telephone # | Home/Prem Survey Requested |
|---|---|---|---|
| 1 Security Gate ☐ Door ☐ Wall ☐ Floor | ☐Yes ☐No | Company ☐ No | Requested |
| 3 Skylight ☐ Vent/Duct ☐ Other | ☐ N/A | Responded ☐ N/A | ☐ Yes ☐ No |

| Supervisor On Scene ☐ Yes ☒ No | Was Interpreter Used ☐ Yes ☐ No If Yes Indicate Name, Address And Phone # |
|---|---|

| Rank ___ Name (First) ___ Cmd ___ | Name ___ |
|---|---|

| Canvass Conducted ☐ Yes ☐ No (Indicate Interviews And Results) | Address ___ | Phone # ___ |
|---|---|---|

AT T/P/O Above Def't. was found to be in possession of a
Loaded Firearm.



PLAINTIFF'S EXHIBIT 2

**N.Y.C. DEPT. OF ED. SCHOOLS**

N.Y.C. Dept. Of Ed. School Incident: ☐ Yes ☐ No | ☐ On School Property ☐ During School Hours | Traveling ☐ To School ☐ From School | School Sponsored Event ☐ Yes ☐ No | School Safety Division Operations Control # ____

Victim Status: ☐ General Ed. Student ☐ Special Ed. Student ☐ Resource Room/Related Services ☐ Teacher ☐ School Safety Agent ☐ Other Staff ____ ☐ Other (Specify) ____

Type of School: ☐ Elementary ☐ I.S. ☐ JHS ☐ HS ☐ SP. ED. | School Number | School Name

Exact Location On School Property: ☐ Hall ____ ☐ Floor ____ ☐ Classroom # ____ ☐ Cafeteria ☐ Staircase # ____ ☐ Gym/Locker Room ☐ Bathroom # ____ ☐ Playground/Field ☐ On School Grounds ☐ Auditorium ☐ Other ____

Suspect Status: ☐ General Ed. Student ☐ Special Ed. Student ☐ Resource Room/Related Services ☐ Teacher ☐ Other Staff (Title) ____ ☐ Student Intruder ☐ Intruder ☐ Visitor ☐ Family Member ☐ Unknown ☐ Other ____

**NYC TRANSIT SUBWAY SYSTEM**

N.Y.C. Transit Incident: ☐ Yes ☐ No | Station Of Occurrence | Line (# Or Letter) | Transit Post # | Transit District | Transit CN

Victim's Time And Station Of Entry Into Transit System, If Known | Metro Card ☐ Lost ☐ Stolen | Type: ☐ Student ☐ Senior Citizen ☐ Transit Employee ☐ Standard ☐ Handicapped ☐ Value | Metro Card Serial # ____

☐ N/B Train ☐ S/B Train (Location On Train: ☐ Front ☐ Middle ☐ Rear) Train Car # ____

☐ N/B Platform ☐ S/B Platform ☐ Booth # ____ ☐ Turnstile Area ☐ Mezzanine ☐ Stairs/Ramp/Escalator

☐ Elevator ☐ Tunnel/Track Area ☐ Passage Way ☐ Toilet Facility ☐ Street Stairway(s) Escalator ☐ Other ____

**N.Y.C.H.A.**

N.Y.C. Housing Authority Incident: ☐ Yes ☐ No | Name Of Development | PSA # | Housing Report #

**VICTIM**

Total # Of Victims ____ | Victim # ____ Of ____ Victims | Is Victim: ☐ Male ☐ Female (Disabled ☐ Yes ☐ No) ☐ Business/Organization ☒ PSNY | Is Victim N.Y.C.H.A. Resident ☐ Yes ☐ No

If Business/Organization, List Name | Address | City | State | Zip | Phone #

If Person, Last Name | First | M.I. | Is Interpreter Needed For Further Investigation: ☐ Yes ☐ No | If Yes, Indicate Language

Nickname/Alias/Maiden Name | Sex ☐ Male ☐ Female | Date Of Birth | Age | Race ☐ White ☐ Am. Ind./Alaskan Native ☐ Hisp. White ☐ Black ☐ Asian/Pacific Is. ☐ Hisp. Black

Permanent Residence Address (☐NYC ☐NYS ☐Other ☐Homeless) | City | State/Country | Zip | Apt. # / Room #

Temporary Residence Address | City | State | Zip | Apt. # | For How Long?

Business Address | City | State | Zip | Apt. # / Room #

Home Phone # ( ) ____ Business # ( ) ____

Beeper # ( ) ____ Cell Phone # ( ) ____

E-Mail Address ____

Gang Affiliation: ☐ Yes ☐ No | If Yes, Indicate Name Of Gang | Gang Identifiers (Colors, Beads, Tattoos, Etc.)

Victim Was: ☐ Shot ☐ Cut/Slashed/Stabbed | Actions Of Victim Prior To Incident (Be Specific)

Victim Of Similar Incident (EXCEPT SEX OFFENSE) ☐ Yes ☐ No | If Yes, When And Where

Will View Photo ☐ Yes ☐ No | Will Prosecute ☐ Yes ☐ No | Victim Has Been Notified Of Crime Victim Comp. Law ☐ Yes ☐ No

**REPORTER / WITNESS**

Reporter/Witness # ____ of ____ | ☐ Reporter ☐ Witness

Last Name | First | M.I. | Is Interpreter Needed For Further Investigation ☐ Yes ☐ No | If Yes, Indicate Language

Nickname/Alias/Maiden Name | Sex ☐ Male ☐ Female | Date Of Birth | Age | Race ☐ White ☐ Am. Ind./Alaskan Native ☐ Hisp. White ☐ Black ☐ Asian/Pacific Is. ☐ Hisp. Black

Permanent Residence Address (☐NYC ☐NYS ☐Other ☐Homeless) | City | State/Country | Zip | Apt. #/Room #

Temporary Residence Address | City | State | Zip | Apt. # | For How Long?

# A1333

A1334

PLAINTIFF'S EXHIBIT 3-IN EVIDENCE
Redacted NYPD Evidence Collection Team Report, Dated May 15, 2008
(pp. A1334-A1335)

REPRODUCED FOLLOWING

# A1335

**EVIDENCE COLLECTION TEAM REPORT**
PD 521-157 (09-07)

Date of Report: _5/15/08_    Page _1_ of _1_

| ECT MOS Reporting (Rank, Name) | | Command | Tax No. |
|---|---|---|---|
| P.O. SENA, JOSEPH | | BNECT | 902396 |

| ECT Run No. | Date Response Requested | Time Response Requested | Date Arrived At Scene | Time Arrived At Scene |
|---|---|---|---|---|
| 1267 | 5/15/08 | 0600 | 5/15/08 | 0839 |

Address of Occurence: C/O PARK St + Broadway    Type of Premises: Street

| Describe Location | Weather Conditions | Scene Lighting |
|---|---|---|
| Street | Cloudy | N/A |

| Offense(s) | Complaint No. (Year-Pct.-No.) |
|---|---|
| CPW | 2008-083-03562 |

| Name of Victim | Date of Birth | Injured? ☐ Yes  ☒ No | If Yes, Hospital Removed To |
|---|---|---|---|
| PSNY | N/A | | N/A |

| Evidence Collected? ☒ Yes ☐ No | Prints Lifted? ☐ Yes ☒ No | Was Evidence Recovered as a Result of Search Warrant? ☐ Yes ☒ No | Was Evidence Vouchered? ☒ Yes ☐ No | Total No. Of Vouchers: 2 |
|---|---|---|---|---|

| Voucher No(s). | | | | |
|---|---|---|---|---|
| 1. P2002-05 | 2. P2002.08 | 3. N/A | 4. | 5. |

| Processed Vehicle Make/Model | Year | Lic. Plate No. | State | VIN No. |
|---|---|---|---|---|
| N/A | | | | |

| | Name | Date of Birth | Arrest No. | Pct. | NYSID No. |
|---|---|---|---|---|---|
| 1. ☒ Arrested ☐ Suspect | MARSHALL, JOSHUA | 7/6/80 | K07644325 | 83 pct. | |
| 2. ☐ Arrested ☒ Suspect | N/A | | | | |

Details: Include Method of Operation (Means of Entry, Tools Used, Property Handled, Descriptions, etc.) and Other Pertinent Information

ECT was requested to meet Annex @ 653 Grand Ave. to process a firearm in regards to arrest. A/o (P.o. RANDALL, SALIM Tax#933231) States Firearm (silver .38 S & W Serial # CDK17342) was recovered in the street C/o Park St + Broadway. The undersigned did swab firearm for Contact DNA Evidence of possible skin cells, and also fumed firearm @ the Annex in an attempt to retrieve possible latent print yielding negative results. ~~[redacted]~~ ~~[redacted]~~ Responded to annex with P.o Acevedo, Julio Tax 905610 BNELT. Conferred with P.o. RANDALL, SALIM Tax #933231 from PBBN-AC & Sgt. Biscardi, Douglas Tax #923560 from PBBN-AC.

Head stamp of Live Cartridges : RP .38 Special

**PHOTO LOG (DNA Evidence ONLY)**

| Camera Make | Camera Model | Lens Type | Type of Film |
|---|---|---|---|
| Nikon | F80 | 24 -120 mm | 400 |

| PHOTO NO. | DESCRIPTION OF IMAGE IN PHOTOGRAPH |
|---|---|
| 01 | O/v of (silver .38 S & W) Firearm & (6) Live Cartridges |
| 02 | S/A/A |
| 03 | O/v of firearm & Live Cartridges inside EVIDENCE Box |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| ECT MOS Reporting Signature | Tax No. | Date |
|---|---|---|
| [signature] | 902396 | 5/15/08 |

| Del. Bur. Supervisor (Rank, Name Printed) | Del. Supv. Signature | Tax No. | Date |
|---|---|---|---|
| SGT Mallami | [signature] | 922843 | 5/15/08 |

| ECT Supervisor (Rank, Name Printed) | ECT Supv. Signature | Tax No. | Date |
|---|---|---|---|
| | | | |

**DISTRIBUTION:**   White - OCME-Forensic Biology Unit   Blue - Assigned Investigator   Green - Police Laboratory
Buff - ECT                                    Pink - Latent Print Section

PLAINTIFF'S EXHIBIT 3

A1336

<u>PLAINTIFF'S EXHIBIT 6-IN EVIDENCE</u>
Arrest Report
(pp. A1336-A1339)

REPRODUCED FOLLOWING

 **New York City Police Department**

*Omniform System — Arrests* 

**RECORD CONTAINS SEALED INFORMATION.**
**THIS RECORD MAY NOT BE MADE AVAILABLE TO ANY PERSON**
**OR PUBLIC OR PRIVATE AGENCY OUTSIDE THE POLICE DEPARTMENT.**

| *RECORD STATUS: SEALED* | Arrest ID: K08644325 - Y |
|---|---|

| Arrest Location: NORTH EAST CORNER PARK STREET & BROADWAY | Pct: 083 |
|---|---|

**Arrest Date:** 05-15-2008    Processing Type: ON LINE

**Time:** 00:45:00    OCJS Fax Number: KO035613
Sector: F    Special Event Code: -
DAT Number: 0
Stop And Frisk: NO    Return Date: 0000-00-00
Serial #: 0000-000-00000

| **COMPLAINTS:** | | Arrest #: K08644325 |
|---|---|---|

| COMPLAINT NUMBER | REPORT DATE | RECORD STATUS | OCCUR DATE | OCCUR TIME |
|---|---|---|---|---|
| 2008-083-03562 | 2008-05-15 | Valid, Initial Arrests made 2008-05-15 | 00:42 | |

| SEALED | SEALED |
|---|---|

| **CHARGES:** | Arrest #: K08644325 |
|---|---|

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 265.03 03 F | C | | 1 | CPW-2ND: LOADED FIREARM |
| #02 | No | PL 165.45 04 F | E | | 1 | CPSP-4TH:FIREARMS |

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

| SEALED | SEALED |
|---|---|

| **DETAILS:** | Arrest #: K08644325 |
|---|---|

AT T/P/O ABOVE DEFT. WAS FOUND IN POSSESSION OF A LOADED FIREARM. SER. #CDK7342.

| SEALED | SEALED |
|---|---|

| *DEFENDANT: MARSHALL, JOSHUA J* | NYSID #: 08661204R | Arrest #: K08644325 |
|---|---|---|

| Nick/AKA/Maiden: | Height: 6FT 3IN | Order Of Protection: NO |
|---|---|---|
| Sex: MALE | Weight: 280 | Issuing Court: |
| Race: WHITE HISPANIC | Eye Color: BROWN | Docket #: |
| Age: 27 | Hair Color: BLACK | Expiration Date: |
| Date Of Birth: 07/06/1980 | Hair Length: LONG | Relation to Victim: STRANGER |
| U.S. Citizen: YES | Hair Style: PONY TAIL | Living together: NO |
| Place Of Birth: | Skin Tone: LIGHT | Can be identified: YES |
| Need Interpreter: NO | Complexion: BLOTCHY | |
| Language: | | |
| Accent: NO | Soc.Security #: | |
| | Occupation: UNKNOWN | Gang Affiliation: NO |

PLAINTIFF'S EXHIBIT
6

Case ESD Rep07 1:0304XX3YP   Document 24-1   Filed 09/09/11   Page 38 of 58 PageID #: 172

| Physical Condition: APPARENTLY NORMAL | Lic/Permit Type: | Name: | |
|---|---|---|---|
| Drug Used: NONE | Lic/Permit No | Identifiers: | |

| LOCATION | ADDRESS | CITY | STATE/ENTRY ZIP APT/RQOM PCT |
|---|---|---|---|
| HOME-PERMANENT 482 GRAHAM AVENUE BROOKLYN NEW YORK | | | 094 |

**Phone # and E-Mail Address:**

N.Y.C.H.A. Resident: NO N.Y.C. Housing Employee: On Duty:
Development:     N.Y.C. Transit Employee:

**Physical Force: NONE**

| Gun: | HANDGUN | | |
|---|---|---|---|
| Weapon Used/Possessed: POSSESSED | | Make: SMITH & WESSON | Recovered: |
| Non-Firearm Weapon: | | Color: SILVER | Serial Number Delaced: |
| Other Weapon Description: | | Caliber: .38 CAL | Serial Number: |
| | | Type: PISTOL, REVOLVER | |
| | | Discharged: NO | |

Used Transit System: NO
    Station Entered:
    Time Entered:
    Metro Card Type:
Metro Card Used/Poses:
    Card #:

| CRIME DATA | DETAILS |
|---|---|
| STATEMENTS MADE | NA |
| METHOD OF FLIGHT | NA |
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | UNK |
| CLOTHING | HEADGEAR - BASEBALL HAT - BROWN |
| CLOTHING | FOOTWEAR - UNK - UNKNOWN COLOR |
| CLOTHING | OUTERWEAR - UNK - UNKNOWN COLOR |
| CLOTHING | ACCESSORIES - UNK - UNKNOWN COLOR |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

| SEALED | SEALED |
|---|---|

| JUVENILE DATA: | Arrest #: K08644325 |
|---|---|

Juvenile Offender:   Relative Notified:  Personal Recog:
Number Of Priors: 0      Name:
School Attending:    Phone Called:
Mother's Maiden Name:   Time Notified:

| SEALED | SEALED |
|---|---|

| ASSOCIATED ARRESTS: | Arrest #: K08644325 |
|---|---|

**ARREST ID COMPLAINT #**

| SEALED | SEALED |
|---|---|

| DEFENDANTS CALLS: | Arrest #: K08644325 |
|---|---|

CALL # NUMBER DIALED NAME CALLED

| 1   .. | REFUSED | | |
|---|---|---|---|

**SEALED**             **SEALED**

| INVOICES: | | Arrest #: K08644325 |
|---|---|---|

**INVOICE# COMMAND PROPERTY TYPE     VALUE**
P200205   063     **FIREARMS/WEAPONS UNKNOWN**

**SEALED**             **SEALED**

| **ARRESTING OFFICER: POM SALIM RANDALL** | Arrest #: K08644325 |
|---|---|

| Tax Number: 933231     On Duty: YES<br>Other ID (non-NYPD): 933231    In Uniform: NO<br>Shield: 15331     Squad: 1<br>Department: NYPD     Chart: 07<br>Command: 187     Primary Assignment: | Force Used: NO<br>Type:<br>Reason:<br>Officer Injured: NO |
|---|---|

**SEALED**             **SEALED**

| Arresting Officer Name:<br>POM RANDALL, SALIM | Tax #:<br>933231 | Command:<br>187 | Agency:<br>NYPD |
|---|---|---|---|
| Supervisor Approving:<br>SGT BISCARDI DOUGL | Tax #:<br>923660 | Command:<br>187 | Agency:<br>NYPD |
| Report Entered by:<br>SGT BISCARDI, DOUG | Tax #<br>923660 | Command:<br>187 | Agency:<br>NYPD |

# END OF ARREST REPORT
## K08644325

A1340

<u>PLAINTIFF'S EXHIBIT 11-IN EVIDENCE</u>
Stop, Search and Frisk Report
(pp. A1340-A1342)

REPRODUCED FOLLOWING

A1341

STOP, QUESTION AND FRISK (COMPLETE ALL CAPTIONS)
REPORT WORKSHEET
PD344-151A (Rev. 11-02)

Pct. Serial No.

| Type Of Stop | Period Of Observation | Cross Street(s) Of Stop | Radio Run/Sprint # |
| --- | --- | --- | --- |
| | Prior To Stop | | |

Address/Intersection Or Cross Street | Type Of Location

☐ Inside ☐ Transit ☐ Housing — Describe:
☐ Outside

Specify Which: Felony/P.L. Misdemeanor Suspected | Duration Of Stop

What Were Circumstances Which Led To Stop?
(MUST CHECK AT LEAST ONE BOX)

☐ Carrying Objects In Plain View            ☐ Actions Indicative Of Engaging
   Used In Commission Of Crime                 In Drug Transaction
   e.g. Slim Jim/Pry Bar, etc.              ☐ Furtive Movements
☐ Fits Description                          ☐ Actions Indicative Of Engaging
☐ Actions Indicative Of "Casing"              In Violent Crime
   Victim Or Location                       ☐ Wearing Clothes/Disguises
☐ Actions Indicative of Acting As A            Commonly Used In
   Lookout                                     Commission Of Crime.
☐ Suspicious Bulge/Object (Describe)
☐ Other Reasonable Suspicion Of Criminal Activity (Specify)

Name Of Person Stopped | Nickname/ | Date Of Birth
                         Street Name

Address | Apt. No. | Tel. No.

Identification: ☐ Verbal ☐ Photo I.D. ☐ Refused
☐ Other (Specify)

Sex: ☐ Male ☐ White ☐ Black ☐ White Hispanic ☐ Black Hispanic
☐ Female ☐ Asian/Pacific Islander ☐ American Indian/Alaskan Native

| Age | Height | Weight | Hair | Eyes | Build |
| --- | --- | --- | --- | --- | --- |
| | | | | | |

Other (Scars, Tattoos, Etc.)

Did Officer Explain If No, Explain:
Reason For Stop
☐ Yes ☐ No

Were Other Persons Stopped? ☐ Yes | If Yes, List Pct. Serial Nos.
Questioned/Frisked?          ☐ No

If Physical Force Was Used, Indicate Type:
☐ Hands On Suspect        ☐ Drawing Firearm
☐ Suspect On Ground       ☐ Baton
☐ Pointing Firearm At Suspect ☐ Pepper Spray
☐ Handcuffing Suspect     ☐ Other (Describe)
☐ Suspect Against Wall/Car

Was Suspect Arrested? ☐ Yes ☐ No | Offense
Was Summons Issued?   ☐ Yes ☐ No | Offense | Summons No.

Officer In Uniform? ☐ Yes ☐ No | If No, How Identified? ☐ Shield ☐ I.D. Card

NYC 82


PLAINTIFF'S
EXHIBIT NO. ___
FOR IDENTIFICATION
DATE: ___ RPTR. ___
PENGAD 800-631-6989

PLAINTIFF'S
EXHIBIT
11
Bumberg No. 5199



**Was Person Frisked?** ☐ Yes ☐ No   IF YES, MUST CHECK AT LEAST ONE BOX
☐ Inappropriate Attire - Possibly Concealing Weapon   ☒ Furtive Movements   ☐ Refusal To Comply With Officer's Direction(s)
☐ Verbal Threats Of Violence By Suspect   ☐ Actions Indicative Of   Leading To Reasonable Fear For Safety
   Engaging In Violent   ☐ Violent Crime Suspected
   Violent Behavior/Use Of Force/Use Of Weapon   Crimes   ☐ Suspicious Bulge/Object (Describe)
☒ Other Reasonable Suspicion of Weapon (Specify) _observed def_   _thru frisk_

**Was Person Searched?** ☒ Yes ☐ No   IF YES, MUST CHECK AT LEAST ONE BOX ☐ Hard Object ☐ Admission Of Weapons Possession
☐ Outline Of Weapon   ☐ Other Reasonable Suspicion of Weapons (Specify)

**Was Weapon Found?** ☒ Yes   ☐ No.   If Yes, Describe ☒ Pistol/Revolver ☐ Rifle/Shotgun ☐ Assault Weapon ☐ Knife/Cutting Instrument
☐ Machine Gun ☐ Other (Describe)

**Was Other Contraband Found?** ☐ Yes ☒ No If Yes, Describe Contraband And Location _____
Demeanor Of Person After Being Stopped _____
Remarks Made By Person Stopped _____

**Additional Circumstances/Factors:   (Check All That Apply)**
☐ Report From Victim/Witness
☒ Area Has High Incidence Of Reported Offense Of Type Under Investigation
☒ Time Of Day, Day Of Week, Season Corresponding To Reports Of
   Criminal Activity
☐ Suspect Is Associating With Persons Known For Their Criminal Activity
☐ Proximity To Crime Location
☐ Other (Describe)
☐ Evasive, False Or Inconsistent Response To Officer's Questions
☒ Changing Direction At Sight Of Officer/Flight
☐ Ongoing Investigations, e.g., Robbery Pattern
☐ Sights And Sounds Of Criminal Activity, e.g., Bloodstains, Ringing
   Alarms

Pct. Serial No. _____  Additional Reports Prepared: Complaint Rpt. No. _____  Juvenile Rpt. No. _____  Aided Rpt. No _____  Other Rpt. (Specify) _____

REPORTED BY: Rank, Name (Last, First, M.I.)   REVIEWED BY: Rank, Name (Last, First, M.I.)
Print _P.O._ _Burbridge, Mike_   Tax# _936261_   Print _Sgt_ _Risccco_   **NYC-832** _560_
Signature _____   Command _187_   Signature _____   Command _187_

A1343

<u>PLAINTIFF'S EXHIBIT 16-IN EVIDENCE</u>
Complaint Report
(pp. A1343-A1345)

REPRODUCED FOLLOWING

Case 1:10-cv-03744-JBW-VVP   Document 24-1   Filed 09/09/11   Page 35 of 58 PageID #: 169
Complaint# 2008-083-03562                                                      Page: 1 of 2



# New York City Police Department
## Omniform System - Complaints



RECORD CONTAINS SEALED INFORMATION.
THIS RECORD MAY NOT BE MADE AVAILABLE TO ANY PERSON
OR PUBLIC OR PRIVATE AGENCY OUTSIDE THE POLICE DEPARTMENT.

| Report Cmd: 083 | Jurisdiction: N.Y. POLICE DEPT | Record Status: Initial Arrests made | Complaint #: 2008-083-03562 |
|---|---|---|---|

**Occurrence Location:** NORTH EAST CORNER PARK STREET & BROADWAY
Name Of Premise:
Premises Type: STREET
Location Within Premise: PUBLIC SIDEWALK
Visible By Patrol?: YES

Precinct: 083  Sector: F  Beat:  Post:

**Occurrence From:** 2008-05-15 00:42 THURSDAY
Occurrence thru: 2008-05-15   00:45
Reported: 2008-05-15   01:28
Complaint Received: PICK-UP

Aided #  Accident #  O.C.C.B. #

SEALED                                          SEALED

**Classification:** CRIM POSS WEAPON
Attempted/Completed: COMPLETED
Most Serious Offense is: FELONY
PD Code: 792  WEAPONS POSSESSION 1 & 2
PL Section: 26503
Keycode: 118  DANGEROUS WEAPONS

**Case Status:** CLOSED
Unit Referred To:
Clearance Code: UNIFORM ARREST
Log/Case #: 0
File #:
Prints Requested? NO

Was The Victim's Personal Information Taken Or Possessed? NO | Was The Victim's Personal Information Used To Commit A Crime? NO

Gang Related? NO | Gang Intel Log # | Name Of Gang: | Child Abuse Suspected? NO

DIR Required? NO | Child In Common? | Intimate Relationship?

SEALED                                          SEALED

**If Burglary:**
Forced Entry?
Structure:
Entry Method:
Entry Location:

**Alarm:**
Bypassed?
Comp Responded?
Company Name/Phone:
Crime Prevention Survey Requested?

**If Arson:**
Structure:
Occupied?:
Damage by:

Supervisor On Scene - Rank / Name / Command : | Canvass Conducted: NO | Interpretor(if used):

NARRATIVE:
AT T/P/O ABOVE DEFT. WAS FOUND TO BE IN POSSESSION OF A LOADED FIREARM

SEALED                                          SEALED

VICTIMS, REPORTERS, WITNESSES, SUSPECTS: | Complaint # 2008-083-03562

PLAINTIFF'S EXHIBIT 16

|  | Name | Sex | Race | Age |
|---|---|---|---|---|
| VICTIM , | PSNY | | | |

| SEALED | | SEALED |
|---|---|---|

**ARRESTS:**  Complaint # 2008-083-03562

| Arrest ID | Status | Defendant Name | Sex | Race | AGE | Arrest Date |
|---|---|---|---|---|---|---|
| K08644325 | SEALED | MARSHALL, JOSHUA | MALE | HISPANIC WHITE | 27 | 05/15/2008 |

| SEALED | | SEALED |
|---|---|---|

| | Tax #: | Command: | Rep.Agency: |
|---|---|---|---|
| Reporting/Investigating M.O.S. Name:<br>POM RANDALL SALIM | 933231 | PBBN AC | NYPD |
| Supervisor Approving Name:<br>SGT BISCARDI DOUGLA | 923560 | PBBN AC | NYPD |
| Complaint Report Entered By:<br>SGT BISCARDI | 923560 | PBBN AC | NYPD |
| Signoff Supervisor Name:<br>SGT VULTAGGIO | 899966 | 083 PCT | NYPD |

| SEALED | | SEALED |
|---|---|---|



# END OF COMPLAINT REPORT
# # 2008-083-03562



Print this Report

A1346

<u>PLAINTIFF'S EXHIBIT 17-IN EVIDENCE</u>
Statement of Charges
(pp. A1346-A1347)

REPRODUCED FOLLOWING

Case 1:10-cv-02714-JBW-VVP   Document 24-1   Filed 09/09/11   Page 49 of 58 PageID #: 183

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR COUNTY OF KINGS

THE PEOPLE OF THE STATE OF NEW YORK

STATE OF NEW YORK
COUNTY OF KINGS

v.

JOSHUA J MARSHALL

PARALEGAL IMANI WOODS OF THE KINGS COUNTY DISTRICT ATTORNEY'S OFFICE SAYS THAT
ON OR ABOUT MAY 15,2008 AT APPROXIMATELY 12:42 AM AT C/O PARK STREET & BROADWAY
COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

PL 165.45(4)      CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE
                  FOURTH DEGREE
PL 265.01(1)      CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH
                  DEGREE
PL 265.03(3)      CRIMINAL POSSESSION OF A WEAPON IN THE SECOND
                  DEGREE (DOO)

IN THAT THE DEFENDANT DID:

KNOWINGLY POSSESS STOLEN PROPERTY CONSISTING OF ONE OR MORE FIREARMS, RIFLES AND
SHOTGUNS, AS SUCH TERMS ARE DEFINED IN PENAL LAW SECTION 265.00, WITH THE INTENT
TO BENEFIT HIMSELF OR A PERSON OTHER THAN AN OWNER THEREOF OR TO IMPEDE THE
RECOVERY BY AN OWNER THEREOF; POSSESS ANY FIREARM, ELECTRONIC DART GUN,
ELECTRONIC STUN GUN, GRAVITY KNIFE, SWITCHBLADE KNIFE, PILUM BALLISTIC KNIFE,
METAL KNUCKLE KNIFE, CANE SWORD, BILLY, BLACKJACK, BLUDGEON, METAL KNUCKLES,
CHUKA STICK, SAND BAG, SANDCLUB, WRIST-BRACE TYPE SLINGSHOT OR SLUNGSHOT,
SHIRKEN OR KUNG FU STAR; POSSESS ANY LOADED FIREARM AND THAT SUCH POSSESSION
DID NOT TAKE PLACE IN DEFENDANT'S HOME OR PLACE OF BUSINESS..

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE
AS FOLLOWS:

THE DEPONENT IS INFORMED BY POLICE OFFICER SALIM RANDALL, SHIELD NO.15331, OF
THE BROOKLYN NORTH ANTI CRIME UNIT THAT, AT THE ABOVE TIME AND PLACE, THE
INFORMANT OBSERVED THE DEFENDANT IN POSSESSION OF A LOADED 38 CALIBER SMITH AND
WESSON REVOLVER SERIAL NUMBER CDK7317.

THE DEPONENT IS INFORMED BY POLICE OFFICER MICHAEL SURBRIDGE SHIELD NO.15408, OF
THE BROOKLYN NORTH ANTI CRIME UNIT THAT THE INFORMANT RECOVERED SAID 38 CALIBER
SMITH AND WESSON REVOLVER FROM THE GROUND WHERE THE INFORMANT OBSERVED THE
DEFENDANT THROW IT.

THE DEPONENT IS INFORMED BY LIEUTENANT BOZEN OF THE BROOKLYN NORTH ANTI CRIME
UNIT THAT THE ABOVE MENTIONED FIREARM IS STOLEN IN THAT SAID WEAPON WAS REPORTED
STOLEN BY DEBBIE HEIM IN SEMINOLE COUNTY, FLORIDA.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
TO SECTION 210.45 OF THE PENAL LAW

DATE                    SIGNATURE

5/15/2008 9:17:55 PM

**NYC 18**



PLAINTIFF'S
EXHIBIT
17

Case: 12-2479 Document: 40-2 Page: 28 09/27/2012 731928 165

A1348

<u>PLAINTIFF'S EXHIBIT 18-IN EVIDENCE</u>
Certificate of Disposition Dismissal
(pp. A1348-A1349)

REPRODUCED FOLLOWING

## A1349

SUPREME COURT OF THE STATE OF NEW YORK       FEE:$10.00
KINGS COUNTY
320 JAY STREET
BROOKLYN, NY 11201

CERTIFICATE OF DISPOSITION DISMISSAL

DATE: 04/28/2010                 CERTIFICATE OF DISPOSITION NUMBER: 25013

PEOPLE OF THE STATE OF NEW YORK       CASE NUMBER:          04931-2008
              VS.                     LOWER COURT NUMBER(S): 2008KN036548
                                      DATE OF ARREST:       05/15/2008
                                      ARREST #:             K08644325
                                      DATE OF BIRTH:        07/06/1980
MARSHALL,JOSHUA J                     DATE FILED:           06/10/2008

--------------------------------------
        DEFENDANT

I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS
ON FILE IN THIS OFFICE THAT ON 05/27/2009 THE ABOVE ACTION WAS
DISMISSED AND ALL PENDING CRIMINAL CHARGES RELATED TO
THIS ACTION WERE ALSO DISMISSED BY THE HONORABLE  GARY,M     THEN
A JUDGE OF THIS COURT.

THE DEFENDANT WAS DISCHARGED FROM THE JURISDICTION OF THE COURT.

THE ABOVE MENTIONED DISMISSAL IS A TERMINATION OF THE CRIMINAL
ACTION IN FAVOR OF THE ACCUSED AND PURSUANT TO SECTION 160.60 OF
THE CRIMINAL PROCEDURE LAW "THE ARREST AND PROSECUTION SHALL BE
DEEMED A NULLITY AND THE ACCUSED SHALL BE RESTORED, IN
CONTEMPLATION OF LAW, TO THE STATUS OCCUPIED BEFORE THE ARREST
AND PROSECUTION".

PURSUANT TO SECTION 160.50(1C) OF THE CRIMINAL PROCEDURE LAW, ALL
OFFICIAL RECORDS AND PAPERS RELATING TO THIS CASE ARE SEALED.

IN WITNESS WHEREOF,I HAVE HEREUNTO SET MY HAND AND AFFIXED MY
OFFICIAL SEAL ON THIS DATE 04/28/2010.

                            *Nancy T. Sunshine*

                            --------------------------------
                            COURT CLERK

                            NANCY T. SUNSHINE
                            Kings County Clerk

PLAINTIFF'S
EXHIBIT
18

A1350

DEFENDANTS' EXHIBIT E
Photograph
(pp. A1350-A1351)

REPRODUCED FOLLOWING



A1352

<u>DEFENDANTS' EXHIBIT G</u>
Photograph
(pp. A1352-A1353)

REPRODUCED FOLLOWING



A1354

<u>COURT'S EXHIBIT 1</u>
Criminalist's Report (Entered April 24, 2012)
(pp. A1354-A1356)

REPRODUCED FOLLOWING

# A 1355



COURT'S
EXHIBIT NO. ___1___
IDENTIFICATION/EVIDENCE
DKT.# 10 CL 2714
DATE: 4/24/12



**Office of Chief Medical Examiner**

421 East 26th Street, New York, NY 10016
Telephone: 212.323.1903     Fax: 212.323.1920

My name is Nana Lamousé-Smith.

I am employed as a Criminalist IV at the Office of Chief Medical Examiner, Department of Forensic Biology.

I have been employed at the Office of Chief Medical Examiner since September 2004.

Prior to joining the Office of Chief Medical Examiner, I was employed for 2½ years as a forensic DNA examiner at BRT Laboratories, a private forensic laboratory in Baltimore, Maryland.

Prior to BRT, I was employed for 1½ years as a forensic DNA analyst at The Bode Technology Group, a private forensic laboratory in Springfield, Virginia.

I have a Bachelor of Arts (major: Biology) from Vassar College, and a Masters of Science (Forensic Science) from the University of Illinois at Chicago.

Over the course of my career as a forensic DNA analyst, I have personally performed thousands of DNA tests, analyses and review.

Over the course of my career, I have personally supervised thousands of DNA tests, analyses and review.

I have been qualified as an expert witness in Forensic Biology and DNA analysis in all five boroughs in New York City, as well as Federal Court, Southern District of New York, and Baltimore City Criminal Court.

To the best of my knowledge, I have testified approximately 50 times in Grand Jury and trial.   I have testified as to the results of DNA analysis on homicides, sexual assaults, property crimes and weapons cases.    At the Office of Chief Medical Examiner, testifying in court as to the results of DNA testing and analysis are a core job requirement.  My testimony in grand jury and trial is a function of the work I perform and supervise.    Accordingly, I have never been paid for such testimony.  I have also never testified at a civil or criminal deposition.

I do not have an existing list of all cases on which I have testified in the Grand Jury and trial – nor am I able to create such a list, going back to 2002, from memory.   The Office of Chief Medical Examiner does not require any employee within the Department of Forensic Biology to keep such a list.

The Office of Chief Medical Examiner is an independent subdivision of the New York City Department of Health and Mental Hygiene.    The Agency's Department of Forensic Biology is the City's public forensic DNA laboratory.

1

# A 1356

∠

At the Office of Chief Medical Examiner, I am a Supervisor in the group within the Department of Forensic Biology which performs evidence examination and DNA testing on all Criminal Possession of Weapons cases.

The Office of Chief Medical Examiner began testing swabs collected from firearms in the beginning of 2008.

On May 23, 2008, the Department of Forensic Biology received New York City Police Department voucher P200208, in association with NYPD complaint no. 2008-083-03562, which contained the following four items (each collected from "Smith & Wesson .38 cal firearm serial #CDK7342"): swab of backstrap and grips, swab of trigger, swab of cylinder release and swab of ejector rod.

DNA extraction was performed on these four items (again, swab of backstrap and grips, swab of trigger, swab of cylinder release and swab of ejector rod). An insufficient amount of DNA was detected. Therefore, no further DNA testing could be done.

These results and the supporting data are contained in the associated Forensic Biology case file FB08-03040.

I have reviewed Forensic Biology case file FB08-03040 in preparation for my testimony.

The amount of DNA detected within the Forensic Biology laboratory is entirely dependent on the amount of biological material (e.g., blood, semen, saliva, skin cells) deposited on the item. So for example, with a firearm the ability to detect a sufficient amount of DNA is dependent on how long the item was handled (i.e., seconds or minutes or repeatedly) and the manner in which it was handled (i.e., if the item was handled with bare hands or gloves).

In my experience at the Office of Chief Medical Examiner, swabs of firearms submitted for DNA analysis often yield an insufficient amount of DNA and therefore no further DNA testing can be done.

There may be many factors which can contribute to DNA not being detected on an item of evidence. Based on my experience and training, these factors include extreme heat or extreme cold, evidence being exposed to a wet or damp environment, how the item was handled, and if the item was handled at all.

In my opinion, there are innumerable hypotheses which can contribute to the finding of insufficient DNA. If I am asked, I can hypothesize, based upon my experience and training, as to why the results in this case generated an insufficient amount of DNA.

Nana Lamousé-Smith
Criminalist IV

2

A1357

COURT'S EXHIBIT 1
Defendants' Brief (Entered April 25, 2012)
(pp. A1357-A1381)

REPRODUCED FOLLOWING

# A 1358

Case 1:10-cv-02714-JBW-VVP   Document 69   Filed 04/25/12   Page 1 of 11 PageID #: 1044

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

JOSHUA MARSHALL,

                                        Plaintiff,

                        -against-

P.O. SALIM RANDALL, Shield No. 15331,            10 Civ. 2714 (JBW)(VVP)
Individually and in His Official Capacity, P.O.
MICHAEL BURBRIDGE, Shield No. 15488,
Individually and in His Official Capacity,

                                        Defendants.
----------------------------------------------------------------x

## DEFENDANTS' BRIEF IN SUPPORT
## OF MULTIPLE TRIAL MOTIONS

FELICIA GROSS
JOHANA CASTRO
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 788-0303
fgross@law.nyc.gov
jcastro@law.nyc.gov

Attorneys for Defendants



## A 1359

### PRELIMINARY STATEMENT

Trial commenced in this matter on April 23, 2012 before the Honorable Jack B. Weinstein, United States District Judge. Defendants have made several motions during the course of trial, which the Court has either denied or reserved ruling on pending briefing by defendants.

Defendants respectfully submit this memorandum of law in support of their several motions seeking the following relief: (1) defendants should be permitted to cross-examine plaintiff as to his criminal history now that plaintiff has opened the door to such testimony; (2) plaintiff has improperly made an issue of the legal validity of the officers' initial approach in contravention of the court's prior order; defendants request a curative instruction, and, in the alternative, a mistrial; (3) defendants should be permitted to cross-examine plaintiff as to his emotional and psychological injuries stemming from his incarceration; (4) defendants should be permitted to mention in closing that the criminal case against plaintiff was dismissed on speedy trial grounds; (5) defendants request a curative instruction as to the import of the grand jury's indictment; (6) defendants request a jury instruction that the grand jury indictment creates a presumption of probable cause; and (7) defendants move to dismiss the malicious prosecution and fair trial claims in light of the U.S. Supreme Court's recent decision in *Rehberg*.

### POINT I

#### PLAINTIFF HAS OPENED THE DOOR TO HIS CRIMINAL HISTORY; DEFENDANTS SHOULD BE PERMITTED TO CROSS-EXAMINE HIM AS TO THAT HISTORY.

Defendants previously moved *in limine* to be permitted to cross examine plaintiff as to his extensive criminal history, which includes two prior felony convictions. Those felonies are

# A 1360

Case 1:10-cv-02714-JBW-VVP   Document 69   Filed 04/25/12   Page 4 of 11 PageID #: 1047

determine damages; it would be based on pure speculation. At the very least, they will have the false impression that he has never spent time in jail.

## POINT II

**PLAINTIFF HAS IMPROPERLY RAISED THE ISSUE OF DEFENDANTS' INITIAL DECISION TO APPROACH PLAINTIFF; BY SO DOING, HE HAS OPENED THE DOOR TO BURBRIDGE'S TESTIMONY REGARDING HIS RECOGNITION OF PLAINTIFF; AT THE VERY LEAST, DEFENDANTS REQUEST A CURATIVE INSTRUCTION; DEFENDANTS REQUEST A MISTRIAL IF THE COURT DECLINES TO GIVE THE JURY A CURATIVE INSTRUCTION AS WELL AS A RULING THAT PLAINTIFF IS PRECLUDED FROM IMPUGNING THE LEGAL VALIDITY OF THE INITIAL APPROACH IN CLOSING.**

Defendants previously moved *in limine* to be permitted to elicit testimony from Officer Burbridge that one factor in his decision to approach plaintiff on May 15, 2008 was that he recognized plaintiff from a police database. The Court denied that motion for two reasons: (1) it noted that the "initial stop" (or initial approach) was not at issue in this case; and (2) the admission of such testimony would constitute reversible error under the Second Circuit's recent decision in *United States v. Scott*, No. 10-3972-cr (2d Cir. Apr. 6, 2012).

First, the legal validity of the initial approach is simply not at issue in this case. The Court so ruled on April 16, 2012. Since the court's initial ruling, plaintiff's counsel has argued *repeatedly* that defendants acted improperly in their initial approach of plaintiff. (Trial Transcript Unavailable, 4/24). For example, Officer Burbridge was repeatedly questioned as to the reasons for his initial approach:

> Q:   Prior to the time that you decided to stop Mr. Marshall, had you observed suspicious movements?
> A:   Yes.

- 4 -

Q:      Referring to your deposition on Page 66, Line 23,
"QUESTION: Did you observe any furtive movements by Joshua
Marshall before you decided to stop him?
"ANSWER: No."

MS. CASTRO: Objection. I also note there's an
objection at the deposition to that question also.
THE COURT: Overruled.

BY MR. NORINSBERG
Q:      Do you recall being asked that question and giving that
        answer?
A:      Yes.
Q:      You remember that?
A:      Yes.
Q:      So according to your deposition testimony, you did not
        observe any suspicious movements by Mr. Marshall before you
        decided to stop him; true or not true?

MS. CASTRO: Objection.
THE COURT: Overruled.
MS. CASTRO: Your Honor, this pertains to your
Honor's in limine rulings.
THE COURT: The reference is to the night from the
time of first observation to the time of arrest; is that
correct?
MR. NORINSBERG: Yes.
MS. CASTRO: Your Honor, may we be heard at sidebar?
THE COURT: You may not.
MS. CASTRO: Your Honor, I just note my objection
that counsel's question --
THE COURT: Your objection is always noted. We have
a full-time reporter. Proceed with the questioning.

Ex. C, Trial Transcript, Testimony of Michael Burbridge, April 24, 2012 at 124, ll. 6-25; at 125,
ll. 1-14.

    As a result of plaintiff's improperly making an issue of the initial approach,

defendants request that the Court give the jury the following curative instruction: "Ladies and

Gentlemen, there is no issue in this case as to whether the officers were permitted to approach

and question plaintiff as he walked down the street on May 15, 2008.  The only issue you have to

decide is whether they had a lawful basis to arrest him for possession of a weapon."

# A 1362

Next, defendants renew their request that Officer Burbridge be permitted to testify that one factor in his decision to approach plaintiff was the fact that he recognized plaintiff from a police database. By its ruling, the Court is preventing him from testifying truthfully. Moreover, plaintiff has opened the door to this line of testimony by repeatedly questioning Officer Burbridge as to the reasons for his initial approach. Finally, the Second Circuit's ruling in *Scott* is simply not analogous here. In the *Scott* case, the Second Circuit ruled in the context of a criminal case that testimony by an officer regarding recognition from a prior encounter was too prejudicial. That case is distinguishable on two grounds: (1) it was a criminal case where the liberty of defendant was at stake, and thus the probative/prejudicial balancing test is different; and (2) the initial approach and/or stop was, in fact, at issue in that case. It is not here. This is a civil action for monetary damages. Defendants submit that the Court is allowing plaintiff to use its *in limine* ruling as both a sword and a shield.

Finally, defendants should be precluded from impugning or otherwise questioning the legal validity of the initial approach during their closing. The Court ruled that it is not at  issue in the case, and plaintiff's have completely failed to abide by that ruling.

## POINT III

### DEFENDANTS SHOULD BE PERMITTED TO CROSS EXAMINE PLAINTIFF AS TO HIS CLAIM OF EMOTIONAL DAMAGES STEMMING FROM HIS INCARCERATION.

During plaintiff's direct examination, he testified that his stay on Rikers Island was unpleasant, depressing, and that he encountered unsavory individuals, at least one of whom had tuberculosis. He testified as follows:

> Q:   Can you just describe a little bit for the jury what the
>       conditions were like when you were in jail.
> A:   I mean, you're surrounded about everything. You know,
>       you have people with tuberculosis. You got people who just

# A 1363

don't shower.

Ex. A, Trial Transcript, Testimony of Joshua Marshall, April 24, 2012 at 27, ll. 9-18.

However, plaintiff has abandoned his claim for emotional damages in this case. Specifically, during his deposition, plaintiff gave the following testimony:

> Q: Are you seeking to recover for any emotional or psychological injuries?
> A: *No, no.*

Ex. B, Marshall Deposition at 173, ll. 9-11 (emphasis added).

Defendants attempted to cross-examine plaintiff regarding his abandonment of that claim, but the objection to such cross-examination was sustained. Defendants request that they be allowed to cross-examine plaintiff as to his abandonment of the emotional damages claim. Allowing plaintiff to testify as to emotional damages, while precluding defendants from cross-examining as to his abandonment of that claim is highly prejudicial. Moreover, plaintiff's testimony about the conditions on Rikers Island creates the impression that he has never been there before, which is clearly not the case given his numerous other arrests and incarcerations. Thus, it goes to his credibility.

## POINT IV

### DEFENDANTS SHOULD BE PERMITTED TO MENTION IN CLOSING THE FACT THAT PLAINTIFF'S CASE WAS DISMISSED ON SPEEDY TRIAL GROUNDS.

Defendants should be permitted to mention in closing that plaintiff's criminal case was dismissed on speedy trial grounds. Defendants do not dispute that dismissal on speedy trial grounds is a "favorable determination" for purposes of a malicious prosecution claim. That is not at issue. However, defendants should be able to inform the jury of the reason for the dismissal – the simple fact that it was dismissed on speedy trial grounds. This is one of the facts of this case

# A 1364

and the jury should be allowed to know the basis for the dismissal. Defendants do not intend to characterize a speedy trial dismissal as a "technicality." They simply intend to inform the jury that the case was dismissed. It did not go to trial. It was not "thrown out" by a judge. The factual statement – that the case was dismissed on speedy trial grounds – is not prejudicial to the plaintiff. However, the bald statement that the case was "dismissed," without more, is prejudicial to the defendants.

The case cited by plaintiff in support of his contention that the jury should not be so informed, *Cantalino v. Danner*, 754 N.E.2d 164, 168 (N.Y. 2001), simply does not speak to the issue. It merely holds that for purposes of malicious prosecution, a speedy trial dismissal is considered a "favorable determination." This is not in dispute. Nor does the case preclude defendants from informing the jury of the factual reason for the dismissal of the case.

## POINT V

### DEFENDANTS REQUEST A CURATIVE INSTRUCTION REGARDING THE IMPORT OF THE GRAND JURY INDICTMENT.

During plaintiff's cross-examination, the Court instructed the jury that "Just because the grand jury indicted does not mean that the plaintiff was guilty." The obverse is also true. Defendants request an instruction that "Just because the case was dismissed does not mean that the plaintiff didn't have the gun." As it stands, the Court's instruction is not even-handed. In its partial form, it is incorrect and highly prejudicial to the defendants.

## POINT VI

### DEFENDANTS REQUEST A JURY INSTRUCTION THAT THE GRAND JURY'S INDICTMENT CREATES A PRESUMPTION OF PROBABLE CAUSE.

# A 1365

Case 1:10-cv-02714-JBW-VVP   Document 69   Filed 04/25/12   Page 9 of 11 PageID #: 1052

Defendants renew their request for a jury instruction that the grand jury's indictment creates a presumption of probable cause. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (indictment by a grand jury creates a presumption of probable cause). To overcome that presumption plaintiff must produce evidence "that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Alvarado v. City of New York*, 2011 U.S. App. LEXIS 25110 (2d Cir. N.Y. Dec. 19, 2011).

The Court previously rejected defendants' request because the Court reasoned, plaintiff's theory of the case is that the indictment was procured by fraud. Defendants agree that is plaintiff's theory of the case. But that doesn't change the law as to presumptions. The presumption has two parts: a presumption, and criteria by which the presumption may be rebutted. Here, the Court has, in effect, skipped to the second step.

Defendants submit that the failure to give the requested instruction is reversible error. *See Rothstein v. Carriere*, 373 F.3d 275, 285 (2d Cir. 2004) ("[i]n sum, the district court's erroneous disregard of the presumption that probable cause supported the prosecution of [plaintiff] requires a reversal of the judgment in his favor.")

## POINT VI

### DEFENDANTS MOVE TO DISMISS BOTH THE MALICIOUS PROSECUTION CLAIM AND THE FAIR TRIAL CLAIM IN LIGHT OF THE U.S. SUPREME COURT'S DECISION IN *REHBERG*.



Defendants move to dismiss plaintiff's malicious prosecution and fair trial claims in light of the Supreme Court's recent decision in *Rehberg v. Paulk*, 2012 U.S. LEXIS 2711 (Apr. 2, 2012), barring any §1983 action wherein plaintiff's civil rights claims are premised on allegations stemming from grand jury testimony. In that case, the Supreme Court held that jury witnesses are entitled to absolute immunity from "*any* § 1983 claim based on the witness'

- 9 -

# A 1366

testimony." *Rehberg v. Paulk*, 2012 U.S. LEXIS 2711 at *23-24 (emphasis added). The Supreme Court went on to underscore the importance of this holding cautioning that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* at *24. The reasoning behind granting absolute immunity for grand jury witnesses is the same logic previously used to grant absolute immunity for trial witnesses. *Id.* at *20-21. The main concern is that the grand jury may be deprived of critical evidence and the truth-seeking function of the tribunal weakened, as a result of a witness' fear of retaliatory litigation. *Id.* Additionally, the potential of civil liability is not necessary to prevent false testimony, as there are other sanctions in place, such as prosecution for perjury, which provides a sufficient deterrent. *Id.* at *21.

In addition to granting a witness absolute immunity for grand jury testimony, importantly, *Rehberg* also states that a law enforcement officer does not initiate a prosecution, a necessary factor of the malicious prosecution standard, by testifying before a grand jury. *Rehberg*, 2012 U.S. LEXIS 2711 at *27 - *28. The Supreme Court stated "[b]y testifying before a grand jury, a law enforcement officer does not perform the function of applying for an arrest warrant; nor does such an officer make the critical decision to initiate a prosecution ... such a witness, unlike a complaining witness at common law, does not make the decision to press criminal charges." *Id.* at *27. Indeed, the Court recognized the inherent unfairness in allowing a testifying officer to be civilly liable for a malicious prosecution action, yet insulate a prosecutor who in fact initiates and actively prosecutes a matter. *Id.* at *28 ("it is almost always a prosecutor who is responsible for the decision to present a case to a grand jury ... [i]t would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by

- 10 -

absolute immunity, who is actually responsible for the decision to prosecute."). The Court went on to hold that this rule cannot be circumvented by claiming that a grand jury witness conspired to present false testimony. *Id.* at *24.

Accordingly, any purported claims against the defendant officers must be dismissed because they did not initiate the underlying prosecution.

Moreover, in light of *Rehberg*, to the extent plaintiff's denial of fair trial claim is based upon the alleged false testimony of the defendant officers before the grand jury, any such claim must now be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants Police Officers Salim Randall and Michael Burbridge respectfully request that the Court grant their motions in their entirety and for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            April 25, 2012

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendants Police Officers Salim
Randall and Michael Burbridge
100 Church Street
New York, New York 10007
(212) 788-0303

By:      _____/s/_____

Felicia Gross
Assistant Corporation Counsel
Special Federal Litigation Division

By:      _____/s/_____

Johana V. Castro
Senior Counsel
Special Federal Litigation Division

A 1368

# EXHIBIT A

# A 1369

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 2 of 14 PageID #: 1056

```
                                                              1

 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2    ------------------------x
      JOSHUA MARSHALL,
 3            Plaintiff,

 4        versus          10-CV-02714

 5    THE CITY OF NEW YORK,
              Defendant.       United States Courthouse
 6                            Brooklyn, New York
      ------------------------x
 7
                                    April 23, 2012
 8                                  9:30 A.M.

 9              EXCERPT OF TRANSCRIPT OF TRIAL
                TESTIMONY OF JOSHUA MARSHALL
10           Before:  HON. JACK B. WEINSTEIN,
                 UNITED STATES DISTRICT JUDGE
11
                      A P P E A R A N C E S :
12    FOR THE PLAINTIFF:

13
                              COHEN & FITCH, LLP
14                            Attorneys for the Plaintiff
                              Woolworth Building
15                            233 Broadway - Suite 1800
                              New York, New York 10279
16

17                            BY: GERALD M. COHEN, ESQ.
                                  JON NORINSBERG, ESQ.
18

19

20    For the Defendants:

21                            NEW YORK CITY LAW DEPARTMENT
                              Attorney for the Defendant
22                            100 Church Street
                              New York, New York 10007
23
                              BY: FELICIA GROSS, ESQ.
24              JOHANA CASTRO, ESQ.
                                  FRANCES SANDS, ESQ.
25
```

JUDI JOHNSON, RPR, CRR, CLR
Official Court Reporter

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 3 of 14 PageID #: 1057

```
                                                      24
               DIRECT - J. MARSHALL

1    would be a situation where I would be able to present my case

2    to -- among peers.  And it was an opportunity, and I should go

3    for it.

4    Q    Now, was your attorney present when you testified in the

5    grand jury?

6    A    Yes.

7    Q    And was your attorney allowed to ask you any questions

8    while this case was presented to the grand jury?

9              MS. GROSS:  Objection.

10             THE COURT:  Overruled.

11             THE WITNESS:  No.

12   BY MR. COHEN

13   Q    Who was the only person questioning you in the grand

14   jury?

15   A    The district attorney.

16   Q    Now, Mr. Marshall, had you ever testified in a grand jury

17   before this incident?

18   A    No.

19             MS. GROSS:  Objection, your Honor.  Objection.

20             THE COURT:  Overruled.

21   BY MR. COHEN

22   Q    How did that make you feel, Mr. Marshall?

23   A    What, speaking in front of a grand jury?

24   Q    Yeah.

25   A    Well, I've never been in a position like that before, so
```

# A 1371

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 4 of 14 PageID #: 1058

25

**DIRECT - J. MARSHALL**

1    I was very nervous.  Never been bombarded with questions, so I

2    didn't really know how to handle the situation.  I was thrown

3    off by the whole arrest situation, me being incarcerated.  So

4    it was just so much coming at me at one time.  But I still

5    gave it a shot, man.  You know, I was looking for a good

6    outcome.

7    Q    Did you get a good outcome?

8    A    No.

9    Q    What happened, Mr. Marshall?

10   A    I was indicted.

11   Q    What happened after you were indicted?  Where did you go?

12   A    Right back to Rikers Island.

13   Q    At that point, what was your understanding of where your

14   criminal case was going?

15   A    Trial.

16   Q    Why did you know the case was going to trial?

17   A    Because I was not giving a guilty plea.

18   Q    Can you tell the members of the jury why you weren't

19   going to plead guilty in this case.

20   A    Because I was going to plead my innocence to the end.

21   Q    Now, without telling the jury, again, what was said, did

22   you have discussions with your attorney about the risks of

23   taking a case like this to trial?

24   A    Yes.

25   Q    What was your understanding of the risks of fighting a

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 5 of 14 PageID #: 1059

27
**DIRECT - J. MARSHALL**

1    Q    Did there come a time when you were actually finally

2    released from jail with respect to these charges?

3    A    Yes.

4    Q    When were you released from jail?

5    A    The end of September.  I don't know the exact date.

6    Q    So approximately how long were you in jail in connection

7    with these charges?

8    A    Four and a half months.

9    Q    Can you just describe a little bit for the jury what the

10   conditions were like when you were in jail.

11   A    I mean, you're surrounded about everything.  You know,

12   you have people with tuberculosis.  You got people who just

13   don't shower.  You know --

14            MS. GROSS:  Objection, your Honor.

15            THE WITNESS:  -- the eating situation is horrible.

16            THE COURT:  I'll allow it briefly.

17            THE WITNESS:  It was just depressing.  It was very

18   depressing, very overwhelming.  Yeah, very disturbing.

19   BY MR. COHEN

20   Q    Now, after you were released from jail, were you still

21   required to come back to court with respect to these charges?

22   A    Yes.

23   Q    How many times did you have to come back to court?

24   A    Approximately eight times.

25   Q    How long was this case pending after you were released

**A 1373**

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 6 of 14 PageID #: 1060

# EXHIBIT B

## A 1374

**C O P Y**

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------

JOSHUA MARSHALL,

                    Plaintiff,

      -against-

THE CITY OF NEW YORK, Et. Al,

                    Defendants.

---------------------------------------

    EXAMINATION BEFORE TRIAL


Of the Plaintiff, JOSHUA MARSHALL, held

on Tuesday, April 26, 2011, commencing at

10:26 a.m., at Sing Sing Correctional

Facility, 354 Hunter Road, Ossining, New

York, before Amelia Moller, a Shorthand

Reporter and a Notary Public in and for

the State of New York.

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 8 of 14 PageID #: 1062

JOSHUA MARSHALL 10R3164                    173

```
 1  Q.  That was legal aide?
 2  A.  At that moment, yes.
 3  Q.  So basically the money for the bail and
 4      the lost wages, correct?
 5  A.  Yes.
 6  Q.  Are you seeking to recover for any
 7      physical injuries?
 8  A.  No.
 9  Q.  Are you seeking to recover for any
10      emotional or psychological injuries?
11  A.  No, no.
12  Q.  Are you seeking to recover for any damage
13      to your reputation that might have
14      resulted from this arrest?
15  A.  No.
16  Q.  So, it would be for the economic damage
17      and the loss of your liberty the fact
18      that you were incarcerated, correct?
19  A.  Correct.
20  Q.  Okay.  Have you ever been incarcerated on
21      other occasions other than as a result of
22      this incident here and the second
23      incident that happened in May of 2009?
24  A.  Have I ever been incarcerated before
25      other than these two incidents?
```

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 9 of 14 PageID #: 1063

# EXHIBIT C

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 10 of 14 PageID #: 1064

```
                                                                    1

 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
     JOSHUA MARSHALL,
 3        Plaintiff,

 4        versus                    10-CV-02714 (JBW)

 5   THE CITY OF NEW YORK,
          Defendant.        United States Courthouse
 6                          Brooklyn, New York
 7   ------------------------------x

                                    April 23, 2012
 8                                  9:30 A.M.

 9                        TRANSCRIPT OF TRIAL
                   Before: HON. JACK B. WEINSTEIN,
10                     UNITED STATES DISTRICT JUDGE

11
                         A P P E A R A N C E S:
12   FOR THE PLAINTIFF:

13
                              COHEN & FITCH, LLP
14                            Attorneys for the Plaintiff
                              Woolworth Building
15                            233 Broadway - Suite 1800
                              New York, New York 10279
16
17                            BY: GERALD M. COHEN, ESQ.
                                  JON NORINSBERG, ESQ.
18
19
20   For the Defendants:

21                            NEW YORK CITY LAW DEPARTMENT
                              Attorney for the Defendant
22                            100 Church Street
                              New York, New York 10007
23
                              BY: FELICIA GROSS, ESQ.
24                                JOHANA CASTRO, ESQ.
                                  FRANCES SANDS, ESQ.
25
```

Case 1:10-cv-02714-JBW-VVP  Document 70  Filed 04/25/12  Page 11 of 14 PageID #: 1065

123
DIRECT - OFFICER BURBRIDGE

1   right?

2   A    Yes, I did.

3   Q    And then shortly after you saw Mr. Marshall, you made a

4   decision to stop these two; is that correct?

5   A    Yes.

6   Q    And would you agree, Officer Burbridge, that it was only

7   a matter of seconds from the time you first saw Mr. Marshall

8   until the time you stopped him?

9   A    Yes.

10  Q    Now, you're familiar about what's known as furtive

11  movements, right?

12  A    That's correct.

13  Q    Furtive movements would be something of a suspicious

14  movement, right?

15  A    That's correct.

16  Q    Furtive movements would be an evasive movement, right?

17  A    That's correct.

18  Q    Can you please tell the members of this jury, did you

19  observe any furtive movements by Mr. Marshall before you

20  decided to stop him?

21        MS. CASTRO:  Objection.  Your Honor, the stop is not

22  in question.  Further, counsel is diving into questions that

23  are inappropriate.

24        THE COURT:  You may continue.  Overruled.

25        THE WITNESS:  I'm sorry, could you restate that.

Case 1:10-cv-02714-JBW-VVP   Document 70   Filed 04/25/12   Page 12 of 14 PageID #: 1066

```
                                                           124
                  DIRECT - OFFICER BURBRIDGE

 1    BY MR. NORINSBERG

 2    Q    Prior to the time that you saw Mr. Marshall, did you

 3    observe any furtive movements before you decided to stop him?

 4    A    Can you rephrase it.

 5              MR. NORINSBERG:   Strike it.

 6    BY MR. NORINSBERG

 7    Q    Prior to the time that you decided to stop Mr. Marshall,

 8    had you observed suspicious movements?

 9    A    Yes.

10    Q    Referring to your deposition on Page 66, Line 23,

11    "QUESTION:  Did you observe any furtive movements by Joshua

12    Marshall before you decided to stop him?

13              "ANSWER:  No."

14              MS. CASTRO:   Objection.  I also note there's an

15    objection at the deposition to that question also.

16              THE COURT:   Overruled.

17    BY MR. NORINSBERG

18    Q    Do you recall being asked that question and giving that

19    answer?

20    A    Yes.

21    Q    You remember that?

22    A    Yes.

23    Q    So according to your deposition testimony, you did not

24    observe any suspicious movements by Mr. Marshall before you

25    decided to stop him; true or not true?
```

LISA SCHMID, CCR, RMR   UNITED STATES DISTRICT COURT   EASTERN
DISTRICT OF NEW YORK

```
                                                              125
                        DIRECT - OFFICER BURBRIDGE

 1             MS. CASTRO:  Objection.

 2             THE COURT:  Overruled.

 3             MS. CASTRO:  Your Honor, this pertains to your

 4    Honor's in limine rulings.

 5             THE COURT:  The reference is to the night from the

 6    time of first observation to the time of arrest; is that

 7    correct?

 8             MR. NORINSBERG:  Yes.

 9             MS. CASTRO:  Your Honor, may we be heard at sidebar?

10             THE COURT:  You may not.

11             MS. CASTRO:  Your Honor, I just note my objection

12    that counsel's question --

13             THE COURT:  Your objection is always noted.  We have

14    a full-time reporter.  Proceed with the questioning.

15    BY MR. NORINSBERG

16    Q    Now, before you decided to stop Mr. Marshall, you hadn't

17    activated your sirens at that point, correct?

18    A    That's correct.

19    Q    You hadn't activated your flashing lights, correct?

20    A    That's correct.

21    Q    You hadn't yelled out, "Stop, police," or words to that

22    effect; is that right?

23    A    That's correct.

24    Q    You hadn't made any effort to stop these two individuals;

25    is that correct?
```

Case 1:10-cv-02714-JBW-VVP Document 70 Filed 04/25/12 Page 14 of 14 PageID #: 1068

```
                                                        126
                    DIRECT - OFFICER BURBRIDGE

 1   A    That's correct.

 2   Q    Did you see Mr. Marshall's eyes bulging as he was walking

 3   down the street?

 4   A    I don't remember them bulging.

 5   Q    Did you see him suddenly stop in his tracks and look

 6   scared when he saw your police car?

 7   A    Yes.

 8   Q    You saw that, right?

 9   A    Yes, I did.

10   Q    Even though you said in your deposition you didn't

11   observe anything suspicious, right?

12            MS. CASTRO:   Objection.

13   BY MR. NORINSBERG

14   Q    Now, after you saw Mr. Marshall, the police vehicle made

15   a right onto Park Street, isn't that true?

16   A    That's true.

17   Q    So you were here just a few moments before when Officer

18   Randall was giving his testimony, correct?

19   A    That's correct.

20   Q    And you saw Officer Randall explain to the jury where

21   things were on that photograph, correct?

22   A    That's correct.

23   Q    And you saw Officer Randall say that the police vehicle

24   actually was coming from the other side of Broadway and made a

25   left onto Park Street, true?
```

A1382

<u>COURT'S EXHIBIT 1</u>
Defendants' Motion for a Mistrial (Entered April 26, 2012)
(pp. A1382-A1405)

REPRODUCED FOLLOWING

# A 1383

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

JOSHUA MARSHALL,

                                        Plaintiff,

        -against-

P.O. SALIM RANDALL, and P.O. MICHAEL            10 Civ. 2714 (JBW)(VVP)
BURBRIDGE,

                                        Defendants.
-----------------------------------------------------------x

COURT'S
EXHIBIT NO. ___1___
IDENTIFICATION/EVIDENCE
DKT # 10 CV 2714
DATE: 4/26/12

## DEFENDANTS' MOTION FOR A MISTRIAL AND MEMORANDUM OF LAW IN SUPPORT THEREOF

FELICIA GROSS
JOHANA CASTRO
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 788-0303
fgross@law.nyc.gov
jcastro@law.nyc.gov

Attorneys for Defendants

## A 1384

During its charge conference, the Court properly instructed the jury that: "If you award compensatory damages, you may award additional punitive damages if you find that a defendant engaged in extraordinary misconduct." Jury Instructions, Section IV, Part B (April 24, 2012, 4:51 PM Version).    After giving such instruction, the jury submitted a note containing the following question, in sum or in substance: "Can we award punitive damages without first awarding compensatory damages? Section IV.B." The Court correctly informed them the answer was no. However, after conducting further research, the Court assembled the jury and gave them the following supplemental jury charge:

> THE COURT: Assuming you find liability -- and I'm not saying you should or shouldn't, do you understand? If you find liability, and flowing from that liability as a proximate cause was deprival of the Plaintiff's liberty, either while he was arrested in violation of his rights -- if you find that -- or for another reason in violation of his rights, he was incarcerated for a substantial length of time, then he is entitled to compensatory damages. Do you understand that?

> (Jury nodding.)

> THE COURT: How much is for you to decide. So the question, "Can we give punitive awards without giving compensatory," theoretically, you can. *You can give punitive without compensatory if you found liability.* Do you understand?

> (Jury nodding.)

Ex. B, Trial Transcript, April 25, 2012 at 139, ll. 16-25; at 140, ll. 1-4 (emphasis added).

The Court's supplemental instruction was a misstatement of the law.

Prior to 2004, it was black letter law that a jury could award punitive damages in the absence of compensatory damages *so long as* it first found liability and awarded nominal damages. *See, e.g., Robinson v. Cattaraugus County*, 147 F.3d 153, 161 (2d Cir. N.Y. 1998). In that case, the jury made the same inquiry, in sum or in substance, of the district court as it did

# A 1385

Case 1:10-cv-02714-JBW-VVP   Document 71   Filed 04/26/12   Page 4 of 11 PageID #: 1072

here (*i.e.*, can punitive damages be awarded in the absence of compensatory damages?).  The

Second Circuit held that the district court properly gave the following instruction in response to

the jury's question:

> [t]he Supreme Court has expressed the law that there are circumstances where a jury can
> find that there has been violation of a person's constitutional right, but then under the
> circumstances they find that there is no compensatory damage, that is, there is no pain
> and suffering, there is no lost wages, there are no other elements of any compensatory
> damage.  In that case the Supreme Court says that it is proper to make an award of
> nominal damage, usually in the amount of one dollar.  *And if there is a finding of liability,*
> *if there is a finding that there should be an award of nominal damage, even if there are*
> *no additional compensatory damages found, then the jury may go to consider whether or*
> *not punitive damages should be awarded under the circumstances.*

*Robinson*, 147 F.3d at 161 (emphasis added).

However, in 2004, a bedrock principle – that jurors could award nominal damages in

constitutional rights deprivation cases – was altered by the Second Circuit in its decision in

*Kerman v. City of New York,* 374 F.3d 93, 124 (2d Cir. N.Y. 2004).  In the *Kerman* case, the

court held that "where [a] plaintiff was indisputably deprived of his liberty, and the conduct of

the defendant responsible for the deprivation was found to be unlawful, we have held that the

plaintiff is entitled to compensatory, not merely nominal, damages."  Because the jury awarded

nominal damages, the Second Circuit reversed and remanded for a new trial.  Under Kerman,

nominal damages are no longer available for loss of liberty claims.

*Robinson* and *Kerman* address different issues, and are in tension with one another.

*Kerman*'s effect on the question of whether punitive damages may be awarded in the absence of

compensatory damages, if any, is unclear.

In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003), the Supreme

Court again addressed the interrelationship between compensatory and punitive damages.  In that

case, it held that punitive damages must have a proportionate ratio to compensatory damages in

## A 1386

Case 1:10-cv-02714-JBW-VVP   Document 71   Filed 04/26/12   Page 5 of 11 PageID #: 1073

order to comport with due process.[1] It further held that the $145 million punitive damage award

in that case did not satisfy due process, and reversed and remanded for a remittitur or new trial.

In so holding, the Supreme Court reasoned as follows:

> [T]he most important indicium of the reasonableness of a punitive damages award is the
> degree of reprehensibility of the defendant's conduct." *Gore*, supra, at 575.  We have
> instructed courts to determine the reprehensibility of a defendant by considering whether:
> the harm caused was physical as opposed to economic; the tortious conduct evinced an
> indifference to or a reckless disregard of the health or safety of others; the target of the
> conduct had financial vulnerability; the conduct involved repeated actions or was an
> isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or
> mere accident. 517 U.S., at 576-577.  The existence of any one of these factors weighing
> in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the
> absence of all of them renders any award suspect. *It should be presumed a plaintiff has
> been made whole for his injuries by compensatory damages, so punitive damages should
> only be awarded if the defendant's culpability, after having paid compensatory damages,
> is so reprehensible as to warrant the imposition of further sanctions to achieve
> punishment or deterrence. Id.*, at 575.

*State Farm*, 538 U.S. at 419 (emphasis added).

As a result of *State Farm*, the landscape with respect to the relationship between

compensatory and punitive damages has shifted.  Nevertheless, defendants submit that, as

articulated by the U.S. Supreme Court in *State Farm*, punitive damages are *not* recoverable in the

absence of compensatory damages.  *State Farm* effectively overruled *Robinson*.

Therefore, the Court erred when it gave a supplemental instruction to the jury to the

effect that that punitive damages may, in fact, be awarded in the absence of compensatory

damages.  Moreover, given the language of the supplemental jury instruction, the jury is now

---

[1] The Court's reasoning was as follows: "Our jurisprudence and the principles it has now
established demonstrate, however, that, in practice, [footnote omitted] few awards exceeding a
single-digit ratio between punitive and compensatory damages, to a significant degree, will
satisfy due process. In *Haslip*, in upholding a punitive damages award, we concluded that an
award of more than four times the amount of compensatory damages might be close to the line of
constitutional impropriety. 499 U.S., at 23-24. We cited that 4-to-1 ratio again in *Gore*. 517 U.S.,
at 581." *State Farm*, 538 U.S. at 425 (2003).

# A 1387

Case 1:10-cv-02714-JBW-VVP   Document 71   Filed 04/26/12   Page 6 of 11 PageID #: 1074

compelled to award both compensatory and punitive damages.  Defendants do not believe a
curative instruction is possible in light of the fact that the jury has already been given two
charges on the issue.  Accordingly, defendants have no choice but to request a mistrial.

## POINT II

### THE COURT MISSTATED THE LAW WITH RESPECT TO PLAINTIFF'S SEEKING MENTAL AND EMOTIONAL DAMAGES.

Prior to instructing the jury, the Court heard argument on defendants' objections to the
charge.  After such argument, the Court inserted the following instruction into the jury charge:
"Plaintiff claims as the injury that he spent four and a half months in jail. *He is not seeking*
*recovery for any emotional or psychological injuries.* He is not seeking recovery for loss of
earnings." Jury Charge, April 25, 2012, Section IV (Damages), Part A (Compensatory
Damages) at p. 11 (emphasis added).

However, during the charge, the Court added new language which fundamentally
altered the import.  The Court stated:

> THE COURT:
>
> The plaintiff claims as the injury that he spent
> four and a half months in jail. He is not seeking recovery
> for any emotional or psychological injuries. He is not
> seeking recovery for loss of earnings. *That is, for any*
> *emotional or psychological injuries that continued after the*
> *jail. He is seeking damages for the time he spent in jail.*

Ex. B, Trial Transcript, April 25, 2012 at 126, ll. 15-20 (emphasis added).

This is an incorrect statement of the case.  He is not seeking to recover for emotional or
psychological injuries at all.  He is seeking damages for loss of liberty.

A 1388

### POINT III

### THE COURT PERMITTED PLAINTIFF TO ASK THE JURY TO "SEND A MESSAGE" NOT JUST TO THESE DEFENDANTS BUT TO ALL PUTATIVE MALFEASORS.

During plaintiff's closing argument, he stated as follows:

MR. NORINSBERG:

> But there's one section, the last section on
> punitive damages, that I do want you to take very seriously.
> Punitive damages gives you an opportunity to speak your voice
> and actually be heard as a juror. *You can send a message to*
> *these two Defendants.*
> MS. CASTRO: Objection.
> MR. NORINSBERG: *You can send a message.*
> THE COURT: You may continue your argument.
> MR. NORINSBERG: *You can send a message through your*
> *verdict, not just to these two Defendants, but to any other*
> *police officer out there* that thinks it's okay to get in front
> of a grand jury and lie. *You can send a message to any*
> *other police officer out there that thinks it's okay.*
> THE COURT: Strike that reference to before the
> grand jury.
> MR. NORINSBERG: *You can send a message to any other*
> *police officer* that thinks it's okay to tell a prosecutor
> something that's completely false, and say, you know what, you
> can't do that. You actually cannot do that in our system.
> You will be accountable. And that's what we're going to ask
> you to do at the end of the day is listen to all of the
> evidence, work through it carefully. But if you do that and
> you honor the pledges you made in your jury selection, you're
> going to get the right result, and that's to hold these two
> Defendants responsible for putting this man in jail for four
> and a half months. Thank you.
> THE COURT: Thank you.

Ex. B, Trial Transcript, April 25, 2012 at 92, ll. 22-25; at 93, ll. 1-23 (emphases added).

Defendants submit that this line of argument is inflammatory, highly prejudicial, and should have been excluded. *See, e.g., Morales v. City of New York*, 2000 U.S. Dist. LEXIS 18711 (S.D.N.Y. 2000) (allowing plaintiff's motion for remittutur or new trial where punitive damage award was excessive; concluding, *inter alia*, that "[t]he plaintiff's summation asked the

# A 1389

Case 1:10-cv-02714-JBW-VVP   Document 71   Filed 04/26/12   Page 8 of 11 PageID #: 1076

jury to 'send a message' to the police by their verdict. While this plea was made in connection

with the argument on punitive damages, the jury may not have appreciated that such an argument

was only relevant to a determination of punitive damages.').

## POINT IV

### BECAUSE DEFENDANTS WERE PRECLUDED FROM INTRODUCING EVIDENCE OF PLAINTIFF'S PRIOR INCARCERATIONS, ANY DAMAGE AWARD IS SPECULATIVE.

Assuming the jury returns a damages award for loss of liberty, the defense was precluded

from eliciting testimony concerning plaintiff's prior criminal convictions and incarcerations so

there is nothing in the record from which the jury can base a damage award. Any such award

would be purely speculative.

Defendants have repeatedly moved that the court permit defendants to elicit testimony or

cross-examining plaintiff as to his criminal history. It is well-established law that such history

goes directly to damages. *See Banushi v. Palmer*, 08-CV-2937(KAM)(JO), 2011 U.S. Dist.

LEXIS 419, *7-9 (E.D.N.Y. Jan. 4, 2011) (admitting evidence of plaintiff's prior arrests in trial

involving false arrest claim to mitigate plaintiff's claim of damages and noting, "a plaintiff 'who

has had a number of prior arrests and detentions is likely to have suffered less distress than one

who has never before been detained ... .'" ). During trial, plaintiff Marshall testified on direct

as to his emotional injury from being incarcerated. Accordingly, the number of his prior

incarcerations is both admissible and highly relevant to damages.

## POINT V

### PLAINTIFF IMPROPERLY ARGUED DURING CLOSING THAT DEFENDANTS MADE MISLEADING STATEMENTS TO THE GRAND JURY, WHICH IS NOT A

## A 1390

## PROPER BASIS FOR LIABILITY UNDER *REHBERG.*

Finally, in his closing, plaintiff's counsel improperly argued that the defendants mislead

the "grand jury." He argued:

MR. NORINSBERG:

> Now, you'll see the sections on compensatory
> damages, I don't even want to touch that with you. I want
> this case -- I don't want to taint this about this case being
> a money case. This is about holding these officers
> accountable. Whatever value you put on it is fine. It's
> about showing that you were not fooled like these other
> people. *You weren't mislead like the grand jury.* You see the
> light here. You understand what happened.

Ex. B, Trial Transcript, April 25, 2012 at 92, ll. 14-21 (emphasis added).

Plaintiff's counsel made additional references to defendants' having mislead the grand

jury several other times during his closing. *See, e.g.*, p. 74, line 8 ("What he told the *grand jury*

was a lie."); p. 76, line 1 ("What he told that *grand jury* is a lie."); p. 79, line 17 and 20-21

When he appeared before the *grand jury*, one story. When he appeared in the civil lawsuit,

another story. ** He testified under oath in front of that *grand jury* that what happened was he

had this conversation with Marshall that he said, "Sir, can I talk to you for a minute?"); and p.

93, lines 10-11 ("You can send a message through your verdict, not just to these two Defendants,

but to any other police officer out there that thinks it's okay to get in front of a *grand jury* and

lie.") (emphases added).

His argument is misleading and confusing. It may give the jury reason to believe that

misstatements to the grand jury is a basis for liability, which it is not under the U.S. Supreme

Court's recent decision in *Rehberg v. Paulk*, 2012 U.S. LEXIS 2711, *23-24 (Apr. 2, 2012). *See*

# A 1391

Case 1:10-cv-02714-JBW-VVP   Document 71   Filed 04/26/12   Page 10 of 11 PageID #: 1078

*id.* (holding that grand jury witnesses are entitled to absolute immunity from "*any* § 1983 claim based on the witness' testimony").

## POINT VI

### THE COURT MISREAD THE JURY CHARGE WITH RESPECT TO DEFENDANTS' POTENTIAL LIABILITY FOR TESTIMONY BEFORE THE GRAND JURY IN CONTRAVENTION OF *REHBERG*.

During the jury charge, the Court misread a crucial instruction. The Court stated:

THE COURT

Did Officer Randall violate the plaintiff's constitutional right to a fair trial by knowingly presenting *false evidence to the prosecutor? I'm sorry, in preparation for the grand jury.*

Ex. B, Trial Transcript, April 25, 2012 at 129, ll. 8-12 (emphasis added).

Even though the Court corrected the mistake, the confusion created on a crucial point is highly prejudicial.

## POINT VII

### DEFENDANTS REQUEST THE ATTACHED SPECIAL INTERROGATORIES.

Finally, defendants request that the attached special interrogatories be given to the jury after it has reached its verdict. *See* Exhibit A.

## CONCLUSION

For the foregoing reasons, defendants Police Officers Salim Randall and Michael Burbridge respectfully request that the Court grant their motions in their entirety and for such other and further relief as the Court deems just and proper.

Dated:       New York, New York
             April 26, 2012

- 10 -

**A 1392**

Case 1:10-cv-02714-JBW-VVP   Document 71   Filed 04/26/12   Page 11 of 11 PageID #: 1079

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendants Police Officers Salim
Randall and Michael Burbridge
100 Church Street
New York, New York 10007
(212) 788-0303

By:    _____/s/_____
        Felicia Gross
        Assistant Corporation Counsel
        Special Federal Litigation Division

By:    _____/s/_____
        Johana V. Castro
        Senior Counsel
        Special Federal Litigation Division

**A 1393**

Case 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 1 of 12 PageID #: 1080

# EXHIBIT A

# A 1394

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
JOSHUA MARSHALL,
Plaintiff,
-against-
POLICE OFFICER SALIM RANDALL and POLICE
OFFICER MICHAEL BURBRIDGE,
Defendants.
--------------------------------------------------------------x

10 Civ. 2714 (JBW)(VVP)

## Special Interrogatories

1) Was it reasonable for Officer Randall to believe that plaintiff had a gun.

    Yes_____                    No_____

2) Was it reasonable for Officer Burbridge to believe that plaintiff had a gun.

    Yes_____                    No_____

3) Did Officer Randall knowingly mislead the prosecutor to procure an indictment.

    Yes_____                    No_____

4) Did Officer Burbridge knowingly mislead the prosecutor to procure an indictment.

    Yes_____                    No_____

5) Did Officer Randall knowingly present false information to the prosecutor.

    Yes_____                    No_____

6) Did Officer Burbridge knowing present false information to the prosecutor.

    Yes_____                    No_____

Case 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 3 of 12 PageID #: 1082

# EXHIBIT B

# A 1396

Case 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 4 of 12 PageID #: 1083

**Page 1**

```
 1  UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
 2                              -x
    JOSHUA MARSHALL,
 3       Plaintiff,
 4       versus              10-CV-02714 (JBW)
 5  THE CITY OF NEW YORK,
         Defendant.     United States Courthouse
 6                       Brooklyn, New York
 7  ------------------------x
 8                  April 25, 2012
                     9:30 A.M.
 9             ***VOLUME II**
10       CONTINUED TRANSCRIPT OF TRIAL
    Before: HON. JACK B. WEINSTEIN,
11  UNITED STATES DISTRICT JUDGE
12
13  FOR THE PLAINTIFF:     A P P E A R A N C E S :
14
15            COHEN & FITCH, LLP
              Attorneys for the Plaintiff
16            Woolworth Building
              233 Broadway - Suite 1800
17            New York, New York 10279
18            BY: GERALD M. COHEN, ESQ.
                  JON NORINSBERG, ESQ.
19
20
21  For the Defendants:
22            NEW YORK CITY LAW DEPARTMENT
              Attorney for the Defendant
23            100 Church Street
              New York, New York 10007
24            BY: FELICIA GROSS, ESQ.
                  JOHANA CASTRO, ESQ.
25                FRAN CESSROS, ESQ.
```
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

**Page 2**

```
 1  PROCEEDINGS
 2  Court Reporter: Judi Johnson, RPR, CRR, CLR
    Official Court Reporter
 3  Telephone: (718) 613-2592
    Facsimile: (718) 613-2380
 4  E-mail: Judi_Johnson@nyed.uscourts.gov
 5  Proceedings recorded by computerized stenography. Transcript
    produced by Computer-aided Transcription.
```
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

**Page 3**

```
 1  (In open court.)
 2       COURTROOM DEPUTY:  All rise.  The United States
 3  District Court for the Eastern District of New York is now in
 4  session.  The Honorable JACK B. WEINSTEIN is now presiding.
 5       (Honorable JACK B. WEINSTEIN takes the bench.)
 6       COURTROOM DEPUTY:  Calling civil trial proceeding
 7  in Docket no. 10-CV-2714, Joshua Marshall against The City of
 8  New York.
 9       THE COURT:  Marshall v. Randall and Burbridge.
10  I have the defendants' brief in support of multiple
11  trial motions.
12       MR. COHEN:  Your Honor, may I step outside just to
13  get my co-counsel?
14       THE COURT:  If he's here.
15       MR. COHEN:  He's here.
16       MS. CASTRO:  Your Honor, I will step out and get my
17  co-counsel as well.
18       (A brief pause.)
19       THE COURT:  I've gone over this brief in support of
20  the defendants' multiple trial motions.  Thank you very much
21  for getting this in early.  It was helpful to be able to read
22  it early this morning.
23       I'll briefly summarize the conclusions I have and
24  changes I'm making, and then if it's necessary, we can have
25  further argument.
```
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

**Page 4**

```
 1       Defendants asked to be permitted to cross-examine
 2  the plaintiff as to his criminal history now that he has
 3  opened the door to such testimony.  I don't think he's opened
 4  the door.  That is denied.
 5       Second, plaintiff has improperly made an issue of
 6  the legal validity of the officers' initial approach in
 7  contravention of the Court's prior order.  Defendants request
 8  a curative instruction and, in the alternative, a mistrial.
 9  As I explained yesterday, there was no contravention of the
10  Court's prior order.  The testimony was properly limited to
11  the period from which the defendants had first observed the
12  plaintiff to the time of arrest.
13       Defendants asked for a mistrial, which is denied on
14  the merits.
15       Third, defendants should be permitted to
16  cross-examine plaintiff as to his emotional and psychological
17  injuries.  He's not seeking damages.  And I'll modify the
18  charge, as I'll explain in a moment, to make that clear.
19       Fourth, defendants should be permitted to mention in
20  closing that the criminal case was dismissed on Speedy Trial
21  rules.  I've already dealt with that, and I see no reason to
22  reopen that.  It's been discussed repeatedly.
23       Defendants request a curative instruction as to the
24  import of the grand jury's indictment.  That's five, and it's
25  combined really with six.  Instruction of a presumption of
```
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

Case 1:10-cv-02714-JBW-VVP   Document 71-1   Filed 04/26/12   Page 5 of 12 PageID #: 1084

PROCEEDINGS                                           137

1   MR. COHEN:  I believe it's the Second Circuit.
2   MR. NORINSBERG:  Second Circuit.
3   MR. COHEN:  I have the case cite in my bag.
4   MR. NORINSBERG:  It's definitely Second Circuit.
5   MR. COHEN:  I'm sure it was referenced in my motion
6   in limine papers, your Honor.
7   THE COURT:  Why didn't you object to the charge?
8   MR. NORINSBERG:  We did. That's why we opposed the
9   nominal damages. If there's a deprivation of liberty in any
10  magnitude, Kerman says there has to be an award of some
11  monetary compensation.
12  THE COURT:  You disagree?
13  MS. SANDS:  We disagree, your Honor.
14  THE COURT:  Have you got a case?
15  MS. SANDS:  We don't have a case handy, but we
16  certainly disagree that -- I know the case you just read, but
17  we feel there has to be liability before they can --
18  THE COURT:  Well, of course there has to be
19  liability. That's not what we're talking about.
20  MR. NORINSBERG:  Your Honor, the jury might be
21  asking that question: If they don't find liability, can they
22  still award punitive damages?
23  THE COURT:  There has to be liability. What is the
24  citation?
25  MR. COHEN:  I'm looking for my motion papers, your
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                           138

1   Honor. If I could just have one minute. Kerman is 374 F.3d
2   93. It's a Second Circuit decision from 2004. And if you
3   look at Pages 123 to 125, the quote is -- well, what I've
4   quoted for is "recognizing that loss of liberty and emotional
5   injuries are independent of each other and" --
6   THE COURT:  Start again.
7   MR. COHEN:  -- "the tort of false arrest and
8   malicious prosecution are complete with even a brief restraint
9   of the Plaintiff's freedom, it is not necessary that any
10  damages result from it other than the confinement, itself."
11  That's just for the portion that states that the
12  loss of freedom is a compensatory damage. But I believe,
13  later on in the case, it talks about how there must be
14  compensatory damages if a loss of liberty is found.
15  THE COURT:  Bring in the jury.
16  MS. SANDS:  Your Honor, I believe that case focused
17  on nominal damages, basically nominal damages if the jury
18  found that there was a breach of constitutional rights.
19  THE COURT:  There has to be some damages.
20  MS. SANDS:  They couldn't be nominal. They would
21  have to be --
22  THE COURT:  But everybody agreed to strike the
23  nominal. I thought that the nominal was appropriate, but I'll
24  bring in the jury and tell them they have to find some
25  damages.
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                           139

1   Bring in the jury.
2   (The jury entered.)
3   THE COURT:  I want to correct what I think is in an
4   error in the charge. As suggested in your note, Court
5   Exhibit 9, "Can we give punitive award without giving
6   compensatory"?
7   First, if he was deprived of a constitutional
8   right -- that is, there is liability -- that's the first
9   question. In order to give damages, there has to be
10  liability. Do you all understand that?
11  (Jury nodding.)
12  THE COURT:  Anybody have any question about this?
13  If there's no liability, there's no damages. Do you
14  understand that? Everybody understand that?
15  (Jury nodding.)
16  THE COURT:  Assuming you find liability -- and I'm
17  not saying you should or shouldn't, do you understand? If you
18  find liability, and flowing from that liability as a proximate
19  cause was deprival of the Plaintiff's liberty, either while he
20  was arrested in violation of his rights -- if you find that --
21  or for another reason in violation of his rights, he was
22  incarcerated for a substantial length of time, then he is
23  entitled to compensatory damages. Do you understand that?
24  (Jury nodding.)
25  THE COURT:  How much is for you to decide. So the
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                           140

1   question, "Can we give punitive awards without giving
2   compensatory," theoretically, you can. You can give punitive
3   without compensatory if you found liability. Do you
4   understand?
5   (Jury nodding.)
6   THE COURT:  But it's hard for me to see how if you
7   find liability and you find that he was deprived of his
8   liberty, you cannot give him some compensatory damages. I'm
9   not telling you what to do, but it does seem to me that once
10  you find liability which caused a deprivation of his
11  liberty -- either for four and a half months or for a lesser
12  time while he was arrested, et cetera -- that's all
13  deprivation.
14  You've got to find some violation first, some
15  liability. Then, after you find liability as -- if you do, as
16  I suggested, the next thing is compensatory damages. Now, if
17  you do find liability, it's, again, hard for me to see how you
18  cannot find some compensatory damages and he would be entitled
19  to compensatory damages for a deprivation. Do you understand
20  that?
21  (Jury nodding.)
22  THE COURT:  If the deprivation was caused by the
23  denial. Do you understand?
24  (Jury nodding.)
25  THE COURT:  Therefore, the question of whether we
JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

# A 1398

PROCEEDINGS                125

1  prosecutor, leading to a deprivation of the plaintiff's
2  liberty. If a defendant presented accurate evidence to the
3  prosecutor or presented false evidence thinking it was true,
4  then you must find for the defendant. And I've already told
5  you a few moments ago that what was told to the prosecutor in
6  the grand jury room or in preparation is not what we're
7  talking about here. It's at other times.
8        Do you understand that?
9        (Jury nodding.)
10       THE COURT:  The third element that plaintiff must
11 prove is that the acts of Officer Randall and officer
12 Burbridge were a proximate cause of injuries he sustained.
13 There can be more than one cause that's proximate.
14       An injury or damage is proximally caused by an act
15 or failure to act whenever the act or omission played a
16 substantial part in bringing about or actually causing the
17 injury or damage and that the injury was the direct or
18 reasonably probable consequence of the act or omission.
19       To recover damages, Marshall has the burden, that
20 is, the plaintiff, of proving that he suffered an injury and
21 that the injury would not have occurred without the wrongful
22 conduct of a defendant.
23       If you find the plaintiff has proven one of his
24 three claims, you are going to have to determine damages, if
25 any, that he sustained and proved. Don't infer that he had

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                126

1  damages merely because I am instructing you. It's exclusively
2  your function to determine liability and damages.
3        He's seeking first compensatory damages. If
4  liability is proven on one of the claims, you will award the
5  plaintiff sufficient damages to compensate him for any injury
6  proximally caused by one of the defendants' actions in
7  creating the liability. Damages of this type is known as
8  compensatory damages. Their purpose is to make the plaintiff
9  whole, that is, to give back, to the extent that money can,
10 the problem or injury that he -- for the injury that he
11 suffered. Those damages should be fair and reasonable,
12 neither inadequate nor excessive, and they should be only for
13 injuries the plaintiff suffered or is reasonably likely to
14 suffer as a proximate result of an injury claimed and proved.
15       The plaintiff claims as the injury that he spent
16 four and a half months in jail. He is not seeking recovery
17 for any emotional or psychological injuries. He is not
18 seeking recovery for loss of earnings. That is, for any
19 emotional or psychological injuries that continued after the
20 jail. He is seeking damages for the time he spent in jail.
21       In awarding compensatory damages, be guided by
22 dispassionate common sense. Use such definitiveness and
23 accuracy as the circumstances permit.
24       Each defendant is entitled to fair, separate and
25 individual consideration both as to liability and as to

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                127

1  damages. It's as if you were trying two separate trials at
2  the same time.
3        Is that clear to you?
4        (Jury nodding.)
5        THE COURT:  If you find that only one is responsible
6  for a particular injury, then you must impose damages, if any,
7  for that injury only upon that defendant. If you find no
8  injuries by any of the defendants, then you'll rule
9  accordingly.
10       The plaintiff is also asking for punitive damages.
11 Should you award compensatory damages, you may award
12 additional punitive damages if you find that a defendant
13 engaged in extraordinary misconduct. You may do so to express
14 your disapproval and to serve as an example or warning to
15 others who might otherwise engage in similar conduct.
16       If you find in favor of plaintiff and against the
17 defendant and if you finds that the defendant acted so
18 maliciously, wantonly or oppressively as to warrant an award
19 of punitive damages, you may make such an award.
20       To justify an award of punitive damages, a
21 defendant's misconduct must be based upon a reckless or
22 callous disregard of the rights of the plaintiff or a gross
23 indifference treasure them. You may also award punitive
24 damages if a defendant acted to punish the plaintiff out of
25 ill will or spite.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                128

1  You may assess punitive damages or any damages
2  against either or both of the defendants, or in the case of
3  punitive damages, you may refuse to assess them at all.
4        If punitive damages are assessed against more than
5  one defendant, the amount may be the same or may be different.
6        When you begin your deliberations, don't communicate
7  with anybody outside the jury room except in writing through
8  the marshal, who will give me the note, and then I'll
9  communicate back or call you back into court.
10       You can ask for help on the law or anything else.
11       Be respectful to each other when you're having your
12 discussions. Don't hesitate to change your mind after
13 considering what other people say, but each of you is entitled
14 to your individual vote and must exercise your individual
15 judgment. And when the verdict comes in, you will each be
16 asked if that is your verdict.
17       Don't tell me how the vote stands until you come
18 into court. If you've reached a verdict, don't report to me
19 what it is. You will be asked that in open court. Inform the
20 Court in writing when you've reached a verdict without
21 indicating what that verdict is.
22       You'll render your verdict without fear or without
23 favor, without prejudice and without sympathy.
24       Now, these are the questions you'll have to answer.
25       First, did Randall falsely arrest the plaintiff?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

# A 1399

Case 1:10-cv-02714-JBW-VVP    Document 71-1    Filed 04/26/12    Page 7 of 12 PageID #: 1086

PROCEEDINGS                                    89

1  years? No one ever talked to him. This man was so
2  unimportant that the D.A.'s office never interviewed him, let
3  alone him testifying in front of a grand jury. And this guy,
4  he comes in here. What's the one thing, the one undisputed
5  fact we get out of him? He didn't see who threw the gun. He
6  did not see who threw the gun. That's the number one fact,
7  and with good reason.
8          The man's driving the wrong way down a one-way
9  street at night in an area where you have several stores that
10 are open 24 hours, and of course he's paying attention to
11 what's ahead of him. He's not looking. What did he actually
12 remember? This man said he did thousands of arrests, over a
13 thousand in his career. And yet, four years later, he's
14 contacted for the first time. And wouldn't you know it, he
15 just remembers in great detail this particular case. Of
16 course, it comes out that his memory was somewhat refreshed
17 when he was able to meet with the lawyers from the Defendants
18 in this case.
19         And we're seeing what happens here. We saw an
20 example with Officer Burbridge. Remember, I questioned him
21 yesterday about this. During his deposition, Officer
22 Burbridge couldn't think of the right answer. We had a break,
23 and all of a sudden, the answers came flowing. We saw how
24 Officer Randall was only too happy to adopt the term, his
25 "associate." He started using that in his direct after hearing

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                    90

1  it from the lawyer. My point is this: How real is that
2  testimony? It's four years after the fact meeting with their
3  lawyers. And at the end of the day, it really doesn't change
4  any of the dynamics in this case at all.
5          The one part, I don't know if you believe it, I
6  don't think this guy actually saw anything. Even if you
7  believed his story they saw Meade's hands, that just would
8  make perfect sense to this whole story of what happened.
9  Meade is going along. He's the one that tosses the gun. He's
10 the one worried about the cops. Officers, look, I got nothing
11 here. What normal person would walk down the street, and when
12 police are coming, would go like this? That doesn't make
13 sense. He's doing it because he's got the guilty conscience.
14 He knows he just tossed that gun. He wants to make sure the
15 officers think it's not him. And guess what? It worked. It
16 worked.
17         The bottom line is this, ladies and gentlemen. Your
18 questions are going to come down to what they call a verdict
19 sheet. I'm just going to walk through this very briefly with
20 you. You'll get it again. You're going to have copies of it.
21 You'll have a chance to go through this extensively.
22 Essentially, there are three main questions: Was Mr. Marshall
23 falsely arrested by these two Defendants; was he maliciously
24 prosecuted; was he denied a right to a fair trial by the false
25 evidence?

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                    91

1          Now, I suggest to you all of those questions turn on
2  the very first thing that we talked about when I started my
3  closing argument today: Did Marshall have a gun on him? If
4  Marshall did not have gun on him, if the answer to that
5  question is no, he did not have a gun, then the answer to all
6  of the questions on the verdict sheet is yes. Now, if
7  Marshall actually had the gun, if you still believe that after
8  everything you've heard, then of course, he's not entitled to
9  anything. You throw him out. That's your job as jurors.
10         But if you actually think through this and believe
11 that these officers gave false information to the prosecutors,
12 they duped the prosecutors because the prosecutors weren't out
13 on the street. They duped it and put it over on the grand
14 jury with these false stories. If you believe that's what
15 happened, then the Marshall not having a gun, the answer to
16 all the answers on the verdict sheet is yes. It's yes.
17         And then, you'll see there's a question. When
18 they're talking about maliciously prosecuting, just so you
19 understand, our view is simply this: They're feeding false
20 information. They may not be the prosecutors, per se, but
21 they're feeding that information. Now, one thing on the first
22 two questions on false arrest. Let's say some of you -- and I
23 know there's room for a healthy discussion about all this case
24 and the facts. It's not like the attorneys --
25         MS. CASTRO:  Objection.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                    92

1          THE COURT:  You may continue your argument.
2          MR. NORINSBERG:  -- defense counsel got up in your
3  opening and said this is just an open-and-shut case. We
4  actually want you to think about it. When you think about it,
5  let's say some of you still are not sure. You don't know
6  where you are. The first questions, the first two questions
7  on false arrest, the Defendants actually have the burden of
8  proof on those questions. You'll hear that from the judge.
9  They have the burden to prove that they had grounds to arrest
10 Marshall, not us. We have the burden on the other two claims.
11 But on those first two questions, for some of you, if you're
12 not comfortable with that, they have the burden. If they fail
13 to meet their burden, then they lose on that claim.
14         Now, you'll see the sections on compensatory
15 damages, I don't even want to touch that with you. I want
16 this case -- I don't want to taint this about this case being
17 a money case. This is about holding these officers
18 accountable. Whatever value you put on it is fine. It's
19 about showing that you were not fooled like these other
20 people. You weren't mislead like the grand jury. You see the
21 light here. You understand what happened.
22         But there's one section, the last section on
23 punitive damages, that I do want you to take very seriously.
24 Punitive damages gives you an opportunity to speak your voice
25 and actually be heard as a juror. You can send a message to

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

# A 1400

|  | PROCEEDINGS 93 |
|---|---|
| 1 | these two Defendants. |
| 2 | MS. CASTRO: Objection. |
| 3 | MR. NORINSBERG: You can send a message. |
| 4 | THE COURT: You may continue your argument. |
| 5 | MR. NORINSBERG: You can send a message through your |
| 6 | verdict, not just to these two Defendants, but to any other |
| 7 | police officer out there that thinks it's okay to get in front |
| 8 | of a grand jury and lie. You can send a message to any |
| 9 | other police officer out there that thinks it's okay. |
| 10 | THE COURT: Strike that reference to before the |
| 11 | grand jury. |
| 12 | MR. NORINSBERG: You can send a message to any other |
| 13 | police officer that thinks it's okay to tell a prosecutor |
| 14 | something that's completely false, and say, you know what, you |
| 15 | can't do that. You actually cannot do that in our system. |
| 16 | You will be accountable. And that's what we're going to ask |
| 17 | you to do at the end of the day is listen to all of the |
| 18 | evidence, work through it carefully. But if you do that and |
| 19 | you honor the pledges you made in your jury selection, you're |
| 20 | going to get the right result, and that's to hold these two |
| 21 | Defendants responsible for putting this man in jail for four |
| 22 | and a half months. Thank you. |
| 23 | THE COURT: Thank you. Lunch will be up at 12:30. |
| 24 | Do you want to take a break now, and then get back here at |
| 25 | about quarter after one, take a break now? We'll continue at |

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

|  | PROCEEDINGS 94 |
|---|---|
| 1 | a quarter after one. Don't discuss the case. |
| 2 | (The jury exited.) |
| 3 | THE COURT: You have the jury charge with all the |
| 4 | corrections. And we've run off copies for the jury later. |
| 5 | Enjoy your lunch. I'll see you at 1:15. |
| 6 | (A lunch recess was taken.) |
| 7 | (Continued on the next page.) |
| 8 | |
| 9 | |
| 10 | |
| 11 | |

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

|  | PROCEEDINGS 95 |
|---|---|
| 1 | |
| 2 | (Honorable Jack B. Weinstein takes the bench.) |
| 3 | (Jury is in the courtroom at 1:20 p.m.) |
| 4 | THE COURT: Be seated, please. Proceed. |
| 5 | CLOSING STATEMENT BY THE DEFENSE |
| 6 | MS. CASTRO: Good afternoon, ladies and gentlemen. |
| 7 | JURORS: Good afternoon. |
| 8 | MS. CASTRO: I want to start off by thanking you for |
| 9 | your careful attention that you paid throughout the course of |
| 10 | this trial. On behalf of my client, Police Officers Michael |
| 11 | Burbridge and Salim Randall, as well as my co-counsel, we |
| 12 | would like to thank you for the careful attention that you |
| 13 | will also give to your deliberations in deciding this case. |
| 14 | Now, I do have some remarks that I want to go |
| 15 | through and discuss our case, but I want to start off by |
| 16 | addressing some of the points that were made by plaintiff's |
| 17 | counsel in his summation a little while ago. |
| 18 | Now, first off, with respect to Officer Randall, |
| 19 | plaintiff's counsel started off by trying to attack his |
| 20 | credibility. He wanted you to believe that he's not a |
| 21 | credible witness and he gave you a few reasons for that. One |
| 22 | of the first reasons he gave you is because he says that there |
| 23 | are inconsistencies in his testimony. |
| 24 | Now, as plaintiff's counsel went through and told |
| 25 | you repeatedly, this happened four years ago. Four years ago |

MARY AGNES DRURY, RPR - Official Court Reporter

|  | 96 |
|---|---|
| 1 | is a long time to remember every single detail of what |
| 2 | occurred. However, the evidence has shown that Officer |
| 3 | Randall is consistent in the important facts of this case. He |
| 4 | knows what he saw and he knows what he heard. He knows that |
| 5 | he saw the plaintiff pull an object out of his waistband, make |
| 6 | a pitching motion, and he tossed it. He knows that he heard |
| 7 | the sound of the metal cling on the ground. He said that that |
| 8 | is the most unmistakable sound that he knows for a fact that |
| 9 | that's the sound of a gun hitting the ground. He's been |
| 10 | consistent throughout his testimony in saying that. |
| 11 | Now, the second reason he wants to attack Officer |
| 12 | Randall's credibility is because of his paperwork, his arrest |
| 13 | paperwork, to be specific. And he spent a lot of time harping |
| 14 | on the detail section of the arrest report. He wants you to |
| 15 | believe that that section was left blank, that was his word, |
| 16 | that was counsel's word, that he left that section blank, that |
| 17 | he didn't put any information about what happened. |
| 18 | Now, he didn't show you that paperwork during |
| 19 | summation, but it was admitted into evidence and you're going |
| 20 | to have a chance to review it. Now, that arrest report is |
| 21 | Plaintiff's Exhibit 6. And the detail section, if you look at |
| 22 | it, says at TPO, which is time, place of occurrence, where |
| 23 | defendant named Joshua Marshall was found in the possession of |
| 24 | a loaded firearm, and it even specifies a serial number. |
| 25 | That's not blank. That's a play on his words. And it's a |

MARY AGNES DRURY, RPR - Official Court Reporter

# A 1401

| PROCEEDINGS 73 |
|---|

1   "ANSWER: That is correct."
2   Well, what part of that is unclear? He was asked
3   point blank whether he ever saw it in his physical possession,
4   and he said no. He agreed that it was correct. Now, if he never
5   saw this object in the physical possession of Mr. Marshall,
6   why did he swear under oath to a grand jury that he did see
7   it? I mean, those two stories aren't true; either you saw it,
8   or you didn't. Why did he tell the district attorney that he
9   saw this gun in the actual possession of Mr. Marshall?
10   He said those things. And then, he changes his
11   testimony during the course of these proceedings. It's
12   dishonest. The truth came out at his deposition. He never
13   actually saw the possession. How else do we know that? Think
14   about some of the statements that he made to other people.
15   Remember, folks, when I was asking him, I said, "Did you make
16   a statement to another prosecuting attorney that you never saw
17   him in possession of a gun?"
18   "What, who, what prosecuting attorney? Who are you
19   talking of?"
20   I said, "The prosecutor, Judy Phillips; did you make
21   a statement to her? Didn't you tell Ms. Phillips that you did
22   not see that gun in his possession? Didn't you tell her
23   that?"
24   "I never said that."
25   Then, I show him a document. And I said, "Sir, does

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS 74 |
|---|

1   that refresh your memory that you told Ms. Phillips that you
2   never saw this gun in his possession?"
3   "No, it doesn't refresh my memory. I never said
4   that."
5   Well, of course, he can't admit saying it. If he
6   admits he told prosecutor number two that he didn't see the
7   gun in Marshall's possession, then what he told prosecutor
8   number one was a lie. What he told the grand jury was a lie.
9   So he can't admit that he made that statement.
10   And then, I asked him, I said, "Sir, didn't you also
11   make a statement to the gun enhancement unit, your fellow
12   colleagues at the NYPD? Didn't you tell them you didn't see
13   this gun in his possession?"
14   "I never said that."
15   I said, "Well, that's funny. That's not what you
16   said at your deposition."
17   At your deposition, you said, "Actually, it's
18   possible I did say that. I can't really remember."
19   Now, how is it possible, if he's saying these things
20   now, he comes in here and he says that Marshall was in
21   possession of a gun, and yet, at his deposition, he said that
22   he wasn't. He tells this prosecutor, the second prosecutor,
23   he wasn't. And he tells the gun enhancement unit he wasn't.
24   Three different times, he said he wasn't. But you're supposed
25   to believe, the one time that he told the first D.A., that

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS 75 |
|---|

1   that's the true statement.
2   This whole case, it's about credibility. Your
3   job -- I told you this in opening statement -- it requires the
4   highest level of concentration to put together the pieces.
5   This isn't going to be easy. You have to work through this
6   evidence logically, think about these things. Why something
7   on such a critical fact, how does that change over time?
8   What's the next thing that he says? The next thing
9   he tells you, he tells you that he saw Marshall pull out the
10   gun. He saw him pull out the object from his waist. That's
11   funny. That's not what you said at your deposition, Officer.
12   At your deposition, you said you didn't see any object pulled
13   out of his waist.
14   And again, don't rely on what I'm telling you.
15   Let's look at the actual evidence. This is on Page 33 of this
16   man's deposition under oath. "QUESTION: The object that you
17   saw him pull out of his pants?
18   "ANSWER: I didn't see the object as he pulled it
19   out of his pants."
20   So if you didn't see the object as he pulled it out
21   of his pants, why did you tell the grand jury under oath that
22   you saw him pull a firearm out of his pants? That's a lie.
23   He lied. Now, you folks have the power. You can just look
24   the other way. And you can let him say it doesn't matter,
25   these things happen, or you can hold him accountable. He's in

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

| PROCEEDINGS 76 |
|---|

1   a court of law. What he told that grand jury is a lie. And
2   the truth only came out when we started this civil lawsuit
3   under oath.
4   What's the next thing he says? He says he actually
5   saw with his own eyes -- he's certain about this, too, there's
6   no mistake. He saw Marshall actually toss the gun away. Sure
7   you did, Officer, just like you saw Mr. Marshall's eyes
8   bulging from 150 feet away across the street in the dark,
9   right? Let's think about it. What actually did this man see?
10   He's sitting in the back seat of a car. He's got a driver in
11   front of him, he's got a passenger in front of him. He's up
12   to 25 feet away. And Marshall's back is towards him. How
13   exactly is he seeing this?
14   Of course, it doesn't make sense. That's why they
15   have to change the story ever so slightly. The story is
16   changed so that there's an angle and Marshall kind of twists.
17   Does that make sense? He's going to twist. Marshall's trying
18   to throw the gun away and hide it because he sees the police
19   coming. But here, Officer, look what I have, a gun. I'm
20   throwing it into the street. Does that make sense? You have
21   to use your common sense here. So much of this case is
22   thinking through the evidence and using logic and deductive
23   reasoning to work through it and figure out what's true and
24   what's not true. His whole story doesn't make sense.
25   But what's even more telling, look at the paperwork.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

# A 1402

### PROCEEDINGS 77

1 This man's the arresting officer. Now, he said at his
2 deposition he has no idea why he's the arresting officer. To
3 this day, he had no idea. But he's the arresting officer.
4 Look at his arrest paperwork. He gives a version, he fills
5 out the form. There's a section on the form that actually is
6 a box called "DETAILS." I said, "Officer, you agree that the
7 detail of pulling out the gun in the waist; that's an
8 important fact?"
9      And he agreed, "Yes, that's important."
10      "In fact, it's very important, right?"
11      "Yes, it's very important."
12      "But why isn't it anywhere in your report?"
13      Now, in his deposition, he said "no particular
14 reason," but now he came into you, because he has to explain
15 it. It's going to look foolish, right? How is he going to
16 explain this? He explains, "Actually, we don't really fill
17 out that section. You know, we just kind of pass it on to the
18 D.A."
19      Really? Then why is there a section that says
20 "DETAILS" in large, capital letters? Why is it on the police
21 report if you don't fill it out? These are the most important
22 details of the entire case, that you saw him pull out the gun
23 and toss it. And you didn't put that on your report?
24      I'll tell you why he didn't put it on the report,
25 because at that point in time, he didn't have the details.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

### PROCEEDINGS 78

1 They hadn't quite come up with exactly how they were going to
2 present this story. He didn't have those details. So that
3 section of the report's blank. I asked him also, "What about
4 the complaint report? You didn't mention anything on the
5 complaint report, did you?"
6      "Hey, don't blame me. That's not my complaint
7 report. You know, we all worked on that together. I didn't
8 write it."
9      Actually, you did write it. That's what you said in
10 your deposition. I said, "Who prepared this report?"
11      "I did." He prepared the complaint report. Then,
12 he starts telling me, "Well, you see, it's so busy. We have
13 all these documents we have to fill out and all these reports.
14 We all have to help each other out."
15      Really? What other documents? We've seen these
16 documents generated; an arrest report, complaint report and
17 memo book entry. It's not like they didn't have enough time.
18 The man got six hours of overtime. He filled out a report.
19 He just doesn't want to own it because it makes him look bad
20 because there's no explanation for why he didn't have those
21 details in.
22      But my personal favorite, the best one, was the last
23 one in the memo book entry. Does anyone here remember what
24 this man said at his deposition? He said he didn't know what
25 a memo book entry was for. This is an officer who's been on

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

### PROCEEDINGS 79

1 the force for eight years. Eight years, testifying under oath
2 in a deposition that he doesn't know what he's supposed to do
3 with a memo book. Come on, are you folks buying this? Are
4 you going to buy this? There's no way this man is telling the
5 truth in this case. It's one false, phony, dishonest claim
6 after another.
7      You can just look the other way and let it go if you
8 want, or you can hold him accountable. In our system, when
9 you testify under oath, it's serious business. This isn't
10 just playing fast and loose with the facts, change the story
11 if you don't like your answer last year at the deposition.
12 Just come in here. The jury won't know. They weren't there.
13 Come on, you folks know this. This is not right what he did.
14      And you go beyond and you look at the other witness
15 that we heard from, Officer Burbridge. Do you realize that
16 this man told two completely different stories? When he
17 appeared before the grand jury, one story. When he appeared
18 in the civil lawsuit, another story.
19      Let's look at story number one. This is what he was
20 telling to the grand jury. He testified under oath in front
21 of that grand jury that what happened was he had this
22 conversation with Marshall that he said, "Sir, can I talk to
23 you for a minute?" And then, what he did was he stepped out
24 of his car in front of Marshall, and that's when Marshall
25 threw the gun.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

### PROCEEDINGS 80

1      So what he was selling to that grand jury, he was
2 trying to make it sound like, man, I had this guy in my line
3 of vision. He's standing there right in front of me. I saw
4 the whole thing. Then, all of a sudden, actually, come to
5 think of it, I wasn't standing in front of him on the
6 sidewalk. That never happened. Actually, come to think of
7 it, I was inside of a car 10 feet away still inside the car
8 when he threw the gun.
9      Well, which is it? First, this isn't a game you can
10 play with somebody's liberty and make up stories. How could a
11 story change so dramatically? This man's not taking this at
12 all seriously, understanding that when he testified in front
13 of the grand jury, he's under oath to tell the truth.
14      And his paperwork is also an illustration of how the
15 false and dishonest claims come in. Remember his form he
16 filled out, his stop-and-frisk form? That form, he said, "I
17 observed furtive movements before we made the stop."
18 Actually, that's not what you said in your deposition. At
19 your deposition, you said you didn't observe anything
20 suspicious.
21      And here's what he said, Page 66: "QUESTION: Did
22 you observe any furtive movements by Joshua Marshall before
23 you decided to stop him?
24      "ANSWER: No."
25      So if the answer to that is no, why did you lie in

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

# A 1403

Case 1:10-cv-02714-JBW-VVP    Document 71-1    Filed 04/26/12    Page 11 of 12 PageID #: 1090

## PROCEEDINGS 93

1 these two Defendants.
2     MS. CASTRO:  Objection.
3     MR. NORINSBERG:  You can send a message.
4     THE COURT:  You may continue your argument.
5     MR. NORINSBERG:  You can send a message through your
6 verdict, not just to these two Defendants, but to any other
7 police officer out there that thinks it's okay to get in front
8 of a grand jury and lie.  You can send a message to any
9 other police officer out there that thinks it's okay.
10     THE COURT:  Strike that reference to before the
11 grand jury.
12     MR. NORINSBERG:  You can send a message to another
13 police officer that thinks it's okay to tell a prosecutor
14 something that's completely false, and say, you know what, you
15 can't do that.  You actually cannot do that in our system.
16 You will be accountable.  And that's what we're going to ask
17 you to do at the end of the day is listen to all of the
18 evidence, work through it carefully.  But if you do that and
19 you honor the pledges you made in your jury selection, you're
20 going to get the right result, and that's to hold these two
21 Defendants responsible for putting this man in jail for four
22 and a half months.  Thank you.
23     THE COURT:  Thank you.  Lunch will be up at 12:30.
24 Do you want to take a break now, and then get back here at
25 about quarter after one, take a break now?  We'll continue at

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 94

1 a quarter after one.  Don't discuss the case.
2     (The jury exited.)
3     THE COURT:  You have the jury charge with all the
4 corrections.  And we've run off copies for the jury later.
5     Enjoy your lunch.  I'll see you at 1:15.
6     (A lunch recess was taken.)
7     (Continued on the next page.)

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

## PROCEEDINGS 95

1
2 (Honorable Jack B. Weinstein takes the bench.)
3     (Jury is in the courtroom at 1:20 p.m.)
4     THE COURT:  Be seated, please.  Proceed.
5 CLOSING STATEMENT BY THE DEFENSE
6     MS. CASTRO:  Good afternoon, ladies and gentlemen.
7     JURORS:  Good afternoon.
8     MS. CASTRO:  I want to start off by thanking you for
9 your careful attention that you paid throughout the course of
10 this trial.  On behalf of my client, Police Officers Michael
11 Burbridge and Salim Randall, as well as my co-counsel, we
12 would like to thank you for the careful attention that you
13 will also give to your deliberations in deciding this case.
14     Now, I do have some remarks that I want to go
15 through and discuss our case, but I want to start off by
16 addressing some of the points that were made by plaintiff's
17 counsel in his summation a little while ago.
18     Now, first off, with respect to Officer Randall,
19 plaintiff's counsel started off by trying to attack his
20 credibility.  He wanted you to believe that he's not a
21 credible witness and he gave you a few reasons for that.  One
22 of the first reasons he gave you is because he says that there
23 are inconsistencies in his testimony.
24     Now, as plaintiff's counsel went through and told
25 you repeatedly, this happened four years ago.  Four years ago

MARY AGNES DRURY, RPR - Official Court Reporter

## 96

1 is a long time to remember every single detail of what
2 occurred.  However, the evidence has shown that Officer
3 Randall is consistent in the important facts of this case.  He
4 knows what he saw and he knows what he heard.  He knows that
5 he saw the plaintiff pull an object out of his waistband, make
6 a pitching motion, and he tossed it.  He knows that he heard
7 the sound of the metal cling on the ground.  He said that that
8 is the most unmistakable sound that he knows for a fact that
9 that's the sound of a gun hitting the ground.  He's been
10 consistent throughout his testimony in saying that.
11     Now, the second reason he wants to attack Officer
12 Randall's credibility is because of his paperwork, his arrest
13 paperwork, to be specific.  And he spent a lot of time harping
14 on the detail section of the arrest report.  He wants you to
15 believe that that section was left blank, that was his word,
16 that was counsel's word, that he left that section blank, that
17 he didn't put any information about what happened.
18     Now, he didn't show you that paperwork during
19 summation, but it was admitted into evidence and you're going
20 to have a chance to review it.  Now, that arrest report is
21 Plaintiff's Exhibit 6.  And the detail section, if you look at
22 it, says at TPO, which is time, place of occurrence, above
23 defendant named Joshua Marshall was found in the possession of
24 a loaded firearm, and it even specifies a serial number.
25 That's not blank.  That's a play on his words.  And it's a

MARY AGNES DRURY, RPR - Official Court Reporter

# A 1404

PROCEEDINGS                                                                          129

1   Yes or no.
2          Did Officer Burbridge falsely arrest the plaintiff?
3   Yes or no.
4          Did Officer Randall maliciously prosecute the
5   plaintiff?  Yes or no.
6          Did Officer Burbridge maliciously prosecute the
7   plaintiff?  Yes or no.
8          Did Officer Randall violate the plaintiff's
9   constitutional right to a fair trial by knowingly presenting
10  false evidence to the prosecutor?  I'm sorry, in preparation
11  for the grand jury.
12         Did officer Burbridge violate plaintiff's
13  constitutional right to a fair trial by knowingly presenting
14  false evidence to the prosecutor under similar circumstances?
15         If your answers to all those questions is no, you
16  don't have to answer any of the following questions because
17  there won't be any damages to assess.  If you find that a
18  defendant is or has violated a right, then you'll determine
19  compensatory damages first attributable to Officer Burbridge,
20  second, attributable to Officer Randall.  Then, if you find
21  punitive damages, how much against Officer Burbridge --
22  Officer Randall, rather, and then against Officer Burbridge.
23         Do any attorneys wish to see me at the side bar?
24         MR. NORINSBERG:  No, your Honor.
25         MS. CASTRO:  No, your Honor.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                                                          130

1          MS. SANDS:  Your Honor --
2          THE COURT:  Do you wish to see me at the side bar?
3          MS. SANDS:  I do.
4          THE COURT:  Come to the side bar.
5          (At the bench.)
6          MS. SANDS:  Your Honor, I think you misread the
7   question 3A.
8          THE COURT:  You're turning to page?
9          MS. SANDS:  Page 13, question 3A.
10         (In open court.)
11         THE COURT:  3A on Page 13 reads: Did Officer
12  Randall violate plaintiff's constitutional right to a fair
13  trial by knowingly presenting false evidence to the prosecutor
14  under the circumstances I described?  Yes or no.
15         MS. SANDS:  Okay.
16         THE COURT:  No other objections are made.
17  Swear the marshal, please.
18         THE CLERK:  Do you swear or affirm that you will
19  keep the jurors sworn in this cause together in some private
20  and convenient place, that you shall suffer no one to speak to
21  them nor shall you speak to them unless it be at the direction
22  of the court to ask if they have agreed upon a verdict?
23         THE MARSHAL:  I do.
24         THE COURT:  Thank you.
25         Continue your deliberations until I tell you to

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                                                          131

1   stop.  Now, if you want to go beyond 4:30 p.m., send in a
2   note.
3          (The jury exited.)
4          THE COURT:  The instructions I read from, which we
5   just distributed, is Court Exhibit 2, I think, of today's
6   date.  The brief is marked 1, and this jury charge I gave is
7   marked Exhibit 2.
8          (Court Exhibit 1 was received in evidence, as of
9   this date.)
10         (Court Exhibit 2 was received in evidence, as of
11  this date.)
12         THE COURT:  And we have prior drafts.  There is an
13  April 24th draft, which is marked Exhibit 3.
14         (Court Exhibit 3 was received in evidence, as of
15  this date.)
16         THE COURT:  There's an April 20th draft which is
17  marked 4.
18         (Court Exhibit 4 was received in evidence, as of
19  this date.)
20         THE COURT:  And there's an April 17th draft, which
21  is marked 5.
22         (Court Exhibit 5 in evidence, was received as of
23  this date.)
24         THE COURT:  Do you have a list of the witnesses,
25  please?  Do you have a list of the exhibits, please?  Make up

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

PROCEEDINGS                                                                          132

1   the list, please.  Gather all of the exhibits.  Nothing is to
2   go in until I go through it.
3          MR. COHEN:  You have all the exhibits that we put
4   in.
5          THE COURT:  Make up your list and put it all
6   together.
7          I should say I appreciate the cooperation and fine
8   professional lawyering of both sides.
9          MS. GROSS:  Thank you, your Honor.
10         MR. COHEN:  Thank you, your Honor.
11         If I can make one request.  Once the jury does have
12  a verdict, we would like to speak to them.
13         THE COURT:  You're free to do so.  It's up to them
14  whether they want to talk to you.
15         MR. COHEN:  Can you just ask them if they want to
16  stick around, to let them know that the attorneys would like
17  to --
18         THE COURT:  I will tell them.  Yes, I will do that.
19         MS. GROSS:  Defendants join in that request.
20         THE COURT:  I will do that.
21         (Recess.)
22         THE COURT:  Yes, what can I do to help you?
23         MS. CASTRO:  We've gathered all of the exhibits and
24  created a witness list.
25         THE COURT:  May I see the witness list, please.

JUDI JOHNSON, RPR, CRR, CLR - Official Court Reporter

A1405

<u>COURT'S EXHIBIT 2</u>
Jury Charge (Entered April 25, 2012)
(pp. A1405-A1419)

REPRODUCED FOLLOWING

# A 1406

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSHUA MARSHALL,

Plaintiff,

– against –

SALIM RANDALL and MICHAEL
BURBRIDGE,

Defendants.

**JURY CHARGE**

10-CV-2714

---

**JACK B. WEINSTEIN, Senior United States District Judge:**

## I.    INTRODUCTION

Ladies and Gentlemen of the jury:

I will instruct you on the law. It is your duty to follow these instructions. My instructions will be in three parts.

First, regarding the general rules that define and govern the duties of a jury in a civil case.

Second, as to the legal elements of the claims asserted by the plaintiff, I will provide the specific elements that the plaintiff must prove with respect to each of his claims to warrant a finding of liability on the part of a defendant. A discussion of damages is included.

Third, giving you some guidance regarding your deliberations.

Please read these instructions along with me. You may take them into the jury room.

You will have a list of documents and objects that were admitted into evidence. Ask for any of them or for a transcript of the testimony that you wish to see.



COURT'S
EXHIBIT NO. 2
IDENTIFICATION/EVIDENCE
DKT.# 10 cv 2714
DATE: 4/25/12

II.    **GENERAL RULES**

### A. Role of the Court and of the Jury

You are the sole judges of the facts. Decide which of the witnesses you believe, what portion of their testimony you accept, and how much weight you give to it.

I have no view regarding the liability of any defendant. Nothing that I have said or done should be used by you to infer that I have such a view.

Your verdict must be based exclusively on the evidence or lack of evidence in the case and the law as I explain it to you. Do not consider any personal feelings that you may have about the race, religion, national origin, ethnic background, gender, or age of the plaintiff or a defendant. Do not do any research of your own, by computer or otherwise.

### B. All Parties and Witnesses Equal

No party is entitled to any sympathy or favor. All parties are equal before this court. The fact that the defendants are police officers does not entitle them to any greater or lesser consideration than the plaintiff.

### C. Claims and Burden of Proof

Whenever I say that a party has the burden of proof on a particular issue, I mean that, considering all of the evidence in the case, the party's claim on that issue must be established as more probably true than not true. If the probabilities are equal—that is, the scales are evenly balanced—the party has not met his burden.

The plaintiff makes three claims. First, that he was arrested by the defendants after the officers saw a gun thrown into the street, and that the arrest was illegal because the defendants falsely alleged that they saw him throw it, though they in fact did not know whose gun it was. Second, that criminal charges, based on fabricated evidence regarding the events leading to his

2

arrest, were maliciously brought against him. Third, that one or both of the defendants violated his constitutional right to a fair trial by presenting false evidence to state prosecutors in order to procure an indictment.

Thus, the first issue is whether the plaintiff was falsely arrested by the defendants. The second issue is whether the plaintiff was maliciously prosecuted by the defendants. The third issue is whether the plaintiff was denied his constitutional right to a fair trial by the defendants. If and only if you decide one or more of these questions in the plaintiff's favor will you be required to consider the amount of damages to which the plaintiff is entitled.

The plaintiff has the burden of proving each element of his claims, except for the probable cause element of his false arrest claim. The burden is on a defendant to prove that he had probable cause to arrest the plaintiff.

### D. **Unanimity of Decision**

Your decision on any issue must be unanimous. All of you must agree on the answer to questions on the verdict sheet that I will give you.

### E. **Evaluation of the Evidence**

You will have a list of witnesses. Ask for a transcript of any part of the testimony that you wish to see. Try to be specific.

Communicate with me in writing to ask for any evidence, help on the law, or any other matter. Give a note with your question to the Marshal.

During the trial, objections were raised and rulings made. Draw no inferences from the frequency of objections or from whether objections were sustained or overruled. Where an objection to a question was sustained, disregard the question and draw no inferences from its wording. Where testimony was stricken, disregard it.

3

# A 1409

On occasion, I gave limiting instructions on how evidence could be used. Follow those instructions.

Give the evidence such weight as you think it deserves. Analyze the evidence dispassionately, rationally, and without prejudice or emotion.

You may draw reasonable inferences from the evidence. Testimony from the witnesses and the exhibits are evidence. A lawyer's questions without an answer, arguments, and the opening and closing statements are not evidence.

## F. Witnesses

### 1. General Principles

Decide which testimony to believe and which not to believe. Consider the following: each witness's demeanor and manner of testifying; his or her opportunity to see, hear, and know about the events he or she described; the witness's ability to recall and describe those things; the reasonableness of the testimony in light of all of the other evidence in the case; and the interest of a witness in the outcome of the trial. Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what that witness said or did on a prior occasion, and by the testimony of other witnesses or by other evidence.

If you find that a witness has willfully testified falsely as to an important matter, you may disregard the entire testimony, or you may accept as much of the testimony as you find true and disregard what you find false. A witness may have been mistaken or may have lied with respect to part of his or her testimony while having been accurate or truthful with respect to other parts.

### 2. Testimony of Out-of-Court Declarants

You have heard evidence concerning what people outside the courtroom said about events. You are entitled to consider these statements as evidence. In evaluating these

4

statements, remember that these individuals were not cross-examined before you when the statement was made. In considering the probative force of statements of individuals who have not testified, apply the same credibility tests that you apply with respect to individuals who have testified.

### 3.   Testimony of Expert Witnesses

A person described as an expert is a witness who has acquired specialized knowledge by education, experience, or training. Such a witness is permitted to give an opinion and to give the reasons for it.

In weighing this testimony, you should consider the factors that generally bear upon the credibility of any witness, as well as the witness's education, training and experience, the soundness of the reasons given for the opinion, and all other evidence in the case. You should also consider whether the assumptions on which the witness relied were proven.

### G.   Judicial Notice

The court has taken judicial notice of certain facts or events. You shall accept these facts or events as evidence and regard as proven any fact or event that has been judicially noticed.

## III.   CLAIMS OF PLAINTIFF

Three claims are asserted by plaintiff under Section 1983 of Title 42 of the United States Code against police officers Salim Randall and Michael Burbridge.

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights by state or local officials acting under color of state law. It states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

5

# A 1411

To make out a claim under Section 1983, the plaintiff must prove:

**First,** that the defendant officers acted intentionally or recklessly;

**Second,** that the conduct complained of was committed by a person acting under color of state law;

**Third,** that this conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States; and

**Fourth,** that the defendants' acts were a proximate cause of damages sustained by the plaintiff.

### A. Intentional or Reckless Conduct

An act is intentional if it is done knowingly, that is, if it is done voluntarily and deliberately, and not because of mistake, accident, negligence, or other innocent reason. An act is reckless if it is done in conscious disregard of its known probable consequences.

### B. Color of State Law

The defendants, as New York City police officers, were acting under color of state law when they arrested plaintiff. This element is deemed proven.

### C. Deprivation of Constitutional Right

#### 1. False Arrest

Plaintiff Marshall claims that defendants Randall and Burbridge falsely arrested him on May 15, 2008, in violation of the Fourth Amendment to the Constitution.

A person is falsely arrested when (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not privileged.

The initial stop was lawful. Evidence relating to observations and acts surrounding the stop may be considered in deciding credibility.

The issue for you on this claim is whether the arrest was privileged, that is to say, whether there was probable cause for plaintiff's arrest. Defendants contend that there was probable cause to arrest the plaintiff for the illegal possession of a firearm. The plaintiff contends that there was no probable cause to arrest him for that crime. If there was an objectively reasonable ground for the officers' belief that a crime had been, or was being, committed by the plaintiff, then the arrest was privileged.

If one defendant had probable cause to arrest, then both defendants are deemed to have had probable cause. An officer may rely on information supplied to him by another officer who made observations at the scene.

The existence of probable cause is measured at the moment of arrest. You may consider as one piece of evidence, together with all of the evidence in the case, the fact that the charges against the plaintiff were later dismissed in determining whether probable cause to arrest existed.

The failure of an officer to make a further inquiry before making an arrest, when a reasonable person would have done so, may, but does not necessarily, show a lack of probable cause. An officer is not required to conduct a full investigation prior to executing an arrest. But he may not ignore relevant evidence that he is aware of, or deliberately disregard facts that he is aware of, if the evidence or facts tend to rebut the existence of probable cause to arrest.

The defendants have the burden of showing that probable cause existed for this arrest.

With regard to the substantive crimes on which plaintiff's arrest was premised, a person is guilty of the criminal possession of a weapon when he "possesses any firearm," except under limited circumstances not relevant here. *See* N.Y. Penal Law §§ 265.01(1), 265.20.

2.    **Malicious Prosecution**

Plaintiff Marshall claims that defendant Randall and defendant Burbridge maliciously prosecuted him by providing false statements to, and withholding relevant evidence that each was aware of, from a state prosecuting attorney. Plaintiff was indicted on three counts of the criminal possession of a weapon.

A defendant cannot be held liable for what he said to the grand jury; he may be held liable for what he said to the prosecutor if his statement was not in preparation for his grand jury testimony.

A person is maliciously prosecuted when (1) criminal proceedings are initiated or continued against him by the defendant; (2) the proceedings are terminated in his favor; (3) there was no probable cause for the commencement of the proceeding; and (4) a defendant's actions leading to the initiation of the proceeding against plaintiff were motivated by malice of the defendant.

There is no dispute that criminal proceedings were commenced and continued and that they ended in plaintiff's favor.

The critical decisions for you are whether there was probable cause for the initiation of the proceedings and whether a defendant's assistance in the initiation of the proceedings was motivated by malice.

Probable cause to prosecute exists when the facts and circumstances within the person's knowledge at the time he takes steps to proceed with the prosecution are sufficient for a person of reasonable prudence to believe that a violation of law was committed.

# A 1414

A grand jury's indictment creates a presumption that probable cause for prosecution existed. You may find the presumption rebutted, that is, overcome, and that no probable cause for prosecution existed, based on all of the evidence.

The question here is whether either or both of the defendant officers believed that there was probable cause to initiate or assist in the prosecution of plaintiff.

A defendant initiates or continues a prosecution maliciously if he initiates or continues it for a wrongful purpose, that is, if his goal is not to bring an alleged offender to justice. For example, if he acts out of ill will or personal hostility towards a person accused, or he acts out of a desire to punish a person without due process, then he can be said to have acted with malice. You are permitted—but are not required—to infer that malice existed if you find that a defendant lacked probable cause to initiate and continue with the charges against the plaintiff.

If probable cause existed for Officers Randall and Burbridge to present the evidence they did to the state prosecuting attorney, then you must find for the defendants on this claim. If no probable cause existed, but the defendants did not act with malice, then you must find for the defendants on this claim.

### 3. Constitutional Right to a Fair Trial

Every person has a right not to be prosecuted on the basis of information that is known by the government to be false. The government's doing so violates the Constitution.

The question for you on this claim is whether the plaintiff has proven that the defendants knowingly created false evidence and presented it to the prosecutor, leading to a deprivation of the plaintiff's liberty. If a defendant presented accurate evidence to the prosecutor, or presented false evidence thinking it was true, then you must find for the defendant.

9

# A 1415

### D. Proximate Cause

The third element that plaintiff must prove is that the acts of Officer Randall and Officer Burbridge were a proximate cause of injuries he sustained.

There can be more than one proximate cause. An injury or damage is proximately caused by an act or failure to act whenever the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that injury was the direct or a reasonably probable consequence of the act or omission. To recover damages, Marshall has the burden of proving that he suffered an injury and that the injury would not have occurred without the wrongful conduct of the defendant.

## IV.    DAMAGES

If the plaintiff has proven liability on a claim, you must determine the damages, if any, that he has proven on that claim. Do not infer that he is entitled to recover damages merely because I am instructing you on this issue. It is exclusively your function to decide upon liability.

### A. Compensatory Damages

If liability is proven on a claim, you must award the plaintiff sufficient damages against the defendants to compensate him for any injury proximately caused by Officer Randall and Officer Burbridge's actions that created the liability. Damages of this type are known as compensatory damages. Their purpose is to make a plaintiff whole.

The compensatory damages you award, if any, should be fair and reasonable, neither inadequate nor excessive. You should award damages only for injuries the plaintiff has suffered or is reasonably likely to suffer as a proximate result of the claimed injury.

# A 1416

Plaintiff claims as the injury that he spent four and a half months in jail. He is not seeking recovery for any emotional or psychological injuries. He is not seeking recovery for loss of earnings.

In awarding compensatory damages, you must be guided by dispassionate common sense. Use as much definiteness and accuracy as the circumstances permit.

Each defendant is entitled to fair, separate, and individual consideration. If you find that only one is responsible for a particular injury, then you must impose damages, if any, for that injury only upon that defendant.

## B. Punitive Damages

If you award compensatory damages, you may award additional punitive damages if you find that a defendant engaged in extraordinary misconduct. You may do so to express your disapproval and to serve as an example or warning to others who might otherwise engage in similar conduct.

If you find in favor of plaintiff and against a defendant, and if you find that the defendant acted so maliciously, wantonly, or oppressively as to warrant an award of punitive damages, you may make such an award. To justify an award of punitive damages, a defendant's misconduct must be based upon a reckless or callous disregard of the rights of the plaintiff, or a gross indifference towards them; you may also award punitive damages if a defendant acted to punish the plaintiff out of ill will or spite.

You may assess punitive damages against either or both of the defendants, or you may refuse to impose punitive damages at all. If punitive damages are assessed against more than one defendant, the amounts assessed against each defendant may be the same, or they may be different.

11

**A 1417**

V.    **CONCLUDING REMARKS**

Do not communicate with anyone outside the jury room except the court about your deliberations, or about anything else regarding this case.  You may send a note to me, signed by your foreperson, through the Marshal to ask for help on the law or for any other assistance.

Discuss the issues with respect for each other.  Do not hesitate to change your mind after considering each matter.  Each of you is individually responsible for your vote.

If you are divided, do not report how the vote stands.  If you have reached a verdict, do not report what it is to anyone until you are asked in open court.  Inform the court when you have reached a verdict; do not inform me what your verdict is.

Render your verdict without fear, without favor, without prejudice, and without sympathy.

**VERDICT SHEET**

**(Page 1 of 2)**

1A. Did Officer Randall falsely arrest the plaintiff on May 15, 2008?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

1B. Did Officer Burbridge falsely arrest the plaintiff on May 15, 2008?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

2A. Did Officer Randall maliciously prosecute the plaintiff?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

2B. Did Officer Burbridge maliciously prosecute the plaintiff?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

3A. Did Officer Randall violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

13

(Page 2 of 2)

3B.  Did Officer Burbridge violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?

| YES | NO |
| --- | --- |
|  |  |
|  |  |
|  |  |

If you answer all of the above questions "No", do not continue to the following questions.  If you answer one or more of the above questions "Yes", continue to the following questions.

4A.  What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights by Officer Randall?

| COMPENSATORY DAMAGES | $ |
| --- | --- |

4B.  What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights by Officer Burbridge?

| COMPENSATORY DAMAGES | $ |
| --- | --- |

5A.  If damages are awarded pursuant to question 4A, and the plaintiff is entitled to punitive damages from Officer Randall, what amount of punitive damages for breach of plaintiff's constitutional rights is awarded from Officer Randall?

| PUNITIVE DAMAGES | $ |
| --- | --- |

5B.  If damages are awarded pursuant to question 4B, and the plaintiff is entitled to punitive damages from Officer Burbridge, what amount of punitive damages for breach of plaintiff's constitutional rights is awarded from Officer Burbridge?

| PUNITIVE DAMAGES | $ |
| --- | --- |

A1420

<u>COURT'S EXHIBIT 2</u>
Jury Note (Entered April 26, 2012)
(pp. A1420-A1421)

REPRODUCED FOLLOWING

**A 1421**

WE HAVE . REACH

A VERDICT.

COURT'S
EXHIBIT NO. 2
IDENTIFICATION/EVIDENCE
DKT.# CV 12-2324
DATE: 4/27/12
PENGAD 800-631-6989

A1422

<u>COURT'S EXHIBIT 3</u>
Superseded Jury Charge
(pp. A1422-A1436)

REPRODUCED FOLLOWING

# A 1423

DRAFT: APRIL 24, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PROPOSED JURY CHARGE

JOSHUA MARSHALL,

                    Plaintiff,

– against –

10-CV-2714

P.O. SALIM RANDALL, Shield No. 15331,
Individually and in His Official Capacity, P.O.
MICHAEL BURBRIDGE, Shield No. 15488,
Individually and in His Official Capacity,

                    Defendants.

JACK B. WEINSTEIN, Senior United States District Judge:

## I.    INTRODUCTION

Ladies and Gentlemen of the jury:

I will instruct you on the law. It is your duty to follow these instructions. My instructions will be in three parts.

First, regarding the general rules that define and govern the duties of a jury in a civil case.

Second, as to the legal elements of the claims asserted by the plaintiff, I will provide the specific elements that the plaintiff must prove with respect to each of his claims to warrant a finding of liability on the part of a defendant. A discussion of damages is included.

Third, giving you some guidance regarding your deliberations.

Please read these instructions along with me. You may take them into the jury room.

You will have a list of documents and objects that were admitted into evidence. Ask for any of them or for a transcript of the testimony that you wish to see.

1

COURT'S
EXHIBIT NO: __3__
IDENTIFICATION/EVIDENCE
DKT.# __10 CV 2714__
DATE: __4/25/12__

A 1424

## II.    GENERAL RULES

### A.  Role of the Court and of the Jury

You are the sole judges of the facts.  Decide which of the witnesses you believe, what portion of their testimony you accept, and how much weight you give to it.

I have no view regarding the liability of any defendant.  Nothing that I have said or done should be used by you to infer that I have such a view.

Your verdict must be based exclusively on the evidence or lack of evidence in the case and the law as I explain it to you.  Do not consider any personal feelings that you may have about the race, religion, national origin, ethnic background, gender, or age of the plaintiff or a defendant.  Do not do any research of your own, by computer or otherwise.

### B.  All Parties and Witnesses Equal

No party is entitled to any sympathy or favor.  All parties are equal before this court.  The fact that the defendants are police officers does not entitle them to any greater or lesser consideration than the plaintiff.

### C.  Claims and Burden of Proof

Whenever I say that a party has the burden of proof on a particular issue, I mean that, considering all of the evidence in the case, the party's claim on that issue must be established as more probably true than not true.  If the probabilities are equal—that is, the scales are evenly balanced—the party has not met his burden.

The plaintiff makes three claims.  First, that he was arrested by the defendants after the officers saw a gun thrown into the street, and that the arrest was illegal because the defendants falsely alleged that they saw him throw it, though they in fact did not know whose gun it was.  Second, that criminal charges, based on fabricated evidence regarding the events leading to his

2

# A 1425

arrest, were maliciously brought against him. Third, that one or both of the defendants violated his constitutional right to a fair trial by presenting false evidence to state prosecutors in order to procure an indictment.

Thus, the first issue is whether the plaintiff was falsely arrested by the defendants. The second issue is whether the plaintiff was maliciously prosecuted by the defendants. The third issue is whether the plaintiff was denied his constitutional right to a fair trial by the defendants. If and only if you decide one or more of these questions in the plaintiff's favor will you be required to consider the amount of damages to which the plaintiff is entitled.

The plaintiff has the burden of proving each element of his claims, except for the probable cause element of his false arrest claim. The burden is on a defendant to prove that he had probable cause to arrest the plaintiff.

### D. **Unanimity of Decision**

Your decision on any issue must be unanimous. All of you must agree on the answer to questions on the verdict sheet that I will give you.

### E. **Evaluation of the Evidence**

You will have a list of witnesses. Ask for a transcript of any part of the testimony that you wish to see. Try to be specific.

Communicate with me in writing to ask for any evidence, help on the law, or any other matter. Give a note with your question to the Marshal.

During the trial, objections were raised and rulings made. Draw no inferences from the frequency of objections or from whether objections were sustained or overruled. Where an objection to a question was sustained, disregard the question and draw no inferences from its wording. Where testimony was stricken, disregard it.

3

# A 1426

On occasion, I gave limiting instructions on how evidence could be used. Follow those instructions.

Give the evidence such weight as you think it deserves. Analyze the evidence dispassionately, rationally, and without prejudice or emotion.

You may draw reasonable inferences from the evidence. Testimony from the witnesses and the exhibits are evidence. A lawyer's questions without an answer, arguments, and the opening and closing statements are not evidence.

## F. Witnesses

### 1. General Principles

Decide which testimony to believe and which not to believe. Consider the following: each witness's demeanor and manner of testifying; his or her opportunity to see, hear, and know about the events he or she described; the witness's ability to recall and describe those things; the reasonableness of the testimony in light of all of the other evidence in the case; and the interest of a witness in the outcome of the trial. Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what that witness said or did on a prior occasion, and by the testimony of other witnesses or by other evidence.

If you find that a witness has willfully testified falsely as to an important matter, you may disregard the entire testimony, or you may accept as much of the testimony as you find true and disregard what you find false. A witness may have been mistaken or may have lied with respect to part of his or her testimony while having been accurate or truthful with respect to other parts.

### 2. Testimony of Out-of-Court Declarants

You have heard evidence concerning what people outside the courtroom said about events. You are entitled to consider these statements as evidence. In evaluating these

4

## A 1427

statements, remember that these individuals were not cross-examined before you when the statement was made. In considering the probative force of statements of individuals who have not testified, apply the same credibility tests that you apply with respect to individuals who have testified.

### 3.     Testimony of Expert Witnesses

A person described as an expert is a witness who has acquired specialized knowledge by education, experience, or training. Such a witness is permitted to give an opinion and to give the reasons for it.

In weighing this testimony, you should consider the factors that generally bear upon the credibility of any witness, as well as the witness's education, training and experience, the soundness of the reasons given for the opinion, and all other evidence in the case. You should also consider whether the assumptions on which the witness relied were proven.

### G. Judicial Notice

The court has taken judicial notice of certain facts or events. You shall accept these facts or events as evidence and regard as proven any fact or event that has been judicially noticed.

## III.     CLAIMS OF PLAINTIFF

Three claims are asserted by plaintiff under Section 1983 of Title 42 of the United States Code against police officers Salim Randall and Michael Burbridge.

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights by state or local officials acting under color of state law. It states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To make out a claim under Section 1983, the plaintiff must prove:

**First**, that the defendant officers acted intentionally or recklessly;

**Second,** that the conduct complained of was committed by a person acting under color of state law;

**Third**, that this conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States; and

**Fourth**, that the defendants' acts were a proximate cause of damages sustained by the plaintiff.

### A. Intentional or Reckless Conduct

An act is intentional if it is done knowingly, that is, if it is done voluntarily and deliberately, and not because of mistake, accident, negligence, or other innocent reason. An act is reckless if it is done in conscious disregard of its known probable consequences.

### B. Color of State Law

The defendants, as New York City police officers, were acting under color of state law when they arrested plaintiff. This element is deemed proven.

### C. Deprivation of Constitutional Right

### 1. False Arrest

Plaintiff Marshall claims that defendants Randall and Burbridge falsely arrested him on May 15, 2008, in violation of the Fourth Amendment to the Constitution.

A person is falsely arrested when (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not privileged.

6

## A 1429

*[handwritten:]* The initial stop the was lawful. Evidence relating to observations and acts surrounding the stop may be considered in deciding credibility.

The issue for you on this claim is whether the arrest was privileged, that is to say, whether there was probable cause for plaintiff's arrest. Defendants contend that there was probable cause to arrest the plaintiff for the illegal possession of a firearm. The plaintiff contends that there was no probable cause to arrest him for that crime. If there was an objectively reasonable ground for the officers' belief that a crime had been, or was being, committed by the plaintiff, then the arrest was privileged.

If one defendant had probable cause to arrest, then both defendants are deemed to have had probable cause. An officer may rely on information supplied to him by another officer who made observations at the scene.

The existence of probable cause is measured at the moment of arrest. You may consider as one piece of evidence, together with all of the evidence in the case, the fact that the charges against the plaintiff were later dismissed in determining whether probable cause to arrest existed.

The failure of an officer to make a further inquiry before making an arrest, when a reasonable person would have done so, may, but does not necessarily, show a lack of probable cause. An officer is not required to conduct a full investigation prior to executing an arrest. But he may not ignore relevant evidence that he is aware of, or deliberately disregard facts that he is aware of, if the evidence or facts tend to rebut the existence of probable cause to arrest.

The defendants have the burden of showing that probable cause existed for this arrest.

With regard to the substantive crimes on which plaintiff's arrest was premised, a person is guilty of the criminal possession of a weapon when he "possesses any firearm," except under limited circumstances not relevant here. *See* N.Y. Penal Law §§ 265.01(1), 265.20.

A 1430

2.    **Malicious Prosecution**

Plaintiff Marshall claims that defendant Randall and defendant Burbridge maliciously prosecuted him by providing false statements to, and withholding relevant evidence that each was aware of, from a state prosecuting attorney.  Plaintiff was indicted on three counts of the criminal possession of a weapon.

A defendant cannot be held liable for what he said to the grand jury; he may be held liable for what he said to the prosecutor if his statement was not in preparation for his grand jury testimony.

A person is maliciously prosecuted when (1) criminal proceedings are initiated or continued against him by the defendant; (2) the proceedings are terminated in his favor; (3) there was no probable cause for the commencement of the proceeding; and (4) a defendant's actions leading to the initiation of the proceeding against plaintiff were motivated by malice of the defendant.

There is no dispute that criminal proceedings were commenced and continued and that they ended in plaintiff's favor.

The critical decisions for you are whether there was probable cause for the initiation of the proceedings and whether a defendant's assistance in the initiation of the proceedings was motivated by malice.

Probable cause to prosecute exists when the facts and circumstances within the person's knowledge at the time he takes steps to proceed with the prosecution are sufficient for a person of reasonable prudence to believe that a violation of law was committed.

The question here is whether either or both of the defendant officers believed that there was probable cause to initiate or assist in the prosecution of plaintiff.

8

*the presumption*

P/ A grand jury's indictment p creates a presumption that rebuts, that probable cause for prosecution existed. You may find that probable cause existed, based on all

A defendant initiates or continues a prosecution maliciously if he initiates or continues it for a wrongful purpose, that is, if his goal is not to bring an alleged offender to justice. For example, if he acts out of ill will or personal hostility towards a person accused, or he acts out of a desire to punish a person without due process, then he can be said to have acted with malice. You are permitted—but are not required—to infer that malice existed if you find that a defendant lacked probable cause to initiate and continue with the charges against the plaintiff.

If probable cause existed for Officers Randall and Burbridge to present the evidence they did to the state prosecuting attorney, then you must find for the defendants on this claim. If no probable cause existed, but the defendants did not act with malice, then you must find for the defendants on this claim.

### 3.     Constitutional Right to a Fair Trial

Every person has a right not to be prosecuted on the basis of information that is known by the government to be false. The government's doing so violates the Constitution.

The question for you on this claim is whether the plaintiff has proven that the defendants knowingly created false evidence and presented it to the prosecutor, leading to a deprivation of the plaintiff's liberty. If a defendant presented accurate evidence to the prosecutor, or presented inaccurate evidence without the requisite intent, then you must find for the defendant.

### D.     Proximate Cause

The third element that plaintiff must prove is that the acts of Officer Randall and Officer Burbridge were a proximate cause of injuries he sustained.

There can be more than one proximate cause. An injury or damage is proximately caused by an act or failure to act whenever the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that injury was the direct or a reasonably

probable consequence of the act or omission. To recover damages, Marshall has the burden of

proving that he suffered an injury and that the injury would not have occurred without the

wrongful conduct of the defendant.

## IV.   DAMAGES

If the plaintiff has proven liability on a claim, you must determine the damages, if any,

that he has proven on that claim. Do not infer that he is entitled to recover damages merely

because I am instructing you on this issue. It is exclusively your function to decide upon

liability.

### A. Compensatory Damages

If liability is proven on a claim, you must award the plaintiff sufficient damages against

the defendants to compensate him for any injury proximately caused by Officer Randall and

Officer Burbridge's actions that created the liability. Damages of this type are known as

compensatory damages. Their purpose is to make a plaintiff whole.

The compensatory damages you award, if any, should be fair and reasonable, neither

inadequate nor excessive. You should award damages only for injuries the plaintiff has suffered

or is reasonably likely to suffer as a proximate result of the claimed injury.

Plaintiff claims as the injury that he spent four and a half months in jail. *He is not seeking a recovery for any emotional & psychological injuries.*

In awarding compensatory damages, you must be guided by dispassionate common *He is not seeking loss of earnings.*

sense. Use as much definiteness and accuracy as the circumstances permit.

Each defendant is entitled to fair, separate, and individual consideration. If you find that

only one is responsible for a particular injury, then you must impose damages, if any, for that

injury only upon that defendant.

**B. Punitive Damages**

If you award compensatory damages, you may award additional punitive damages if you find that a defendant engaged in extraordinary misconduct. You may do so to express your disapproval and to serve as an example or warning to others who might otherwise engage in similar conduct.

If you find in favor of plaintiff and against a defendant, and if you find that the defendant acted so maliciously, wantonly, or oppressively as to warrant an award of punitive damages, you may make such an award. To justify an award of punitive damages, a defendant's misconduct must be based upon a reckless or callous disregard of the rights of the plaintiff, or a gross indifference towards them; you may also award punitive damages if a defendant acted to punish the plaintiff out of ill will or spite.

You may assess punitive damages against either or both of the defendants, or you may refuse to impose punitive damages at all. If punitive damages are assessed against more than one defendant, the amounts assessed against each defendant may be the same, or they may be different.

## V.    CONCLUDING REMARKS

Do not communicate with anyone outside the jury room except the court about your deliberations, or about anything else regarding this case. You may send a note to me, signed by your foreperson, through the Marshal to ask for help on the law or for any other assistance.

Discuss the issues with respect for each other. Do not hesitate to change your mind after considering each matter. Each of you is individually responsible for your vote.

**A 1434**

If you are divided, do not report how the vote stands. If you have reached a verdict, do not report what it is to anyone until you are asked in open court. Inform the court when you have reached a verdict; do not inform me what your verdict is.

Render your verdict without fear, without favor, without prejudice, and without sympathy.

## A 1435

### <u>VERDICT SHEET</u>

### (Page 1 of 2)

**1A.  Did Officer Randall falsely arrest the plaintiff on May 15, 2008?**

| YES | NO |
|-----|----|
|     |    |

**1B.  Did Officer Burbridge falsely arrest the plaintiff on May 15, 2008?**

| YES | NO |
|-----|----|
|     |    |

**2A.  Did Officer Randall maliciously prosecute the plaintiff?**

| YES | NO |
|-----|----|
|     |    |

**2B.  Did Officer Burbridge maliciously prosecute the plaintiff?**

| YES | NO |
|-----|----|
|     |    |

**3A.  Did Officer Randall violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?**

| YES | NO |
|-----|----|
|     |    |

13

# A 1436

(Page 2 of 2)

**3B. Did Officer Burbridge violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?**

| YES | NO |
|---|---|
|  |  |
|  |  |

"No"

If you answer all of the above questions ~~in the negative~~, do not continue to the following questions.  If you answer one or more of the above questions ~~in the affirmative~~, continue to the following questions.    "Yes"

**4A. What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights by Officer Randall?**

| COMPENSATORY DAMAGES | $ |
|---|---|

**4B. What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights by Officer Burbridge?**

| COMPENSATORY DAMAGES | $ |
|---|---|

✓

**5A. If damages are awarded pursuant to question 4A, and the plaintiff is entitled to punitive damages from Officer Randall, what** *amount of* **punitive damages for breach of plaintiff's constitutional rights** ~~are~~ *is* **awarded from Officer Randall?**

| PUNITIVE DAMAGES | $ |
|---|---|

✓

**5B. If damages are awarded pursuant to question 4B, and the plaintiff is entitled to punitive damages from Officer Burbridge, what** *amount of* **punitive damages for breach of plaintiff's constitutional rights are awarded from Officer Burbridge?**

| PUNITIVE DAMAGES | $ |
|---|---|

A1437

COURT EXHIBIT 4
Proposed Jury Charge, Dated April 20, 2012
(pp. A1437-A1451)

REPRODUCED FOLLOWING

## A 1438

**DRAFT: APRIL 20, 2012**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**PROPOSED JURY CHARGE**

JOSHUA MARSHALL,

              Plaintiff,

      – against –

THE CITY OF NEW YORK, P.O. SALIM
RANDALL, Shield No. 15331, Individually
and in His Official Capacity, P.O. MICHAEL
BURBRIDGE, Shield No. 15488, Individually
and in His Official Capacity, and P.O.'s
"JOHN DOE" #1-10, Individually and in their
Official Capacities, (the name John Doe being
fictitious, as their true names are presently
unknown),

              Defendants.

10-CV-2714

---

**JACK B. WEINSTEIN, Senior United States District Judge:**

**I.    INTRODUCTION**

    Ladies and Gentlemen of the jury:

    I will instruct you on the law. It is your duty to follow these instructions. My instructions will be in three parts.

    First, regarding the general rules that define and govern the duties of a jury in a civil case.

    Second, as to the legal elements of the claims asserted by the plaintiff, I will provide the specific elements that the plaintiff must prove with respect to each of his claims to warrant a finding of liability on the part of a defendant. A discussion of damages is included.

    Third, giving you some guidance regarding your deliberations.

1

COURT'S
EXHIBIT NO. 4
IDENTIFICATION/EVIDENCE
DKT.# 10 cv 2714
DATE: 4/25/12

A 1439

Please read these instructions along with me.  You may take them into the jury room.

You will have a list of documents and objects that were admitted into evidence.  Ask for any of them or for a transcript of the testimony that you wish to see.

## II.   GENERAL RULES

### A.  Role of the Court and of the Jury

You are the sole judges of the facts.  Decide which of the witnesses you believe, what portion of their testimony you accept, and how much weight you give to it.

I have no view regarding the liability of any defendant.  Nothing that I have said or done should be used by you to infer that I have such a view.

Your verdict must be based exclusively on the evidence or lack of evidence in the case and the law as I explain it to you.  Do not consider any personal feelings that you may have about the race, religion, national origin, ethnic background, gender, or age of the plaintiff or a defendant.  Do not do any research of your own, by computer or otherwise.

### B.  All Parties and Witnesses Equal

No party is entitled to any sympathy or favor.  All parties are equal before this court.  The fact that the defendants are police officers does not entitle them to any greater or lesser consideration than the plaintiff.

### C.  Claims and Burden of Proof

Whenever I say that a party has the burden of proof on a particular issue, I mean that, considering all of the evidence in the case, the party's claim on that issue must be established as more probably true than not true.  If the probabilities are equal—that is, the scales are evenly balanced—the party has not met his burden.

2

# A 1440

The plaintiff makes three claims. First, that he was arrested by the defendants after the officers saw a gun thrown into the street, and that the arrest was illegal because the defendants falsely alleged that they saw him throw it, though they in fact did not know whose gun it was. Second, that criminal charges, based on fabricated evidence regarding the events leading to his arrest, were maliciously brought against him. Third, that one or both of the defendants violated his constitutional right to a fair trial by presenting false evidence to state prosecutors in order to procure an indictment.

Thus, the first issue is whether the plaintiff was falsely arrested by the defendants. The second issue is whether the plaintiff was maliciously prosecuted by the defendants. The third issue is whether the plaintiff was denied his constitutional right to a fair trial by the defendants. If and only if you decide one or more of these questions in the plaintiff's favor will you be required to consider the amount of damages to which the plaintiff is entitled.

The plaintiff has the burden of proving each element of his claims, except for the probable cause element of his false arrest claim. The burden is on a defendant to prove that he had probable cause to arrest the plaintiff.

## D. Unanimity of Decision

Your decision on any issue must be unanimous. All of you must agree on the answer to questions on the verdict sheet that I will give you.

## E. Evaluation of the Evidence

You will have a list of witnesses. Ask for a transcript of any part of the testimony that you wish to see. Try to be specific.

Communicate with me in writing to ask for any evidence, help on the law, or any other matter. Give a note with your question to the Marshal.

During the trial, objections were raised and rulings made. Draw no inferences from the frequency of objections or from whether objections were sustained or overruled. Where an objection to a question was sustained, disregard the question and draw no inferences from its wording. Where testimony was stricken, disregard it.

On occasion, I gave limiting instructions on how evidence could be used. Follow those instructions.

Give the evidence such weight as you think it deserves. Analyze the evidence dispassionately, rationally, and without prejudice or emotion.

You may draw reasonable inferences from the evidence. Testimony from the witnesses and the exhibits are evidence. A lawyer's questions without an answer, arguments, and the opening and closing statements are not evidence.

### F. Witnesses

#### 1. General Principles

Decide which testimony to believe and which not to believe. Consider the following: each witness's demeanor and manner of testifying; his or her opportunity to see, hear, and know about the events he or she described; the witness's ability to recall and describe those things; the reasonableness of the testimony in light of all of the other evidence in the case; and the interest of a witness in the outcome of the trial. Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what that witness said or did on a prior occasion, and by the testimony of other witnesses or by other evidence.

If you find that a witness has willfully testified falsely as to an important matter, you may disregard the entire testimony, or you may accept as much of the testimony as you find true and

4

## A 1442

disregard what you find false. A witness may have been mistaken or may have lied with respect to part of his or her testimony while having been accurate or truthful with respect to other parts.

### 2.    Testimony of Out-of-Court Declarants

You have heard evidence concerning what people outside the courtroom said about events. You are entitled to consider these statements as evidence. In evaluating these statements, remember that these individuals were not cross-examined before you when the statement was made. In considering the probative force of statements of individuals who have not testified, apply the same credibility tests that you apply with respect to individuals who have testified.

### 3.    Testimony of Expert Witnesses

A person described as an expert is a witness who has acquired specialized knowledge by education, experience, or training. Such a witness is permitted to give an opinion and to give the reasons for it.

In weighing this testimony, you should consider the factors that generally bear upon the credibility of any witness, as well as the witness's education, training and experience, the soundness of the reasons given for the opinion, and all other evidence in the case. You should also consider whether the assumptions on which the witness relied were proven.

### G.  Judicial Notice

The court has taken judicial notice of certain facts or events. You shall accept these facts or events as evidence and regard as proven any fact or event that has been judicially noticed.

## III.    CLAIMS OF PLAINTIFF

Three claims are asserted by plaintiff under Section 1983 of Title 42 of the United States Code against police officers Salim Randall and Michael Burbridge.

# A 1443

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights by state or local officials acting under color of state law.  It states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To make out a claim under Section 1983, the plaintiff must prove:

**First**, that the defendant officers acted intentionally or recklessly;

**Second,** that the conduct complained of was committed by a person acting under color of state law;

**Third**, that this conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States; and

**Fourth**, that the defendants' acts were a proximate cause of damages sustained by the plaintiff.

## A.  **Intentional or Reckless Conduct**

An act is intentional if it is done knowingly, that is, if it is done voluntarily and deliberately, and not because of mistake, accident, negligence, or other innocent reason.  An act is reckless if it is done in conscious disregard of its known probable consequences.

## B.  **Color of State Law**

The defendants, as New York City police officers, were acting under color of state law when they arrested plaintiff.  This element is deemed proven.

6

## A 1444

### C. **Deprivation of Constitutional Right**

#### 1.    **False Arrest**

Plaintiff Marshall claims that defendants Randall and Burbridge falsely arrested him on

May 15, 2008, in violation of the Fourth Amendment to the Constitution.

A person is falsely arrested when (1) the defendant intended to confine the plaintiff; (2)

the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the

confinement; and (4) the confinement was not privileged.

The issue for you on this claim is whether the arrest was privileged, that is to say,

whether there was probable cause for plaintiff's arrest. Defendants contend that there was

probable cause to arrest the plaintiff for the illegal possession of a firearm. The plaintiff

contends that there was no probable cause to arrest him for that crime. If there was an

objectively reasonable ground for the officers' belief that a crime had been, or was being,

committed by the plaintiff, then the arrest was privileged.

If one defendant had probable cause to arrest, then both defendants are deemed to have

had probable cause. *An officer may rely on information supplied to him by another officer who made observations at the scene.*
The existence of probable cause is measured at the moment of arrest. However, you are *may*
*as one piece of evidence, together with all the evidence in the case,*
~~permitted~~ to consider the fact that the charges against the plaintiff were later dismissed in

determining whether probable cause to arrest existed.

The failure of an officer to make a further inquiry before making an arrest, when a

reasonable person would have done so, may, but does not necessarily, show a lack of probable

cause. An officer is not required to conduct a full investigation prior to executing an arrest. But

he may not ignore relevant evidence that he is aware of, or deliberately disregard facts he is

aware of, that tend to rebut the existence of probable cause to arrest.

7

A 1445

*[handwritten annotation at top: "M/A Defendants can not be held liable for what he they said to the grand jury; they may be held liable"]*

The defendants have the burden of showing that probable cause existed for this arrest.

*[handwritten annotation in right margin: "for what they he said to the prosecutor, the district attorney."]*

With regard to the substantive crimes on which plaintiff's arrest was premised, a person

is guilty of the criminal possession of a weapon when he "possesses any firearm," except under

limited circumstances not relevant here. *See* N.Y. Penal Law §§ 265.01(1), 265.20.

### 2.    **Malicious Prosecution**

Plaintiff Marshall claims that defendant Randall and defendant Burbridge maliciously

prosecuted him by providing false statements to, and withholding relevant evidence that each

was aware of, from a state prosecuting attorney. Plaintiff was indicted ~~by a grand jury of~~ *[handwritten: on]* three

counts of the criminal possession of a weapon.

A person is maliciously prosecuted when (1) criminal proceedings are initiated or

continued against him by the defendant; (2) the proceedings are terminated in his favor; (3) there

was no probable cause for the commencement of the proceeding; and (4) a defendant's actions

leading to the initiation of the proceeding against plaintiff were motivated by malice of the

defendant.

There is no dispute that criminal proceedings were commenced and continued ~~by the~~

~~defendants against the plaintiff~~ and that they ended in ~~his~~ *[handwritten: plaintiff's]* favor. ~~The charges against Marshall~~

~~were dismissed in May 2009 for a violation of speedy trial guarantee.~~

The critical decisions for you are whether there was probable cause for the initiation of

the proceedings and whether a defendant's assistance in the initiation of the proceedings was

motivated by malice.

Probable cause to prosecute exists when the facts and circumstances within the person's

knowledge at the time he takes steps to proceed with the prosecution are sufficient for a person

of reasonable prudence to believe that a violation of law was committed.

8

# A 1446

The question here is whether either or both of the defendant officers believed that there was probable cause to initiate or assist in the prosecution of plaintiff.

A defendant initiates or continues a prosecution maliciously if he initiates or continues it for a wrongful purpose, that is, if his goal is not to bring an alleged offender to justice. For example, if he acts out of ill will or personal hostility towards a person accused, or he acts out of a desire to punish a person without due process, then he can be said to have acted with malice. You are permitted—but are not required—to infer that malice existed if you find that a defendant lacked probable cause to initiate and continue with the charges against the plaintiff.

If probable cause existed for Officers Randall and Burbridge to present the evidence they did to the state prosecuting attorney, then you must find for the defendants on this claim. If no probable cause existed, but the defendants did not act with malice, then you must find for the defendants on this claim.

### 3.    Constitutional Right to a Fair Trial

Every person has a right not to be prosecuted on the basis of information that is known by the government to be false. The government's doing so violates the Constitution.

The question for you on this claim is whether the plaintiff has proven that the defendants knowingly created false evidence and presented it to the prosecutor, leading to a deprivation of the plaintiff's liberty. If a defendant presented accurate evidence to the prosecutor, or presented inaccurate evidence without the requisite intent, then you must find for the defendant.

### D. Proximate Cause

The third element that plaintiff must prove is that the acts of Officer Randall and Officer Burbridge were a proximate cause of injuries he sustained.

9

A 1447

There can be more than one proximate cause. An injury or damage is proximately caused by an act or failure to act whenever the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that injury was the direct or a reasonably probable consequence of the act or omission. To recover damages, Marshall has the burden of proving that he suffered an injury and that the injury would not have occurred without the wrongful conduct of the defendant.

IV.    **DAMAGES**

If the plaintiff has proven liability on a claim, you must determine the damages, if any, that he has proven on that claim. Do not infer that he is entitled to recover damages merely because I am instructing you on this issue. It is exclusively your function to decide upon liability.

A.  **Compensatory Damages**

If liability is proven on a claim, you must award the plaintiff sufficient damages against the defendants to compensate him for any injury proximately caused by Officer Randall and Officer Burbridge's actions that created the liability. Damages of this type are known as compensatory damages. Their purpose is to make a plaintiff whole.

The compensatory damages you award, if any, should be fair and reasonable, neither inadequate nor excessive. You should award damages only for injuries the plaintiff has suffered or is reasonably likely to suffer as a proximate result of the claimed injury.

In awarding compensatory damages, you must be guided by dispassionate common sense. Use as much definiteness and accuracy as the circumstances permit.

P/ Plaintiff claims as the injury that he spent/served four and a half months in jail.

10

# A 1448

Each defendant is entitled to fair, separate, and individual consideration. If you find that only one is responsible for a particular injury, then you must impose damages, if any, for that injury only upon that defendant.

## B. Punitive Damages

If you award compensatory damages, you may award additional punitive damages if you find that a defendant engaged in extraordinary misconduct. You may do so to express your disapproval and to serve as an example or warning to others who might otherwise engage in similar conduct.

If you find in favor of plaintiff and against a defendant, and if you find that the defendant acted so maliciously, wantonly, or oppressively as to warrant an award of punitive damages, you may make such an award. To justify an award of punitive damages, a defendant's misconduct must be based upon a reckless or callous disregard of the rights of the plaintiff, or a gross indifference towards them; you may also award punitive damages if a defendant acted to punish the plaintiff out of ill will or spite.

You may assess punitive damages against either or both of the defendants, or you may refuse to impose punitive damages at all. If punitive damages are assessed against more than one defendant, the amounts assessed against each defendant may be the same, or they may be different.

## V.   CONCLUDING REMARKS

Do not communicate with anyone outside the jury room except the court about your deliberations, or about anything else regarding this case. You may send a note to me, signed by your foreperson, through the Marshal to ask for help on the law or for any other assistance.

11

**A 1449**

Discuss the issues with respect for each other. Do not hesitate to change your mind after considering each matter. Each of you is individually responsible for your vote.

If you are divided, do not report how the vote stands. If you have reached a verdict, do not report what it is to anyone until you are asked in open court. Inform the court when you have reached a verdict; do not inform me what your verdict is.

Render your verdict without fear, without favor, without prejudice, and without sympathy.

## A 1450

### VERDICT SHEET

#### (Page 1 of 2)

**1A.** Did Officer Randall falsely arrest the plaintiff on May 15, 2008?

| YES | NO |
|-----|-----|
|     |     |

**1B.** Did Officer Burbridge falsely arrest the plaintiff on May 15, 2008?

| YES | NO |
|-----|-----|
|     |     |

**2A.** Did Officer Randall maliciously prosecute the plaintiff?

| YES | NO |
|-----|-----|
|     |     |

**2B.** Did Officer Burbridge maliciously prosecute the plaintiff?

| YES | NO |
|-----|-----|
|     |     |

**3A.** Did Officer Randall violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?

| YES | NO |
|-----|-----|
|     |     |

13

# A 1451

(Page 2 of 2)

**3B. Did Officer Burbridge violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?**

| YES | NO |
|-----|-----|
|     |     |
|     |     |

If you answer all of the above questions in the negative, do not continue to the following questions. If you answer one or more of the above questions in the affirmative, continue to the following questions.

**4A. What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights by Officer Randall?**

| COMPENSATORY DAMAGES | $ |
|----------------------|---|

**4B. What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights by Officer Burbridge?**

| COMPENSATORY DAMAGES | $ |
|----------------------|---|

**5A. If damages are awarded pursuant to question 4A, and the plaintiff is entitled to punitive damages from Officer Randall, what punitive damages for breach of plaintiff's constitutional rights are awarded from Officer Randall?**

| PUNITIVE DAMAGES | $ |
|------------------|---|

**5B. If damages are awarded pursuant to question 4B, and plaintiff is entitled to punitive damages from Officer Burbridge, what punitive damages for breach of plaintiff's constitutional rights are awarded from Officer Burbridge?**

| PUNITIVE DAMAGES | $ |
|------------------|---|

A1452

COURT'S EXHIBIT 5
Proposed Jury Charge, Dated April 17, 2012
(pp. A1452-A1465)

REPRODUCED FOLLOWING

A 1453



<u>DRAFT: APRIL 17, 2012</u>

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**PROPOSED JURY CHARGE**

JOSHUA MARSHALL,

        Plaintiff,

    – against –

THE CITY OF NEW YORK, P.O. SALIM
RANDALL, Shield No. 15331, Individually
and in His Official Capacity, P.O. MICHAEL
BURBRIDGE, Shield No. 15488, Individually
and in His Official Capacity, and P.O.'s
"JOHN DOE" #1-10, Individually and in their
Official Capacities, (the name John Doe being
fictitious, as their true names are presently
unknown),

        Defendants.

10-CV-2714

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.    <u>**INTRODUCTION**</u>

    Ladies and Gentlemen of the jury:

    I will instruct you on the law. It is your duty to follow these instructions. My

instructions will be in three parts.

    First, regarding the general rules that define and govern the duties of a jury in a civil case.

    Second, as to the legal elements of the claims asserted by the plaintiff, I will provide the

specific elements that the plaintiff must prove with respect to each of his claims to warrant a

finding of liability on the part of a defendant.

    Third, giving you some guidance regarding your deliberations.

1



# A 1454

Please read these instructions along with me. You may take them into the jury room.

You will have a list of documents and objects that were admitted into evidence. Ask for any of them or for a transcript of the testimony that you wish to see.

## II.    GENERAL RULES

### A. Role of the Court and of the Jury

You are the sole judges of the facts. Decide which of the witnesses you believe, what portion of their testimony you accept, and how much weight you give to it.

I have no view regarding the liability of any defendant. Nothing that I have said or done should be used by you to infer that I have such a view.

Your verdict must be based exclusively on the evidence or lack of evidence in the case and the law as I explain it to you. Do not consider any personal feelings that you may have about the race, religion, national origin, ethnic background, gender, or age of the plaintiff or a defendant. Do not do any research of your own, by computer or otherwise.

### B. All Parties and Witnesses Equal

No party is entitled to any sympathy or favor. All parties are equal before this court. The fact that the defendants are police officers does not entitle them to any greater or lesser consideration than the plaintiff.

### C. Claims and Burden of Proof

Whenever I say that a party has the burden of proof on a particular issue, I mean that, considering all of the evidence in the case, the party's claim on that issue must be established as more probably true than not true. If the probabilities are equal—that is, in equipoise—the party has not met his burden.

2

## A 1455

The plaintiff makes three claims. First, that he was arrested by the defendants after the *defendants did not see who threw the gun, but nonetheless* ~~officers observed plaintiff's companion throw a gun into the street, and that the arrest was illegal~~ *falsely alleged they saw plaintiff throw the gun even though* ~~because his companion, rather than he, threw the weapon, and the police knew it~~. Second, that *they did not know who in fact threw it* 

criminal charges, based on fabricated evidence regarding the events leading to his arrest, were

maliciously brought against him. Third, that one or both of the defendants violated his

constitutional right to a fair trial by presenting false evidence to state prosecutors in order to

procure an indictment. *Since there was no judicial warrant for the arrest in this case, defendants have the burden of proving they had probable cause to arrest plaintiff.*

Thus, the first issue is whether the plaintiff was falsely arrested by the defendants. The

second issue is whether the plaintiff was maliciously prosecuted by the defendants. The third

issue is whether the plaintiff was denied his constitutional right to a fair trial by the defendants.

If and only if you decide one or more of these questions in the plaintiff's favor will you be

required to consider the amount of damages to which the plaintiff is entitled.

The plaintiff has the burden of proving each element of his claims, except for the

probable cause element of his false arrest claim. The burden is on a defendant, when an arrest is

not made pursuant to a judicial warrant, to prove that he had probable cause to arrest.

### D.  Unanimity of Decision

Your decision on any issue must be unanimous. All of you must agree on the answer to

questions on the verdict sheet I will give you.

### E.  Evaluation of the Evidence

You will have a list of witnesses. Ask for a transcript of any part of the testimony that

you wish to see. Try to be specific.

Communicate with me in writing to ask for any evidence, help on the law, or any other

matter. Give a note with your question to the Marshal.

3

**A 1456**

During the trial, objections were raised and rulings made. Draw no inferences from the frequency of objections or from whether objections were sustained or overruled. Where an objection to a question was sustained, disregard the question and draw no inferences from its wording. Where testimony was stricken, disregard it.

On occasion, I gave limiting instructions on how evidence could be used. Follow those instructions.

Give the evidence such weight as you think it deserves. Analyze the evidence dispassionately, rationally, and without prejudice or emotion.

You may draw reasonable inferences from the evidence. Testimony from the witnesses and the exhibits are evidence. A lawyer's questions without an answer, arguments, and the opening and closing statements are not evidence.

### F.  Witnesses

#### 1.    General Principles

Decide which testimony to believe and which not to believe. Consider the following: each witness's demeanor and manner of testifying; his or her opportunity to see, hear, and know about the events he or she described; the witness's ability to recall and describe those things; the reasonableness of the testimony in light of all of the other evidence in the case; and the interest of a witness in the outcome of the trial. Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what that witness said or did on a prior occasion, and by the testimony of other witnesses or by other evidence.

If you find that a witness has willfully testified falsely as to an important matter, you may disregard the entire testimony, or you may accept as much of the testimony as you find true and

**A 1457**

disregard what you find false. A witness may have been mistaken or may have lied with respect to part of his or her testimony while having been accurate or truthful with respect to other parts.

Attorneys were entitled to interview witnesses outside of court to prepare for trial.

### 2.    Testimony of Out-of-Court Declarants

You have heard evidence concerning what people outside the courtroom said about events. You are entitled to consider these statements as evidence. In evaluating these statements, remember that these individuals were not cross-examined before you when the statement was made. In considering the probative force of statements of individuals who have not testified, apply the same credibility tests that you apply with respect to individuals who have testified.

### 3.    Testimony of Expert Witnesses

Persons described as experts are witnesses who have acquired specialized knowledge by education, experience, or training. They are permitted to give their opinions and to give the reasons for them.

In weighing their testimony, you should consider the factors that generally bear upon the credibility of any witness, as well as the witness's education, training and experience, the soundness of the reasons given for the opinion, and all other evidence in the case. You should also consider whether the assumptions on which the witness relied were proven.

### G. Judicial Notice

The court has taken judicial notice of certain facts or events. You shall accept these facts or events as evidence and regard as proven any fact or event that has been judicially noticed.

A 1458

III.    **CLAIMS OF PLAINTIFF**

Three claims are asserted by plaintiff under Section 1983 of Title 42 of the United States

Code against police officers Salim Randall and Michael Burbridge.

Section 1983 provides a remedy for individuals who have been deprived of their

constitutional rights under color of state law by state or local officials.  It states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subject, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured . . . .

To make out a claim under Section 1983, the plaintiff must prove:

**First**, that the defendant officers acted intentionally or recklessly.

**Second,** that the conduct complained of was committed by a person acting under color of

state law;

**Third**, that this conduct deprived the plaintiff of a right, privilege, or immunity secured

by the Constitution or laws of the United States, and

**Fourth,** that the defendants' acts were a proximate cause of damages sustained by the

plaintiff.

### A.  **Intentional or Reckless Conduct**

An act is intentional if it is done knowingly, that is, if it is done voluntarily and

deliberately, and not because of mistake, accident, negligence, or other innocent reason.  An act

is reckless if it is done in conscious disregard of its known probable consequences.

### B.  **Color of State Law**

The defendants, as New York City police officers, were acting under color of state law

when they arrested plaintiff.  This element is deemed proven.

6

## A 1459

### C. Deprivation of Constitutional Right

#### 1.    False Arrest

Plaintiff Marshall claims that defendants Randall and Burbridge falsely arrested him on

May 15, 2008, in violation of the Fourth Amendment of the Constitution.

A person is falsely arrested when (1) the defendant intended to confine the plaintiff; (2)

the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the

confinement; and (4) the confinement was not privileged.

The key issue for you on this claim is whether the arrest was privileged. Defendants

contend that there was probable cause to arrest the plaintiff for the illegal possession of a

firearm. The plaintiff contends that there was no probable cause to arrest him ~~for that or any~~

~~other crime.~~ If there was an objectively reasonable ground for the officers' ~~belief that a crime~~ *observed*

*plaintiff with a gun*

~~had been, or was being, committed by the plaintiff~~, then the arrest was privileged.

The existence of probable cause is measured at the moment of arrest. Whether charges *You may consider that the*

*dismissed in deciding the issue of probable cause.*

were ~~dropped or whether the plaintiff was acquitted or convicted of a crime is irrelevant on~~ this

~~issue.~~

The failure of an officer to make a further inquiry before making an arrest, when a

reasonable person would have done so, may, but does not necessarily, show a lack of probable

cause. An officer is not required to conduct a full investigation prior to executing an arrest. But

he may not ignore relevant evidence that he is aware of, or deliberately disregard facts he is

aware of that tend to rebut the existence of probable cause to arrest.

A defendant has the burden of showing that probable cause existed for *this* ~~the~~ arrest.

7

# A 1460

With regard to the substantive crimes on which plaintiff's arrest was premised, a person is guilty of the criminal possession of a weapon when he "possesses any firearm," except under limited circumstances not relevant here. *See* N.Y. Penal Law §§ 265.01(1), 265.20.

### 2.    **Malicious Prosecution**

Plaintiff Marshall claims that defendant Randall and defendant Burbridge maliciously prosecuted him by providing false statements to, and withholding relevant evidence each was aware of, from a state prosecuting attorney. Plaintiff was indicted by a grand jury of three counts of the criminal possession of a weapon.

A person is maliciously prosecuted when (1) criminal proceedings are initiated or continued against him by the defendant; (2) the proceedings are terminated in his favor; (3) there was no probable cause for the commencement of the proceeding; and (4) a defendant's actions leading to the initiation of the proceeding against plaintiff were motivated by malice of the defendant.

There is no dispute that criminal proceedings were commenced and continued by the [with the assistance of] defendants against the plaintiff and that they ended in his favor. The charges against Marshall were dismissed ~~for failure to comply with speedy-trial rules — that is to say, he should have been tried sooner. That is deemed a termination favorable~~ on May 27, 2009 to the accused.

The critical decisions for you are whether there was probable cause for the commencement of the proceedings and whether either defendant's assistance in the commencement of the proceedings was motivated by malice.

Probable cause to prosecute exists when the facts and circumstances within the person's knowledge at the time he takes steps to proceed with the prosecution are sufficient for a person of reasonable prudence to believe that a violation of law was committed.

8

## A 1461

*You may infer malice based upon your a finding that the defendant lacked probable cause to initiate and continue*

The question here is whether either or both of the defendant officers believed that there *with any charges against plaintiff.*

was probable cause to initiate or assist in the prosecution of plaintiff.

A defendant initiates or continues a prosecution maliciously if he initiates or continues it

for a wrongful purpose, that is, if his goal is not to bring an alleged offender to justice. For

example, if he acts out of ill will or personal hostility towards a person accused, or he acts out of

a desire to punish a person without due process, then he can be said to have acted with malice.

If probable cause existed for Officers Randall and Burbridge to present the evidence they

did to the state prosecuting attorney, then you must find for the defendants on this claim. If no

probable cause existed, but the defendants did not act with malice, then you must find for the

defendants on this claim.

### 3.    Constitutional Right to a Fair Trial

Every person has a right not to be prosecuted on the basis of information that is known by

the government to be false. The government's doing so violates the Constitution.

The question for you on this claim is whether the defendants knowingly presented false

information to the prosecutor, which led to ~~an indictment being issued against the plaintiff~~ *a deprivation of plaintiffs' liberty.* If a

defendant presented accurate evidence to the prosecutor, or presented inaccurate evidence

without the requisite intent, then you must find for the defendant.

### D.    Proximate Cause

The third element that plaintiff must prove is that the acts of Officer Randall and Officer

Burbridge were a proximate cause of injuries he sustained.

There can be more than one proximate cause. An injury or damage is proximately caused

by an act or failure to act whenever the act or omission played a substantial part in bringing

about or actually causing the injury or damage, and that injury was the direct or a reasonably

9

probable consequence of the act or omission. To recover damages, Marshall has the burden of proving that he suffered an injury and that the injury would not have occurred without the wrongful conduct of the defendant.

## IV.    <u>DAMAGES</u>

If the plaintiff has proven liability on a claim, you must determine the damages to which he is entitled on that claim. Do not infer that he is entitled to recover damages merely because I am instructing you on this issue. It is exclusively your function to decide upon liability.

### A    <u>Compensatory and Nominal Damages</u>

If liability is proven on a claim, you must award the plaintiff sufficient damages against the defendants to compensate him for any injury proximately caused by Officer Randall and Officer Burbridge's actions that created the liability. Damages of this type are known as compensatory damages. Their purpose is to make a plaintiff whole.

The compensatory damages you award, if any, should be fair and reasonable, neither inadequate nor excessive. You should award damages only for injuries the plaintiff has suffered or is reasonably likely to suffer as a proximate result of the claim.

If you find both defendants are liable to the plaintiff on one or more of his claims, any amount of damages you award is to be assessed as against both defendants.

In awarding compensatory damages, you must be guided by dispassionate common sense. Use as much definiteness and accuracy as the circumstances permit.

~~If compensatory damages were nominal, you may award an appropriate sum, in the amount of a dollar or more.~~

B. Punitive Damages

**A 1463**

**V.    CONCLUDING REMARKS**

Do not communicate with anyone outside the jury room except the court about your deliberations or about anything else regarding this case.  You may send a note to me, signed by your foreperson, through the Marshal to ask for help on the law or for any other assistance.

Discuss the issues with respect for each other.  Do not hesitate to change your mind after considering each matter.  Each of you is individually responsible for your vote.

If you are divided, do not report how the vote stands.  If you have reached a verdict, do not report what it is to anyone until you are asked in open court.  Inform the court when you have reached a verdict; do not inform me what your verdict is.

Render your verdict without fear, without favor, without prejudice, and without sympathy.

11

A 1464

## VERDICT SHEET

### (Page 1 of 2)

1A. Did Officer Randall falsely arrest the plaintiff on May 15, 2008?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

1B. Did Officer Burbridge falsely arrest the plaintiff on May 15, 2008?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

2A. Did Officer Randall maliciously prosecute the plaintiff?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

2B. Did Officer Burbridge maliciously prosecute the plaintiff?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

3A. Did Officer Randall violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?

| YES | NO |
|-----|-----|
|     |     |
|     |     |

12

## A 1465

(Page 2 of 2)

**3B.  Did Officer Randall violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?**

| YES | NO |
|-----|-----|
|     |     |
|     |     |

**4.  What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights?**

| COMPENSATORY DAMAGES | $ |
|----------------------|---|

**5.  If no damages are awarded pursuant to question 4, but plaintiff is entitled to damages, what damages for breach of plaintiff's constitutional rights are awarded?**

| NOMINAL DAMAGES | $ |
|-----------------|---|

13

A1466

<u>COURT'S EXHIBIT 6</u>
List of Witness
(pp. A1466-A1467)

REPRODUCED FOLLOWING

Marshall v. Randall et al.          10 CV 02714 (JBW)
List of Trial Witnesses

1. Police Officer Salim Randall, testified on 4/24/12

2. Police Officer Michael Burbridge, testified on 4/24/12

3. Plaintiff Joshua Marshall, testified on 4/24/12

4. Police Officer Kieran Fox, testified on 4/24/12

5. Police Officer Joseph Senz, testified on 4/25/12

6. Nena Lamousie-Smith, testified on 4/25/12



A1468

<u>COURT'S EXHIBIT 7</u>
List of Exhibits
(pp. A1468-A1469)

REPRODUCED FOLLOWING

Marshall v Randall et al.     10 CV-02714 (JBW)
List of Exhibits in Evidence

✓ Plaintiff's Exhibit 6 - Arrest Report

✓ Plaintiff's Exhibit 16 - Complaint Report        + 16 (blowup)

✓ Plaintiff's Exhibit 17 - Criminal Court Complaint + blowup.
                                                    (+ blowup)

✓ Plaintiff's Exhibit 2 - Handwritten version of Complaint Report & bl.

✓ Plaintiff's Exhibit 1 - P.O. Randall's memobook + blowup

✓ Plaintiff's Exhibit 11 - UF250 for Plaintiff

✓  Plaintiff's Exhibit 18 - Certificate of Disposition
✓  Plaintiff's Exhibit 3 - Evidence Collection Team Report
   Plaintiff's Exhibit

✓  Defendants' Exhibit F, - Enlarged photo corner of
                          Broadway and Park Street

🖊  Defendants Exhibit D, - Enlarged photo of Park Street /Arrest scene

✓  Defendants Exhibit C, - Enlarged photo of gun

✓ Defendants Exhibit G - Photo of Park Street (right side)

✓  Defendants Exhibit E - Photo of Park Street (left side)

✓  Defendants' Exhibit E, - Enlarged photo of Park Street
                                            (left side)

COURT'S
EXHIBIT NO. 7
IDENTIFICATION/EVIDENCE
DKT.# 40-2714
DATE:

A1470

COURT'S EXHIBIT 8
Jury Note
(pp. A1470-A1471)

REPRODUCED FOLLOWING

**A 1471**

ASKING, FOR ALL
EVIDENCE

COURT'S
EXHIBIT NO. _____ 8
IDENTIFICATION/EVIDENCE
DKT.#
DATE:

A1472

COURT'S EXHIBIT 9
Jury Note
(pp. A1472-A1473)

REPRODUCED FOLLOWING

QUESTION:

CAN XUIT GIVE PUNITIVE
AWARDS WITH EXIT GIVING
COMPENSATORY?

" SECTION IV PART B"

COURT'S
EXHIBIT NO. a
IDENTIFICATION/EVIDENCE
DKT.# 11-12-114
DATE:
PENGAD 800-631-6989

A1474

COURT'S EXHIBIT 10
Jury Note
(pp. A1474-A1475)

REPRODUCED FOLLOWING



Punitive Damages Follow Up

Your honor, we had reviewed the packet + one additional time and had found the wording in the Section IV part b to be confusing. We wanted to ask first before making our ruling. You have since clarified the confusion.

COURT'S
EXHIBIT NO. 10
IDENTIFICATION/EVIDENCE
DKT # 9:10-cr-3:1uk
DATE:

A1476

<u>COURT'S EXHIBIT 11</u>
Jury Note
(pp. A1476-A1477)

REPRODUCED FOLLOWING

A 1477

WILL ALL COME BACK
TOMORROW @ 11:00 AM
4/26/12.



A1478

<u>VERDICT SHEET</u>
(pp. A1478-A1481)

REPRODUCED FOLLOWING

**A 1479**

**EXHIBIT A**

A 1480

Case 1:10-cv-02714-JBW-VVP   Document 85-1   Filed 05/18/12   Page 2 of 3 PageID #: 1140

## VERDICT SHEET

### (Page 1 of 2)

**1A. Did Officer Randall falsely arrest the plaintiff on May 15, 2008?**

| YES | NO |
|-----|-----|
| ✓ | |

**1B. Did Officer Burbridge falsely arrest the plaintiff on May 15, 2008?**

| YES | NO |
|-----|-----|
| ✓ | |

**2A. Did Officer Randall maliciously prosecute the plaintiff?**

| YES | NO |
|-----|-----|
| ✓ | |

**2B. Did Officer Burbridge maliciously prosecute the plaintiff?**

| YES | NO |
|-----|-----|
| ✓ | |

**3A. Did Officer Randall violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?**

| YES | NO |
|-----|-----|
| ✓ | |

13

(Page 2 of 2)

**3B. Did Officer Burbridge violate plaintiff's constitutional right to a fair trial by knowingly presenting false evidence to the prosecutor?**

| YES | NO |
|-----|-----|
| ✓ |  |

If you answer all of the above questions in the ~~negative~~, do not continue to the following questions. If you answer one or more of the above questions in the affirmative, continue to the following questions.

**4A. What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights by Officer Randall?**

| COMPENSATORY DAMAGES | $ | 701000 |
|----------------------|---|--------|

**4B. What amount of money, if any, is necessary to compensate the plaintiff for his injuries proximately caused by a violation of one or more of his rights by Officer Burbridge?**

| COMPENSATORY DAMAGES | $ | 70,000 |
|----------------------|---|--------|

**5A. If damages are awarded pursuant to question 4A, and the plaintiff is entitled to punitive damages from Officer Randall, what punitive damages for breach of plaintiff's constitutional rights are awarded from Officer Randall?**

| PUNITIVE DAMAGES | $ | 25,000 |
|------------------|---|--------|

**5B. If damages are awarded pursuant to question 4B, and the plaintiff is entitled to punitive damages from Officer Burbridge, what punitive damages for breach of plaintiff's constitutional rights are awarded from Officer Burbridge?**

| PUNITIVE DAMAGES | $ | 25,000 |
|------------------|---|--------|

A1482

ORDER, DATED APRIL 27, 2012
(pp. A1482-A1483)

REPRODUCED FOLLOWING

# A 1483

Case 1:10-cv-02714-JBW-VVP   Document 77   Filed 04/30/12   Page 1 of 1 PageID #: 1097

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N Y

★ APR 3 0 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**ORDER**

JOSHUA MARSHALL,

Plaintiff,

- against –

10-CV-2714

SALIM RANDALL and MICHAEL
BURBRIDGE,

Defendants.

**JACK B. WEINSTEIN, Senior United States District Judge:**

On consent of the parties, the City of New York and the anonymous defendants named by

plaintiff in his complaint are dismissed as defendants.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   April 27, 2012
        Brooklyn, New York



1

A1484

<u>NOTICE OF APPEAL, DATED JUNE 15, 2012</u>
(pp. A1484-A1485)

REPRODUCED FOLLOWING

## A 1485

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOSHUA MARSHALL,

                                              Plaintiff,              **NOTICE OF APPEAL**

                        -against-                                     10 CV 2714 (JBW)

THE CITY OF NEW YORK, et al,

                                              Defendant.
-------------------------------------------------------------------x

        **PLEASE TAKE NOTICE** that the defendant hereby appeals to the United States Court of Appeals for the Second Circuit, from the judgment of the Honorable Jack B. Weinstein, herein entered June 6, 2012.

        This appeal is taken from each and every part of said judgment as well as from the whole thereof.

Dated:      New York, New York
           June 15, 2012

                             MICHAEL A. CARDOZO
                             Corporation Counsel of the
                               City of New York
                             Attorney for Defendant
                             100 Church Street
                             New York, New York 10007
                             (212) 788-1010

                  By:

                             LEONARD KOERNER
                             Chief, Appeals Division

COHEN & FITCH LLP
233 Broadway, Suite 1800
New York, NY 10279
(212) 374-9115


CLERK
Eastern District

